**IN THE DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA**

| | |
|---|---|
| In the Matter of the ) | |
| Federal Bureau of Prisons' Execution ) | |
| Protocol Cases, ) | |
| ) | |
| LEAD CASE: *Roane et al. v. Barr* ) | Case No. 19-mc-00145 (TSC) |
| ) | |
| ) | |
| THIS DOCUMENT RELATES TO: ) | |
| ) | |
| *Bourgeois v. U.S. Dep't of Justice, et al.*, ) | |
| No. 12-cv-0782 (TSC) ) | |

**MEMORANDUM IN OPPOSITION TO PLAINTIFF AFRED BOURGEOIS'S
MOTION FOR PRELIMINARY INJUNCTION BARRING HIS EXECUTION**

## **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................... 1

BACKGROUND ................................................................................................................... 2

    I.    Statutory and Regulatory Background ............................................................................2

    II.    The Execution Protocol ..................................................................................................3

    III.    Procedural History .........................................................................................................4

          A.    Plaintiff's Criminal Judgement and Post-Conviction History ...................................4

          B.    Procedural History of This Case ................................................................................5

STANDARD OF REVIEW ................................................................................................... 5

ARGUMENT ......................................................................................................................... 7

    I.    Plaintiff Makes No Attempt to Show that He Satisfies the Standard for a Preliminary
         Injunction.......................................................................................................................7

    II.    Plaintiff Cannot Rely on the Government's Consent to Other Preliminary Injunctions
         to Avoid His Burden to Establish that Relief Is Appropriate Here...................................10

CONCLUSION..................................................................................................................... 12

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*Aamer v. Obama*,
   742 F.3d 1023 (D.C. Cir. 2014) ................................................................................ 6

*Am. Fed. of Gov't Emps., Council 214, AFL-CIO  v. Fed. Labor Relations Auth.*,
   835 F.2d 1458 (D.C. Cir. 1987) .............................................................................. 11

*Baze v. Rees*,
   553 U.S. 35 (2008) ................................................................................................ 9, 10

*Bernier v. Obama*,
   201 F. Supp. 3d 87 (D.D.C. 2016) ............................................................................ 7

*Bucklew v. Precythe*,
   139 S. Ct. 1112 (2019) .............................................................................................. 9

*Davis v. Pension Benefit Guar. Corp.*,
   571 F.3d 1288 (D.C. Cir. 2009) ................................................................................ 6

*English v. Trump*,
   279 F. Supp. 3d 307 (D.D.C. 2018) .......................................................................... 7

*Feng Wang v. Pompeo*,
   354 F. Supp. 3d 13 (D.D.C. 2018) ............................................................................ 6

*Freeman v. U.S. Dep't of the Interior*,
   37 F. Supp. 3d 313 (D.D.C. 2014) .......................................................................... 11

*Glossip v. Gross*,
   135 S. Ct. 2726 (2015) ..................................................................................... *passim*

*Guttenberg v. Emery*,
   26 F. Supp. 3d 88 (D.D.C. 2014) .............................................................................. 6

*In re Bourgeois*,
   902 F.3d 446 (5th Cir. 2018)..................................................................................... 4

*Jack Faucett Assocs., Inc. v. AT&T, Co.*,
   744 F.2d 118 (D.C. Cir. 1984) ................................................................................ 11

*Jones v. Ashcroft*,
   321 F. Supp. 2d 1 (D.D.C. 2004) ............................................................................ 11

*Le v. U.S. Dep't of State*,
   919 F. Supp. 27 (D.D.C. 1996) ............................................................................... 11

*Mazurek v. Armstrong*,
   520 U.S. 968 (1997) ............................................................................. 5-6, 7

*Munaf v. Geren*,
   553 U.S. 674 (2008) ................................................................................... 5

*Nken v. Holder*,
   556 U.S. 418, (2009) ................................................................................. 6

*Roane v. Leonhart*,
   741 F.3d 147 (D.C. Cir. 2014) ............................................................... 3, 8

