UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA


IN THE MATTER OF THE        .  MC No. 19-0145 (TSC)
FEDERAL BUREAU OF PRISONS'  .  Washington, D.C.
EXECUTION PROTOCOL CASES.   .  Thursday, August 15, 2019
. . . . . . . . . . . . . .  .  10:45 a.m.


TRANSCRIPT OF STATUS HEARING
BEFORE THE HONORABLE TANYA S. CHUTKAN
UNITED STATES DISTRICT JUDGE


<u>APPEARANCES</u>:

For Plaintiffs              PAUL F. ENZINNA, ESQ.
Case 05-CV-2337:            Ellerman Enzinna PLLC
                            1050 30th Street NW
                            Washington, DC 20007


For Plaintiffs              JONATHAN C. AMINOFF, ESQ.
Case 07-CV-2145:            Federal Public Defender
(Via Telephone)             Central District of California
                            321 East Second Street
                            Los Angeles, CA 90012


For Plaintiffs              ALEXANDER L. KURSMAN, ESQ.
Case 12-CV-0782:            Federal Community Defender
                            Eastern District of Pennsylvania
                            601 Walnut Street
                            Suite 545 West
                            Philadelphia, PA 19106


For Plaintiffs              JOSEPH W. LUBY, ESQ.
Case 13-0938:               Federal Community Defender
                            Eastern District of Pennsylvania
                            601 Walnut Street
                            Suite 545 West
                            Philadelphia, PA 19106


For Defendants:             DENISE M. CLARK, AUSA
                            U.S. Attorney's Office
                            555 Fourth Street NW
                            Washington, DC 20530


Court Reporter:             BRYAN A. WAYNE, RPR, CRR
                            U.S. Courthouse, Room 4704-A
                            333 Constitution Avenue NW
                            Washington, DC 20001

```
 1                   P R O C E E D I N G S

 2         THE DEPUTY CLERK:  Your Honor, we have civil action

 3    05-2337, James Roane, Jr., et al., versus Karen Tandy, et al.;

 4    civil action 07-2145, Julius Robinson versus Michael Mukasey,

 5    et al.; we have civil action 12-782, Alfred Bourgeois versus

 6    United States Department of Justice, et al.; and we have 13-938,

 7    Chadrick Fulks versus United States Department of Justice, et al.

 8        I would ask counsel to identify yourself and the case you

 9    represent, starting with case 05-2337.  Only counsel that will

10    be speaking please identify yourself.

11         MR. ENZINNA:  Good morning, Your Honor.  Paul Enzinna,

12    and I'll be doing most of the speaking.

13         THE COURT:  Good morning.

14         THE DEPUTY CLERK:  Plaintiff in civil action 07-2145,

15    please identify yourself if you will be speaking.

16         MR. AMINOFF:  Good morning, Your Honor.

17    Jon Aminoff for Julius Robinson.

18         THE COURT:  Thank you.

19         THE DEPUTY CLERK:  Plaintiff in case 12-782, please

20    identify yourself if you're speaking.

21         MR. KURSMAN:  Good morning, Your Honor.  Alex Kursman

22    for Alfred Bourgeois, 0782.

23         THE COURT:  Thank you.

24         THE DEPUTY CLERK:  And civil action 13-938, please

25    identify yourself for the record if you're speaking today.
```

1    MR. LUBY:  Good morning, Your Honor.  Joseph Luby

2   speaking on behalf of the plaintiff, Chadrick Fulks, in No. 13-938.

3    THE COURT:  Thank you.

4    THE DEPUTY CLERK:  And then defense counsel for all

5   the cases.

6    MS. CLARK:  Good morning, Your Honor.  Denise Clark on

7   behalf of the defendants.

8    THE COURT:  Good morning.

9   All right.  There are four cases before the Court

10  challenging the Federal Bureau of Prisons' execution protocol.

