**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| In the Matter of the<br>Federal Bureau of Prisons' Execution<br>Protocol Cases,<br><br>LEAD CASE: *Roane et al. v. Barr*<br><br>THIS DOCUMENT RELATES TO:<br><br>*Bourgeois v. U.S. Dep't of Justice, et al.*,<br>12-cv-0782<br><br>*Lee v. Barr*, 19-cv-2559<br><br>*Purkey v. Barr, et al.*, 19-cv-03214 | Case No. 19-mc-145 (TSC) |

## <u>MEMORANDUM OPINION</u>

On July 25th of this year, the U.S. Department of Justice ("DOJ") announced plans to execute five people. *See* Press Release, Dep't of Justice, Federal Government to Resume Capital Punishment After Nearly Two Decade Lapse (July 25, 2019), https://www.justice.gov/opa/pr/federal-government-resume-capital-punishment-after-nearly-two-decade-lapse. The DOJ intends to execute Daniel Lewis Lee on December 9, 2019; Lezmond Mitchell on December 11, 2019; Wesley Ira Purkey on December 13, 2019; Alfred Bourgeois on January 13, 2020; and Dustin Lee Honken on January 15, 2020. *Id.* To implement these executions, the Federal Bureau of Prisons ("BOP") adopted a new execution protocol: the "2019 Protocol." *Id;* (ECF No. 39-1 ("Administrative R.") at 1021–1075).

Four of the five individuals with execution dates[1] (collectively, "Plaintiffs"), have filed complaints against the DOJ and BOP (collectively, "Defendants"), alleging that the 2019

---

[1] Mitchell has not filed a complaint in this court.

Protocol is unlawful and unconstitutional on numerous grounds.[2] *See Purkey v. Barr,* 19-cv-03214 (D.D.C.), Doc. # 1 (Oct. 25, 2019); *Lee v. Barr,* 1:19-cv-02559 (D.D.C.), Doc. #1 (Aug. 23, 2019); *Bourgeois v. U.S. Dep't of Justice, et al.,* 1:12-cv-00782 (D.D.C.), Doc. # 1 (May 5, 2012); ECF. No. 38 ("Honken Compl."). The court consolidated the cases and ordered Plaintiffs to complete the necessary 30(b)(6) depositions on or before February 29, 2020 and to amend their complaints on or before March 31, 2020. (*See* ECF No. 1 ("Consolidation Order"); Min. Entry, Aug. 15, 2019.) Because Plaintiffs are scheduled to be executed before their claims can be fully litigated, they have asked this court, pursuant to Federal Rule of Civil Procedure 65 and Local Rule 65.1, to preliminarily enjoin the DOJ and BOP from executing them while they litigate their claims. (ECF No. 34 ("Purkey Mot. for Prelim. Inj."); ECF No. 29 ("Honken Mot. for Prelim. Inj."); ECF No. 13 ("Lee Mot. for Prelim. Inj."); ECF No. 2 ("Bourgeois Mot. for Prelim. Inj.")) Having reviewed the parties' filings, the record, and the relevant case law, and for the reasons set forth below, the court hereby GRANTS Plaintiffs' Motions for Preliminary Injunction.

## I.   BACKGROUND

Beginning in 1937, Congress required federal executions to be conducted in the manner prescribed by the state of conviction. *See* 50 Stat. § 304 (former 18 U.S.C. 542 (1937)), recodified as 62 Stat. § 837 (former 18 U.S.C. 3566). After the Supreme Court instituted a *de*

---

[2] Bourgeois' complaint was filed in 2012 and relates to a separate execution protocol. *See Bourgeois v. U.S. Dep't of Justice, et al.,* 1:12-cv-00782 (D.D.C.), Doc. # 1 (May 5, 2012). In addition, his Motion for Preliminary Injunction (ECF. No. 2 ("Bourgeois Mot. for Prelim. Inj.")) does not articulate his bases for a preliminary injunction, but instead argues that a preliminary injunction is warranted because the plaintiffs in the *Roane* litigation were granted a preliminary injunction. Despite the shortcomings of Bourgeois' briefing, this court has determined that he meets the requirements of a preliminary injunction, as do the three other plaintiffs in the consolidated case, whose motions are fully briefed.

