**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| In the Matter of the Federal Bureau of Prisons' Execution Protocol Cases, ) ) ) ) | |
| LEAD CASE: *Roane et al. v. Barr* ) | Case No. 19-mc-145 (TSC) |
| ) ) | |
| THIS DOCUMENT RELATES TO: ) | |
| ) | |
| *Bourgeois v. U.S. Dep't of Justice, et al.*, ) 12-cv-0782 ) | |
| ) | |
| *Lee v. Barr, et al.*, 19-cv-2559 ) | |
| ) | |
| *Purkey v. Barr*, et al., 19-cv-03214 ) ) | |

**DEFENDANTS' MOTION TO STAY
PRELIMINARY INJUNCTION PENDING APPEAL**

Pursuant to Federal Rule of Civil Procedure 62(c)(1) and consistent with Federal Rule of Appellate Procedure 8(a)(1), Defendants respectfully move for a stay pending appeal of this Court's Order, issued on November 20, 2019, ECF No. 51, enjoining Defendants from proceeding with the executions of Plaintiffs Daniel Lewis Lee, Wesley Ira Purkey, Alfred Bourgeois, and Dustin Lee Honken, scheduled for December 9, 2019, December 13, 2019, January 13, 2020, and January 15, 2020, respectively, until further order of this Court. In support of this motion, Defendants attach the declaration of Rick Winter, which describes the harm to the Federal Bureau of Prisons ("BOP") and the stakeholders if the executions were to be postponed. In view of the fact that the first execution date is rapidly approaching, Defendants request that this Court rule on this motion by Friday, November 22, 2019. In any event, Defendants plan to seek relief in the Court of Appeals on Monday, November 25, 2019.

Defendants recognize that this Court has determined that Plaintiffs meet the standard for issuance of a preliminary injunction, which is the same standard that applies to this motion. Federal Rule of Appellate Procedure 8(a)(1), however, requires Defendants to first move in this Court for a stay of the injunction pending appeal before seeking a stay in the Court of Appeals. Accordingly, for the reasons stated below and in Defendants' opposition briefs to Plaintiffs' motions for preliminary injunction,[1] Defendants respectfully request that the Court stay the injunction pending appeal.  28 C.F.R. § 0.20(b); 28 U.S.C. § 2107(b).

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 62(c) provides in relevant part: "When an appeal is taken from an interlocutory or final judgment granting . . . an injunction, the court in its discretion may suspend . . . an injunction" during the pendency of the appeal.  District courts considering a motion for such a stay consider the same factors as those governing a motion for a preliminary injunction: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies."  *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987).  Before seeking a stay from the Court of Appeals, a party must ordinarily move first in the District Court for an order suspending an injunction pending appeal.  Fed. R. App. P. 8(a).

## ARGUMENT

**I.   DEFENDANTS ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR APPEAL OF THIS COURT'S INJUNCTION**

This Court held that the 2019 Protocol likely exceeds statutory authority because the Federal Death Penalty Act ("FDPA") expressly requires the federal government to implement

---

[1] *See* Defs.' Opp'n to Pl. Alfred Bourgeois' Mot. for Prelm. Inj., ECF No. 6; Defs.' Opp'n to Pl. Daniel Lewis Lee's Mot. for Prelm. Inj., ECF No. 16; Defs.' Opp'n to Pl.-Intervenor Dustin Lee Honken's Mot. for a Prelim. Inj., ECF No. 36; Defs.' Opp'n to Pl. Wesley Ira Purkey's Mot. for Prelim. Inj., ECF No. 37.

executions in the manner prescribed by the state of conviction.  Memorandum Opinion ("Op")
(ECF No. 50) at 7.  Citing the Merriam-Webster's Collegiate Dictionary, this Court construed
"manner" to include not only the method of execution but also "all procedural details such as the
substance to be injected or the safeguards taken during the injection."  *Id*. at 8.  In the Court's
view, the 2019 Protocol conflicts with the FDPA because it does not require implementation of
"all [the] procedural details" of state execution protocols.  *Id.*

