# EXHIBIT 1

Page 1

1          UNITED STATES DISTRICT COURT

            FOR THE DISTRICT OF COLUMBIA

2

   ---------------------------------------

3  IN THE MATTER OF THE FEDERAL BUREAU OF PRISONS'

   EXECUTION PROTOCOL CASES,

4

   LEAD CASE: Roane, et al v. Barr

5

                   Case No.  19:MC-0145 (TSC)

6

   ---------------------------------------

7

8                  Washington, D.C.

9                  Friday, November 15, 2019

10 Deposition of:

11                 RICK M. WINTER

12 called for oral examination by counsel for

13 Plaintiffs, pursuant to notice, at the office of

14 Hogan Lovells, 555 13th Street, NW, Washington,

15 D.C., before KAREN LYNN JORGENSON, RPR, of Capital

16 Reporting Company, beginning at 9:10 a.m., when

17 were present on behalf of the respective parties:

18

19

20

21

22

Page 162

1      Q    Is there any requirement in the

2  protocol -- a written requirement -- excuse me --

3  in the protocol requiring the experience to have

4  been recent?

5      A    It does not say so in the protocol.

6      Q    Why not?

7      A    I don't know.  I guess we can take that

8  under advisement and put it in the next one.

9      Q    And when you say they need significant

10 experience to serve -- to start the I.V. line,

11 what does significant experience mean?

12     A    ████████████████████████████████████

   ███████████████████████████████████████████████

   ████████████████████████████████████████████████

   ████████████████████████████████████████████████

   ████████████████████████████████████████████████

   ████████████████████████████████████████████████

   ██████████████████████████████████████████████

   ████████  ████████████████████████████████████

20     Q    Is there anything in the written protocol

21 requiring that the person starting the I.V. line

22 have significant experience?

1    A    No.  It's not stated in the protocol.

2    Q    Why not?

3    A    I think -- I thought I already mentioned

4  that.  It just doesn't say it.

5    Q    So BOP was aware of problems occurring

6  during executions because the I.V. team did not

7  have recent and significant experience, but,

8  nonetheless, it decided not to include that in the

9  written protocol?

10         MR. PERKINS:  Objection to foundation.

11         THE WITNESS:  We are aware of other

12  entities having that problem.  We have never had

13  that problem, nor do we anticipate having that

14  problem.

15  BY MS. SMITH:

16    Q    What do you mean when you say BOP has not

17  had that problem?

18    A    We have not had a problem with qualified

19  medical personnel starting I.V.s during our --

20  during the three executions we've already

21  conducted since -- starting in 2001, nor do we

22  ever -- nor would we go forward with someone who

Page 171

1      A    No.

2      Q    Consistent with the protocol, could a

3  team of people that has no prior medical training

4  carry out an execution?

5      A    If you read the protocol, technically the

6  answer would be yes.  However, that would never

7  occur, nor has it ever occurred in our experience.

8      Q    Could you, please, take a look at

9  Exhibit 5?

10     A    Which one is that?

11     Q    That is a July press release, I believe.

12          I believe we actually referred to this

13  earlier and you agreed that the addendum closely

14  mirrors protocols used by several states,

15  including Georgia, Missouri and Texas; is that

16  right?

17     A    Yes.

18     Q    Don't several of those protocols require

19  physicians to be present for an execution?

20     A    I'd have to look at them individually.

21  If you'd like me to, I will.

22     Q    Okay.  Can you please turn to the

Page 172

1    administrative record, Page 7?

2         A    Yes.

3         Q    This is Georgia's protocol.  I'd like to

4    specifically direct you to Page 9, which is

5    titled, Lethal injection procedures.  If you look

6    at Numbers 3 through 5, Georgia's policy

7    specifically requires the presence of two

8    physicians and one nurse at an execution; is that

9    right?

10        A    One nurse for the I.V. team, two

11   physicians to determine when death occurs, one

12   physician to provide medical assistance during the

13   execution process itself.  It looks like they

14   require three physicians and a nurse.

15        Q    Okay.

16        A    Maybe one of those roles can be filled by

17   a physician, so maybe just two.

18        Q    Okay.

19        A    I can't tell.

20        Q    Okay.  And if you please turn to Page 70

21   in the administrative record.

22        A    Yes.

Page 173

1       Q   And that's Missouri's protocol and we're

2    looking at the very first sentence, which says,

3    The execution team consists of department --

4            (Thereupon, the court reporter

5    clarified.)

6            MS. SMITH:   Sorry.

7    BY MS. SMITH:

8       Q   The execution team consists of department

9    employees and contracted medical personnel,

10   including a physician, nurse and pharmacist; is

11   that right?

12      A   Yes.

13      Q   So Missouri requires the presence of a

14   physician, a nurse and a pharmacist?

15      A   Yes.

16      Q   And these are the protocols -- two of the

17   protocols that the addendum is meant to closely

18   mirror; is that right?

19           MR. PERKINS:   I'm going to object.

20   Mischaracterizes the evidence.

21           THE WITNESS:   I guess we'd have to talk

22   about what closely mirror means.   I think the most

Page 174

1   important part would be -- when we're referring to

2   closely mirrors, we're referring to specifically

3   the type -- the quantity and type of drug use,

4   that would be Number 1 in our minds.

5   BY MS. SMITH:

6        Q    Did BOP consider aspects of those states'

7   protocols, other than the quantity and types of

8   drugs used?

9        A    Yes.

10       Q    Such as the requirement that physicians

11  or other medical personnel be present?

12       A    Yes.

13       Q    And why did BOP decide not to include

14  those provisions?

15       A    I can't really speak as to why our

16  addendum doesn't specifically require those

17  provisions, but I can tell you we have never had

18  an execution without the attendance of a

19  physician.  I can also tell you that currently we

20  have ██████████████████████ who will be attending and

21  ███████████

22       Q    Who selects the executioners?

Page 315

1    answer that question.

2        Q    I'm just asking what the procedures are.

3        A    Yes.

4        Q    Is it the BOP's practice that a medical

5    prescription will issue for the execution drug?

6        A    No.

7        Q    Or for the -- specifically a compounded

8    form of the drug?

9        A    No.

10       Q    Did the compounding pharmacy or API

11   manufacturer ever raise the concern that a

12   prescription might be necessary?

13       A    No.  The -- a discussion was had

14   regarding that, at least one discussion was had

15   regarding that specific issue, and the compounding

16   pharmacy indicating the licensure that the

17   facility maintains at Terre Haute was adequate, so

18   a prescription would not be necessary for an

19   execution.

20       Q    And who was party to that discussion?

21       A    It would have been representatives of the

22   compounding pharmacy.  It would have been the