# EXHIBIT 2

Page 1

```
 1              UNITED STATES DISTRICT COURT

 2              FOR THE DISTRICT OF COLUMBIA

 3

 4   IN THE MATTER OF THE FEDERAL   ) No. 19MC0145
     BUREAU OF PRISONS' EXECUTION   )
 5   PROTOCOL CASES.                )
     -------------------------------)

 6

 7                       - - -

 8              Wednesday, January 29, 2020

 9                       - - -

10       Videotaped deposition of the OFFICE OF THE

11   ATTORNEY GENERAL and the DEPARTMENT OF JUSTICE, by and

12   through its designee, BRAD WEINSHEIMER, taken at the

13   offices of Vinson & Elkins LLP, 2200 Pennsylvania

14   Avenue NW, Suite 500 West, Washington, D.C. beginning

15   at 9:06 a.m., before Nancy J. Martin, a Registered

16   Merit Reporter, Certified Shorthand Reporter.

17

18

19

20

21

22
```

Page 96

1  as used by the states, that's certainly something that
2  DOJ considered.
3  BY MR. KOPPEL:
4      Q.  Did DOJ have any discussions with BOP or the
5  Marshal Service that whether the federal execution
6  protocol would require the presence of a physician at
7  the executions?
8      A.  In what time frame are you talking about?
9      Q.  At any point prior to adoption of the
10 addendum -- or the 2019 main protocol and addendum.
11     A.  Including back to 1992?
12     Q.  Back to when DOJ decided to revise the 2008
13 addendum.
14     A.  Based on the individuals that I have
15 consulted and the documents that I reviewed, I believe
16 the answer is no.
17     Q.  What about going back earlier to enactment of
18 the Federal Death Penalty Act?
19     A.  So 1994.
20     Q.  Right.
21     A.  Obviously a much longer time period.  Based
22 on the people that I have talked to and the documents

Page 100

1    BY MR. KOPPEL:
2         Q.   Okay.  Let's start with the correction.
3         A.   You had asked me which Deputy
4    Attorney General signed the 2019 memo.  It was
5    actually Jeffrey Rosen, not Rosenstein.
6         Q.   Before the break I had asked whether DOJ
7    considered whether to require, in the federal
8    execution protocol and addendum, the presence of a
9    physician or nurse at executions.
10        A.   So the time frame that you had asked about
11   was with respect to '94 forward as I understood it.
12        Q.   Yeah.
13        A.   And based on the documents I've reviewed and
14   the individuals I've consulted with, the answer to
15   that question is no, but the '93 regulation had dealt
16   with that issue, as had the comments in the period
17   between the notice of proposed rulemaking and the
18   final regulation.
19        Q.   Other than what is in the notice of proposed
20   rule making and the comments in the final rule, are
21   you aware -- going back to, say, 1992, are you aware
22   of any discussion or consideration of whether to

Page 101

1   include -- whether to require a physician or nurse to
2   be at the executions?
3       A.   Other than what led to the '93 regulation,
4   based on the discussions I've had and the documents
5   I've reviewed, I'm not aware specifically of any other
6   conversation or discussion related to a requirement
7   for a doctor or nurse.
8       Q.   Is DOJ aware that several states require that
9   a physician be present for an execution?
10      A.   Yes.  To the extent that that information is
11  contained in the administrative record and some of the
12  state protocols, I believe had that information in
13  them.
14      Q.   So DOJ was aware of that -- was aware that
15  several state protocols require the presence of a
16  physician before it finalized the 2019 execution
17  protocol and addendum?
18      A.   That information was available.  I don't know
19  to what extent that anyone considered that issue, as
20  I've indicated, based on the individuals with whom
21  I've consulted and the documents I've reviewed.  I'm
22  not aware of any discussion as relates to that.

Page 102

1  Q.  Did DOJ decide not to require a physician or
2  nurse's presence at executions?
3  A.  Can you repeat that question.
4  Q.  Did DOJ decide not to require a physician or
5  nurse's presence at executions?
6  A.  The 1992 notice of proposed rulemaking had a
7  reference to physicians or nurses.  I don't, frankly,
8  remember which that it was.  There were comments on
9  that issue, and the regulation refers to qualified
10 personnel.
11 Q.  Okay.  So as far as you are aware, after --
12 since 1993, there's been no active consideration or
13 rejection of a requirement that a nurse or physician
14 be present at executions; is that correct?
15 A.  Based on the documents I reviewed and the
16 individuals with whom I've consulted, I believe that's
17 correct, at least to the extent that I'm not aware of
18 any such discussion about a requirement.  I'm also
19 familiar with the Rick Winter deposition in terms of
20 the practice, but obviously, that's not a requirement.
21 At least under the regulation.
22 Q.  Okay.  If you'd turn to Page -1069 of the

1    A.   I understand that on approximately December 3
2    or December 4, the DOJ learned that, with respect to
3    one of the tests and the quality assurance test with
4    Lab A, the substance was just below the range for
5    potency.  At that time, I understand that the
6    compounding pharmacy then compounded a second batch
7    and sent that batch to Lab B.
8         It's my understanding from the individuals
9    that I have spoken with, that on or about December 6
10   that second batch passed the quality assurance test
11   with Lab B.
12        I understand that the first batch was also
13   sent to Lab B, and it passed the quality assurance
14   test.  I further understand that the compounding
15   pharmacy had some ongoing concerns related to cases to
16   matters that had nothing to do with DOJ concerning
17   some methodology is the term I will use, in terms of
18   Lab A, and the compounding pharmacy asked Lab A to
19   take a look at their methodology.
20        My understanding is that Lab A made some
21   adjustment to their methodology at which point they
22   retested Batch 1, which passed the quality assurance

Page 217

1   pentobarbital?
2       A.  Based on the documents I reviewed and the
3   information that I learned from individuals, I believe
4   the compounding pharmacy did not have experience in
5   compounding pentobarbital.
6       Q.  You believe it did not have experience?
7       A.  Correct.
8       Q.  And what do you -- what in the documents that
9   you reviewed and the communication that you have
10  direct you to that conclusion?
11      A.  I believe that was information provided to me
12  by BOP.
13      Q.  All right.  So just to make sure that I
14  understand, so BOP indicated to you that the
15  compounding pharmacy that is making the compounded
16  pentobarbital for use in judicial lethal injections
17  had not previously compounded pentobarbital?
18      A.  That's my recollection.
19      Q.  Okay.  Has the DOJ requested or are you aware
20  of any records, such as compounding logs, which
21  document the pharmacy's process for compounding the
22  pentobarbital?

Page 243

1  information from the compounding pharmacy.
2        Q.  All right.  You previously referred to two
3  batches that were made for -- you referred to two
4  batches that were tested by Lab A and -- well, I'm
5  sorry.  See this underscores why I have to ask this
6  question.
7        You previously referred to Batch 1, which was
8  given to Lab A for testing and found subpotent; is
9  that correct?
10       A.  That's correct.
11       Q.  All right.  Does the Department of Justice
12 or, to your knowledge, the Bureau of Prisons still
13 intend to use Batch 1 in executions?
14       A.  That -- Batch 1 was then tested by Lab B and
15 Lab A and passed the quality assurance testing.  I
16 don't know that there's been any decision made because
17 there's not an execution that's currently scheduled.
18       Q.  Pardon me.  I apologize, but is your answer
19 "yes," "no," or "I don't know"?
20       A.  Can you repeat the question.
21       Q.  My question was does the Department of
22 Justice -- and to the degree you know, the BOP --