# EXHIBIT 4

CONFIDENTIAL

Page 1

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

---------------------------X
                            )
JAMES ROANE, JR., et al.,   )
                            )
        Plaintiffs,         )
                            )
  v.                        )   Civil Action No.
                            )
ALBERTO GONZALES, et al.,   )   05-2337 (RWR/DAR)
                            )
        Defendants.         )
                            )
---------------------------X

CONFIDENTIAL VIDEOTAPED 30(B)(6) DEPOSITION OF

DRUG ENFORCEMENT ADMINISTRATION,

BY AND THROUGH ITS AGENCY REPRESENTATIVE,

LOREN THOMAS MILLER

Friday, February 14, 2020; 9:13 a.m.

Reported by:
Reported by:  Cindy L. Sebo, RMR, CRR, RPR, CSR, CCR,
CLR, RSA, LiveDeposition Authorized Reporter
Job No. 27021

CONFIDENTIAL

Page 29

1   30(b)(6) — DRUG ENFORCEMENT ADMINISTRATION - MILLER

2      A.    Yes, to a limited extent.

3      Q.    Can you describe that extent?

4      A.    As we talked about earlier, the DEA
5   enforces the Controlled Substances Act and its
6   implementing regulations with regards to the
7   closed system of distribution.

8            So there may have -- there were
9   conversations between DEA and Bureau of Prisons,
10  but the depth of those conversations or the nature
11  of those conversations or even the number of
12  conversations, I do not know.

13           I do know there were conversations,
14  and most likely, since we are involved with
15  enforcing that closed system, the discussion would
16  be how to correctly register to handle the
17  controlled substances involved.

18     Q.    Are you aware that the BOP and other
19  Defendants in this case don't plan to obtain or
20  provide a prescription for the pentobarbital?

21     A.    Yes.

22     Q.    And what is DEA's position with
23  respect to whether or not the absence of a
24  prescription violates the CSA?

25     A.    It does not violate the CSA.

CONFIDENTIAL

Page 134

1  30(b)(6) — DRUG ENFORCEMENT ADMINISTRATION - MILLER
2            MR. PERKINS:  Same objection.
3            THE WITNESS:  No, it's not.
4  BY MR. LUBY:
5      Q.    And is that an accurate description of
6  DEA's position today?
7      A.    No, it's not.
8            MR. PERKINS:  Same objection.
9            THE WITNESS:  No, it's not.
10 BY MR. LUBY:
11     Q.    Has DEA changed its position between
12 2009 and today on this particular question?
13           MR. PERKINS:  Objection to form.
14       And objection: foundation; and beyond the
15       scope of the notice.
16           THE WITNESS:  Not that I'm aware of,
17       no.
18 BY MR. LUBY:
19     Q.    Okay.  Thank you.
20           Has DEA been asked by the
21 Attorney General or DOJ to change its position in
22 this regard?
23           MR. PERKINS:  Objection.  I'm going
24       to assert privilege and instruct the
25       witness not to answer.

Page 136

1   30(b)(6) — DRUG ENFORCEMENT ADMINISTRATION - MILLER
2   subject various communications between
3   Nebraska Department of Correctional Services and
4   the DEA?
5          A.     Yes.
6          Q.     If you could -- I'm sorry.
7                 Do you have -- Mr. Miller, do you have
8   any independent recollection of a teleconference
9   that DEA held with numerous state attorney
10  generals' offices in 2011 concerning the
11  importation of sodium thiopental for use in
12  executions?
13         A.     No.
14                MR. PERKINS:  Objection: foundation;
15     and beyond the scope of the notice.
16                THE WITNESS:  Sorry.
17                No.
18  BY MR. LUBY:
19         Q.     If you could please turn to Page 17 --
20  and by the page number, if you could please refer
21  to the page numbers on the right hand -- the
22  bottom right hand of each page.
23                At the top of Page 17, there's an
24  e-mail from a Wendy Goggin, and is it -- do I
25  understand correctly she was chief counsel of DEA

CONFIDENTIAL

Page 151

```
 1    30(b)(6) — DRUG ENFORCEMENT ADMINISTRATION - MILLER
 2    that this document does not reflect DEA policy as
 3    of 2009?
 4              MR. PERKINS:  I'm going to object:
 5         beyond the scope of the notice.
 6              And I would note that on
 7         February 6th, we sent to Plaintiffs our
 8         objections and responses and our global
 9         objections -- well, you guys can read it.
10         First global objection would apply to this
11         situation.
12    BY MR. VAN TOL:
13         Q.   Okay.  You may answer.
14         A.   I was brought in to DEA headquarters
15    in 2005 to become the policy unit chief.  I'm
16    aware of what the policy was then and continued to
17    be throughout.  There hasn't been a change in the
18    policy.
19              So the information you have presented
20    in front of me, I found surprising.
21         Q.   Let me ask you the same question about
22    Exhibit 20, which is that longer document, which
23    is a -- on the basis -- or is the basis -- is a
24    FOIA request -- in response to a FOIA request.
25              And, in particular, I want to draw
```