# EXHIBIT 5



**U.S. Department of Justice**
Drug Enforcement Administration

NOV 0 3 2011

Case Number:  11-00295-F (1st Release)


Subject:  ALL DOCUMENTS FOR THE PERIOD OF AUGUST 1, 2010 TO JUNE 10, 2011
REGARDING ALL EMAILS, LETTERS, NOTES, DOCUMENTS AND CORRESPONDENCE
OF ANY KIND BETWEEN THE NEBRASKA DEPARTMENT OF CORRECTIONAL
SERVICES (DCS) AND DEA, ETC.


Jerry Soucie
Nebraska Commission on Public Advocacy
The Apothecary Building
140 N. 8th Street, Suite 270
Lincoln, Nebraska  68509



Dear Mr. Soucie:

This letter responds to your Freedom of Information/Privacy Act (FOI/PA) requests dated
June 10, 2011 August 4, 2011, and August 24, 2011, addressed to the Drug Enforcement
Administration (DEA), Freedom of Information/Privacy Act Unit (SARF), seeking access to DEA
records.

We apologize to the delay in responding to your initial request.  Unfortunately, due to the
large number of requests received by DEA for disclosure of records pursuant to the FOI/PA and the
limited resources available to process such requests, this has adversely impacted our response time
to the public.  However, this matter has not impacted the quality of our service and our dedication to
the public.

In regards to your request for expedited treatment, according to the Office of Information
Policy's letter dated June 10, 2011, your request for expedited treatment was granted.
See id. § 16.5(d)(i) (2010).  Therefore, DEA concurs with Office of Information Policy's decision.

Accordingly, your request was taken out of the standard FOIA processing track to be
processed expeditiously with other similar requests.  Please be advised, however, that DEA has
received an unprecedented amount of varied requests regarding the sodium thiopental matter which
have also been placed in the expedited processing track.  Within the expedited processing track,
requests will be processed on a First In, First Out basis.

**Ex 20   Page 1**

Case Number:  11-00318-F                                        Page 2

Additionally, you requested a waiver of document search, review and duplication fees. Please be aware that when a fee waiver is considered, 28 C.F.R. § 16.11(k) requires that we apply six factors to determine whether or not to grant a waiver or reduction of fees.  We have determined that the topic is of "widespread interest", thus, increasing the public's understanding of government operations or activities and there is no indication that you have a commercial interest.  Therefore, your request for a waiver of fees has been granted for this request.

Further tasking memoranda were forwarded to the appropriate offices within the DEA that would be best suited, or would likely maintain the records that are responsive to this request.  As a result, records were located responsive to your request.  Portions not released are being withheld pursuant to the Freedom of Information Act, 5 U.S.C. § 552, and/or the Privacy Act, 5 U.S.C. § 552a.  Please refer to the list enclosed with this letter that identifies the authority for withholding the deleted material, which is indicated by a mark appearing in the block next to the exemption.  An additional enclosure with this letter explains these exemptions in more detail.  The documents are being forwarded to you with this letter.

Certain DEA documents contained information furnished by another government agency. DEA is in the process of consulting with that agency before granting access to the documents in accordance with 28 C.F.R § 16.4 and/or 16.42.  You will be notified if more material is available for release pending results from the consultation.

Certain DEA files contain information that was furnished by another government agency. That information and a copy of your request have been referred for a decision as to access and the agency involved will respond directly to you in accordance with 28 C.F.R § 16.4 and/or 16.42.

If you wish to appeal any denial of your request, you must make your appeal in writing and it must be received by the Office of Information Policy within sixty (60) days of the date of this letter pursuant to 28 C.F.R. § 16.9.  The appeal should be sent to the following address, with the envelope marked "FOIA Appeal":

      DEPARTMENT OF JUSTICE
      OFFICE OF INFORMATION POLICY
      NYAV BUILDING, 11TH FLOOR
      WASHINGTON, D.C.  20530

Case Number:  11-00318-F                                    Page 3


        Lastly, be advised that only a portion of your request has been processed.  Once we are in possession of the remaining records, if any, your request will be processed as expeditiously as possible.  If you have any questions regarding this letter, you may contact FOI Specialist Rita A. Cuellar on (202) 307-7610 or mail your correspondence to:

               DEA HEADQUARTERS
               ATTN:  FOI/PA UNIT (SARF)
               8701 MORRISSETTE DRIVE
               SPRINGFIELD, VIRGINIA  22152

                              Sincerely,

                              Katherine Myrick

                              Katherine L. Myrick, Chief
                              Freedom of Information/Privacy Act Unit
                              FOI/Records Management Section


Enclosures


                    Number of pages withheld:    73

                    Number of pages released:    42

                    Number of pages referred:     6

                    Number of pages consulted:   12


**APPLICABLE SECTIONS OF THE FREEDOM OF INFORMATION AND/OR PRIVACY ACT:**

|  | **Freedom of Information Act**<br>**5 U.S.C. 552** |  |  | **Privacy Act**<br>**5 U.S.C. 552a** |  |
|---|---|---|---|---|---|
| [ ] (b)(1) | [X] (b)(5) | [X] (b)(7)(C) |  | [ ] (d)(5) | [ ] (k)(2) |
| [ ] (b)(2) | [X] (b)(6) | [ ] (b)(7)(D) |  | [X] (j)(2) | [ ] (k)(5) |
| [ ] (b)(3) | [X] (b)(7)(A) | [ ] (b)(7)(E) |  | [ ] (k)(1) | [ ] (k)(6) |
| [ ] (b)(4) | [ ] (b)(7)(B) | [X] (b)(7)(F) |  |  |  |

FREEDOM OF INFORMATION ACT
SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552

(b)(1)  Information which is currently and properly classified pursuant to Executive Order in the interest of the national defense or foreign policy.

(b)(2)  Materials related solely to the internal rules and practices of DEA.

(b)(3)  Information specifically exempted from disclosure by another federal statute.

(b)(4)  Privileged or confidential information obtained from a person, usually involving commercial or financial matters.

(b)(5)  Inter-agency or intra-agency documents which are subject to a privilege, such as documents the disclosure of which would have an inhibitive effect upon the development of policy and administrative direction, or which represent the work product of an attorney, or which reflect confidential communications between a client and an attorney.

(b)(6)  Materials contained in sensitive records such as personnel or medical files, the disclosure of which would constitute a clearly unwarranted invasion of personal privacy.

(b)(7)  Records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information (A) could reasonably be expected to interfere with enforcement  proceedings; (B) would deprive a person of a right to a fair trial or an impartial adjudication; (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy; (D) could reasonably be expected to disclose the identity of a confidential source, including a State, local or foreign agency or authority or any private institution which furnished information on a confidential basis; and, in the case of a record or information compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source; (E) would disclose techniques and procedures for law enforcement investigations or prosecutions or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law, or (F) could reasonably be expected to endanger the life or physical safety of any individual.

PRIVACY ACT
SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552a

(d)(5)  Materials compiled in reasonable anticipation of a civil action or proceeding.

(j)(2)  Material reporting investigative efforts pertaining to the enforcement of criminal law including efforts to prevent, control, or reduce crime or apprehend criminals.

(k)(1)  Information which is currently and properly classified pursuant to Executive Order in the interest of the national defense or foreign policy.

(k)(2)  Material compiled during civil investigations for law enforcement purposes.

(k)(5)  Investigatory material compiled solely for the purpose of determining suitability, eligibility, or qualifications for Federal civilian employment or for access to classified information, the disclosure of which would reveal the identity of the person who furnished information pursuant to an express promise that his identity would be held in confidence, or pursuant to an implied promise of confidentiality if such information was furnished prior to September 27, 1975.

