IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In the Matter of the Federal Bureau of Prisons' Execution Protocol Cases, <br><br> LEAD CASE: *Roane et al. v. Barr* <br><br> THIS DOCUMENT RELATES TO: <br><br> *Lee & Honken v. Barr*, No. 19-cv-2559 <br><br> *Purkey v. Barr*, No. 19-cv-3214 <br><br> *Nelson v. Barr, et al.*, 20-cv-557 | Case No. 19-mc-0145 (TSC) |

**PLAINTIFFS' REPLY IN FURTHER SUPPORT
OF MOTION FOR EXPEDITED DISCOVERY**

Plaintiffs Dustin Lee Honken, Daniel Lewis Lee, Keith Dwayne Nelson, and Wesley Ira Purkey (collectively "Plaintiffs") respectfully submit this reply in further support of their motion for expedited discovery (the "Motion") relating to a rule (the "Proposed Rule") submitted by the DOJ. *See* Ex. A hereto (Office of Information and Regulatory Affairs ("OIRA"), OIRA Conclusion of EO 12866 Regulatory Review (May 29, 2020)).

**Introduction**

Defendants' opposition inaccurately asserts that the rule in question "is *not* a proposed rule." Opp'n 3. To the contrary, the OIRA website refers to it as the "Proposed Rule" and notes that the rule's subject is the "Manner of Federal Executions," the precise issue before the Court. Ex. A. The website also states that OIRA's review *concluded* on June 18, 2020—the day before Plaintiffs filed the Motion. *Id.* The next step is for the agency to publish the Proposed Rule in the Federal Register or announce that it has decided not to publish. Either way, the information sought in the Motion will become public at that time. *See infra*, 2-3. Thus, it is not a question of

1

*whether* Plaintiffs will have access to the information, but *when*. Under the circumstances, it makes sense for the Court to order the disclosure of the information now rather than run the risk that Defendants withhold it until after the Court decides Plaintiffs' pending Motion for a Preliminary Injunction (the "PI Motion").

Moreover, contrary to Defendants' assertions, discovery is available here because the information sought relates to Plaintiffs' Eighth Amendment claim, not just the APA claims. In addition, the deliberative process privilege is inapplicable and each factor in the reasonableness test for expedited discovery weighs heavily in favor of Plaintiffs. *See infra*, 7-9.

Accordingly, Plaintiffs respectfully request that the Court grant the Motion.

## BACKGROUND

### I. OVERVIEW OF OIRA

OIRA is part of the Office of Management and Budget and, among other things, "is the United States Government's central authority for the review of Executive Branch regulations." The White House, *Office of Management and Budget: Information and Regulatory Affairs*, https://bit.ly/2YIfuhF (last visited June 29, 2020). Executive Order 12,866 ("EO 12,866"), which established the central requirements for OIRA, requires that agencies submit rules to OIRA for review. *See* Ex. B at § 6(a)(3)(B), (C) (Exec. Order No. 12,866, 3 C.F.R. § 6(a)(3)(B)-(C) (1983)). As relevant here, "[a]fter an agency formally submits a rule, OIRA … may (1) conclude review, after which" the agency "publishe[s it] in the Federal Register, either with or without change" or announces its decision not to publish the rule; (2) "return the rule to the agency for reconsideration"; or (3) "encourage the agency to withdraw the rule in light of interagency concerns." Cass R. Sunstein, *The Office of Information and Regulatory Affairs: Myths and Realities*, 126 Harv. L. Rev. 1838, 1846-47 (2013) (emphasis added); *see also* Ex. B at § 6(b)(2)-(3); Ctr. for Effective Gov't, *The Players in Rulemaking*, https://bit.ly/2NHAbUC

(last visited June 29, 2020) ("Upon completion of OIRA review, the proposed rule is published in the Federal Register in the form of a Notice of Proposed Rulemaking.").

