## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In the Matter of the | ) | |
| Federal Bureau of Prisons' Execution | ) | |
| Protocol Cases, | ) | |
| | ) | |
| LEAD CASE: *Roane et al. v. Barr* | ) | Case No. 19-mc-145 (TSC) |
| | ) | |
| | ) | |
| THIS DOCUMENT RELATES TO: | ) | |
| | ) | |
| *Lee v. Barr, et al.*, 19-cv-2559 | ) | |
| *Purkey v. Barr, et al.*, 19-cv-03214 | ) | |
| *Nelson v. Barr, et al.*, 20-cv-557 | ) | |

## <u>NOTICE OF APPEAL</u>

Notice is hereby given this 15th day of July 2020, that Defendants in this action appeal to the United States Court of Appeals for the District of Columbia Circuit from the Order of this Court entered on July 15, 2020, *see* ECF Nos. 145 (Memorandum Opinion) and 146 (Order) (both attached hereto), in which the Court granted the Motion for Preliminary Injunction filed by Dustin Lee Honken, Wesley Ira Purkey, and Keith Nelson, and ordered "that Defendants (along with their respective successors in office, officers, agents, servants, employees, attorneys, and anyone acting in concert with them) are enjoined from executing Plaintiffs Wesley Ira Purkey, Dustin Lee Honken, and Keith Dwayne Nelson until further order of this court." Order, ECF No. 146.

Dated: July 15, 2020

Respectfully submitted,

MICHAEL R. SHERWIN
Acting United States Attorney

DAVID M. MORRELL
Deputy Assistant Attorney General

DANIEL F. VAN HORN
Civil Chief, U.S. Attorney's Office

PAUL R. PERKINS
Special Counsel

ALAN BURCH (D.C. Bar 470655)
Assistant United States Attorney
U.S. Attorney's Office
for the District of Columbia
Washington, D.C. 20530
202-252-2550
alan.burch@usdoj.gov

JEAN LIN (NY Bar 4074530)
Special Litigation Counsel

/s/ *Cristen C. Handley*
CRISTEN C. HANDLEY (MO Bar 69114)
JONATHAN KOSSAK (D.C. Bar 991478)
Trial Attorneys
Civil Division
Federal Programs Branch
Civil Division, Department of Justice
1100 L Street, N.W.
Washington, D.C. 20005
(202) 514-3716
Jean.lin@usdoj.gov
Cristen.handley@usdoj.gov
Jonathan.kossak@usdoj.gov

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on July 15, 2020, I caused a true and correct copy of foregoing to be served on all counsel of record via the Court's CM/ECF system.  Pursuant to this Court's August 20, 2019 Order, below is a list of all plaintiffs' counsel of record (as most recently identified in the signature pages of the Consolidated Amended Complaint, ECF No. 92):

Alan E. Schoenfeld (admitted *pro hac vice*)
Ryan M. Chabot (admitted *pro hac vice*)
WILMER CUTLER PICKERING HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, New York 10007
(212) 230-8880
Alan.Schoenfeld@WilmerHale.com
Ryan.Chabot@WilmerHale.com

Andres C. Salinas (DC Bar No. 156118)
WILMER CUTLER PICKERING HALE AND DORR LLP
1875 Pennsylvania Avenue NW
Washington, DC 20006
(202) 663-6289
Andres.Salinas@WilmerHale.com

*Counsel for Wesley I. Purkey*

Joshua C. Toll
D.C. Bar No. 463073 King & Spalding LLP
1700 Pennsylvania Avenue, N.W.
Washington, DC 20006
(202) 737-8616
jtoll@kslaw.com

Margaret O'Donnell
P.O. Box 4815
Frankfort, KY 40604
(502) 320-1837
mod@dcr.net

*Counsel for Plaintiff Anthony Battle*

Ginger D. Anders (Bar No. 494471)
Jonathan S. Meltzer (Bar No. 888166546)
Brendan Gants (Bar No. 1031419)
MUNGER, TOLLES & OLSON LLP
1155 F Street N.W., Seventh Floor
Washington, D.C. 20004-1357
(202) 220-1100

*Counsel for Plaintiff Brandon Bernard*


Alex Kursman, Assistant Federal Defender
Shawn Nolan, Chief, Capital Habeas Unit
Federal Community Defender Office, E.D. Pa.
601 Walnut Street, Suite 545 West
Philadelphia, PA 19106
Telephone - 215-928-0520
Email – alex_kursman@fd.org

*Counsel for Plaintiff Alfred Bourgeois*


Joseph Luby, Assistant Federal Defender
Federal Community Defender Office, E.D. Pa.
 601 Walnut Street, Suite 545 West
Philadelphia, PA 19106
Telephone - 215-928-0520
Email – joseph_luby@fd.org

*Counsel for Plaintiff Chadrick Fulks*


Amy Lentz (DC Bar No. 990095)
Steptoe & Johnson, LLP
1300 Connecticut Avenue NW
Washington, DC 20036
202.429.1320

*Counsel for Plaintiff Orlando Hall*


Scott W. Braden
Assistant Federal Defender
Arkansas Federal Defender Office
Ark Bar Number 2007123
1401 West Capitol, Suite 490
Little Rock, Arkansas 72201
(501) 324-6114

Scott_Braden@fd.org

Jennifer Ying (DE #5550)
Andrew Moshos (DE #6685)
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 N. Market St.
P.O. Box 1347
Wilmington, Delaware 19801
(302) 658-9300
jying@mnat.com
amoshos@mnat.com

