# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In the Matter of the | ) | |
| Federal Bureau of Prisons' Execution | ) | |
| Protocol Cases, | ) | |
| | ) | |
| LEAD CASE: *Roane et al. v. Barr* | ) | Case No. 19-mc-145 (TSC) |
| | ) | |
| | ) | |
| THIS DOCUMENT RELATES TO: | ) | |
| | ) | |
| All Cases | ) | |
| | ) | |

## DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' NON-APA CLAIMS AND FOR SUMMARY JUDGMENT REGARDING PLAINTIFFS' APA CLAIMS

## **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................ 1

BACKGROUND ............................................................................................... 4

I.    STATEMENT OF FACTS REGARDING STATUTORY AND REGULATORY
BACKGROUND AND BOP'S 2019  PROTOCOL ................................. 4

II.    PROCEDURAL HISTORY.......................................................................... 7

STANDARD OF REVIEW ................................................................................ 9

ARGUMENT ................................................................................................... 10

I.    PLAINTIFFS FAIL TO STATE AN EIGHTH AMENDMENT CLAIM ...................... 10

    A.  The Standard for Method-of-Execution Challenges .................................. 11

    B.     The Protocol Does Not Pose A Substantial Risk of Severe Harm....................... 12

      1.     BOP's use of pentobarbital is constitutional.......................................................12

      2.     Plaintiffs' remaining challenge to the Protocol is based on speculation. ..............15

    C.     Plaintiffs Fail to Propose An Alternative That Will Significantly Reduce A
Substantial Risk of Severe Pain ................................................................ 17

II.    PLAINTIFFS FAIL TO STATE A CLAIM FOR DELIBERATE INDIFFERENCE ..... 21

III.    PLAINTIFFS FAIL TO STATE A FIFTH AMENDMENT CLAIM FOR DENIAL OF
DUE PROCESS ................................................................................................ 22

IV.    PLAINTIFFS FAIL TO STATE A CLAIM THAT THE PROTOCOL DENIES THEM
ACCESS TO COUNSEL.................................................................................. 24

V.    PLAINTIFFS FAIL TO STATE A CLAIM FOR UNCONSTITUTIONAL
DELEGATION OF LEGISLATIVE POWER .................................................. 25

VI.    DEFENDANTS ARE ENTITLED TO JUDGMENT AS TO PLAINTIFFS' APA
CHALLENGE THAT BOP'S ADOPTION OF THE PROTOCOL IS ARBITRARY
AND CAPRICIOUS ........................................................................................ 27

    A.     APA Review of BOP's Adoption of the Protocol Is Narrow and Highly
Deferential............................................................................................. 27

    B.     BOP's Adoption of the Protocol Is Not Arbitrary or Capricious ......................... 29

VII.    DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS'
*ULTRA VIRES* APA AND CONSTITUTIONAL CLAIMS IN COUNT V ................... 31

    A.     The Protocol Does Not Contravene the FDPA. ................................................. 31

    B.     The Protocol Does Not Violate the Take Care Clause. ......................................... 34

i

VIII.   DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT AS TO PLAINTIFFS' APA NOTICE-AND-COMMENT RULEMAKING CLAIM ......................................... 34

IX.   DEFENDANTS ARE ENTITLED TO JUDGMENT AS TO PLAINTIFFS' CSA AND FDCA-BASED APA CLAIMS ...................................................................................... 35

    A.   Plaintiffs' Claims that the Protocol Violates the CSA Are Without Merit. .......... 35

    B.   The Protocol Does Not Contravene the FDCA ..................................................... 38

CONCLUSION ...................................................................................................................... 43

# TABLE OF AUTHORITIES

## Cases

*A.L.A. Schechter Poultry Corp. v. United States*,
   295 U.S. 495 (1935) ................................................................ 26

*Am. Bioscience, Inc. v. Thompson*,
   269 F.3d 1077 (D.C. Cir. 2001) ............................................ 28

*Am. Power & Light Co. v. SEC*,
   329 U.S. 90 (1946) ................................................................ 26

*Am. Wildlands v. Kempthorne*,
   530 F.3d 991 (D.C. Cir. 2008) .............................................. 28

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .............................................................. 9

*Balt. Gas & Elec. Co. v. Nat. Res. Def. Council, Inc.*,
   462 U.S. 87 (1983) .......................................................... 27, 28

*Barr v. Clinton*,
   370 F.3d 1196 (D.C. Cir. 2004) ............................................ 9

*Barr v. Lee*,
   No. 20A8, 591 U.S. __ (2020) ..................................... *passim*

*Barr v. Purkey*,
   No. 20A9, 591 U.S. ___ (2020) ............................................ 39

*Barr v. Purkey*,
   No. 20A10, 591 U.S. ___ (2020) .................................. 4, 8, 39

*Batterton v. Marshall*,
   648 F.2d 694 (D.C. Cir. 1980) ............................................... 3

*Baze v. Rees*,
   553 U.S. 35 (2008) ...................................................... *passim*

*Beaty v. Brewer*,
   649 F.3d 1071 (9th Cir. 2011) ............................................. 23

*Beaty v. FDA*,
   853 F. Supp. 2d 30 (D.D.C. 2012) ................................. 39, 41

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ........................................................................... 9, 23

*Beyond Nuclear v. U.S. Dep't of Energy*,
   233 F. Supp. 3d 40 (D.D.C. 2017) ....................................................... 9, 10

*Boyd v. Warden, Holman Corr. Facility*,
   856 F.3d 853 (11th Cir. 2017) ............................................................ 20, 21

*Brewer v. Landrigan*,
   562 U.S. 996 (2010) ................................................................................. 16

*Briggs v. Penn. R.R. Co.*,
   334 U.S. 304 (1948) ................................................................................. 31

*Bucklew v. Precythe*,
   139 S. Ct. 1112 (2019) ..................................................................... *passim*

*Busby v. Capital One, N.A.*,
   932 F. Supp. 2d 114 (D.D.C. 2013) .......................................................... 9

*Camp v. Pitts*,
   411 U.S. 138 (1973) ................................................................................. 28

*Citizens to Preserve Overton Park, Inc. v. Volpe*,
   401 U.S. 402 (1971) ................................................................................. 10

*Clemons v. Crawford*,
   585 F.3d 1119 (8th Cir. 2009) ................................................................. 23

*Coe v. McHugh*,
   968 F. Supp. 2d 237 (D.D.C. 2013) ..................................................... 9, 10

*Commercial Drapery Contractors, Inc. v. United States*,
   133 F.3d 1 (D.C. Cir. 1998) ..................................................................... 28

*Cooey v. Strickland*,
   589 F.3d 210 (6th Cir. 2009) ................................................................... 15

*Cook v. Brewer*,
   637 F.3d 1002 (9th Cir. 2011) ............................................................ 16, 22

*Cook v. FDA*,
   733 F.3d 1 (D.C. Cir. 2013) ......................................................... 38, 39, 42

*Covad Commc'ns Co. v. Bell Atl. Corp.*,
　　407 F.3d 1220 (D.C. Cir. 2005) ................................................................... 9

*Creech v. Reinke*,
　　No. 1:12-cv-173, 2012 WL 1995085 (D. Idaho June 4, 2012) ................................ 12

*Emmett v. Johnson*,
　　532 F.3d 291 (4th Cir. 2008) ..................................................................... 23

*Envtl. Def. Fund, Inc. v. Costle*,
　　657 F.2d 275 (D.C. Cir. 1981) .................................................................... 10

*Epsilon Elecs., Inc. v. U.S. Dep't of Treasury*,
　　857 F.3d 913 (D.C. Cir. 2017) .................................................................... 27

*Farmer v. Brennan*,
　　511 U.S. 825 (1994) ............................................................................ 15, 21

*FDA v. Brown & Williamson Tobacco Corp.*,
　　529 U.S. 120 (2000) ............................................................................. *passim*

*FERC v. Elec. Power Supply Ass'n*,
　　136 S. Ct. 760 (2016) ............................................................................... 27

*Florida Power & Light Co. v. Lorion*,
　　470 U.S. 729 (1985) ................................................................................. 28

*Free Enter. Fund v. Pub. Co. Accounting Bd.*,
　　561 U.S. 477 (2010) ................................................................................. 34

*Gissendaner v. Comm'r, Ga. Dep't of Corr.*,
　　779 F.3d 1275 (11th Cir. 2015) ............................................................. 12, 16

*Glossip v. Gross*,
　　135 S. Ct. 2726 (2015) ......................................................................... *passim*

*Gonzales v. Oregon*,
　　546 U.S. 243 (2006) ........................................................................... 35, 36

*Gray v. McAuliffe*,
　　No. 3:16CV982-HEH, 2017 WL 102970 (E.D. Va. Jan. 10, 2017) .................. 19, 20

*Grayson v. Warden, Comm'r , Ala. Dep't of Corr.*,
　　869 F.3d 1204 (11th Cir. 2017) ................................................................. 13

*Halverson v. Slater*,
    129 F.3d 180 (D.C. Cir. 1997) ......................................................................... 34

*Heckler v. Chaney*,
    470 U.S. 821 (1985) ............................................................................... *passim*

*Holder v. United States*,
    721 F.3d 979 (8th Cir. 2013) ........................................................................... 8

*In re Federal Bureau of Prisons' Execution Protocol Cases*,
    955 F.3d 106 (D.C. Cir. 2020) ................................................................. *passim*

*In re Mo. Dep't of Corr.*,
    839 F.3d 732 (8th Cir. 2016) ......................................................................... 13

*In re Ohio Execution Protocol Litig.*,
    860 F.3d 881 (6th Cir. 2017) ......................................................................... 13

*In re Ohio Execution Protocol Litigation*,
    946 F.3d 287 (2019) ....................................................................................... 14

*Indep. Petroleum Ass'n of Am. v. Babbitt*,
    235 F.3d 588 (D.C. Cir. 2001) ....................................................................... 31

*J.W. Hampton, Jr. & Co. v. United States*,
    276 U.S. 394 (1928) ....................................................................................... 25

*Jackson v. Danberg*,
    594 F.3d 210 (3d Cir. 2010) ........................................................................... 22

*Jones v. Comm'r, Ga. Dep't of Corr.*,
    811 F.3d 1288 (11th Cir. 2016) ................................................................. 23, 24

*Jordan v. Comm'r, Miss. Dep't of Corr.*,
    908 F.3d 1259 (11th Cir. 2018) ..................................................................... 13

*Judicial Watch, Inc. v. FBI*,
    No. CV 18-2316 (RC), 2019 WL 4194501 (D.D.C. Sept. 4, 2019) ..................... 9

*Lewis v. Casey*,
    518 U.S. 343 (1996) ................................................................................... 23, 24

*Marsh v. Ore. Nat. Res. Council*,
    490 U.S. 360 (1989) ....................................................................................... 10

*Marshall Cnty. Health Care Auth. v. Shalala,*
    988 F.2d 1221 (D.C. Cir. 1993) ........................................................ 28

*Mayo v. Reynolds,*
    875 F.3d 11 (D.C. Cir. 2017) ........................................................... 27

*McGehee v. Hutchinson,*
    854 F.3d 488 (8th Cir. 2017) ..................................................... 13, 20

*Mistretta v. United States,*
    488 U.S. 361 (1989) ......................................................................... 26

*Morrison v. Olson,*
    487 U.S. 654 (1988) ......................................................................... 34

*Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.,*
    463 U.S. 29 (1983) ..................................................................... 27, 29

*Nat'l Broad. Co. v. United States,*
    319 U.S. 190 (1943) ......................................................................... 26

*Panama Refining Co. v. Ryan,*
    293 U.S. 388 (1935) ......................................................................... 26

*Pension Ben. Guar. Corp. v. LTV Corp.,*
    496 U.S. 633 (1990) ......................................................................... 30

*Phillips v. DeWine,*
    841 F.3d 405 (6th Cir. 2016) ........................................................... 23

*POM Wonderful LLC v. Coca-Cola Co.,*
    573 U.S. 102 (2014) ................................................................... 42, 43

*Powell v. Thomas,*
    641 F.3d 1255 (11th Cir. 2011) ....................................................... 22

*Printz v. United States,*
    521 U.S. 898 (1997) ......................................................................... 34

*Public Citizen, Inc. v. FAA,*
    988 F.2d 186 (D.C. Cir. 1993) ......................................................... 30

*Richards v. INS,*
    554 F.2d 1173 (D.C. Cir. 1977) ....................................................... 10

*Ringo v. Lombardi*,
    706 F. Supp. 2d 952 (W.D. Mo. 2010) ................................................................. 41

*Roane v. Leonhart*,
    741 F.3d 147 (D.C. Cir. 2014) ........................................................................... 5

*Sepulvado v. Jindal*,
    729 F.3d 413 (5th Cir. 2013) ...................................................................... 23, 24

*Simpson v. Young*,
    854 F.2d 1429 (D.C. Cir. 1988) ......................................................................... 30

*The Estate of Lockett by and through Lockett v. Fallin*,
    841 F.3d 1098 (10th Cir. 2016) ......................................................................... 24

*Theodore Roosevelt Conservation P'Ship v. Salazar*,
    616 F.3d 497 (D.C. Cir. 2010) .......................................................................... 28

*Touby v. United States*,
    500 U.S. 160 (1991)....................................................................................... 26

*Towery v. Brewer*,
    672 F.3d 650 (9th Cir. 2012) ........................................................................... 12

*Tri-Valley CAREs v. U.S. Dep't of Energy*,
    671 F.3d 1113 (9th Cir. 2012) .......................................................................... 28

*Trottie v. Livingston*,
    766 F.3d 450 (5th Cir. 2014) ........................................................................... 23

*United States v. Battle*,
    173 F.3d 1343 (11th Cir. 1999) .......................................................................... 8

*United States v. Bernard*,
    299 F.3d 467 (5th Cir. 2002) ............................................................................. 8

*United States v. Bourgeois*,
    423 F.3d 501 (5th Cir. 2005) ........................................................................... 34

*United States v. Bourgeois*,
    No. C-02-CR-216, 2011 WL 1930684 (S.D. Tex. May 19, 2011) ............................ 8

*United States v. Fausto*,
    484 U.S. 439 (1988)....................................................................................... 37

*United States v. Fulks*,
    454 F.3d 410 (4th Cir. 2006) ................................................................ 8

*United States v. Giordano*,
    416 U.S. 505 (1974) ........................................................................ 34

*United States v. Hall*,
    152 F.3d 381 (5th Cir. 1998) ................................................................ 8

*United States v. Libby*,
    498 F. Supp. 2d 1 (D.D.C. 2007) ......................................................... 34

*United States v. Nelson*,
    347 F.3d 701 (8th Cir. 2003) ................................................................ 9

*United States v. Paul*,
    217 F.3d 989 (8th Cir. 2000) ................................................................ 9

*United States v. Robinson*,
    367 F.3d 278 (5th Cir. 2004) ................................................................ 9

*United States v. Rutherford*,
    442 U.S. 544 (1979) ........................................................................ 40

*United States v. Tipton*,
    90 F.3d 861 (4th Cir. 1996) ................................................................. 9

*United States v. Wade*,
    388 U.S. 218 (1967) ........................................................................ 25

*United States v. Webster*,
    162 F.3d 308 (5th Cir. 1998) ................................................................ 8

*Valle v. Singer*,
    655 F.3d 1223 (11th Cir. 2011) ....................................................... 22, 23

*Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc.*,
    435 U.S. 519 (1978) ........................................................................ 28

*Wellons v. Comm'r, Ga. Dept. of Corr.*,
    754 F.3d 1260 (11th Cir. 2014) ....................................................... 16, 23

*West v. Schofield*,
    519 S.W.3d 550 (Tenn. 2017) ............................................................. 37

*Whitaker v. Collier,*
   862 F.3d 490 (5th Cir. 2017), *cert. denied*, 138 S. Ct. 1172 (2018) .................................. 12, 16

*Whitaker v. Livingston,*
   732 F.3d 465 (5th Cir. 2013) ........................................................................................... 23

*Whitman v. Am. Trucking Ass'n,*
   531 U.S. 457 (2001) ................................................................................................... 26, 27

*Wilkerson v. Utah,*
   99 U.S. 130 (1878) ........................................................................................................... 20

*Williams v. Hobbs,*
   658 F.3d 842 (8th Cir. 2011) ..................................................................................... 23, 24

