IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In the Matter of the Federal Bureau of Prisons' Execution Protocol Cases,<br><br>LEAD CASE: *Roane et al. v. Barr*<br><br>THIS DOCUMENT RELATES TO:<br><br>*Nelson v. Barr, et al.*, 20-cv-557 | Case No. 19-mc-0145 (TSC) |

**PLAINTIFF KEITH NELSON'S EMERGENCY CROSS-MOTION
FOR SUMMARY JUDGMENT ON FDCA CAUSES OF ACTION**

Plaintiff Keith Nelson, by and through counsel, submits this memorandum in support of his cross-motion for summary judgment on Counts X and XI of the June 1, 2020 Amended Complaint (ECF No. 92), and Count VIII of the Amended Complaint to the extent it concerns violations of the Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 *et seq.* ("FDCA"). Specifically, Mr. Nelson requests that the Court: (a) enter judgment as a matter of law that the 2019 Execution Protocol and, in particular, Defendants' use of pentobarbital as its execution drug, violates the FDCA and is therefore an agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" under 5 U.S.C § 706(2)(A) of the Administrative Procedure Act ("APA"); (b) enter an order that the 2019 Execution Protocol is unlawful and is set aside in accordance with the APA; and (c) enjoin Defendants from executing Mr. Nelson using pentobarbital not subject to a prescription or otherwise in violation of the FDCA.

**RELEVANT BACKGROUND**

The facts and procedural history of this matter have been exhaustively briefed by Plaintiffs, detailed by the Court in several recent orders, and will not be repeated here at length.

By Judgment dated March 11, 2002, Mr. Nelson was sentenced to death. On June 1, 2020, Plaintiffs, including Mr. Nelson, filed an Amended Complaint for injunctive and declaratory relief for *inter alia* violations and threatened violations of the FDCA. ECF No. 92. Specifically, Plaintiffs alleged that the 2019 Execution Protocol violates the FDCA because it requires the dispensing and administration of pentobarbital (a Schedule II controlled substance, 21 C.F.R. § 1308.12(c)(3)) without a valid medical prescription and flouts the FDCA's restrictions on "outsourcing facilities," and that the 2019 Execution Protocol was therefore an agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" that was required to be set aside under the APA. 5 U.S.C. § 706(2)(A).[1]

On June 19, 2020, Mr. Nelson (and three other Plaintiffs who had dates set for execution – Messrs. Lee, Purkey, and Honken) moved for a preliminary injunction based on several of their constitutional and statutory claims, including the FDCA claims. ECF No. 102. On July 15, 2020, this Court enjoined the executions of Messrs. Lee, Purkey, Honken, and Nelson on the ground that Plaintiffs were likely to succeed on their claim that the 2019 Execution Protocol violates the FDCA. ECF No. 145. The Court rejected Defendants' argument that "because lethal injection drugs are intended to kill, they could not possibly be regulated by laws intended to ensure that a drug is 'safe and effective for its intended use,'" explaining that "the statute must apply in the lethal-injection context, because a lethal injection drug that does not function as intended may 'result in conscious suffocation, pain, and cardiac arrest.'" *Id.* at 12. This Court further noted that the United States Court of Appeals for the District of Columbia Circuit (the "D.C. Circuit") in *Cook* had already affirmed "that lethal injection drugs are 'drugs' under

---

[1] As the Court knows, Mr. Nelson's execution is currently scheduled for August 28, 2020. ECF No. 99. Mr. Nelson's motion to strike Defendants' notice of execution and to vacate the putative execution date referenced therein (ECF No. 101) was filed on June 19, 2020 and remains *sub judice*.

the FDCA, and that death-sentenced individuals are permitted to assert violations of the FDCA." *Id.* That same day (July 15, 2020), the D.C. Circuit denied the government's emergency motion to stay or vacate the preliminary injunction. *Roane v. Barr*, USCA Case # 20-5206, Doc. No. 1851933 (D.C. Cir. July 15, 2020). The D.C. Circuit, pointing to its prior statement in *Cook v. FDA* "that thiopental is a 'drug' within the meaning of the FDCA even when it is intended for use in an execution," held that the "government's argument conflicts with the necessary premise of a published precedential decision of our court." *Id.* at 3. On July 16, 2020, the Supreme Court vacated this Court's preliminary injunction. *See Barr v. Purkey*, (U.S. July 16, 2020) (per curiam). Defendants executed Messrs. Lee, Purkey, and Honken on July 14, 16 and 17, respectively.

