**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| In the Matter of the Federal Bureau of Prisons' Execution Protocol Cases, <br><br> LEAD CASE: *Roane et al. v. Barr* <br><br> THIS DOCUMENT RELATES TO: <br><br> *Nelson v. Barr, et al.*, 20-cv-557 | Case No. 19-mc-0145 (TSC) |

## PLAINTIFF KEITH NELSON'S REPLY IN RESPONSE TO DEFENDANTS' OPPOSITION TO EMERGENCY MOTION TO EXPEDITE TRIAL

Plaintiff Keith Nelson, by and through counsel, respectfully submits this reply in further support of Mr. Nelson's Emergency Motion to Expedite Trial, dated July 31, 2020 (ECF No. 174) (the "Motion").[1]

Stripped to its core, Defendants' Opposition to the Motion (ECF No. 178, the "Opp.") is premised on three principal arguments: (1) the executions of Messrs. Lee, Purkey, and Honken "were implemented without any pentobarbital-related complications" so there is no cause for concern (Opp. at 1); (2) Mr. "Nelson's upcoming execution is not grounds for rushing to trial" (*id.* at 7); and (3) a trial is "inappropriate" because Defendants will prevail on their motion to dismiss the Eighth Amendment claim (Count II) of the Amended Complaint for failure to state a claim. (*Id*. at 8). As explained below, each of Defendants' argument is unavailing.

### A.    The Recent Executions Demonstrate The Need For A Trial.

Defendants' assertion that the executions of Messrs. Lee, Purkey, and Honken "were implemented without any pentobarbital-related complications" (Opp. at 1) is both wholly unsupported and inaccurate.  Defendants offer no evidence whatsoever to support their *ipse*

---

[1] Mr. Nelson adopts herein the same abbreviations and conventions used in the Motion.

*dixit* assertion.  Defendants thus put the cart before the horse.  If they actually have any evidence to support their contention (which remains to be seen), any such evidence must be authenticated and duly admitted; Mr. Nelson is entitled to an opportunity to cross-examine and rebut it; and the Court must be in a position to evaluate its credibility and import.  The time to undertake that critical process, of course, is at trial.  Indeed, by asserting that the executions "were implemented without any pentobarbital-related complications," Defendants have opened the door to evidentiary scrutiny of those executions.  Defendants' position is classic sword and shield, touting the purported success of its executions, while at the same time attempting to dodge their obligation to actually submit credible and admissible evidence and avoid any scrutiny of their self-serving statements.[2]

Moreover, contrary to Defendants' assertion, the autopsy of Mr. Purkey (the only prisoner whose family sought an autopsy) confirms that his execution was replete with pentobarbital-related complications.   Specifically, as explained in the accompanying Preliminary Findings Report of Dr. Joyce L. deJong, the pathologist who conducted Mr. Purkey's autopsy, the autopsy revealed that Mr. Purkey suffered from "severe bilateral acute pulmonary edema."  *See* Ex. 1 at 1, hereto (Report of Dr. DeJong).  Mr. Purkey's right lung weighed 1140 grams, his left lung weighed 1160 grams, and there was "[f]rothy pulmonary edema in trachea and mainstem bronchi."  *Id.*  As explained in the accompanying supplemental expert declaration by Dr. Gail Van Norman, the presence of severe pulmonary edema indicates that Mr. Purkey experienced "flash pulmonary edema," *i.e.*, his lungs filled with fluid and he suffered excruciating air hunger while he was still alive.   *See* Ex. 2, hereto (Second

---

[2] If the Court grants Mr. Nelson's motion for expedited trial, it should also order Defendants to immediately produce any evidence they intend to rely on at trial to support their contention that the executions of Messrs. Lee, Purkey, and Honken "were implemented without any pentobarbital-related complications" (Opp. at 1).

