UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|   |   |
|---|---|
| In the Matter of the<br>Federal Bureau of Prisons' Execution<br>Protocol Cases,<br><br>LEAD CASE: *Roane et al. v. Barr*<br><br>THIS DOCUMENT RELATES TO:<br><br>*Nelson v. Barr et al.*, 20-cv-557 | Case No. 19-mc-145 (TSC) |

### DEFENDANTS' OPPOSITION TO PLAINTIFF
### KEITH NELSON'S EMERGENCY CROSS-MOTION FOR
### SUMMARY JUDGMENT ON FDCA CAUSES OF ACTION

This Court should grant Defendants' motion for summary judgment, ECF No. 170, and deny Plaintiff Keith Nelson's cross-motion for summary judgment, ECF No. 180, on Counts VIII and XI of the Amended Complaint, which allege that the Federal Bureau of Prisons' execution protocol ("Protocol") is arbitrary and capricious and contrary to law because it violates the Federal Food, Drug, and Cosmetic Act ("FDCA"), and on Count X, which alleges that the Commissioner of Food and Drugs of the Food and Drug Administration ("FDA") has failed to exercise his enforcement authority under the FDCA against BOP.

These FDCA-related causes of action raise only pure issues of law on which the Supreme Court has already indicated that Defendants are likely to prevail. It did so by vacating, without any noted dissent, this Court's preliminary injunction, ECF No. 145, issued in favor of Nelson and three other inmates on the basis that the Protocol likely violated the FDCA. *Barr v. Purkey*, No. 20A10, 591 U.S. ___ (July 16, 2020) (per curiam) ("FDCA vacatur order").[1]  Nelson seeks to

---

[1] *Compare with Barr v. Purkey*, No. 20A9, 2020 WL 4006809, 591 U.S. ___ (July 16, 2020) (per curiam) (vacating this Court's preliminary injunction on Purkey's *Ford* claim over four dissents)

avoid the strong implication of that vacatur by arguing that "a vacatur on appeal of a preliminary injunction is limited to a review of the preliminary injunction on that record." ECF No. 180 at 5 n.2. While that may be true as a general matter, Nelson does not identify any new record evidence that was unavailable to him in the preliminary injunction proceedings that would cast doubt on the vacatur. Nor could he, for the questions presented, as Nelson concedes, *see id*. at 3, are purely legal ones: whether the FDA has jurisdiction under the FDCA to regulate articles intended for use to bring about death in the context of capital punishment, such as the pentobarbital at issue here, and assuming the FDA does, whether Nelson has a private right of action to enforce the FDCA against BOP. The Supreme Court's vacatur necessarily reflects its view that Nelson is unlikely to prevail as a legal matter.

That is unsurprising because Nelson's arguments are foreclosed by Supreme Court precedent. Specifically, *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120 (2000), teaches that the FDCA's regulatory scheme—aimed at assuring the safety and efficacy of "drugs" and "devices"—does not apply to substances intended to effectuate a death sentence. A contrary finding would produce the implausible result that hundreds of executions carried out by lethal injection by States and the federal government between the late 1970s and this past July without complying with the FDCA's prescription requirement were unlawful. And in any event, contrary to Nelson's argument, "[t]he FDA's decision not to take . . . enforcement actions" to prevent the use of drugs intended for use in lethal injection is "not subject to judicial review under the APA." *Heckler v. Chaney*, 470 U.S. 821, 837-38 (1985); *see also* 5 U.S.C. § 701(a)(2).

## ARGUMENT

### I. BOP'S PROTOCOL IS NOT CONTRARY TO THE FDCA, NOR IS IT ARBITRARY AND CAPRICIOUS

Nelson's cross-motion relies heavily on this Court's now-vacated FDCA preliminary injunction order, *see* ECF No. 145, and the D.C. Circuit's order denying Defendants' motion to

---

and *Barr v. Lee*, No. 20A8, 2020 WL 3964985, 591 U.S. ___ (July 14, 2020) (per curiam) (vacating this Court's preliminary injunction on Eighth Amendment grounds over four dissents).

stay the injunction, *In re Federal Bureau of Prisons Execution Protocol Cases*, No. 20-5206, Doc. No. 1851933, at 1-3 (D.C. Cir. July 15, 2020). Such reliance is misplaced in light of the Supreme Court's order vacating the preliminary injunction. *Purkey*, No. 20A10.

