**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

In the Matter of the )
Federal Bureau of Prisons' Execution )
Protocol Cases, )
)
LEAD CASE: _Roane et al. v. Barr_ )      Case No. 19-mc-145 (TSC)
)
)
THIS DOCUMENT RELATES TO: )
)
All Cases )
_____)

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**
**PLAINTIFFS' NON-APA CLAIMS AND**
**FOR SUMMARY JUDGMENT REGARDING PLAINTIFFS' APA CLAIMS**

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................................ 1

ARGUMENT .............................................................................................................................. 2

I.      PLAINTIFFS FAIL TO STATE AN EIGHTH AMENDMENT CLAIM ......................... 2

        A.      The Protocol Does Not Pose An Objectively Intolerable Risk of Harm ............... 2

        B.      Plaintiffs Fail to Allege An Alternative Method of Execution ............................. 7

II.     PLAINTIFFS FAIL TO STATE A CLAIM FOR DELIBERATE INDIFFERENCE ....... 9

III.    PLAINTIFFS FAIL TO STATE A DUE PROCESS CLAIM ......................................... 10

IV.     PLAINTIFFS FAIL TO STATE A CLAIM OF DENIAL OF COUNSEL ACCESS ..... 12

V.      PLAINTIFFS FAIL TO STATE A CLAIM FOR UNCONSTITUTIONAL
        DELEGATION OF LEGISLATIVE POWER .................................................................. 14

VI.     BOP'S ADOPTION OF THE PROTOCOL IS NOT ARBITRARY OR CAPRICIOUS 15

VII.    THE PROTOCOL IS CONSISTENT WITH THE FDPA ................................................ 17

        A.      The Protocol Is Consistent with Section 3596(a) .................................................. 17

        B.      The Protocol Does Not Conflict with Any Relevant State Law ........................... 18

VIII.   DEFENDANTS ARE ENTITLED TO JUDGMENT AS TO THE CSA CLAIMS ........ 20

IX.     DEFENDANTS ARE ENTITLED TO JUDGMENT AS TO THE FDCA CLAIMS ..... 22

CONCLUSION ........................................................................................................................... 25

i

## INTRODUCTION

In opposing Defendants' Motion to Dismiss and for Summary Judgment, Plaintiffs do their best to ignore previous rulings in this very case by the Supreme Court and the D.C. Circuit on the precise issues this combined motion raises.  But the Court does not come to those issues on a clean slate.   The Supreme Court has vacated this Court's preliminary injunctions on the Eighth Amendment and Federal Food, Drug, and Cosmetic Act ("FDCA") claims; the D.C. Circuit has issued a mandate directing judgment in Defendants' favor on the Federal Death Penalty Act ("FDPA") and notice-and-comment claims; and this Court has refused to grant a preliminary injunction on the basis that the Protocol is arbitrary and capricious or that it violates the Controlled Substances Act ("CSA").   Those prior decisions all but compel the conclusion that this Court should grant Defendants' combined dispositive motion now.

First, Defendants are entitled to judgment on Plaintiffs' notice-and-comment claim because the D.C. Circuit has directed that judgment be entered for Defendants on that claim, *see In re Fed. Bureau of Prisons' Execution Protocol Cases*, 955 F.3d 106, 108–13 (D.C. Cir. 2020) (per curiam); ECF No. 156, and Plaintiffs do not object to the entry of judgment, *see* Opp'n at 1.

Second, Plaintiffs' Eighth Amendment claim should be dismissed because Plaintiffs have failed to plausibly allege that BOP's pentobarbital protocol creates an "objectively intolerable risk of harm" when "it is in fact widely tolerated" and litigation-tested, and has been upheld by the Supreme Court.  *Baze v. Rees*, 553 U.S. 35, 53 (2008) (plurality opinion).  Plaintiffs stake their opposition on an alleged need for discovery and expert testimony.  But a battle of the experts would be inconsistent with the Supreme Court's admonition that courts should not embroil themselves "in ongoing scientific controversies beyond their expertise" and "intrude on the role of [government officials] in implementing their execution procedures."  *Id.* at 51 (plurality opinion). In any event, Plaintiffs fail to allege an alternative method of execution that is feasible, is readily implemented, and significantly reduces a substantial risk of severe harm.  This purely legal issue requires no further discovery.  Under clear Supreme Court precedent, the government is not required to "be the first to experiment with a new method of execution"—*i.e.*, a

1

fentanyl/pentobarbital combination, *Bucklew v. Precythe*, 139 S. Ct. 1112, 1130 (2019), and may choose not to use an execution method—the firing squad—that has "given way to more humane methods," *Baze*, 553 U.S. at 62 (plurality opinion).

Third, as for Plaintiffs' due process, access to counsel, and non-delegation claims, Plaintiffs ignore the overwhelming weight of authority in Defendants' favor, relying instead on strained interpretations of inapposite law, none of which saves those claims. And on Plaintiffs' APA claims, the D.C. Circuit has already held that the Protocol is not contrary to the FDPA. *See Execution Protocol Cases*, 955 F.3d at 108–13. In addition, both the D.C. Circuit and this Court have concluded that BOP's adoption of the Protocol is not arbitrary or capricious, *see Execution Protocol Cases*, No. 20-5206, Doc. No. 1852151, at 1–3 (D.C. Cir. July 16, 2020); ECF No. 145 at 7–19, and this Court also rejected Plaintiffs' claim that the Protocol violates the CSA, *see* ECF No. 145 at 11. Plaintiffs have presented no serious reasons to reconsider those issues.

Finally, although this Court previously found that Plaintiffs were likely to succeed on their claim that the Protocol violates the FDCA, the Supreme Court vacated that decision without a noted dissent. *Barr v. Purkey*, No. 20A10, 591 U.S. ___ (July 16, 2020). Plaintiffs have presented no new arguments or identified any persuasive case law to counter Defendants' arguments that *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120 (2000), and *Heckler v. Chaney*, 470 U.S. 821 (1985), preclude Plaintiffs' FDCA claims.

## ARGUMENT

## I.   PLAINTIFFS FAIL TO STATE AN EIGHTH AMENDMENT CLAIM

### A.   The Protocol Does Not Pose An Objectively Intolerable Risk of Harm

In their opening brief, Defendants demonstrated that the Amended Complaint fails to state an Eighth Amendment claim under the Supreme Court's method-of-execution jurisprudence. *See* ECF No. 170 at 10–21. First, "it is difficult to regard a practice as 'objectively intolerable' when it is in fact widely tolerated." *Baze*, 553 U.S. at 53 (plurality). As the Supreme Court recognized last month in this very case, pentobarbital "has become the mainstay of state executions." *Lee*, No. 20A8 at 2, 591 U.S. ___ (July 16, 2020). It "is widely conceded to be able to render a person

fully insensate and does not carry the risks of pain that some have associated with other lethal injection protocols." *Id.* at 1 (citations and internal quotation marks omitted). Moreover, it has been adopted by five death penalty states; "used to carry out more than 100 executions without incident"; "repeatedly invoked by prisoners as a less painful and risky alternative to the lethal injection protocols of other jurisdictions"; and "upheld by numerous Courts of Appeals against Eighth Amendment challenges similar to the one presented here." *Id.* at 2. And it was upheld by the Supreme Court last year in *Bucklew*, 139 S. Ct. 1112, "as applied to a prisoner with a unique medical condition that could only have increased any baseline risk of pain associated with pentobarbital as a general matter." *Lee*, No. 20A8 at 2.[1] The Supreme Court highlighted each of these points when concluding that the preliminary injunction movants were unlikely to succeed on the merits of this claim, *id.* at 1–2, thereby all but foreclosing Plaintiffs' Eighth Amendment claim here. As the Supreme Court explained, the claim "faces an exceedingly high bar" because the Court "'has yet to hold that a State's method of execution qualifies as cruel and unusual.'" *Id.* at 2 (quoting *Bucklew*, 139 S. Ct. at 1124).

