UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| In the Matter of the Federal Bureau of Prisons' Execution Protocol Cases,<br><br>LEAD CASE: *Roane, et al. v. Barr*<br><br>THIS DOCUMENT RELATES TO:<br><br>*ALL CASES* | Case No. 19-mc-145 (TSC) |

### ORDER

Because Defendants plan to execute him on August 28, 2020, Plaintiff Keith Nelson asks the court to expedite trial on Count II of the Amended Complaint—which alleges that the lethal injection of pentobarbital will cause needless suffering in violation of the Eighth Amendment. (ECF No. 174, Mot. to Expedite Trial; ECF No. 92, Am. Compl. ¶¶ 122–126.) Defendants oppose expedited trial and in fact oppose trial altogether: they move to dismiss Count II for failure to state a claim, arguing that no amount of evidence presented at trial could establish an Eighth Amendment violation. (ECF No. 169, Mot. to Dismiss.)

This court considered the Eighth Amendment claim just a month ago, on Plaintiffs' motion for a preliminary injunction. (*See* ECF No. 135, Mem. Op.) To prove an Eighth Amendment violation, Plaintiffs must first show that there is a "substantial risk of serious harm." *Glossip v. Gross*, 135 S. Ct. 2726, 2737 (2015). In determining whether these Plaintiffs were likely to make that showing, this court considered expert declarations establishing that the majority of inmates executed with pentobarbital suffered flash pulmonary edema. (*See* ECF No. 26-12, Expert Decl. of Mark Edgar, ¶ 74; ECF No. 24, Expert Decl. of Gail Van Norman, Autopsy Findings, at 85.) The declarations explained that pulmonary edema, which interferes

with breathing, "produces sensations of drowning and asphyxiation" resulting in "extreme pain, terror and panic." (Edgar Decl., ¶¶ 78–80.)  The court also considered the eyewitness accounts of executions using pentobarbital, in which observers described inmates repeatedly gasping for breath, as well as one expert's assertion that it is a "virtual medical certainty that most, if not all, prisoners will experience excruciating suffering, including sensations of drowning and suffocation" during an execution conducted in accordance with Defendants' current execution protocol.  (Van Norman Decl., ¶ 18.)  Considering all of this, the court found that Plaintiffs would likely succeed in showing that Defendants' use of pentobarbital posed a "substantial risk of serious harm." *Glossip*, 135 S. Ct. at 2737.  After making that and other necessary findings, the court preliminarily enjoined four impending executions.  (Mem. Op. at 22.)

A panel of the D.C. Circuit unanimously left the injunction in place pending Defendants' appeal, but the Supreme Court vacated it hours later in a 5-4 decision, allowing the execution of Daniel Lewis Lee that morning, and of Wesley Ira Purkey and Dustin Lee Honken later that week.  *See In re Fed. Bureau of Prisons' Execution Protocol Cases,* No. 20-5199 (D.C. Cir. July 13, 2020)*; Barr v. Lee,* No. 20A8, 2020 WL 3964985, *4 (U.S. July 14, 2020) (per curiam). Purkey's autopsy showed that he suffered "severe bilateral acute pulmonary edema"—his right lung weighed 1140 grams, his left lung weighed 1160 grams, and there was "[f]rothy pulmonary edema in trachea and mainstem bronchi." (*See* ECF No. 183, Ex. 1 at 1, Report of Dr. DeJong.) Dr. Gail Van Norman explained that this indicated that Purkey's lungs filled with fluid and that he suffered excruciating air hunger while still alive. (*See id.,* Ex. 2, Second Supplemental Expert Declaration of Gail A. Van Norman, M.D.)

The Supreme Court's order vacating the injunction altered this court's understanding of the scope of the Eighth Amendment protection in ways that implicate the pending motion to

dismiss.  For example, while this court would have originally considered the evidence from Purkey's autopsy to be important in pleading and then establishing an Eighth Amendment claim, the Supreme Court's holding in *Lee* suggests that even that is not enough.  When the Supreme Court decided *Lee*, it did so having considered this court's conclusion that pulmonary edema and excruciating pain was very likely to occur.  It thus would not alter the analysis, nor the conclusion, to now include the evidence that Purkey did in fact experience the edema and pain as predicted.  *Lee* also clarified that *Bucklew v. Precythe*, 139 S. Ct. 1112 (2019) extends to general pentobarbital challenges, such as this one, not just to the unique medical condition of the inmate in that case—as this court had held in granting the preliminary injunction.  *See Lee*, 20A8 at 2 (noting that pentobarbital "[w]as upheld by [the] Court last year, as applied to a prisoner with a unique medical condition that could only have increased any baseline risk of pain associated with pentobarbital as a general matter").