*Sherley v. Sebelius*,
   644 F.3d 388 (D.C. Cir. 2011) .................................................................. 6

*Swedish Hosp. Corp. v. Shalala*,
   845 F. Supp. 894 (D.D.C. 1993) ............................................................. 11

*United States v. Bourgeois*,
   423 F.3d 501 (5th Cir. 2005) .................................................................... 4

*United States v. Bourgeois*,
   No. C-02-CR-216, 2011 WL 1930684 (S.D. Tex. May 19, 2011) ........... 4

*United States v. Mendoza*,
   464 U.S. 154 (1984) ................................................................................. 11

*Van Meter v. Barr*,
   803 F. Supp. 444 (D.D.C. 1992) ............................................................. 11

*Winter v. Nat. Res. Def. Council, Inc.*,
   555 U.S. 7 (2008) ...................................................................................... 6

**<u>Statutes</u>**

5 U.S.C. § 706 ............................................................................................... 5

18 U.S.C. § 3591 ........................................................................................... 2

18 U.S.C. § 3596 ........................................................................................... 2

28 U.S.C. § 2241 ........................................................................................... 4

28 U.S.C. § 2255 ........................................................................................... 4

Federal Death Penalty Act,
   Pub. L. No. 103-322, 108 Stat. 1796 (Sept. 13, 1994) ............................ 2

Tex. Code Crim. Proc. Ann. Art. 43.14(a) .................................................. 3

**<u>Regulation</u>**

28 C.F.R. § 26.3(a)(3) ............................................................................................................ 2, 3

# INTRODUCTION

Plaintiff Alfred Bourgeois, a federal inmate whose criminal judgment was entered in 2004 and upheld on direct appeal and in post-conviction proceedings over the intervening 15 years, asks this Court to preliminarily enjoin his execution, scheduled for January 13, 2020. Despite the extraordinary nature of this request, Plaintiff makes no attempt to satisfy the four-factor test required before this Court can enjoin his execution. His only argument is that many years ago the Court granted the same relief to other federal death-row inmates. But those injunctions were obtained under entirely different circumstances.

Although the government previously did not oppose the earlier injunctions, it now opposes any further motions for preliminary injunction, including Plaintiff's. In the years since the unopposed injunctions were entered, moreover, the Federal Bureau of Prisons ("BOP") has adopted a new execution protocol, specifying a lethal agent that "courts across the country have held . . . does not violate the Eighth Amendment," *Glossip v. Gross*, 135 S. Ct. 2726, 2733 (2015). And the Supreme Court has clarified the heavy burden an inmate challenging the method of execution must meet in seeking a preliminary injunction. In addition to satisfying the other preliminary injunction factors, an inmate must show he can likely establish both (1) the challenged lethal injection protocol creates a demonstrated risk of severe pain, and (2) the risk is substantial when compared to a known and readily implemented alternative. *See id.* at 2737–38. Plaintiff has failed to make these showings; indeed, he expressly disclaims any reliance on the merits of his challenges to the newly-adopted protocol. In any event, the law is clear that the federal government cannot be collaterally estopped from opposing relief requested by subsequent plaintiffs, even when the request for relief is premised on identical issues. Plaintiff's stated basis for relief is therefore facially insufficient and cannot support a preliminary injunction.

This Court may well ultimately determine that Plaintiff is entitled to a preliminary injunction.  But it cannot do so unless and until it finds that Plaintiff has, by a clear showing, carried his burden of persuasion on all the preliminary injunction factors.  Plaintiff's filing makes no meaningful attempt to do that, and the Court should thus deny his request for a preliminary injunction without prejudice.  Plaintiff will then be free to file a new motion—perhaps jointly with other inmates who are already in this consolidated case, such as Daniel Lee, or who might ultimately file suit here—wherein he could advance substantive rationales and arguments showing why he satisfies each element of the test for whether to grant a preliminary injunction.  The government would then respond to those arguments, at which point the merits of a preliminary injunction motion would be properly presented for the Court's resolution.