11  And while the parties in the Roane case engaged in extensive

12  discovery before the case was stayed pending the review and

13  revisions to the lethal-injection protocol used to effectuate

14  federal death sentences, the parties in the other three cases

15  did not have the opportunity to conduct significant discovery

16  before their respective cases were stayed.

17  On July 25 of this year, in all four cases, defendants

18  filed a notice of an adoption of a revised protocol.  That's ECF

19  Nos. 385, 22, 18, and 9.

20  The notice informed the Court that the protocol provides

21  for the use of pentobarbital sodium as a lethal agent and also

22  included the revised protocol.  In addition, on that same day in

23  the Bourgeois case, defendants filed a notice of Mr. Bourgeois's

24  execution for January 13, 2020.

25  On August 1, the parties in the Roane case filed separate

status reports.  Those are ECF Nos. 389 and 390.  Plaintiffs
stated their intention to file a motion to reopen discovery in
accordance with the court's November 2011 order stating that any
motion to reopen discovery shall be filed within 30 days of the
notice of revised protocol.  Plaintiffs asked the court to defer
setting any schedule before ruling on its discovery motion.

Defendant's status report noted that, given the use of a
different lethal substance, they believed that an amended
complaint was required, and the defendants requested a status
conference to be scheduled in advance of any motions.

On August 5, I issued an order in all four cases scheduling
a status conference and directing the parties who hadn't already
done so to file a status report.

On August 12, 2019, the parties in Robinson, Bourgeois,
and Fulks filed identical status reports stating it has been
difficult to come to consensus on next steps without some
direction from the Court.

Now pending before me are two motions, an August 14, 2019,
consent motion in the Bourgeois case to consolidate the case
with the Roane case, and that's ECF No. 23, and an August 14,
2019 consent motion in the Fulks case to consolidate that with
the Roane case, and that's ECF No. 14.

There has not been a motion to consolidate the Robinson
case.  Before that case was stayed pending the BOP's issuance of
a revised lethal injection protocol in June of 2008, the Court

1    -- obviously, that was not me, a different judge -- asked the

2    parties for their respective positions on consolidation.

3        The parties then filed a notice, which is ECF No. 8,

4    expressing some concern regarding the scope of discovery and the

5    timing of dispositive motions given the state of the Roane

6    proceedings.

7        Now, counsel for Mr. Robinson, now that discovery will

8    need to be reopened for all cases, is your client amenable to

9    consolidation?

10        MR. AMINOFF:  Thank you, Your Honor.  Jon Aminoff for

11    Julius Robinson.  Yes.  We believe he is.  I haven't made it to

12    Terre Haute yet.  I'm going to see him tomorrow, and our

13    intention would be to file a motion to join on Monday.

14        THE COURT:  All right.  Counsel for the defendants,

15    what's your position on consolidating the Robinson case with the

16    Roane case?

17        MS. CLARK:  Your Honor, we are amenable to that.

18        THE COURT:  Okay.  All right.  Upon consideration of

19    the consent motion in the Bourgeois case and in Fulks, the Court

20    thereby grants these motions and consolidates each case pursuant

21    to Federal Rule of Civil Procedure 42(a) with Roane v. Barr,

22    which is No. 1-05-CV-2337.  And once I get the motion -- I assume

23    it will be a consent motion from counsel for Mr. Robinson -- I

24    intend to do the same.  But I'm not going to do it yet since

25    there hasn't been a formal motion.  It doesn't appear they have

1    spoken to their client yet.  But that would be my intention.

2        All right.  Regarding next steps, before hearing from the

3    parties regarding the direction it needs from the Court, I may

4    ask you, Ms. Clark, are defendants willing to stay Mr. Bourgeois's

5    execution pending the resolution of this case, or do the parties

6    anticipate needing an expedited schedule?

7            MS. CLARK:  Your Honor, we do not intend to stay

8    Mr. Bourgeois's execution date.

9            THE COURT:  So we're going to need an expedited

10   schedule.  And let me ask you also, Ms. Clark, while you're up

11   here, the joint status report stated that direction was needed

12   from the Court before proposing next steps.  What direction do

13   defendants find useful at this time?