*facto* moratorium on the death penalty in *Furman v. Georgia*, 408 U.S. 238, 239–40 (1972), and then lifted it in *Gregg v. Georgia,* 428 U.S. 153, 187 (1976), Congress reinstated the death penalty for certain federal crimes but did not specify a procedure for implementation.  *See* Anti-Drug Abuse Act of 1988, Pub. L. 100–690, § 7001, 102 Stat. 4181 (enacted Nov. 18, 1988). Four years later, under the direction of then-Attorney General William Barr, the DOJ published a proposed rule to establish a procedure for implementing executions.  Implementation of Death Sentences in Federal Cases, 57 Fed. Reg. 56536 (proposed Nov. 30, 1992).  The proposed rule noted that the repeal of the 1937 statute "left a need for procedures for obtaining and executing death orders." *Id.*  The final rule, issued in 1993, provided a uniform method and place of execution.  *See* 58 Fed. Reg. 4898 (1993), *codified at* 28 C.F.R. pt. 26 (setting method of execution as "intravenous injection of a lethal substance.")

But a year later, Congress reinstated the traditional approach of following state practices through passage of the Federal Death Penalty Act ("FDPA").  *See* Pub. L. No. 103–322, 108 Stat. 1796 (1994), *codified at* 18 U.S.C. §§ 3591–3599.  The FDPA establishes that the U.S. Marshal "shall supervise implementation of the sentence in the manner prescribed by the law of the State in which the sentence is imposed."  *Id.* § 3596(a).  The FDPA provides no exceptions to this rule and does not contemplate the establishment of a separate federal execution procedure. Plaintiffs' cases are governed by the FDPA because when the death penalty portions of the ADAA were repealed in 2006, the FDPA was "effectively render[ed] . . . applicable to all federal death-eligible offenses."  *United States v. Barrett*, 496 F.3d 1079, 1106 (10th Cir. 2007).

Given the conflict between the FDPA's state-by-state approach and the uniform federal approach adopted by DOJ's 1993 rule (28 C.F.R. pt. 26), the DOJ and BOP supported proposed legislation to amend the FDPA to allow them to carry out executions under their own procedures.

One bill, for example, would have amended § 3596(a) to provide that the death sentence "shall be implemented pursuant to regulations prescribed by the Attorney General." H.R. 2359, 104th Cong. § 1 (1995).  In his written testimony supporting the bill, Assistant Attorney General Andrew Fois wrote that "H.R. 2359 would allow Federal executions to be carried out . . . pursuant to uniform Federal regulations" and that "amending 18 U.S.C. § 3596 [would] allow for the implementation of Federal death sentences pursuant to Federal regulations promulgated by the Attorney General." *Written Testimony on H.R. 2359 Before the Subcomm. on Crime of the H. Comm. on the Judiciary*, 104th Cong. 1 (1995) (Statement of Andrew Fois, Assistant Att'y Gen. of the United States). None of the proposed amendments were enacted, and the FDPA continues to require the federal government to carry out executions in the manner prescribed by the states of conviction.

In 2005, three individuals facing death sentences sued, alleging that their executions were to be administered under an unlawful and unconstitutional execution protocol. *Roane v. Gonzales*, 1:05-cv-02337 (D.D.C.), Doc. #1 ¶ 2.  The court preliminarily enjoined their executions. *Roane*, Doc. #5.  Three other individuals on death row intervened, and the court enjoined their executions. *See Roane*, Doc. #23, 27, 36, 38, 67, 68.  A seventh individual on death row subsequently intervened and had his execution enjoined as well. *See id.* Doc. #333. During this litigation, the government produced a 50-page document ("2004 Main Protocol") outlining BOP execution procedures. *Roane*, Doc. #179–3.  The 2004 Main Protocol cites 28 C.F.R. pt. 26 for authority and does not mention the FDPA. *See id.* at 1.  The government then produced two three-page addenda to the 2004 Main Protocol. *See Roane*, Doc. #177-1 (Addendum to Protocol, Aug. 1, 2008) (the "2008 Addendum"); *Roane*, Doc. #177-3 (Addendum to Protocol, July 1, 2007) ("2007 Addendum").  In 2011 the DOJ announced that the