Defendants respectfully submit that they are likely to succeed on appeal of this Court's
Order.  First, the definition of "manner" as "a mode of procedure or way of action" cited by the
Court does not necessarily support the interpretation that "manner" means procedures.  The Oxford
English Dictionary provides in addition to "a mode of procedure," the definition of "a method of
action."  *Manner*, Oxford English Dictionary (3d. 2000).  Under that definition, there would be no
conflict between the application of the 2019 Protocol and the FDPA as applied to Plaintiffs.
Indeed, Congress itself has long used the terms "method" and "manner" as synonyms in the context
of the death penalty.  *See, e.g.*, H.R. Rep. No. 75-164, at 1 (1937) (recommending that federal
government abandon "[t]he method of imposition of the death sentence imposed by Federal
courts"—at that time, "by hanging"—with "the manner of execution … prescribed by the laws of
the State"); H.R. Rep. 104–879 at 204 (1997) ("this bill proposes to clarify the method of execution
of Federal prisoners").  State statutes also frequently use the term "manner" to refer to the method
of execution.  *See, e.g.*, Mo. Ann. Stat. § 546.720 ("The manner of inflicting the punishment of
death shall be by the administration of lethal gas or by means of the administration of lethal
injection."); Ohio Rev. Code Ann. § 2949.22 ("if the execution of a death sentence by lethal
injection has been determined to be unconstitutional, the death sentence shall be executed by using
any different manner of execution prescribed by law subsequent to the effective date of this
amendment").  States have also treated execution procedures as distinct from the method or manner
of execution.  *See, e.g.*, Idaho Code Ann. § 19-2716 ("The punishment of death shall be inflicted
by continuous, intravenous administration of a lethal quantity of a substance or substances
approved by the director of the Idaho department of correction until death is pronounced by a

coroner or a deputy coroner.  The director of the Idaho department of correction shall determine the procedures to be used in any execution.").

Second, the Court's interpretation is highly unlikely because it would require the federal government to follow procedures in the nearly 30 distinct lethal execution protocols used by the States.  Congress could not have intended such a result.  As Defendants have previously explained, when Congress enacted the FDPA, at least a dozen states had already adopted lethal injection as a method of execution with varying procedures.  Defs.' Opp'n to Honken's PI Mot., ECF 36, at 39. It is inconceivable that Congress intended the BOP to copy all of those procedures in spite of the infinite number of variables—including the number and size of syringes, the length of IV tubing, the IV insertion site, the rate of injection, the angle of the execution table, and the amount of saline flush, among other things—and without regard to the BOP's own assessment of the benefits or disadvantages of any particular procedure.  Presumably, the Court's reading would also require BOP to follow states execution procedures governing media access, witness selection, security and command operations, and a whole host of other details.

It is also inconceivable that Congress expected BOP to stock all lethal agents used by the States; in fact, it is a practical impossibility for BOP to do so, given the scarcity of drugs for lethal injections and States' reluctance to share their limited supplies or the sources thereof.  The Court found that the FDPA already "contemplates and provides for this very situation: it permits the United States Marshal to allow the assistance of a state or local official and to use state and local facilities."  Op. at 9 (citing 18 U.S.C. § 3597(a)).  But that provision merely authorizes the U.S. Marshal to borrow state facilities and personnel if the Marshal deems it appropriate.  It does not foreclose the federal government from using its own facilities where a State is, for example, unwilling to provide assistance, or where the federal government prefers to use its own buildings and personnel.  Nor does Section 3597 support the Court's interpretation that the "manner of execution" includes all aspects of a State's execution protocol; to the contrary, it suggests that the U.S. Marshal may choose not to use state facilities even when state law requires state executions to take place at a certain location.  It is also not clear why the federal government's past history of

borrowing state *facilities* for executions necessarily suggests that BOP now must also follow state *procedures*, as the Court seems to suggest. *See* Op. at 10–11.  Indeed, the Court's reading would lead to the anomalous result of allowing States to dictate the implementation of federal death sentences.  Because the Court's construction would frustrate the statutory purpose—which is to carry out death sentences—Defendants respectfully submit that they are likely to succeed on this issue on appeal.

## II.     THE BALANCE OF HARMS WEIGHS IN FAVOR OF ENTRY OF A STAY OF THE PRELIMINARY INJUNCTION

This Court held that the balance of harms weighs in favor of issuance of a preliminary injunction.  In particular, the Court held that the eight years the government waited to develop a new protocol undermines the Government's interest in carrying out lawful sentences of death.  Defendants respectfully disagree.  The Supreme Court has repeatedly recognized the Government and the victims' compelling interest in the timely enforcement of a death sentence.  *See Calderon v. Thompson*, 523 U.S. 538, 556 (1998); *Gomez v. U.S. Dist. Court for N. Dist. of Cal.*, 503 U.S. 653, 654 (1992); *see also Bucklew v. Precythe*, 139 S. Ct. 1112, 1134 (2019) ("The people of Missouri, the surviving victims of [the condemned inmate's] crimes, and others like them deserve better.  Even the principal dissent acknowledges that the long delays that now typically occur between the time an offender is sentenced to death and his execution are excessive.") (citation omitted from parenthetical).  This is particularly the case when the execution date is set and the Government has mobilized its resources to carry out the lawful sentence.