(k)(6)  The substance of tests used to determine individual qualifications for appointment or promotion in Federal Government Service.

(b)(6)

| | |
|---|---|
| **From:** | Gleason, Robert (Chris) |
| **Sent:** | Wednesday, May 25, 2011 8:36 AM |
| **To:** | Goggin, Wendy H.; (b)(6) |
| **Subject:** | Draft Outline for State AG Talk |

**Importance:** High

Folks,

   Attached for review is a draft outline for next week's teleconference with the State AG's. Can you please review and comment – I am interested in comments on form and flow as well as in substance. Also, I would like input on questions we can anticipate. It needs to go to Joe, too, but I wanted an internal CC review first.

(b)(5),(b)(6)



State AG
Discussion.doc



Prison Wardens
CSA-Reg Trainin...

**Tracking:**

1

**Ex 20   Page 5**

(b)(6)

| | |
|---|---|
| **From:** | (b)(6) |
| **Sent:** | Wednesday, May 25, 2011 10:14 AM |
| **To:** | Gleason, Robert (Chris) |
| **Cc:** | (b)(6) |
| **Subject:** | RE: Draft Outline for State AG Talk |

Chris:  In response to your question

(b)(5)

I didn't see anything else yet, but I'll take another look and, if I have any other suggested edits, I'll let you know.  Thanks.

-- Dan

**From:** Gleason, Robert (Chris)
**Sent:** Wednesday, May 25, 2011 8:36 AM
**To:** Goggin, Wendy H.; (b)(6)
**Subject:** Draft Outline for State AG Talk
**Importance:** High

Folks,

Attached for review is a draft outline for next week's teleconference with the State AG's.  Can you please review and comment – I am interested in comments on form and flow as well as in substance.  Also, I would like input on questions we can anticipate.  It needs to go to Joe, too, but I wanted an internal CC review first.

(b)(5),(b)(6)

<< File: State AG Discussion.doc >>      << File: Prison Wardens CSA-Reg Training 5-23-2011.doc >>

1

(b)(6)

| | |
|---|---|
| **From:** | Gleason, Robert (Chris) |
| **Sent:** | Thursday, May 26, 2011 9:21 AM |
| **To:** | (b)(6) |
| **Subject:** | RE: State AG Discussion 2.doc |

**Importance:**    High

Thanks (b)(6) I've incorporated most of your suggestions, but do have some questions.  I'd like to discuss ASAP once you've had a chance to re-review.  I need to get this through OD and to DOJ.

**From:** (b)(6)
**Sent:** Wednesday, May 25, 2011 4:54 PM
**To:** Gleason, Robert (Chris)
**Subject:** State AG Discussion 2.doc

<< File: State AG Discussion 2.doc >>

In the interest of time, I wanted to get you our initial comments.  I would like to review again in the morning.

**Tracking:**

1

(b)(6)

**From:**        (b)(6)
**Sent:**        Wednesday, May 25, 2011 12:20 PM
**To:**          (b)(6)
**Subject:**     RE: Draft Outline for State AG Talk

My comments, etc., are in track changes.

(b)(5),(b)(6)

State AG
Discussion RKM.doc

**From:** (b)(6),
**Sent:** Wednesday, May 25, 2011 9:22 AM
**To** (b)(6)
**Subject:** FW: Draft Outline for State AG Talk
**Importance:** High

I will review.  Can you review too?  Thanks.

**From:** Gleason, Robert (Chris)
**Sent:** Wednesday, May 25, 2011 8:36 AM
**To:** Goggin, Wendy H. (b)(6)
**Subject:** Draft Outline for State AG Talk
**Importance:** High

Folks,

   Attached for review is a draft outline for next week's teleconference with the State AG's.  Can you please review and comment – I am interested in comments on form and flow as well as in substance.  Also, I would like input on questions we can anticipate.  It needs to go to Joe, too, but I wanted an internal CC review first.

(b)(5),(b)(6)

<< File: State AG Discussion.doc >>      << File: Prison Wardens CSA-Reg Training 5-23-2011.doc >>

1

(b)(6)

**From:**
**Sent:** (b)(6) Thursday, May 26, 2011 9:35 AM
**To:** (b)(6)
**Subject:** RE: State AG Discussion 2.doc

My changes are tracked on top of your changes in the attachment – they should show in a different color.

(b)(5)

State AG
Discussion 2.doc

**From:** (b)(6)
**Sent:** Wednesday, May 25, 2011 5:09 PM
**To:** (b)(6)
**Subject:** FW: State AG Discussion 2.doc

Thanks.

**From:** (b)(6)
**Sent:** Wednesday, May 25, 2011 4:54 PM
**To:** Gleason, Robert (Chris)
**Subject:** State AG Discussion 2.doc

<< File: State AG Discussion 2.doc >>

In the interest of time, I wanted to get you our initial comments.  I would like to review again in the morning.

1

(b)(6)

**From:** Gleason, Robert (Chris)
**Sent:** Thursday, May 26, 2011 9:38 AM
**To:** (b)(6)
**Subject:** RE: State AG Discussion 2.doc

10:00 is fine.

**From:** (b)(6)
**Sent:** Thursday, May 26, 2011 9:38 AM
**To:** Gleason, Robert (Chris)
**Subject:** FW: State AG Discussion 2.doc

Hi Chris, (b)(6) made a few edits. Here they are.  Could we meet at 10:00 or 10:15?

**From** (b)(6)
**Sent:** Thursday, May 26, 2011 9:35 AM
**To:** (b)(6)
**Subject:** RE: State AG Discussion 2.doc

My changes are tracked on top of your changes in the attachment – they should show in a different color.

(b)(5)

<< File: State AG Discussion 2.doc >>

**From:** (b)(6)
**Sent:** Wednesday, May 25, 2011 4:54 PM
**To:** Gleason, Robert (Chris)
**Subject:** State AG Discussion 2.doc

<< File: State AG Discussion 2.doc >>

In the interest of time, I wanted to get you our initial comments.  I would like to review again in the morning.

**Tracking:**

1

(b)(6)

**From:** (b)(6)
**Sent:** Friday, May 27, 2011 9:27 AM
**To:** Gleason, Robert (Chris)
**Subject:** FW: Talk for State AGs

Hi Chris --

I thought we noted these cites, but they may have slipped through on one of the reworked drafts.

p. 2 – in V.b.1. – cite should be to 1301.13(e)(1)
p. 4 – in VII.c.i. – cite should be to 822(e)

Minor fixes on page 4 VII.b.ii. (your DoC instead of you DoC) and on page 5 XI.a. space between to and another.

**From** (b)(6)
**Sent:** Thursday, May 26, 2011 3:34 PM
**To:** (b)(6)
**Subject:** FW: Talk for State AGs

**From:** Gleason, Robert (Chris)
**Sent:** Thursday, May 26, 2011 11:57 AM
**To** (b)(6)
**Subject:** FW: Talk for State AGs

FYI – here's the current version.

**From:** Gleason, Robert (Chris)
**Sent:** Thursday, May 26, 2011 11:45 AM
**To:** Rannazzisi, Joseph T.
**Subject:** Talk for State AGs

PREDECISIONAL ATTORNEY-CLIENT COMMUNICATION

Joe,

Attached for your review is a draft outline for next week's teleconference with the State AGs.