After the rule has been published "or after the agency has announced its decision not to publish or issue" it, OIRA "shall make available to the public *all* documents exchanged between OIRA and the agency during the review by OIRA under this section." Ex. B at § 6(b)(4)(D) (emphasis added). If the rule is published, the agency is likewise obligated to disclose the text of the draft rule, any differences between the draft rule submitted to OIRA and the published rule, and OIRA's assessment of the draft rule. *See id.* at § 6(a)(3)(E).

## II.   OIRA'S ACTION REGARDING THE PROPOSED RULE

DOJ submitted the Proposed Rule for OIRA review on May 29, 2020, and OIRA concluded its review on June 18, 2020. Ex. A. The next step, therefore, is for DOJ to publish the Proposed Rule in the Federal Register or announce its decision not to do so. *See supra*, 2-3. The time for publication can range from several weeks to several months. Thus, although the information sought by Plaintiffs in the Motion will be made public within a short time, there is no guarantee that it will be disclosed prior to the decision on the PI Motion.

## ARGUMENT

## I.   THE EXISTENCE OF APA CLAIMS IN THIS CASE DOES NOT PRECLUDE DISCOVERY

### A.   The Discovery Also Relates to Plaintiffs' Eighth Amendment Claim

Defendants contend that the information sought by Plaintiffs is only relevant to "one of the APA claims" in the PI Motion. Opp'n 3. That is not correct.

In asserting that the 2019 Protocol is the result of "arbitrary and capricious" agency action in violation of the APA, Plaintiffs allege that Defendants failed to consider three important issues in developing the federal death-penalty procedures: the risk that pentobarbital

3

will cause flash pulmonary edema; the risks associated with IV insertion; and the risks of obtaining pentobarbital from a compounding pharmacy. *See* Dkt. #102 at 6-20 (Memo. of P. & A.). Plaintiffs' Eighth Amendment claim arises out of the same Protocol deficiencies; it, too, asserts that Defendants failed to adopt readily available safeguards to prevent flash pulmonary edema, did not account for the risks associated with using compounded drugs, and did not create proper IV procedures. *Id.* at 21-23. Thus, the discovery requested in the Motion relates to the same execution procedures, and those same procedures are at the heart of both Plaintiffs' Eighth Amendment *and* APA claims.

The mere fact that Plaintiffs brought an APA claim in addition to their Eighth Amendment claim cannot preclude discovery. Indeed, this Court permitted discovery to proceed in the related case of *Roane v. Gonzales*, 1:05-cv-2337-TSC (D.D.C) (the "*Roane* Action"), even though the plaintiffs in that action alleged both Eighth Amendment and APA claims arising of the defendants' then-existing execution procedures. *See Roane* Action at Dkt. #8; *see also Roane* Action at Dkt. # 16 (permitting plaintiffs to obtain written discovery and take depositions). It should do the same here.

**B.     Plaintiffs Are Entitled to Discovery Relating to the APA Claims**

Even if the Court were to hold that the Motion is limited to the APA Claims, discovery is warranted because of Defendants' bad-faith actions and the incompleteness of the Administrative Record ("AR"). As Plaintiffs pointed out in the Joint Status Report filed on February 10, 2020, "critical documents" revealed through pre-amendment discovery were not included in the AR or its two supplements (as of that date). *See* Dkt. #76 at 3. Those "intentional omissions … constitute a 'strong showing of bad faith or improper behavior,' and have resulted in an administrative record 'so bare that it prevents effective judicial review' sufficient to justify

additional discovery as to Plaintiffs' APA claims." *Id.* at 3-4 (quoting *Theodore Roosevelt Conservation P'ship v. Salazar*, 616 F.3d 497, 514 (D.C. Cir. 2010)).