*Counsel for Plaintiff Norris G. Holder, Jr.*

Jon Jeffress
KaiserDillon PLLC
1099 14th Street NW
8th Floor West
Washington, DC 20005
Telephone - 202-640-2850
Email - jjeffress@kaiserdillon.com

Timothy Kane, Assistant Federal Defender
Shawn Nolan, Chief, Capital Habeas Unit
Federal Community Defender Office, E.D. Pa.
601 Walnut Street, Suite 545 West
Philadelphia, PA 19106
Telephone - 215-928-0520
Email – timothy_kane@fd.org
Email – shawn_nolan@fd.org

*Counsel for Plaintiff Dustin Lee Honken*

Donald P. Salzman (D.C. Bar No. 479775)
Charles F. Walker (D.C. Bar No. 427025)
Steven M. Albertson (D.C. Bar No. 496249)
Skadden, Arps, Slate, Meagher & Flom LLP
1440 New York Avenue, N.W.
Washington, D.C. 20005
(202) 371-7983
donald.salzman@skadden.com

*Counsel for Plaintiff Corey Johnson*

David S. Victorson
Hogan Lovells US LLP
Columbia Square

555 13th Street NW
Washington, DC  20004
(202) 637-5600
(202) 637-5910 (fax)
david.victorson@hoganlovells.com

Pieter Van Tol (admitted *pro hac vice*)

Hogan Lovells US LLP

390 Madison Avenue
 New York, NY 10017
(212) 918-3000
(212) 918-3100 (fax)
pieter.vantol@hoganlovells.com

*Counsel for Plaintiff Daniel Lewis Lee*

Kathryn L. Clune
Crowell & Moring LLP
1001 Pennsylvania Avenue NW
Washington D.C. 20004-2595
(202) 624-2705
kclune@crowell.com

Harry P. Cohen (pro hac vice application pending)
Michael K. Robles (pro hac vice application pending)
James Stronski (pro hac vice application pending)
Crowell & Moring LLP
590 Madison Avenue New York, NY 10022
(212) 223-4000
(212) 223-4134(fax)
hcohen@crowell.com
mrobles@crowell.com
jstronski@crowell.com

Jon M. Sands (pro hac application to be filed)
Dale A. Baich (pro hac application to be filed)
Jennifer M. Moreno
Federal Public Defender
District of Arizona
850 West Adams Street, Suite 201
Phoenix, Arizona 85007
602-382-2816
602-889-3960 (fax)
dale_baich@fd.org

jennifer_moreno@fd.org

*Counsel for Plaintiff Keith Nelson*

Shawn Nolan, Chief, Capital Habeas Unit
Federal Community Defender Office, E.D. Pa.
 601 Walnut Street, Suite 545 West
Philadelphia, PA 19106
Telephone - 215-928-0520
Email – timothy_kane@fd.org
Email – shawn_nolan@fd.org

*Counsel for Plaintiff Jeffrey Paul*

Paul F. Enzinna
D.C. Bar No. 421819
Ellerman Enzinna PLLC
1050 30th Street, NW
Washington, DC 20007
202.753.5553

*Counsel for Plaintiff James H. Roane, Jr.*

Amy Karlin
Interim Federal Public Defender
Celeste Bacchi
Jonathan C. Aminoff
Deputy Federal Public Defenders
321 E. Second Street
Los Angeles, CA 90012
(213) 894-2854

*Counsel for Plaintiff Julius O. Robinson*

Gerald W. King, Jr. Ga. Bar No. 140981
Jeffrey Lyn Ertel Ga. Bar No. 249966
FEDERAL DEFENDER PROGRAM, INC.
101 Marietta Street, Suite 1500
Atlanta, Georgia 30303
404-688-7530
(fax) 404-688-0768
Gerald_King@fd.org
Jeff_Ertel@fd.org

Stephen Northup
VSB #16547
Troutman Sanders LLP
P.O. Box 1122
Richmond, Virginia 23218-1122
(804) 697-1240
(fax) (804) 698-5120
steve.northup@troutmansanders.com

Frederick R. Gerson VSB #39968
Bank Of America Center
1111 East Main Street, 16th Floor Richmond,
Virginia 23219
(804) 482-1121
fgerson@dagglaw.com

*Counsel for Richard Tipton, III.*

Evan Miller (DC Bar # 219310)
Vinson & Elkins LLP
2200 Pennsylvania Avenue, NW
Suite 500 West
Washington, D.C. 20037
(202) 639-6605
(202) 478-1815 (fax)
emiller@velaw.com

*Counsel for Bruce Webster*

*/s/  Cristen C. Handley*
Attorney for Defendants

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| In the Matter of the Federal Bureau of Prisons' Execution Protocol Cases, | ) ) ) ) ) | |
| LEAD CASE: *Roane, et al. v. Barr* | ) ) | Case No. 19-mc-145 (TSC) |
| THIS DOCUMENT RELATES TO: | ) ) | |
| *Lee v. Barr, et al.*, 19-cv-2559 | ) ) | |
| *Purkey v. Barr, et al.*, 19-cv-3214 | ) ) | |
| *Nelson v. Barr, et al.*, 20-cv-557 | ) ) ) | |

## <u>MEMORANDUM OPINION</u>

After a hiatus in federal executions of over fifteen years, on July 25, 2019, the U.S.

Department of Justice (DOJ) announced plans to execute five inmates who had been sentenced to

death under the federal death penalty statute.[1]  *See* Press Release, Dep't of Justice, Federal

Government to Resume Capital Punishment After Nearly Two Decade Lapse (July 25, 2019),

https://www.justice.gov/opa/pr/federal-government-resume-capital-punishment-after-nearly-two-

decade-lapse.  To implement these executions, the Federal Bureau of Prisons (BOP) adopted a

new execution protocol: the 2019 Protocol.  (ECF No. 39-1, Admin. R. at 1021–75.)