*Wood v. Collier,*
   836 F.3d 534 (5th Cir. 2016) ........................................................................................... 16

*Wood v. Ryan,*
   759 F.3d 1076 (9th Cir. 2014) ......................................................................................... 20

*Workman v. Bredesen,*
   486 F.3d 896 (6th Cir. 2007) ........................................................................................... 22

*Zagorski v. Parker,*
   18A376, 586 U. S. ___ (2018) ........................................................................................ 10

*Zagorski v. Parker,*
   139 S. Ct. 11 (2018) ......................................................................................................... 14

*Zink v. Lombardi,*
   783 F.3d 1089 (8th Cir. 2015) ................................................................................. *passim*

## Constitutional Provisions

U.S. Const. art. II, § 3, cl. 5 .................................................................................................. 34

U.S. Const. amend. VI ........................................................................................................... 25

## Statutes

5 U.S.C. § 553 ....................................................................................................................... 31

5 U.S.C. § 701 ........................................................................................................... 4, 38, 42

18 U.S.C. § 3596 ............................................................................................................ 5, 27

18 U.S.C. § 4041 ................................................................................................ 33

18 U.S.C. § 4042 ................................................................................................ 33

21 U.S.C. § 337 ................................................................................................. 42

21 U.S.C. § 353 ................................................................................................. 42

21 U.S.C. § 353a .................................................................................... 38, 41, 42

21 U.S.C. § 353b ............................................................................... 6, 16, 38, 42

21 U.S.C. § 381 ................................................................................................. 42

21 U.S.C. § 802 ............................................................................................ 35, 36

21 U.S.C. § 829 ............................................................................................ 35, 36

21 U.S.C. § 841 ............................................................................................ 35, 38

21 U.S.C. § 842 ................................................................................................. 38

21 U.S.C. § 84 ................................................................................................... 38

28 U.S.C. § 509 ............................................................................................ 27, 33

28 U.S.C. § 510 ............................................................................................ 27, 33

28 U.S.C. § 561 ................................................................................................. 33

28 U.S.C. § 871 ................................................................................................. 38

28 U.S.C. § 877 ................................................................................................. 38

28 U.S.C. § 882 ................................................................................................. 38

Act of Apr. 30, 1790, ch. 9, 1 Stat. 112 ............................................................. 4

Act of Sept. 6, 1966, Pub. L. No. 89-554, 80 Stat. 378 .................................... 33

An Act To Establish the Department of Justice, 16 Stat.162 (1870) ............. 33, 34

Anti-Drug Abuse Act of 1988, Pub. L. No. 100-690, tit. VII, 102 Stat. 4181 (1988) ............ 33, 34

FDPA, Pub. L. No. 103-322, 108 Stat. 1796 ...................................................... 5

Miss. Code. Ann. § 99-19-51 ............................................................................... 21

Okla. Stat. tit. 22, § 1014 .................................................................................... 21

Utah Code Ann. § 77-18-5.5(3) (2015) .............................................................. 21

**Rules**

Fed. R. Civ. P.12(b)(6)......................................................................................... 9

Fed. R. Civ. P. 56(a) ............................................................................................ 9

**Regulations**

21 C.F.R. Pts. 201 ........................................................................................... 6, 16

21 C.F.R. Pts. 211 ........................................................................................... 6, 16

21 C.F.R. §1306.04 .............................................................................................. 35

28 C.F.R. § 26.1 .................................................................................................... 5

28 C.F.R. § 26.2 .................................................................................................... 5

28 C.F.R. § 26.3 .................................................................................................... 5

28 C.F.R. § 26.4 .................................................................................................... 5

28 C.F.R. § 26.5 .................................................................................................... 5

57 Fed. Reg. 56,536 (Nov. 30, 1992)................................................................. 37

58 Fed. Reg. 4898 (Jan. 19, 1993) ...................................................................... 5

**Other Authorities**

Black's Law Dictionary (11th ed. 2019).......................................................... 36

Cate Stetson & Ruth Friedman, "The Justice Department's Shameful Rush to Federal
    Executions," Opinion (July 17, 2020), https://www.nytimes.com/2020/07/17/opinion/justice-
    department-federal-execution.html........................................................... 25

*Compounding Laws and Policies*, https://www.fda.gov/drugs/human-drug-
    compounding/compounding-laws-and-policies ........................................ 17

Death Penalty Information Center, State by State Lethal Injection Protocols,
https://deathpenaltyinfo.org/executions/lethal-injection/state-by-state-lethal-injection-
protocols ................................................................................................................................ 18

FDA, *Facts About the Current Good Manufacturing Practices (CGMPS)*,
https://www.fda.gov/drugs/pharmaceutical-quality-resources/facts-about-current-good-
manufacturing-practices-cgmps ......................................................................................... 6, 17

Hailey Fuchs, For Third Time This Week, the Federal Government Carries Out an Execution,
N.Y. Times (July 17, 2020),  https://www.nytimes.com/2020/07/17/us/dustin-honken-federal-
execution.html ...................................................................................................................... 15

Hailey Fuchs, Government Carries Out First Federal Execution in 17 Years, N.Y. Times (July
14, 2020), https://www.nytimes.com/2020/07/14/us/politics/daniel-lewis-lee-execution-
crime.html ............................................................................................................................. 16

Jeffrey A. Rosen, "The Death Penalty Can Ensure 'Justice Is Being Done'," N.Y. Times,
Opinion (July 27, 2020), https://www.nytimes.com/2020/07/27/opinion/federal-death-
penalty.html .......................................................................................................................... 25

Mark Berman, Justice Dept. Carries Out Second Federal Execution After Another Late-Night,
Divided Supreme Court Ruling, Wash. Post (July 16, 2020),
https://www.washingtonpost.com/national/wesley-purkey-execution-terre-haute-supreme-
court/2020/07/16/e074dbca-c75f-11ea-b037-f9711f89ee46_story.html ................................ 16

Office of Legal Counsel Op., Whether the Food & Drug Admin. Has Jurisdiction over Articles
Intended for Use in Lawful Executions (May 3, 2019), OLC Op.,  2019 WL 2235666 .... 39, 40

The Marshall Project, *After Lethal Injection* (June 1, 2015),
https://www.themarshallproject.org/2015/06/01/after-lethal-injection ................................... 21

**INTRODUCTION**

The Supreme Court has "never invalidated" a State or federal "procedure for carrying out a sentence of death as the infliction of cruel and unusual punishment"—not hanging, the firing squad, the electric chair, or lethal injection using midazolam, a substance that is indisputably more controversial than pentobarbital. *Baze v. Rees*, 553 U.S. 35, 48 (2008) (plurality opinion of Roberts, C.J.); *see Bucklew v. Precythe*, 139 S. Ct. 1112, 1124 (2019); *Glossip v. Gross*, 135 S. Ct. 2726, 2746 (2015); *id.* at 2781 (Sotomayor, J., dissenting). Nevertheless, Plaintiffs, all of whom are condemned federal inmates, challenge the Federal Bureau of Prisons' ("BOP") single-drug (pentobarbital) lethal injection protocol as cruel and unusual punishment along with other concerns.[1] This Court, the D.C. Circuit, and the Supreme Court have already ruled on nearly all of Plaintiffs' claims in the Amended Complaint in the context of preliminary injunction motions brought by some of the plaintiffs ("PI Movants"), as well as in corresponding motions to stay and/or for vacatur. The remaining claims, which even the PI Movants did not press in their emergency motions, are equally without merit. The appellate courts' various rulings to date confirm that this Court should grant summary judgment in favor of Defendants as to Plaintiffs' Administrative Procedure Act ("APA") claims and dismiss Plaintiffs' other claims for failure to state a claim.

To begin, Plaintiffs cannot state an Eighth Amendment claim. As the Supreme Court has recognized in this very case, the federal government adopted the pentobarbital protocol because it is consistent with the States' trend towards using "less painful and more humane . . . methods"; has withstood extensive litigation challenges; is substantively identical to protocols that have been

---

[1] Plaintiffs Daniel Lewis Lee, Wesley Ira Purkey, and Dustin Lee Honken were executed on July 14, July 16, and July 17, respectively. Their claims, which all seek prospective relief, are now moot and they should be dismissed from this case. Defendants also note that the Court mistakenly identified Lezmond Mitchell as a Plaintiff in this action, *see* ECF No. 135 at 1 n.1. The Court had previously dismissed Mitchell at his request in one of the cases consolidated into this action. *See Robinson v. Mukasey*, No. 1:07-cv-02145-TSC (D.D.C.), ECF No. 20. Finally, Defendants note that Christopher Vialva, a death row inmate who filed an action on June 22, 2020 raising identical claims as Plaintiffs in this consolidated case, has requested that his case be consolidated into this action. *See Vialva v. Barr*, No. 1:20-cv-1693 (D.D.C.), ECF No. 7 (Notice of Related Case); *see id.* at ECF No. 1 (requesting that "this Court consolidate this complaint").

used by States in more than 100 executions; "[h]as been repeatedly invoked by prisoners as a less painful and risky alternative to the lethal injection protocols of other jurisdictions"; and was approved by the Supreme Court just last year for the execution of an inmate with a particularly sensitive medical condition. *Barr v. Lee*, No. 20A8 at 2, 591 U.S. __ (2020) (per curiam). Because the Eighth Amendment forbids only methods of execution that "intensif[y] the sentence of death with a (cruel) 'superadd[ition]' of 'terror, pain, or disgrace,'" *Bucklew*, 139 S. Ct. at 1124 (quoting *Baze*, 553 U.S. at 48), BOP's use of a drug that "has become a mainstay of state executions," *Lee*, No. 20A8 at 2, necessarily withstands constitutional scrutiny.

Because Plaintiffs cannot establish that the pentobarbital-based protocol poses "an objectively intolerable risk of harm that prevents prison officials from pleading that they were subjectively blameless for purposes of the Eighth Amendment," *Glossip*, 135 S. Ct. at 2737 (citation omitted), this Court need not proceed further on Plaintiffs' Eighth Amendment claim. But even beyond this initial failure, Plaintiffs cannot prevail because they have not alleged an alternative method of execution that is feasible, readily implemented, and significantly reduces a substantial risk of severe harm. This Court has already held that one of the proposed alternatives— adding certain procedural safeguards to avoid possible maladministration—is not constitutionally required. *See* ECF No. 135, Mem. Op. at 13. Despite this Court's preliminary ruling that Plaintiffs' second alternative—adding a pre-dose of a pain-relieving, anesthetic drug, such as fentanyl to the pentobarbital protocol—is viable, Plaintiffs have failed to allege that any State has used fentanyl in combination with pentobarbital. Under clear Supreme Court precedent, "choosing not to be the first [State] to experiment with a new method of execution is a legitimate reason to reject it." *Bucklew*, 139 S. Ct. at 1130. As for Plaintiffs' suggestion to use the firing squad, the Constitution does not mandate that the federal government use an execution method that has "given way to more humane methods, culminating in today's consensus on lethal injection." *Baze*, 553 U.S. at 62 (plurality opinion). Given the "consensus" among the States that lethal injection is more dignified and humane than the firing squad, *id.*, BOP was entitled to reach the same conclusion.

Plaintiffs have similarly failed to allege that the Protocol violates their due process or access to counsel rights or constitutes a non-delegation problem. Defendants have received all the process to which they are entitled in their respective criminal proceedings, and it is well settled that an inmate does not have an independent constitutional right to information concerning the procedures for implementing his death sentence. Nor does a constitutional right to counsel throughout an execution exist, as this Court essentially confirmed in rejecting this very argument at the preliminary injunction stage. *See* ECF No. 145, Mem. Op. at 13-15. The Court may also take judicial notice of the fact that the Protocol did not impede the former attorneys for Lee, Purkey, and Honken from zealous advocating for their clients in the weeks leading to those inmates' executions. Plaintiffs also fail to state a non-delegation doctrine claim because the Federal Death Penalty Act ("FDPA") provides an intelligible principle for the agency's actions.

As for Plaintiffs' APA claims, Defendants are entitled to judgment on all of them. First, the D.C. Circuit has already granted judgment and entered its mandate in Defendants' favor in this case on Plaintiffs' pre-amendment claims that the Protocol is contrary to the FDPA and that the Government improperly failed to allow for notice and comment when BOP adopted the Protocol. *See In re Fed. Bureau of Prisons' Execution Protocol Cases*, 955 F.3d 106, 108-13 (D.C. Cir. 2020) (per curiam). That decision is binding on this Court. Nor can Plaintiffs recast the claim as arising under the Take Care clause. That clause speaks only to the President and not subordinate officials such as Defendants.

Second, regarding the remaining APA claims, the APA's highly deferential standard of review does not permit this Court to substitute its own judgment for that of BOP's or ask whether BOP's Protocol is the best one possible or even whether it is better than the alternatives. Rather, the Court's review is limited to determining whether there has been a clear error of judgment based on the Administrative Record. And, indeed, at the preliminary injunction phase, both the D.C. Circuit and this Court have already concluded that BOP's adoption of pentobarbital is not arbitrary or capricious. *See Execution Protocol Cases*, No. 20-5206, Doc. No. 1852151, at 1-3 (D.C. Cir. July 16, 2020). This Court similarly has rejected Plaintiffs' claim that the protocol is contrary to

law because it violates the Controlled Substances Act ("CSA").  *See* ECF No. 145, Mem. Op. at 7-9, 11.  Given that no further discovery is permitted on the APA claims, judgment should be entered for the Government on these two claims as well.

Although this Court previously found that Plaintiffs were likely to succeed on their claim that the Protocol violates the Federal Food, Drug, and Cosmetic Act ("FDCA"), and entered a preliminary injunction on that ground, the Supreme Court vacated that order with no dissenting opinions.  *Barr v. Purkey*, No. 20A10 (July 16, 2020).  Put simply, abiding by the FDCA's prescription requirement would make execution by lethal injection impossible, which Congress could not have intended when it enacted the FDPA.  *See FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 143 (2000) ("[R]econciling many laws enacted over time, and getting them to 'make sense' in combination, necessarily assumes that the implications of a statute may be altered by the implications of a later statute.").

Defendants are also entitled to judgment on Plaintiffs' claims that the Food and Drug Administration ("FDA") and the Drug Enforcement Administration ("DEA") have acted arbitrarily and capriciously in allegedly failing to exercise their enforcement authority.  "[A]n agency's decision not to take enforcement action should be presumed immune from judicial review under § 701(a)(2) [of the APA]," *Heckler v. Chaney*, 470 U.S. 821, 832 (1985), and nothing rebuts that presumption here.

For these reasons, Plaintiffs' non-APA claims should be dismissed, and judgment should be entered in Defendants' favor on Plaintiffs' APA claims.

## BACKGROUND

### I.   STATEMENT OF FACTS REGARDING STATUTORY AND REGULATORY BACKGROUND AND BOP'S 2019 PROTOCOL

This Court is familiar with the statutory and regulatory background relevant in this case.  Accordingly, we summarize only briefly herein.  Federal law has authorized capital punishment since 1790.  *See* Act of Apr. 30, 1790, ch. 9, §§ 1, 3, 33, 1 Stat. 112, 112, 113, 119.  In 1993, following the States' trend to use lethal injection as the most humane method of execution, the

Department of Justice ("DOJ") issued a rule providing for lethal injection as the method of execution for federal capital crimes.  58 Fed. Reg. 4898 (Jan. 19, 1993); *see* 28 C.F.R. §§ 26.1-26.5.  A year later, Congress enacted the FDPA, Pub. L. No. 103-322, § 60002, 108 Stat. 1796, 1959, which provides that a federal death sentence shall be carried out "in the manner prescribed by the law of the State in which the sentence is imposed."  18 U.S.C. § 3596(a).

Under DOJ's 1993 regulation, BOP is responsible for selecting the lethal agent as well as other procedures for implementing the death sentence.  Accordingly, BOP has an internal manual ("BOP Manual") outlining its policy and procedures for planning and carrying out death sentences.  AR 1016–67.  The lethal substance(s) and the procedures for injecting such substance(s) are set forth in an addendum to the BOP Manual.  Prior to 2011, the addendum called for a sequence of three drugs.  *See Roane v. Leonhart*, 741 F.3d 147, 149 (D.C. Cir. 2014).  In 2011, after it could no longer obtain one of the drugs, BOP began exploring the possibility of using pentobarbital as the lethal agent.  BOP visited state execution sites, observed state executions, and reviewed state lethal injection protocols.  AR 7–105, 871, 930, 933.