On July 31, 2020, Defendants *inter alia* moved for summary judgment on Plaintiffs' FDCA claims. ECF No. 169. In accordance with the Court's August 3, 2020 minute order, Plaintiffs' opposition to the motion is due August 10, 2020, and Defendants' reply is due August 13, 2020.

## ARGUMENT

### MR. NELSON IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON HIS FDCA CLAIMS

"When reviewing motions for summary judgment in a suit seeking review of an agency's actions . . . the court must decide as a matter of law 'whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review.'" *Beyond Nuclear v. U.S. Dep't of Energy*, 233 F.Supp. 3d 40, 47 (D.D.C. 2017) (citations omitted). "Pursuant to the APA, the court must set aside any agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id.*; 5 U.S.C. § 706(2)(A). The parties agree that Mr. Nelson's FDCA-based claims present "pure question[s] of law" and are

3

ripe for judgment on the merits. *See* Defendants' Motion for Summary Judgment, ECF No. 169 at 36. As discussed below, Mr. Nelson is entitled to judgment on the FDCA claims as a matter of law.

### A. The Purpose of the FDCA

The "core" legislative purpose of the FDCA is to ensure that a "drug" is "safe and effective for its intended use." *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000). One way the FDCA ensures that a drug is safe and effective for its intended use is to expressly condition the dispensing of controlled substances, including pentobarbital, upon either (i) "a written prescription of a practitioner licensed by law to administer such drug," or (ii) "an oral prescription of such practitioner which is reduced promptly to writing and filed by the pharmacist." 21 U.S.C. § 353(b)(1)(B). Here, Defendants have confirmed that they have not obtained, and do not intend to obtain, a prescription for the pentobarbital they intend to use to execute Mr. Nelson. *See, e.g.*, Nov. 2019 Winter Dep. at 315:4-6; Miller Dep. at 29:18-21. Under the circumstances, the 2019 Execution Protocol indisputably violates the FDCA because it requires the dispensing and administration of pentobarbital without a valid medical prescription.

### B. Drugs Used In Executions Are Subject to the FDCA

As this Court recognized in its decision on Plaintiffs' motion for a preliminary injunction, the D.C. Circuit has definitively held that the FDCA applies to the use of drugs in the context of executions. *Cook v. FDA*, 733 F.3d 1 (D.C. Cir. 2013). Specifically, in *Beaty v. FDA*, 853 F. Supp. 2d 30, 34, 37-42 (D.D.C. 2012), which the D.C. Circuit affirmed in *Cook*, the D.C. Circuit explained "that lethal injection drugs are 'drugs' under the FDCA, and that death-sentenced individuals are permitted to assert violations of the FDCA." ECF No. 145 at 12. The court in *Beaty* therefore concluded—and the D.C. Circuit affirmed—that death-sentenced individuals are

permitted to challenge the use of execution drugs that do not comply with the FDCA. *Beaty*, 853 F. Supp. 2d at 37-43; *see also Cook*, 733 F.3d at 10-11.