Supplemental Expert Declaration Of Gail A. Van Norman, M.D.).   Indeed, "[t]he findings of Mr. Purkey's autopsy is consistent with, and affirms, [Dr. Norman's] opinion that premortem flash pulmonary edema is a virtual medical certainty in any execution carried out in accordance with the 2019 Federal Execution Protocol," and likewise "[c]onsistent with [her] previous opinion, prisoners executed by lethal injection in accordance with the Federal Protocol remain sensate and able to experience the extreme pain and suffering related to the occurrence of flash pulmonary edema." *Id.*, ¶ 7.   Dr. deJong and Dr. Van Norman are available and willing to appear and testify at trial.

Undoubtedly recognizing the import of Mr. Purkey's autopsy results, Defendants' contend that "the testimony of a pathologist who conducted an autopsy of Purkey…would at most be cumulative of Dr. Van Norman's testimony."  Opp. at 10.  But that is false and misses the point.   Mr. Purkey was executed just three weeks ago pursuant to the 2019 Execution Protocol at issue in this action and which Defendants intend to use to execute Mr. Nelson.  Mr. Purkey's autopsy is thus the best, most recent, and most reliable evidence available to this Court that demonstrates the noxious aspects of execution using pentobarbital.  And, as noted above, the evidence from Mr. Purkey's autopsy goes directly to Defendants' assertion that the recent executions went off without a hitch.  In any event, the mere fact that Mr. Purkey's autopsy might be consistent with the evidence of other autopsies on which Dr. Van Norman relied is not a reason to exclude it.  If anything, it is important for the Court to consider all available evidence that sheds light on whether the execution method used by Defendants violates the Eighth Amendment.  Indeed, the evidence from Mr. Purkey's autopsy is not cumulative, it is affirming.[3]

---

[3] Contrary to Defendants' suggestion, Mr. Purkey's execution was not merely "maladministration," nor was it an "isolated mishap." Opp. at 12. To the contrary, the autopsy report and Dr. Van Norman's

**B.**     **A Rush to Trial Is Necessary Given Defendants' Refusal to Postpone Mr. Nelson's Execution.**

Defendants' flippant assertion that Mr. "Nelson's upcoming execution is not grounds for rushing to trial" (Opp. at 7) is disingenuous.  If the Court does not schedule an expedited trial, Mr. Nelson will be executed before he has an opportunity to address the merits of his Eighth Amendment constitutional challenge.  If that's not a reason to "rush to trial," we don't know what is.

Moreover, Defendants simply ignore the authority set forth in the Motion demonstrating that courts routinely order expedited trials where a preliminary injunction is denied, but the "nature of the claims" requires an expedited resolution.  *Two Kids from Queens, Inc. v. J&S Kidswear, Inc.*, Civil Action No. 09-3690, 2009 WL 5214497, *4 (E.D.N.Y. Dec. 30, 2009); *Business Assoc. of University City v. Landrieu*, 660 F.2d 867, 877-78 (3d Cir. 1981); *Digital Ally Inc. v. Corum*, No. 17-cv-02026, 2017 WL 1545671, *12 (D. Kan. April 28, 2017).  That makes eminent sense, of course, where (as here) there is a demonstrable risk of irreparable harm.  Under the circumstances, while Defendants' contention that "Nelson's upcoming execution is not grounds for rushing to trial" is at best dubious, there is still no legitimate reason for Defendants' refusal to postpone the execution for a reasonable period of time in order to afford the parties an opportunity to proceed to trial in the ordinary course under a reasonable, albeit expedited, schedule.

Defendants' contentions that "this case is not the type of 'declaratory judgment action' contemplated by Rule 57," and that 28 U.S.C. § 1657(a) "does not contemplate expedition in

---

supplemental declaration demonstrate that Mr. Purkey suffered severe and acute flash pulmonary edema, just as every other prisoner executed with pentobarbital also suffered flash pulmonary edema.  That evidence should be considered by the Court at trial, as it amply demonstrates a serious deficiency in Defendants' method-of-execution that gives rise to an Eighth Amendment violation.

these circumstances" (Opp. at 6) ring hollow.  According to Defendants, although Plaintiffs'