Moreover, as Defendants' Motion for Summary Judgment demonstrates, *see* ECF No. 170 at 38-43, both of the rulings Nelson relies on placed undue significance on the D.C. Circuit's decision in *Cook v. FDA*, 733 F.3d 1 (D.C. Cir. 2013). The issue in *Cook* was whether the FDA could exercise enforcement discretion over shipments of sodium thiopental that were being imported by various state departments of corrections for use in executions. Importantly, "the FDA [had] conceded before the district court that the … shipments" were an "unapproved new drug." *Id.* at 11; *see generally* Office of Legal Counsel Op., Whether the Food & Drug Admin. Has Jurisdiction over Articles Intended for Use in Lawful Executions (May 3, 2019) ("OLC Op."), 2019 WL 2235666 at *14, AR 958. *Cook*, therefore, had no occasion to address the antecedent question of whether FDA has jurisdiction over articles intended for use in capital punishment. *See United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 38 (1952) ("The effect of the omission was not there raised in briefs or argument nor discussed in the opinion of the Court. Therefore, the case is not a binding precedent on this point."); *Legal Servs. Corp. v. Velazquez*, 531 U.S. 533, 557 (2001) (Scalia, J. dissenting) ("Judicial decisions do not stand as binding 'precedent' for points that were not raised, not argued, and hence not analyzed."); *see also Camara v. Mastro's Restaurants LLC*, 340 F. Supp. 3d 46, 54 (D.D.C. 2018) ("Of course, a decision 'is not a binding precedent' on an issue not pressed by the parties or passed on by the Court." (quoting *L.A. Tucker*, 344 U.S. at 38)), *aff'd*, 952 F.3d 372 (D.C. Cir. 2020).

In fact, as Nelson notes, *see* ECF No. 180 at 5-6, the D.C. Circuit, in denying Defendants' motion to stay the FDCA preliminary injunction, specifically noted that "the Supreme Court ha[d] expressly declined to resolve this 'thorny' jurisdictional question." *Execution Protocol Cases*, No. 20-5206, Doc. No. 1851933, at 3 (quoting *Chaney*, 470 U.S. at 828). Of course, following the D.C. Circuit's order, the Supreme Court vacated the FDCA preliminary injunction without noted dissent, strongly indicating that it would resolve that question in the Government's favor on the

merits (or, at a minimum, that Nelson has no right to sue the FDA for allegedly failing to enforce the statute against the BOP).

Indeed, Nelson's contrary position cannot be reconciled with the logic of *Brown & Williamson*, which held that the FDA lacked jurisdiction to regulate customarily marketed tobacco products. 529 U.S. at 134–37. The Supreme Court reasoned that if such tobacco products were regulated as "drugs" or "devices," the FDCA would prohibit their sale because such products could not be found to be "safe" or "effective" for their intended use. *Id.* at 136. However, Congress's post-FDCA legislative enactments conveyed a clear intent that "cigarettes and smokeless tobacco [would] continue to be sold in the United States." *Id.* at 139. And, the Court explained, "the meaning of one statute may be affected by other Acts, particularly where Congress has spoken subsequently and more specifically to the topic at hand." *Id*. at 133. "The inescapable conclusion," the Court found, "is that there is no room for tobacco products within the FDCA's regulatory scheme. If they cannot be used safely for any therapeutic purpose, and yet they cannot be banned, they simply do not fit." *Id*. at 143.[2]

The inescapable conclusion of applying *Brown & Williamson* to the lethal injection context is that a drug intended for use to bring about death as part of an execution cannot be approved by the FDA as "safe and effective." *See* OLC Op., 2019 WL 2235666 at *4, AR 943 (citing *Chaney*, 470 U.S. at 827 (granting certiorari to review the "implausible" result that "the FDA is required to exercise its enforcement power to ensure that States only use drugs that are 'safe and effective' for human execution")); OLC Op., 2019 WL 2235666 at *8, AR 948 ("[T]here is no way products intended to carry out capital punishment could ever satisfy [a] . . . test[] under which 'a drug is unsafe if its potential for inflicting death . . . is not offset by the possibility of therapeutic benefit.'" (quoting *United States v. Rutherford*, 442 U.S. 544, 556 (1979))). If articles intended for use in bringing about death were regulated as "drugs" or "devices," the FDCA would prohibit their sale.