1. Plaintiffs incorrectly argue that the "exceedingly high bar" for a method-of-execution claim does not apply at the Rule 12(b)(6) pleading stage. Pls.' Opp'n at 2, ECF No. 184 ("Opp'n"). Even at the Rule 12(b)(6) stage, they must still plausibly state the necessary elements of a method-of-execution claim, which are stringent. Specifically, they must first plausibly allege that the Protocol poses an "'objectively intolerable risk of harm' that prevents prison officials from pleading that they were 'subjectively blameless for purposes of the Eighth Amendment.'" *Glossip*

---

[1] Plaintiff Norris Holder has separately alleged that he has epilepsy and is taking the medication carbamazepine to prevent seizures, which he alleges "is likely to affect the way he metabolizes pentobarbital." Holder Suppl. Br. ECF No. 186 at 3. This potential drug interaction, he argues, "creates a serious risk that [he] will suffer brain damage and excruciating pain and suffering" upon the administration of pentobarbital "either before succumbing or without, in fact, being killed." *Id.* at 3–4. Defendants have not moved to dismiss Holder's Eighth Amendment claim on the basis that he fails to allege that there is a serious risk of substantial harm. However, as discussed in Defendants' opening brief (at 19–21) and below, Holder nevertheless fails to state a method-of-execution challenge because his proposed alternative, firing squad, fails to meet the second prong of the standard for a method-of-execution challenge.

*v. Gross*, 135 S. Ct. 2726, 2737 (2015) (quoting *Baze*, 553 U.S. at 50). Plaintiffs have not done so. Making a plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Here, it is implausible that the federal government and the leading death-penalty states have, in attempting to make executions more humane, selected an execution method that "cruelly superadds pain to the death sentence." *Bucklew*, 139 S. Ct. at 1124.

Plaintiffs ask this Court to find that they have alleged an objectively intolerable risk of pain based on the testimony of a single expert, Dr. Gail Van Norman. *See* Opp'n at 2. But particularly in the context of a challenge to a well-accepted lethal agent such as pentobarbital, Plaintiffs must allege a scientific consensus establishing why a widely tolerated choice is nevertheless objectively unacceptable. A single expert's opinion is insufficient to show such a consensus. *See Baze*, 553 U.S. at 67 (Alito, J. concurring) ("[A]n inmate should be required to do more than simply offer the testimony of a few experts or a few studies"; "[i]nstead, an inmate challenging a method of execution should point to a well-established scientific consensus"). This need is underscored by the fact that the Supreme Court allowed the executions of three inmates in this case to proceed, even though this Court had fully credited Dr. Van Norman's opinion and entirely discounted the government's expert's opinion.

Plaintiffs counter that they need not plead a scientific consensus to survive a motion to dismiss, Opp'n at 5, noting that *Bucklew*, *Glossip*, and *Baze* were decided after evidentiary hearings or on summary judgment, *id.* at 2. But the implication of Plaintiffs' argument is that the Court must referee a battle of experts on pentobarbital's suitability as a lethal agent—a proposition the Supreme Court rejected when it vacated this Court's preliminary injunction. And regardless of the procedural posture of *Bucklew*, *Glossip*, and *Baze* when the Supreme Court decided them, those cases established the stringent Eighth Amendment standard that Plaintiffs must meet in order to prevail. Those decisions make clear that the question before a court in a method-of-execution challenge is not which side has more convincing experts—an inquiry that "would embroil the courts in ongoing scientific controversies beyond their expertise, and would substantially intrude

4

on the role of [government officials] in implementing their execution procedures." *Baze*, 553 U.S. at 51 (plurality opinion).  Rather, as discussed above, the question is whether, given the appropriate "measure of deference to a [government's] choice of execution procedures," *id*. at 51 n.2, the inmates have established an "objectively intolerable risk of harm that prevents prison officials from pleading that they were subjectively blameless for purposes of the Eighth Amendment," *Glossip*, 135 S. Ct. at 2737 (citation omitted).  Plaintiffs have failed on this account.

Plaintiffs further argue that "the allegedly 'wide' toleration of pentobarbital reflects the outdated understanding that a prisoner's unresponsiveness to the barbiturate demonstrates his unconsciousness."  Opp'n at 5.  The basis for this argument appears to be Dr. Van Norman's June 29, 2020, supplemental declaration, *see* ECF No. 117-1, in which she opines that "[c]onsciousness and unresponsiveness are distinct phenomena, although many experts erroneously use them synonymously . . . despite decades of evidence to the contrary."  *Id*. ¶ 9.  Dr. Van Norman further states that "[t]he idea that unresponsive indicates unconsciousness was invalidated by research in consciousness approximately 30 years ago."  *Id*.  Based on Dr. Van Norman's own testimony, this is therefore not a case in which Plaintiffs have discovered new evidence of a medical phenomenon that was unknown before the Supreme Court's decision in *Bucklew* or the many courts of appeals' decisions upholding the use pentobarbital in executions.  It is simply implausible that states and the federal government have carried out over one hundred of executions—in the face of numerous court challenges—based on a decades-old misunderstanding of the difference between unresponsiveness and unconsciousness that no prior expert has successfully identified.  It also defies common sense that inmates injected with pentobarbital would instantaneously experience pain akin to waterboarding, as Dr. Van Norman opines, *see* Opp'n at 4, when barbiturates like pentobarbital and thiopental were used for decades as anesthesia for millions of patients worldwide, *see* ECF No. 122-2, at 3 & n.2.

Plaintiffs also dispute that pentobarbital is widely tolerated by pointing to alleged "significant differences" between the states' pentobarbital protocols and BOP's Protocol.  Opp'n at 5.  But there are no material differences among the protocols with respect to the lethal agent—

all are designed to cause death through an overdose of pentobarbital. All four of the states that specify a dosage of pentobarbital in their protocols use the same dosage as the BOP's Protocol, *see* AR 18 (Georgia), AR 59 (Idaho), AR 90 (Texas), and AR 71 (Missouri).

Finally, Plaintiffs contend that the Supreme Court's vacatur of this Court's Eighth Amendment preliminary injunction is irrelevant because it was issued in the context of a request for a last-minute stay. Opp'n at 6. But had the Supreme Court been swayed only by the last-minute nature of the injunction, it would not have identified the many objective factors probative of pentobarbital's constitutionality, nor would it have emphasized the "exceedingly high bar" that inmates must meet for a method-of-execution challenge. *Lee*, No. 20A8 at 2. Plaintiffs cannot ignore these clear directions, and in assessing whether Plaintiffs have plausibly stated a claim, the Supreme Court's guidance should carry substantial, if not dispositive, weight.

Notably, Plaintiffs do not meaningfully respond to Defendants' discussion of the Sixth Circuit's recent ruling that the pain associated with pulmonary edema is constitutional because it "pales in comparison to the pain associated with hanging," which has long "been considered constitutional." *In re Ohio Execution Protocol Litigation*, 946 F.3d 287, 290 (2019); *see* ECF No. 170 at 13. That ruling strongly suggests that the Protocol is constitutional, because it holds that even if the inmate were to experience pain associated with pulmonary edema, that pain alone does not establish the sort of objectively intolerable risk of harm that qualifies as cruel and unusual. Plaintiffs' only rejoinder is to again claim that they are entitled to a battle of the experts, *see* Opp'n at 7–8, which misapprehends the Eighth Amendment standard as Defendants have discussed.

2. Defendants demonstrated in their opening brief, *see* ECF No. 170 at 15–17, that Plaintiffs' speculation about the quality of the compounded pentobarbital or possible issues with IV administration is not sufficient to make out a method-of-execution claim. "[W]hat [the Eighth] Amendment prohibits is wanton exposure to objectively intolerable risk[,] . . . not simply the possibility of pain." *Baze*, 553 U.S. at 61–62 (citation omitted). Plaintiffs respond that whether the compounding of pentobarbital or IV administration could go wrong is a factual issue. *See* Opp'n at 8–9. As the Eighth Circuit has held in the context of a motion to dismiss, however, to

"successfully plead[] facts to demonstrate a substantial risk of severe pain requires the prisoners to plead more than just a hypothetical possibility that an execution could go wrong." *Zink v. Lombardi*, 783 F.3d 1089, 1098–99 (8th Cir. 2015) (en banc).  The inmates in *Zink*, like Plaintiffs here, submitted declarations and affidavits from medical professionals attesting to the alleged dangers of compounded drugs.  Yet, the Eighth Circuit still held that the inmates failed to state a claim because, even "if any of the hypothetical situations the prisoners identify came to pass, it would amount to an 'isolated mishap' that, 'while regrettable,' would not result in an Eighth Amendment violation." *Id.* at 1101 (quoting *Baze,* 553 U.S. at 50); *see also Cook v. Brewer*, 649 F.3d 915, 917 (9th Cir. 2011) (plaintiffs failed to state an Eighth Amendment claim despite allegations that there had been twelve adverse drug reaction reports, that the drug had been manufactured for use on animals, that it had caused problems in three executions in the United States, and that the State obtained it unlawfully).  The same reasoning applies here to preclude a finding that Plaintiffs have alleged an objectively intolerable risk of harm.