    *Lee* also altered another premise upon which this court had originally relied: that with sufficient evidence, Plaintiffs could establish that even a widely tolerated practice (such as the use of pentobarbital) was nevertheless objectively intolerable.  This court understood that pentobarbital is widely used, but noted that Plaintiffs in this case—unlike those in other cases—had amassed an extensive factual record pointing to a "virtual medical certainty" that use of pentobarbital would result in "excruciating suffering."  (Mem. Op. at 11 (citing Van Norman Decl. at 7).)  The record established that flash pulmonary edema develops "almost instantaneously" following injection (ECF No. 117-1, Supp. Decl. of Gail Van Norman, ¶¶ 19–24) and that pentobarbital renders patients "unresponsive" but still capable of experiencing the severe pain of the flash pulmonary edema (Van Norman Supp. Decl. ¶¶ 10–13, 21).  These conclusions were supported by accounts of certain executions—where inmates visibly gasped for

breath—and by autopsies that revealed "foam or froth" in the inmates' airways. (*See, e.g.*, Edgar Decl. ¶¶ 78–79.) But the Supreme Court was aware of all this when it concluded that Plaintiffs were not likely to succeed in establishing the risk of harm necessary for an Eighth Amendment claim; it would thus seem contrary to *Lee* for this court to enter judgment on these facts and find an Eighth Amendment violation. So long as pentobarbital is widely used, *Lee* suggests that no amount of new evidence will suffice to prove that the pain pentobarbital causes reaches unconstitutional levels.

Nelson urges a more limited reading of *Lee*. He suggests that *Lee*'s conclusion had more to do with the last-minute nature of the stay than with the substance of the claim. (*See* ECF No. 184, Pls. Opp. at 15.) Notably, the Supreme Court did mention timing as it vacated the injunction, holding that Plaintiffs failed to make "the showing required to justify *last-minute intervention* by a Federal Court." *Lee,* 20A8 at 2 (emphasis added). At first blush, this appears to leave open the possibility that Plaintiffs' showing might have been sufficient had the injunction come earlier. But this appears not to be the case because the Supreme Court came to the same conclusion for Plaintiffs with execution dates that day and those with execution dates two months later, such as Nelson. Indeed, the injunction was not remotely "last-minute" with respect to Nelson, but the court nonetheless vacated the injunction as to him. This suggests that timing was neither dispositive nor weighty. If it was, the injunction for Nelson would stand, or at the very least the Court would have noted that any heightened standard caused by the last-minute injunction did not apply to him.

Nelson also suggests that the import of *Lee* is limited by its posture: a review of a preliminary injunction. (Pls. Opp. at 15 (citing *Ramirez v. U.S. Immigr. & Customs Enf't*, 338 F. Supp. 3d 1, 20 n.1 (D.D.C. 2018).) It is true that the standards for a motion to dismiss and a

4

preliminary injunction are distinct, but that does not mean this court can ignore *Lee*'s general language regarding the Eighth Amendment standard.  *Lee* indicates that absent particular medical circumstances, the use of pentobarbital will withstand Eighth Amendment scrutiny, no matter the evidence of excruciating pain.

      This all leads to the current motion to dismiss: in light of *Lee's* holding, the motion to dismiss must be granted.  Dismissal under Rule 12(b)(6) is appropriate "if the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Barr v. Clinton*, 370 F.3d 1196, 1202 (D.C. Cir. 2004) (citation omitted).  Under *Lee*, even if this court found in favor of Plaintiffs on all alleged facts, there would be no Eighth Amendment violation because the evidence of pain would not satisfy *Lee*'s high bar for an objectively intolerable risk of pain.  Plaintiffs have therefore failed to state a claim upon which relief can be granted.  The Motion to Dismiss Count II is granted[1] and the Motion to Expedite Trial on that count is necessarily denied.  It is of course possible that this court has read *Lee* too broadly.  If that is the case, the court will expedite trial on remand.

Date:  August 15, 2020

                                            *Tanya S. Chutkan*
                                          TANYA S. CHUTKAN
                                          United States District Judge

---

[1] This ruling applies to all cases except that of Plaintiff Norris Holder, who has separately alleged that he has epilepsy and is taking the medication carbamazepine to prevent seizures, which he alleges "is likely to affect the way he metabolizes pentobarbital." (ECF No. 186, Holder Suppl. Br., at 3.)  Given this, Defendants have not moved to dismiss Holder's Eighth Amendment claim on the basis that he fails to allege that there is a serious risk of substantial harm (Defendants do move to dismiss it on the grounds that he has failed to plead a viable alternative).  Because this order relies exclusively on the fact that Plaintiffs have failed to allege a risk of substantial harm sufficient for relief, its holding does not apply to Holder, whose allegations related to risk of harm are substantially different.