## BACKGROUND

### I.      Statutory and Regulatory Background

Federal law provides for capital punishment, Federal Death Penalty Act ("FDPA"), Pub. L. No. 103-322, § 60002, 108 Stat. 1796, 1959 (Sept. 13, 1994) (codified at 18 U.S.C. §§ 3591–99), specifying that a defendant convicted of a capital crime "shall be sentenced to death" if, after consideration of enumerated factors at a special hearing, "it is determined that imposition of a sentence of death is justified," 18 U.S.C. § 3591(a), (b).  After "exhaustion of the procedures for appeal of the judgment of conviction and for review of the sentence," the defendant is released "to the custody of a United States marshal." 18 U.S.C. § 3596(a).  BOP and the U.S. Marshals Service then implement the death sentence.  28 C.F.R. § 26.3(a)(3).

Implementation of the federal death penalty is governed by 18 U.S.C. §§ 3596–97. Pursuant to 18 U.S.C. § 3596, federal officials "shall supervise implementation of the sentence in the manner prescribed by the law of the State in which the sentence is imposed" and "[i]f the law of the State does not provide for implementation of a sentence of death, the court shall designate

2

another State, the law of which does provide for the implementation of a sentence of death."

Plaintiff's sentenced was imposed in the State of Texas.  Texas law prescribes the use of lethal

injection as the primary method of execution.  Tex. Code Crim. Proc. Ann. Art. 43.14(a).

Consistent with the manner of execution provided by Texas law, U.S. Department of

Justice ("DOJ") regulations provide that, except to the extent a court orders otherwise, "a sentence

of death shall be executed" "[b]y intravenous injection of a lethal substance or substances in a

quantity sufficient to cause death."  28 C.F.R. § 26.3(a)(4).  DOJ regulations further provide that

the lethal substance is "to be determined by the Director of the Federal Bureau of Prisons."  *Id.*

## II.     The Execution Protocol

Until 2011, BOP administered death sentences pursuant to an execution protocol that

provided for the injection of a sequence of three drugs:  sodium thiopental, pancuronium bromide,

and potassium chloride.  *See Roane v. Leonhart*, 741 F.3d 147, 149 (D.C. Cir. 2014).  In March

2011, former Attorney General Eric Holder announced that "the federal government d[id] not have

any reserves of sodium thiopental for lethal injections."  Parties' Joint Status Report Regarding

Suppl. of Discovery, *Roane v. Barr*, No. 05-cv-02337-TSC (D.D.C. Apr. 29, 2011), ECF No. 281.

BOP subsequently announced that it had "decided to modify its lethal injection protocol" in light

of the unavailability of sodium thiopental.  Parties' Joint Motion to Continue August 2, 2011 Status

Conference and Briefing Schedule, *id.* (July 28, 2011), ECF No. 288.

On July 25, 2019, the Department of Justice announced that, at the Attorney General's

direction, the BOP had adopted a revised addendum to the execution protocol that replaces the

three-drug procedure and provides for the use of a single drug, pentobarbital sodium, as the lethal

agent.  *See* Notice of Adoption of Revised Protocol, *Bourgeois v. U.S. Dep't of Justice*, No. 1:12-

cv-782-TSC (D.D.C. July 25, 2019), ECF No. 18.  This addendum, along with the existing

execution protocol (which was recently modified in minor respects and produced as part of the

3

Administrative Record in this consolidated case), which we collectively refer to as the "2019 BOP Execution Protocol," set forth detailed procedures for administering the lethal substance and carrying out the death sentence. *Id.*, ECF No. 18-1; *see also* Defs.' Notice of Filing, No. 19-mc-00145, Certified Index, items 36 and 44, ECF No. 4.