14           MS. CLARK:  Your Honor, in speaking with counsel for

15   Robinson, Fulks, and Bourgeois, there were four issues that had

16   surfaced.  The first was the motion to consolidate.  The second

17   issue was that of administrative exhaustion.  The government let

18   plaintiffs' counsel know yesterday in those three cases that we

19   were waiving any argument with regard to administrative

20   exhaustion.  So that was not an issue in the case.

21       The third issue that surfaced --

22           THE COURT:  So you're waiving that.

23           MS. CLARK:  Yes, Your Honor.

24           THE COURT:  Okay.

25           MS. CLARK:  In those three specific cases where they

1    asked for them.

2              THE COURT:  Okay.

3              MS. CLARK:  And then the third issue was the timing of

4    the amendment of the complaints.  As the government said in the

5    status report we filed in the Roane case, we believe that is

6    absolutely necessary in all four cases, because each case makes

7    an Eighth Amendment claim of cruel and unusual punishment.

8    Under the case law that's relevant in this case, *Baze* and

9    *Glossip*, they have to identify a known and available alternative

10   method of execution that entails a lesser risk of pain in order

11   to proceed on an Eighth Amendment claim.

12        In this case the operative complaints are all focused

13   on this three-drug cocktail that is no longer operative at all.

14   And in light of that, the government's position is that if

15   the plaintiffs do not move to amend their complaints -- and,

16   obviously, we are amenable to their moving to amend their

17   complaints, but if they fail to do that, what the government

18   will have to do in this case is we'll have to move to dismiss

19   these complaints.

20             THE COURT:  Okay.  Well, it sounds like basically

21   the only issue on which guidance is necessary is, therefore, the

22   timing of amendment of the complaints.

23        Mr Enzinna, what's your position on behalf of Mr Roane?

24             MR. ENZINNA:  Well, Your Honor, our position is that

25   we are basically where we, the parties and the Court,

1    anticipated we would be back in 2011.  Someone used the phrase

2    "a wrinkle in time" this morning; it's like we just leapt

3    forward eight years.  Back then the government announced that

4    it would change its protocol, and we -- the parties and the

5    Court -- all agreed that what would happen next would be they

6    would announce the new protocol, and after that we would address

7    the question of additional discovery, which is what we propose

8    to do.

9         As far as the amended complaint, we have no objection to

10   amending the complaint, but we think it makes sense to take

11   some discovery before amending the complaint, because the

12   protocol that the government has issued is --

13         THE COURT:  And let's not call it a three-drug

14   cocktail again, please.

15         MR. ENZINNA:  The -- it's true that the facts that

16   were alleged in the original complaint and the amended complaint

17   had to do with the three-drug protocol which is now inoperative

18   and moot, but we spent six years taking discovery into that

19   protocol.  We took more than two dozen depositions.  There were

20   at least half a dozen experts.  We took all the defendants'

21   depositions.  In fact, this was in the days before the rule was

22   amended.  I think one of the depositions lasted five or six days.

23   So it's a tremendous amount of discovery that was specific to

24   the three-drug protocol.

25         Now that protocol's out the window, we have a new drug

1   protocol, and it's our position that that discovery is going

2   to have to be retaken.  What we don't know based on their new

3   protocol -- our claims are still here.  None of our claims has

4   changed.  We have an Eighth Amendment claim -- we have two

5   Eighth Amendment claims.  We have a Fifth Amendment claim:

6   Administrative Procedure Act and Controlled Substances Act.

7   Those claims all apply to the one-drug protocol as well, but

8   they apply differently because the facts are different, and we

9   need to take discovery into those facts.

10          All we've been told right now with this protocol is that

11  unless we change this -- because the protocol contains a

12  provision for ultimate discretion to make any changes they feel

13  are necessary.  Unless we change this "we plan to use this single

14  drug," the things we don't know -- we don't know where they're

15  going to get the drug.  We don't know the quality of that drug.