BOP did not have the drugs needed to implement the 2008 Addendum.  *See* Letter from Office of

Attorney General to National Association of Attorneys General, (Mar. 4, 2011),

https://files.deathpenaltyinfo.org/legacy/documents/2011.03.04.Holder.Letter.pdf.  The

government told the court that the BOP "has decided to modify its lethal injection protocol but

the protocol revisions have not yet been finalized."  *Roane*, Doc. #288 at 2.  In response, the

court stayed the *Roane* litigation.

No further action was taken in the cases for seven years, until July of this year, when

DOJ announced a new addendum to the execution protocol ("2019 Addendum") (Administrative

R. at 870–871), that replaces the three-drug protocol of the 2008 Addendum with a single drug:

pentobarbital sodium.  *See id* at ¶ C.  In addition to the 2019 Addendum, the BOP adopted a new

protocol to replace the 2004 Main Protocol (the 2019 Main Protocol).  (Administrative R. at

1021–1075.)

The court held a status conference in the *Roane* action on August 15, 2019.  (*See* Min.

Entry, Aug. 15, 2019).  In addition to the *Roane* plaintiffs, the court heard from counsel for three

other death-row inmates, including Bourgeois, all of whom cited the need for additional

discovery on the new protocol.  (*See* ECF No. 12 ("Status Hr'g Tr.")).  The government

indicated that it was unwilling to stay the executions, and the court bifurcated discovery and

ordered Plaintiffs to complete 30(b)(6) depositions by February 28, 2020 and to file amended

complaints by March 31, 2020.  (*See* Min. Entry, Aug. 15, 2019.)

Lee filed a complaint challenging the 2019 Addendum on August 23, 2019 (*see Lee v.

Barr*, 1:19-cv-02559 (D.D.C.), Doc. 1), and a motion for a preliminary injunction on September

27, 2019, (Lee Mot. for Prelim. Inj.).  On August 29, 2019 Bourgeois moved to preliminarily

enjoin his execution.  (Bourgeois Mot. for Prelim. Inj.)  Honken filed an unopposed motion to

intervene in *Lee v. Barr*, which was granted.  (ECF No. 26. ("Honken Mot. to Intervene").)  He

then filed a motion for a preliminary injunction on November 5, 2019.  (Honken Mot. for Prelim.

Inj.)  Purkey filed a complaint and a motion for preliminary injunction under a separate case

number, 1:19-cv-03214, which was consolidated with *Roane*.  Thus, the court now has before it

four fully briefed motions to preliminarily enjoin the DOJ and BOP from executing Lee, Purkey,

Bourgeois, and Honken.

## II.  ANALYSIS

A preliminary injunction is an "extraordinary remedy" that is "never awarded as of

right."  *Winter v. Nat. Res. Def. Council, Inc.,* 555 U.S. 7, 24 (2008) (citing *Munaf v. Geren*, 553

U.S. 674, 689–90 (2008)).  Courts consider four factors on a motion for a preliminary injunction:

(1) the likelihood of plaintiff's success on the merits, (2) the threat of irreparable harm to the

plaintiff absent an injunction, (3) the balance of equities, and (4) the public interest.  *Id.* at 20

(citations omitted); *John Doe Co. v. Consumer Fin. Prot. Bureau,* 849 F.3d 1129, 1131 (D.C.

Cir. 2017).  The D.C. Circuit has traditionally evaluated claims for injunctive relief on a sliding

scale, such that "a strong showing on one factor could make up for a weaker showing on

another."  *Sherley v. Sebelius,* 644 F.3d 388, 392 (D.C. Cir. 2011).  It has been suggested,

however, that a movant's showing regarding success on the merits "is an independent, free-

standing requirement for a preliminary injunction."  *Id.* at 393 (quoting *Davis v. Pension Ben.

Guar. Corp.*, 571 F.3d 1288, 1296 (D.C. Cir. 2009) (Kavanaugh, J., concurring)).  Here,

Plaintiffs' claims independently satisfy the merits requirement.