As Mr. Winter explains in his declaration, each execution requires significant advanced planning and coordination, including the "activation of the execution team, which consists of over 40 BOP staff members," Declaration of Rick Winter, dated November 21, 2019, ("Winter Decl.") ¶ 5, the mobilization of approximately 200 BOP staff at the Federal Correctional Complex at Terre Haute ("FCC Terre Haute") to serve as institution security and support, *id.* ¶ 8, the synchronization of the schedules of BOP contractors who must set aside their own personal and work related matters for each execution, *id.* ¶ 6, the coordination of security measures with federal, state, and

local law enforcement agencies, *id*. ¶ 7, the arrangement of travel and lodging for any victims' family members who have committed to witnessing the execution, *id*. ¶ 11, as well as the participation of approximately 50 additional BOP personnel from specialized teams, such as Special Operations Response Teams and Disturbance Control Teams, who will need to travel to FCC Terre Haute from other BOP institutions.  These preparations cannot easily be undone; "[a]ny adjustment to the execution dates would require significant planning and coordination such as that which already has been undertaken by BOP to date."  *Id*. ¶ 12.  Accordingly, beyond the Government's strong interest in proceeding with the criminal judgment, operational considerations surrounding the planned executions lend further support in favor of a stay.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court stay its injunction pending Defendants' appeal of this Court's November 20, 2019 Order enjoining Defendants from proceeding with the execution of Plaintiffs.


Dated:  November 21, 2019

Respectfully submitted,

| | |
|---|---|
| JESSIE K. LIU | JOSEPH H. HUNT |
| United States Attorney | Assistant Attorney General |
| | |
| DANIEL F. VAN HORN | ETHAN P. DAVIS |
| Civil Chief, U.S. Attorney's Office | Principal Deputy Assistant Attorney General |
| | |
| ALAN BURCH | JAMES M. BURNHAM |
| JOHN MOUSTAKAS | Deputy Assistant Attorney General |
| Assistant United States Attorney | |
| U.S. Attorney's Office | PAUL R. PERKINS |
|    for the District of Columbia | Special Counsel to the |
| Washington, D.C. 20530 |  Assistant Attorney General |
| Alan.Burch@usdoj.gov | |
| John.Moustakas@usdoj.gov | /s/ *Jean Lin* |
| | JEAN LIN (NY Bar 4074530) |
| | Special Counsel |
| | JONATHAN KOSSAK (DC Bar 991478) |
| | Trial Attorney |
| | Civil Division |

Federal Programs Branch
Civil Division, Department of Justice
1100 L Street, N.W.
Washington, D.C. 20005
(202) 514-3716
Jean.Lin@usdoj.gov
Jonathan.Kossak@usdoj.gov

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on November 21, 2019, I caused a true and correct copy of foregoing to be served on all counsel of record via the Court's CM/ECF system.  Pursuant to this Court's August 20, 2019 Order, below is a list of all plaintiffs' counsel of record:

**Joshua Christopher Toll**
KING & SPALDING LLP
(202) 737-8616
Email: jtoll@kslaw.com

**Paul F. Enzinna**
ELLERMAN ENZINNA PLLC
(202) 753-5553
Email: penzinna@ellermanenzinna.com

**Charles Anthony Zdebski**
ECKERT SEAMANS CHERIN &
MELLOTT, LLC
(202) 659-6605
Email: czdebski@eckertseamans.com

**Brandon David Almond**
TROUTMAN SANDERS LLP
(202) 274-2864
Email: brandon.almond@troutmansanders.com

**Gerald Wesley King, Jr.**
FEDERAL DEFENDER PROGRAM, INC.
(404) 688-7530
Email: gerald_king@fd.org

**Donald P. Salzman**
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
(202) 371-7983
Email: Donald.salzman@skadden.com

**Celeste Bacchi**
OFFICE OF THE PUBLIC DEFENDER
Capital Habeas Unit
(213) 894-1887
Email: celestw_bacchi@fd.org

**Craig Anthony Harbaugh**
FEDERAL PUBLIC DEFENDER, CENTRAL
DISTRICT OF CALIFORNIA
(213) 894-7865
Email: craig_harbaugh@fd.org

**Jonathan Charles Aminoff**
FEDERAL PUBLIC DEFENDER,
CENTRAL DISTRICT OF CALIFORNIA
(213) 894-5374
Email: jonathan_aminoff@fd.org