(b)(5)

1

**Ex 20   Page 11**

(b)(5)

<< File: State AG Discussion 2.doc >>

2

**Ex 20   Page 12**

(b)(6)

(b)(6)

**From:**
**Sent:** Friday, May 27, 2011 11:55 AM
**To:** Gleason, Robert (Chris)
**Cc:** Rannazzisi, Joseph T.; Boggs, Gary
**Subject:** AG talking points

Chris,

Joe is on leave today, but he cleared the attached TPs (just minor edits).  Thanks for your help. (b)(6)

(b)(6)    Executive Assistant | Office of the Deputy Assistant Administrator |
Office of Diversion Control | Drug Enforcement Administration |
(b)(6)

State AG
Discussion 2.doc

1

(b)(6)

| | |
|---|---|
| **From:** | Goggin, Wendy H. |
| **Sent:** | Tuesday, May 31, 2011 11:27 AM |
| **To:** | Rannazzisi, Joseph T. |
| **Cc:** | Gleason, Robert (Chris) |
| **Subject:** | POC for sodium thiopental issues |

Have you selected some person to be the DEA POC? We should probably have that person's contact info ready to give to the state AG's next Thursday.
W

*Wendy Goggin*
*Chief Counsel*
*Drug Enforcement Administration*
(b)(6)

1

(b)(6)

**From:**        Goggin, Wendy H.
**Sent:**        Tuesday, May 31, 2011 5:09 PM
**To:**          Gleason, Robert (Chris)
**Subject:**     RE: Outline for AG Telecon - with Security & Recordkeeping Added

This looks fine to me. I sent an email to Joe soliciting POC nominations. No response.    (b)(6)

(b)(6)

**From:** Gleason, Robert (Chris)
**Sent:** Tuesday, May 31, 2011 2:11 PM
**To:** (b)(6)
**Cc:** Goggin, Wendy H.; Rannazzisi, Joseph T.
**Subject:** Outline for AG Telecon - with Security & Recordkeeping Added

(b)(5)

I am forwarding it for your review and comment.        (b)(5)

<< File: State AG Discussion.doc >>

1

(b)(6)

**Subject:**          State AG Telecon
**Location:**         Chris' Office

**Start:**            Wed 6/1/2011 3:30 PM
**End:**              Wed 6/1/2011 4:30 PM
**Show Time As:**     Tentative

**Recurrence:**       (none)

**Meeting Status:**   Not yet responded

**Organizer:**        Gleason, Robert (Chris)
**Required Attendees:** (b)(6)

To discuss possible Q&As.

1

(b)(6)

**From:** Goggin, Wendy H.
**Sent:** Wednesday, June 01, 2011 3:58 PM
**To:** (b)(6)                Gleason, Robert (Chris)
**Subject:** RE: State AG Conference Call Tomorrow

Thanks.

**From:** (b)(6)
**Sent:** Wednesday, June 01, 2011 3:53 PM
**To:** Gleason, Robert (Chris); Goggin, Wendy H.
**Subject:** FW: State AG Conference Call Tomorrow

Wendy and Chris,

Below is the response from OD regarding the conference call tomorrow and a POC for sodium thiopental registration issues.

(b)(6)

**From:** Boggs, Gary
**Sent:** Wednesday, June 01, 2011 3:43 PM
**To:** (b)(6)
**Subject:** Re: State AG Conference Call Tomorrow

We will be on the call tomorrow and (b)(6)      will be the POC for registration questions and Joe will be the POC for other related questions.

**From** (b)(6)
**Sent:** Wednesday, June 01, 2011 02:54 PM
**To:** Boggs, Gary
**Subject:** State AG Conference Call Tomorrow

Gary,

I was in a meeting with Wendy and Chris and they wanted me to find out if you or Joe were planning to participate in the conference call tomorrow with the State Attorney Generals. It is scheduled to begin at 1:00 p.m.

Also, I was asked to see if you have a Diversion POC for sodium thiopental registration questions. This is in response to DOJ advising that they want DEA to be able to respond to questions from registrants/states regarding this issue within 48 hours.

Thanks,

(b)(6)
Executive Assistant
DEA Office of Chief Counsel
(b)(6)

1

(b)(6)

| | |
|---|---|
| **From:** | Goggin, Wendy H. |
| **Sent:** | Wednesday, June 01, 2011 4:40 PM |
| **To:** | Rannazzisi, Joseph T.; Boggs, Gary |
| **Cc:** | Gleason, Robert (Chris) |
| **Subject:** | fun conference call with state AGs tomorrow |

Do you want to join Chris and me in his office for this conference call?

*Wendy Goggin*
*Chief Counsel*
*Drug Enforcement Administration*

(b)(6)

1

**Ex 20   Page 18**

(b)(6)

**From:**       (b)(6)
**Sent:**      Monday, June 06, 2011 10:56 AM
**To:**       (b)(6)     (b)(6)
**Subject:**  FW: CSA Overview

Can you review?  Thanks.

**From:** Gleason, Robert (Chris)
**Sent:** Friday, June 03, 2011 4:07 PM
**To:** (b)(6)                   Rannazzisi, Joseph T.
**Subject:** CSA Overview

Folks,

   I've received  a half dozen or so requests for the notes from the talk with the AG Offices yesterday.  I have modified my notes, and here I what I propose to send out.  Can you review and give me your thoughts?

CSA Overview.doc

(b)(6)

**From:** (b)(6)
**Sent:** Friday, June 03, 2011 4:20 PM
**To:** Gleason, Robert (Chris)
**Subject:** RE: CSA Overview

Looks fine to me.

---

**From:** Gleason, Robert (Chris)
**Sent:** Friday, June 03, 2011 4:07 PM
**To:** Murphy, (b)(6)   Rannazzisi, Joseph T.
**Subject:** CSA Overview

Folks,

I've received a half dozen or so requests for the notes from the talk with the AG Offices yesterday. I have modified my notes, and here I what I propose to send out. Can you review and give me your thoughts?

<< File: CSA Overview.doc >>

1

Ex 20   Page 20

(b)(6)

**From:**
**Sent:** (b)(6)
Monday, June 06, 2011 3:37 PM
**To:** Gleason, Robert (Chris)
**Cc:** (b)(6)
**Subject:** CSA Overview (b)(6) docx

CSA Overview
(b)(6) docx

Hi Chris.   Here are our comments. (b)(6)

1

(b)(6)

| From: | Gleason, Robert (Chris) |
|---|---|
| Sent: | Tuesday, June 07, 2011 8:44 AM |
| To: | 'Mark Hudson' |
| Subject: | RE: Conference Call re DEA Regulation pertaining to Sodium thiopental |
| Attachments: | CSA Overview.docx |

As requested.

**From:** Mark Hudson (b)(6)
**Sent:** Thursday, June 02, 2011 1:45 PM
**To:** Gleason, Robert (Chris)
**Subject:** Conference Call re DEA Regulation pertaining to Sodium thiopental

Please reply with any information you have to supplement the discussion during the conference call regarding obtaining and dispensing sodium thiopental.

Thank you.

Mark A. Hudson
Senior Counsel
Office of the Attorney General and Reporter
State of Tennessee

(b)(6)

_____NOTICE_____
This e-mail message and any attachment to this e-mail message contain
information that may be legally PRIVILEGED and CONFIDENTIAL from the
State of Tennessee Attorney General's Office, Civil Rights & Claims
Division. If you are not the intended recipient, you must not review,
transmit, convert to hard copy, copy, use or disseminate this e-mail or
any attachments to it. If you have received this e-mail in error,
please immediately notify us by return e-mail or by telephone at
615-532-2500 and delete this message entirely from your system. Receipt
by anyone other than the intended recipient is not a waiver of the
attorney-client or work-product privilege. Opinions, conclusions, and
other information in this message that do not relate to official
business shall be understood as neither given nor endorsed by the State
of Tennessee.