The situation has only gotten worse since the filing of the Joint Status Report. On March 6, 2020, following the Rule 30(b)(6) deposition of the Office of the Attorney General ("OAG"), counsel for Defendants improperly attempted to revise the OAG deponent's testimony by relying on drug-testing documents that were not part of the AR and had not been disclosed prior to the OAG deposition in late January 2020. The testing documents, dated November and December 2019, were created *after* the 2019 Protocol was announced in July 2019. At Plaintiffs' insistence, Defendants finally produced the testing documents in May 2020. On June 8, 2020, one week after Plaintiffs filed the Amended Complaint, Defendants filed yet a third supplement to the AR. *See* Dkt. #97. The third supplement included the November and December 2019 testing documents and yet *another* post-July 2019 document: a memorandum issued by the BOP Regional Director on March 10, 2020 providing "General Guidelines for Compounding and Testing Pentobarbital Sodium for Use in Executions." *See id.* at 2 (citing AR 1084-85).

Defendants' belated production of documents to supplement the AR demonstrates their bad faith and the AR's incompleteness. There is no excuse for Defendants' failure to produce the November and December 2019 documents or failure to add them to the AR until several months after their creation, and even then, only after Defendants were forced to rely on them to revise the OAG deponent's inaccurate testimony. Moreover, although the March 2020 guidelines are relevant to claims in the original Complaint, Defendants did not supplement the AR or produce the documents to Plaintiffs until after Plaintiffs completed the Court-ordered depositions and filed their Amended Complaint. Thus, there is good reason to believe the AR does not accurately reflect the information considered in connection with the 2019 Protocol.

Based on its track record here, it seems clear that Defendants have been serially providing cherry-picked documents designed to support Defendants' litigation positions. This action should not be about "hide and seek." Plaintiffs are entitled to a full and fair opportunity to litigate the profound deficiencies in the 2019 Protocol based on a full and complete record.

Indeed, by repeatedly supplementing the AR with documents that are relevant to, but post-date, the July 2019 Protocol, the Defendants have disproved their assertion that the Proposed Rule is not relevant merely because it "post-dates the July 2019 Protocol." Opp'n at 4. In any event, the relevance of the Proposed Rule is clear: It involves the "Manner of Federal Executions"—meaning the procedures Defendants will use to execute Plaintiffs—and those procedures have been placed squarely at issue by the Plaintiffs' Amended Complaint and the pending PI Motion.

## II. THE DELIBERATIVE PROCESS PRIVILEGE DOES NOT PROHIBIT DISCOVERY

Defendants' assertion of the deliberative process privilege cannot be squared with the disclosure requirements in EO 12866. As discussed above, now that OIRA review has concluded, under EO 12866, OIRA and possibly also the DOJ will be required to produce documents relating to the review process. *See supra*, 2-3. These disclosure requirements cover most, if not all, of the information requested in the proposed interrogatories, undermining any claim that they are exempt from disclosure as part of Defendants' "deliberative process."[1]

Defendants' primary argument in opposition is that the Proposed Rule does not yet "exist." Opp'n at 5. That argument conflates a "notice of proposed rulemaking" ("NPR") for

---

[1] To the extent this Court concludes that the mandatory disclosures in EO 12866 differ from the information requested in Plaintiffs' first set of proposed interrogatories, the Court should, at minimum, order the Government to provide the information that is covered by EO 12866. Also, if the Court finds that the deliberative process privilege may apply to any of the requested information, Plaintiffs respectfully request that the Court review the information *in camera* to determine whether it should be disclosed to Plaintiffs.

6

APA purposes with a "Proposed Rule" for OIRA purposes, meaning a rule that has been submitted to OIRA for review. As the OIRA website demonstrates, such a proposed rule exists here and it (along with other information) will be produced in the near future pursuant to EO 12866, whether or not Defendants elect to issue a NPR. Plaintiffs are simply asking the Court to expedite that inevitable disclosure so the Court has all relevant information before ruling on the PI Motion.

Defendants' public policy arguments fail for the same reason. Because the information sought will be disclosed to the public under EO 12866, the Executive Branch has already determined that granting Plaintiffs' motion will not jeopardize the "OIRA process." Opp'n at 6.