On November 20, 2019, the court preliminarily enjoined the executions of four inmates:

Alfred Bourgeois, Daniel Lewis Lee, Dustin Lee Honken, and Wesley Ira Purkey.  (ECF No. 50,

Mem. Op. (2019 Order), at 15.)  The court found that these four Plaintiffs had demonstrated a

---

[1] Plaintiffs Bourgeois, Mitchell, Lee, and Purkey were sentenced under the Federal Death
Penalty Act, 18 U.S.C. §§ 3591–3599.  Plaintiff Honken was sentenced under the Anti-Drug
Abuse Act of 1988, 21 U.S.C. § 848(e).

likelihood of success on the merits of their claims that the 2019 Protocol violates the Federal

Death Penalty Act (FDPA), but the court did not rule on their other statutory and constitutional

claims.  (*Id.* at 13–14.)  In April of this year, a divided D.C. Circuit panel vacated the preliminary

injunction.  *In re Fed. Bureau of Prisons' Execution Protocol Cases*, 955 F.3d 106, 113 (D.C.

Cir. 2020), *cert. denied sub nom. Bourgeois v. Barr*, No. 19-1348, 2020 WL 3492763 (June 29,

2020).  That Court based its ruling solely on the Plaintiffs' claims under the FDPA and the APA,

and noted that "regardless of our disposition, several claims would remain open on remand."

*Execution Protocol Cases*, 955 F.3d at 113 (per curiam).

On June 15, 2020, the DOJ and BOP scheduled new execution dates for three of the four

Plaintiffs whose executions had been preliminarily enjoined by the 2019 Order: Lee on July 13,

2020, Purkey on July 15, 2020, Honken on July 17, 2020, and Keith Dwayne Nelson on August

28, 2020.  (ECF No. 99, Defs. Notice Regarding Execution Dates.)

On July 13, 2020, the court preliminarily enjoined the executions of Lee, Purkey,

Honken, and Nelson.  (ECF No. 135, Mem. Op. (2020 Order) at 22.)  The court found that these

four Plaintiffs had demonstrated a likelihood of success on the merits of their claims that the

2019 Protocol is cruel and unusual in violation of the Eighth Amendment, but once again did not

rule on their other statutory and constitutional claims.  (*Id.* at 18.)  The D.C. Circuit declined to

stay or vacate the court's injunction, *see In re Fed. Bureau of Prisons' Execution Protocol*

*Cases*, No. 20-5199 (D.C. Cir. July 13, 2020), but the Supreme Court vacated the injunction

early in the morning of July 14, 2020.  *Barr v. Lee*, No. 20A8, 2020 WL 3964985 (July 14, 2020)

(per curiam).  Four justices dissented.  *Id.* at *2–3.  Hours later, Defendants executed Daniel

Lewis Lee.

2

Two more Plaintiffs are scheduled to be executed this week, and a third next month. Because these Plaintiffs are scheduled to be executed before their claims can be fully litigated, they have asked this court, pursuant to Federal Rule of Civil Procedure 65 and Local Rule 65.1, to preliminarily enjoin Defendants from executing them while they litigate their remaining claims.[2]  (ECF No. 102, Pls. Mot. for Prelim. Inj.; *see also* ECF No. 144, Emergency Notice Requesting Ruling on Pending Mot.)

## I.   BACKGROUND

In 2005, three federal death row inmates sued, alleging that their executions were to be administered under an unlawful and unconstitutional execution protocol.  *Roane v. Gonzales*, 1:05-cv-02337 (D.D.C.), ECF No. 1 ¶ 2.  The court preliminarily enjoined their executions. *Roane*, ECF No. 5.  Four other death row inmates intervened, and their executions were enjoined as well.  *See Roane*, ECF Nos. 23, 27, 36, 38, 67, and 68.  During this litigation, the government produced a 50-page document (2004 Main Protocol) outlining BOP execution procedures. *Roane*, ECF No. 179-3.  The government then produced two three-page addenda to the 2004 Main Protocol.  *See Roane*, ECF No. 177-3 (Addendum to Protocol, July 1, 2007) (the 2007 Addendum); ECF No. 177-1 (Addendum to Protocol, Aug. 1, 2008) (the 2008 Addendum).  In 2011 the DOJ announced that the BOP did not have the drugs it needed to implement the 2008 Addendum.  *See* Letter from Office of Attorney General to National Association of Attorneys General, (Mar. 4, 2011), https://files.deathpenaltyinfo.org/legacy/documents/2011.03.04.holder.

---

[2] On July 2, 2020, the Seventh Circuit temporarily stayed Purkey's execution.  *Purkey v. United States*, No. 19-3318, 2020 WL 3603779 (7th Cir. July 2, 2020).  As of this filing, that stay is still in place.  Because the Seventh Circuit affirmed the district court's denial of Purkey's petition for writ of habeas corpus, and only temporarily stayed his execution "pending the completion of proceedings in the Seventh Circuit," however, this court finds it appropriate to preliminarily enjoin his execution as well as those of the other Plaintiffs.  *Id.* at *11.

letter.pdf.  The government informed the court that the BOP "has decided to modify its lethal

injection protocol but the protocol revisions have not yet been finalized."  *Roane*, ECF No. 288

at 2.  In response, the court stayed the *Roane* litigation.