BOP ultimately "determined that the single-drug pentobarbital protocol is the most suitable method based on its widespread use by the states and its acceptance by many courts."  AR 871.  Indeed, BOP noted that inmates in States that use different lethal injection protocols frequently identify a single-drug pentobarbital protocol as a humane and lawful alternative.  AR 4.  And, "[a]lthough various media outlets have reported complications with lethal injection executions, none of those executions appear to have resulted from the use of single-drug pentobarbital."  AR 871.  BOP also consulted with two medical experts, including the expert credited on the effects of pentobarbital in *Bucklew*.  AR 872.  Both concluded that the single-drug pentobarbital protocol "would produce a humane death."  AR 3; *see also* AR 525–26, 871, 872, 930.  In addition, BOP explored alternatives, including using pentobarbital in a three-drug sequence, AR 871, and using other drugs, AR 871, 964 (propofol); AR 862–65 (fentanyl); AR 931, 966 (midazolam, sufentanil citrate, and potassium chloride); AR 968 (midazolam and hydromorphone).

BOP is unable to procure a supply of FDA-approved pentobarbital sodium for use in executions. Recognizing that federal courts of appeals have routinely denied Eighth Amendment challenges to the use of compounded pentobarbital, AR at 857–58, BOP selected a DEA-registered domestic bulk manufacturer to produce the active pharmaceutical ingredient ("API"), and ensured that the API was subjected to quality assurance testing. AR 872. BOP further selected a DEA-registered compounding pharmacy to store the API and to convert it into an injectable form as needed. AR 857, 872. The pharmacy is also registered with the FDA pursuant to Section 503B of the FDCA, 21 U.S.C. § 353b. AR 1084; Decl. of Raul Campos, ¶ 3 (Nov. 12, 2019), ECF No. 36–1. Section 503B facilities are subject to the FDA's "Current Good Manufacturing Practice ('CGMP') requirements," 21 C.F.R. Pts. 201 & 211, which are regulations designed to ensure that human pharmaceuticals "meet quality standards."[2] *See* AR 1084. To date, the pharmacy has also worked with two independent laboratories to conduct quality assurance testing of the compounded pentobarbital solution it produces from the API. AR 1084, 970–1015, 1075–1083. Further, BOP confirmed with the DEA that the BOP facility in Terre Haute, Indiana meets the regulatory requirements for storage and handling of pentobarbital. AR 872. And in March 2020, BOP adopted "General Guidelines for Compounding and Testing Pentobarbital Sodium for Use in Executions" to ensure that quality assurance testing is completed and the results are verified by BOP prior to a scheduled execution. AR 1084–85.

On July 25, 2019, at the Attorney General's direction, BOP adopted a revised addendum ("Addendum") to the BOP Manual that replaced the three-drug procedure with the use of a single drug, pentobarbital sodium, as the lethal agent. AR 868, 874–75, 1068–70. We refer to the revised Addendum and the Manual collectively as the "Protocol." The Addendum sets forth procedures for BOP to administer the lethal injection, including the selection and training of "qualified

---

[2] FDA, *Facts About the Current Good Manufacturing Practices (CGMPS)*, https://www.fda.gov/drugs/pharmaceutical-quality-resources/facts-about-current-good-manufacturing-practices-cgmps.

personnel" who serve as the executioner(s), the quantity of the lethal agent, and the number of syringes to be used during the execution.  AR 874-75.

## II.   PROCEDURAL HISTORY

This Court has issued three preliminary injunctions to date prohibiting the government from executing those Plaintiffs who had execution dates.  ECF Nos. 51, 136, 146.  Each of those injunctions has been vacated by either the D.C. Circuit or the Supreme Court.

Specifically, on November 20, 2019, the Court granted a preliminary injunction prohibiting the government from executing Plaintiffs Lee, Honken, Purkey, and Bourgeois.  *See* ECF No. 50, Mem. Op.  The Court held that those Plaintiffs were likely to succeed on their claim that the Protocol conflicts with the FDPA.  *Id*. at 7-8.  On appeal, the D.C. Circuit vacated the preliminary injunction and directed entry of judgment for the government on that claim as well as Plaintiffs' claim that the Protocol should have been subject to notice and comment.  *In re fed. Bureau of Prisons' Execution Protocol Cases*, 955 F.3d at 108-113 (per curiam).

Plaintiffs then filed a consolidated Amended Complaint.  *See* ECF No. 92.  Following the rescheduling of the executions of Lee, Honken, and Purkey, and current Plaintiff Nelson, and a second round of preliminary injunction motion briefing, the Court entered a preliminary injunction on July 13, 2020, on the ground that the PI Movants were likely to succeed on their Eighth Amendment claim.  *See* ECF No. 135, Mem. Op. at 9-18.  The Court rejected the PI Movants' contention that additional procedural safeguards constitute alternative methods of execution, *id*. at 13, but concluded that they had likely identified two alternative methods of execution—(1) adding a pre-dose of opioid pain medication to the single-drug protocol and (2) the firing squad.  *Id*. at 13-18.  The Supreme Court disagreed and vacated this Court's preliminary injunction on July 14, 2020, "so that plaintiffs' execution may proceed as planned."  *Lee*, No. 20A8 at 1, 3.  Lee was executed several hours later.

On July 15, 2020, this Court entered a third preliminary injunction, in which it concluded that the remaining PI Movants had demonstrated a likelihood of success on their FDCA claim.  ECF No. 145, Mem. Op. at 12-13.  But the Court also concluded that they had not demonstrated a

likelihood of success on their claims that the Protocol is arbitrary and capricious under the APA, *see id*. at 7-10, violates the CSA, *see id*. at 11, and deprives them of access to counsel.  *See id*. at 13-15.  On July 16, 2020, the Supreme Court again vacated this Court's preliminary injunction. *See Purkey*, No. 20A10 at 1.  Purkey was executed several hours later.

Meanwhile, Honken sought affirmance of this Court's July 15 Order on the alternate grounds that he was likely to succeed on his claim that the Protocol is arbitrary and capricious "because (1) BOP failed to consider the risk that pentobarbital could cause flash pulmonary edema; (2) BOP failed to address the risk of faulty IV placement; and (3) BOP failed to justify its use of compounded drugs."  *See Execution Protocol Cases*, No. 20-5206, Doc. No. 1852151, at 1 (D.C. Cir. July 16, 2020).  On July 17, 2020, the D.C. Circuit affirmed this Court's ruling on these issues. *See id.* at 1-3.  Honken was executed as scheduled later that day.

The remaining Plaintiffs in this consolidated action are set forth below along with a brief summary of their crimes:

- Anthony Battle brutally murdered a federal correctional officer while Battle was serving a life sentence for the sexual assault and murder of a U.S. Marine, his wife.  *United States v. Battle*, 173 F.3d 1343, 1345 (11th Cir. 1999).

- Brandon Bernard was part of a criminal gang that included Christopher Vialva, *see supra* n.1, carjacked, robbed, and murdered two youth ministers, a husband and wife.  The ministers were shot in the trunk of their car and then Bernard set the car on fire.  *United States v. Bernard*, 299 F.3d 467, 472-73 (5th Cir. 2002).

- Alfred Bourgeois physically assaulted and murdered his two-year-old daughter on a military base in Texas.  *See United States v. Bourgeois*, No. C-02-CR-216, 2011 WL 1930684 at *7, *12 (S.D. Tex. May 19, 2011).

- Chad Fulks engaged in a lengthy multi-state crime spree with another man with whom he had escaped from prison that culminated in the carjacking, rape, and murder of two women.  *United States v. Fulks*, 454 F.3d 410, 415-18 (4th Cir. 2006).

- Orlando Hall and Bruce Webster were part of a group that kidnapped, repeatedly raped, and brutally murdered a sixteen-year-old girl.  *United States v. Hall*, 152 F.3d 381, 389-90 (5th Cir. 1998); *United States v. Webster*, 162 F.3d 308, 317-18 (5th Cir. 1998).

- Norris Holder and another man robbed a bank and murdered a security guard in the course of the robbery.  *Holder v. United States*, 721 F.3d 979, 983 (8th Cir. 2013).

- Richard Tipton, Cory Johnson, and James Roane "were principal 'partners' in a substantial drug-trafficking conspiracy that lasted from 1989 through July of 1992," including a period of time in 1992 when the three "were variously implicated in the murders of ten persons within the Richmond area—all in relation to their drug-trafficking operation." *United States v. Tipton*, 90 F.3d 861, 868 (4th Cir. 1996).

- Keith Nelson kidnapped, raped, and murdered a ten-year-old girl. *United States v. Nelson*, 347 F.3d 701, 704 (8th Cir. 2003).

- Jeffrey Paul and another man robbed and savagely beat an eighty-two-year-old man on a nature trail and then murdered him by shooting him in the head and shoulder. *United States v. Paul*, 217 F.3d 989, 994 (8th Cir. 2000).

- Julius Robinson, a wholesale drug dealer operating in five states, murdered two men, and was part of a broad criminal conspiracy that led to the murder of a third man. *United States v. Robinson*, 367 F.3d 278, 282-83 (5th Cir. 2004).

## STANDARD OF REVIEW

Defendants move to dismiss Plaintiffs' non-APA claims for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Although a complaint need not contain "detailed factual allegations," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007), it must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Dismissal under Rule 12(b)(6) is appropriate "if the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Barr v. Clinton*, 370 F.3d 1196, 1202 (D.C. Cir. 2004) (citation omitted). "The court ruling on a Rule 12(b)(6) motion to dismiss 'may consider the facts alleged in the complaint, documents . . . incorporated by reference in the complaint, or documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by the parties.' The court may also take 'judicial notice of facts on the public record.'" *Judicial Watch, Inc. v. FBI*, No. CV 18-2316 (RC), 2019 WL 4194501 at *5 (D.D.C. Sept. 4, 2019) (quoting *Busby v. Capital One, N.A.*, 932 F. Supp. 2d 114, 133–34 (D.D.C. 2013) and *Covad Commc'ns Co. v. Bell Atl. Corp.*, 407 F.3d 1220, 1222 (D.C. Cir. 2005)).

Defendants also move for summary judgment on Plaintiffs' APA claims. "When reviewing motions for summary judgment in a suit seeking review of an agency's actions, the standard under Fed. R. Civ. P. 56(a) does not apply." *Beyond Nuclear v. U.S. Dep't of Energy*, 233 F. Supp. 3d

40, 47 (D.D.C. 2017) (Chutkan, J.) (citing *Coe v. McHugh*, 968 F. Supp. 2d 237, 239 (D.D.C. 2013)).  "Instead, the court must decide as a matter of law 'whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review.'"  *Id.* (quoting *Coe*, 968 F. Supp. 2d at 240, and citing *Richards v. INS*, 554 F.2d 1173, 1177 & n.28 (D.C. Cir. 1977)).  "The court's review is 'highly deferential' and begins with a presumption that the agency's actions are valid."  *Beyond Nuclear*, 233 F. Supp. 3d at 47 (quoting *Envtl. Def. Fund, Inc. v. Costle*, 657 F.2d 275, 283 (D.C. Cir. 1981)).  The court is "not empowered to substitute its judgment for that of the agency," *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971), but instead must consider only "whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment."  *Marsh v. Or. Nat. Res. Council*, 490 U.S. 360, 378 (1989) (quoting *Overton Park*, 401 U.S. at 416).

## ARGUMENT

## I.  PLAINTIFFS FAIL TO STATE AN EIGHTH AMENDMENT CLAIM

Plaintiffs allege that BOP's Protocol violates the Eighth Amendment's proscription against cruel and unusual punishment.  *See* Am. Compl., Count II.  Their method-of-execution challenge does not state a claim, however, because as the Supreme Court recently reiterated in this very case, pentobarbital sodium "'is widely conceded to be able to render a person fully insensate' and 'does not carry the risks' of pain that some have associated with other lethal injection protocols."  *Lee*, No. 20A8 at 1 (quoting *Zagorski v. Parker*, 18A376, 586 U.S. ___, ___ (2018) (Sotomayor, J., dissenting from denial of certiorari and denial of a stay) (slip op., at 2)).  Indeed, in vacating the preliminary injunction this Court issued on the ground that this claim was likely to succeed on the merits, the Supreme Court strongly indicated that BOP's pentobarbital Protocol withstands Eighth Amendment scrutiny.  As the Court explained, the claim "faces an exceedingly high bar" because the Court "'has yet to hold that a State's method of execution qualifies as cruel and unusual.'"  *Id.* at 2 (quoting *Bucklew*, 139 S. Ct. at 1124).  This is "[f]or good reason," the Court said, because "'[f]ar from seeking to superadd terror, pain, or disgrace to their executions, the States have often sought more nearly the opposite,' developing new methods, such as lethal injection, thought to be

less painful and more humane than traditional methods, like hanging, that have been uniformly regarded as constitutional for centuries." *Id.* (quoting *Bucklew*, 139 S. Ct. at 1124). The Court observed that BOP's selection of the single-drug pentobarbital Protocol, which "has become a mainstay of state executions," merely follows this trend. *Id.* For this reason, and the reasons discussed below, this Court should dismiss Plaintiffs' method-of-execution challenge for failure to state a claim.

### A. The Standard for Method-of-Execution Challenges

The Eighth Amendment forbids "long disused (unusual) forms of punishment that intensif[y] the sentence of death with a (cruel) 'superadd[ition]' of 'terror, pain, or disgrace,'" *Bucklew*, 139 S. Ct. at 1124 (quoting *Baze*, 553 U.S. at 48), but "[it] 'does not demand the avoidance of all risk of pain in carrying out executions,'" *id.* at 1125 (quoting *Baze*, 553 U.S. at 47). Thus, the Supreme Court requires inmates challenging a method of execution to establish initially that the method "is '*sure or very likely* to cause serious illness and needless suffering,' and give rise to 'sufficiently *imminent* dangers.'" *Glossip*, 135 S. Ct. at 2737 (quoting *Baze*, 553 U.S. at 50). "[T]here must be 'a substantial risk of serious harm,' an 'objectively intolerable risk of harm' that prevents prison officials from pleading that they were 'subjectively blameless for purposes of the Eighth Amendment.'" *Id.* (quoting *Baze*, 553 U.S. at 50). The fact that "an execution method may result in pain, either by accident or as an inescapable consequence of death," is insufficient to state an Eighth Amendment claim. *Baze*, 553 U.S. at 50.

Even if an inmate does show a substantial risk of severe harm, the Eighth Amendment analysis is "a *necessarily* comparative exercise," *Bucklew*, 139 S. Ct. at 1126, so an inmate must also "plead and prove a known and available alternative," *Glossip*, 135 S. Ct. at 2739, that is "'feasible, readily implemented, and in fact significantly reduce[s] a substantial risk of severe pain,'" *id.* at 2737 (quoting *Baze*, 553 U.S. at 52). Merely "'showing a slightly or marginally safer alternative,'" *id.* (quoting *Baze*, 553 U.S. at 51), or "[a] minor reduction in risk is insufficient"; rather, "the difference must be clear and considerable," *Bucklew*, 139 S. Ct. at 1130. Otherwise, courts would become "boards of inquiry charged with determining 'best practices' for executions,

with each ruling supplanted by another round of litigation touting a new and improved methodology." *Baze*, 553 U.S. at 51; *accord Bucklew*, 139 S. Ct. at 1125.

Finally, the inmate must demonstrate that the government has refused to adopt the inmate's proposed alternative "without a legitimate penological reason." *Bucklew*, 139 S. Ct. at 1125. As the Supreme Court recognized, there are "many legitimate reasons why [the government] might choose, consistent with the Eighth Amendment, not to adopt a prisoner's preferred method of execution." *Id.* And "the Constitution affords a measure of deference to [the government's] choice of execution procedures." *Id.* (citation omitted).

### B.   The Protocol Does Not Pose A Substantial Risk of Severe Harm

#### 1.   BOP's use of pentobarbital is constitutional.

Plaintiffs have failed to state a claim that pentobarbital poses a "substantial risk of severe pain" or an "objectively intolerable risk of harm." *Glossip*, 135 S. Ct. at 2737.