Such a determination makes eminent sense. As this Court explained, "[b]ecause violations of the FDCA carry 'the risk that the drug[s] will not function as intended,'…the [FDCA] must apply in the lethal-injection context, because a lethal injection drug that does not function as intended may 'result in conscious suffocation, pain, and cardiac arrest'." ECF No. 145 at 12 (*quoting Beaty*, 853 F. Supp. 2d at 37). That rationale is, as this Court also noted, "especially" compelling "where, as here, Defendants have justified the 2019 Protocol on the grounds that pentobarbital will render inmates insensate during the execution process." ECF No. 145 at 12. Specifically, "[w]here the government argues that a lethal injection drug is legally and constitutionally permissible because it will ensure a "humane" death, it cannot then disclaim a responsibility to comply with federal statutes that exist in order to ensure that the drugs operate humanely." *Id.*[2]

The D.C. Circuit affirmed this Court's finding in denying Defendant's motion to stay the injunction, rejecting Defendants' argument that "the logic of [the United States Supreme Court's decision in] *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000), prevents reading the FDCA to authorize the FDA to regulate drugs used for executions." USCA Case #20-5206, Doc. #1851933 at 3. To the contrary, pointing to its prior statement in *Cook v. FDA* "that thiopental is a 'drug' within the meaning of the FDCA even when it is intended for use in an execution," the D.C. Circuit held that the "government's argument conflicts with the necessary premise of a published precedential decision of our court." *Id.* In addition, the D.C.

---

[2] As noted above, the Supreme Court vacated this Court's preliminary injunction. However, a vacatur on appeal of a preliminary injunction is limited to a review of the preliminary injunction on that record. As Defendants agree, this Court should now address those issues on the merits based on the parties' submissions in support of their cross-motions for summary judgment.

5

Circuit "note[d] that the Supreme Court has expressly declined to resolve this 'thorny' jurisdictional question," stating that "'we need not and do not address' whether the FDCA applies to drugs used to carry out executions." *Id.* (*citing* and *quoting Heckler v. Chaney*, 470 U.S. 821, 828 (1985)).

### C.   The Use of an Outsourcing Facility Independently Violates the FDCA

That Defendants procured the pentobarbital from an "outsourcing facility," AR1084, does not free them from the FDCA prescription requirement, and indeed their non-compliance with important limitations on outsourcing facilities independently violates the statute. The FDCA provides a number of rules that such outsourcing facilities must follow when compounding drugs in order to be exempt from the premarketing and labeling requirements found elsewhere in the FDCA and the "new drug" approval process to demonstrate the product's efficacy. *See Athenex Inc.* v. *Azar*, 397 F. Supp. 3d 56, 59-60 (D.D.C. 2019); 21 U.S.C. §353b. An outsourcing facility is ineligible for that exemption if it produces a drug that is "essentially a copy of one or more approved drugs." 21 U.S.C. §353b(a)(5). "[E]ssentially a copy" means a drug that is "identical or nearly identical to an approved drug" (unless it appears on the FDA's list of drug shortages), or contains a "bulk drug substance that is a component of an approved drug" (unless the drug has been changed in order to make a "clinical difference" for an individual patient). 21 U.S.C. §353b(d)(2)(A)-(B). Here, laboratory tests obtained by Defendants show that their objective is to use an outsourcing facility to produce a compounded product that is essentially a copy of FDA-approved pentobarbital. *See* AR4-5, 932-933, 970-1015. Accordingly, the compounded pentobarbital Defendants intend to use to execute Mr. Nelson must comply with the FDCA's premarketing, labeling, and prescription requirements. 21 U.S.C. §353b. It is undisputed that Defendants have not complied with those important protective requirements.

In addition, outsourcing facilities must compound drugs that either (1) use active pharmaceutical ingredients [APIs] that the FDA has placed on the "503B Bulks list" based on a determination of "clinical need," or (2) appear on the FDA's list of drug shortages, a designation that would justify use of a comparatively risky compounded drug rather than the more thoroughly regulated FDA-approved version. *See* 21 U.S.C. §353b(a)(2)(A). Here, however, the FDA has not placed pentobarbital API on the "503B Bulks list," and it has not identified pentobarbital on its list of drug shortages. Moreover, there is no "clinical need" for a particular API when an "FDA-approved drug that could be used to meet the very [same] patient needs" is "already available on the market," *Athenex*, 397 F. Supp. 3d at 58, as is true here with respect to Defendants' compounded pentobarbital, AR 4-5, 932- 33, 970-1015.