Amended Complaint "request[s] that the protocol be **declared** unconstitutional and illegal" (*id.*;

emphasis added), this case is not subject to Rule 57 "because the plaintiffs' primary relief is an

injunction to enjoin BOP from using the pentobarbital" to execute Plaintiffs.  *Id.*  Defendants'

characterization of Plaintiffs' request for declaratory relief as secondary to its request for

injunctive relief is baseless, but beside the point.  Defendants admit that Plaintiffs' Amended

Complaint seeks declaratory relief, admit that Fed. R. Civ. P. 57 empowers a court to "order a

speedy hearing of a declaratory judgment action," and do not cite a lick of authority for their

assertion that Rule 57 is inapplicable here.[4]

In addition, Defendants' contention that 28 U.S.C. § 1657(a) "does not contemplate

expedition in these circumstances" (Opp. at 6) is unsupported and insupportable.  In expressly

stating that "the court **shall** expedite," 28 U.S.C. § 1657(a) requires an expedited trial if Mr.

Nelson can demonstrate "good cause," defined to mean "if a right **under the Constitution or a**

**federal statute**…would be maintained in a factual context that indicates that a request for

expedited consideration has merit."  *Id.* (emphasis added).  28 U.S.C. § 1657(a) is not "merely

intended" to enable courts to control "crowded dockets" or to afford district judges broader

discretion over case management and scheduling as Defendants pretend.  Opp. at 7.  The

definition of "good cause" makes clear that the statute's legislative intent is to require an

expedited trial where it is necessary to protect constitutional rights and, as applied here, to

ensure that Mr. Nelson is afforded his constitutional right to an execution free of cruel and

---

[4] Defendants misleadingly rely on an incomplete quotation to support its contention that there is a "'dearth' of case law on Rule 57."  Opp. at 6 (citing 10B Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & Proc. Civ.* § 2768 (4th ed.)).  In fact, the complete quote states: "The provision of Rule 57 that the court 'may order a speedy hearing of a declaratory-judgment action,' *is so sensible and appropriate that there is a dearth of decided cases involving that provision*.  Nevertheless, it has been applied to effectuate the purpose of the rule and expedite a decision."  *Id.* (emphasis added).

unusual punishment.  In short, Mr. Nelson's "upcoming execution" most certainly provides "grounds for rushing to trial."

Finally, Defendants' assertion that "[t]he Supreme Court routinely denies stay-of-execution applications by state inmates while their challenges to the relevant state's method-of-execution challenges are pending" (Opp. at 7) is irrelevant.  It is precisely because this Court's preliminary injunction was vacated that Mr. Nelson requested an expedited trial.  Absent an expedited trial, Mr. Nelson will be precluded from challenging the 2019 Execution Protocol because Defendants refuse to voluntarily postpone the execution (even for just a few months) pending a trial on the merits.[5]

### C.   Defendants' Reliance On Their Motion To Dismiss Is A Red Herring.

Defendants contend that a trial is "inappropriate" because (they presumptuously predict) Defendants will prevail on their motion to dismiss Count II of the Amended Complaint. Opp. at 8-12.  According to Defendants, the Supreme Court "has already considered the same expert opinions that [Mr.] Nelson says warrant a trial to reconsider, and the Court has expressly determined that he is unlikely to succeed."  *Id.* at 8.  Defendants' arguments are misplaced.

### 1.   Defendants' Motion To Dismiss Will Be Addressed On An Accelerated Schedule.

The Court ordered expedited briefing on Defendants' motion to dismiss Count II of the Amended Complaint so that Defendants' motion will be *sub judice* next week.  Obviously, if the Court dismisses Count II of the Complaint, this Motion (subject to any appeals) would be rendered moot.  By the same token, however, if the Court denies Defendants' motion to dismiss

---

[5] Defendants' assertion that Mr. Nelson could have acted sooner to seek an expedited trial, and that the Motion "is but another last-minute request of the sort that the Supreme Court has expressly admonished" (Opp. at 8) is unavailing.  Defendants ignore the fact that this Court granted two preliminary injunctions in Plaintiffs' favor.  Mr. Nelson moved with appropriate dispatch in seeking an expedited trial after those injunctions were vacated, and Defendants proceeded with those executions.