---

[2] Congress subsequently granted FDA authority specific to tobacco products in the Tobacco Control Act, 21 U.S.C. § 387 *et seq*.

529 U.S. at 134–37; *see also* OLC Op., 2019 WL 2235666 at *7, AR 947 ("If the FDCA applied to electric chairs, gallows, gas chambers, firearms used in firing squads, and substances used in lethal-injection protocols, the statute would effectively ban those articles.").

Indeed, "[s]everal provisions in the [FDCA] require the FDA to determine that the product itself is safe as used by consumers"—*i.e.*, that "the product's probable therapeutic benefits … outweigh its risk of harm." *Brown & Williamson*, 529 U.S. at 140; *see* 21 U.S.C. 355(b)(1), (d). That standard is inapposite for drugs intended to cause death as part of an execution. Even tobacco products, which the FDA found "might be effective in delivering certain pharmacological effects," were deemed "'unsafe' and 'dangerous' when used for these purposes" and, therefore, would be required to be banned under the FDCA if the FDA were deemed to have jurisdiction over such products. *Brown & Williamson*, 529 U.S. at 143. Just so for lethal injection drugs used for the purpose of carrying out a capital sentence. Just as with tobacco products, if such drugs intended to carry out executions were within the jurisdiction of the "the FDCA, the FDA would be required to remove them from the market." *Id*. at 135; *see also* OLC Op., 2019 WL 2235666 at *7, AR 947 (opining that the same would be true for "articles intended for use in executions").

But doing so would "contradict Congress' clear intent" under the FDPA. *Brown & Williamson*, 529 U.S. at 143. The FDPA requires the federal government to use the State's manner of execution. 18 U.S.C. § 3596(a). At the time of the FDPA's enactment in 1994, many states permitted execution exclusively by lethal injection, and lethal injection was the sole method of execution prescribed by federal regulation, 28 C.F.R. 26.3(a)(4); *see* 57 Fed. Reg. 56,536, 56,536 (Nov. 30, 1992) (identifying lethal injection as "increasingly … the method of execution in the states"). Yet Congress enacted the FDPA's detailed execution framework without referencing the FDCA. That is powerful evidence of the common-sense view that Congress did not intend drugs intended for use in lethal injection to be regulated under the FDCA in the respects relevant here. *Brown & Williamson*, 529 U.S. at 143 ("The 'classic judicial task of reconciling many laws enacted over time, and getting them to 'make sense' in combination, necessarily assumes that the implications of a statute may be altered by the implications of a later statute.'" (quoting *United*

5

*States v. Fausto*, 484 U.S. 439, 453 (1988)); *see also West v. Schofield*, 519 S.W.3d 550, 571 (Tenn. 2017) ("Clearly, the federal government does not consider those of its own executions that are conducted by lethal injection to violate a regulatory scheme for the prescription and use of controlled substances."). Likewise, the lack of any apparent objection from the executive, legislative, or judicial branches to the hundreds of state executions conducted by lethal injection of substances that have never been required to meet the FDCA's prescription requirements strongly reinforces this view. Today, all States that provide for a death penalty allow lethal injection as the primary if not the only method. Accordingly, any interpretation of the FDCA in the lethal injection context must take into account Congress's enactment of the FDPA and the use of lethal injection by the federal government and the States in hundreds of executions over multiple decades.