> **B.**      **Plaintiffs Fail to Allege An Alternative Method of Execution**

As Defendants set forth in their opening brief, the Amended Complaint fails to plead a known, feasible, and readily implemented alternative that significantly reduces a substantial risk of severe pain and that the government has refused to adopt without legitimate reasons.  *See* ECF No. 170 at 17–21.[2]  As to Plaintiffs' proposal to add a pre-dose of a pain-relieving, anesthetic drug such as fentanyl, Plaintiffs fail to allege that any state has employed pentobarbital in combination with fentanyl in carrying out its executions.  The fact that no state has added an opioid to a pentobarbital protocol alone justifies BOP's decision not to experiment with it.  *See Bucklew*, 139 S. Ct. at 1130 ("choosing not to be the first to experiment with a new method of execution is a legitimate reason to reject it"); *Johnson v. Precythe*, 954 F.3d 1098, 1102 (8th Cir. 2020) (inmate

---

[2] Plaintiffs have abandoned their proposal of requiring BOP to adopt certain "safeguards" in the Protocol.  *See* Am. Compl. ¶ 114a; Opp'n at 9.

failed to state a method-of-execution challenge because his proposed alternative method, nitrogen-induced hypoxia, "is an entirely new method of execution" with no track record of successful use).

Plaintiffs' response again is that Defendants' argument raises factual issues outside the Amended Complaint. But it is a legal question whether BOP should be required to adopt a protocol that "ha[s] 'never been used to carry out an execution' and ha[s] 'no track record of successful use.'" *Bucklew*, 139 S. Ct. at 1130. Moreover, BOP's other legitimate reasons, such as the desire to avoid the complications inherent in obtaining multiple drugs and the risk of administrative mishaps, and concerns about fentanyl's potential side effect of muscle rigidity and other drug interactions, *see* ECF No 170 at 18–19, are articulated in memoranda incorporated by reference in the Amended Complaint, *see* Am. Compl. ¶ 87 (citing AR 872, BOP memorandum to the Attorney General); *id*. ¶ 114a (citing AR 862–63, BOP memorandum on fentanyl), and thus, this Court can consider them, *see Busby v. Capital One, N.A.*, 932 F. Supp. 2d 114, 133–34 (D.D.C. 2013).

Plaintiffs also argue that, because BOP previously had a three-drug protocol, it cannot now contend that a one-drug protocol is superior. *See* Opp'n at 11. That argument is nonsensical. BOP surely can modify its execution protocol to increase the ease of administration and to avoid mishaps, and "the Constitution affords a measure of deference to [the government's] choice of execution procedures," *Bucklew*, 139 S. Ct. at 1125 (citation omitted).

Finally, with respect to Plaintiffs' proposal to use a firing squad, Plaintiffs have no serious response to Defendants' showing in their opening brief that a firing squad is not a constitutionally superior method of execution than lethal injection; that the federal government has a legitimate interest in using a method it regards as more humane and as "preserving the dignity of the procedure," *Baze*, 553 U.S. at 57 (plurality opinion); and that even in the three states that authorize firing squad, the state statute authorizes the method only as a last resort. *See* ECF No. 170 at 19-20. Plaintiffs fault Defendants' citations for the proposition that firing squad is a more primitive method of execution, and otherwise accuse Defendants of improperly raising factual issues by citing to the three state statutes that authorize firing squad. *See* Opp'n at 11. But this is mere flyspecking. Given the consensus that lethal injection is more dignified and humane than the firing

8

squad, BOP is not constitutionally required to "make [the] type of regressive change" that Plaintiffs propose. *Boyd v. Warden, Holman Corr. Facility*, 856 F.3d 853, 870–71 (11th Cir. 2017) (state not constitutionally required to use firing squad). Finally, what the three state statutes say about their respective use of the firing squad as a last resort is clearly a legal, not a factual, issue.

## II. PLAINTIFFS FAIL TO STATE A CLAIM FOR DELIBERATE INDIFFERENCE

In their opening brief, Defendants established that Plaintiffs do not allege an independent deliberate indifference claim under the Eighth Amendment. *See* ECF No. 170 at 21–22. Defendants cited many cases in which courts rejected "deliberate indifference" challenges to methods of execution after dismissing the inmates' method-of-execution claim. Plaintiffs' opposition fails to address any of them. Rather, they argue without any support that the deliberate indifference claim requires a lesser showing than a method-of-execution challenge. *See* Opp'n at 13. But, as Defendants have explained, the deliberate indifference standard in *Farmer v. Brennan*, 511 U.S. 825, 834 (1994), and cited by Plaintiffs, *see* Opp'n at 12, is the same standard applied in *Baze*. In any event, Plaintiffs admit that their claim is based on the same concerns underlying their method-of-execution challenge: "risks that the 2019 Protocol will . . . cause Plaintiffs severe pain and suffering." Opp'n at 13. Accordingly, the Court should dismiss Plaintiffs' deliberate indifference claim for the same reasons it should dismiss their method-of-execution challenge.

Even if Plaintiffs' method-of-execution claim survives, Plaintiffs still do not allege an independent deliberate indifference claim based on their assertion that the process of executing an inmate involves the provision of medical care. In selecting a method of execution, the government is not tending to an inmate's medical needs but, rather, is carrying out a capital sentence, even as the government strives to use the most humane method of execution. Plaintiffs' reliance on *Nelson v. Campbell*, 541 U.S. 637 (2004), is misplaced. *See* Opp'n at 12. That case addresses whether method-of-execution challenges sound only in habeas or whether they could be brought under 42 U.S.C. § 1983. It by no means supports the proposition that Plaintiffs can pursue both a method-of-execution claim and a deliberate indifference claim based on the same set of facts.

## III.     PLAINTIFFS FAIL TO STATE A DUE PROCESS CLAIM

Plaintiffs appear to concede in their opposition that the BOP Protocol does not implicate their interests in life.  And for good reason.  As Defendants have explained, Plaintiffs have already received all the process to which they are constitutionally entitled through their respective criminal trials and extensive appellate and collateral-review proceedings—and they do not and cannot challenge the lawfulness of their convictions and capital sentences here.  *See* ECF No. 170 at 22; *see also Zink*, 783 F.3d at 1109.  Plaintiffs base their due-process claim instead on a purported liberty interest in additional information so they can mount further challenges under the Eighth Amendment.  *See* Opp'n at 14–16.  Yet, as multiple courts of appeals have recognized, Plaintiffs have no freestanding constitutional right to information about the Protocol, much less at the level of detail to which Plaintiffs claim they are entitled.  *See* ECF No. 170 at 22–23.  And Plaintiffs make no effort to distinguish the decisions cited in Defendants' opening brief on this point.

Instead, Plaintiffs ask this Court to allow them to proceed based on the thinnest of reeds: the reversal of this Court's denial of Plaintiff Jeffrey Paul's motion to intervene in *Roane*, where the D.C. Circuit said that Paul's due process claim "remain[ed] live," even though the government was no longer using the three-drug protocol that Paul challenged.  Opp'n at 15–16 (citing *Roane v. Leonhart*, 741 F.3d 147, 150 (D.C. Cir. 2014)).  But as Plaintiffs themselves acknowledge, *see* Opp'n at 16, the D.C. Circuit addressed only whether Paul's argument was moot, not whether he had alleged a legally cognizable claim.  *Roane*, 741 F.3d at 150.  Plaintiffs further suggest that, by granting Paul's *unopposed* motion for a preliminary injunction barring Defendants from setting his execution date, *see Roane*, ECF No. 336, this Court necessarily determined that Plaintiffs are likely to succeed on their due process claim.  *See* Opp'n at 16.  But nothing in the Court's two-sentence order suggests that it gave any consideration to the merits of Paul's due process claim—let alone that Paul was likely to prevail on it.  *See Roane*, ECF No. 336.[3]  The Court should

---

[3] Further, the Government's decision not to oppose Paul's motion for a preliminary injunction had nothing to do with the merits of Paul's case; it had to do with the procedural posture of the case at the time.  *See* Defs.' Mot. to Vacate, ECF No. 173 at 3–4.

therefore reject Plaintiffs' implausible interpretation of its prior order and follow the overwhelming weight of authority to dismiss Plaintiffs' due process claim.