### III.   **Procedural History**

#### A.   Plaintiff's Criminal Judgement and Post-Conviction History

In 2004, after a trial by a jury of his peers, Plaintiff Bourgeois was convicted of physically assaulting his two-year-old daughter and murdering her on a military base in Texas. *See United States v. Bourgeois*, No. C-02-CR-216, 2011 WL 1930684, at *7, *12 (S.D. Tex. May 19, 2011). The jury returned a verdict of death after finding unanimously that the aggravating factors sufficiently outweighed the mitigating factors to justify capital punishment, and the Court sentenced Bourgeois to die by lethal injection. *Id.* at *18.  Bourgeois exhausted his direct appeal in 2006, *see United States v. Bourgeois*, 423 F.3d 501, 505 (5th Cir. 2005), *cert. denied*, 547 U.S. 1132 (2006), and has since been pursuing post-conviction relief.  Specifically, in 2011, his motion for relief under 28 U.S.C. § 2255, or in the alternative under 28 U.S.C. § 2241, was denied by the district court, *Bourgeois*, 2011 WL 1930684.  The Fifth Circuit denied his request for a certificate of appealability in *United States v. Bourgeois*, 537 F. App'x 605 (5th Cir. 2013), and the Supreme Court denied his petition for a writ of certiorari in *Bourgeois v. United States*, 135 S. Ct. 46 (2014). In 2018, the Fifth Circuit denied authorization for Bourgeois to file a successive § 2255 motion because the proposed motion presented only a single claim that was already presented in his original motion—namely that Bourgeois is intellectually disabled and thus constitutionally ineligible for the death penalty.  *In re Bourgeois*, 902 F.3d 446, 447–48 (5th Cir. 2018).  On August 15, 2019, Bourgeois filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, again claiming that he is ineligible for the death penalty because he is intellectually disabled. *Bourgeois*

4

*v. Warden*, No. 2:19-cv-0392-JMS-DLP (S.D. Ind. Aug. 15, 2019), ECF No. 1.  That petition is still pending.

      B.  <u>Procedural History of This Case</u>

      Bourgeois filed this case in May 2012 to challenge BOP's now-superseded three-drug protocol for implementing federal death sentences.  Complaint, ECF No. 1.  The complaint was amended in December 2012, and the seven-count Amended Complaint sought declaratory and injunctive relief against various government officials and agencies pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 706, and the Fifth and Eighth Amendments to the U.S. Constitution.  Am. Compl., ECF No. 12.  In January 2013, the Court granted the parties' joint motion to stay the case because BOP intended to revise the protocol.  Parties' Joint Mot. for Stay & Mem. in Supp. Thereof, ECF No. 14; Order, ECF No. 15.

      Six years later, in July 2019, the government notified the Court that BOP had adopted a revised addendum to its execution protocol and that it had scheduled the execution of Bourgeois for January 13, 2020.  Notice of Adoption of Revised Protocol, ECF No. 18; Notice of Scheduling Execution, ECF 19.  In a status conference held on August 15, 2019, this Court consolidated Bourgeois's case with three other cases involving similar challenges to BOP's prior execution protocol, required Defendants to produce the Administrative Record by August 30, 2019, and set a discovery schedule for purposes of allowing the plaintiffs to amend their respective complaints.  A few days later, Bourgeois filed the instant motion for a preliminary injunction.  Mot. for PI Barring the Execution of Pl. Alfred Bourgeois ("Pl.'s Mot."), ECF No. 24.

**STANDARD OF REVIEW**

      "A preliminary injunction is an extraordinary and drastic remedy."  *Munaf v. Geren*, 553 U.S. 674, 690 (2008) (citation omitted).  It is "never awarded as of right," *id.*, and "should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion," *Mazurek v.*

5

*Armstrong*, 520 U.S. 968, 972 (1997) (citation omitted).  The movant must satisfy a four-prong

test, establishing "that he is likely to succeed on the merits, that he is likely to suffer irreparable

harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an

injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008);

*accord Sherley v. Sebelius*, 644 F.3d 388, 392 (D.C. Cir. 2011); *see also Davis v. Pension Benefit