16          What we do know is that the manufacturers of that drug

17  won't sell it to the government for execution.  So to date, at

18  least in the states that have used this protocol, they've used

19  compounding pharmacies.  In fact, in Texas they've used a

20  compounding pharmacy that has dozens of citations for dangerous

21  activity, including falsifying quality control documents.

22          So we need to know that.  We need to where they're going

23  to get the drugs.  We need to know who the personnel are.  All

24  the protocol says are "qualified personnel."  We don't know what

25  that means.  We don't know how they're going to be trained.

1    We don't know the method they're going to use to access, to

2    obtain venous access.  All the protocol says is -- I forget the

3    exact term, appropriate access.  "Suitable venous access" is

4    what the protocol says.

5        Now, what we do know is that some of the states have used

6    phenobarbital to conduct executions.  In fact, last year Texas

7    used it I think three or four times, and if not in all of those

8    executions, the majority of those executions, the inmate being

9    executed complained of pain and of feeling burning.  So we know

10   that this drug, especially if not administered properly, can

11   cause significant pain.  And that's the Eighth Amendment claim

12   right there.

13       So like I said, there's a tremendous amount of discovery

14   that's been taken in this case that's been rendered moot by

15   the government's actions.  We need to take that additional

16   discovery.  We don't have a problem with amending the complaint,

17   but we think that some discovery is necessary before we do that.

18           THE COURT:  Well, given the government's representation

19   just now that they don't intend to stay the execution and they

20   plan to proceed with a January execution date for -- it's

21   Mr. Bourgeois, right?

22           MS. CLARK:  Yes, Your Honor.

23           THE COURT:  There's certainly a tension between how

24   much discovery you're going to get to conduct and how quickly

25   it has to take place.

1        MR. ENZINNA:  Well, Your Honor, to be perfectly

2   honest, I don't believe that the discovery that's necessary

3   can be taken and this case can be properly litigated in time

4   for the government to implement its unilateral decision to go

5   forward with this execution in January.  I think, basically, the

6   government is saying to the Court -- is trying to push the Court

7   into an early decision.  We've been sitting here for eight

8   years.  I mean, nobody's been executed --

9        THE COURT:  Well, I mean -- we have been here for

10  eight years.  In the meantime, the government has come up with

11  a new protocol, so obviously, you know, discovery does need to

12  be taken as to that protocol.

13       MR. ENZINNA:  Yes.

14       THE COURT:  But given that the government says it

15  intends to proceed, what I'm assuming is that plaintiffs will

16  be filing some kind of motion to stay the execution pending

17  resolution of this issue?

18       MR. ENZINNA:  I don't know what Mr. Bourgeois plans

19  to do.

20       THE COURT:  Maybe I should hear from counsel for

21  Mr. Bourgeois.

22       MR. AMINOFF:  That's right, Your Honor.

23       THE COURT:  All right.  And I guess -- you know, I've

24  consolidated three cases.  I have not yet consol -- let me hear

25  from each of you.

1    Mr. Kursman, you said you intend to file a motion to stay.

2    Is it your position also that additional discovery is needed?

3    Is there any plaintiffs' counsel who wants to state something

4    additional to what Mr. Enzinna has said?

5            MR. KURSMAN:  Yes.  Mr. Bourgeois is the only properly

6    filed lethal-injection plaintiff who received a notice of

7    execution.  Now, Mr. Bourgeois filed his own complaint in 2012

8    instead of filing a motion to intervene in the Roane litigation.

9    The reason he did that was, in 2009, Intervenor Paul, who's

10   part of the Roane litigation, filed a motion to intervene in

11   the district court.  The district court denied that motion to

12   intervene.

13       During the next three years, there was a litigation in

14   the district court revolving around that motion to intervene.