### A.  Likelihood of Success on the Merits

Plaintiffs allege, *inter alia*, that the 2019 Protocol exceeds statutory authority and

therefore under the Administrative Procedure Act ("APA"), it must be set aside.  Under the APA,

a reviewing court "shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(C).  Plaintiffs argue that the 2019 Protocol exceeds statutory authority by establishing a single procedure for all federal executions rather than using the FDPA's state-prescribed procedure.  (Purkey Mot. for Prelim. Inj. at 16; Honken Mot. for Prelim. Inj. at 34–35; Lee Mot. for Prelim. Inj. at 5–6, 17).  Given that the FDPA expressly requires the federal government to implement executions in the manner prescribed by the state of conviction, this court finds Plaintiffs have shown a likelihood of success on the merits as to this claim.

Defendants argue that the 2019 Protocol "is not contrary to the FDPA" because the authority given to DOJ and BOP through § 3596(a) of the FDPA "necessarily includes the authority to specify . . . procedures for carrying out the death sentence."  (ECF No. 16 ("Defs. Mot. in Opp. To Lee Mot. for Prelim. Inj.") at 34.) Section 3596(a) states:

> When the [death] sentence is to be implemented, the Attorney General shall release the person sentenced to death to the custody of a United States marshal, *who shall supervise implementation of the sentence in the manner prescribed by the law of the State in which the sentence is imposed.* If the law of the State does not provide for implementation of a sentence of death, the court shall designate another State, the law of which does provide for the implementation of a sentence of death, and the sentence shall be implemented in the latter State in the manner prescribed by such law.

18 U.S.C. § 3596(a) (emphasis added).  Because a United States Marshal is to "supervise" the process, it does appear that at least some authority is granted to the Marshal.  But it goes too far to say that such authority necessarily includes the authority to decide procedures without reference to state policy.  The statute expressly provides that "the implementation of the sentence" shall be done "in the manner" prescribed by state law.  *Id.*  Thus, as between states and federal agencies, the FDPA gives decision-making authority regarding "implementation" to the

former.  Accordingly, the 2019 Protocol's uniform procedure approach very likely exceeds the authority provided by the FDPA.

Defendants contest the meaning of the words "implementation" and "manner."  As they interpret § 3596(a), Congress only gave the states the authority to decide the "method" of execution, e.g., whether to use lethal injection or an alternative, not the authority to decide additional procedural details such as the substance to be injected or the safeguards taken during the injection.  The court finds this reading implausible.  First, the statute does not refer to the "method" of execution, a word with particular meaning in the death penalty context.  *See id.* Instead, it requires that the "implementation" of a death sentence be done in the "manner" prescribed by the state of conviction.  *Id.*  "Manner" means "a mode of procedure or way of acting." *Manner*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 756 (11th ed. 2014.)  The statute's use of the word "manner" thus includes not just execution method but also execution *procedure.*  To adopt Defendants' interpretation of "manner" would ignore its plain meaning.  As one district court concluded, "the implementation of the death sentence [under the FDPA] involves a process which includes more than just the method of execution utilized." *United States v. Hammer*, 121 F. Supp. 2d 794, 798 (M.D. Pa. 2000). [3]

---

[3] Defendants cite three cases to suggest that "manner" means "method": *Higgs v. United States*, 711 F. Supp. 2d 479, 556 (D. Md. 2010); *United States v. Bourgeois,* 423 F.3d 501 (5th Cir. 2005); and *United States v. Fell*, No. 5:0-cr-12-01, 2018 WL 7270622 (D. Vt. Aug. 7 2018). *Higgs* interpreted the FDPA to require the federal government to follow a state's chosen method of execution but not to follow any other state procedure. 711 F. Supp. 2d at 556. This interpretation, however, was stated in dicta and is not supported by persuasive reasoning.  *Id.* *Bourgeois* did not reach the question of what the words "implementation" and "manner" mean in 18 U.S.C. § 3596(a).  423 F.3d 501 (5th Cir. 2005).  Instead, it evaluated only whether the sentence violated Texas law.  *Id.* at 509.  The opinion appeared to assume that § 3596(a) only requires the federal government to follow the state-prescribed method of execution, but it provided no basis for that assumption.  *Id.* at 509.  In *Fell*, the district court held that the creation of a federal death chamber does not violate the FDPA.  *Fell,* slip op., at 4. This holding affirms the notion that the federal government has some authority in execution procedure (such as the