**Alexander Louis Kursman**
OFFICE OF THE FEDERAL COMMUNITY
DEFENDER/EDPA
(215) 928-0520
Email: Alex_Kursman@fd.org

**\*Billy H. Nolas**
FEDERAL COMMUNITY DEFENDER
OFFICE FOR THE EDPA
(215) 928-0520
Email: Billy_Nolas@fd.org

**\*Kathryn B. Codd**
VINSON & ELKINS, L.L.P.
(202) 639-6536
Email: kcodd@velaw.com

**\*Jeanne Vosberg Sourgens**
VINSON & ELKINS, L.L.P.

**Robert E. Waters**
VINSON & ELKINS, L.L.P.

(202) 639-6633

**William E. Lawler, III**
VINSON & ELKINS, L.L.P.
(202) 639-6676
Email: wlawler@velaw.com

**Margaret O'Donnell**
(502) 320-1837
Email: mod@dcr.net

**\*William E. Hoffman, Jr.**
KING & SPALDING LLP
(404) 572-3383

**Matthew John Herrington**
**S**TEPTOE & JOHNSON LLP
(202) 429-8164
Email: mherrington@steptoe.com

**Gary E. Proctor**
LAW OFFICES OF GARY E. PROCTOR,
LLC
(410) 444-1500
Email: garyeproctor@gmail.com

**Sean D. O'Brien**
PUBLIC INTERSET LITIGATION CLINIC
(816) 363-2795
Email: dplc@dplclinic.com

**Amy Gershenfeld Donnella**
FEDERAL COMMUNITY DEFENDER
OFFICE FOR THE EDPA
(215) 928-0520
Email: amy_donnella@fd.org

**Elizabeth Hagerty**
HOGAN LOVELLS US LLP
(202) 637-3231
Email: elizabeth.hagerty@hoganlovells.com

(202) 737-0500
Email: rwaters@velaw.com

**\*Yousri H. Omar**
VINSON & ELKINS, L.L.P.
(202) 639-6500
Email: yomar@velaw.com

**Abigail Bortnick**
KING & SPALDING LLP
(202) 626-5502
Email: abortnick@kslaw.com

**\*Mark Joseph Hulkower**
**S**TEPTOE & JOHNSON LLP
(202) 429-6221
Email: mhulkower@steptoe.com

**Robert A. Ayers**
**S**TEPTOE & JOHNSON LLP
(202) 429-6401
Email: rayers@steptoe.com

**Robert L. McGlasson**
MCGLASSON & ASSOCIATES, PC
(404) 314-7664
Email: rlmcglasson@comcast.net

**Shawn Nolan**
FEDERAL COMMUNITY DEFENDER
OFFICE, EDPA
(215) 928-0528
Email: shawn_nolan@fd.org

**Joseph William Luby**
FEDERAL PUBLIC DEFENDER/EDPA
(215) 928-0520
Email: joseph_luby@fd.org

**David Victorson**
(202) 637-2061
HOGAN LOVELLS US LLP
Email: David.Victorson@hoganlovells.com

3

**John D. Beck**
HOGAN LOVELLS US LLP
(212) 918-3000
Email: john.beck@hoganlovells.com

**Amy J. Lentz**
**STEPTOE & JOHNSON**
(202) 429-1320
Email: Alentz@steptoe.com

**Jon Jeffress**
**KaiserDillon PLLC**
202-640-2850
Email: jjeffress@kaiserdillon.com

**Pieter Van Tol**
HOGAN LOVELLS US LLP
(212) 918-3000
Email: Pieter.Vantol@hoganlovells.com

**Arin Smith**
**WILMER CUTLER PICKERING**
(202) 663-6939
Email: Arin.Smith@wilmerhale.com

**Timothy Kane**
**FEDERAL COMMUNITY DEFENDER**
**OFFICE, EDPA**
(215) 928-0528
Email: timothy_kane@fd.org

/s/ *Jean Lin*
JEAN LIN

\* No e-mail provided on the docket or counsel no longer with the identified firms.

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| | ) | |
| In the Matter of the | ) | |
| Federal Bureau of Prisons' Execution | ) | |
| Protocol Cases, | ) | |
| | ) | |
| LEAD CASE: *Roane et al. v. Barr* | ) | Case No. 19-mc-145 (TSC) |
| | ) | |
| | ) | |
| THIS DOCUMENT RELATES TO: | ) | |
| | ) | |
| *Bourgeois v. U.S. Dep't of Justice, et al.*, | ) | |
| 12-cv-0782 | ) | |
| | ) | |
| *Lee v. Barr, et al.*, 19-cv-2559 | ) | |
| | ) | |
| *Purkey v. Barr*, *et al.*, 19-cv-03214 | ) | |
| | ) | |

**[PROPOSED] ORDER**

Upon consideration of Defendants' Motion for Stay of Preliminary Injunction Pending

Appeal, and for good cause shown, it is hereby

ORDERED that the Court's November 20, 2019 Order is STAYED, pending further

order of this Court.

SO ORDERED.

Dated: _____        _____

TANYA S. CHUTKAN
U.S. District Court Judge