## Overview of the "Closed System" Established by the Federal CSA

I.  The primary diversion control mechanism of the federal Controlled Substances Act (CSA) is the "closed system" it establishes. Generally speaking, any activity involving a controlled substance that is not specifically authorized by the CSA is prohibited. The CSA establishes and enforces this closed system through three general mechanisms
   a.  Registration requirements
   b.  Recordkeeping requirements
   c.  Security requirements

II. Registration Basics
   a.  Every entity that handles a controlled substance must register with the Drug Enforcement Administration (DEA). Furthermore, 21 U.S.C. § 822(b) says that registrants are authorized to possess, manufacture, distribute or dispense controlled substances *to the extent authorized by their registration*.
      i.   There are different kinds of DEA registrations that authorize different kinds of activities. See 21 C.F.R. § 1301.13(e)
      ii.  Registrations can be limited by drug schedule
      iii. Registrations are tied to a particular physical location. 21 U.S.C. § 822(e); 21 C.F.R. § 1301.12.
      iv.  Simply having a DEA registration may not be sufficient. The registration must authorize the particular activity you want to engage in *and* it must include the particular drug class or drug schedule that you're dealing with *and* it must be issued for the location where the particular activity is being carried out.

III. Legitimate sources for obtaining a controlled substance.
   a.  One option: Acquiring it directly on the international market. In other words, "importing" it.
      i.   In order to do that, an individual or entity would need to be registered as an "importer."
      ii.  Registration to import required by 21 U.S.C. §§ 957, 958; 21 C.F.R. § 1301.11
      iii. An entity with a valid importer registration can lawfully import a controlled substance under the CSA, provided their import registration includes the schedule of the drug being imported.
      iv.  Additional requirements apply before actually importing the controlled substance. Those requirements depend on what schedule of controlled substance is being imported.
         1.  Before importing a schedule III non-narcotic, for example, an importer must notify DEA 15 days in advance under 21 U.S.C. § 952 and 21 C.F.R. § 1312.18(b). This is done via a form DEA 236.

1

        2. Before importing a schedule II drug, an entity must apply for and receive an import permit from DEA under 21 U.S.C. § 952 and 21 C.F.R. § 1312.11.

    v. The forms for these steps are found on the DEA website at www.deadiversion.gov.

b. If the controlled substance is available domestically, there are several options

    i. Acquire it from a DEA registered importer who has imported or will import it. Section 1301.13(e)(1) of 21 C.F.R. allows registered importers to distribute a controlled substance. So if an entity has a valid registration to import, that importer can distribute it to another properly registered entity.

    ii. Acquire it from a DEA registered manufacturer.

        1. Registration to manufacture required by 21 U.S.C. §822(a)(1) and 21 C.F.R. § 1301.11

        2. Under 21 C.F.R. § 1301.13(e)(1), a manufacturer is also allowed to distribute a controlled substance.

        3. So if there's a registered domestic manufacturer, a properly registered entity can acquire it from them.

    iii. Acquire it from a registered "distributor."

        1. Registration to distribute required by 21 U.S.C. § 822(a)(1) and 21 C.F.R. § 1301.11

        2. "Distribute" defined by 21 U.S.C. § 802(11).

        3. There will often be a manufacturer and one or more distributors in the supply chain before a controlled substance comes to a pharmacy or hospital/clinic from which it will be dispensed. Generally speaking, within the closed system established by the CSA, a "distribution" is what occurs when controlled substances move through that chain. The CSA calls the transfer of a controlled substance from one DEA registrant to another a "distribution."

    iv. An entity with a DEA registration to "dispense" controlled substances (See Sections IV and V below) ordinarily is not permitted to "distribute" a controlled substance to another registrant. There is a limited exception in 21 C.F.R. § 1307.11, however, that allows an entity with a valid DEA registration to *dispense* a controlled substance to *distribute* it to another entity if

        1. The entity that is receiving the controlled substance is also registered with DEA to dispense,

        2. Records of the transaction are kept, and

        3. The total amount transferred does not exceed 5% of the total dosage units of controlled substances dispensed by the transferring entity within that calendar year.

2

IV.   The next question is what does an entity need to do in order to be a legitimate buyer?  In other words, what kind of registration is necessary?
   a.   The type of registration an entity needs is tied to the activity in which it wants to engage.
   b.   In order to give a controlled substance to an "ultimate user," that is, an individual who is not a registrant, an entity would need a registration that permits "dispensing."
        i.   Requirement for registration to dispense found in 21 U.S.C. § 822(a)(2); 21 C.F.R. § 1301.11.
        ii.  "Dispense" defined by 21 U.S.C. § 802(10) – as delivering a controlled substance to an ultimate user or research subject pursuant to the lawful order of a practitioner.  "Distribution" goes from a registrant to another registrant.  "Dispensing" goes from registrant to an "ultimate user," who is not a registrant.  A registration authorizing dispensing is required in order to give a controlled substance to an ultimate user.
   c.   A DEA registration to import, manufacture or distribute carries with it implicit authority to possess, but none of those registrations authorize a registrant to dispense.  Consequently, in order to give a controlled substance to a patient, research subject, or other ultimate user, an entity that has a registration to import, manufacture, or distribute also would need an additional registration that authorizes dispensing.

V.    "Dispensing" registrations are subdivided into different categories.
   a.   Types of dispensers
        i.   Individual Practitioner.  These are _individuals_ who are authorized by states to handle controlled substances – Typically doctors, dentists, veterinarians, and so forth.  21 C.F.R. § 1300.01(b)(17)
        ii.  Hospital/Clinic/Institutional Practitioner.  In this case, the institution itself is registered, and the institution itself orders and possesses controlled substances.  21 C.F.R. § 1300.01(b)(18).  In some circumstances, individual practitioners who work in the facility can use controlled substances out of the institution's stock.  See Section VIII.b.ii below.
        iii. Pharmacy.
   b.   With respect to institutions, the type of DEA registration an entity will hold (i.e., hospital/clinic/institutional practitioner or pharmacy) will depend largely on the law of the state in which the entity is located.  DEA registers entities and individuals to the extent authorized by state law.  21 U.S.C. § 823(f).
   c.   An entity with a valid DEA registration either as a hospital/clinic/institutional practitioner or as a pharmacy may lawfully possess and dispense a controlled substance [here's an important caveat] _at its registered location_.
        i.   21 U.S.C. § 822(e) and 21 C.F.R. § 1301.12 require a separate registration at each principal place of business where controlled

3

substances are manufactured, distributed, or dispensed. So registration is keyed to an address.

    ii. If an institution has multiple locations where controlled substances may be used or stored, it may be necessary to obtain a DEA registration for each location and to implement additional procedures regarding the storage and movement of the controlled substances.

VI.      Final question is what is required for an institution to actually dispense a controlled substance.  The answer differs depending on whether the institution is registered as a pharmacy or as a hospital/clinic/institutional practitioner.