## III. EXPEDITED DISCOVERY IS WARRANTED

Because Plaintiffs' requests meet the five-factor "reasonableness test," expedited discovery is warranted. *See, e.g.*, *Guttenberg v. Emery*, 26 F. Supp. 3d 88, 97 (D.D.C. 2014) (internal quotation marks omitted) (stating test).

*First*, Defendants claim that the pendency of the PI Motion "does not weigh heavily" in this analysis. Opp'n at 6. The first factor in the reasonableness standard does not call for an assessment of "weight." It asks only "whether a motion for preliminary injunction is pending." *Id.* (quoting *Garnett v. Zeilinger*, Case No. 17-cv-1757 (CRC), 2017 WL 8944640, at *1 (D.D.C. Dec. 15, 2017)). That, of course, is the case. In any event, the first factor is critical here. Defendants possess, but have failed to disclose, information that is highly relevant to the PI Motion—information regarding the "Manner of Federal Execution"—and expedition of discovery is necessary to prevent Defendants from withholding the information until it is too late for the Court to consider it, or for the Plaintiffs to rely on it.

*Second*, Plaintiffs' discovery focuses on specific information relating to the Proposed Rule, and the interrogatories call for the exact same type of information that will be produced in

7

the near future under EO 12866.  That said, if the Court believes that any of the interrogatories are overbroad or not necessary for purposes of the PI Motion, it can modify its discovery order accordingly.  At a minimum, Plaintiffs are entitled to the text of the Proposed Rule and the other information that OIRA and DOJ will shortly be obligated to disclose pursuant to the requirements of EO 12866.

*Third*, discovery would assist the Court in determining the likelihood of success of Plaintiffs' claims.  Defendants once again seek to limit the relevance inquiry to the APA claims, Opp'n at 7, but, as explained, the discovery applies equally to Plaintiffs' Eighth Amendment claims.  If, as Plaintiffs suspect, the Proposed Rule deals with a perceived deficiency in the manner of federal executions under the 2019 Protocol, such information could: (1) support Plaintiffs' allegation that the 2019 Protocol does not pass constitutional muster; and/or (2) demonstrate that the 2019 Protocol was the result of "arbitrary and capricious" agency action because Defendants failed to consider an important aspect of the issue (and belatedly attempted to address it in the Proposed Rule).  But, fundamentally, Plaintiffs should not have to make guesses about the scope and specifics of the Proposed Rule.  That information should be provided now, so Plaintiffs and the Court can understand precisely what prompted Defendants to issue the Proposed Rule in the first place.

Rule 407 of the Federal Rules of Evidence ("FRE") does not suggest otherwise, as Defendants argue.  Opp'n at 8.  FRE 407 relates to admissibility, not discoverability.  Asking this Court to rule on admissibility before the information in question has even been produced puts the cart before the horse.  Moreover, FRE 407 permits admission of evidence of subsequent remedial measures for purposes other than establishing culpability, such as to demonstrate the "feasibility" of the remedial measures.  The discovery sought here could demonstrate that there are feasible

8

alternatives to deal with the issues identified in the 2019 Protocol—a key component of Plaintiffs' Eighth Amendment claim, *see* Dkt. #102 at 24-27 (Memo. of P. & A.)—or it may be admissible for other purposes. FRE 407, therefore, does not stand in the way of the requested discovery.

*Fourth*, Defendants concede that "the request for the text of the Proposed Rule is not burdensome." Opp'n at 9. Although Defendants claim that other discovery requests would impose "a significant burden," they make no effort to back up that assertion. *Id.* That flimsy posturing does not justify the Defendant's withholding of clearly relevant information. The only specific objection advanced by Defendants is to the identification of the name of the government employees who worked on the Proposed Rule, contending that it would have a chilling effect on the development of future policies. *Id.* But, even accepting that premise, any such effect could be easily eliminated by using an appropriate protective order (to which Plaintiffs would not object).