No further action was taken in the cases for over seven years.  On July 24, 2019, the DOJ

announced a new addendum to the execution protocol, (Admin. R. at 874–78), replacing the

three-drug protocol of the 2008 Addendum with a single drug: pentobarbital sodium.  (*Id.* at

879–80.)  The BOP also adopted a new protocol to replace the 2004 Main Protocol.  (*Id.* at

1021–72.)  The 2019 Protocol provides for three injections, the first two containing 2.5 grams of

pentobarbital in 50 milliliters of diluent each, and the third containing 60 milliliters of a saline

flush.  (*Id.* at 880.)  The 2019 Protocol makes no reference to the form or source of the drug, or

measures of quality control, and its description of the intravenous administration of the drug

simply provides that the Director or designee "shall determine the method of venous access" and

that "[i]f peripheral venous access is utilized, two separate lines shall be inserted in separate

locations and determined to be patent by qualified personnel."  (*Id.*)

Following this announcement, the court held a status conference in *Roane* on August 15,

2019.  (*See* Minute Entry, Aug. 15, 2019.)  In addition to the *Roane* plaintiffs, the court heard

from counsel for three other federal death row inmates, all of whom cited the need for additional

discovery on the new protocol.  (*See* ECF No. 12, Status Hr'g Tr.)  The government indicated

that it was unwilling to stay the executions, and the court bifurcated discovery and ordered

Plaintiffs to complete 30(b)(6) depositions by February 28, 2020, and to file amended complaints

by March 31, 2020.  (*See* Minute Entry, Aug. 15, 2019.)

Four inmates with scheduled execution dates filed complaints or motions to intervene in

the *Roane* action challenging the 2019 Protocol, and each subsequently moved to preliminarily

enjoin their executions.[3]  On November 20, 2019, the court granted the four Plaintiffs' motions

for preliminary injunction, finding that they had demonstrated a likelihood of success on their

claims that the 2019 Protocol exceeds statutory authority.  (2019 Order at 13, 15.)  The court did

not rule on Plaintiffs' other claims, including that the 2019 Protocol is arbitrary and capricious

under the Administrative Procedure Act (APA), that it violates the Food, Drug, and Cosmetic

Act (FDCA) and the Controlled Substances Act (CSA), that it violates Plaintiffs' right to counsel

in violation of the First, Fifth, and Sixth Amendments, and that it is cruel and unusual in

violation of the Eighth Amendment.  (*Id.* at 13.)  Following the court's order, three additional

death row inmates filed complaints under separate case numbers, which in turn were

consolidated with *Roane*.[4]  Defendants moved to stay the court's preliminary injunction, which

the court denied.  (*See* Minute Order, Nov. 22, 2019.)  The D.C. Circuit likewise denied

Defendants' motion to stay, *In re Fed. Bureau of Prisons' Execution Protocol Cases*, No. 19-

5322 (D.C. Cir. Dec. 2, 2019), as did the United States Supreme Court on December 6, 2019.

*Barr v. Roane*, 140 S. Ct. 353 (2019).  However, three Justices issued a statement indicating their

belief that Defendants were likely to prevail on the merits.  *Id.*

Defendants also filed an interlocutory appeal of the court's 2019 Order on November 21,

2019.  (*See* ECF No. 52.)  On April 7, 2020, the D.C. Circuit reversed.  *Execution Protocol*

---

[3] Lee filed his complaint on August 23, 2019 (*see Lee v. Barr*, 1:19-cv-02559 (D.D.C.), ECF No. 1), and his motion for a preliminary injunction on September 27, 2019.  (ECF No. 13, Lee Mot. for Prelim. Inj.)  On August 29, 2019, Bourgeois moved to preliminarily enjoin his execution. (ECF No. 2, Bourgeois Mot. for Prelim. Inj.)  Honken filed an unopposed motion to intervene in *Lee v. Barr*, which was granted.  (ECF No. 26, Honken Mot. to Intervene.)  He then moved for a preliminary injunction on November 5, 2019.  (ECF No. 29, Honken Mot. for Prelim. Inj.) Purkey filed a complaint and a motion for a preliminary injunction under a separate case number, 1:19-cv-03214, which was consolidated with *Roane*.  (ECF No. 34, Purkey Mot. for Prelim. Inj.)

[4] These plaintiffs are Norris G. Holder, Jr., 1:19-cv-3520; Brandon Bernard, 1:20-cv-474; and Keith Dwayne Nelson, 1:20-cv-557.

*Cases*, 955 F.3d at 108.  Neither of the two Judges on the panel who voted to reverse agreed on the FDPA's statutory requirements but they nonetheless agreed that Plaintiffs were unlikely to prevail on the merits of their claims that the 2019 Protocol exceeds statutory authority.  *Id.* at 112 (per curiam).  The panel expressly declined to rule on Plaintiffs' remaining statutory and constitutional claims, as "the government did not seek immediate resolution of all the plaintiffs' claims" and the claims "were neither addressed by the district court nor fully briefed in this Court."  *Id.* at 113.  The Court of Appeals denied Plaintiffs' petition for rehearing en banc on May 15, 2020, and the Supreme Court denied Plaintiffs' application for a stay of the mandate and petition for a writ of certiorari on June 29, 2020.  *Bourgeois*, 2020 WL 3492763. Meanwhile, Plaintiffs filed their Amended Complaint on June 1, 2020, (ECF No. 92, Am. Compl.), the same day Holder filed a separate supplemental complaint.  (ECF No. 94, Holder Compl.)

Now, after the intervening litigation described above, *see*, *supra*, at 2, two Plaintiffs— Purkey and Honken—are scheduled to be executed this week, and the third, Nelson, next month. Plaintiffs request that the court rule on their remaining statutory and constitutional claims prior to those dates.  (Emergency Notice Requesting Ruling on Pending Mot.)