*Baze* recognizes that "it is difficult to regard a practice as 'objectively intolerable' when it is in fact widely tolerated." 553 U.S. at 53. That is the case with pentobarbital, which, as the Supreme Court noted less than three weeks ago, "has become the mainstay of state executions." *Lee*, No. 20A8 at 2. The Supreme Court upheld Missouri's single-drug pentobarbital protocol only last year in *Bucklew*, and "courts across the country have held that the use of pentobarbital in executions does not violate the Eighth Amendment," *Glossip*, 135 S. Ct. at 2733. More than one hundred executions using a single-drug pentobarbital protocol have been carried out by five States, AR 871, and each of those states' protocols have been upheld. *See Whitaker v. Collier*, 862 F.3d 490, 498–99 (5th Cir. 2017) (Tex.), *cert. denied*, 138 S. Ct. 1172 (2018); *Zink v. Lombardi*, 783 F.3d 1089, 1106–07 (8th Cir. 2015) (en banc) (Mo.); *Towery v. Brewer*, 672 F.3d 650, 658–59 (9th Cir. 2012) (Ariz.); *Gissendaner v. Comm'r, Ga. Dep't of Corr.*, 779 F.3d 1275, 1280–83 (11th Cir. 2015) (Ga.); *Creech v. Reinke*, No. 1:12-cv-173, 2012 WL 1995085, at *14–22 (D. Idaho June 4, 2012) (Idaho). Moreover, inmates challenging different execution protocols often proffer pentobarbital as a superior alternative as compared to other lethal agents. *See, e.g.*, *Glossip*, 135

S. Ct. at 2738; *Jordan v. Comm'r, Miss. Dep't of Corr.*, 908 F.3d 1259, 1262 (11th Cir. 2018); *Grayson v. Warden, Comm'r , Ala. Dep't of Corr.*, 869 F.3d 1204, 1212 (11th Cir. 2017); *McGehee v. Hutchinson*, 854 F.3d 488, 493 (8th Cir. 2017); *In re Mo. Dep't of Corr.*, 839 F.3d 732 (8th Cir. 2016); *In re Ohio Execution Protocol Litig.*, 860 F.3d 881, 890-91 (6th Cir. 2017).

The Supreme Court cited each of the above points when vacating the July 13 injunction issued by this Court. *See Lee*, 20A8 at 2. This Court thus erred in its July 13 order when it disregarded the widespread use and acceptance of pentobarbital. What is more, any conclusion that the use of pentobarbital violates the Eighth Amendment is contrary to the Supreme Court's binding decision in *Bucklew*. Although this Court distinguished *Bucklew* on the ground that it involved a challenge "unique to [the] medical condition" of the inmate in that case, ECF No. 135, Mem. Op. at 10, the *Bucklew* Court's rejection of that inmate's Eighth Amendment challenge makes its holding that much more applicable here, where none of the Plaintiffs have alleged similar health sensitivities. The Supreme Court agreed, when vacating this Court's July 13 injunction. *See Lee*, 20A8 at 2 (noting that pentobarbital "[w]as upheld by [the] Court last year, as applied to a prisoner with a unique medical condition that could only have increased any baseline risk of pain associated with pentobarbital as a general matter").

To be sure, in issuing the now vacated July 13 injunction, this Court credited the statements of Plaintiffs' expert, Dr. Gail Van Norman, who asserted that pentobarbital could cause flash pulmonary edema resulting in extreme pain and needless suffering. ECF 135, Mem. Op. at 9-13. Defendants respectfully submit that this Court misunderstood the Eighth Amendment standard. The question before a court in a method-of-execution challenge such as this is not which side has more convincing experts—an inquiry that "would embroil the courts in ongoing scientific controversies beyond their expertise, and would substantially intrude on the role of [government officials] in implementing their execution procedures." *Baze*, 553 U.S. at 51 (plurality opinion). Rather, the question is whether, given the appropriate "measure of deference to a [government's] choice of execution procedures," *id.* at 51 n.2, the inmates have established an "objectively intolerable risk of harm that prevents prison officials from pleading that they were subjectively

blameless for purposes of the Eighth Amendment." *Glossip*, 135 S. Ct. at 2737. Here, the allegation that the government and the leading death-penalty States have, in attempting to make executions more humane, selected an execution method that "cruelly superadds pain to the death sentence" is untenable. *See Bucklew*, 139 S. Ct. at 1125. Plaintiffs have failed to adequately allege a scientific consensus to the contrary. Their reliance on the opinion of a single expert, Dr. Gail Van Norman, is not sufficient to satisfy their pleading burden.

Moreover, even if Plaintiffs' allegations regarding pulmonary edema are credited, they do not allege an Eighth Amendment violation. "Simply because an execution method may result in pain, either by accident or as an inescapable consequence of death, does not establish the sort of 'objectively intolerable risk of harm' that qualifies as cruel and unusual." *Baze*, 553 U.S. at 50 (plurality opinion); *see also Bucklew*, 139 S. Ct. at 1131 (upholding Missouri's pentobarbital protocol and acknowledging the possibility that inmate could experience feelings of "suffocation and excruciating pain" for as long as 20 to 30 seconds). Indeed, the Sixth Circuit recently recognized that the risk of pulmonary edema during an Ohio lethal injection was not the type of "constitutionally cognizable," "severe" pain that could support an Eighth Amendment claim. *In re Ohio Execution Protocol Litigation*, 946 F.3d 287, 290 (2019) (explaining that an inmate's claim of pain related to pulmonary edema "pales in comparison to the pain associated with hanging," which has long "been considered constitutional").

This Court's dismissal of the Sixth Circuit's conclusion on the basis that Ohio's "three-drug protocol employ[s] midazolam," ECF No. 135, Mem. Op. at 11, is flawed. The Sixth Circuit was analyzing the medical issue of pulmonary edema, and did not confine its reasoning to the particular drug compound that produces that medical effect. In any event, midazolam has long been identified as more likely to cause pain than pentobarbital. *See Zagorski v. Parker*, 139 S. Ct. 11, 11–12 (2018) (Sotomayor, J., dissenting from denial of certiorari and denial of a stay). To the extent this Court relied on differences between the record in the Sixth Circuit and here regarding evidence of pain connected with pulmonary edema, *see* ECF No. 135, Mem. Op. at 11-12, it again misapplied the relevant Eighth Amendment standard. The Supreme Court has made clear that an

inmate must establish that a challenged execution method "is 'sure or very likely to cause serious illness and needless suffering,' and give rise to 'sufficiently imminent dangers.'" *Glossip*, 135 S. Ct. at 2737 (citation omitted).  Plaintiffs here clearly fell well short of that high bar.

### 2. Plaintiffs' remaining challenge to the Protocol is based on speculation.

Plaintiffs' remaining allegations under the first prong of *Glossip* are premised on speculation that something could go wrong with either the preparation of the pentobarbital or the IV insertion during their executions—what courts refer to as "maladministration." *Baze*, 553 U.S. at 41.  These allegations are insufficient to state a method-of-execution claim.

To "successfully plead[] facts to demonstrate a substantial risk of severe pain requires the prisoners to plead more than just a hypothetical possibility that an execution could go wrong." *Zink*, 783 F.3d at 1098–99.  An "isolated mishap alone does not give rise to an Eighth Amendment violation, precisely because such an event, while regrettable, does not suggest cruelty, or that the procedure at issue gives rise to a 'substantial risk of serious harm.'" *Baze*, 553 U.S. at 50 (quoting *Farmer v. Brennan*, 511 U.S. 825, 842 (1994)).  Again, "what [the Eighth] Amendment prohibits is *wanton exposure* to objectively intolerable risk . . . not simply the possibility of pain." *Id.* at 61–62 (citation omitted) (emphasis added).  Following *Baze*, appellate courts have routinely rejected maladministration allegations of the type Plaintiffs raise here.  *See, e.g.*, *Zink*, 783 F.3d at 1101 ("[Even] if any of the hypothetical situations the prisoners identify came to pass," isolated mishaps "would not result in an Eighth Amendment violation"); *Cooey v. Strickland*, 589 F.3d 210, 225 (6th Cir. 2009) (same).

Plaintiffs' speculation that the compounded pentobarbital BOP used in the latest round of executions was likely to be contaminated or sub-potent has already been disproven.  The Court may take judicial notice of news reports of the executions of Lee, Purkey, and Honken, none of which reports the type of needless suffering Plaintiffs speculate would occur from pentobarbital.[3]

---

[3] *See* Hailey Fuchs, Government Carries Out First Federal Execution in 17 Years, N.Y. Times (July 14, 2020), *available at* https://www.nytimes.com/2020/07/14/us/politics/daniel-lewis-lee-execution-crime.html (describing Lee's execution, in which "just a few short moments [after the

In any event, Plaintiffs' "speculation cannot substitute for evidence that the use of the [compounded] drug is '*sure or very likely* to cause serious illness and needless suffering.'" *Brewer v. Landrigan*, 562 U.S. 996 (2010) (quoting *Baze*, 553 U.S. at 50). In *Landrigan*, the Supreme Court vacated a lower court's injunction despite the State's failure to provide information about its non-FDA-approved foreign manufacturer's operating procedures and safety records and the fact that the inmates had alleged a plausible scenario of drug contamination. *Id.* Following *Landrigan*, courts of appeals routinely reject challenges to the use of compounded pentobarbital, whether the challenge is based on the inherent risks of compounding or the fact of non-FDA approval. *See, e.g.*, *Whitaker*, 862 F.3d at 498–99; *Wood v. Collier*, 836 F.3d 534, 540 (5th Cir. 2016); *Zink*, 783 F.3d at 1101; *Gissendaner*, 779 F.3d at 1283; *Wellons v. Comm'r, Ga. Dept. of Corr.*, 754 F.3d 1260, 1265 (11th Cir. 2014); *Cook v. Brewer*, 637 F.3d 1002, 1007 (9th Cir. 2011).

Plaintiffs' speculation about the quality of the compounded pentobarbital is particularly unwarranted because, as Plaintiffs acknowledge in the Amended Complaint, BOP uses a pharmacy registered with the FDA pursuant to Section 503B of the FDCA, 21 U.S.C. § 353b. Am. Compl. ¶ 90. Unlike the vast majority of the compounding pharmacies, section 503B facilities are inspected by the FDA and are subject to the FDA's "Current Good Manufacturing Practice ('CGMP') requirements," 21 C.F.R. Pts. 201 & 211, which are regulations designed to ensure that

---

drug was administered], his chest remained still"); Mark Berman, Justice Dept. Carries Out Second Federal Execution After Another Late-Night, Divided Supreme Court Ruling, Wash. Post (July 16, 2020), *available at* https://www.washingtonpost.com/national/wesley-purkey-execution-terre-haute-supreme-court/2020/07/16/e074dbca-c75f-11ea-b037-f9711f89ee46_story.html (reporting that after the lethal drug was injected, "Purkey took several deep breaths," and "eventually stopped and remained motionless for several minutes before his time of death was announced"); Hailey Fuchs, For Third Time This Week, the Federal Government Carries Out an Execution, N.Y. Times (July 17, 2020), *available at* https://www.nytimes.com/2020/07/17/us/dustin-honken-federal-execution.html (identifying no issues with the execution).

human pharmaceuticals "meet quality standards."[4]  The pentobarbital solution produced by the compounding pharmacy has also been subject to quality assurance testing.  AR872.[5]

### C.  Plaintiffs Fail to Propose An Alternative That Will Significantly Reduce A Substantial Risk of Severe Pain

Plaintiffs' method-of-execution challenge also fails because the Amended Complaint fails to "plead and prove a known and available alternative," *Glossip*, 135 S. Ct. at 2739, that is "feasible, readily implemented, and in fact significantly reduce[s] a substantial risk of severe pain," *id.* at 2737 (citation omitted), and that the government "has refused to adopt without legitimate penological reasons."  *Bucklew*, 139 S. Ct. at 1125.

First, Plaintiffs propose that BOP adopt certain "safeguards," such as specifying procedures for placing IV lines and for avoiding bedside administration and selecting qualified execution team members whose identities are disclosed.  Am. Compl. ¶ 114a.  But "an inmate cannot succeed on an Eighth Amendment claim simply by showing one more step the [government] could take as a failsafe for other, independently adequate measures."  *Baze*, 553 U.S. at 106 (Thomas, J., concurring).  This Court agreed, finding that "implementing these measures would result in a 'minor reduction in risk' at best," which is insufficient to meet the second prong of a method-of-execution challenge.  ECF No. 135, Mem. Op. at 13 (quoting *Bucklew*, 139 S. Ct. at 1130).

Second, Plaintiffs suggest that BOP use a single dose of FDA-approved pentobarbital or "add[ ] a pre-dose of a pain-relieving, anesthetic drug," such as fentanyl, "in a sufficiently large clinical dose."  Am. Compl. ¶¶ 114a, 114b.  The suggestion to use FDA-approved pentobarbital is a nonstarter given BOP's inability to purchase commercially available pentobarbital.  *See* ECF No.

---

[4] FDA, *Facts About the Current Good Manufacturing Practices (CGMPS)*, https://www.fda.gov/drugs/pharmaceutical-quality-resources/facts-about-current-good-manufacturing-practices-cgmps;  *Compounding     Laws     and     Policies*, https://www.fda.gov/drugs/human-drug-compounding/compounding-laws-and-policies.

[5] Plaintiffs have cited the BOP memorandum to the Attorney General, AR 869-873 (July 24, 2019 mem.), in the Amended Complaint.  *See* Am. Compl. ¶ 87 (citing AR 872).  As such, it is appropriate for the Court to consider this memorandum for purposes of the motion to dismiss.

145, Mem. Op. at 9 ("[T]he Supreme Court has approved the use of a compounded form of pentobarbital where domestic supplies were unavailable, and Defendants' decision to do so was not arbitrary or capricious.").  It is therefore not a feasible, readily implemented alternative.  *See Glossip*, 135 S. Ct. at 2738.  As for adding another drug, BOP concluded that a one-drug protocol would avoid the "complications inherent in obtaining multiple drugs," and "simplify[] the procedure and therefore reduce[] the risk of administrative mishaps." AR 871.[6] These are legitimate reasons for not expanding the number of drugs being administered.

Nevertheless, Plaintiffs specifically allege that fentanyl can be added to the Protocol to reduce the risk of the inmate feeling pain.  Am. Compl. ¶ 114a.  But Plaintiffs fail to allege that any State adds an opioid to a pentobarbital protocol.  Although Nebraska has used fentanyl in one execution, it was used as part of a four-drug protocol that does not include pentobarbital.  *See* https://deathpenaltyinfo.org/executions/lethal-injection/state-by-state-lethal-injection-protocols (noting a 2018 execution using diazepam, fentanyl citrate, cisatracurium besylate, and potassium chloride).  This Court found that adding an opioid to the pentobarbital Protocol would be "simple" and "easily and quickly administered."  ECF No. 135, Mem. Op. at 15.  Yet, as BOP has already determined, an important consideration of using fentanyl is its potential side effects and the potential interactions with other drugs.  AR 865.[7]  Muscle rigidity is the most significant side effect that may be reduced by premedication with benzodiazepines; indeed this may be why Nebraska's four-drug protocol begins with diazepam (valium), a benzodiazepine.  *Id.*  Importantly, the Supreme Court has made clear that the government is not required to adopt an approach—here, adding an opioid to a pentobarbital protocol—that "ha[s] 'never been used to carry out an execution' and ha[s] 'no track record of successful use.'"  *Bucklew*, 139 S. Ct. at 1130.  Put

---

[6] Again, this BOP memorandum was cited in the Amended Complaint.  *See* Am. Compl. ¶ 87 (citing AR 872).