Defendants' compounding violations implicate the FDCA's purpose of ensuring that a regulated "drug" is "'safe' and 'effective' for its intended use." *Brown & Williamson*, 529 U.S. at 133. The Drug Quality and Security Act, which is now part of the FDCA, was enacted out of concern that bulk compounders were marketing and distributing their products outside of the FDA's regulatory framework that requires "premarket review for safety, effectiveness, and quality." *Athenex*, 397 F. Supp. 3d at 59. The now-amended FDCA therefore limits the production of such drugs to situations in which society's medical need for a drug outweighs the hazards of compounding it. "Both the 'essentially a copy' provision and FDA's 'clinical need' inquiry are. directed at identifying whether the compounded product is one that fills a therapeutic purpose unmet by the approved drug" *Id.* at 72. Because Defendants are violating the FDCA's restrictions on outsourcing facilities, the resulting compounded pentobarbital falls outside of the FDCA's safe harbor for production of compounded drugs. *See id.* at 66. The execution drug is therefore an unapproved "new drug" under the FDCA. *See* 21 U.S.C. §353b(a) (exempting such compounded drugs from 21 U.S.C. §§352(f)(1), 355, and 360eee-1); *Athenex*,

397 F. Supp. 3d at 66 (describing "bulk compounding as an exception within an exception"). The introduction of that drug into interstate commerce is a federal crime. *See* 21 U.S.C. §331(d).

### D. Conclusion

In sum, Defendants insist that they selected pentobarbital as an execution drug for the medical purpose of preventing pain, and to otherwise ensure a "humane" death. AR1, 3, 525-26, 858, 871-72, 929, 932. Having crafted a protocol to achieve a specific medical purpose, enlisted scientific experts to assist in that purpose, and defended the protocol as "humane" because it allegedly achieves that purpose, Defendants must necessarily comply with the laws that have been enacted by Congress to ensure that drugs are "'safe' and 'effective' for [their] intended use." *Brown & Williamson*, 529 U.S. at 133. The FDCA "provide[s] safeguards against improper use of lethal injection chemicals by assuring that medical practitioners are adequately involved in the use of those chemicals." *Ringo v. Lombardi*, 706 F.Supp.2d 952, 958 (W.D. Mo. 2010). "[I]gnoring those safeguards," as Defendants intend to do pursuant to the 2019 Execution Protocol, "places [Mr. Nelson] at risk." *Id.* The 2019 Execution Protocol indisputably constitutes an agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" that must be set aside as a matter of law under the APA. *See* 5 U.S.C. § 706(2)(A).

**WHEREFORE**, for all the foregoing reasons, Plaintiff Keith Nelson respectfully requests that this Court: (a) enter judgment as a matter of law that the 2019 Execution Protocol and, in particular, Defendants' use of pentobarbital as its execution drug, violates the FDCA, and is therefore an agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" under the APA; (b) order that the 2019 Execution Protocol is unlawful and is set aside in accordance with the APA; and (c) enjoin Defendants

from executing Mr. Nelson using pentobarbital not subject to a prescription or otherwise in violation of the FDCA.

Dated: August 4, 2020              Respectfully submitted,

*/s/ Harry P. Cohen*
Harry P. Cohen (admitted *pro hac vice*)
Michael K. Robles (admitted *pro hac vice*)
James K. Stronski (admitted *pro hac vice*)
Crowell & Moring LLP
590 Madison Avenue
New York, NY 10022
(212) 223-4000
(212) 223-4134(fax)
hcohen@crowell.com
mrobles@crowell.com
jstronski@crowell.com

Kathryn L. Clune
Crowell & Moring LLP
1001 Pennsylvania Avenue, NW
Washington D.C. 20004-2595
(202) 624-2705
kclune@crowell.com

Jon M. Sands
Dale A. Baich
Jennifer M. Moreno
Federal Public Defender
District of Arizona
850 West Adams Street, Suite 201
Phoenix, Arizona 85007
602-382-2816
602-889-3960 (fax)
dale_baich@fd.org
jennifer_moreno@fd.org

*Counsel for Plaintiff Keith Nelson*