Count II of the Complaint, the Court will need to address the merits of Count II, a fact that obviously augurs in favor of granting Mr. Nelson's request for an expedited trial.  In other words, Defendants' reliance on their motion to dismiss as a basis to deny the request for an expedited trial again puts the cart before the horse.

As ordered by the Court, Mr. Nelson will submit his opposition to Defendants' motion to dismiss (in a single, consolidated brief with the other Plaintiffs) on Monday, and explain therein at length how Plaintiffs (including Mr. Nelson) have alleged a colorable Eighth Amendment violation.  If Defendants' motion to dismiss is denied, Mr. Nelson's Eighth Amendment claim will become ripe for adjudication.

Defendants' assertion that the Supreme Court's vacatur of this Court's preliminary injunction is determinative of whether Plaintiffs have stated a claim upon which relief can be granted is not correct.  As this district noted in *Ramirez v. U.S. Immigration & Customs Enf't*, 338 F. Supp. 3d 1, 20 n.1 (D.D.C. 2018), "the Court does not regard its prior [preliminary injunction] determinations as binding for purposes of assessing Defendants' Motion to Dismiss. Rather, . . . the Court finds dismissal unwarranted based on consideration of the record and arguments presently before the Court."  Indeed, in reviewing a district court's conclusion as to likelihood of success, "[t]here are occasions ... when it is appropriate [for an appellate court] to proceed further and address the merits" directly.  *Munaf v. Geren*, 553 U.S. 674, 689-92, 128 S.Ct. 2207, 171 L.Ed.2d 1 (2008).  Since the Supreme Court could have, but did not, "address the merits" of Plaintiffs' Eighth Amendment violation, it would be inappropriate for this Court to draw the conclusion from the Supreme Court's opinion that Plaintiffs have not stated a claim as a matter of law.  If the Supreme Court had reached that conclusion, it could have simply addressed the claim on the merits and ended the litigation with respect to that count.  It did not do so.

7

Moreover, a motion for a preliminary injection and a motion to dismiss are subject to different standards.  A motion to dismiss under Rule 12(b)(6) seeks to test the legal sufficiency of a complaint, *not* "a plaintiff's ultimate likelihood of success on the merits."  *United States v. Ghana Soc. Mktg. Found.*, Civil Action No. 11-418 (RC), 2012 WL 13076832, at *1 (D.D.C. Aug. 8, 2012); *Beck v. U.S. Gov't*, 318 F. Supp. 3d 55, 60 (D.D.C. 2018) (Chutkan, J.), *aff'd*, 777 F. App'x 525 (D.C. Cir. 2019).  "In considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court must construe the complaint in the light most favorable to the plaintiffs and 'must *assume the truth* of all well-pleaded allegations.'"  *Odom v. Dist. of Columbia*, 248 F. Supp. 3d 260, 264 (D.D.C. 2017) (Chutkan, J.) (emphases added) (citation omitted).  In addition, on a 12(b)(6) motion to dismiss, the "may consider the facts alleged in the complaint, documents…incorporated by reference in the complaint, or documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by the parties."  Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007); *Judicial Watch, Inc. v. FBI*, Civil Action No. 18-2316 (RC), 2019 WL 4194501, *5 (D.D.C. Sept. 4, 2019) (citations omitted).  Here, as discussed below, the well-pleaded allegations of the Amended Complaint indisputably allege an Eighth Amendment violation.

## 2. Defendants' Arguments About Count II Are Factually and Legally Baseless.

Defendants argue that: (a) that "[c]onducting a trial for the same plaintiffs' experts to reiterate their opinions would serve no purpose" because, according to Defendants, "the question is whether…the inmates have established an 'objectively intolerable risk of harm that prevents prison officials from pleading that they were subjectively blameless for purposes of the Eighth Amendment" (Opp. at 9-10); (b) "even if the plaintiffs' allegations regarding pulmonary edema are credited, they do not allege an Eighth Amendment violation" (*id.* at 10); and (c) a trial "is not warranted because plaintiffs have not alleged an alternative method of execution

that is feasible, readily implemented, and would significantly reduce a substantial risk of severe harm (*id.* at 11). Each of those arguments fails.