Citing *Brown & Williamson*, Nelson recognizes that "the 'core' legislative purpose of the FDCA is to ensure that a 'drug' is 'safe and effective for its intended use.'" ECF No. 180 at 4. He contends that this purpose can be served in this context by requiring BOP to obtain a prescription for pentobarbital. But he does not explain how a drug intended to be used to bring about death in the context of capital punishment can be made safe and effective through a prescription. Nor does he request an injunction that requires BOP to obtain a prescription. Rather, he seeks an injunction barring his execution altogether—a tacit acknowledgement that under his theory, even if the federal government had obtained a prescription, the prescription would be invalid, precluding his execution. *Cf.* Pls.' Mot. for Preliminary Injunction, ECF No. 102 at 32 n.19 ("To be sure, it is likely that the prescriptions obtained by these states do not comply with the requirements of the FDCA and CSA.").

Nor is it sufficient to say that simply because the government attempts to select a lethal injection drug that is humane, the drug must then be required to have its "probable therapeutic benefits . . . outweigh its risk of harm," *Brown & Williamson*, 529 U.S. at 140. The government's effort to make sure it chose a lethal injection protocol that is humane demonstrates its commitment to compliance with the Eighth Amendment. It does not demonstrate that a drug intended for use to execute an inmate has "probable therapeutic benefits . . . outweigh[ing] its risk of harm," *Id.* at

6

140, such that the drug could plausibly be subject to regulation under the FDCA. In the context of capital punishment, that test can never be met because the risk of harm can never be outweighed by any therapeutic benefits because death is the intended result.

Nelson also argues that Defendants' use of compounded pentobarbital violates the FDCA's "important limitations on outsourcing facilities" that produce compounded drugs. ECF No. 180 at 6. This argument also fails in light of the inapplicability of the FDCA, including its provisions regarding compounded drugs. Indeed, as this Court recognized in rejecting a related arbitrary-and-capricious challenge to the use of a compounded form of pentobarbital:

> Defendants' use of compounding pharmacies, . . . must be viewed in light of the Supreme Court's recognition that the government "can't be faulted for failing to use lethal injection drugs that it's unable to procure through good-faith efforts." *Bucklew v. Precythe*, 139 S. Ct. 1112, 1125 (2019) (citing *Glossip v. Gross*, 135 S. Ct. 2726, 2737–38 (2015). . . . [T]he Supreme Court has approved the use of a compounded form of pentobarbital where domestic supplies were unavailable, and Defendants' decision to do so was not arbitrary or capricious.

ECF No. 145 at 9. Under the circumstances this Court identified, it is implausible that the FDCA's provisions related to outsourcing facilities can be interpreted to ban the use of a compounded form of pentobarbital in carrying out capital sentences.

## II.     DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON COUNT X

Count X alleges that the Commissioner of Food and Drugs has "acted in an arbitrary and capricious manner by failing to exercise his authority to enforce the FDCA by not requiring the persons who will dispense the pentobarbital to have a valid registration . . . [or] a valid medical prescription." Am. Compl. ¶ 182, ECF No. 92. Although Nelson purports to cross-move on Count X, he fails to support his cross-motion on that claim with any argument. His cross-motion should be denied for that reason alone.

Moreover, Defendants are entitled to judgment on Count X because Nelson's claim is foreclosed by the fact, as explained above, that the FDA does not have the authority to regulate articles intended for use in capital punishment. And regardless, Plaintiffs' failure-to-enforce claim would be foreclosed by *Heckler v. Chaney*, 470 U.S. 821 (1985). As the Supreme Court explained

7

in *Chaney*, "[t]he FDA's decision not to take . . . enforcement actions" to prevent the use of drugs intended for use in lethal injection is "not subject to judicial review under the APA." 470 U.S. at 837-38; *see also* 5 U.S.C. § 701(a)(2).

Nor do sections 353(b)(1) and 353b of the FDCA—the provisions of the FDCA that the Protocol allegedly violates—reflect Congressional "intent to circumscribe agency enforcement discretion" and "provide[] meaningful standards for defining the limits of that discretion." *See Chaney*, 470 U.S. at 834. Section 353(b)(1) defines a circumstance in which a prescription drug is deemed to be "misbranded," but it provides no guidelines with respect to the exercise of FDA's enforcement discretion. Section 353b sets forth conditions under which drugs may be compounded for human use in an "outsourcing facility" without having to comply with certain of the FDCA's requirements. When a compounded drug does not comply with section 353b's conditions, section 355 provides the basis for enforcement, and the Supreme Court has already determined that section 355 does not provide law to apply. *See Chaney*, 470 U.S. at 835-36 (describing section 355 as "simply irrelevant to the agency's discretion to refuse to initiate proceedings."); *see also Jerome Stevens Pharm. Inc. v. FDA*, 402 F.3d 1249, 1258 (D.C. Cir. 2005) (plaintiff "fail[ed] to demonstrate how 21 U.S.C. § 355 . . . provide[s] guidelines for the exercise of" the agency's enforcement discretion).