The rest of Plaintiffs' opposition with respect to Count I consists of their argument that an inmate has a constitutionally protected interest in knowing the date and time of his execution. *See* Opp'n at 16–18. The only authority they cite to support that assertion is *In re Medley*, 134 U.S. 160 (1890). But that case held only that a state statute allowing a warden to "fix[] any day and hour during a period of a week for the execution" and requiring the warden to keep that information secret was *ex post facto* because it increased an inmate's punishment after commission of the relevant crime. *Id.* at 171–72. *Medley* is inapposite, because no similar statute exists here. And, in any event, Defendants have provided sufficient notice for the upcoming execution dates. *See* 28 C.F.R. § 26.4(a) (requiring 20 days' advance notice or "as soon as possible" when the date follows a postponement of fewer than 20 days).

Not able to establish that they have a constitutionally protected liberty interest in knowing the date or time of their executions (or that BOP has violated such interest, assuming it exists), Plaintiffs attempt to create a purported due-process issue by pointing to the fact that the executions of Lee and Purkey were delayed until the following morning—as recited in an op-ed by Lee's counsel. *See* Opp'n at 17–18 (citing Stetson & Friedman, "The Justice Department's Shameful Rush to Federal Executions," NY Times, July 17, 2020, *available at* https://www.nytimes.com/2020/07/17/opinion/justice-department-federal-execution.html). Plaintiffs omit the fact that those executions were delayed because of last minute challenges filed by the inmates' counsel. *See* Jeffrey A. Rosen, "The Death Penalty Can Ensure 'Justice Is Being Done'," N.Y. Times, Opinion (July 27, 2020), *available at* https://www.nytimes.com/2020/07/27/opinion/federal-death-penalty.html (summarizing the last-minute filings that preceded the executions).[4]

---

[4] Dustin Honken's counsel did not raise any last minute challenges, and his execution occurred at the scheduled date and time.

Lee and Purkey were initially scheduled to be executed in December 2019, until this Court preliminarily enjoined the executions.  *See* ECF No. 50.  On June 15, 2020, after the D.C. Circuit vacated the preliminary injunction and the mandate issued, the government promptly notified Lee and Purkey of their rescheduled execution dates—July 13 and July 15, 2020, respectively—in compliance with 28 C.F.R. § 26.4(a).  *See* ECF No. 99.  Their executions were delayed until the following morning because their attorneys continued to file emergency motions until shortly before the moment of execution.  Lee and Purkey were well aware of when their executions might take place, as it was abundantly clear that the government was seeking to remove all legal impediments created by their counsel and proceed with the planned executions.  Indeed, the Supreme Court's vacatur of the Eighth Amendment preliminary injunction reflected the shared understanding that the vacatur, issued in the early hours of July 14, would permit the "executions [to] proceed as planned."  *Lee*, No. 20A8 at 2.  Plaintiffs' suggestion that Defendants improperly proceeded with Lee's and Purkey's executions after clearing the legal impediments lacks merit and cannot create a liberty interest where none exists.

## IV.   PLAINTIFFS FAIL TO STATE A CLAIM OF DENIAL OF COUNSEL ACCESS

Defendants' opening brief explained that there is no law that would support a right to counsel throughout an execution, and thus Count IV should be dismissed.  ECF No. 170 at 24–25. This Court has agreed, holding at the preliminary injunction stage that Plaintiffs do not have a constitutional right to demand that their counsel "view[] the setting of the IVs, . . . communicat[e] with Plaintiffs during the execution, and . . . hav[e] a quick and easy means of communicating with the court."  ECF No. 145 at 14.  The PI Movants' best cases were "both out-of-circuit and factually distinct," or relied "on the concurrence of a single Justice."  *Id.*  As the Court aptly observed, the PI Movants' likelihood of succeeding on their access to the courts/right to counsel claim "seem[ed] vanishingly small."  *Id.* at 15 (quotation marks omitted).

Nevertheless, in their opposition, Plaintiffs continue to rely on the same out-of-circuit cases and the same reference to the concurrence of a single Justice upon which the PI Movants relied,

*compare* ECF No. 102 at 33, *with* Opp'n at 19, all of which this Court has already declined to follow.  They argue that, despite "the absence of *controlling* precedent," the "novelty" of their claim permits them to withstand a challenge under Rule 12(b)(6). *Id.* (citing *Ashcroft*, 556 U.S. at 678).  They cite no authority that supports their position, and none exists.  Novelty does not equal plausibility.  *Cf. James V. Hurson Assocs. v. Glickman*, 229 F.3d 277, 284 (D.C. Cir. 2000) (dismissing Commerce Clause claims that are "unlike any . . . this Court has ever encountered" on a motion to dismiss because they "fail[ed] as a matter of law").  Nor is there a question about whether Plaintiffs have alleged sufficient facts to "nudge[] their claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  What Plaintiffs demand—namely, minute-by-minute access to their counsel during, for example, the "setting of IV lines or after the [inmate's] final statement," Opp'n at 19—is simply not "constitutionally mandated," as this Court has already found, ECF No. 145 at 14.

Plaintiffs further argue that, "in utilizing the Protocol during the COVID-19 pandemic, Defendants have infringed on Plaintiffs' right to access counsel and the courts by forcing counsel to risk their own health and lives . . . to attend their clients' executions." Opp'n at 19.  But that claim, which they failed to allege in their Amended Complaint, cannot forestall dismissal, given that it "closely resemble[s] the pandemic-related claims brought by spiritual advisors and family members in separate litigation—claims which have thus far been rejected by the courts." ECF No. 145 at 14–15 (citing *Hartkemeyer v. Barr*, No. 20-cv-336 (S.D. Ind. July 14, 2020), ECF No. 84 (denying preliminary injunction); *Peterson v. Barr*, No. 20-2252, 2020 WL 3955951 (7th Cir. July 12, 2020) (vacating preliminary injunction); *see also Hartkemeyer v. Barr*, No. 20A11, 591 U.S. ___ (July 16, 2020) (denying cert. petition).

Finally, Plaintiffs' claim that the Protocol will infringe upon their right to access the courts is conclusory and speculative.  One need only look at the zealous advocacy counsel for Lee, Purkey, and Honken provided in the weeks and hours leading up to those inmates' executions.  This Court was just one of several district and appellate courts to receive around-the-clock filings

from those counsel during the week of July 13.  It is undeniable that the Protocol imposes no cognizable impediment to Plaintiffs' access to their counsel or the courts.

## V.  PLAINTIFFS FAIL TO STATE A CLAIM FOR UNCONSTITUTIONAL DELEGATION OF LEGISLATIVE POWER

Plaintiffs fail to state a claim that Congress unconstitutionally delegated legislative power in Section 3596(a) of the FDPA.  Under any fair reading of the Supreme Court's non-delegation jurisprudence, Section 3596(a) is constitutional and Count VII should be dismissed.

As Plaintiffs acknowledge, the relevant question for a non-delegation challenge is whether "Congress has supplied an intelligible principle to guide the delegee's use of discretion."  Opp'n at 22 (quoting *Gundy v. United States*, 139 S. Ct. 2116, 2123 (2019)).  The FDPA easily satisfies that test by providing that the U.S. Marshal "shall supervise implementation of the sentence in the manner prescribed by the law of the State in which the sentence is imposed."  18 U.S.C. § 3596(a). That instruction is more specific than other delegations upheld by the Supreme Court, and, indeed, the Supreme Court has not held that Congress unconstitutionally delegated legislative authority since 1935, even when considering challenges to "sweeping regulatory schemes."  *Whitman v. Am. Trucking Ass'n*, 531 U.S. 457, 475 (2001).