Guar. Corp.*, 571 F.3d 1288, 1292 (D.C. Cir. 2009) ("When seeking a preliminary injunction, the

movant has the burden to show that all four factors, taken together, weigh in favor of the

injunction.").  The "most important factor" is whether the movant has "established a likelihood of

success on the merits," *Aamer v. Obama*, 742 F.3d 1023, 1038 (D.C. Cir. 2014), and, in the context

of an Eighth Amendment method-of-execution challenge, the Supreme Court has held that an

inmate's failure to establish a likelihood of success, alone, warrants denial of the inmate's motion

to preliminarily enjoin his execution, *see Glossip*, 135 S. Ct. at 2737.[1]  As discussed below,

Plaintiff makes no attempt to establish that he is likely to succeed on the merits.  Thus, he cannot

obtain the relief he seeks on the basis of his current filing.

---

[1] Before *Winter*, the D.C. Circuit had adopted a sliding scale approach, under which "a strong showing on one factor could make up for a weaker showing on another." *Sherley*, 644 F.3d at 393. The D.C. Circuit construes *Winter* "at least to suggest if not to hold 'that a likelihood of success is an independent, free-standing requirement for a preliminary injunction.'"  *Id.* (quoting *Davis v. Pension Benefit Guar. Corp.*, 571 F.3d 1288, 1296 (D.C. Cir. 2009) (Kavanaugh, J., concurring)); *see also Nken v. Holder,* 556 U.S. 418, (2009) (Kennedy, J., concurring) ("When considering success on the merits and irreparable harm, courts cannot dispense with the required showing of one simply because there is a strong likelihood of the other."); *Feng Wang v. Pompeo*, 354 F. Supp. 3d 13, 20 (D.D.C. 2018) (questioning the continued viability of the sliding scale approach because "the Supreme Court and the D.C. Circuit have strongly suggested, without holding, that a likelihood of success on the merits is an independent, free-standing requirement for a preliminary injunction") (citation omitted); *Guttenberg v. Emery*, 26 F. Supp. 3d 88, 100 n.5 (D.D.C. 2014) ("Even a narrow reading of the Court's holding in *Winter* supports the view that sliding-scale analysis is obsolete.").  In this context, the Supreme Court's *Glossip* opinion dispels any ambiguity, having affirmed the denial of a motion for preliminary injunction based on the condemned inmate's failure to establish a likelihood of success on the merits.

**ARGUMENT**

**I.    Plaintiff Makes No Attempt to Show that He Satisfies the Standard for a Preliminary Injunction.**

Plaintiff's only argument in support of his motion is that the Court previously granted unopposed motions for preliminary injunction filed by other inmates who challenged BOP's prior execution protocol.  Pl.'s Mot. at 5 ("This motion seeks a preliminary injunction because the Court has already found the requirements to be satisfied by similarly situated claimants.").  Rather than attempting to show that he is likely to succeed on the merits, Plaintiff disclaims any reliance on the merits of his case as a basis for the requested relief.  *See id.* at 5 n.2 ("This motion does not involve the merits of the specific claims that Mr. Bourgeois will eventually assert against the Defendants' newly-announced protocol.").  A motion for preliminary injunction that "does not involve the merits" of the plaintiff's claims, *id.*, by definition fails to make the required "*clear showing*" that those merits favor emergency relief, *Mazurek*, 520 U.S. at 972 (citation omitted), and thus, must be denied, *see Glossip*, 135 S. Ct. 2726 (affirming denial of preliminary injunction motion where death-row inmate failed to show that he was likely to succeed on the merits of his challenge to the method of execution); *English v. Trump*, 279 F. Supp. 3d 307, 316 (D.D.C. 2018) ("a plaintiff's failure to show a likelihood of success on the merits is, standing alone, sufficient to defeat [a] motion" for preliminary injunction); *Bernier v. Obama*, 201 F. Supp. 3d 87, 92 (D.D.C. 2016) (denying preliminary injunction based solely on failure to establish likelihood of success).