15   Mr. Bourgeois had to file within the six-year statute of

16   limitations.  So he filed a complaint -- a separate complaint

17   that mirrored the Roane complaint, just not as an intervenor

18   complainer.  After Mr. Paul's motion was denied, he then

19   appealed that to the circuit that reversed and remanded.

20       When Mr. Paul came back down, the government agreed that

21   not only -- that he deserved a preliminary injunction.  There

22   is no reason why Mr. Paul or any of the other Roane plaintiffs

23   deserved a preliminary injunction, but Mr. Bourgeois, who has a

24   complaint that mirrors theirs and is properly filed, doesn't.

25           THE COURT:  All right.  Mr. Aminoff?  Did you have

1   anything to add?

2          MR. AMINOFF:  No, Your Honor.  We agree entirely with

3   counsel.

4          THE COURT:  And Mr. Luby?

5          MR. LUBY:  No, Your Honor.  Nothing to add on behalf

6   of Mr. Fulks.  Thank you.

7          THE COURT:  And counsel for all four plaintiffs, have

8   you had an opportunity to confer with each other and agree on

9   what you believe the next proposed steps should be?

10          MR. ENZINNA:  Yes, Your Honor.  We have.

11          THE COURT:  Okay.  And what do you believe -- I mean,

12   obviously, you just stood up and said you believe discovery is

13   necessary, but do you have a proposed schedule that you believe

14   you --

15          MR. ENZINNA:  Well, I propose to do that in our motion

16   for more discovery, talk about what discovery needs to be taken

17   and when we can take that discovery.

18          THE COURT:  All right.

19          MR. ENZINNA:  I mean, we have experts who are going to

20   need to review the protocol and opine on the protocol and then

21   be deposed.  We have individuals who are going to have to be

22   identified and deposed.  We have eight years' worth of documents

23   that we haven't seen yet.

24          THE COURT:  All right.  Ms. Clark, you heard

25   Mr. Kursman indicate that with an execution date of January

1   2020, he proposes to move for a stay of execution given that

2   this is a new drug, it's a new protocol, and there needs to be

3   discovery taken in the same manner that discovery was taken for

4   the old protocol.  What's your response to plaintiff's position?

5           MS. CLARK:  Your Honor, as we have previously raised

6   with plaintiff's counsel for Mr. Bourgeois, they should file a

7   preliminary injunction.  That's the route that they should take,

8   and we've asked them about the timing of that as well.  So there

9   is a route that can be pursued, but it's in Mr. Bourgeois's court.

10      With respect to Mr. Enzinna's argument about there needing

11  to be discovery before they can amend the complaint, Your Honor,

12  it's the government's position that's simply not true.

13          THE COURT:  Well, if they'd filed a complaint without

14  taking discovery about the drug, you'd be moving to dismiss

15  saying they didn't have enough facts.

16          MS. CLARK:  No.  Well, Your Honor, the problem under

17  *Glossip,* it is a pleading standard.  So the point is you have

18  to plead about the alternative drug that would be less painful,

19  and they can do it simply as they did it the first time around,

20  Your Honor.

21          THE COURT:  Without knowing sufficient information

22  about this one?  In other words, how can you make an alternative

23  argument -- how can you say that another drug is better or less

24  painful if you don't know how painful this one is?

25          MS. CLARK:  Well, Your Honor, they already started

1    talking about how painful this drug is, so they have some

2    information --

3           THE COURT:  They have anecdotal evidence, or they have

4    reports from other state courts that -- in at least in Texas

5    where this drug has been used, it appears to have caused pain to

6    inmates who were executed.  But certainly you're not saying that

7    would be sufficient in this case, are you?

8           MS. CLARK:  I'm saying that they have information --

9    we're not aware of all that they know at this point, but the

10    government has no doubt that they can amend their complaints at

11    this point and set forth sufficient information for the parties

12    to go forward.  The problem with the plan as set forth by the

13    plaintiff is we don't -- we can't even imagine what the contours

14    of discovery would be given where we are right now.