Moreover, legislative efforts to amend the FDPA further support this court's interpretation of the terms "manner" and "implementation."  As noted above, in 1995, the year after the FDPA became law, the DOJ supported bills amending the statute to allow the DOJ and BOP to create a uniform method of execution, indicating that the FDPA as drafted did not permit federal authorities to establish a uniform procedure.  The amendments were never enacted.

Defendants argue that reading the FDPA as requiring adherence to more than the state's prescribed method of execution leads to absurd results.  (*See, e.g.*, Defs. Mot. in Opp. to Purkey Mot. for Prelim. Inj. at 28.)  They contend that if the state's choice of drug is to be followed, the federal government would have to "stock all possible lethal agents used by the States."  *Id.*  But the FDPA contemplates and provides for this very situation: it permits the United States Marshal to allow the assistance of a state or local official and to use state and local facilities. 18 U.S.C. § 3596(a).  Moreover, the practice of following state procedure and using state facilities has a long history in the United States.  Before the modern death penalty, the relevant statute provided that the:

> manner of inflicting the punishment of death shall be the manner prescribed by the laws of the State within which the sentence is imposed. The United States marshal charged with the execution of the sentence may use available State or local facilities and the services of an appropriate State or local official . . .

50 Stat. § 304 (former 18 U.S.C. 542 (1937)), recodified as 62 Stat. § 837 (former 18 U.S.C. 3566) (1948).  The federal government carried out executions in accordance with this statute for decades, including those of Julius and Ethel Rosenberg in New York's Sing Sing prison, and Victor Feguer in the Iowa State Penitentiary.  *See Feguer v. United States,* 302 F.2d 214, 216

---

place of execution), but it does not conflict with the proposition that the FDPA requires the federal government to follow state procedure as to more than simply the method of execution.

(8th Cir. 1962) (noting sentence of death by hanging imposed pursuant to § 3566 and Iowa law); *Rosenberg v. Carroll,* 99 F. Supp. 630, 632 (S.D.N.Y. 1951) (applying § 3566 to uphold state law confinement prior to execution). Thus, far from creating absurd results, requiring the federal government to follow more than just the state's method of execution is consistent with other sections of the statute and with historical practices.  For all these reasons, this court finds that the FDPA does not authorize the creation of a single implementation procedure for federal executions.

Defendants argue that the 2019 Protocol derives authority from 28 C.F.R. § 26.3(a), which provides that executions are to be carried out at the time and place designated by the Director of the BOP, at a federal penal or correctional institution, and by injection of a lethal substance or substances under the direction of the U.S. Marshal.  (Defs. Mot. in Opp. to Lee Mot. for Prelim. Inj. at 31.)  However, this argument is undercut by the fact that, as with the 2019 Protocol itself, 28 C.F.R. Pt. 26 also conflicts with the FDPA.  As noted above, 28 C.F.R. Pt. 26 was promulgated in 1993 (before the FDPA was enacted) to implement the Anti-Drug Abuse Act of 1988, 21 U.S.C. § 848(e) (the "ADAA"), which does not specify how federal executions are to be carried out.  28 C.F.R. § 26.3(a) filled that gap by providing an implementation procedure. But when Congress passed its own requirements for the implementation procedure in the FDPA, those requirements conflicted with 28 C.F.R. § 26.3(a).

Defendants concede that "where a regulation contradicts a statute, the latter prevails." (Defs. Mot. in Opp. to Lee Mot. for Prelim. Inj. at 31.)  They argue instead that the regulation does not conflict with the FDPA as applied to Plaintiffs because lethal injection (the method required by 28 C.F.R. § 26.3(a)(4)) is either permitted or required in the Plaintiffs' states of

conviction (Texas, Arkansas, Missouri, and Indiana[4]).  (ECF No. 37 ("Defs. Mot. in Opp. to Purkey Mot. for Prelim. Inj.") at 26–27; ECF No. 36 ("Defs. Mot. in Opp. to Honken Mot. for Prelim. Inj.") at 19–20; Defs. Mot. in Opp. to Lee Mot. for Prelim. Inj at 31–32.)[5]  Two of those states—Texas and Missouri—use a single dose of pentobarbital for executions.  (Administrative R. at 99, 104.)