VII.      If registered as a pharmacy
    a. Controlled substances can only be dispensed pursuant to a prescription
        i. Requirement found in 21 U.S.C. § 829(a) & 21 C.F.R. § 1306.11 for schedule II.
        ii. Requirement found in 21 U.S.C. § 829(b) & 21 C.F.R. § 1306.21 for schedules III – IV.
    b. Who can write a prescription?  Under 21 C.F.R. § 1306.03, any individual practitioner one who is authorized to do so by the state in which he or she practices and who himself/herself has a DEA registration.
    c. Requirements for a valid prescription found in 21 C.F.R. §§ 1306.04 & 1306.05

VIII.      If registered as a hospital/clinic
    a. Can dispense pursuant to a prescription (see above) *or* pursuant to an order of an individual practitioner for the immediate administration to the ultimate user.
        i. Requirement found in 21 C.F.R. § 1306.11(c) for schedule II
        ii. Requirement found in 21 C.F.R. § 1306.21(c) for schedules III-V.
    b. Who can issue an order?
        i. Just like with a prescription, any registered practitioner can.
        ii. Also, under 21 C.F.R. § 1301.22(c), an individual practitioner who is an agent or employee of the institution can dispense, administer or prescribe a controlled substance under the *institution's DEA registration –* i.e., he or she doesn't need his or her own registration - if
            1. It's done in usual course of professional practice,
            2. The jurisdiction in which he or she is located permits it,
            3. The institution permits it,
            4. The person is acting in the scope of employment,
            5. The institution has an internal designator for agents or employees with this authority, and
            6. The institution will make a list of these designations available to law enforcement upon request.

4

IX. Security and recordkeeping requirements
   a. Along with Registration, Security and Recordkeeping are key components of enforcing the closed system.
   b. Security
      i. Under 21 C.F.R. § 1301.71(a) – a registrant must provide effective controls and procedures to guard against diversion.
      ii. 21 C.F.R. §§ 1301.72 through 1301.76 detail the necessary standards.
      iii. Under 21 C.F.R. § 1301.71(b), the DEA Administrator has discretion to find "substantial compliance" with these standards acceptable based on the overall security system.
      iv. Under 21 C.F.R. § 1301.71(d), a registrant may send details of their security protocol to the local DEA SAC or to the Registration Unit at DEA Headquarters to determine adequacy of security.
   c. Recordkeeping
      i. Under 21 U.S.C. § 827 and 21 C.F.R. § 1304.04, registrants must keep complete records of all transactions involving controlled substances.
         1. Records need to accurately reflect each substance manufactured, imported, received, sold, delivered, exported, or otherwise disposed of. 21 C.F.R. § 1304.21(a).
         2. The information that records must contain is defined at 21 C.F.R. § 1304.22.
         3. No specific format is required, except that transactions involving schedule II controlled substances must be recorded on a DEA Form 222 ("Order Form"). 21 C.F.R. § 1305.03.
         4. Records need to be kept for two years. 21 U.S.C. § 827(b); 21 C.F.R. § 1304.04(a).
      ii. There is also a requirement for an inventory which must be taken every two years of all controlled substances on hand. Must keep a copy of the inventory for two years, as well. 21 C.F.R. § 1304.11.

5

(b)(6)

**From:** Gleason, Robert (Chris)
**Sent:** Tuesday, June 07, 2011 8:48 AM
**To:** 'Spillane, Mike'
**Subject:** RE: 6-2-2011 call
**Attachments:** CSA Overview.docx

I am glad that you found the discussion useful. I was concerned that, given the subject matter and format, it would be excruciatingly boring! Here is the synopsis that we discussed.

Sincerely,

Chris Gleason
Deputy Chief Counsel

**From:** Spillane, Mike (b)(6)
**Sent:** Thursday, June 02, 2011 2:08 PM
**To:** Gleason, Robert (Chris)
**Subject:** 6-2-2011 call

Sir, that was an extremely informative presentation. I was hoping that when you prepare the synopsis of the relevant statutory and regulatory sections that you mentioned, you would please e-mail me a copy. Also I will give our DOC's general counsel your e-mail address as she may have questions on identifying proper suppliers. Thanks again sir. Great job!

Mike Spillane
Assistant Attorney General
Missouri

1

(b)(6)

**From:** Gleason, Robert (Chris)
**Sent:** Tuesday, June 07, 2011 8:49 AM
**To:** 'Zapp, Amy'
**Subject:** RE: Today's Conference Call
**Attachments:** CSA Overview.docx

Ms. Zapp:

Attached is the summary we discussed.  Thank you for participating in the call.

Sincerely,

Chris Gleason
Deputy Chief Counsel

**From:** Zapp, Amy (b)(6)
**Sent:** Thursday, June 02, 2011 3:37 PM
**To:** Gleason, Robert (Chris)
**Subject:** Today's Conference Call

Mr. Gleason,

At your convenience, would you please forward to me the summary you are preparing of the information provided during today's conference call about the Controlled Substances Act?  Thank you.

Amy Zapp
Chief Deputy Attorney General
Special Litigation Section
Criminal Law Division
PA OFFICE OF ATTORNEY GENERAL
16th Floor – Strawberry Square
Harrisburg, PA  17120
(b)(6)

E-Mail: (b)(6)

1

(b)(6)

| | |
|---|---|
| **From:** | Gleason, Robert (Chris) |
| **Sent:** | Tuesday, June 07, 2011 8:50 AM |
| **To:** | 'Joe Cordi' |
| **Subject:** | RE: Statutes and Regulations Regarding Lethal Injection |
| **Attachments:** | CSA Overview.docx |

Dear Mr. Cordi:

Attached is the synopsis we discussed. Thank you for participating in the call.

Sincerely,

Chris Gleason
Deputy Chief Counsel

-----Original Message-----
From: Joe Cordi (b)(6)
Sent: Thursday, June 02, 2011 6:24 PM
To: Gleason, Robert (Chris)
Cc (b)(6)
Subject: Statutes and Regulations Regarding Lethal Injection

Dear Mr. Gleason,

Thank you for the information that you provided during today's conference call concerning federal statutes and regulations as they relate to capital punishment by means of lethal injection. As I mentioned at the end of the call, it would be helpful if you would please send me a list of the statutes and regulations that you discussed. Thank you.

Best regards,

Joe Cordi
Assistant Attorney General
323 Center Street, Suite 200
Little Rock, AR 72201
(b)(6)

1

**Ex 20   Page 30**

(b)(6)

| | |
|---|---|
| **From:** | Gleason, Robert (Chris) |
| **Sent:** | Tuesday, June 07, 2011 8:47 AM |
| **To:** | 'Lang, Timothy (ATG)' |
| **Subject:** | RE: Teleconference today |
| **Attachments:** | CSA Overview.docx |

I am glad you found the discussion helpful. Attached is the promised list of citations. With respect to registered importers, the best point of contact for you is (b)(6)  who is the Chief of DEA's Registration Unit. He can be reached at (b)(6)

Sincerely,

Chris Gleason
Deputy Chief Counsel

**From:** Lang, Timothy (ATG) (b)(6)
**Sent:** Thursday, June 02, 2011 1:52 PM
**To:** Gleason, Robert (Chris)
**Subject:** Teleconference today

Chris,

Thank you for the informative discussion today about the laws and procedures regarding the acquisition of sodium thiopental and other substances used by state departments of corrections in administering capital punishment.

You offered to provide a list of pertinent citations to the Controlled Substances act and applicable DEA rules. I would appreciate a copy when you create the list, along with any other information you can share about the identity of registered importers of thiopental.

Thank you very much.