*Fifth*, the expedited discovery would be a few months in advance of typical discovery, but there is urgency here because Defendants have set execution dates beginning on July 13, 2020, and the PI Motion is currently pending before the Court. Defendants' only counter-argument focuses on the "typical discovery process in APA litigation," *id.* at 10, but, as shown above, the discovery sought in the Motion does not relate solely to Plaintiffs' APA claims. At bottom, Defendants are trying to hide what appears to be clearly relevant, indeed material, information, in the hopes that they can rush to execute Plaintiffs before this information sees the light of day.

**Conclusion**

For the foregoing reasons, Plaintiffs respectfully request that the Court grant the Motion and order Defendants to provide responses within the time period set forth in the discovery requests.

Dated: June 29, 2020

/s/ *Pieter Van Tol*
Pieter Van Tol (admitted *pro hac vice*)
Hogan Lovells US LLP
390 Madison Avenue
New York, NY 10017
(212) 918-3000
(212) 918-3100 (fax)
pieter.vantol@hoganlovells.com

and

David S. Victorson (Bar No. 1027025)
Kathryn Marshall Ali (Bar No. 994633)
Danielle Stempel\* (admitted *pro hac vice*)
Hogan Lovells US LLP
555 13th Street NW
Washington, DC 20004
(202) 637-5600
(202) 637-5910 (fax)
david.victorson@hoganlovells.com
kathryn.ali@hoganlovells.com
danielle.stempel@hoganlovells.com

*\* Admitted only in Maryland; practice supervised by principals admitted in D.C.*

*Counsel for Plaintiff Daniel Lewis Lee*

/s/ *Alan E. Schoenfeld*
Alan E. Schoenfeld (admitted *pro hac vice*)
Wilmer Cutler Pickering Hale and Dorr LLP
7 World Trade Center
250 Greenwich Street
New York, New York 10007
(212) 230-8800
Alan.Schoenfeld@WilmerHale.com

Andres Salinas (DC Bar No. 156118)

10

Wilmer Cutler Pickering Hale and Dorr LLP
1875 Pennsylvania Avenue NW
Washington, DC 20006
(202) 663-6289
Andres.Salinas@WilmerHale.com

*Counsel for Plaintiff Wesley Purkey*

*/s/ Jon Jeffress*
Jon Jeffress
KaiserDillon PLLC
1099 14th Street NW
8th Floor West
Washington, DC 20005
(202) 640-2850
jjeffress@kaiserdillon.com

Timothy Kane, Assistant Federal Defender
Shawn Nolan, Chief, Capital Habeas Unit
Federal Community Defender Office,
 E.D. Pa.
601 Walnut Street, Suite 545 West
Philadelphia, PA 19106
(215) 928-0520
timothy_kane@fd.org
shawn_nolan@fd.org

*Counsel for Plaintiff-Intervenor Dustin Lee Honken*

*/s/ Kathryn L. Clune*
Kathryn L. Clune
Crowell & Moring LLP
1001 Pennsylvania Avenue NW
Washington D.C. 20004-2595
(202) 624-2705
kclune@crowell.com

Harry P. Cohen (*pro hac vice* pending)
Michael K. Robles (*pro hac vice* pending)
James K. Stronski (*pro hac vice* pending)
Crowell & Moring LLP
590 Madison Avenue
New York, NY 10022
(212) 223-4000
(212) 223-4134 (fax)

11

>hcohen@crowell.com
>mrobles@crowell.com
>jstronski@crowell.com
>
>Jon M. Sands
>Dale A. Baich
>Jennifer M. Moreno
>Federal Public Defender
>District of Arizona
>850 West Adams Street, Suite 201
>Phoenix, Arizona 85007
>(602) 382-2816
>(602) 889-3960 (fax)
>jon_sands@fd.org
>dale_baich@fd.org
>jennifer_moreno@fd.org
>
>*Counsel for Plaintiff Keith Nelson*