## II.    ANALYSIS

The court's 2019 and 2020 Orders set forth the legal standard for considering a motion for a preliminary injunction, an "extraordinary remedy" requiring courts to assess four factors: (1) the likelihood of the plaintiff's success on the merits, (2) the threat of irreparable harm to the plaintiff absent an injunction, (3) the balance of equities, and (4) the public interest.  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20, 24 (2008) (citations omitted); *John Doe Co. v. Consumer Fin. Prot. Bureau,* 849 F.3d 1129, 1131 (D.C. Cir. 2017).  The D.C. Circuit has

traditionally evaluated claims for injunctive relief on a sliding scale, such that "a strong showing on one factor could make up for a weaker showing on another." *Sherley v. Sebelius,* 644 F.3d 388, 392 (D.C. Cir. 2011). It has been suggested, however, that a movant's showing regarding success on the merits "is an independent, free-standing requirement for a preliminary injunction." *Id.* at 393 (quoting *Davis v. Pension Benefit Guar. Corp.*, 571 F.3d 1288, 1296 (D.C. Cir. 2009) (Kavanaugh, J., concurring)).

### A.   <u>Likelihood of Success on the Merits</u>

Plaintiffs contend that the 2019 Protocol (1) is arbitrary and capricious under the APA; (2) violates the CSA and FDCA; and (3) deprives Plaintiffs of their right to access the courts and counsel under the First, Fifth, and Sixth Amendments. (Pls. Mot. for Prelim. Inj. at 1.) The court addresses Plaintiffs' likelihood of success on the merits on each of these claims in turn. Although most of their claims are without merit, the court finds that Plaintiffs' have demonstrated a likelihood of success on their FDCA claims.

### 1.   <u>Arbitrary and Capricious</u>

As a preliminary matter, the court agrees with Plaintiffs that review of the 2019 Protocol is not cabined by the D.C. Circuit's holding that the Protocol is a procedural rule. Regardless of whether the APA's notice-and-comment provisions apply, the arbitrary and capricious standard is "among the most notable" constraints on agency decisionmaking, and the court must consider it. *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 106 (2015). Likewise, the court must be able to consider evidence outside the administrative record in order to determine whether the agency considered all relevant factors. *Level the Playing Field v. FEC*, 381 F. Supp. 3d 78, 89 (D.D.C. 2019), *aff'd*, 961 F.3d 462 (D.C. Cir. 2020).

On the other hand, in reviewing an agency action under the arbitrary and capricious standard, the court must not "substitute its own judgment for that of the agency." *Mayo v. Reynolds*, 875 F.3d 11, 19–20 (D.C. Cir. 2017) (citation omitted).  Its task is to ensure, after considering the relevant factors, that Defendants acted "within the bounds of reasoned decisionmaking." *Balt. Gas and Elec. Co. v. Nat. Res. Def. Council, Inc.*, 462 U.S. 87, 104 (1983).  In other words, the court must decide whether there has been clear error by the agency. *See id.* at 96; *Marsh v. Oregon Nat. Res. Council*, 490 U.S. 360, (1989) ("[I]n making the factual inquiry concerning whether an agency decision was 'arbitrary or capricious,' the reviewing court 'must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.") (quoting *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971).)

Plaintiffs argue that Defendants failed to consider three relevant factors before finalizing the 2019 Protocol: (1) the risk of flash pulmonary edema during the execution process, (2) the risk of faulty IV insertion during the execution process, and (3) the risks associated with compounding pharmacies in acquiring pentobarbital.  None of these rises to the level of arbitrariness or capriciousness for an APA violation.

Plaintiffs convincingly show that, in developing the 2019 Protocol, Defendants did not consider the risk of flash pulmonary edema.  (*See* ECF No. 118, Pls. Reply at 5.)  This court has previously outlined the "excruciating suffering" associated with pulmonary edema.  (*See* 2020 Order at 9–12.)  However, the court is bound by the Supreme Court's holding that, given Defendants' contention that pulmonary edema occurs post-mortem or after the inmate has been rendered insensate, this risk does not justify last-minute judicial intervention.  *Barr v. Lee*, 2020 WL 3964985, at *2.

8

Plaintiffs next argue that Defendants failed to consider the risk of faulty IV placement. The evidence before the court suggests that Defendants did consider the risks of faulty IV placement, at least enough to survive the arbitrary and capricious standard.  Defendants studied the "after action report" of the botched execution of Clayton Lockett in Oklahoma, in 2014, where faulty IV placement caused Lockett to regain consciousness.  (Admin. R. at 931.) Defendants also considered the risks in their consultation with experts (Admin. R. at 442–43), and in their review of the case law.  (*See* Admin. R. at 108–400.)  The court is sympathetic to Plaintiffs' dissatisfaction with the guidance provided by the 2019 Protocol, particularly given the botched executions of Lockett and others, and the additional difficulties associated with the ongoing COVID-19 crisis.  But, based on the record before it, the court finds that Defendants adequately considered the risks of faulty IV placement in designing the 2019 Protocol.

Finally, while the record points to a number of concerns with the 2019 Protocol's use of a compounded form of pentobarbital, these concerns do not rise to the level of an APA violation. Defendants' reliance on what they concede is a non-binding memorandum to assure the court that it will use a compounding pharmacy that complies with the FDA's Current Good Manufacturing Practice requirements is troubling.  (*See* ECF No. 113, Defs. Opp. at 31.) Defendants' use of compounding pharmacies, however, must be viewed in light of the Supreme Court's recognition that the government "can't be faulted for failing to use lethal injection drugs that it's unable to procure through good-faith efforts." *Bucklew v. Precythe*, 139 S. Ct. 1112, 1125 (2019) (citing *Glossip v. Gross*, 135 S. Ct. 2726, 2737–38 (2015).  While Plaintiffs are correct to highlight the risks of using compounding pharmacies, the Supreme Court has approved the use of a compounded form of pentobarbital where domestic supplies were unavailable, and Defendants' decision to do so was not arbitrary or capricious.