[7] Plaintiffs similarly have cited BOP's memorandum (AR 862-65) discussing the potential use of fentanyl in executions.  *See* Am. Compl. ¶ 114a (citing AR 862-63).  Thus, this Court may also consider the fentanyl memorandum in deciding Defendants' motion to dismiss.

differently, "choosing not to be the first [State] to experiment with a new method of execution is a legitimate reason to reject it." *Id.*

BOP has articulated yet another legitimate reason for not adding another drug—its concern that drug manufacturers have "threatened to refuse to provide medications used for clinical treatments of inmates should they find out their drugs are being used for executions." AR at 864; *see also id.* (noting that drug manufacturers have sent correspondence to BOP seeking assurance their drugs are not being used for executions; noting further that fentanyl products are made by manufacturers "who would most likely take action against the Bureau of Prisons if they discovered the drugs were used for the purpose of execution, regardless of how [BOP] obtained them"). This Court found BOP's concern unjustified, as Defendants had not made any efforts to obtain fentanyl. ECF No. 135, Mem. Op. at 15. But this Court has no basis to question the legitimacy of BOP's concerns, especially given the undisputed history of lethal agents becoming scarce due to efforts of anti-death-penalty activists. *See* AR 870; *Glossip*, 135 S. Ct. at 2733 (discussing sodium thiopental and pentobarbital becoming unavailable due to anti-death-penalty advocates' lobbying efforts); *Gray v. McAuliffe*, No. 3:16CV982-HEH, 2017 WL 102970, at *7 (E.D. Va. Jan. 10, 2017) ("[D]eath penalty opponents have made it difficult to obtain FDA-approved drugs customarily used in executions"). Nor is BOP required to "put the clinical treatment of inmates under [its] care at risk," AR 864, which would likely happen if drug manufacturers of the desired opioid learned of BOP's intent to use it in executions. This is all the more so when there is no scientific consensus that adding an opioid or a pain-relieving medication to the Protocol would in fact *significantly* reduce the risk of severe pain, as pentobarbital will quickly render an inmate unconscious.

Third, Plaintiffs propose firing squad as a constitutionally superior method of execution. Am. Compl. ¶ 114c. In its July 13 Memorandum Opinion, this Court found Plaintiffs' proposal likely to satisfy the second prong of the method-of-execution standard, even though every court that has considered the issue has found otherwise because of the possibility of human error and potential for severe suffering. As the Eighth Circuit recently explained, "[t]he firing squad has

been used by only one State since the 1920s," and there is no "significant possibility that use of a firing squad is readily implemented and would significantly reduce a substantial risk of severe pain." *McGehee*, 854 F.3d at 494; *see also Gray*, 2017 WL 102970, at *19 (citing experts' agreement that "if the bullet missed the target, the individual 'could suffer' and would experience an 'agonizing death'"). Moreover, the only source cited by the PI Movants, as well as in the Amended Complaint, merely showed that there were fewer supposed "botched" executions by firing squad than lethal execution, when the sample sizes were not comparable (a total of only 34 executions by firing squad between 1900 to 2010, as compared to 1,054 executions by lethal injection in that same period).

To be sure, as this Court observed, some Supreme Court Justices have expressed the view that the firing squad may be a sufficiently painless method of execution. ECF No. 135, Mem. Op. at 16. But again, the existence of a viable option does not end the inquiry. As the Supreme Court said in *Bucklew*, "a prisoner may point to a well-established protocol in another State as a potentially viable option," but the "court would have to inquire into the possibility that one State possessed a legitimate reason for declining to adopt the protocol of another." 139 S. Ct. at 1128. Plaintiffs cannot do so here because the federal government has a legitimate interest in using a method it regards as "preserving the dignity of the procedure," *Baze*, 553 U.S. at 57 (plurality opinion), which includes declining as a policy matter to opt for "the splatter from an execution carried out by firing squad," *Wood v. Ryan*, 759 F.3d 1076, 1103 (9th Cir. 2014) (Kozinski, J., dissenting from the denial of rehearing en banc).

Indeed, while the Supreme Court has long upheld the use of firing squad, *see, e.g., Wilkerson v. Utah*, 99 U.S. 130, 131–32 (1878), it has also noted that firing squad is a "more primitive" method of execution, *Glossip*, 135 S. Ct. at 2739. The Constitution does not mandate the federal government to use an execution method that has "given way to more humane methods, culminating in today's consensus on lethal injection." *Baze*, 553 U.S. at 62 (plurality opinion). Given the "consensus" among the States that lethal injection is more dignified and humane than the firing squad, BOP was entitled to reach the same conclusion. *Id.*; *Boyd v. Warden, Holman*

*Corr. Facility*, 856 F.3d 853, 870–71 (11th Cir. 2017) (state not constitutionally required to "make this type of regressive change" by using firing squad).

Finally, even Utah, the only state that has actually used the firing squad in the last 100 years, authorizes the method only as a last resort. Utah actually abandoned the method in 2004 because it was "too much of a spectacle, detracting attention from the victim and the crime and allowing prisoners 'one last magnificent manipulation of the system to bring attention to themselves.'"[8] And Utah has only reinstated the method as a failsafe due to the lack of lethal injection drugs. *See* Utah Code Ann. § 77-18-5.5(3) (2015). The same is true for the only other two States that authorize firing squad, Oklahoma and Mississippi, both allowing it only if lethal injection, nitrogen hypoxia, and electrocution are all declared unconstitutional. *See* Okla. Stat. tit. 22, § 1014; Miss. Code. Ann. § 99-19-51.

## II.   PLAINTIFFS FAIL TO STATE A CLAIM FOR DELIBERATE INDIFFERENCE

Plaintiffs also allege in Count III of the Amended Complaint the alternative theory that BOP's Protocol constitutes deliberate indifference to a substantial risk of serious harm to Plaintiffs. This theory apparently is that because pentobarbital purportedly would inflict an unconstitutional level of pain in causing their death, using the Protocol violates BOP's duty to provide Plaintiffs with appropriate medical care until the moments of their deaths. *See* Am. Compl. ¶¶ 132-33. A "deliberate indifference" claim typically concerns an inmate's medical treatment. Even if it were an appropriate claim here, the "substantial risk of serious harm" standard from the Supreme Court's decision in *Farmer v. Brennan*, 511 U.S. 825, 834 (1994), is the same standard applied in *Baze*. Thus, courts consistently have rejected "deliberate indifference" challenges to methods of execution after dismissing the condemned inmates' method-of-execution claim. *See, e.g.*, *Zink*, 783 F.3d at 1107; *Valle v. Singer*, 655 F.3d 1223, 1225 (11th Cir. 2011); *Cook v. Brewer*, 637 F.3d

---

[8]   The Marshall Project, *After Lethal Injection* (June 1, 2015), https://www.themarshallproject.org/2015/06/01/after-lethal-injection (quoting representative Sheryl Allen); *see id.* (noting foreign media's report of Utah's last execution in 2010 where the inmate had "his heart ripped to pieces by bullets blasted from the rifles of five expert marksmen hidden behind a brick wall").

at 1008; *Jackson v. Danberg*, 594 F.3d 210, 228-29 (3d Cir. 2010); *Workman v. Bredesen*, 486 F.3d 896, 907 (6th Cir. 2007).  Accordingly, Plaintiffs' deliberate indifference claim should be dismissed for the same reasons their method-of-execution claim does not state a claim.

## III.   PLAINTIFFS FAIL TO STATE A FIFTH AMENDMENT CLAIM FOR DENIAL OF DUE PROCESS

Plaintiffs allege that Defendants have violated their due process rights by failing to disclose sufficient information about the Protocol, as well as how the BOP Director would exercise his discretion under the Protocol.  *See* Am. Compl. ¶¶ 119-20.  These allegations have no merit, and indeed, the PI Movants did not even press this issue in their motion for a preliminary injunction. ECF No. 102.

The Government agrees that "[b]eing 'deprived of life' unequivocally implicates a constitutionally protected interest," *see* Am. Compl. ¶ 118, and that Plaintiffs are entitled to process before they are executed.  But Plaintiffs have already received all the process to which they are constitutionally entitled, through their respective criminal trials as well as their extensive appellate and collateral-review proceedings.  Thus, their interests in life are simply not implicated in this case challenging BOP's Protocol.  *See Zink*, 783 F.3d at 1109 (in method-of-execution case, holding that "[t]he prisoners in this case already have received due process for the deprivation of their life interests:  They were convicted and sentenced to death after a trial in Missouri court, and their convictions and sentences were upheld on appeal.").

Plaintiffs assert an additional liberty interest that does not exist—namely, a right to "sufficient information" regarding the 2019 Protocol so that they may "determin[e] all aspects of the 2019 Protocol that violate provisions of federal law or constitute cruel and unusual punishment."  *See* Am. Compl. ¶ 119.  Just as there is no "broad Eighth Amendment right to know the details of [an inmate's] execution" *Powell v. Thomas*, 641 F.3d 1255, 1258 (11th Cir. 2011), there is likewise no freestanding constitutional right, whether under the Fifth Amendment or otherwise, to obtain information from the government in order to discover potential Eighth Amendment or other claims.  *See Lewis v. Casey*, 518 U.S. 343, 354 (1996) (there is no

constitutional right "to *discover grievances*, and to litigate effectively once in court" (emphasis added)); *Trottie v. Livingston*, 766 F.3d 450, 452 (5th Cir. 2014) (there is no "cognizable liberty interest in obtaining information about execution protocols").

Indeed, "no . . . circuit court has ever recognized the kind of due process right-of-access [to information] claim" Plaintiffs advance.  *Jones v. Comm'r, Ga. Dep't of Corr.*, 811 F.3d 1288, 1293 (11th Cir. 2016).  By contrast, courts routinely reject due process claims alleging access to a wide range of information concerning lethal injection.  *See, e.g.*, *Phillips v. DeWine*, 841 F.3d 405, 420 (6th Cir. 2016) (identity of individuals and entities that participate in the lethal injection process); *Zink*, 783 F.3d at 1108 (execution protocol and source of the lethal agent); *Wellons*, 754 F.3d at 1267 ("where, how, and by whom the lethal injection drugs will be manufactured" and "the qualifications of the person or persons who will manufacturer the drugs, and who will place the catheters"); *Sepulvado v. Jindal*, 729 F.3d 413, 419-20 (5th Cir. 2013) (State's execution protocol); *Williams v. Hobbs*, 658 F.3d 842, 852 (8th Cir. 2011) (information about State's execution protocol); *Valle*, 655 F.3d at 1236 n.13 (training of the execution team and the source or vendor history of the drugs); *see also Beaty v. Brewer*, 649 F.3d 1071, 1072 (9th Cir. 2011) (affirming denial of motion to stay execution where inmate was informed less than an hour before his execution that pentobarbital would be substituted for sodium thiopental); *Clemons v. Crawford*, 585 F.3d 1119, 1129 n.9 (8th Cir. 2009) (noting lack of authority indicating due process right to probe into backgrounds of State's  execution personnel).[9]  And at least one court of appeals has rejected a due process claim, like the one Plaintiffs attempt to raise here, *see* Am. Compl. ¶ 120,

---

[9] Similarly, courts routinely reject inmates' assertions that more information from the government is needed to determine compliance with the Eighth Amendment.  *See, e.g.*, *Zink v. Lombardi*, 783 F.3d 1089, 1101 (8th Cir. 2015); *Wellons*, 754 F.3d at 1264; *Whitaker v. Livingston*, 732 F.3d 465, 468 (5th Cir. 2013); *Valle v. Singer*, 655 F.3d 1223, 1234 (11th Cir. 2011); *see also Clemons*, 585 F.3d at 1128; *Emmett v. Johnson*, 532 F.3d 291, 307 (4th Cir. 2008).  Indeed, "the Supreme Court has rejected the notion that discovery must be available to a plaintiff who cannot allege sufficient factual matter to suggest plausibly an entitlement to relief." *Zink*, 783 F.3d at 1105–06 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556–57 (2007)).

that prison officials' discretion to deviate from the execution protocol somehow denied the inmates an "opportunity to litigate" their Eighth Amendment claims. *See Williams*, 658 F.3d at 852.

In sum, the "assertion of necessity—that [the government] must disclose its protocol so that [the inmate] can challenge its conformity with the Eighth Amendment—does not substitute for the identification of a cognizable liberty interest," which is plainly lacking in these circumstances. *Sepulvado*, 729 F.3d at 419. Count I of the Amended Complaint should therefore be dismissed for failure to state a claim.

## IV.     PLAINTIFFS FAIL TO STATE A CLAIM THAT THE PROTOCOL DENIES THEM ACCESS TO COUNSEL

Plaintiffs fail to state a claim under Count IV that the Protocol denies them access to counsel and the courts during the execution in violation of the First, Fifth, and Sixth Amendments. *See* Am. Compl. ¶¶ 135-42. As the Court explained in rejecting this very argument at the preliminary injunction stage, Plaintiffs do not have a constitutional right to demand that their counsel "view[] the setting of the IVs, . . . communicat[e] with Plaintiffs during the execution, and . . . hav[e] a quick and easy means of communicating with the court." ECF No. 145, Mem. Op. at 13. The PI Movants' best cases were "both out-of-circuit and factually distinct," or rely "on the concurrence of a single Justice." *Id*. In fact, the Court went so far as to say that the PI Movants' likelihood of succeeding on their access to the courts/right to counsel claim "seem[ed] vanishingly small." *Id*. at 15 (quotation marks omitted).

Critically, there is "no law that would support a right to counsel throughout an execution." *The Estate of Lockett by and through Lockett v. Fallin*, 841 F.3d 1098, 1117 (10th Cir. 2016). As already discussed above, there is no Eighth Amendment right to supervise an execution for possible maladministration, and *a fortiori*, no right to have counsel do the same. Nor is there a Fifth Amendment due process right to discover information about an execution protocol. *See, e.g.*, *Jones*, 811 F.3d at 1293. The First Amendment right of access to the courts similarly does not guarantee a right "to discover grievances, and to litigate effectively once in court." *Lewis*, 518 U.S. at 350–61. And while an accused has a Sixth Amendment right to counsel in all "critical

24

stages" of the criminal proceeding, *United States v. Wade*, 388 U.S. 218, 227–28 (1967), an execution is not such a stage because it is not a confrontation between the prosecution and the defense. *See id.*; U.S. Const. amend. VI.

Moreover, the Amended Complaint contains no factual allegations that support the conclusory assertions that the Protocol somehow denies Plaintiffs access to the courts or to counsel regarding any constitutional violations. *See* Am. Compl. ¶¶ 139, 140. If anything, counsel may visit the condemned inmate on the day of the execution, AR 1032 & 1034, and nothing in the Protocol prevents the inmate from articulating to counsel any concerns he has about the execution. Immediately before lethal injection, the inmate is permitted to make a final statement. AR 1039. Once the inmate finished his statement, the inmate's counsel may view the execution to perceive first-hand whether the execution is proceeding in such a way as to "superadd terror, pain, or disgrace." *Bucklew*, 139 S. Ct. at 1124; AR 1038-39. The events of the recent three executions also leave no doubt that counsel will vigorously advocate for the condemned until the last minute.[10]

## V. PLAINTIFFS FAIL TO STATE A CLAIM FOR UNCONSTITUTIONAL DELEGATION OF LEGISLATIVE POWER

Count VII of the Amended Complaint alleges that, if the Court agrees with Defendants that the Attorney General may reassign duties under Section 3596(a) of the FDPA, then the FDPA itself is unconstitutional under the non-delegation doctrine because it fails to provide an "intelligible principle to which the [Attorney General] is directed to conform." *See* Am. Compl. ¶ 158 (quoting *J.W. Hampton, Jr. & Co. v. United States*, 276 U.S. 394, 409 (1928)). This argument misses the mark.

---

[10] Jeffrey A. Rosen, "The Death Penalty Can Ensure 'Justice Is Being Done'," N.Y. Times, Opinion (July 27, 2020), *available at* https://www.nytimes.com/2020/07/27/opinion/federal-death-penalty.html (summarizing the last-minute filings that preceded the executions of Lee and Purkey); *see also* Cate Stetson & Ruth Friedman, "The Justice Department's Shameful Rush to Federal Executions," Opinion (July 17, 2020), *available at* https://www.nytimes.com/2020/07/17/opinion/justice-department-federal-execution.html (also summarizing the last-minute filings).