Contrary to Defendants' position, the "question" now is whether, accepting the allegations of the Amended Complaint as true, Plaintiffs have sufficiently alleged that the 2019 Execution Protocol presents a "substantial risk of serious harm" in violation of the Eighth Amendment, and that "alternative method[s] of execution that will significantly reduce the risk of serious pain" are both "feasible and readily implemented." *Glossip v. Gross*, 135 S. Ct. 2726, 2737 (2015). On that (the proper) "question," as will be explained further in Plaintiffs' opposition to the motion to dismiss, there can be no genuine debate.

Plaintiffs' Amended Complaint alleges that the 2019 Protocol "is virtually certain to cause prisoners excruciating suffering through their awareness of the sensations of suffocation and drowning caused by pulmonary edema." *See*, *e.g.*, ECF No. 92, Am. Compl., ¶83. Specifically, Plaintiffs allege that injection of the high dose of pentobarbital required by the 2019 Execution Protocol "will cause 'flash' or non-cardiogenic pulmonary edema 'virtually instantaneous[ly['." *Id.*, ¶ 76. Flash pulmonary edema "causes an 'excruciating' experience comparable to drowning." *Id.*, ¶ 78. Because "flash pulmonary edemas occurs 'virtually immediately during and after high-dose barbiturate injection'… [i]t is therefore 'extremely likely' that prisoners executed with pentobarbital will experience sensations of drowning and suffocation when they die." *Id.*, ¶ 80. "It is likewise 'extremely likely' that prisoners who are injected with five grams of pentobarbital…will remain 'capable of feeling pain, terror, and suffocation," and "it is a 'virtual medical certainty, that most, if not all, prisoners will experience excruciating suffering, including sensations of drowning and suffocation, as a result of [the] effect of IV injection of 5 grams of pentobarbital." *Id.* These allegations are supported by science, sworn testimony of medical experts, witness reports of executions, and reports of

autopsies of individuals executed by pentobarbital. *See, e.g.*, *id.*, ¶ 74 (citing Decl. of Gail Van Norman, M.D., at 7 (Nov. 11, 2019), ECF No. 24); *Id.*, ¶ 75 (citing Decl. of Mark A. Edgar, M.D., at 19 (Oct. 24, 2019), ECF No. 26-12), and *Id.*, ¶¶ 76-86.[6]

In the face of these allegations, Defendants assert that "even if the plaintiffs' allegations regarding pulmonary edema are credited, they do not allege an Eighth Amendment violation." Opp. at 10. Specifically, according to Defendants, "[s]imply because an execution method may result in pain, either by accident or as an inescapable consequence of death, does not establish the sort of 'objectively intolerable risk of harm' that qualifies as cruel and unusual." *Id.* (citations omitted). However, as the summary above illustrates, Defendants are merely mischaracterizing Plaintiffs' Amended Complaint. Plaintiffs are not alleging that the execution method "may result in pain." Plaintiffs have alleged that there is a "virtual medical certainty" that prisoners will experience "excruciating suffering."

In that regard, Defendants' reliance on *In re Ohio Execution Protocol Litig.*, 946 F.3d 287, 290 (6th Cir. 2019) is misguided. According to Defendants, that case "recognized that the risk of pulmonary edema during an Ohio lethal injection was not the type of 'constitutionally cognizable,' 'severe,' pain that could support an Eighth Amendment claim." Opp. at 10. As this Court noted, there, the court held that the plaintiff had failed to provide "evidence showing that a person deeply sedated by a 500 milligram dose of midazolam is still 'sure or very likely' to experience an unconstitutionally high level of pain." ECF No. 135, Memo Opinion at 11.