Even apart from its failure to address whether articles intended for use in capital punishment are regulated under the FDCA at all, the D.C. Circuit's decision in *Cook* that *Chaney* does not preclude review of the FDA's enforcement choices under 21 U.S.C. § 381(a) regarding drugs manufactured in unregistered foreign establishments has no application here. The prescription and compounding provisions of the FDCA that Nelson invokes, *see* 21 U.S.C. §§ 353(b) and 353b, are distinct from Section 381's import provisions at issue in *Cook*, which the court concluded contained the sort of "specific 'legislative direction in the statutory scheme'" sufficient to overcome "the presumption against judicial review announced in *Chaney*." 733 F.3d at 6-7; *see Chaney*, 470 U.S. at 835 ("The [FDCA's] enforcement provisions . . . commit complete discretion to the Secretary to decide how and when they should be exercised"). *Cook* did not

purport to abrogate *Chaney* and cannot be read expansively in this context, given *Cook*'s singular focus on an import provision, 21 U.S.C. § 381, which is not at issue here.

Furthermore, Nelson's inability to force the FDA to act does not mean that he may seek relief for BOP's supposed violations of the FDCA. On the contrary, in the FDCA itself, Congress specified that "all … proceedings for the enforcement, or to restrain violations, of this chapter shall be by and in the name of the United States." 21 U.S.C. § 337(a). This requirement forecloses actions by private parties seeking to restrain third parties' putative violations of the FDCA's general strictures, leaving "the United States with nearly exclusive enforcement authority" over those matters. *POM Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 102, 109 (2014). The federal government clearly does not believe that it is violating the FDCA by using pentobarbital to conduct lethal injections, and that judgment is reserved to the Executive Branch under the FDCA's plain terms. Nelson cannot end-run the non-reviewability of the FDA's enforcement decisions by invoking the APA against BOP. Any conclusion to the contrary cannot be squared with the Supreme Court's instructions in *Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 351 (1984), that APA actions are precluded by federal statutes even where the statutes implicitly foreclose certain private-party enforcement, let alone where, as here, they expressly do so.[3]

## CONCLUSION

For the foregoing reasons, this Court should deny Nelson's Cross-Motion for Summary Judgment on Counts VIII, X, and XI and instead enter judgment for Defendants on those claims.

---

[3] Notably, in denying Defendants' motion to vacate the FDCA preliminary injunction, the D.C. Circuit did not address the failure-to-enforce claim at issue in Count X, and its allowance of the APA claim is not binding because it was vacated and has no precedential value. *See Execution Protocol Cases*, No. 20-5206, Doc. No. 1851933, at 3 ("Finally, the government contends that plaintiffs cannot argue that the Protocol is unlawful because only the FDA may enforce the FDCA. But plaintiffs do not seek preliminary injunction on an enforcement claim, they claim that the Protocol is contrary to law under the APA.").

Dated:  August 10, 2020

Respectfully submitted,

| | |
|---|---|
| MICHAEL R. SHERWIN<br>Acting United States Attorney | DAVID M. MORRELL<br>Deputy Assistant Attorney General |
| DANIEL F. VAN HORN<br>Civil Chief, U.S. Attorney's Office | PAUL R. PERKINS<br>Special Counsel |
| ALAN BURCH (D.C. Bar 470655)<br>Assistant United States Attorney<br>U.S. Attorney's Office<br>for the District of Columbia<br>Washington, D.C. 20530<br>202-252-2550<br>alan.burch@usdoj.gov | _/s/*Jean Lin*_____<br>JEAN LIN (NY Bar 4074530)<br>Special Litigation Counsel<br>JONATHAN KOSSAK (D.C. Bar 991478)<br>CRISTEN C. HANDLEY (MO Bar 69114)<br>Trial Attorneys<br>Civil Division<br>Federal Programs Branch<br>Civil Division, Department of Justice<br>1100 L Street, N.W.<br>Washington, D.C. 20005<br>(202) 514-3716<br>Jean.lin@usdoj.gov<br>Jonathan.kossak@usdoj.gov<br>Cristen.handley@usdoj.gov<br><br>*Attorneys for Defendants* |