Plaintiffs made no serious attempt to explain how Section 3596(a) lacks "intelligible principles" under the Supreme Court's non-delegation jurisprudence.  *See* Opp'n at 21–27.  Rather, Plaintiffs repackage their previous arguments in support of their claim that the Protocol violates the FDPA—which the D.C. Circuit *rejected*—under the guise of a constitutional challenge. *Compare* Opp'n at 22–25 (discussing legislative and regulatory history to argue that "Congress has repeatedly refused to delegate to the Attorney General the authority to determine a single federal method of execution"), with *In re Federal Bureau of Prisons' Execution Protocol Cases*, No. 19-5322, Brief for Plaintiffs-Appellees at 23–26 (D.C. Cir. Jan. 6, 2020) (discussing the same legislative and regulatory history to argue that the Protocol violates the FDPA).  For instance, Plaintiffs describe at length how Congress allegedly "refused to delegate authority to the BOP to perform executions or to develop uniform regulations governing the manner of implementing the

death penalty." Opp'n at 27–28. That history says nothing about whether Congress's actual delegation in the FDPA lacks intelligible principles.

Similarly, Plaintiffs cite statements in the 1993 Final Rule promulgating 28 C.F.R. part 26 (Death Sentences Procedures) regarding DOJ's statutory authority, and they state that "the Attorney General cannot now disavow that previous interpretation." Opp'n at 26 (citing 58 Fed. Reg. 4898, 4899 (Jan. 19, 1993)). But again, DOJ's pre-FDPA interpretation of its authority is relevant to a non-delegation challenge to the FDPA, which is concerned with only whether the challenged statute provides intelligible principles for the Executive Branch official to follow. This case is therefore unlike *Gundy*, on which Plaintiffs principally rely, where the plurality merely remarked that the Attorney General's post-enactment interpretation of the challenged statute was consistent with how the plurality interpreted that statute. *See* 139 S. Ct. at 2127–28. Nothing in *Gundy* (or common sense) suggests that DOJ's 1993 discussion of its own authority following Congress's repeal of the death penalty procedures previously codified at 18 U.S.C. § 3566, *see* 58 Fed. Reg. at 4899, could shed any light on whether Congress sufficiently guided DOJ's discretion in the FDPA, which did not exist in 1993.

## VI.   BOP'S ADOPTION OF THE PROTOCOL IS NOT ARBITRARY OR CAPRICIOUS

This Court and the D.C. Circuit previously found that the PI Movant were unlikely to succeed on the merits of the arbitrary-and-capricious challenge to BOP's adoption of the Protocol. The reasoning of those decisions requires that judgment be entered for Defendants on this claim. *See* ECF No. 170 at 27–31. Specifically, this Court held that none of the Plaintiffs' allegations about BOP's purported failure to consider certain granular pain-related concerns with sufficient specificity "rises to the level of arbitrariness or capriciousness for an APA violation." ECF No. 145 at 8. As Defendants also explained, it is particularly anomalous to require the level of specificity Plaintiffs demand, given that the Protocol is a procedural rule governing only the agency's own "internal house-keeping measures," *Execution Protocol Cases*, 955 F.3d at 145

(Rao, J., concurring), and is not the result of notice-and-comment rulemaking, where the public might identify specific issues for the agency to consider. *See* ECF No. 170 at 30-31.

Plaintiffs concede that BOP's adoption of the Protocol is not arbitrary or capricious. Opp'n at 31.[5] But they insist that BOP nevertheless failed to explain why it decided not to provide greater details about "where and how to place the IV line" and why it decided to use a compounded form of pentobarbital. *See* Opp'n at 28–31. Plaintiffs' argument has no merit. The Court's task under the APA's highly deferential standard of review is to determine whether there has been a "clear error in judgment," *Balt. Gas & Elec. Co. v. Nat. Res. Def. Council, Inc.*, 462 U.S. 87, 96 (1983)— that is, "whether the [agency] has considered the relevant factors and articulated a rational connection between the facts found and the choice made," *id.* at 105. The need to provide explanations is to allow the Court to ensure that the agency remained "within the bounds of reasoned decisionmaking." *Id.* Plaintiffs' concession that BOP's adoption of the Protocol is reasonable forecloses their complaints about the need for more explicit explanations.

In any event, contrary to Plaintiffs' argument, BOP need not explicitly explain in the Administrative Record that it is unable to purchase FDA-approved pentobarbital because Plaintiffs concede that "Defendants have elsewhere argued that FDA-approved pentobarbital is unavailable to them," Opp'n at 31,[6] and because this Court based its ruling on this issue on its recognition that domestic commercial supplies were unavailable to BOP, *see* ECF No. 145 at 9. As for BOP's alleged failure to explain why it did not provide more details about IV insertion, that is simply a repackaging of Plaintiffs' argument that BOP failed to consider issues related to IV insertion—an argument that was rejected by both this Court and the D.C. Circuit because it has no merit. *See* ECF No. 170 at 29–30 (citing *Roane*, No. 20-5206, Doc. No. 1852151 at 2; ECF No. 145 at 9).

---

[5] Plaintiffs also have no response to Defendants' position that BOP need not have specifically considered the issue of flash pulmonary edema. That is not surprising given the D.C. Circuit's ruling on this point in Defendants' favor. *Roane*, No. 20-5206, Doc. No. 1852151 at 2.

[6] As Plaintiffs know, a BOP representative had testified in November 2019 in a Rule 30(b)(6) deposition that BOP was unable to purchase FDA-approved pentobarbital. *See* Tr. of Deposition of Rick Winter at 272:9–19 (dated Nov. 15, 2019).

## VII.   THE PROTOCOL IS CONSISTENT WITH THE FDPA

In opposing Defendants' motion for summary judgment as to Count V of the Amended Complaint, Plaintiffs press two arguments: (1) that the Protocol violates the FDPA because the U.S. Marshal allegedly does not "supervise implementation of the sentence," Am. Compl. ¶ 147; *see also* Opp'n 32–35; and (2) that the Protocol violates the FDPA because it allegedly conflicts with certain states' execution statutes, *see* Opp'n at 35–38.   Neither of these arguments has merit.[7]

### A.      The Protocol Is Consistent with Section 3596(a)

Plaintiffs are incorrect that the Protocol violates the FDPA's requirement that the U.S. Marshal "supervise implementation of the sentence," 18 U.S.C. § 3596(a).  *See* Opp'n at 32–35. As Judge Katsas determined in his concurring opinion, "[t]he execution protocol does not strip the Marshals Service of the power to supervise executions."  *Execution Protocol Cases*, 955 F.3d at 124.   Rather, it gives the U.S. Marshal a wide range of supervisory functions, including that the execution "cannot begin without the marshal's approval."  *Id.* at 124–25.  Based on the important role the U.S. Marshal plays during the execution, Judge Katsas concluded that Plaintiffs' argument lacks merit.  *Id*. at 125; *see also* ECF No. 170 at 32–33.  The other two judges on the panel did not substantively address the question.

Plaintiffs' contrary argument is based on an overly narrow reading of the statute.  Plaintiffs suggest that, by instructing a United States Marshal to "supervise implementation of the sentence," Congress necessarily prohibited all other Department of Justice officials from having any responsibility related to the implementation of death sentences.  *See* Opp'n at 33 (highlighting areas over which BOP has authority under the Protocol).  Plaintiffs' argument is inconsistent with the common usage of the word "supervise," which does not imply *exclusive* authority, particularly when the purported supervisor is readily acknowledged not to be at the top of the chain of

---

[7] In Count V of their Amended Complaint, Plaintiffs also alleged a violation of the Take Care Clause.  *See* Am. Compl. ¶¶ 145–48.  Defendants moved to dismiss the Take Care Clause challenge.  *See* ECF No. 170 at 34.  Plaintiffs did not provide a response, and therefore concede that they cannot make out a claim under the Take Care Clause.

command.   Under the Protocol, the U.S. Marshal supervises the execution, but the Attorney General himself, as well as any of his other subordinates, including the BOP Director and the prison warden, may also play an important role.   And Plaintiffs fail to show how the Protocol's division of authority is contrary to the FDPA.