Plaintiff does not purport to adopt the arguments advanced, years ago, by the inmates who received unopposed preliminary injunctions.  Even assuming Plaintiff has done so, those cases involved a different execution protocol and a different legal landscape—one that predated the Supreme Court's recent decisions construing the Eighth Amendment.  Plaintiff notes that the Court granted a preliminary injunction preventing the execution of Jeffrey Paul even after BOP had

announced its intention to revise the three-drug protocol.  Pl.'s Mot. 5.  But Paul challenged BOP's

prior, three-drug protocol—specifically the use of sodium thiopental—and has not challenged the

current one, which involves a single drug (pentobarbital sodium).  *See* Mot. of Pl. Jeffrey Paul for

PI Barring the Scheduling of His Execution & Barring His Execution, *Roane v. Holder*, No. 05-

cv-02337-TSC (D.D.C. Mar. 24, 2014), ECF No. 334.  Because BOP will no longer implement

federal death sentences using the three-drug protocol at issue in Paul's previous filing, any claim

to relief from that protocol is now moot.

Plaintiff also argues that the D.C. Circuit previously found Paul's Eighth Amendment

challenge to the method of execution was not mooted by BOP's intention to revise the three-drug

protocol.  *See* Pl.'s Mot. at 3.  But the D.C. Circuit's ruling—made when determining whether

there remained a live controversy that gave the Court jurisdiction to review the district court's

denial of Paul's motion to intervene in the *Roane* litigation—was premised on the fact that, at the

time, the government "ha[d] merely suspended executions using the three-drug cocktail called for

by the [then] current protocol and ha[d] not yet issued a new protocol," such that there was still a

real possibility that the challenged protocol could be used in the future.  *Roane v. Leonhart*, 741

F.3d at 150.  Now that BOP has adopted an entirely new protocol, there is "no reasonable

expectation" that the government will resume administration of the three-drug protocol challenged

by Paul.  *Id.*[2]  Whatever the merits of the prior challenges to the three-drug protocol, those

arguments cannot serve as an *a fortiori* basis to grant a preliminary injunction for Bourgeois now.

---

[2]  Plaintiff further notes that the D.C. Circuit found Paul's and the *Roane* plaintiffs' due process
claim remained live because the claim "attack[ed] a refusal to disclose the procedures that [would]
be used to execute them."  Pl.'s Mot. at 3 (citation omitted).  But that fact-bound claim has no
applicability here:  Defendants have disclosed the 2019 BOP Execution Protocol, which sets forth
how they intend to administer the lethal injection and other details concerning the implementation
of the death sentence.

Indeed, not only were the other inmates' method-of-execution claims premised on a superseded protocol, but the Supreme Court has since clarified the legal standard for such a claim. *See Bucklew v. Precythe*, 139 S. Ct. 1112 (2019); *Glossip*, 135 S. Ct. at 2730–38.  In addition to the need to show that the challenged method presents "a substantial risk of serious harm," *Glossip*, 135 S Ct. at 2737 (quoting *Baze v. Rees*, 553 U.S. 35, 50 (2008)), an inmate like Plaintiff "must identify an alternative that is 'feasible, readily implemented, and in fact significantly reduces a substantial risk of severe pain,'" *id.* (quoting *Baze*, 553 U.S. at 52)), and further demonstrate "that the [government] has refused to adopt [that alternative] without a legitimate penological reason," *Bucklew*, 139 S. Ct. at 1125.  As the Supreme Court explained, this Eighth Amendment analysis is "a *necessarily* comparative exercise," *id.* at 1126, which means that an inmate must both "*plead* and prove a known and available alternative," *Glossip*, 135 S. Ct. at 2739 (emphasis added).  This standard applies even where the inmate raises an as-applied challenge to the method of execution on the basis of his unique medical condition. *See Bucklew*, 139 S. Ct. at 1126–29.