15           THE COURT:  Well, you had an idea of what discovery

16    was like under the previous protocol.  Right?  I mean you have

17    some -- I mean, obviously, this is one drug, not three, not a

18    combination of three, but you do have some idea of what discovery

19    would look like based on what was sought previously, don't you?

20           MS. CLARK:  Well, Your Honor, we know what they

21    previously sought.  That's true.  But in terms of what they're

22    going to be looking for this time, there is no way we can

23    predict that.  We have to simply assume -- the pleading standard

24    isn't high.  But this is --

25           THE COURT:  I'll remember that.

1    (Laughter.)

2         MS. CLARK:  We know it's not particularly high at

3    the pleading stage, but the point is they haven't even done

4    that, Your Honor.  So we're going to basically -- you know,

5    what's the point of the amendment in the first place if we're

6    going to allow all the discovery to happen on the front end,

7    the contours of which, once again, we can't be certain of;

8    then they amend, and at that point we're basically --

9         THE COURT:  So is it your proposal that I should set

10   a schedule for amendment of the complaint and then discovery

11   should take place?

12        MS. CLARK:  Yes.

13        THE COURT:  And, Mr. Enzinna, your position is the

14   other way around.

15        MR. ENZINNA:  Yes.

16        THE COURT:  And let me ask you this:  How much time

17   are you proposing -- how much discovery and how much time do you

18   need before you think you'd be in a position to file an amended

19   complaint?

20        MR. ENZINNA:  Well, obviously, the discovery that we

21   took so far took several years to take.  I don't think that's --

22   that's not what I'm talking about before we can amend the

23   complaint, but I would expect that it will take some time to

24   do this discovery.  And, you know, one of the things I wanted

25   to point out with respect to the alternative issue, one of the

1    problems we have is we are required now to plead an alternative,

2    but it is very difficult, if not impossible, to plead an

3    alternative when we don't know anything about what --

4              THE COURT:  Right.

5              MR. ENZINNA:  -- the protocol is when it's so opaque

6    and so secretive.  So I would request -- like I said, I'm not

7    asking for six years of discovery before we can amend the

8    complaint, but I would request that we have some period of time,

9    probably at least several months, to take some preliminary

10   discovery and then amend the complaint.  I mean, if we amended

11   the complaint today -- as Your Honor said, we could amend the

12   complaint today, but we'd face the, as we now have an admission,

13   the very --

14             THE COURT:  Very low --

15             MR. ENZINNA:  Extremely low pleading standard.  And

16   that's certainly something we could do.  I don't know how we can

17   effectively plead an alternative means without knowing exactly

18   what their proposal is.

19             THE COURT:  Have you considered bifurcating discovery

20   in this case; in other words, taking sufficient discovery before

21   amending the complaint to provide you with sufficient

22   information to amend the complaint and then proceeding with

23   further, more extensive discovery?

24             MR. ENZINNA:  I think that's exactly what I'm talking

25   about, Your Honor.  In fact, it may even be, if we took some

1    30(b)(6) depositions, we might be able to do it just based on

2    those.

3              THE COURT:  Would it be an exercise in futility to

4    ask the parties to meet and confer and propose a schedule for

5    preliminary discovery and then the filing of the amended

6    complaint, or is that -- have you all attempted to do so?

7              MR. ENZINNA:  We have not.

8              MS. CLARK:  No.  We haven't done that.

9              THE COURT:  You haven't.  Okay.

10             MR. ENZINNA:  I don't think it would be futile.

11             THE COURT:  All right.  Then that's what I'm going to

12   do.  What I would like you to do is to meet and confer to try

13   and come up with a proposed preliminary discovery plan followed

14   by a deadline for amending the complaint.

15        Mr. Kursman, I don't know what your plans are with regard

16   to a motion, but you're the only counsel here with a client who

17   has a scheduled execution date.