But this overlap does not, in and of itself, reconcile 28 C.F.R. pt. 26 with the FDPA.  28 C.F.R. Pt. 26 remains inconsistent with the FDPA because it establishes a single federal procedure, while the FDPA requires state-prescribed procedures.  In addition, 28 C.F.R. § 26.3(a)(2) requires use of a federal facility, while the FDPA permits the use of state facilities.  *Compare* 28 C.F.R. § 26.3(a)(2) *with* 18 U.S.C. § 3597.  There are also inconsistencies between the FDPA's required state procedures and the 2019 Protocol.  For example, states of conviction establish specific and varied safeguards on how the intravenous catheter is to be inserted.[6]  The 2019 Protocol, however, provides only that the method for insertion of the IV is to be selected based on the training, experience, or recommendation of execution personnel.  (Administrative R. at 872.)  Thus, the fact that the states of conviction and 28 C.F.R. § 26.3(a) all prescribe lethal injection as the method of execution is not enough to establish that the regulation is valid as applied to Plaintiffs.

---

[4] Honken was convicted in Iowa, which does not have a death penalty.  The FDPA requires a court to designate a death penalty state for any individual convicted in a state without the death penalty, and the court designated Indiana. (Honken Mot. for Prelim. Inj. at 37.)

[5] Defendants do not assert this argument as to Bourgeois (likely because he did not raise 28 C.F.R. Part 26 in his motions), but does include Texas' execution protocol—which requires lethal injection—in the Administrative Record. (Administrative R. at 83-91.)

[6] *See, e.g.*, Administrative R. at 90-91 (Texas); Administrative R. at 70-71 (Missouri); Honken Mot. for Prelim. Inj. Ex. 6 at 16–17 (Indiana).

Defendants further argue that even if 28 C.F.R. § 26.3(a) did not conflict with the FDPA by requiring lethal injection, the DOJ would still adopt lethal injection as its method of execution for these Plaintiffs.  (*See e.g.,* Defs. Mot. in Opp. to Lee Mot. for Prelim. Inj at 32–33.)  On this basis, they ask the court to sever section 26.3(a)(4)—which establishes lethal injection as the federal method—and affirm the rest of 28 C.F.R. § 26.3(a).  *Id.*  Defendants cite *Am. Petroleum Inst. V. EPA*, 862 F.3d 50 (D.C. Cir. 2017), for the proposition that the court "will sever and affirm a portion of an administrative regulation" if it can say "*without any substantial doubt* that the agency would have adopted the severed portion on its own."  *Id.* at 71 (emphasis added). The court declines to take this approach for several reasons.  First, it is premised on the strained reading of the FDPA that this court has already rejected.  Moreover, the court cannot say "without any substantial doubt" that DOJ "would have adopted the severed portion on its own." *Id.*  Even were the court to engage in such speculation, it seems plausible that if 28 C.F.R. § 26.3(a) instructed the BOP to follow state procedure, rather than to implement lethal injection, that BOP would in fact adopt whatever specific procedures were required by each state. Finally, even if the court severed the language in 28 C.F.R. § 26.3(a) that conflicts with the FDPA, another problem would arise: that is the very language that purportedly authorizes the creation of a single federal procedure.  If the court severs it, then 28 C.F.R. § 26.3(a) would no longer contain the support for a single federal procedure that Defendants claim it does.