Tim Lang

Sr. Assistant Attorney General

Washington Attorney General's Office

Corrections Division

(b)(6)

(b)(6)

1

(b)(6)

| | |
|---|---|
| **From:** | Gleason, Robert (Chris) |
| **Sent:** | Wednesday, June 08, 2011 7:22 AM |
| **To:** | 'David Tatarsky' |
| **Subject:** | RE: chemicals for lethal injection |
| **Attachments:** | CSA Overview.docx |

Good morning, Mr. Tatarsky:

   Attached is the summary we discussed during the telephone conference.  Thank you for participating.

Sincerely,

Chris Gleason
Deputy Chief Counsel

**From:** David Tatarsky (b)(6)
**Sent:** Tuesday, June 07, 2011 5:36 PM
**To:** Gleason, Robert (Chris)
**Cc:** (b)(6)
**Subject:** chemicals for lethal injection

Mr. Gleason:

Thanks to you and the other DEA staff for the telephone presentation to Departments of Correction/Attorneys General on how to legally obtain chemicals used for lethal injection purposes.  I believe you agreed that you would provide a printout of the citations to the various statutes and regulations referenced in you presentation. Please email a copy to me at your earliest convenience.  Thanks.

**David M. Tatarsky**
**General Counsel**
**S.C. Dept. of Corrections**
**P.O. Box 21787**
**Columbia, SC 29221-1787**

(b)(6)

1

**Registration Issues**

I. Introduction

II. I've been asked to talk to you all about the basic framework of the Federal
   Controlled Substances Act (CSA) and how it relates to a state Department of
   Corrections (DoC) obtaining, maintaining and dispensing a controlled
   substance. Many different specific scenarios, and this will necessarily be
   somewhat generic, but my hope is to give an overview of basic requirements.   [(b)(5)]

   a. The CSA requirements apply to controlled substances in all situations – so
      what we'll discuss applies to a pharmacy or a hospital just as it would a
      medical clinic in a prison. And they apply whether the prison clinic is
      obtaining it for an execution or for administration to sick inmates.

   b. Approach that I think would make the most sense is a step by step
      approach
         i. What's needed to acquire a controlled substance.
        ii. What's required in order to maintain it until it's needed.
       iii. What's required in order to dispense it and
        iv. What's required to transfer a controlled substance to another entity.

   c. To do this we need to cover a bit of the CSA first for context.

III. Primary diversion control mechanism of the CSA is the "closed system" it
    establishes. Generally speaking, any activity involving a controlled substance
    that is not specifically authorized is prohibited. CSA establishes and enforces
    this closed system through three general mechanisms

    a. Registration requirements
    b. Recordkeeping, inventory & inspection requirements
    c. Security requirements

    [(b)(5)]

IV. Of those three, we're going to focus on the registration requirement today.

    a. From importers, manufactures, wholesalers, retailers, through those who
       dispense to ultimate user, every entity that handles a controlled substance
       must register with DEA, and that registration must authorize the activities
       in which the entity seeks to engage and must include the specific
       schedules for the controlled substances used by the registrant. 21 U.S.C. §
       822(b) says registrants are authorized to possess, manufacture, distribute
       or dispense *to the extent authorized by their registration.*
          i. So there are different kinds of DEA registrations that authorize
             different kinds of activities
         ii. Similarly, registrations can be limited by drug schedule
        iii. Also, registrations are tied to a particular physical location.
         iv. Simply having a DEA registration is not sufficient. The
             registration must authorize the particular activity you want to
             engage in *and* it must include the particular drug class or drug

1

schedule that you're dealing with _and_ it must be issued for the location where the particular activity is being carried out.

b. So, as you follow controlled substances through the process need to ask "Are we registered for this activity, for this drug schedule, and at this location?"

V. With that background in mind, let's talk about first step in the process, which would be how should a DoC acquire a needed controlled substance. First step is to identify a legitimate source for acquiring a controlled substance. Several different options.

a. One option: Acquiring it directly on the international market. In other words, "importing" it.

   i. In order to do that, a Department of Corrections (DoC) would need to be registered as an "importer."

   ii. Registration to import required by 21 U.S.C. §§ 957, 958; 21 C.F.R. § 1301.11

   iii. A DoC with a valid importer registration can lawfully import a controlled substance under the CSA, provided their import registration includes the schedule of the drug being imported.

   iv. There are a number of registered importers. We can provide a list if it would help. Also, we are aware of at least one registered importer who is making arrangements to import sodium thiopental.

   v. Additional requirements apply before you actually import the controlled substance. Those requirements depend on what schedule of controlled substance you're importing.

      1. If you're importing a schedule III non-narcotic, for example, you must notify DEA 15 days in advance under 21 U.S.C. § 952 and 21 C.F.R. § 1312.18(b). This is done via a form DEA 236.

      2. If you're importing a schedule II drug, you must apply for and receive an import permit from DEA before importing under 21 U.S.C. § 952 and 21 C.F.R. § 1312.11.

   vi. The forms for these steps are found on website at www.deadiversion.gov.

b. If it's available and you want to acquire it domestically, there are a couple of options

   1. Acquire it from a DEA registered importer. Section 1301.13(e)(1) of 21 C.F.R. allows registered importers to distribute a controlled substance. So if an entity has a valid registration to import, that entity can distribute it to another properly registered entity..

   2. Acquire it from a DEA registered manufacturer.

      a. Registration to manufacture required by 21 U.S.C. §822(a)(1) and 21 C.F.R. § 1301.11

      b. Under 21 C.F.R. § 1301.13(e)(1), a manufacturer is also allowed to distribute a controlled substance.

2

      c. So if there's a registered domestic manufacturer, a properly registered entity can acquire it from them.

   3. Acquire it from a registered "distributor."

      a. Registration to distribute required by 21 U.S.C. § 822(a)(1) and 21 C.F.R. § 1301.11

      b. "Distribution" defined by 21 U.S.C. § 802(11).

      c. Basically, within the closed system, the act of distribution typically is what occurs when controlled substances move through the chain from manufacturer to pharmacy. Distribution goes from one DEA registrant to another. Will often be a manufacturer and one or more distributors in the chain before it comes to the pharmacy.

      d. This presupposes that the distributor is in lawful possession. That is, a distributor registration does not permit importation. So if a registered distributor unlawfully imported a controlled substance, that would not be a legitimate source.

   4. We've gotten some questions about the possibility of acquiring it from another state that has a supply. In certain limited circumstances, that is possible. I will explain that, but I think it would be helpful to move on to the next point and then circle back.

VI. We've talked about legitimate sellers. Next question is what does a DoC need to do in order to be a legitimate buyer? In other words, what kind of registration is necessary?

   a. Remember, the type of registration you need is tied to the activity in which you want to engage.

   b. In this instance, the DoC wants the controlled substances to be able to give them to inmates.

      i. For purposes of the CSA, that act is called "dispensing."

      ii. Requirement for registration to dispense found in 21 U.S.C. § 822(a)(2); 21 C.F.R. § 1301.11.

      iii. "Dispense" defined by 21 U.S.C. § 802(10) – as delivering a controlled substance to an ultimate user or research subject pursuant to the lawful order of a practitioner. "Distribution" goes from a registrant to another registrant. "Dispensing" goes from registrant to an "ultimate user," who is not a registrant. Need a registration authorizing dispensing to do that.

   c. A DEA registration to import, manufacture or distribute carries with it implicit authority to possess, but none of those registrations authorize a registrant to dispense. Consequently, DoC needs a registration that authorizes dispensing in order to give it to an inmate.