Plaintiffs have thus failed to demonstrate a likelihood of success on the merits of their claims that the 2019 Protocol is arbitrary and capricious under the APA.

2.   CSA and FDCA

Plaintiffs' CSA and FDCA claims are similar, as both contend that the 2019 Protocol is in violation of both statutes because the Protocol does not provide for Defendants to obtain a valid written prescription for the pentobarbital it will use to execute Plaintiffs. *See* 21 U.S.C. § 829(a) (requiring valid prescription, issued for a legitimate medical purpose, in dispensing any controlled substance to an "ultimate user"); 21 U.S.C. § 353(b)(1) (requiring valid written or oral prescription in dispensing any controlled substance). *See also* 21 C.F.R. § 1308.12 (listing pentobarbital as a Schedule II controlled substance).

Plaintiffs are not barred by either statute from bringing a private claim. Defendants are correct that the CSA and FDCA are primarily criminal statutes, the enforcement of which is the "nearly exclusive" authority of the United States. *POM Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 102, 109 (2014). Plaintiffs convincingly counter, however, that they do not seek to supplant the government as the enforcer of these statutes against a third party, but rather simply seek to require the government to comply with the statutes' prescription dispensation requirements. (Pls. Reply at 17–18.) In other words, while they allege that Defendants failed to comply with the CSA and FDCA, it would be more accurate to describe their claims as being brought under the APA for agency action that is "not in accordance with law"—a violation for which the APA does provide a private right of action. 5 U.S.C. §§ 702, 706(2)(A). *See also Chrysler Corp. v. Brown*, 441 U.S. 281, 316–18 (1979) (finding government violations of Trade Secrets Act reviewable even where Act contained no private right of action).

i. *CSA*

A plain reading of the statute indicates that Plaintiffs are correct that the CSA applies to the government's lethal injection procedures.  Defendants contend that the CSA does not apply because Plaintiffs are not being "dispensed" pentobarbital, and Plaintiffs are not "patients." (Defs. Opp. at 32–33.)  Plaintiffs, however, have amassed a factual record indicating that the Drug Enforcement Agency (DEA) previously advised state officials that the lethal injection process *was* considered "dispensing" the lethal drug, and that licensed professionals *were* required to "prescribe, administer, and dispense" said drugs.  (*See* ECF No. 102-6, Decl. of Alan Schoenfeld Ex. 5; ECF No. 102-7, Schoenfeld Decl. Ex. 6.)  Defendants' rebuttal that these documents are insufficiently authenticated is not a reason to rush Plaintiffs' executions, but rather a reason to halt them to permit Defendants to challenge their veracity.

However, Defendants also point to *Gonzales v. Oregon*, which, they contend, clearly establishes that the CSA does not apply in the lethal injection context.  546 U.S. 243, 272–74 (2006).  In that case the Supreme Court held that the CSA is primarily "a statute combating recreational drug use," and must be read in light of that statutory purpose.  *Id.* at 272.  Thus, "the prescription requirement is better understood as a provision that ensures patients use controlled substances under the supervision of a doctor so as to prevent addiction and recreational abuse. . . . To read prescriptions for assisted suicide as constituting 'drug abuse' under the CSA is discordant with the phrase's consistent use throughout the statute."  *Id.* at 274.  Given this holding, dispensation of lethal injection drugs to an inmate would not be covered by the Act. Indeed, Plaintiffs' reply brief does not address *Gonzales*, and they have failed to demonstrate a likelihood of success on the merits on this claim.

ii.     *FDCA*

The court's analysis of Plaintiffs' FDCA claims is similar to that of their CSA claims, but here, Plaintiffs are on firmer footing.  It is true that the Office of Legal Counsel has previously opined that the FDCA does not apply in the lethal-injection context.  *See Whether the Food & Drug Admin. Has Jurisdiction over Articles Intended for Use in Lawful Executions*, 2019 WL 2235666, at *1 (May 3, 2019).  This Circuit, however, has found otherwise.  In *Beaty v. FDA*, the Court held that lethal injection drugs are "drugs" under the FDCA, and that death-sentenced individuals are permitted to assert violations of the FDCA.  853 F. Supp. 2d 30, 34, 37–42 (D.D.C. 2012), *aff'd in relevant part sub nom. Cook v. FDA*, 733 F.3d 1 (D.C. Cir. 2013).

Defendants elsewhere argue that, because lethal injection drugs are intended to kill, they could not possibly be regulated by laws intended to ensure that a drug is "safe and effective for its intended use."  *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000).  Because violations of the FDCA carry "the risk that the drug[s] will not function as intended," however, the statute must apply in the lethal-injection context, because a lethal injection drug that does not function as intended may "result in conscious suffocation, pain, and cardiac arrest."  *Beaty*, 853 F. Supp. 2d at 37.  This is especially so where, as here, Defendants have justified the 2019 Protocol on the grounds that pentobarbital will render inmates insensate during the execution process.  Where the government argues that a lethal injection drug is legally and constitutionally permissible because it will ensure a "humane" death, it cannot then disclaim a responsibility to comply with federal statutes that exist in order to ensure that the drugs operate humanely.