Plaintiffs overstate the requirements of the non-delegation rule. "The Constitution has never been regarded as denying to the Congress the necessary resources of flexibility and practicality, which will enable it to perform its function." *Panama Refin. Co. v. Ryan,* 293 U.S. 388, 421 (1935). All that is required is that "Congress clearly delineate[] the general policy, the public agency which is to apply it, and the boundaries of this delegated authority." *Am. Power & Light Co. v. SEC*, 329 U.S. 90, 105 (1946). Indeed, a wide array of delegations to Executive branch agencies have survived constitutional scrutiny, despite broad statutory terms permitting the responsible executive official significant discretion. *See, e.g.*, *Touby v. United States*, 500 U.S. 160, 165-67 (1991) (delegation to the Attorney General to designate controlled substances on a temporary basis—resulting in criminal penalties for unauthorized manufacture, possession, or distribution of such substances); *see also Nat'l Broad. Co. v. United States*, 319 U.S. 190, 225-226 (1943) (delegation to the Federal Communications Commission to regulate broadcast licensing as "public interest, convenience, or necessity" requires); *Mistretta v. United States*, 488 U.S. 361, 374-77 (1989) (delegation to the Sentencing Commission to promulgate then-binding Sentencing Guidelines establishing the permissible sentences for federal crimes); *Whitman v. Am. Trucking Ass'n*, 531 U.S. 457, 472 (2001) (delegation to the Environmental Protection Agency to set nationwide air-quality standards limiting pollution to the level required "to protect the public health"). In each case, the statutory standard at issue, such as "protect[ing] the public health," *id.* at 472, left a broad measure of discretion to the executive official or agency charged with carrying out Congress's mandate. Nonetheless, these discretionary delegations were upheld because the relevant statute provided an intelligible principle for the agency's actions.

The Supreme Court has in fact "found the requisite 'intelligible principle' lacking in only two statutes, one of which provided literally no guidance for the exercise of discretion, and the other of which conferred authority to regulate the entire economy on the basis of no more precise a standard than stimulating the economy by assuring 'fair competition.'" *Id.* at 474 (citing *Panama Refin.*, 293 U.S. at 388, and *A.L.A. Schechter Poultry Corp. v. United States*, 295 U.S. 495 (1935)).

Since those two decisions 85 years ago, the Court has upheld delegations under standards phrased in "sweeping terms."  *Id.* at 475.

The FDPA readily satisfies the non-delegation doctrine.  Section 3596(a) provides that the U.S. Marshal "shall supervise implementation of the sentence in the manner prescribed by the law of the State in which the sentence is imposed."  18 U.S.C. § 3596(a).  This delegation is more specific than most (if not all) of the delegations upheld in the cases mentioned above.  And, as discussed *infra* Sec. VI(A), the Attorney General may reassign any duty delegated to the U.S. Marshal in Section 3596(a) to other DOJ officials, *see* 28 U.S.C. §§ 509, 510.

## VI.    DEFENDANTS ARE ENTITLED TO JUDGMENT AS TO PLAINTIFFS' APA CHALLENGE THAT BOP'S ADOPTION OF THE PROTOCOL IS ARBITRARY AND CAPRICIOUS

In Count VIII of the Amended Complaint, Plaintiffs allege that BOP's adoption of the Protocol is not the result of reasoned decision-making.  Both this Court and the D.C. Circuit have already found that Plaintiffs are unlikely to succeed on the merits of this claim, and in fact, Plaintiffs' claim fails under both this Court's and the D.C. Circuit's reasoning.  *Roane v. Barr*, No. 20-5206, Doc. No. 1852151 (D.C. Cir. July 17, 2020); ECF No. 145, Mem. Op. at 8-10.

### A.    APA Review of BOP's Adoption of the Protocol Is Narrow and Highly Deferential

The scope of review under the "arbitrary and capricious" standard is "narrow," *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983), and "highly deferential," *Epsilon Elecs., Inc. v. U.S. Dep't of Treasury*, 857 F.3d 913, 918 (D.C. Cir. 2017).  "A court is not to ask whether [an agency's] decision is the best one possible or even whether it is better than the alternatives."  *FERC v. Elec. Power Supply Ass'n*, 136 S. Ct. 760, 782 (2016).  Nor is the court to "substitute its own judgment for that of the agency."  *Mayo v. Reynolds*, 875 F.3d 11, 19–20 (D.C. Cir. 2017) (citation and alteration omitted).  Rather, the court's "only task is to determine whether the [agency] has considered the relevant factors and articulated a rational connection between the facts found and the choice made," and to ensure that the agency remained "within the bounds of reasoned decisionmaking."  *Balt. Gas & Elec. Co. v. Nat. Res.*

*Def. Council, Inc.*, 462 U.S. 87, 105 (1983).  The court only considers whether there has been a clear error in judgment.  *Id.*

Moreover, the court "sits as an appellate tribunal," and "[t]he 'entire case' on review is a question of law." *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001); *see also Marshall Cnty. Health Care Auth. v. Shalala*, 988 F.2d 1221, 1225–26 (D.C. Cir. 1993). Because the court's task is to review the considerations on which the agency relied, and to check that the agency's decision has some basis in the record, "the focal point for judicial review" is "the administrative record . . . , not some new record made initially in the reviewing court." *Camp v. Pitts*, 411 U.S. 138, 142 (1973).  That is, the court does not act as a factfinder, *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985), but its review is limited to "contemporaneous explanation of agency decision," *Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc.*, 435 U.S. 519, 549 (1978), except "when there has been a 'strong showing of bad faith or improper behavior' or when the record is so bare that it prevents effective judicial review," *Theodore Roosevelt Conservation P'Ship v. Salazar*, 616 F.3d 497, 514 (D.C. Cir. 2010) (quoting *Com. Drapery Contractors, Inc. v. United States*, 133 F.3d 1, 7 (D.C. Cir. 1998)).

The above standard makes clear that Plaintiffs cannot rely on the extra-record declarations of their experts for purposes of their arbitrary and capricious claim.  There is no showing of bad faith or improper behavior on the part of Defendants, much less a "strong showing."  Nor is the record bare, preventing judicial review.  Moreover, the declarations relied upon by Plaintiffs are proffered solely to support their disagreement with the agency's decision.  That is an improper purpose.  *See Am. Wildlands v. Kempthorne*, 530 F.3d 991, 1002 (D.C. Cir. 2008) (denying plaintiff's request to supplement the administrative record with letters from two scientists who "disagree[d] with the [agency's] interpretation of [the] data" and "believe[d] that [the agency's] policy] does not represent the best available scientific information").  "When specialists express conflicting views, an agency must have discretion to rely on the reasonable opinions of its own qualified experts even if, as an original matter, a court might find contrary views more persuasive." *Tri-Valley CAREs v. U.S. Dep't of Energy*, 671 F.3d 1113, 1124 (9th Cir. 2012) (citation omitted).

**B. BOP's Adoption of the Protocol Is Not Arbitrary or Capricious**

This Court should enter judgment for Defendants on Plaintiffs' arbitrary and capricious challenge to the Government's adoption of a widely used, Supreme-Court-approved lethal-injection protocol. Plaintiffs' claim cannot be squared with the Supreme Court's vacatur of this Court's July 13 injunction. *Lee*, No. 20A8 at 3. BOP more than satisfied the APA's deferential standard of review by "articulat[ing]" multiple "satisfactory explanation[s] for its action" in adopting the federal Protocol. *State Farm*, 463 U.S. at 43. Because "[n]o federal execution ha[d] occurred since 2003," AR 869, BOP began by "[b]enchmarking" against state protocols, AR 930. Next, it considered the Protocol's legality and confirmed that "pentobarbital is litigation tested." AR 932. Further, BOP consulted with medical professionals and reviewed publicly available expert testimony concerning pentobarbital and other lethal agents. *See* AR 401-524, 527-761, 931. And finally, BOP confirmed the availability of a reliable supply of pentobarbital and ensured that the drug is tested by independent laboratories for quality assurance. AR 970–1015, 1075–1084.

Unable to demonstrate that BOP did not consider the humaneness of the execution Protocol or risk of needless pain thereunder, Plaintiffs allege more granular pain-related complaints about the Protocol that they claim the agency did not consider with sufficient specificity—namely, (1) the risk of flash pulmonary edema, (2) the risk of faulty IV insertion, and (3) the risks associated with using compounding pharmacies to obtain pentobarbital. Am. Compl., ¶ 163; *see also* ¶¶ 72-108. As this Court correctly held, none of these alleged failure-to-consider arguments "rises to the level of arbitrariness or capriciousness for an APA violation." ECF No. 145, Mem. Op. at 8.

Specifically, the D.C. Circuit recognized that "[a]lthough the Protocol does not discuss the risk of flash pulmonary edema specifically, BOP need not consider every possible risk associated with its chosen method of execution." *Roane*, No. 20-5206, Doc. No. 1852151 at 2. As for the alleged failure to consider issues related to IV insertion, the D.C. Circuit held that BOP "studied the difficulties of IV-line placement," and acted reasonably in "allow[ing] medically trained personnel to determine how best to place the IV line." *Id.* This Court further found that Defendants "considered the risks in their consultation with experts (Admin. R. at 442–43), and in their review

29

of the case law. (*See* Admin. R. at 108–400)," in concluding that "Defendants adequately considered the risks of faulty IV placement in designing the 2019 Protocol." ECF No. 145, Mem. Op. at 9. Finally, regarding BOP's decision to use a compounding pharmacy, the D.C. Circuit noted its reasonableness given the government's inability to acquire pentobarbital otherwise and the fact that the drug was properly tested for quality assurance. *Roane*, No. 20-5206, Doc. No. 1852151 at 2-3.

As the D.C. Circuit's decision confirms, a party unhappy with an agency's choice may not invalidate it simply by identifying narrower subtopics on a matter the agency considered in making a rational choice. On the contrary, even in a proceeding in which the public has a right to participate—unlike the adoption of the procedural rule here—"[t]he agency need only state the main reasons for its decision and indicate that it has considered the most important objections." *Simpson v. Young*, 854 F.2d 1429, 1434-35 (D.C. Cir. 1988); *see also Public Citizen, Inc. v. FAA*, 988 F.2d 186, 197 (D.C. Cir. 1993) ( "[T]he agency's response to public comments need only enable us to see what major issues of policy were ventilated  * * *  and why the agency reacted to them as it did.") (citation omitted). Procedural rules governing only the agency's own "internal house-keeping measures" such as the Protocol, *Execution Protocol Cases*, 955 F.3d at 145 (Rao, J., concurring), require no greater level of specificity.

Plaintiffs' proposed level of scrutiny would be particularly anomalous as applied to agency action exempt from notice-and-comment requirements. In such situations, the public does not provide the agency with *ex ante* notice of the issues it thinks should be considered in making a decision. Rather, the agency must identify and address issues sua sponte. It is thus unsurprising that courts give agencies considerable deference in determining which issues to explicitly take into account. *See Pension Benefit Guar. Corp. v. LTV Corp*., 496 U.S. 633, 645-646 (1990). If litigants unhappy with the agency's choices are allowed to raise after-the-fact, subsidiary issues the agency did not expressly address in the administrative record, it would be virtually impossible to proceed through any form of rulemaking outside the APA's notice-and-comment procedures. *See id*. at 646 ("If agency action may be disturbed whenever a reviewing court is able to point to an arguably

relevant statutory policy that was not explicitly considered, then a very large number of agency decisions might be open to judicial invalidation.").  But Congress expressly made the notice-and-comment requirements inapplicable in certain circumstances, *see, e.g.*, 5 U.S.C. § 553(b), precisely because it recognized a need for the agency to be able to act flexibly with respect to the exempted types of rules.  *See Batterton v. Marshall*, 648 F.2d 694, 707 (D.C. Cir. 1980).  Plaintiffs' expansive failure-to-consider theory, permitting invalidation by virtue of post hoc identification of narrow issues, defies this congressional design.

## VII.   DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' *ULTRA VIRES* APA AND CONSTITUTIONAL CLAIMS IN COUNT V

In Count V of the Amended Complaint, Plaintiffs allege that the Protocol should be set aside under the APA as *ultra vires* agency action contrary to the FDPA and the Take Care Clause of the Constitution.  Am. Compl. ¶¶ 144-49.  Both arguments fail as a matter of law.

### A.   The Protocol Does Not Contravene the FDPA

Plaintiffs' principal claim, that the 2019 Protocol violates the FDPA because it "purports to implement a protocol that differs in material respects from the applicable states," *see* Am. Compl. ¶ 146, has already been rejected by the D.C. Circuit.  Not only that, the D.C. Circuit has directed that judgment be entered for Defendants on this claim and issued its mandate to this Court. *Execution Protocol Cases*, 955 F.3d at 108 (per curiam); *see also* ECF No. 156 (mandate).  This Court is bound by that mandate.  *See Indep. Petroleum Ass'n of Am. v. Babbitt*, 235 F.3d 588, 596-97 (D.C. Cir. 2001) ("Under the mandate rule," a "more powerful version of the law-of-the-case doctrine," "'an inferior court has no power or authority to deviate from the mandate issued by an appellate court.'") (quoting *Briggs v. Pa. R.R. Co.*, 334 U.S. 304, 306 (1948)).  Accordingly, this Court must enter judgment for Defendants as to Count V.

Plaintiffs attempt to revive their FDPA claim by pointing to various provisions from seven states' execution statutes and protocols that purportedly conflict with BOP's Protocol.  *See* Am. Compl. Appendix A.  But the D.C. Circuit has already specifically considered four of the seven protocols in Plaintiffs' Appendix and said those protocols "cannot be deemed part of the 'law of

31

the State'" because they are not binding in the relevant sense. *Execution Protocol Cases*, 955 F.3d at 124 n.10 (Katsas, J., concurring) (explaining his "agree[ment] with Judge Rao" that the execution protocols of Arkansas, Missouri, Indiana, and Texas do not bind BOP). The protocols of the remaining states in the Appendix—Georgia, South Carolina, and Virginia—are likewise not binding under Judge Rao's concurrence, as they are merely informal execution procedures that "do not purport to carry the force of law." *Id.* at 142 (Rao, J., concurring). None of them are set forth in state statutes or binding regulations.

Plaintiffs' reliance on state execution statutes is also misplaced. First, Plaintiffs incorrectly assert that certain state statutes require BOP to use a drug other than pentobarbital. To the contrary, Judge Rao reviewed the relevant statutes of Arkansas, Missouri, Indiana, and Texas and concluded that none "have statutes precluding the use of pentobarbital." *Id.* (citing the states' execution statutes). As to other states, Judge Rao stated that she "ha[s] not been able to locate statutes or formal regulations *in any state* that would prevent the federal government from using pentobarbital." *Id.* (emphasis added). Second, assuming there are conflicts between a state statute and the Protocol, as Judge Rao also recognized, "the federal protocol allows the federal government to depart from its procedures as necessary to conform to state statutes and regulations," which BOP is prepared to do if such circumstances arise. *See id.* at 112 (per curiam). Finally, to the extent Plaintiffs suggest that BOP will refuse to deviate from its Protocol in order to comply with Judge Rao's controlling interpretation of the FDPA, Plaintiffs cite no facts in support of this assertion, much less facts that would overcome the well-settled presumption of good faith to which agencies like BOP are entitled in carrying out their duties.

Plaintiffs fare no better with their alternative FDPA allegation that the Protocol unlawfully transfers authority to "supervise implementation of the sentence" from the U.S. Marshal to the BOP Director. *See* Am. Compl. ¶ 147. Judge Katsas previously found this argument to be without

merit.[11]  As he reasoned, "[t]he execution protocol does not strip the Marshals Service of the power to supervise executions." *Execution Protocol Cases*, 955 F.3d at 124.  "To the contrary, it requires a 'United States Marshal designated by the Director of the USMS' to oversee the execution and to direct which other personnel may be present at it." *Id.*  Specifically, the execution "cannot begin without the marshal's approval," and "[i]ndividuals administering the lethal agents are acting at the direction of the United States Marshal." *Id.* (citation omitted).  "And once the execution is complete, the marshal must notify the court that its sentence has been carried out." *Id.* at 124-25.  "The protocol thus tasks the USMS with supervising executions," *id.* at 125, and satisfies even Plaintiffs' restrictive view of the Attorney General's authority over DOJ functions.