---

[6] Defendants assert that "[p]laintiffs have failed to adequately allege a *scientific consensus* to the contrary," and that "[t]heir reliance on the opinion of a single physician-Dr. Gail Van Norman—is not sufficient to satisfy their pleading burden." Opp. at 10. That argument is both false and irrelevant. Defendants do not cite any cases for the untenable notion that Plaintiffs must somehow demonstrate a "scientific consensus" in their pleading. Moreover, contrary to Defendants' assertion that Plaintiffs rely "on the opinion of a single physician" (*Id.*), Plaintiffs' Amended Complaint cites to not only Dr. Van Norman's expert declaration (*e.g.*, ECF No. 92, Am. Compl., ¶ 74) but to three other medical and scientific experts, Dr. Edgar (*e.g.*, *id.*, ¶ 75), Dr. Almgren (*e.g.*, *id.*, ¶ 85), and Dr. Stevens (*id.*, ¶ 114).

Here, in contrast, Plaintiffs "amassed an extensive factual record," including experts concluding "that there is a 'virtual medical certainty' that the 2019 Protocol [using a high dose of pentobarbital] will result in 'excruciating suffering.'" *Id.* (citing Decl. of Van Norman at 7).

In any event, the 6th Circuit's decision merely speculated that the risk of feeling the sensation of drowning or asphyxiation "looks a lot like the risks of pain associated with hanging." *In re Ohio Execution Protocol Litig.*, 946 F.3d 287, 290 (6th Cir. 2019). That does not establish that acute pulmonary edema is an insubstantial hazard as a matter of law. More importantly, that case involved a three-drug protocol in which midazolam is the first drug. Pentobarbital carries a highly alkaline pH of 10.0 or higher, and it causes flash pulmonary edema based on the direct toxic effect of alkaline pentobarbital solution on the lung capillaries. ECF No. 92, Am. Compl., ¶ 75. Midazolam, by contrast, carries a strongly acidic pH of 3.0 to 3.5 instead of a highly alkaline one. *See In re Ohio Execution Protocol Litig.*, Case No. 2:11-cv-1016, 2019 WL 244488, at *29 (S.D. Ohio Jan. 14, 2019), *aff'd*, 946 F.3d 287 (6th Cir. 2019). As Defendants' expert, Dr. Antognini, testified in the Ohio case, a prisoner's blood is likely to buffer the acidic midazolam, thus diminishing the likelihood and severity of damage to lung tissue. *Id.* at *58. Thus, not only are pentobarbital and midazolam different drugs that work by different mechanisms and carry different effects of different severity, but the risk of pulmonary edema associated with pentobarbital is worse than that associated with midazolam.[7]

---

[7] Defendants' reliance on *Bucklew v. Precythe*, 139 S. Ct. 1112 (2019) is also misplaced. In *Bucklew*, the Court did not consider a facial challenge to the use of pentobarbital, and it did not have before it a factual record containing the latest medical and scientific evidence regarding flash pulmonary edema. The Court therefore did not address the risk of flash pulmonary edema at all. Rather, the prisoner in that case conceded that "the State's lethal injection protocol is constitutional in most applications," arguing only that his unique medical condition (cavernous hemangioma) made it likely that he would suffer unconstitutional pain from pentobarbital. *Id.* at 1118. Moreover, the Supreme Court found that Bucklew's claim largely rested on speculation about "exactly what procedures the State planned to use," even though he "had ample opportunity to conduct discovery and develop a factual record" before the State moved for summary judgment. *Id.* at 1131; *see id.* at 1122. Plaintiffs here, by contrast, have never

Finally, Defendants' contention that a trial is not warranted "because the plaintiffs have not alleged an alternative method of execution that is feasible, readily implemented, and would significantly reduce a substantial risk of severe harm" (Opp. at 11) again ignores the allegations of the Amended Complaint, which, for present purposes, is controlling.