**CERTIFICATE OF SERVICE**

I hereby certify that on August 10, 2020, I caused a true and correct copy of foregoing to be served on all counsel of record via the Court's CM/ECF system. Pursuant to this Court's August 20, 2019 Order, below is a list of all plaintiffs' counsel of record (as most recently identified in the signature pages of the Consolidated Amended Complaint, ECF No. 92):


Alan E. Schoenfeld (admitted *pro hac vice*)
Ryan M. Chabot (admitted *pro hac vice*)
WILMER CUTLER PICKERING HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, New York 10007
(212) 230-8880
Alan.Schoenfeld@WilmerHale.com
Ryan.Chabot@WilmerHale.com

Andres C. Salinas (DC Bar No. 156118)
WILMER CUTLER PICKERING HALE AND DORR LLP
1875 Pennsylvania Avenue NW
Washington, DC 20006
(202) 663-6289
Andres.Salinas@WilmerHale.com

*Counsel for Wesley I. Purkey*

Joshua C. Toll
D.C. Bar No. 463073 King & Spalding LLP
1700 Pennsylvania Avenue, N.W.
Washington, DC 20006
(202) 737-8616
jtoll@kslaw.com

Margaret O'Donnell
P.O. Box 4815
Frankfort, KY 40604
(502) 320-1837
mod@dcr.net

*Counsel for Plaintiff Anthony Battle*

Ginger D. Anders (Bar No. 494471)
Jonathan S. Meltzer (Bar No. 888166546)
Brendan Gants (Bar No. 1031419)
MUNGER, TOLLES & OLSON LLP
1155 F Street N.W., Seventh Floor
Washington, D.C. 20004-1357
(202) 220-1100

*Counsel for Plaintiff Brandon Bernard*


Alex Kursman, Assistant Federal Defender
Shawn Nolan, Chief, Capital Habeas Unit
Federal Community Defender Office, E.D. Pa.
601 Walnut Street, Suite 545 West
Philadelphia, PA 19106
Telephone - 215-928-0520
Email – alex_kursman@fd.org

*Counsel for Plaintiff Alfred Bourgeois*


Joseph Luby, Assistant Federal Defender
Federal Community Defender Office, E.D. Pa.
 601 Walnut Street, Suite 545 West
Philadelphia, PA 19106
Telephone - 215-928-0520
Email – joseph_luby@fd.org

*Counsel for Plaintiff Chadrick Fulks*


Amy Lentz (DC Bar No. 990095)
Steptoe & Johnson, LLP
1300 Connecticut Avenue NW
Washington, DC 20036
202.429.1320

*Counsel for Plaintiff Orlando Hall*


Scott W. Braden
Assistant Federal Defender
Arkansas Federal Defender Office
Ark Bar Number 2007123
1401 West Capitol, Suite 490
Little Rock, Arkansas 72201
(501) 324-6114

Scott_Braden@fd.org

Jennifer Ying (DE #5550)
Andrew Moshos (DE #6685)
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 N. Market St.
P.O. Box 1347
Wilmington, Delaware 19801
(302) 658-9300
jying@mnat.com
amoshos@mnat.com

*Counsel for Plaintiff Norris G. Holder, Jr.*

Jon Jeffress
KaiserDillon PLLC
1099 14th Street NW
8th Floor West
Washington, DC 20005
Telephone - 202-640-2850
Email - jjeffress@kaiserdillon.com

Timothy Kane, Assistant Federal Defender
Shawn Nolan, Chief, Capital Habeas Unit
Federal Community Defender Office, E.D. Pa.
601 Walnut Street, Suite 545 West
Philadelphia, PA 19106
Telephone - 215-928-0520
Email – timothy_kane@fd.org
Email – shawn_nolan@fd.org