Even if Plaintiffs were correct in their reading of Section 3596(a), they still cannot prevail. As Defendants have explained, and as Judge Katsas agreed, Congress expressly gave the Attorney General the authority to reassign duties among DOJ components, and therefore the Attorney General is free to shift responsibilities under Section 3596(a) from the U.S. Marshal to BOP.   *See* ECF No. 170 at 33–34; *Execution Protocol Cases*, 955 F.3d at 124–25 (Katsas, J., concurring) (citing 28 U.S.C. §§ 509, 510, 561).

Plaintiffs attempt to show otherwise by pointing to *United States v. Giordano*, 416 U.S. 505 (1974), and *United States v. Libby*, 498 F. Supp. 2d 1 (D.D.C. 2007).   But those cases are of no help to Plaintiffs because they addressed situations where Congress expressly prohibited the agency from the specific delegation at issue.   *See Giordano*, 416 U.S. at 514 (explaining "the power of the Attorney General . . . is specifically limited to delegating his authority 'to any Assistant Attorney General specially designated by the Attorney General'"); *Libby*, 498 F. Supp. 2d at 12–13 (addressing a statute explicitly limiting the officials to whom the Attorney General may delegate his authority).   Here, Section 3596(a) specifies that the U.S. Marshal "shall supervise implementation of the sentence," but, unlike in *Giordano* and *Libby*, the FDPA does not specifically restrict the Attorney General from reassigning those responsibilities using his authority under 28 U.S.C. §§ 509 and 510.   Plaintiffs' claim therefore fails.

### B.      The Protocol Does Not Conflict with Any Relevant State Law

Plaintiffs do not dispute that the D.C. Circuit has already directed judgment in Defendants' favor on the claim that the Protocol violates the FDPA.   *See Execution Protocol Cases*, 955 F.3d at 112.   Plaintiffs attempt to save that claim, however, by combing through state laws to identify purported conflicts with the Protocol.   *See* Opp'n at 35–38.   That attempt fails.   *See* ECF No. 170 at 31–32.

Plaintiffs claim that the Protocol is inconsistent with statutes in seven states:  Arkansas, Georgia, Indiana, Missouri, South Carolina, Texas, and Virginia.  *See* Opp'n at 36–37.  Plaintiffs fail to acknowledge, however, that Judge Rao already determined that four of those states— Arkansas, Indiana, Missouri, and Texas—do not "have statutes precluding the use of pentobarbital."  *Execution Protocol Cases*, 955 F.3d at 142 (Rao, J., concurring).  Nor can Plaintiffs ignore Judge Rao's explanation that she had "not been able to locate statutes or formal regulations in any state that would prevent the federal government from using pentobarbital."  *Id.*

Plaintiffs are thus forced to rely on other perceived differences between state law and the Protocol,[8] such as Georgia's requirement of the presence of "two physicians to determine when death supervenes."  Opp'n at 36 (quoting GA. Code § 17-10-41).  But Judge Rao explained that "the federal protocol allows the federal government to depart from its procedures as necessary to conform to state statutes and regulations."  *Execution Protocol Cases*, 955 F.3d at 112 (per curiam).  And Defendants have already represented that BOP is prepared to do so if such circumstances arise.  *See* Opp'n at 32.  Plaintiffs provide no factual allegations to overcome the presumption of good faith to which that representation is entitled.  They state only that Defendants have not indicated "that they will offer a choice of electrocution to the four prisoners who were sentenced in South Carolina and Virginia," which Plaintiffs contend is required by those states' statutes.  *See* Opp'n at 36–37 (citing S.C. Code § 24-3-530(A); VA Code Ann. § 53.1-234).  So far, none of those plaintiffs has suggested that they would prefer electrocution over lethal injection as the method of execution. If the Court determined that a conflict existed between the Protocol and the binding laws of those states, and that BOP's representation that it will abide by state law were insufficient, the only appropriate remedy would be to order Defendants to allow the inmates

---

[8] Defendants demonstrated in their opening brief that any purported conflicts between the Protocol and state lethal injection protocols identified in the Appendix to the Amended Complaint are not cognizable because those state protocols are not "law of the state."  ECF No. 170 at 31–32.  In their opposition, Plaintiffs no longer rely on such purported conflicts and therefore concede that any such conflicts are not cognizable.

sentenced in those states the option of choosing electrocution, not to conclude that the Protocol is unlawful as a general matter.

## VIII.   DEFENDANTS ARE ENTITLED TO JUDGMENT AS TO THE CSA CLAIMS

This Court has already concluded that in light of the Supreme Court's holding in *Gonzales v. Oregon*, 546 U.S. 243 (2006), "dispensation of lethal injection drugs to an inmate would not be covered by the [CSA]."  ECF No. 145 at 11.  As this Court recognized, *Gonzales* "held that the CSA is primarily 'a statute combating recreational drug use,' and must be read in light of that statutory purpose."  *Id.* (quoting *Gonzales*, 546 U.S. at 272).  This Court's conclusion on this pure question of law requires that judgment be entered for Defendants on the CSA-related claims.

Plaintiffs contend that *Gonzales* is inapplicable because it purportedly holds only that "the CSA does not authorize the federal government to define the standards of accepted medical practice."  Opp'n at 44.  Their strained, narrow interpretation of *Gonzales* is unavailing.  It fails to explain how, in light of *Gonzales*, a prescription for lethal injection in the context of federal execution is any less "discordant" with the language of the CSA than is a prescription for assisted suicide, which was at issue in *Gonzales*.  *See Gonzales*, 546 U.S. at 274 ("To read prescriptions for assisted suicide as constituting 'drug abuse' under the CSA, is discordant with the phrase's consistent use throughout the statute.").

Plaintiffs also claim that *United States v. Kanner*, 603 F.3d 530 (8th Cir. 2010), supports their position, but that case is inapposite.  *Kanner* was a criminal case against one of the owners of a company that used the internet to distribute prescription drugs.  *Id.* at 532.  The defendant was convicted of a multiple-object drug conspiracy, in which "physicians and pharmacists contracted by [the company], . . . acted in a manner inconsistent with the usual course of professional practice," by prescribing drugs for distribution without adequately surveying the patient's medical needs.  *Id.* at 535.  In other words, the company was a pill mill, which indisputably contributes to drug abuse and therefore engaged in conduct prohibited by the CSA.

There is simply no equating the facts of *Kanner* with the lethal injection context.  As Defendants has explained, *see* ECF No. 170 at 37, the CSA's prescription requirement must be

construed in the context of Congress's enactment of the FDPA, *see Brown & Williamson*, 529 U.S. at 143, which assumed that the federal government would execute federal condemned inmates using lethal injection. "Clearly, the federal government does not consider those of its own executions that are conducted by lethal injection to violate a regulatory scheme for the prescription and use of controlled substances." *West v. Schofield*, 519 S.W.3d 550, 571 (Tenn. 2017). Plaintiffs fail to respond this statutory construction argument.

Plaintiffs mistakenly focus on the language of the Protocol itself, wherein BOP refers to the "*administering* of lethal substances" supposedly as the term is used in the CSA. Opp'n at 44 (citing AR1069 and 1070) (emphasis added). But BOP is a different agency from the DEA, and nothing suggests that BOP was using the term "administer" as defined under the CSA (*i.e.*, as "the direct application of a controlled substance to the body of a patient or research subject," 21 U.S.C. § 802(2)). In fact, the Protocol's use of the term "administer" has no bearing on the proper statutory construction of the CSA. Instead, the proper reading of the CSA's prescription requirement provision, particularly in light of Congress's enactment of the FDPA, is that inmates executed by lethal injection are neither "ultimate users," "research subjects," nor "patients," and therefore the prescription provision does not apply. *See* ECF No. 170 at 36–37.

Plaintiffs' secondary argument that DEA has acted arbitrarily and capriciously in failing to exercise enforcement authority rests on their contention that the DEA is not making a "discretionary decision to direct its enforcement resources elsewhere," but is instead acting upon the DEA's "view that lethal injection drugs are categorically exempt from the CSA." Opp'n at 45. But Defendants have never argued that lethal injection drugs are categorically exempt from the CSA. For example, the CSA's registration requirements still apply, and as stated in the Administrative Record, "BOP . . . confirmed with the [DEA] that the manufacturer is properly registered as a bulk manufacturer of pentobarbital," and "BOP worked with DEA to ensure the compounding pharmacy is properly registered." AR872. Defendants' position is that the CSA's *prescription* requirements are not applicable in the lethal injection context.