Accordingly, as relevant here, "[t]he preliminary injunction posture of the present case [ ] requires [inmates] to establish a likelihood that they can establish both that [the challenged] lethal injection protocol creates a demonstrated risk of severe pain and that the risk is substantial when compared to the known and available alternatives." *Glossip*, 135 S. Ct. at 2737.  As to the first prong, Plaintiff will need to show that he is likely to succeed even though the Supreme Court has noted that "courts across the country have held that the use of pentobarbital in executions does not violate the Eighth Amendment." *Id.* at 2733.  And he will have to do so in the face of the Supreme Court's recognition that the Constitution affords "a 'measure of deference to a [government's] choice of execution procedures'" and "does not authorize courts to serve as 'boards of inquiry charged with determining 'best practices' for execution," *Bucklew*, 139 S. Ct. at 1125 (quoting *Baze*, 553 U.S. at 51–52).

Plaintiff's motion does not make the required showing and, indeed, expressly disclaims any attempt to do so. Of course, the unopposed motions filed years ago by Paul and other inmates—which predated *Glossip* and *Bucklew*—also did not make the required showing as to the current protocol.[3] Thus, even if the Court construes Plaintiff's motion as broadly as possible— including to incorporate by reference Paul's and other inmates' arguments—binding Supreme Court precedent requires denial of his motion for "failure to satisfy [his] burden of establishing that any risk of harm was substantial when compared to a known and available alternative method of execution." *Glossip*, 135 S. Ct. at 2738. In short, the Court cannot preliminarily enjoin Plaintiff's execution based on his current showing. It should therefore deny Plaintiff's motion without prejudice to him renewing his request as soon as he is able to prepare and advance substantive arguments that he is likely to succeed on the merits.

## II.   Plaintiff Cannot Rely on the Government's Consent to Other Preliminary Injunctions to Avoid His Burden to Establish that Relief Is Appropriate Here.

To the extent Plaintiff is seeking to collaterally estop the government from opposing his request for a preliminary injunction based on the government's prior consent to such relief for other inmates who challenged the prior execution protocol, he cannot succeed. Even setting aside the fact that the prior preliminary injunctions involved challenges to a different execution protocol, the Supreme Court has expressly held that "nonmutual offensive collateral estoppel simply does

---

[3] *See* Mot. of Pl. Jeffrey Paul for PI Barring the Scheduling of His Execution & Barring His Execution, *Roane v. Holder*, No. 05-cv-02337-TSC (D.D.C. Mar. 24, 2014), ECF No. 334. Pl.'s Mot. for Stay & for PI Barring Their Execution, *Roane v. Barr*, No. 05-cv-02337 (D.D.C. Feb. 2, 2006) (Roane, Tipton, and Johnson), ECF No. 2; Pl.'s Unopposed Mot. for PI Barring His Execution, *id.* (Feb. 14, 2007) (Webster), ECF No. 26; Unopposed Mot. of Pl. Anthony Battle for PI Barring the Sched. of His Execution & Barring His Execution, *id.* (Apr. 26, 2007) (Battle), ECF No. 63; Pl.'s Unopposed Mot. for PI Barring Defs. from Setting an Execution Date for Pl. & from Executing Him, *id.* (Apr. 26, 2007) (Hall), ECF No. 65.

not apply against the government in such a way as to preclude relitigation of issues." *United States v. Mendoza*, 464 U.S. 154, 162 (1984); *accord Am. Fed. of Gov't Emps., Council 214, AFL-CIO v. Fed. Labor Relations Auth.*, 835 F.2d 1458, 1462 (D.C. Cir. 1987) ("Collateral estoppel will apply against the government only if mutuality of parties exists."); *Jack Faucett Assocs., Inc. v. AT&T Co.*, 744 F.2d 118, 125 (D.C. Cir. 1984); *Jones v. Ashcroft*, 321 F. Supp. 2d 1, 6 (D.D.C. 2004); *Le v. U.S. Dep't of State*, 919 F. Supp. 27, 31 (D.D.C. 1996); *Swedish Hosp. Corp. v. Shalala*, 845 F. Supp. 894, 899 (D.D.C. 1993); *Van Meter v. Barr*, 803 F. Supp. 444, 449 (D.D.C. 1992). That is, "a private party may not invoke non-mutual collateral estoppel against the government with respect to an issue on which a different private party prevailed in prior litigation with the government." *Freeman v. U.S. Dep't of the Interior*, 37 F. Supp. 3d 313, 346 (D.D.C. 2014)).