18             MR. KURSMAN:  Your Honor, I could file a motion for

19   preliminary injunction by Monday.

20             THE COURT:  All right.

21             MR. KURSMAN:  Thanks.

22             THE COURT:  Then that's what I'm going to do.  I know

23   we're coming up on Labor Day and so on, but time is of the

24   essence here.  I'm going to ask that the parties meet and confer

25   with the goal of filing some kind of joint proposed schedule for

1    preliminary discovery, filing of the amended complaint, and then

2    we can go from there.

3         How much time do you need to get that to me?

4              MS. CLARK:  May we confer for a moment?

5              THE COURT:  Sure.  Yes.

6              MS. CLARK:  Thank you.

7         (Counsel conferring.)

8              THE COURT:  Well, Mr. Aminoff, do you want to deputize

9    Mr. Enzinna as far as -- or is -- I don't know.  Is there a way

10   he can pick up the phone?

11             MR. AMINOFF:  Sure.  We're comfortable with that, yes.

12             THE COURT:  Okay.  You have his proxy, Mr. Enzinna.

13        Do you want me to pass this for five minutes?  I can step

14   out for five minutes.  I'll do that.

15        (Recess from 11:37 a.m. to 11:58 a.m.)

16             THE COURT:  All right.  Mr. Enzinna.

17             MR. ENZINNA:  Your Honor, as predicted, it was not

18   futile.

19             THE COURT:  Great.

20             MR. ENZINNA:  We reached an agreement.  The defendants

21   will file the administrative record on the record by the 30th of

22   August, after which we will have six months, to the end of

23   February, to take 30(b)(6) depositions of each of the defendant

24   entities, DOJ, BOP, DEA, etc., and then we would have till the

25   end of March, 30 days, to file our amended complaint.

1     THE COURT:  I think that is eminently reasonable,

2   and I thank the parties for meeting and conferring and coming

3   up with a reasonable schedule.

4     MS. CLARK:  And, Your Honor, we just want to be clear,

5   it's one 30(b)(6) deposition per federal defendant.

6     THE COURT:  Okay.  One per defendant.

7     MR. ENZINNA:  And that we would take them pursuant to

8   the same rules we used in the initial discovery, which was one

9   party would do the questioning for the plaintiffs, but additional

10   parties could ask additional questions but not repeat questions.

11     THE COURT:  Follow-up.  All right.

12    Okay.  Thank you all.  I'll memorialize that in a minute

13   order.

14     MS. CLARK:  And I'm sorry.  There's one more matter in

15   Bourgeois, if I could have Bourgeois's counsel?  We just want to

16   talk about the preliminary injunction, Your Honor?

17     THE COURT:  Okay.

18     MS. CLARK:  And just put it on the record that the

19   parties will meet and confer about the timing of a briefing

20   schedule with respect to the preliminary injunction.

21     THE COURT:  Okay.  Good.

22     MR. KURSMAN:  That's correct.  But, Your Honor, we are

23   still prepared to file a motion for preliminary injunction on

24   Monday.

25     THE COURT:  All right.  But you'll confer with

1    Ms. Clark about a briefing schedule on that motion.

2            MR. KURSMAN:  I will.

3            THE COURT:  Okay.

4            MR. KURSMAN:  Thank you, Your Honor.

5            THE COURT:  Thank you all.  I do appreciate that.

6    This case has been dormant; it's been reopened.  You know,

7    there's a lot of work that went into it before; I'm sure there's

8    a lot of work that's going to go into it now.  So I do appreciate

9    the cooperative position you all are taking.  Thank you.

10           MS. CLARK:  Thank you, Your Honor.

11       (Proceedings adjourned at 12:00 p.m.)

* * * * * *

CERTIFICATE

I, BRYAN A. WAYNE, Official Court Reporter, certify that the foregoing pages are a correct transcript from the record of proceedings in the above-entitled matter.


*Bryan A. Wayne*
BRYAN A. WAYNE