More importantly, Defendants' arguments regarding the regulation's applicability to these Plaintiffs take us far afield from the task at hand.  The arguments do not control the court's inquiry of whether the 2019 Protocol exceeds statutory authority.  Based on the reasoning set forth above, this court finds that insofar as the 2019 Protocol creates a single implementation procedure it is not authorized by the FDPA.  This court further finds that because 28 C.F.R. §

26.3 directly conflicts with the FDPA, it does not provide the necessary authority for the 2019 Protocol's uniform procedure. There is no statute that gives the BOP or DOJ the authority to establish a single implementation procedure for all federal executions. To the contrary, Congress, through the FDPA, expressly reserved those decisions for the states of conviction. Thus, Plaintiffs have established a likelihood of success on the merits of their claim that the 2019 Protocol exceeds statutory authority. Given this finding, the court need not reach Plaintiffs' other claims.

### B.  Irreparable Harm

To constitute irreparable harm, "the harm must be certain and great, actual and not theoretical, and so imminent that there is a clear and present need for equitable relief to prevent irreparable harm," and it "must be beyond remediation." *League of Women Voters of U.S. v. Newby,* 838 F. 3d 1, 7–8 (D.C. Cir. 2016) (citing *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006)) (internal quotation marks and brackets omitted). Here, absent a preliminary injunction, Plaintiffs would be unable to pursue their claims, including the claim that the 2019 Protocol lacks statutory authority, and would therefore be executed under a procedure that may well be unlawful. This harm is manifestly irreparable.

Other courts in this Circuit have found irreparable harm in similar circumstances. *See, e.g.*, *Damus v. Nielsen*, 313 F. Supp. 3d 317, 342 (D.D.C. 2018) (finding irreparable injury where plaintiffs faced detention under challenged regulations); *Stellar IT Sols., Inc. v. U.S.C.I.S.*, Civ. A. No. 18-2015 (RC), 2018 WL 6047413, at *11 (D.D.C. Nov. 19, 2018) (finding irreparable injury where plaintiff would be forced to leave the country under challenged regulations); *FBME Bank Ltd. v. Lew*, 125 F. Supp. 3d 109, 126–27 (D.D.C. 2015) (finding irreparable injury where challenged regulations would threaten company's existence); *N. Mariana Islands v. United*

*States*, 686 F. Supp. 2d 7, 19 (D.D.C. 2009) (finding irreparable injury when challenged regulations would limit guest workers).

Plaintiffs have clearly shown that, absent injunctive relief, they will suffer the irreparable harm of being executed under a potentially unlawful procedure before their claims can be fully adjudicated. Given this showing, the court need not reach the various other irreparable harms that Plaintiffs allege.

### C.  **Balance of Equities**

Defendants assert that if the court preliminarily enjoins the 2019 Protocol they will suffer the harm of a delayed execution date. (*See, e.g.*, Def. Mot. in Opp. to Purkey Mot. for Prelim. Inj. at 43.) While the government does have a legitimate interest in the finality of criminal proceedings, the eight years that it waited to establish a new protocol undermines its arguments regarding the urgency and weight of that interest. Other courts have found "little potential for injury" as a result of a delayed execution date. *See, e.g.*, *Harris v. Johnson*, 323 F. Supp. 2d 797, 809 (S.D. Tex. 2004). This court agrees that the potential harm to the government caused by a delayed execution is not substantial.

### D.  **Public Interest**

The public interest is not served by executing individuals before they have had the opportunity to avail themselves of legitimate procedures to challenge the legality of their executions. On the other hand, "[t]he public interest is served when administrative agencies comply with their obligations under the APA." *N. Mariana Islands,* 686 F. Supp. 2d at 21. Accordingly, this court finds that the public interest is served by preliminarily enjoining the execution of the four Plaintiffs because it will allow them to determine whether administrative agencies acted within their delegated authority, and to ensure that they do so in the future.

### III.   CONCLUSION

This court finds that at least one of Plaintiffs' claims has a likelihood of success on the merits and that absent a preliminary injunction, they will suffer irreparable harm.  It further finds that the likely harm that Plaintiffs would suffer if this court does not grant injunctive relief far outweighs any potential harm to the Defendants.  Finally, because the public is not served by short-circuiting legitimate judicial process, and is greatly served by attempting to ensure that the most serious punishment is imposed lawfully, this court finds that it is in the public interest to issue a preliminary injunction.  Accordingly, each of Plaintiffs' motions for preliminary injunctions is hereby GRANTED.