3

VII. "Dispensing" registrations subdivided into different categories. So next question is "what kind of dispenser does a DoC want/need to be?"
  a. Relevant types of dispensers
      i. Individual Practitioner – These are *individuals* who are authorized by states to handle controlled substances – Doctors, dentists, veterinarians. [Practitioner defined at 21 U.S.C. § 802(21)]
      ii. Hospital/Clinic/Institutional Practitioner. In this case, the institution itself is registered, and the institution itself orders and possesses controlled substances. In some circumstances, individual practitioners who work in the facility can use controlled substances out of the institution's stock, as I'll discuss in a few minutes.
      iii. Pharmacy
  b. What type of DEA registration your DoC will hold will depend on your state's requirements and how you are set up. DEA registers entities and individuals to the extent authorized by state law. 21 U.S.C. § 823(f).
      i. So, your state law will dictate whether DoC is registered as an institution (i.e., hospital/clinic) or as a pharmacy.
      ii. If your state considers your DoC a pharmacy, DEA will register it as a pharmacy. If your state considers your DoC to be a hospital/clinic, DEA will register it as a hospital/clinic.
  c. However that is accomplished, a DoC with a valid registration may lawfully possess a controlled substance [here's an important caveat] *at their registered location*.
      i. 21 U.S.C. § 822(e) and 21 C.F.R. § 1301.12 require a separate registration at each principal place of business where controlled substances are manufactured, distributed, or dispensed. So registration is keyed to an address.
      ii. I bring this up because some of you may have multiple complexes spread throughout the state.
      iii. A single prison compound would probably be a single principal place of business.
      iv. But if you have multiple locations, you may need to review your procedures regarding where you store the controlled substance or you may need to get multiple registrations.
      v. DEA registration section can work with you on an individual basis to get that straight.

VIII. So, now the DoC has appropriately obtained it and appropriately possesses it. Next (and last) question is what is required to actually dispense it. Answer different depending on whether registered as a pharmacy or as a hospital/clinic

IX. If registered as a pharmacy,
  a. Controlled substances can only be dispensed pursuant to a prescription

4



      i. Requirement found in 21 U.S.C. § 829(a) & 21 C.F.R. § 1306.11
        for schedule II.
      ii. Requirement found in 21 U.S.C. § 829(b) & 21 C.F.R. § 1306.21
        for schedules III – IV.

(b)(5)

X. If registered as a hospital/clinic
    a. Can dispense pursuant to a prescription *or* pursuant to an order of an
       individual practitioner which is dispensed for the immediate
       administration to the ultimate user.
        i. Requirement found in 21 C.F.R. § 1306.11(c) for schedule II
        ii. Requirement found in 21 C.F.R. § 1306.21(c) for schedules III-V

(b)(5)

        ii. Under 21 C.F.R. § 1301.22(c), an individual practitioner who is
          agent or employee of the institution can dispense, administer or
          prescribe a controlled substance under *institution's DEA
          registration* – i.e., doesn't need his or her own registration

(b)(5)

(b)(5)

XI. I said I would circle back to discuss how a state DoC could obtain a controlled
    substance from another state DoC.  Two ways to do that:
    a. First, as I said before, a DoC with a proper DEA registration can lawfully
       obtain a controlled substance from a registered importer.  So, if one DoC
       is registered as an importer, that DoC can then distribute the imported
       controlled substance to another appropriately registered DoC.
    b. Second, under 21 C.F.R. § 1307.11, a DoC who is registered to dispense
       in state 1 can distribute a controlled substance to another DEA registered
       practitioner in state 2 for the purpose of dispensing to an ultimate user if

5

        i. The registered practitioner who is receiving the controlled substance is registered with DEA to dispense
       ii. Records must be kept
      iii. Total amount transferred does not exceed 5% of the total dosage units of controlled substances dispensed by the transferring DoC within that calendar year.

XII. Finally, want to cover briefly security and recordkeeping requirements
  a. Mentioned earlier that, along with Registration, Security and Recordkeeping are key components of enforcing the closed system.
  b. Security
     i. Under 21 C.F.R. § 1301.71(a) – must provide effective controls and procedures to guard against diversion.
    ii. 21 C.F.R. §§ 1301.72 through 1301.76 detail the necessary standards. Won't further bore you with those details.
       1. Need to know they need to be locked up with controlled access.
       2. Standards for schedule II controlled substances are higher than for schedule III through V controlled substances.
    iii. Will point out that 21 C.F.R. § 1301.71(b) points out that DEA Administrator has discretion to find substantial compliance with the standards acceptable based on the overall security system.
       1. Under 21 C.F.R. § 1301.71(d) says you can send details to the local DEA SAC or to the Registration Unit at DEA HQ to determine adequacy of security.
  c. Recordkeeping
     i. Under 21 U.S.C. § 827 and 21 C.F.R. § 1304.04, must keep complete records of all transactions involving controlled substances.
       1. Records need to accurately reflect each substance manufactured, imported, received, sold, delivered, exported, or otherwise disposed of. 21 C.F.R. § 1304.21(a).
       2. Information records required to contain found at 21 C.F.R. § 1304.22.
       3. No specific format required except that transactions involving schedule II controlled substances must be recorded on a DEA Form 222 ("Order Form"). 21 C.F.R. § 1305.03.
       4. Records need to be kept for two years. 21 U.S.C. § 827(b); 21 C.F.R. § 1304.04(a).
    ii. There is also a requirement for an inventory which must be taken every two years of all controlled substances on hand. Must maintain inventory for two years, as well. 21 C.F.R. § 1304.11.

XIII. Provide contact information

(b)(6)

6

XIV.   Questions?

7

**From:** Spillane, Mike (b)(6)
**Sent:** Tuesday, August 16, 2011 11:20 AM
**To:** Gleason, Robert (Chris)
**Subject:** RE: 6-2-2011 call

Sir I was wondering if you had a phone number I could give to our Department of Corrections, as they may have some questions for you. Thanks

**From:** Gleason, Robert (Chris) (b)(6)
**Sent:** Tuesday, June 07, 2011 7:48 AM
**To:** Spillane, Mike
**Subject:** RE: 6-2-2011 call

I am glad that you found the discussion useful.  I was concerned that, given the subject matter and format, it would be excruciatingly boring!  Here is the synopsis that we discussed.

Sincerely,

Chris Gleason
Deputy Chief Counsel

**From:** Spillane, Mike (b)(6)
**Sent:** Thursday, June 02, 2011 2:08 PM
**To:** Gleason, Robert (Chris)
**Subject:** 6-2-2011 call

Sir, that was an extremely informative presentation.  I was hoping that when you prepare the synopsis of the relevant statutory and regulatory sections that you mentioned, you would please e-mail me a copy. Also I will give our DOC's general counsel your e-mail address as she may have questions on identifying proper suppliers. Thanks again sir. Great

(b)(6)

| | |
|---|---|
| From: | McAuliffe, John@CDCR [John.McAuliffe@cdcr.ca.gov] |
| Sent: | Tuesday, October 05, 2010 2:09 PM |
| To: | (b)(6) |
| Cc: | Kernan, Scott@CDCR |
| Subject: | Chemique Pharmaceutical Inc. |

(b)(6)

Thank you for the list of companies listed with the DEA to import Thiopental. We have contacted Chemique Pharmaceutical Inc. (Mr. Phil Millman) who has initially agreed to procure the Thiopental from London. We gave Mr. Millman your email as a point of contact with DEA since you know exactly what we have been doing and to whom we have been in contact with in your Department. Again thank you for your help and assistance.
John McAuliffe

ODL E-MAIL



U.S. Department of Justice
Drug Enforcement Administration
www.deaDiversion.usdoj.gov
1-877-RxAbuse

1

**Ex 20   Page 41**

(b)(6)