Defendants also raise a rather convoluted argument regarding the FDCA's restrictions on "outsourcing facilities."  Essentially, they contend that because the FDCA allows certain

outsourcing facilities to compound pentobarbital in large quantities as "office stock" without obtaining a valid prescription for an identified patient, Defendants are similarly allowed to use outsourcing facilities, because they are not compounding large quantities for office stock, nor are inmates "patients."  *See Athenex Inc. v. Azar*, 397 F. Supp. 3d 56, 59 (D.D.C. 2019).  For the same reasons stated in its analysis of Plaintiffs' CSA claims, the court finds that Plaintiffs are "patients" for purposes of the FDCA.  Moreover, the "office stock" language comes from the *Athenex* opinion, not the statute itself, which clearly states that the FDCA regulations apply to all outsourcing facilities, even those that are not responsible for obtaining the required prescriptions.  21 U.S.C. § 353(b)(d)(4).  The court therefore declines to so drastically expand *Athenex*'s holding.

The D.C. Circuit's binding precedent, combined with Plaintiffs' plain reading of the statute, establishes that the 2019 Protocol is likely in violation of the FDCA.  Plaintiffs have thus demonstrated a likelihood of success on the merits of their FDCA claims.

### 3.   Access to the Courts and Right to Counsel

Finally, Plaintiffs argue that the 2019 Protocol violates their right to counsel.  At its core, Plaintiffs' claim is that, because Plaintiffs have a constitutional right to counsel in order to assert violations of their fundamental rights, they also have the right to have their counsel supervise the execution for possible maladministration in violation of the Eighth Amendment.  (*See* Pls. Reply at 18.)  The proper question, however, is whether the 2019 Protocol burdens this right.

The 2019 Protocol permits up to two defense attorneys to be present as witnesses during the execution (Admin. R. at 1024), and while it does not permit witnesses to bring their cell phones into the witness room, an attorney "may request" the use of their phone if "legitimate

need arises," and "will have immediate access to [a phone] outside of the witness room."  (ECF No. 111-3, Decl. of Tom Watson, at 3.)

Plaintiffs contend that the 2019 Protocol impermissibly prohibits counsel from viewing the setting of the IVs, from communicating with Plaintiffs during the execution, and from having a quick and easy means of communicating with the court.  (Pls. Mot. for Prelim. Inj. at 35.) While these are all serious concerns, Plaintiffs fail to demonstrate a likelihood of success on the merits of showing that these requests are constitutionally mandated.  As Defendants note, the cases on which Plaintiffs rely are both out-of-circuit and factually distinct.  *See, e.g.*, *Cooey v. Strickland*, No. 04-cv-1156, 2011 WL 320166, at *6 (S.D. Ohio Jan. 28, 2011) (declining to decide whether the Constitution mandated a right for counsel to be present at the execution where Ohio law already permitted counsel to be present).  Plaintiffs' suggestion that the court adopt Justice Thomas' concurrence in *Lewis v. Casey*, in which he wrote that the Due Process Clause requires a right to access the courts to assert violations of fundamental rights, is compelling.  518 U.S. 343, 380–82 (1996) (Thomas, J., concurring).  But the court cannot find that Plaintiffs have demonstrated a likelihood of success on the merits of a claim that relies on the concurrence of a single Justice.

Finally, Plaintiffs raise a number of arguments regarding the impact of the COVID-19 crisis on Plaintiffs' access to counsel prior to and during the execution process.  These are very serious concerns.  However, Defendants correctly note that these problems are not the result of the 2019 Protocol, or indeed any of Defendants' actions, but of the pandemic itself.  (Defs. Opp. at 42.)  Plaintiffs' objections are understandable, but closely resemble the pandemic-related claims brought by spiritual advisors and family members in separate litigation—claims which have thus far been rejected by the courts.  *See Hartkemeyer v. Barr*, No. 20-cv-336 (S.D. Ind.

14

July 14, 2020), ECF No. 84 (denying preliminary injunction based on APA and Religious

Freedom Restoration Act claims), *appeal filed*, No. 20-2262 (7th Cir. July 14, 2020); *Peterson v.

Barr*, No. 20-2252, 2020 WL 3955951 (7th Cir. July 12, 2020) (vacating preliminary injunction

based on APA claims).  Given these and other recent developments, the likelihood of success on

Plaintiffs' constitutional claims "seems vanishingly small."  *Hartkemeyer*, No. 20-cv-336, ECF

No. 84 at 5.

> ### B.    <u>Irreparable Harm</u>

The court's analysis of irreparable harm is unchanged from its 2019 and 2020 Orders.  In

order to prevail on a request for preliminary injunction, irreparable harm "must be certain and

great, actual and not theoretical, and so imminent that there is a clear and present need for

equitable relief to prevent irreparable harm," and it "must be beyond remediation."  *League of

Women Voters of U.S. v. Newby,* 838 F.3d 1, 7–8 (D.C. Cir. 2016) (citing *Chaplaincy of Full

Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006)) (internal quotation marks and

brackets omitted).  Here, without injunctive relief, Plaintiffs would be unable to pursue their

remaining claims, including the claims that the method of planned execution under the 2019

Protocol is cruel and unusual in violation of the Eighth Amendment, and would therefore be

executed under a procedure likely to be unconstitutional.  This harm is manifestly irreparable.

*See also Wainwright v. Booker*, 473 U.S. 935, 935n.1 (1985) (Powell, J., concurring) (finding

irreparable harm "necessarily present in capital cases").