Moreover, even if the FDPA did somehow transfer supervisory authority from the U.S. Marshal to the BOP Director, doing so was squarely within the Attorney General's authority to reassign a U.S. Marshal's duties under Section 3596(a) of the FDPA.  As Judge Katsas pointed out, "federal law vests all powers of DOJ components in the Attorney General and permits him to reassign powers among the components." *Execution Protocol Cases*, 955 F.3d at 125 (Katsas, J., concurring); *see also* 28 U.S.C. §§ 509, 510.[12]  Both BOP and USMS are components of DOJ and are supervised and controlled by the Attorney General.  *See* 28 U.S.C. § 561(a), (c) (each U.S. Marshal is part of USMS, "a bureau within the [DOJ] under the authority and direction of the Attorney General"); 18 U.S.C. §§ 4041-4042 (BOP Director is "appointed by and serv[es] directly under the Attorney General," and BOP duties are performed "under the direction of the Attorney General").  Thus, any duties Congress assigned to a U.S. Marshal—like those of any DOJ officer— are subject to reassignment by the Attorney General.  *See* Anti-Drug Abuse Act of 1988, Pub. L.

_____

[11] Judge Rao found that Plaintiffs had forfeited this alternative argument by not raising it in the district court. *Execution Protocol Cases*, 955 F.3d at 112 (per curiam).

[12] The Attorney General has always had this authority to reassign matters among DOJ officers. *See, e.g.*, An Act To Establish the Department of Justice, ch. 150, § 14, 16 Stat. 162, 164 (1870) (providing that "the Attorney-General may require any solicitor or officers of the [DOJ] to perform any duty required of said Department or any officer thereof"); Act of Sept. 6, 1966, Pub. L. No. 89-554, § 4(c), 80 Stat. 378, 612 (codifying this authority at 28 U.S.C. §§ 509, 510).

No. 100-690, tit. VII, § 7608(a)(1), 102 Stat. 4181, 4512 (1988); *see also* 16 Stat. at 164, § 15 (transferring certain "supervisory powers" over Marshals to the Attorney General); *cf. United States v. Bourgeois*, 423 F.3d 501, 509 (5th Cir. 2005) ("In §§ 3596(a) and 3597(a) of the FDPA, Congress expressly delegated [supervisory] power to the Executive Branch, specifically the [DOJ] in the person of the Attorney General.").  And, unlike other statutes which include affirmative limitations on delegations, *see United States v. Giordano*, 416 U.S. 505 (1974); *United States v. Libby*, 498 F. Supp. 2d 1, 12 (D.D.C. 2007); *Halverson v. Slater*, 129 F.3d 180, 185-89 (D.C. Cir. 1997), the FDPA does not so limit the Attorney General's authority under Sections 509 and 510.

## B.    The Protocol Does Not Violate the Take Care Clause

Defendants are similarly entitled to summary judgment as to Count V of the Amended Complaint alleging a violation of the Take Care Clause or principles of separation of powers.  This claim is essentially the same as the statutory claim addressed above—and fails for the same reasons Plaintiffs' FDPA claim fails—since Plaintiffs argue that the FDPA is the law that Defendants have failed to "faithfully execute" as required by the Take Care Clause.  *See* Am. Compl. ¶¶ 145-48.  In any event, the Take Care Clause cannot form a basis for relief here because it speaks only to the President, assigning him the responsibility to "take Care that the Laws be faithfully executed." U.S. Const. art. II, § 3.  *See Free Enter. Fund v. Pub. Co. Acct. Bd.*, 561 U.S. 477, 492–93 (2010) ("It is *his* responsibility to take care that the laws be faithfully executed."); *id.* at 495–97; *Printz v. United States*, 521 U.S. 898, 922 (1997); *Morrison v. Olson*, 487 U.S. 654, 689–90 (1988). Subordinate officials, such as Defendants, cannot violate the President's duty to faithfully execute the law.

## VIII. DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT AS TO PLAINTIFFS' APA NOTICE-AND-COMMENT RULEMAKING CLAIM

In Count VI, Plaintiffs allege that BOP violated the APA by promulgating the Protocol without notice-and-comment rulemaking.  *See* Am. Compl. ¶¶ 150-55.  The D.C. Circuit—in this very case—has already expressly and unambiguously rejected the argument and directed that judgment be entered for Defendants.  *See Execution Protocol Cases*, 955 F.3d at 108-113 (per

curiam); ECF No. 156 (mandate).  As with the FDPA claim discussed above, this Court is bound by that instruction.

IX.    **DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT AS TO PLAINTIFFS' CSA AND FDCA-BASED APA CLAIMS**

Plaintiffs' CSA and FDCA-based claims under Counts VIII-XI are meritless.  Accordingly, Defendants are entitled to judgment on them.

### A.  Plaintiffs' Claims that the Protocol Violates the CSA Are Without Merit

Defendants are entitled to judgment on Plaintiffs' APA claims under Counts VIII and XI, *see* Am. Compl. ¶¶ 159-66 & 186-91, that the Protocol is arbitrary and capricious and contrary to law because it allegedly violates the CSA, and Plaintiffs' claim under Count IX, *see id*. at ¶¶ 167-175, that the DEA has allegedly failed to exercise its enforcement authority under the CSA.

Plaintiffs specifically allege in their Amended Complaint that a Schedule II controlled substance, such as pentobarbital, may not be lawfully dispensed absent "a valid prescription 'issued for a legitimate medical purpose' by a practitioner who is acting 'in the usual course of professional practice' and registered pursuant to the statute."  *Id.* ¶ 168 (citing 21 U.S.C. §§ 802(21) and 829(e)(2)); *see also id.* ¶¶ 62-64 (same, also citing 21 U.S.C. § 841(a)(1) and 21 C.F.R. §1306.04(a)).  Plaintiffs further allege that the "Protocol violates the CSA because it requires the dispensing and administration of pentobarbital without a valid prescription, for use that is not a legitimate medical purpose, and by persons who are not acting in the course of professional practice and/or lack a valid registration."  *Id*. ¶ 171; *see also id*. ¶ 64.  Plaintiffs further allege under Count IX that the Acting DEA Administrator has arbitrarily and capriciously failed to exercise his enforcement authority to ensure BOP's compliance with the CSA.  *Id*. ¶ 172.

This Court has already concluded that in light of the Supreme Court's holding in *Gonzales v. Oregon*, 546 U.S. 243 (2006), "dispensation of lethal injection drugs to an inmate would not be covered by the [CSA]."  ECF No. 145, Mem. Op. at 11.  As this Court recognized, *Gonzales* "held that the CSA is primarily 'a statute combating recreational drug use,' and must be read in light of that statutory purpose."  *Id.* (quoting *Gonzales*, 546 U.S. at 272).  "To read prescriptions for

assisted suicide as constituting 'drug abuse' under the CSA," the Supreme Court said, "is discordant with the phrase's consistent use throughout the statute." *Gonzales*, 546 U.S. at 274. This Court's conclusion on this pure question of law requires that judgment be entered for Defendants on Plaintiffs' CSA-based APA claims.

The Court's dicta that "[a] plain reading of the [CSA] indicates . . . that the CSA applies to the government's lethal injection procedures," ECF No. 145, Mem. Op. at 11, does not alter this conclusion. The CSA does not require that lethal injection occur subject to a prescription or for a medical purpose. Under a plain reading of the statute, no prescription is required to carry out capital punishment through the injection of pentobarbital. The "prescription" requirement of 21 U.S.C. § 829(a) concerns the "dispens[ing]" of a schedule II substance. 21 U.S.C. § 829(a). The term "dispense," as defined under the CSA, "means to deliver a controlled substance to an *ultimate user* or *research subject* by, or pursuant to the lawful order of, a practitioner, including the prescribing and administering of a controlled substance and the packaging, labeling or compounding necessary to prepare the substance for such delivery." 21 U.S.C. § 802(10) (emphasis added). Plaintiffs are neither "research subject[s]" nor "ultimate user[s]," the latter defined under the CSA as "a person who has lawfully obtained, and who possesses, a controlled substance for his own use or for the use of a member of his household. . . ." *Id*. § 802(27). Plaintiffs will not be lawfully obtaining or possessing the pentobarbital for their own use, and the government is not a "person" obtaining the drug "for his own use." Rather, BOP officials inject the drug into each inmate pursuant to a lawful sentence of death.

Nor is pentobarbital "administered" to Plaintiffs within the meaning of the CSA. *See* Am. Compl. ¶ 171. The term "administer" is defined under the CSA as "the direct application of a controlled substance to the body of a patient or research subject." 21 U.S.C. § 802(2). In the context of lethal injection, a condemned inmate is not a "patient" under the traditional definition of that word, *i.e.*, "a person under medical or psychiatric care," Black's Law Dictionary (11th ed. 2019). Indeed, Plaintiffs allege that the use of pentobarbital in the lethal injection context would be "for [a] use that is not a legitimate medical purpose." Am. Compl. ¶ 171. Defendants agree

36

that there is no medical purpose for the lethal injection as it is not a matter of medical or psychiatric care, but rather a method of execution.

In addition, it is inconceivable that Congress enacted the FDPA in 1994 under the assumption that the CSA's prescription requirement applied to the lethal-injection context, particularly if, as Plaintiffs would have it, no valid prescription may be issued for the lethal injection of controlled substances due to the absence of a legitimate medical purpose.  As the Supreme Court has explained, when a statute is first enacted, "it may have a range of plausible meanings.  Over time, however, subsequent acts can shape or focus those meanings."  *FDA v. Brown & Williamson Tobacco Corp*., 529 U.S. 120, 143 (2000).  "The 'classic judicial task of reconciling many laws enacted over time, and getting them to 'make sense' in combination, necessarily assumes that the implications of a statute may be altered by the implications of a later statute.'"  *Id.* (quoting *United States v. Fausto*, 484 U.S. 439, 453 (1988)).  "This is particularly so where the scope of the earlier statute is broad but the subsequent statutes more specifically address the topic at hand."  *Id.*

Here, the FDPA requires the federal government to use the State's manner of execution.  At the time, the Department of Justice in issuing execution regulations had identified lethal injection as "increasingly … the method of execution in the states."  57 Fed. Reg. 56,536, 56,536 (Nov. 30, 1992).  So Congress clearly anticipated that under the FDPA, the federal government would execute federal condemned inmates using lethal injection.  The CSA's prescription requirement must be construed in the context of Congress' enactment of the FDPA, *see Brown & Williamson*, 529 U.S. at 143, and as a matter of statutory construction, the CSA's prescription requirement does not apply in the lethal injection context.  *See also West v. Schofield*, 519 S.W.3d 550, 571 (Tenn. 2017) ("Clearly, the federal government does not consider those of its own executions that are conducted by lethal injection to violate a regulatory scheme for the prescription and use of controlled substances.").

Plaintiffs' secondary argument that DEA has acted arbitrarily and capriciously in failing to exercise enforcement authority under the CSA is meritless because it runs headlong into *Heckler*

*v. Chaney*, 470 U.S. 821 (1985), in which the Supreme Court held that "an agency's decision not to take enforcement action should be presumed immune from judicial review under § 701(a)(2) [of the APA]." *Id*. at 832.  This presumption can be rebutted "where the substantive statute has provided guidelines for the agency to follow in exercising its enforcement powers." *Id*. at 833. But the Supreme Court in *Chaney* refused to assign such power to generic provisions that criminalize any behavior contrary to a statute's substantive prohibitions. *Id*. at 835; *see also Cook v. FDA*, 733 F.3d 1, 7 (D.C. Cir. 2013) (summarizing *Chaney*'s key holdings).  Plaintiffs fail to allege any guidelines in the CSA that would overcome the presumption in *Chaney*.

Moreover, "there is no private right of action under federal law to enforce … alleged violations" of the CSA—including allegations that "the use of compounded pentobarbital as a lethal drug in executions violates the … [CSA]." *Zink*, 783 F.3d at 1113.  The CSA is a criminal statute whose enforcement is committed to the Attorney General, and in which Congress carefully delimited the ways in which others can seek review of the government's choices. *See, e.g.*, 21 U.S.C. §§ 841-843, 871, 877, 882(c).  Plaintiffs cannot use the APA to evade these limits.

### B.  The Protocol Does Not Contravene the FDCA

Defendants are entitled to judgment on Counts VIII and XI, *see* Am. Compl. ¶¶ 159-66 & 186-191, in which Plaintiffs allege that the Protocol is arbitrary and capricious and contrary to law because it violates the FDCA, and on Count X, *see id*. at ¶¶ 176-185, in which Plaintiffs allege that the FDA has failed to exercise its enforcement authority against BOP under the FDCA.

Plaintiffs allege in their Amended Complaint that, among other things, "[u]nder the FDCA, the proposed dispensing and administration of compounded pentobarbital requires a valid medical prescription reflecting a medical practitioner's order that 'a compounded product is necessary for the identified patient." *Id.* ¶ 179 (quoting 21 U.S.C. § 353a(a)); *see also id*. ¶¶ 65-69 (same, also citing 21 U.S.C. § 353b(1)(B)).

Plaintiffs' allegations have no merit.  Although this Court entered a preliminary injunction on the PI Movants' argument that the Protocol violates the FDCA, that injunction was vacated by

the Supreme Court without a noted dissent.[13]   Both this Court in granting the preliminary injunction and the D.C. Circuit in denying the Government's motion to stay the injunction relied on the D.C. Circuit's decision in *Cook v. FDA*, 733 F.3d 1 (D.C. Cir. 2013), which affirmed in relevant part the district court's decision in *Beaty v. FDA*, 853 F. Supp. 2d 30 (D.D.C. 2012).  *See* ECF No. 145, Mem. Op. at 12-13; *see also Execution Protocol Cases*, No. 20-5206, Doc. No. 1851933, at 2-3 (D.C. Cir. July 15, 2020).  Defendants respectfully submit that the reliance on *Cook* and *Beaty* is misplaced for two reasons.

First, neither *Beaty* nor *Cook* addressed the Supreme Court's seminal decision in *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120 (2000).  They did not do so because the question at issue in that case was not whether FDA lacked jurisdiction over articles intended for use in capital punishment, but whether FDA could exercise enforcement discretion over the importation of sodium thiopental.  *See* AR 958 (Office of Legal Counsel Op., Whether the Food & Drug Admin. Has Jurisdiction over Articles Intended for Use in Lawful Executions (May 3, 2019)).  Indeed, as the D.C. Circuit recognized, "the FDA [had] conceded before the district court that the … shipments" were an "unapproved new drug."  *Cook*, 733 F.3d at 11.

An analysis of *Brown & Williamson* leads inexorably to the conclusion that the Protocol does not violate the FDCA.  In *Brown & Williamson*, the Supreme Court considered whether the FDA had properly determined that customarily marketed tobacco products could be regulated as "drugs" or "devices" under the FDCA.  The Court found that Congress could not have intended the FDCA to do so because if such tobacco products were regulated as "drugs" or "devices," the FDCA would prohibit their sale on the basis that they could not be found to be "safe" or "effective" for their intended use.  529 U.S. at 134–37.  The Court explained that Congress' post-FDCA

---

[13] *Compare Barr v. Purkey*, No. 20A10, 591 U.S. ___ (July 16, 2020) (per curiam) (vacating this Court's preliminary injunction based on the FDCA issue) *with Barr v. Purkey*, No. 20A9, 2020 WL 4006809, 591 U.S. ___ (July 16, 2020) (per curiam) (vacating this Court's preliminary injunction on Purkey's *Ford* claim over four dissents) and *Barr v. Lee*, No. 20A8, 2020 WL 3964985, -- S. Ct. -- (July 14, 2020) (per curiam) (vacating this Court's preliminary injunction on Eighth Amendment grounds over four dissents).

legislative enactments conveyed a clear intent that "cigarettes and smokeless tobacco [would] continue to be sold in the United States." *Id.* at 139. "[T]he meaning of one statute may be affected by other Acts," the Court explained, "particularly where Congress has spoken subsequently and more specifically to the topic at hand." *Id*. at 133. "The inescapable conclusion," the Court continued, "is that there is no room for tobacco products within the FDCA's regulatory scheme. If they cannot be used safely for any therapeutic purpose, and yet they cannot be banned, they simply do not fit." *Id*. at 143.

Applying *Brown & Williamson* to the lethal injection context, it is indisputable that a drug intended for use in bringing about death as part of an execution cannot be approved by the FDA as "safe and effective." *See* OLC Op., 2019 WL 2235666 at *4, AR 943 (citing *Chaney*, 470 U.S. at 827 (granting certiorari to review the "implausible" result that "the FDA is required to exercise its enforcement power to ensure that States only use drugs that are 'safe and effective' for human execution"); *see also id*. at *8, AR 948 ("[T]here is no way products intended to carry out capital punishment could ever satisfy [a] . . . test[] under which 'a drug is unsafe if its potential for inflicting death . . . is not offset by the possibility of therapeutic benefit.'" (quoting *United States v. Rutherford*, 442 U.S. 544, 556 (1979))). But the FDPA "presuppose[s] that capital punishment will remain available." OLC Op. at 11. As such, the traditional tools of statutory interpretation preclude reading the FDCA's prescription requirements as applicable to the lethal injection context. *See Brown & Williamson*, 529 U.S. at 133.

Plaintiffs incongruously cite *Brown & Williamson* for the proposition that Defendants should not be permitted to "circumvent[ ] the statutory purposes of the CSA and FDCA to ensure that all drugs, including those used to carry out an execution, are safe and effective and dispensed and administered properly." Am. Compl. ¶ 190. As previously discussed, the CSA is not intended to ensure the safe, effective, and proper dispensation or administration of lethal injection drugs. Further, "[a] fundamental precept of the FDCA is that any product regulated by the FDA—but not banned—must be safe for its intended use." *Brown & Williamson*, 529 U.S. at 142. Just as customarily marketed tobacco products could not be banned without "contradict[ing] Congress'

clear intent," nor be found safe for their intended use and therefore were deemed not to "fit" within "the FDCA's regulatory scheme," *id*. at 143, it can hardly be said that lethal injection drugs intended for use in executing a condemned inmate as authorized by the FDPA fit within the FDCA's regulatory scheme.

Plaintiffs also allege that the Protocol's purported failure to comply with the CSA's and FDCA's prescription requirement creates a risk to Plaintiffs that is contrary to law. *See* Am. Compl. ¶ 190 (quoting *Ringo v. Lombardi*, 706 F. Supp. 2d 952, 958 (W.D. Mo. 2010) (merely identifying a risk, not an "objectively intolerable risk"), and *Beaty v. FDA*, 853 F. Supp. 2d at 42-43 (identifying an "unnecessary risk" not an "objectively intolerable risk"). But, as discussed above, the Constitution merely requires that the Protocol safeguard against an "objectively intolerable risk of harm." *Baze*, 553 U.S. at 49-50. None of the cases cited by Plaintiffs in support of their risk-of-injury argument employs the *Baze* standard.

In fact, as noted above in the CSA section, Plaintiffs admit that there is "no legitimate medical purpose" for using pentobarbital for lethal injection. Am. Compl. ¶ 64; *see also id*. ¶ 171. Accordingly, Plaintiffs appear to be alleging that BOP cannot use lethal injection drugs *at all* because the FDCA both prohibits dispensing such drugs without a prescription, *see id*. ¶ 178 (citing 21 U.S.C. § 353(b)(1)), and prohibits the validity of a prescription written to supply drugs that have no legitimate medical purpose. *See id*. ¶ 179 (citing 21 U.S.C. § 353a(a)). This Catch-22 argument is identical to the one Plaintiffs urge with respect to the CSA and, again, is belied by the fact that Congress enacted the FDPA and required the federal government to adopt States' preferences as to methods of execution at a time when at least a dozen states had already adopted lethal injection as the method of execution.

Moreover, given Plaintiffs' position that there is no legitimate medical purpose for lethal injections, Am. Compl. ¶¶ 64, 171, their reliance on States' purported ability to obtain prescriptions does not advance their argument. Specifically, Plaintiffs allege that "[m]edical prescriptions are available for pentobarbital and/or compounded pentobarbital as evidenced by the fact that two of the five states whose methods Defendants relied on in crafting the 2019 Protocol utilize such

41

prescriptions." *Id*. ¶ 67.  But even if the Protocol required a prescription, Plaintiffs would still argue that such a prescription would be invalid.  *Cf.* Pls.' Mot. for Preliminary Injunction, ECF No. 102 at 32 n.19 ("To be sure, it is likely that the prescriptions obtained by these states do not comply with the requirements of the FDCA and CSA.").

Finally, Plaintiffs' failure-to-enforce claim under Count X is entirely foreclosed by the preceding analysis since FDA does not have the authority to regulate articles intended for use in capital punishment.  Moreover, even if FDA did have such authority, Plaintiffs' failure-to-enforce claim would be foreclosed by *Chaney*.  As the Supreme Court explained in *Chaney*, "[t]he FDA's decision not to take . . . enforcement actions" to prevent the use of drugs intended for use in lethal injection is "not subject to judicial review under the APA."  470 U.S. at 837-38; *see also* 5 U.S.C. § 701(a)(2).  The D.C. Circuit's conclusion in *Cook* that *Chaney* does not preclude review of the FDA's enforcement choices under 21 U.S.C. § 381(a) regarding drugs manufactured in unregistered foreign establishments has no application here.  The prescription and compounding provisions of the FDCA that plaintiffs invoke, *see* 21 U.S.C. §§ 353(b), 353a, and 353b,  are distinct from the import provisions in Section 381, which the court concluded contained the sort of "specific 'legislative direction in the statutory scheme'" sufficient to overcome "the presumption against judicial review announced in *Chaney*."  *Cook*, 733 F.3d at 6-7; *see Chaney*, 470 U.S. at 835 ("The [FDCA's] enforcement provisions . . . commit complete discretion to the Secretary to decide how and when they should be exercised").  *Cook* did not purport to abrogate *Chaney* and should not be read expansively in this context, given *Cook*'s singular focus on an import provision, 21 U.S.C. § 381, which is not at issue here.

Furthermore, Plaintiffs' inability to force the FDA to act does not mean that Plaintiffs themselves may seek relief for BOP's supposed violations of the FDCA.  On the contrary, in the FDCA itself, Congress specified "all … proceedings for the enforcement, or to restrain violations, of this chapter shall be by and in the name of the United States."  21 U.S.C. § 337(a).  This requirement forecloses actions by private parties seeking to restrain third parties' putative violations of the FDCA's general strictures, leaving "the United States with nearly exclusive

enforcement authority" over those matters.  *POM Wonderful LLC v. Coca-Cola Co*., 573 U.S. 102, 109 (2014).  The federal government clearly does not believe that it is violating the FDCA by using pentobarbital to conduct lethal injections, and that judgment is reserved to the Executive Branch under the FDCA's plain terms.  Plaintiffs cannot end-run the non-reviewability of the FDA's enforcement decisions by invoking the APA against BOP.  And because the *Cook* plaintiffs sought to require the FDA to act, rather than to enforce the FDCA directly themselves, the D.C. Circuit there had no occasion to address the prohibition on private enforcement actions.  Thus, even under *Cook*'s logic, Plaintiffs have no basis to ask this Court to second-guess the government's decisions regarding the FDCA's intersection with lethal-injection drugs.

## CONCLUSION

For the foregoing reasons, this Court should grant Defendants' Motion to Dismiss Plaintiffs' non-APA claims and enter judgment for Defendants on Plaintiffs' APA claims.  A proposed order is attached.

Dated:  July 31, 2020                                    Respectfully submitted,

MICHAEL R. SHERWIN                          DAVID M. MORRELL
Acting United States Attorney                   Deputy Assistant Attorney General

DANIEL F. VAN HORN                            PAUL R. PERKINS
Civil Chief, U.S. Attorney's Office            Special Counsel

ALAN BURCH (D.C. Bar 470655)            _/s/*Jean Lin*_____
Assistant United States Attorney               JEAN LIN (NY Bar 4074530)
U.S. Attorney's Office                              Special Litigation Counsel
for the District of Columbia                     JONATHAN KOSSAK (D.C. Bar 991478)
Washington, D.C. 20530                         CRISTEN C. HANDLEY (MO Bar 69114)
202-252-2550                                         Trial Attorneys
alan.burch@usdoj.gov                             Federal Programs Branch
                                                          Civil Division, Department of Justice
                                                          1100 L Street, N.W.
                                                          Washington, D.C. 20005
                                                          (202) 514-3716
                                                          Jean.lin@usdoj.gov
                                                          Jonathan.kossak@usdoj.gov
                                                          Cristen.handley@usdoj.gov
                                                          *Attorneys for Defendants*

43

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 31, 2020, I caused a true and correct copy of foregoing to be served on all counsel of record via the Court's CM/ECF system.  Pursuant to this Court's August 20, 2019 Order, below is a list of all plaintiffs' counsel of record (as most recently identified in the signature pages of the Consolidated Amended Complaint, ECF No. 92):

Alan E. Schoenfeld (admitted *pro hac vice*)
Ryan M. Chabot (admitted *pro hac vice*)
WILMER CUTLER PICKERING HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, New York 10007
(212) 230-8880
Alan.Schoenfeld@WilmerHale.com
Ryan.Chabot@WilmerHale.com

Andres C. Salinas (DC Bar No. 156118)
WILMER CUTLER PICKERING HALE AND DORR LLP
1875 Pennsylvania Avenue NW
Washington, DC 20006
(202) 663-6289
Andres.Salinas@WilmerHale.com

*Counsel for Wesley I. Purkey*

Joshua C. Toll
D.C. Bar No. 463073 King & Spalding LLP
1700 Pennsylvania Avenue, N.W.
Washington, DC 20006
(202) 737-8616
jtoll@kslaw.com

Margaret O'Donnell
P.O. Box 4815
Frankfort, KY 40604
(502) 320-1837
mod@dcr.net

*Counsel for Plaintiff Anthony Battle*

Ginger D. Anders (Bar No. 494471)

Jonathan S. Meltzer (Bar No. 888166546)
Brendan Gants (Bar No. 1031419)
MUNGER, TOLLES & OLSON LLP
1155 F Street N.W., Seventh Floor
Washington, D.C. 20004-1357
(202) 220-1100

*Counsel for Plaintiff Brandon Bernard*

Alex Kursman, Assistant Federal Defender
Shawn Nolan, Chief, Capital Habeas Unit
Federal Community Defender Office, E.D. Pa.
601 Walnut Street, Suite 545 West
Philadelphia, PA 19106
Telephone - 215-928-0520
Email – alex_kursman@fd.org

*Counsel for Plaintiff Alfred Bourgeois*

Joseph Luby, Assistant Federal Defender
Federal Community Defender Office, E.D. Pa.
 601 Walnut Street, Suite 545 West
Philadelphia, PA 19106
Telephone - 215-928-0520
Email – joseph_luby@fd.org

*Counsel for Plaintiff Chadrick Fulks*

Amy Lentz (DC Bar No. 990095)
Steptoe & Johnson, LLP
1300 Connecticut Avenue NW
Washington, DC 20036
202.429.1320

*Counsel for Plaintiff Orlando Hall*

Scott W. Braden
Assistant Federal Defender
Arkansas Federal Defender Office
Ark Bar Number 2007123
1401 West Capitol, Suite 490
Little Rock, Arkansas 72201
(501) 324-6114
Scott_Braden@fd.org

Jennifer Ying (DE #5550)
Andrew Moshos (DE #6685)
MORRIS, NICHOLS, ARSHT & TUNNELL LLP

1201 N. Market St.
P.O. Box 1347
Wilmington, Delaware 19801
(302) 658-9300
jying@mnat.com
amoshos@mnat.com

*Counsel for Plaintiff Norris G. Holder, Jr.*

Jon Jeffress
KaiserDillon PLLC
1099 14th Street NW
8th Floor West
Washington, DC 20005
Telephone - 202-640-2850
Email - jjeffress@kaiserdillon.com

Timothy Kane, Assistant Federal Defender
Shawn Nolan, Chief, Capital Habeas Unit
Federal Community Defender Office, E.D. Pa.
601 Walnut Street, Suite 545 West
Philadelphia, PA 19106
Telephone - 215-928-0520
Email – timothy_kane@fd.org
Email – shawn_nolan@fd.org

*Counsel for Plaintiff Dustin Lee Honken*

Donald P. Salzman (D.C. Bar No. 479775)
Charles F. Walker (D.C. Bar No. 427025)
Steven M. Albertson (D.C. Bar No. 496249)
Skadden, Arps, Slate, Meagher & Flom LLP
1440 New York Avenue, N.W.
Washington, D.C. 20005
(202) 371-7983
donald.salzman@skadden.com

*Counsel for Plaintiff Corey Johnson*

David S. Victorson
Hogan Lovells US LLP
Columbia Square
555 13th Street NW
Washington, DC  20004
(202) 637-5600
(202) 637-5910 (fax)
david.victorson@hoganlovells.com

Pieter Van Tol (admitted *pro hac vice*)
Hogan Lovells US LLP
390 Madison Avenue
 New York, NY 10017
(212) 918-3000
(212) 918-3100 (fax)
pieter.vantol@hoganlovells.com

*Counsel for Plaintiff Daniel Lewis Lee*

Kathryn L. Clune
Crowell & Moring LLP
1001 Pennsylvania Avenue NW
Washington D.C. 20004-2595
(202) 624-2705
kclune@crowell.com

Harry P. Cohen (pro hac vice application pending)
Michael K. Robles (pro hac vice application pending)
James Stronski (pro hac vice application pending)
Crowell & Moring LLP
590 Madison Avenue New York, NY 10022
(212) 223-4000
(212) 223-4134(fax)
hcohen@crowell.com
mrobles@crowell.com
jstronski@crowell.com

Jon M. Sands (pro hac application to be filed)
Dale A. Baich (pro hac application to be filed)
Jennifer M. Moreno
Federal Public Defender
District of Arizona
850 West Adams Street, Suite 201
Phoenix, Arizona 85007
602-382-2816
602-889-3960 (fax)
dale_baich@fd.org
jennifer_moreno@fd.org

*Counsel for Plaintiff Keith Nelson*

Shawn Nolan, Chief, Capital Habeas Unit
Federal Community Defender Office, E.D. Pa.
 601 Walnut Street, Suite 545 West
Philadelphia, PA 19106
Telephone - 215-928-0520
Email – timothy_kane@fd.org

Email – shawn_nolan@fd.org

*Counsel for Plaintiff Jeffrey Paul*


Paul F. Enzinna
D.C. Bar No. 421819
Ellerman Enzinna PLLC
1050 30th Street, NW
Washington, DC 20007
202.753.5553

*Counsel for Plaintiff James H. Roane, Jr.*

Amy Karlin
Interim Federal Public Defender
Celeste Bacchi
Jonathan C. Aminoff
Deputy Federal Public Defenders
321 E. Second Street
Los Angeles, CA 90012
(213) 894-2854

*Counsel for Plaintiff Julius O. Robinson*

Gerald W. King, Jr. Ga. Bar No. 140981
Jeffrey Lyn Ertel Ga. Bar No. 249966
FEDERAL DEFENDER PROGRAM, INC.
101 Marietta Street, Suite 1500
Atlanta, Georgia 30303
404-688-7530
(fax) 404-688-0768
Gerald_King@fd.org
Jeff_Ertel@fd.org

Stephen Northup
VSB #16547
Troutman Sanders LLP
P.O. Box 1122
Richmond, Virginia 23218-1122
(804) 697-1240
(fax) (804) 698-5120
steve.northup@troutmansanders.com

Frederick R. Gerson VSB #39968
Bank Of America Center
1111 East Main Street, 16th Floor Richmond,
Virginia 23219
(804) 482-1121
fgerson@dagglaw.com

*Counsel for Richard Tipton, III.*

Evan Miller (DC Bar # 219310)
Vinson & Elkins LLP
2200 Pennsylvania Avenue, NW
Suite 500 West
Washington, D.C. 20037
(202) 639-6605
(202) 478-1815 (fax)
emiller@velaw.com

*Counsel for Bruce Webster*

*/s/Jean Lin*
Attorney for Defendants

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| In the Matter of the | ) | |
| Federal Bureau of Prisons' Execution | ) | |
| Protocol Cases, | ) | |
| | ) | |
| LEAD CASE: *Roane et al. v. Barr* | ) | Case No. 19-mc-145 (TSC) |
| | ) | |
| | ) | |
| THIS DOCUMENT RELATES TO: | ) | |
| | ) | |
| All Cases | ) | |
| | ) | |

**[PROPOSED] ORDER**

Upon consideration of Defendants' Motion to Dismiss Plaintiffs' non-APA Claims and

for Summary Judgment Regarding Plaintiffs' APA Claims, any opposition thereto, and the entire

record herein, it is hereby

**ORDERED** that the Motion is **GRANTED**.

So ordered this _____ day of _____ 2020.

_____
TANYA S. CHUTKAN
United States District Judge