As alleged in the Amended Complaint, the Government could administer a pre-dose of an opioid pain or analgesic medication, like morphine or fentanyl.  ECF No. 92, Am. Compl., ¶ 114.  Unlike pentobarbital, these drugs have pain-relieving properties.  Although Defendants argue that this is not a feasible alternative because it has not been adopted in any other states (Opp. at 11), that misstates the relevant standard and the facts.  As Justice Kavanaugh explained in *Bucklew*, "all nine Justices" agreed that "the alternative method of execution need not be authorized under current state law." 139 S. Ct. at 1136 (Kavanaugh, J., concurring).  In any event, Nebraska has in fact used a pre-dose opioid as part of its lethal-injection protocol (ECF No. 135, Memo Opinion at 15), and Georgia and Idaho also administer a pre-dose sedative as part of their one-drug protocols. AR11, 52.  Indeed, those facts put the lie to Defendants assertion that "choosing not to be the first [State] to experiment with a new method of execution is a legitimate reason to reject it."  Opp. at 11.  As these other states illustrate, the use of an opioid in a "pentobarbital protocol" is not novel, and Defendants would not be the first to use that method.

In addition, Plaintiffs alleged in the Amended Complaint that Defendants could instead execute Plaintiffs by firing squad.  Three states currently authorize this execution method; it is feasible and readily implemented; and both recent and historical evidence suggest this "would significantly reduce the risk of severe pain."   Neither *Baze* nor *Glossip* "suggest that

---

made such a concession.  And they have presented ample medical evidence, even though they have not yet received the chance to conduct full discovery.

traditionally accepted methods of execution—such as hanging, the firing squad, electrocution, and lethal injection—are necessarily rendered unconstitutional as soon as an arguably more humane method like lethal injection becomes available." *Bucklew*, 139 S. Ct. at 1125. Moreover, unlike the alternative proposed by *Bucklew*, this alternative method of execution is not "an entirely new method" that has "never been used to carry out an execution" or lacks a "track record of successful use." *Id.* at 1130 (internal quotation marks omitted).

According to Defendants, "BOP was entitled" to conclude that "lethal injection is more dignified than firing squad." Opp. at 12. Putting aside the irony of Defendants pointing to the dignity of executions given the utter lack of respect it displayed for the dignity of inmates in its recent executions (including keeping a prisoner strapped to the execution gurney for hours), Defendants have not established that any such conclusion was ever reached, let alone considered. Defendants lack a "legitimate penological reason" for refusing to implement this readily available alternative. *Bucklew*, 139 S. Ct. at 1125.

## CONCLUSION

For all the foregoing reasons and the reasons set forth in the Motion, Plaintiff Keith Nelson respectfully requests that this Court issue an order granting Mr. Nelson's request for an expedited trial on Count II of the Amended Complaint and scheduling a trial on the merits beginning on or about August 19, 2020 or, in the alternative, on such later date convenient to the Court in the event the Court grants Mr. Nelson's *sub judice* motion to strike the execution notice and vacate the execution date (ECF No. 101) and Mr. Nelson's execution is rescheduled.

Dated: August 7, 2020              Respectfully submitted,

                                   */s/ Harry P. Cohen*
                                   Harry P. Cohen (admitted *pro hac vice*)
                                   Michael K. Robles (admitted *pro hac vice*)
                                   James K. Stronski (admitted *pro hac vice*)
                                   Brian J. O'Sullivan (admitted *pro hac vice*)

Crowell & Moring LLP
590 Madison Avenue
New York, NY 10022
(212) 223-4000
(212) 223-4134(fax)
hcohen@crowell.com
mrobles@crowell.com
jstronski@crowell.com
bosullivan@crowell.com

Kathryn L. Clune
Crowell & Moring LLP
1001 Pennsylvania Avenue, NW
Washington D.C. 20004-2595
(202) 624-2705
kclune@crowell.com

Jon M. Sands
Dale A. Baich
Jennifer M. Moreno
Federal Public Defender
District of Arizona
850 West Adams Street, Suite 201
Phoenix, Arizona 85007
602-382-2816
602-889-3960 (fax)
dale_baich@fd.org
jennifer_moreno@fd.org

*Counsel for Plaintiff Keith Nelson*