*Counsel for Plaintiff Dustin Lee Honken*

Donald P. Salzman (D.C. Bar No. 479775)
Charles F. Walker (D.C. Bar No. 427025)
Steven M. Albertson (D.C. Bar No. 496249)
Skadden, Arps, Slate, Meagher & Flom LLP
1440 New York Avenue, N.W.
Washington, D.C. 20005
(202) 371-7983
donald.salzman@skadden.com

*Counsel for Plaintiff Corey Johnson*

David S. Victorson
Hogan Lovells US LLP
Columbia Square
555 13th Street NW
Washington, DC  20004
(202) 637-5600
(202) 637-5910 (fax)
david.victorson@hoganlovells.com

Pieter Van Tol (admitted *pro hac vice*)
Hogan Lovells US LLP
390 Madison Avenue
 New York, NY 10017
(212) 918-3000
(212) 918-3100 (fax)
pieter.vantol@hoganlovells.com

*Counsel for Plaintiff Daniel Lewis Lee*


Kathryn L. Clune
Crowell & Moring LLP
1001 Pennsylvania Avenue NW
Washington D.C. 20004-2595
(202) 624-2705
kclune@crowell.com

Harry P. Cohen (pro hac vice application pending)
Michael K. Robles (pro hac vice application pending)
James Stronski (pro hac vice application pending)
Crowell & Moring LLP
590 Madison Avenue New York, NY 10022
(212) 223-4000
(212) 223-4134(fax)
hcohen@crowell.com
mrobles@crowell.com
jstronski@crowell.com


Jon M. Sands (pro hac application to be filed)
Dale A. Baich (pro hac application to be filed)
Jennifer M. Moreno
Federal Public Defender
District of Arizona
850 West Adams Street, Suite 201
Phoenix, Arizona 85007
602-382-2816

602-889-3960 (fax)
dale_baich@fd.org
jennifer_moreno@fd.org

*Counsel for Plaintiff Keith Nelson*


Shawn Nolan, Chief, Capital Habeas Unit
Federal Community Defender Office, E.D. Pa.
 601 Walnut Street, Suite 545 West
Philadelphia, PA 19106
Telephone - 215-928-0520
Email – timothy_kane@fd.org
Email – shawn_nolan@fd.org

*Counsel for Plaintiff Jeffrey Paul*


Paul F. Enzinna
D.C. Bar No. 421819
Ellerman Enzinna PLLC
1050 30th Street, NW
Washington, DC 20007
202.753.5553

*Counsel for Plaintiff James H. Roane, Jr.*


Amy Karlin
Interim Federal Public Defender
Celeste Bacchi
Jonathan C. Aminoff
Deputy Federal Public Defenders
321 E. Second Street
Los Angeles, CA 90012
(213) 894-2854

*Counsel for Plaintiff Julius O. Robinson*

Gerald W. King, Jr. Ga. Bar No. 140981
Jeffrey Lyn Ertel Ga. Bar No. 249966
FEDERAL DEFENDER PROGRAM, INC.
101 Marietta Street, Suite 1500
Atlanta, Georgia 30303
404-688-7530
(fax) 404-688-0768
Gerald_King@fd.org
Jeff_Ertel@fd.org

Stephen Northup
VSB #16547
Troutman Sanders LLP
P.O. Box 1122
Richmond, Virginia 23218-1122
(804) 697-1240
(fax) (804) 698-5120
steve.northup@troutmansanders.com

Frederick R. Gerson VSB #39968
Bank Of America Center
1111 East Main Street, 16th Floor Richmond,
Virginia 23219
(804) 482-1121
fgerson@dagglaw.com

*Counsel for Richard Tipton, III.*

Evan Miller (DC Bar # 219310)
Vinson & Elkins LLP
2200 Pennsylvania Avenue, NW
Suite 500 West
Washington, D.C. 20037
(202) 639-6605
(202) 478-1815 (fax)
emiller@velaw.com

*Counsel for Bruce Webster*

                */s/Jean Lin*
                Attorney for Defendants