DEA's refusal to enforce a statutory provision that does not apply here is not arbitrary or capricious.  But even if the prescription requirement did apply, DEA could choose not to enforce it against BOP in this context as a policy matter, and under *Heckler v. Chaney*, 470 U.S. 821 (1985), that enforcement decision would be presumptively unreviewable.  *See id.* at 831 (noting a number of reasons why an agency might choose not to enforce a statutory provision, including "whether a violation has occurred, . . . whether the agency is likely to succeed if it acts, [and] whether the particular enforcement action requested best fits the agency's overall policies").  Plaintiffs' reliance on *Koon v. United States*, 518 U.S. 81, 100 (1996), for the proposition that *Chaney* does not govern, *see* Opp'n at 45, is misplaced.  That case involved a district court's decision to depart downward from a sentencing range, not a challenge to an agency's decision not to exercise its enforcement authority based on the agency's view that no violation has occurred.

## IX.    DEFENDANTS ARE ENTITLED TO JUDGMENT AS TO THE FDCA CLAIMS

Plaintiffs' arguments in opposition to Defendants' motion for summary judgment on their FDCA-related claims (Counts VIII, X, and XI) are nearly identical to those raised by Plaintiff Nelson in his Emergency Cross-Motion for Summary Judgment on FDCA Causes of Action.  *See* ECF No. 180.  Defendants already filed a detailed opposition to Nelson's Cross-Motion, *see* ECF No. 187, and rather than reiterate those arguments here, Defendants incorporate them by reference. Defendants address only the three new points now raised by Plaintiffs.

First, Plaintiffs argue that "Defendants falsely attribute to Plaintiffs a contention that lethal injection drugs can never be prescribed for a legitimate medical purpose." Opp'n at 39.  Plaintiffs claim that what they meant to say was that the Protocol's use of pentobarbital for lethal injection serves no legitimate medical purpose because "no medical practitioner has made a clinical judgment that the particular drug is well suited to execute an individual prisoner." Opp'n at 39. That argument is disingenuous.  The Amended Complaint alleges that the Protocol violates the CSA because it "requires the dispensing and administration of pentobarbital . . . without a valid prescription for no legitimate medical purpose."  Am. Compl. ¶ 64.  Defendants fairly read that

allegation as stating that the use of pentobarbital for lethal injection could serve no legitimate medical purpose, regardless of the statute at issue.

Nevertheless, Defendants are entitled to judgment however one interprets Plaintiffs' allegations. According to Plaintiffs, the FDCA requires that a prescription be a "'bona fide' order directing 'the preparation and administration of a medicine, remedy, or drug for a real patient who actually needs it after some sort of examination or consultation by a licensed doctor.'" *Id*. (quoting *United States v. Nazir*, 211 F. Supp. 2d 1372, 1375 (S.D. Fla. 2002)). But, of course, even if Plaintiffs' definition is correct, condemned inmates are not "patients" who "need" a lethal injection drug. They receive an injection of pentobarbital to carry out their lawfully imposed capital sentences, not to cure or alleviate a physical or psychological malady. Accordingly, despite their protestations to the contrary, Plaintiffs' position can fairly be summarized as follows: lethal injection drugs intended for use in bringing about death in the context of an execution can never be prescribed for a legitimate medical purpose and therefore can never comply with the FDCA. That position is untenable in light of *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120 (2000), in that it would "contradict Congress' clear intent" under the FDPA that lethal injection be available as a possible method of execution. *Id*. at 143; *see also* ECF No. 187 at 5–6.

In addition, even if the Protocol required a prescription, Defendants have argued that it is indisputable that a drug intended for use in bringing about death as part of an execution cannot be approved by the FDA as "safe and effective." ECF No. 170 at 40. Plaintiffs fail to challenge this point. In sum, whether the Protocol requires a prescription or not is irrelevant under *Brown & Williamson*.[9]

---

[9] Plaintiff Nelson in his reply in support of his cross-motion for summary judgment on the FDCA claims argues that the existence of an "Rx only" label on the bottles of pentobarbital used by BOP to carry out the executions of Lee, Purkey, and Honken, *see* ECF 190 at 2, means that the FDCA's prescription requirements apply. The existence of the label is irrelevant for the same reasons that the FDCA's prescription requirement is inapplicable in this context.

Second, Plaintiffs argue, as they do regarding their CSA-related claims, that *Heckler v. Chaney* does not apply in this context because "the FDA has not exercised any . . . discretion" and is simply "under orders from the DOJ never to enforce the FDCA against execution drugs."  Opp'n at 41 (referencing the OLC Opinion).  But OLC's duty is to provide legal advice to Executive Branch agencies such as the FDA; it does not make policy decisions on behalf of those agencies. *Cf. Campaign for Accountability v. U.S. Dep't of Justice*, 278 F. Supp. 3d 303, 323 (D.D.C. 2017) ("[A]ll of OLC's opinions constitute 'the opinion of the Attorney General on questions of law,' . . . therefore, OLC's opinions always advise on legal questions, even if the agency that receives an OLC opinion will use it to inform a policy decision.") (citations omitted).  There is nothing arbitrary and capricious about FDA's adherence to the OLC Opinion regarding the Protocol.  And even if the OLC Opinion is incorrect, the FDA could choose not to enforce the FDCA against BOP in the lethal injection context as a policy matter and under *Chaney*, that enforcement decision would be presumptively unreviewable.

Plaintiffs again cite *Koon*, the inapposite sentencing guidelines case, as well as *Texas v. United States*, 809 F.3d 134 (5th Cir. 2015), which is equally inapposite.  Unlike here, that case involved an agency's "decision to act."  As the *Texas* court said, "[a] decision to remain inactive is traditionally the type for which it is most difficult to establish standing and a justiciable issue." *Id*. at 152 & n.34 (citing *Chaney*).  That observation supports Defendants' position here.

Third, Plaintiffs seek to rely on the APA's general presumption in favor of judicial review. *See* Opp'n at 43 (quoting 5 U.S.C. §§ 702, 706(2)(A)).  Although they acknowledge that Congress may foreclose judicial review of challenges brought by private parties, Plaintiffs incorrectly argue that Congress has not done so in the FDCA.  *Id.*  Congress did specify in the FDCA that "all . . . proceedings for the enforcement, or to restrain violations, of this chapter shall be by and in the name of the United States."  21 U.S.C. § 337(a).  This requirement forecloses actions by private parties seeking to restrain third parties' putative violations of the FDCA's general strictures, leaving "the United States with nearly exclusive enforcement authority" over those matters.  *POM Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 102, 109 (2014).  Plaintiffs' argument to the contrary,

therefore, is unavailing.  Plaintiffs contend that the D.C. Circuit's decision in denying Defendants' emergency motion to stay this Court's FDCA-based preliminary injunction supports their position. *See* Opp'n at 43.  But the D.C. Circuit's statement on this issue was sparse: "[T]he government contends that plaintiffs cannot argue that the Protocol is unlawful because only the FDA may enforce the FDCA.  But plaintiffs do not seek preliminary injunction on an enforcement claim, they claim that the Protocol is contrary to law under the APA."  *Execution Protocol Cases*, No. 20-5206, Doc. No. 1851933, at 3 (D.C. Cir. July 15, 2020).  Moreover, that statement is neither binding nor precedential given that it was superseded by the Supreme Court's vacatur of the FDCA preliminary injunction.

## CONCLUSION

For the foregoing reasons and the reasons stated in Defendants' opening brief, this Court should grant Defendants' Motion to Dismiss Plaintiffs' non-APA claims and enter judgment for Defendants on Plaintiffs' APA claims.

Dated:  August 13, 2020

Respectfully submitted,

MICHAEL R. SHERWIN
Acting United States Attorney

DANIEL F. VAN HORN
Civil Chief, U.S. Attorney's Office

ALAN BURCH (D.C. Bar 470655)
Assistant United States Attorney
U.S. Attorney's Office
for the District of Columbia
Washington, D.C. 20530
202-252-2550
alan.burch@usdoj.gov

DAVID M. MORRELL
Deputy Assistant Attorney General

PAUL R. PERKINS
Special Counsel

 _/s/*Jean Lin*_____
JEAN LIN (NY Bar 4074530)
Special Litigation Counsel
JONATHAN KOSSAK (D.C. Bar 991478)
CRISTEN C. HANDLEY (MO Bar 69114)
BRADLEY P. HUMPRHEYS (D.C. Bar 988057)
Trial Attorneys
Federal Programs Branch
Civil Division, Department of Justice
1100 L Street, N.W.
Washington, D.C. 20005
(202) 514-3716
Jean.lin@usdoj.gov
*Attorneys for Defendants*

25

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 13, 2020, I caused a true and correct copy of foregoing to be served on all counsel of record via the Court's CM/ECF system.  Pursuant to this Court's August 20, 2019 Order, below is a list of all plaintiffs' counsel of record (as most recently identified in the signature pages of the Consolidated Amended Complaint, ECF No. 92):

Alan E. Schoenfeld (admitted *pro hac vice*)
Ryan M. Chabot (admitted *pro hac vice*)
WILMER CUTLER PICKERING HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, New York 10007
(212) 230-8880
Alan.Schoenfeld@WilmerHale.com
Ryan.Chabot@WilmerHale.com

Andres C. Salinas (DC Bar No. 156118)
WILMER CUTLER PICKERING HALE AND DORR LLP
1875 Pennsylvania Avenue NW
Washington, DC 20006
(202) 663-6289
Andres.Salinas@WilmerHale.com

*Counsel for Wesley I. Purkey*

Joshua C. Toll
D.C. Bar No. 463073 King & Spalding LLP
1700 Pennsylvania Avenue, N.W.
Washington, DC 20006
(202) 737-8616
jtoll@kslaw.com

Margaret O'Donnell
P.O. Box 4815
Frankfort, KY 40604
(502) 320-1837
mod@dcr.net

*Counsel for Plaintiff Anthony Battle*

Ginger D. Anders (Bar No. 494471)
Jonathan S. Meltzer (Bar No. 888166546)
Brendan Gants (Bar No. 1031419)
MUNGER, TOLLES & OLSON LLP

1155 F Street N.W., Seventh Floor
Washington, D.C. 20004-1357
(202) 220-1100

*Counsel for Plaintiff Brandon Bernard*

Alex Kursman, Assistant Federal Defender
Shawn Nolan, Chief, Capital Habeas Unit
Federal Community Defender Office, E.D. Pa.
601 Walnut Street, Suite 545 West
Philadelphia, PA 19106
Telephone - 215-928-0520
Email – alex_kursman@fd.org

*Counsel for Plaintiff Alfred Bourgeois*

Joseph Luby, Assistant Federal Defender
Federal Community Defender Office, E.D. Pa.
 601 Walnut Street, Suite 545 West
Philadelphia, PA 19106
Telephone - 215-928-0520
Email – joseph_luby@fd.org

*Counsel for Plaintiff Chadrick Fulks*

Amy Lentz (DC Bar No. 990095)
Steptoe & Johnson, LLP
1300 Connecticut Avenue NW
Washington, DC 20036
202.429.1320

*Counsel for Plaintiff Orlando Hall*

Scott W. Braden
Assistant Federal Defender
Arkansas Federal Defender Office
Ark Bar Number 2007123
1401 West Capitol, Suite 490
Little Rock, Arkansas 72201
(501) 324-6114
Scott_Braden@fd.org

Jennifer Ying (DE #5550)
Andrew Moshos (DE #6685)
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 N. Market St.
P.O. Box 1347
Wilmington, Delaware 19801

(302) 658-9300
jying@mnat.com
amoshos@mnat.com

*Counsel for Plaintiff Norris G. Holder, Jr.*

Jon Jeffress
KaiserDillon PLLC
1099 14th Street NW
8th Floor West
Washington, DC 20005
Telephone - 202-640-2850
Email - jjeffress@kaiserdillon.com

Timothy Kane, Assistant Federal Defender
Shawn Nolan, Chief, Capital Habeas Unit
Federal Community Defender Office, E.D. Pa.
601 Walnut Street, Suite 545 West
Philadelphia, PA 19106
Telephone - 215-928-0520
Email – timothy_kane@fd.org
Email – shawn_nolan@fd.org

*Counsel for Plaintiff Dustin Lee Honken*

Donald P. Salzman (D.C. Bar No. 479775)
Charles F. Walker (D.C. Bar No. 427025)
Steven M. Albertson (D.C. Bar No. 496249)
Skadden, Arps, Slate, Meagher & Flom LLP
1440 New York Avenue, N.W.
Washington, D.C. 20005
(202) 371-7983
donald.salzman@skadden.com

*Counsel for Plaintiff Corey Johnson*

David S. Victorson
Hogan Lovells US LLP
Columbia Square
555 13th Street NW
Washington, DC  20004
(202) 637-5600
(202) 637-5910 (fax)
david.victorson@hoganlovells.com

Pieter Van Tol (admitted *pro hac vice*)
Hogan Lovells US LLP
390 Madison Avenue

3

New York, NY 10017
(212) 918-3000
(212) 918-3100 (fax)
pieter.vantol@hoganlovells.com

*Counsel for Plaintiff Daniel Lewis Lee*

Kathryn L. Clune
Crowell & Moring LLP
1001 Pennsylvania Avenue NW
Washington D.C. 20004-2595
(202) 624-2705
kclune@crowell.com

Harry P. Cohen (pro hac vice application pending)
Michael K. Robles (pro hac vice application pending)
James Stronski (pro hac vice application pending)
Crowell & Moring LLP
590 Madison Avenue New York, NY 10022
(212) 223-4000
(212) 223-4134(fax)
hcohen@crowell.com
mrobles@crowell.com
jstronski@crowell.com

Jon M. Sands (pro hac application to be filed)
Dale A. Baich (pro hac application to be filed)
Jennifer M. Moreno
Federal Public Defender
District of Arizona
850 West Adams Street, Suite 201
Phoenix, Arizona 85007
602-382-2816
602-889-3960 (fax)
dale_baich@fd.org
jennifer_moreno@fd.org

*Counsel for Plaintiff Keith Nelson*

Shawn Nolan, Chief, Capital Habeas Unit
Federal Community Defender Office, E.D. Pa.
601 Walnut Street, Suite 545 West
Philadelphia, PA 19106
Telephone - 215-928-0520
Email – timothy_kane@fd.org
Email – shawn_nolan@fd.org

*Counsel for Plaintiff Jeffrey Paul*

4

Paul F. Enzinna
D.C. Bar No. 421819
Ellerman Enzinna PLLC
1050 30th Street, NW
Washington, DC 20007
202.753.5553

*Counsel for Plaintiff James H. Roane, Jr.*

Amy Karlin
Interim Federal Public Defender
Celeste Bacchi
Jonathan C. Aminoff
Deputy Federal Public Defenders
321 E. Second Street
Los Angeles, CA 90012
(213) 894-2854

*Counsel for Plaintiff Julius O. Robinson*

Gerald W. King, Jr. Ga. Bar No. 140981
Jeffrey Lyn Ertel Ga. Bar No. 249966
FEDERAL DEFENDER PROGRAM, INC.
101 Marietta Street, Suite 1500
Atlanta, Georgia 30303
404-688-7530
(fax) 404-688-0768
Gerald_King@fd.org
Jeff_Ertel@fd.org

Stephen Northup
VSB #16547
Troutman Sanders LLP
P.O. Box 1122
Richmond, Virginia 23218-1122
(804) 697-1240
(fax) (804) 698-5120
steve.northup@troutmansanders.com

Frederick R. Gerson VSB #39968
Bank Of America Center
1111 East Main Street, 16th Floor Richmond,
Virginia 23219
(804) 482-1121
fgerson@dagglaw.com

5

*Counsel for Richard Tipton, III.*

Evan Miller (DC Bar # 219310)
Vinson & Elkins LLP
2200 Pennsylvania Avenue, NW
Suite 500 West
Washington, D.C. 20037
(202) 639-6605
(202) 478-1815 (fax)
emiller@velaw.com

*Counsel for Bruce Webster*

/s/Jean Lin
Attorney for Defendants