As the Supreme Court has explained, there are good reasons why courts do not apply nonmutual offensive collateral estoppel to the government. *First*, "the panoply of important public issues raised in governmental litigation may quite properly lead successive Administrations of the Executive Branch to take differing positions with respect to the resolution of a particular issue." *Mendoza*, 464 U.S. at 161. *Second*, permitting nonmutual collateral estoppel against the government "might disserve the economy interests in whose name estoppel is advanced by requiring the Government to abandon virtually any exercise of discretion" with respect to unfavorable judgments. *Id.* at 163. *Third*, "allowing nonmutual collateral estoppel against the Government . . . would substantially thwart the development of important questions of law by freezing the first final decision rendered on a particular legal issue." *Id.* at 160.

These considerations amply demonstrate that the government's decisions to consent to preliminary injunctions from 2006 to 2014 in no way preclude it from taking a different approach, concerning a different policy, in 2019. Indeed, if consenting to a preliminary injunction for one

death-row inmate would lock the government into consent for all subsequent inmates, the government would be far less likely to agree to such relief in the first instance for any plaintiff, contrary to the economy interest that the estoppel principle is designed to serve.  And preventing the government from litigating new requests for preliminary injunction in this context would freeze interlocutory orders issued by different judges relying on different jurisprudence—predating *Glossip* and *Bucklew*—contravening the Judiciary's interest in the development of the law.  Such a ruling would amount to a *de facto* moratorium on federal capital punishment for any inmate who intervenes in this case, based solely on the government's consent to relief under distinguishable circumstances, rather than a finding that challenges to the current protocol satisfy the four-factor test for preliminary injunctive relief.  That would be a remarkable result, given that Congress expressly authorized capital punishment, and the Supreme Court "ha[s] time and again reaffirmed that capital punishment is not *per se* unconstitutional."  *Glossip*, 135 S. Ct. at 2739 (citing cases).

Finally, Plaintiff cannot succeed in suggesting that he is entitled to a preliminary injunction because he could have intervened in *Roane v. Barr*, No. 05-cv-02337 (D.D.C.) in 2012, instead of filing a separate complaint, as he did.  First, Plaintiff's assumption that he would have been granted a preliminary injunction had he intervened in *Roane* is speculative.  Second, Plaintiff's decision to file a separate suit was his strategic choice and cannot be held against the government.  Third, Plaintiff could have moved for a preliminary injunction in his suit when he filed it in 2012, but he chose not to do so.  But regardless and in all events, there is no exception to the rule proscribing nonmutual offensive collateral estoppel against the government based on a plaintiff's decision how to litigate his case.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiff's motion for preliminary injunction without prejudice and with leave to re-file as soon as Plaintiff is able to advance actual

arguments on the merits that could, should this Court agree with them, provide a basis for preliminary relief in this matter.

Dated:  September 5, 2019

Respectfully submitted,

JESSIE K. LIU
United States Attorney

DANIEL F. VAN HORN
Civil Chief, U.S. Attorney's Office

DENISE M. CLARK (D.C. Bar No. 479149)
Assistant United States Attorney
U.S. Attorney's Office
    for the District of Columbia
Washington, D.C. 20530
(202) 252-6605
Denise.Clark@usdoj.gov

JOSEPH H. HUNT
Assistant Attorney General

JAMES M. BURNHAM
Deputy Assistant Attorney General

PAUL R. PERKINS
Special Counsel to the Assistant Attorney General

/s/ Jean Lin
JEAN LIN (NY Bar 4074530)
Special Counsel
Federal Programs Branch
Civil Division, Department of Justice
1100 L Street, N.W.
Washington, D.C. 20005
(202) 514-3716
Jean.lin@usdoj.gov

*Attorneys for Defendants*

13

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 5, 2019, I caused a true and correct copy of the foregoing document to be filed and served on counsel of record via the Court's CM/ECF system.

/s/ *Jean Lin*
JEAN LIN