**From:** McAuliffe, John@CDCR [John.McAuliffe@cdcr.ca.gov]
**Sent:** Monday, December 06, 2010 2:51 PM
**To:** (b)(6)
**Cc:** McClease, Kelly@CDCR
**Subject:** FW: DEA Registered Importers of Thiopental

(b)(6)

I am the emailing you concerning the list you provided CDCR (companies specifically registered with DEA to import thiopental). A question has come up whether or not the list you provided is considered confidential by your Department? Specifically, if this list is requested is it public record for all? Again, thank you in advance for all your help.
John McAuliffe
California Department of Corrections and Rehabilitation

---

**From:** McAuliffe, John@CDCR
**Sent:** Monday, October 04, 2010 3:17 PM
**To:** Kernan, Scott@CDCR
**Subject:** Re: DEA Registered Importers of Thiopental

Scott
I can work on this list early Tuesday AM and give you full update prior to our meeting on Tuesday at 1:30. I will start working on phone #'s and contact person now.
John

---

**From:** Kernan, Scott@CDCR
**To:** McAuliffe, John@CDCR
**Sent:** Mon Oct 04 14:59:51 2010
**Subject:** FW: DEA Registered Importers of Thiopental

For our records.

Scott

---

**From:** (b)(6)
**Sent:** Monday, October 04, 2010 2:58 PM
**To:** Kernan, Scott@CDCR
**Subject:** Re: DEA Registered Importers of Thiopental

The listed companies would file the appropriate paperwork. DEA would not require anything from the Dept of Corrections.

(b)(6)
Liaison and Policy Section
Office of Diversion Control

---

**From:** Kernan, Scott@CDCR <Scott.Kernan@cdcr.ca.gov>
**To:** (b)(6)
**Sent:** Mon Oct 04 17:48:07 2010
**Subject:** RE: DEA Registered Importers of Thiopental

(b)(6)

1

**Ex 20   Page 42**

Thank you very much for getting me this list. We will contact them directly. I assume that if we can get one of them to import the drug for us that they will complete the appropriate documentation and you would not need anything directly from the department? Thanks again for your help.

Scott

**From:** (b)(6)
**Sent:** Monday, October 04, 2010 1:19 PM
**To:** Kernan, Scott@CDCR
**Subject:** DEA Registered Importers of Thiopental

Attached is a spreadsheet containing companies who are specifically registered with DEA to import Thiopental.   We are looking to send you an expanded list of companies as Thiopental belongs to a larger class of barbiturates. I'll send additional information if the additional importers are pertinent to your issue.

<<Importers of Thiopental.xml>>

(b)(6)

Liaison and Policy Section

Office of Diversion Control

(b)(6)

(b)(6)

**From:** (b)(6)
**Sent:** Tuesday, April 12, 2011 5:03 PM
**To:** (b)(6)
**Subject:** Contact with Nebraska Department of Corrections.

On April 12, 2011, I received a call from George Green [(402) 479-5735], legal counsel for the Nebraska Department of Corrections. He advised that on April 8, 2011, Steve Urosevich, Chief Operating Officer for Health Services, received a call from (b)(6)  , DEA HQ. Mr. Green returned Ms. (b)(6)  call on April 11, 2011. Ms. (b)(6)  advised that the hospital/clinic registration (DEA Registration Number AN5903453) was not accepted for the importation of controlled substances. She informed Mr. Green that it was possible to obtain the proper registration as an Importer and suggested he consult with DEA in Nebraska or Kansas. As Mr. Green had previously consulted with me regarding other matters, he contacted the Kansas City District Office.

Mr. Green stated the department wished to obtain a DEA Form 225 to apply for an Importer registration. He added that the department utilized a broker (b)(6)  in Omaha, Nebraska, to obtain Sodium Thiopental from Mumbai, India, and was advised by the broker that all the requisite paperwork was appropriately completed. He said the department would apply for an Importer registration.

(b)(6)

Group Supervisor
Kansas City District Office
(b)(6)

**Ex 20   Page 44**



**U. S. Department of Justice**

Drug Enforcement Administration

8701 Morrissette Drive
Springfield, Virginia  22152

---

*www.dea.gov*

NOV 1 5 2010

Stephen Sinclair
Superintendent of the Washington State Penitentiary
Department of Corrections
P.O. Box 41100
Olympia, Washington  98504-1103

Dear Superintendent Sinclair:

This correspondence is in response to your letter dated August 13, 2010, to the Drug Enforcement Administration (DEA).  In your letter, you stated that one of your roles as Superintendent is to carry out the sentences imposed by the courts of the state of Washington, to include the sentence of death by lethal injection.  You also stated that pancuronium bromide (a non-controlled substance) and thiopental sodium (a schedule III non-narcotic) are two of the drugs needed to carry out the sentence, and both are experiencing national shortages.  As a result, you are requesting a waiver from registration with DEA so that you may import these drugs from a provider outside the United States.  DEA has reviewed the information you provided and must deny your request as outlined below.

DEA records indicate that the Washington Department of Corrections location you mentioned in your letter is registered with DEA as a hospital/clinic.  A hospital/clinic registration does not permit the importation of controlled substances as a primary or coincident activity.  Any person seeking to import a controlled substance into the United States must obtain a DEA registration pursuant to 21 U.S.C. §§ 957 and 958(c) and utilize the services of a DEA registered importer.  DEA has no authority to waive a statutory requirement.  Please note that since pancuronium bromide is a non-controlled substance, it is outside DEA's jurisdiction.

I trust that this letter adequately clarifies the matter.  For additional information regarding DEA's Office of Diversion Control, please visit www.DEAdiversion.usdoj.gov.  You may also find on this website copies of the Federal regulations and statutes listed above.  If you have any further questions on this issue, please contact DEA's Import/Export Unit at (202) 307-7969.

Sincerely,

Mark W. Caverly, Chief
Liaison and Policy Section
Office of Diversion Control

**Ex 20   Page 45**

**Ex 20   Page 46**



STATE OF WASHINGTON
## DEPARTMENT OF CORRECTIONS
P.O. Box 41100 • Olympia, Washington 98504-1103 • (360) 725-8903

August 13, 2010

Drug Enforcement Administration,
Attn: Office of Diversion Control/OD,
8701 Morrissette Drive,
Springfield, VA
22152

Exception Administrator:

Good day to you. I am the Superintendent of the Washington State Penitentiary in Walla
Walla, and one of my roles as Superintendent is to carry out the sentences imposed by the
courts of our state; this includes the sentence of death by lethal injection.

Two of the drugs needed to carry out the sentence are currently on the national drug shortage
list. This presents an immense challenge in that it directly impacts our ability to provide a
seamless, safe and effective method to carry out the sentence as provided in the Revised
Code of Washington **(RCW) 10.95.**

I am seeking a special waiver of registration to import Pancuronium Bromide, and Thiopental
Sodium to be purchased from a provider outside of the United States. Our DEA registration
number is **FS1269059.**

I appreciate your consideration in this urgent matter. I can be contacted by phone at 509-526-
6300, or by email at stephen.sinclair@doc.wa.gov, should you have any questions.

Sincerely,

Stephen Sinclair
Superintendent of the Washington State Penitentiary

*"Working Together for SAFE Communities"*

 recycled paper

**Ex 20   Page 47**

Ex 20   Page 48

**Ex 20   Page 49**

Ex 20   Page 50

Ex 20   Page 52

Ex 20   Page 54

**Ex 20   Page 58**

**Ex 20   Page 59**

**Ex 20   Page 60**