At no point in this litigation have Defendants disputed that Plaintiffs will suffer

irreparable harm if they are executed before their claims can be fully adjudicated.  Nor has the

D.C. Circuit on appeal, and nor has the Supreme Court, even as it vacated the court's 2020 Order

on the basis that Plaintiffs had not demonstrated a likelihood of success on the merits of their

Eighth Amendment claims.  Based on the record before it, the court finds that Plaintiffs have shown that absent injunctive relief, they will suffer the irreparable harm of being executed before their claims can be fully adjudicated.

**C.**     **Balance of Equities**

Defendants argue that if the court preliminarily enjoins the 2019 Protocol, they will suffer the harm of having to delay the scheduled execution dates.  (*See* Defs. Opp. at 57.)  Defendants' interest in the finality of criminal proceedings, especially at the last minute, is compelling. *Calderon v. Thompson*, 523 U.S. 538, 556 (1998).  The court once again notes, however, that Defendants waited eight years to establish a new protocol for federal executions.  This delay undermines their arguments regarding the urgency and weight of that interest.

Indeed, where the Supreme Court has been sympathetic to the government's need for finality in capital cases, it has generally been in cases where plaintiffs waited until the last minute to bring claims that could have been brought earlier, or engaged in a clear "attempt at manipulation" of the judicial process. *Bucklew*, 139 S. Ct. at 1134 (quoting *Hill v. McDonough*, 547 U.S. 573, 584 (2006)).  Here, however, two of the three Plaintiffs filed their complaints shortly after the DOJ announced the 2019 Protocol, months before their initially scheduled executions, and Nelson filed his complaint before Defendants even announced his execution date.  Plaintiffs are not raising new claims that they could have brought in their initial complaints, but rather renewing the Eighth Amendment arguments made in their initial motions.

That this order comes at the last minute is unfortunate, but it is no fault of Plaintiffs. Defendants chose to schedule Plaintiffs' executions knowing that their remaining claims were still pending.  Defendants further chose to schedule three federal executions, the first in over fifteen years, for the same week, knowing that Plaintiffs' claims raised a number of "novel and

difficult" questions, both in this and other actions. *See Execution Protocol Cases*, No. 20-5199 (D.C. Cir. July 13, 2020). Furthermore, once the Supreme Court vacated this court's preliminary injunction, Defendants chose to execute Lee, beginning the process before dawn, knowing that Lee had pending claims before the court that could not possibly be resolved prior to his execution, including a claim that this court now finds is likely to succeed on the merits. This court agrees that "last-minute stays should be the extreme exception," *Bucklew*, 139 S. Ct. at 1134, but here, it is Defendants' rush to execute Plaintiffs that has led to this extreme exception.

Given this background, the court finds that the potential harm to the government caused by a delayed execution is not substantial, and is far outweighed by the irreparable harm Plaintiffs would face absent an injunction.

### D. Public Interest

As noted in the court's 2019 and 2020 Orders, the public interest is not served by executing individuals before they have had the opportunity to avail themselves of the legal process to challenge the legality of their executions. *See Barr v. Roane*, 140 S. Ct. at 353 (Op. of Alito, J., respecting denial of stay or vacatur) (finding it preferable for plaintiffs' claims to be heard on the merits "in light of what is at stake"). *See also Purkey v. United States*, No. 19-3318, 2020 WL 3603779, at \*11 (7th Cir. July 2, 2020) ("Just because the death penalty is involved is no reason to take shortcuts—indeed, it is a reason not to do so."); *Harris v. Johnson*, 323 F. Supp. 2d 797, 810 (S.D. Tex. 2004) ("Confidence in the humane application of the governing laws . . . must be in the public's interest."). Accordingly, the court finds that the public interest is served by preliminarily enjoining Plaintiffs' executions because it will allow judicial review of whether the United States Government's planned execution protocol complies with federal law, and to ensure that it does so in the future.

### III.     CONCLUSION

The court finds that at least one of Plaintiffs' claims has a likelihood of success on the merits, and that absent a preliminary injunction, Plaintiffs will suffer irreparable harm.  It further finds that the likely harm that Plaintiffs would suffer if the court does not grant injunctive relief far outweighs any potential harm to Defendants.  Finally, because the public is not served by short-circuiting legitimate judicial process, and is greatly served by attempting to ensure that the most serious punishment is imposed in accordance with federal law, the court finds that it is in the public interest to issue a preliminary injunction.  Accordingly, having reviewed the parties' filings, the record, and the relevant case law, and for the reasons set forth above, the court will GRANT Plaintiffs' Motion for a Preliminary Injunction.  A corresponding order will be issued simultaneously.


Date:  July 15, 2020


*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| In the Matter of the )<br>Federal Bureau of Prisons' Execution )<br>Protocol Cases, )<br> )<br>LEAD CASE: *Roane, et al. v. Barr* )<br> )<br>THIS DOCUMENT RELATES TO: )<br> )<br>*Lee v. Barr, et al.*, 19-cv-2559 )<br> )<br>*Purkey v. Barr, et al.*, 19-cv-3214 )<br> )<br>*Nelson v. Barr, et al.*, 20-cv-557 )<br> ) | Case No. 19-mc-145 (TSC) |

## <u>ORDER</u>

For the reasons set forth in the accompanying Memorandum Opinion, the court hereby GRANTS Plaintiffs' Motion for a Preliminary Injunction (ECF No. 102).

It is hereby ORDERED that Defendants (along with their respective successors in office, officers, agents, servants, employees, attorneys, and anyone acting in concert with them) are enjoined from executing Plaintiffs Wesley Ira Purkey, Dustin Lee Honken, and Keith Dwayne Nelson until further order of this court.

Date:  July 15, 2020

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge