**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| In the Matter of the ) | |
| Federal Bureau of Prisons' Execution ) | |
| Protocol Cases, ) | |
| ) | |
| LEAD CASE: *Roane et al. v. Barr* ) | Case No. 19-mc-145 (TSC) |
| ) | |
| ) | |
| THIS DOCUMENT RELATES TO: ) | |
| ) | |
| *Roane, et al. v. Barr, et al.*, No. 05-2337 ) | |
| ) | |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO VACATE PRELIMINARY
INJUNCTIONS BARRING THE EXECUTIONS OF PLAINTIFFS JAMES ROANE,
RICHARD TIPTON, CORY JOHNSON, ORLANDO HALL,
<u>BRUCE WEBSTER, ANTHONY BATTLE, AND JEFFREY PAUL</u>**

This Court should vacate the preliminary injunctions barring the executions of Plaintiffs James Roane, Richard Tipton, Cory Johnson, Orlando Hall, Bruce Webster, Anthony Battle, and Jeffrey Paul because they are based on now-inoperative complaints challenging the Federal Bureau of Prisons' ("BOP") now-retracted three-drug execution protocol.

By its very nature, a preliminary injunction preserves the status quo only temporarily pending resolution of the underlying claims, and it is issued only if the movant can meet the four-factor test articulated by the Supreme Court in *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  The preliminary injunctions at issue here, which were issued years ago based on superseded complaints alleging now-stale facts, cannot be maintained because the showing justifying the equitable relief no longer exists with respect to Plaintiffs' current claims.  Not only have Plaintiffs filed a consolidated amended complaint challenging BOP's current single-drug execution protocol, but this Court, the D.C. Circuit, and the Supreme Court have also since allowed three executions to proceed under that protocol, despite numerous heavily litigated objections that included many of Plaintiffs' non–Eighth Amendment claims.  And this Court has dismissed

Plaintiffs' Eighth Amendment challenge to the single-drug protocol, further demonstrating that the three-drug protocol at issue in Plaintiffs' underlying preliminary-injunction motions is obsolete.

These preliminary injunctions are vestiges of challenges that no longer exist. In light of these changed circumstances and the drastically altered legal landscape, there is no longer any legal or equitable basis for leaving the preliminary injunctions in place. This is true whether the Court applies the "changed circumstances" standard that clearly governs or, as Plaintiffs urge, the "extraordinary circumstances" standard applicable to modifications of final judgments. To the extent Plaintiffs believe that they nevertheless are entitled to preliminary injunctive relief under the current law and facts, they are free to move for such relief based on the operative complaint as appropriate—as a number of other plaintiffs have. But no sound basis exists to allow these Plaintiffs (alone among all those on death row) to benefit from the happenstance of preliminary injunctions that no longer bear any real relationship to the disputed legal and factual issues in this case. The outdated injunctions should accordingly be dissolved.

## ARGUMENT

### I. UNDER ANY STANDARD OF REVIEW, THE PRELIMINARY INJUNCTIONS SHOULD BE DISSOLVED

Plaintiffs fail to provide any reasonable justification for maintaining the obsolete preliminary injunctions at issue. To start, Plaintiffs' opposition misstates the appropriate standard for this Court's review, claiming that Defendants must show "extraordinary circumstances" to justify vacatur. Pls.' Opp'n to Defs.' Mot. to Vacate Prelim. Injs. at 5, 7, 8, 9, 10, 13, ECF No. 197 ("Opp'n"). But as Plaintiffs themselves acknowledge, the "extraordinary circumstances" standard governs when one seeks "relief *from judgment.*" *Id.* at 8 (quoting *Gonzalez v. Crosby*, 545 U.S. 524, 535 (2005) ("[O]ur cases have required a movant seeking relief under Rule 60(b)(6) to show 'extraordinary circumstances' justifying the reopening *of a final judgment.*" (emphasis added)); *SEC v. Bilzerian*, 815 F. Supp. 2d 324, 328 (D.D.C. 2011) (addressing *permanent* injunctions that had been affirmed by the D.C. Circuit) (emphasis added), *aff'd*, No. 11-5337, 2012 WL 1922465 (D.C. Cir. 2012)); *cf. Salazar v. District of Columbia*, 896 F.3d 489, 498 (D.C. Cir.

2018) (addressing a motion to modify a consent decree and holding that, "because exercise of the court's power under Rule 60(b) reopens a final judgment, the party requesting modification bears the burden of proving that 'a significant change in circumstances'—whether factual or legal— justifies revision of the order") (quoting *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 384 (1992)).

Plaintiffs do not cite any case suggesting that "extraordinary circumstances" are required to justify vacatur of an interlocutory order such as a preliminary injunction. In fact, the D.C. Circuit has applied only a "changed circumstances" standard to evaluate whether the district court abused its discretion by allowing a preliminary injunction to remain in place. *See, e.g.*, *Petties ex rel. Martin v. District of Columbia*, 662 F.3d 564, 571 (D.C. Cir. 2011). Indeed, a court may modify a preliminary injunction for "any . . . reason that justifies relief" or when the order "prospectively is no longer equitable." *Hudson v. AFGE*, 281 F. Supp. 3d 11, 13–14 (D.D.C. 2017) (quoting Rule 60(b)(5) and (6)); *see also Trump v. Int'l Refugee Assistance Project*, 137 S. Ct. 2080, 2087 (2017) (modifying preliminary injunction) (citing *Nken v. Holder*, 556 U.S. 418, 433 (2009)). Courts have also held that "dissolution [of a preliminary injunction] should depend on the same considerations that guide a judge in deciding whether to grant or deny a preliminary injunction in the first place"—namely, the four part *Winter* test. *Knapp Shoes, Inc. v. Sylvania Shoe Mfg. Corp.*, 15 F.3d 1222, 1225 (1st Cir. 1994)); *see also W. Assurance. Co., Inc. v. Connors*, 21 F.3d 431, at *2 n.7 (7th Cir. 1994) (unpublished table decision) (same); *SEC v. Vision Commc'ns, Inc.*, No. Civ. A. No. 94-0615 CRR, 1995 WL 109037, at *2 (D.D.C. Mar. 6, 1995) (indicating that an injunction may be dissolved where "changed circumstances eviscerate the justification therefore" (citations omitted)); *cf. Nken*, 556 U.S. at 433–44 (in deciding whether to stay an injunction, courts apply factors similar to the factors articulated in *Winter* "because similar concerns arise whenever a court order may allow or disallow anticipated action before the legality of that action has been conclusively determined").

Under either standard though, the preliminary injunctions may not be maintained because the legal and factual considerations underlying those injunctions have fundamentally changed. As

Defendants explained in their opening brief, after BOP adopted the single-drug protocol, Plaintiffs filed an amended complaint, superseding the complaints upon which the preliminary injunctions were based. The amendments they made were not technical or minor; they changed the very target of the claims, from a lethal-injection protocol of three drugs that raised one set of alleged concerns to a protocol of a different, single drug that raises a different set of alleged concerns. Indeed, because Plaintiffs do not contend that it is unlawful to execute them by lethal injection, the substances used in the injection are at the core of their claim. Yet, as noted, the substance used now is entirely different. It therefore makes no legal or practical difference whether the Plaintiffs could establish that execution under the old three-drug protocol would violate the law, just as it makes no difference whether they could establish, for example, that execution by hanging would violate the law. The injunctions are thus based on a factual predicate that has become purely hypothetical. As Plaintiffs themselves have acknowledged, "the facts that were alleged in the original complaint had to do with the three-drug protocol which is now inoperative and moot." Exhibit A, Tr. 8:15–18 (Aug. 15, 2019).

There has also been a dramatic shift in the legal landscape since the preliminary injunctions were entered. Even putting aside the Supreme Court's three method-of-execution decisions in *Baze*, *Glossip*, and *Buklew*—all decided after entry of the injunctions—the D.C. Circuit and the Supreme Court recently vacated three separate preliminary injunctions barring BOP from using the single-drug protocol *in this case*. *See In re Federal Bureau of Prisons' Execution Protocol Cases*, 955 F.3d 106 (D.C. Cir. 2020); *Barr v. Lee*, No. 20A8 at 1, 591 U.S. __ (2020) (per curiam); *Barr v. Purkey*, No. 20A10, 2020 WL 4006809, at *1 (July 16, 2020). This Court separately concluded that Plaintiffs were unlikely to succeed on several of the non–Eighth Amendment claims in their amended complaint, *see* ECF No. 145, and the D.C. Circuit declined a request to stay executions based on the argument that those claims were likely to succeed, *see In the Matter of the Fed. Bur. Of Prisons Execution Protocol Cases*, No. 20-5206 (D.C. Cir. July 16, 2020). In fact, all of the claims asserted by the PI Movants (*i.e.*, Lee, Purkey, Honken, and Nelson) were ultimately rejected by the Supreme, Court, the D.C. Circuit, and this Court, and Lee's, Purkey's,

and Honken's executions were allowed to proceed under the same protocol that Plaintiffs challenge.  Moreover, and most recently, this Court dismissed the Eighth Amendment claim (Count II) in Plaintiffs' amended complaint for failure to state a claim, explaining that "[t]he Supreme Court's order vacating the injunction altered this court's understanding of the scope of the Eighth Amendment protection in ways that implicate the pending motion to dismiss."  *See* ECF No. 193 at 2–3.  Tellingly, none of this Court's extensive analysis in those decisions (nor any of the analysis of the D.C. Circuit or the Supreme Court in the recent decisions regarding the pentobarbital protocol) has addressed whether the earlier three-drug protocol is lawful.  And for good reason: in light of BOP's adoption of the new protocol, the superseded protocol is simply irrelevant to the merits or equities of Plaintiffs' claims.  Indeed, had this Court denied Plaintiffs' request to enjoin the old protocol, they would surely argue that they are entitled to challenge the new protocol before their executions.  And they would be right, because the legal and factual bases underlying their previous claims have fundamentally changed.

In addition, the changed circumstances strongly suggest that Plaintiffs are unlikely to prevail even based on the operative complaint, let alone one that has been superseded.  Plaintiffs reject the clear implication of the recent decisions in this case and argue that several of their various claims "remain pending against the 2019 Protocol."  Opp'n at 15.  The mere existence of claims against Defendants, of course, is not a valid basis for maintaining a preliminary injunction; an injunction is justified only if the movants are likely to succeed on those claims.  *See Winter*, 555 U.S. at 20.  And, as Defendants demonstrated in their pending combined dispositive motion, Plaintiffs' remaining challenges to the current protocol all lack merit.  *See, e.g.*, ECF No. 170; ECF No. 191.

The Supreme Court's recent reversal of the Seventh Circuit's grant of a stay of execution in *United States v. Purkey*, 20A4, 591 U.S. ___ (2020) (per curiam), is instructive on the requirement of likelihood of success in order to maintain temporary injunctive relief.  In that case, the Seventh Circuit ordered that Purkey's execution be stayed pending further order of that court or issuance of the court's mandate—which would not occur until more than a month after the

scheduled execution date.  In doing so, the court of appeals acknowledged that one of the "requirements for a stay" identified by the Supreme Court in *Nken* is that "the stay applicant has made a strong showing that he is likely to succeed on the merits."  *Purkey v. United States*, 964 F.3d 603, 618 (7th Cir. 2020).  The court did not conclude, however, that Purkey was likely to succeed on the merits.  Instead, the court distinguished the case on the ground that it involved the death penalty, whereas *Nken* did not.  *See id*.  Given the approaching execution date, Defendants sought vacatur of the stay from the Supreme Court, which the Supreme Court quickly granted, allowing Purkey's execution to proceed.  *See Purkey*, 20A4.  Just as in that case, Plaintiffs are not entitled to an injunction barring their executions because they have not (and cannot) establish that they are likely to prevail.

## II.     DEFENDANTS' MOTION TO VACATE THE PRELIMINARY INJUNCTIONS WAS TIMELY

Without any plausible argument that the preliminary injunctions should remain in effect, Plaintiffs are forced to rely heavily on the timing of Defendants' motion.  They criticize Defendants for seeking to vacate the injunctions more than a year after the adoption of the new protocol.  *See* Opp'n at 1, 7.  But, here again, Plaintiffs rely on inapplicable law.  They cite *THEC International-Homdard Cordova Group-Nazari Construction Company v. Cohen Moher, LLP*, 301 F. Supp. 3d 1 (D.D.C. 2018) ("*THEC Int'l*"), for the proposition that a Rule 60(b) motion should be filed within three months of "the action of the court that is the focus of the motion."  Opp'n at 6 (citing *THEC Int'l*, 301 F. Supp. 3d at 9).  The "action" at issue in that case, however, was a final judgment, not a preliminary injunction.  *See THEC Int'l*, 301 F. Supp. 3d at 9 ("In this Circuit courts almost uniformly deny Rule 60(b)(6) motions as untimely when they are filed more than three months *after judgment*." (emphasis added)).  Similarly, in *Darby v. Shulkin*, 321 F.R.D. 10 (D.D.C. 2017), which Plaintiffs also cite, *see* Opp'n at 6, the court discussed the appropriate timing of relief under Rule 60 "after judgment."  *Darby*, 321 F.R.D. at 12.  As with Plaintiffs' reliance on the inapplicable "extraordinary circumstances" standard that applies in the context of a final judgment, the distinction is important.  The same interests in finality that apply with respect to a final judgment

do not attach in the context of a preliminary injunction, which must continue to meet the *Winter* four-factor test to endure while the underlying case is being litigated. *See, e.g.*, *Nken*, 556 U.S. at 433–44; *Vision Commc'ns*, 1995 WL 109037, at *2.

In any event, Plaintiffs' suggestion that Defendants did not timely move to vacate the preliminary injunctions is unfounded. Plaintiffs suggest that, by not opposing the preliminary injunctions in 2007, Defendants somehow consented to leave the injunctions undisturbed through the remainder of the case "to ensure that Plaintiffs would survive to see their claims adjudicated on the merits, win or lose." Opp'n at 13. Defendants did not so consent. To the contrary, Defendants expressly stated that they did "not waive any objections or arguments on the merits of the issues in this litigation and d[id] not admit the veracity of any allegations of any of the operative pleadings in this case," *Roane v. Barr*, 05-cv-2337, ECF No. 39—pleadings that are now obsolete in light of Plaintiffs' amended complaint, *see Nat'l City Mortg. Co. v. Navarro*, 220 F.R.D. 102, 106 (D.D.C. 2004). And Defendants moved to dissolve the preliminary injunctions on multiple occasions, further undermining Plaintiffs' argument. *See* Defs.' Mot. at 4–5.

Plaintiffs point next to Defendants' agreement to a discovery and briefing schedule during a status conference on August 15, 2019. *See* Opp'n at 1. But Defendants made it clear during the conference that, in agreeing to the schedule, it would not postpone any executions, including the January 2020 execution of another plaintiff, Alfred Bourgeois, Exhibit A, Tr. 6:7–8 (Aug. 15, 2019), and the Court acknowledged that Bourgeois would need to move to stay the execution, *id.*, Tr. 11:14–17. Since then, Defendants have never deviated from their position that executions will move forward regardless of any briefing or discovery schedule in the underlying litigation. *See, e.g.*, ECF No. 99 (providing notice of execution dates for Lee, Purkey, Honken, and Nelson); ECF No. 111 (opposing motions for preliminary injunction to bar executions); ECF No. 181 (opposing motion to defer briefing on Defendants motion to vacate PIs). It is therefore irrelevant that Defendants thereafter joined Plaintiffs in moving to modify the answer deadline and briefing schedule to allow an additional pre-amendment deposition of a BOP representative, which was delayed because of the pandemic.

Plaintiffs nevertheless argue that they will be prejudiced if the preliminary injunctions are lifted, because, had Defendants moved to vacate the preliminary injunctions sooner, Plaintiffs "would have moved for expedited discovery and would have sought a trial on the merits within the last year." Opp'n at 7. That argument has no merit in light of this Court's recent dismissal of Count II of the amended complaint, which is the only claim that plausibly could have required a trial. *See* ECF No. 193 at 5 (concluding that Nelson's Motion to Expedite Trial is "necessarily denied" based on the dismissal of Count II). The idea that Defendants are somehow estopped from seeking to vacate the preliminary injunctions simply has no basis. And Plaintiffs' suggestion that they would have treated an earlier motion to vacate the injunctions as proper is difficult to credit.

Although the timing of Defendants' motion to vacate the preliminary injunctions is irrelevant to determining whether those injunctions properly may be maintained based on the *Winter* and *Nken* factors, the motion was timely—even under Plaintiffs' view that a Rule 60(b) motion must be filed within three months of the relevant change in circumstances. *See* Opp'n at 7. Defendants moved to vacate the preliminary injunctions on July 31, 2020, just two months after Plaintiffs amended their complaint and approximately two weeks after rulings by this Court, the D.C. Circuit, and the Supreme Court made clear that Plaintiffs were unlikely to succeed on the merits of their claims. *See* ECF No. 173; *see also cf.* ECF No. 193 at 2–4 (acknowledging the changed landscape following the Supreme Court's decision in *Lee*, and therefore dismissing Count II of the amended complaint). And Defendants' decision to move to vacate these injunctions only after the first executions under the new protocol took place in July 2020 (following extensive litigation, including in the Supreme Court) was prudent and only benefitted Plaintiffs in the interim.

## III.   THE PUBLIC INTEREST WEIGHS IN FAVOR OF DISSOLUTION

Finally, Plaintiffs' opposition ignores the strong public interest in favor of dissolving the preliminary injunctions. *See* ECF No. 173 at 9. The public has a "powerful and legitimate interest in punishing the guilty," *Calderon v. Thompson*, 523 U.S. 538, 556 (1998), (citation omitted), "by

carrying out a sentence of death in a timely manner," *Baze v. Rees*, 553 U.S. 35, 61 (2008); *see also Bucklew v. Precythe*, 139 S. Ct. 1112, 1133 (2019) ("Both the [government] and the victims of crime have an important interest in the timely enforcement of a [death] sentence.").  The Plaintiffs here were convicted of murder more than twenty years ago.  Their convictions and sentences have been upheld, and, with the exception of Webster, each Plaintiff has been eligible for execution for more than ten years.  This Court, the D.C. Circuit, and the Supreme Court have all allowed executions to proceed under the government's revised Protocol, and there is no reason for further delay—certainly not based on decade-old preliminary injunctions rooted in Plaintiffs' challenge to a now-obsolete execution protocol.

Nor is there a logical or equitable reason to allow the government to execute inmates like Lee, Purkey, and Honken (who were convicted later than Plaintiffs) after defeating those inmates' challenges to the current protocol, yet bar the government from executing Plaintiffs (who were convicted years earlier) simply because they were at one time able to obtain preliminary injunctions against a different and now-irrelevant protocol and under a fundamentally different legal landscape.  To reiterate, Plaintiffs remain free to litigate any appropriate challenges to the current protocol, just as other inmates may do.  But given the strong public interest in allowing the executions to proceed, and the lack of any legal or equitable reason for leaving the preliminary injunctions in place, Defendants respectfully request that the Court vacate the outdated preliminary injunctions.  Particularly in light of Plaintiffs' contention that the vacatur motion should have been brought earlier, Defendants also respectfully ask that the Court issue its decision promptly, by September 4, 2020.

## CONCLUSION

For the foregoing reasons and for the reasons stated in Defendants' motion, Defendants respectfully request that the Court vacate the preliminary injunctions barring the executions of Plaintiffs Roane, Tipton, Hall, Webster, Battle, and Paul.

Dated:  August 20, 2020

Respectfully submitted,

MICHAEL R. SHERWIN
Acting United States Attorney

DANIEL F. VAN HORN
Civil Chief, U.S. Attorney's Office

ALAN BURCH (D.C. Bar 470655)
Assistant United States Attorney
U.S. Attorney's Office
for the District of Columbia
Washington, D.C. 20530
202-252-2550
alan.burch@usdoj.gov

DAVID M. MORRELL
Deputy Assistant Attorney General

PAUL R. PERKINS
Special Counsel

JEAN LIN
Special Litigation Counsel

*/s/ Bradley P. Humphreys*
BRADLEY P. HUMPHREYS (D.C. Bar 988057)
JONATHAN KOSSAK (D.C. Bar 991478)
CRISTEN C. HANDLEY (MO Bar 69114)
Trial Attorneys
Civil Division
Federal Programs Branch
Civil Division, Department of Justice
1100 L Street, N.W.
Washington, D.C. 20005
(202) 514-3716
Jean.lin@usdoj.gov
Jonathan.kossak@usdoj.gov
Cristen.handley@usdoj.gov
Bradley.humphreys@usdoj.gov

*Attorneys for Defendants*

10

**CERTIFICATE OF SERVICE**

I hereby certify that on August 20, 2020, I caused a true and correct copy of foregoing to be served on all counsel of record via the Court's CM/ECF system. Pursuant to this Court's August 20, 2019 Order, below is a list of all plaintiffs' counsel of record (as most recently identified in the signature pages of the Consolidated Amended Complaint, ECF No. 92):

Alan E. Schoenfeld (admitted *pro hac vice*)
Ryan M. Chabot (admitted *pro hac vice*)

WILMER CUTLER PICKERING HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, New York 10007
(212) 230-8880
Alan.Schoenfeld@WilmerHale.com
Ryan.Chabot@WilmerHale.com

Andres C. Salinas (DC Bar No. 156118)
WILMER CUTLER PICKERING HALE AND DORR LLP
1875 Pennsylvania Avenue NW
Washington, DC 20006
(202) 663-6289
Andres.Salinas@WilmerHale.com

*Counsel for Wesley I. Purkey*

Joshua C. Toll
D.C. Bar No. 463073 King & Spalding LLP
1700 Pennsylvania Avenue, N.W.
Washington, DC 20006
(202) 737-8616
jtoll@kslaw.com

Margaret O'Donnell
P.O. Box 4815
Frankfort, KY 40604
(502) 320-1837
mod@dcr.net

*Counsel for Plaintiff Anthony Battle*

Ginger D. Anders (Bar No. 494471)
Jonathan S. Meltzer (Bar No. 888166546)
Brendan Gants (Bar No. 1031419)
MUNGER, TOLLES & OLSON LLP
1155 F Street N.W., Seventh Floor
Washington, D.C. 20004-1357
(202) 220-1100

*Counsel for Plaintiff Brandon Bernard*


Alex Kursman, Assistant Federal Defender
Shawn Nolan, Chief, Capital Habeas Unit
Federal Community Defender Office, E.D. Pa.
601 Walnut Street, Suite 545 West
Philadelphia, PA 19106
Telephone - 215-928-0520
Email – alex_kursman@fd.org

*Counsel for Plaintiff Alfred Bourgeois*


Joseph Luby, Assistant Federal Defender
Federal Community Defender Office, E.D. Pa.
 601 Walnut Street, Suite 545 West
Philadelphia, PA 19106
Telephone - 215-928-0520
Email – joseph_luby@fd.org

*Counsel for Plaintiff Chadrick Fulks*


Amy Lentz (DC Bar No. 990095)
Steptoe & Johnson, LLP
1300 Connecticut Avenue NW
Washington, DC 20036
202.429.1320

*Counsel for Plaintiff Orlando Hall*


Scott W. Braden
Assistant Federal Defender
Arkansas Federal Defender Office
Ark Bar Number 2007123
1401 West Capitol, Suite 490
Little Rock, Arkansas 72201
(501) 324-6114

Scott_Braden@fd.org

Jennifer Ying (DE #5550)
Andrew Moshos (DE #6685)
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 N. Market St.
P.O. Box 1347
Wilmington, Delaware 19801
(302) 658-9300
jying@mnat.com
amoshos@mnat.com

*Counsel for Plaintiff Norris G. Holder, Jr.*

Jon Jeffress
KaiserDillon PLLC
1099 14th Street NW
8th Floor West
Washington, DC 20005
Telephone - 202-640-2850
Email - jjeffress@kaiserdillon.com

Timothy Kane, Assistant Federal Defender
Shawn Nolan, Chief, Capital Habeas Unit
Federal Community Defender Office, E.D. Pa.
601 Walnut Street, Suite 545 West
Philadelphia, PA 19106
Telephone - 215-928-0520
Email – timothy_kane@fd.org
Email – shawn_nolan@fd.org

*Counsel for Plaintiff Dustin Lee Honken*

Donald P. Salzman (D.C. Bar No. 479775)
Charles F. Walker (D.C. Bar No. 427025)
Steven M. Albertson (D.C. Bar No. 496249)
Skadden, Arps, Slate, Meagher & Flom LLP
1440 New York Avenue, N.W.
Washington, D.C. 20005
(202) 371-7983
donald.salzman@skadden.com

*Counsel for Plaintiff Corey Johnson*

David S. Victorson
Hogan Lovells US LLP
Columbia Square
555 13th Street NW
Washington, DC  20004
(202) 637-5600
(202) 637-5910 (fax)
david.victorson@hoganlovells.com

Pieter Van Tol (admitted *pro hac vice*)
Hogan Lovells US LLP
390 Madison Avenue
 New York, NY 10017
(212) 918-3000
(212) 918-3100 (fax)
pieter.vantol@hoganlovells.com

*Counsel for Plaintiff Daniel Lewis Lee*

Kathryn L. Clune
Crowell & Moring LLP
1001 Pennsylvania Avenue NW
Washington D.C. 20004-2595
(202) 624-2705
kclune@crowell.com

Harry P. Cohen (pro hac vice application pending)
Michael K. Robles (pro hac vice application pending)
James Stronski (pro hac vice application pending)
Crowell & Moring LLP
590 Madison Avenue New York, NY 10022
(212) 223-4000
(212) 223-4134(fax)
hcohen@crowell.com
mrobles@crowell.com
jstronski@crowell.com

Jon M. Sands (pro hac application to be filed)
Dale A. Baich (pro hac application to be filed)
Jennifer M. Moreno
Federal Public Defender
District of Arizona
850 West Adams Street, Suite 201
Phoenix, Arizona 85007
602-382-2816
602-889-3960 (fax)

14

dale_baich@fd.org
jennifer_moreno@fd.org

*Counsel for Plaintiff Keith Nelson*


Shawn Nolan, Chief, Capital Habeas Unit
Federal Community Defender Office, E.D. Pa.
 601 Walnut Street, Suite 545 West
Philadelphia, PA 19106
Telephone - 215-928-0520
Email – timothy_kane@fd.org
Email – shawn_nolan@fd.org

*Counsel for Plaintiff Jeffrey Paul*


Paul F. Enzinna
D.C. Bar No. 421819
Ellerman Enzinna PLLC
1050 30th Street, NW
Washington, DC 20007
202.753.5553

*Counsel for Plaintiff James H. Roane, Jr.*


Amy Karlin
Interim Federal Public Defender
Celeste Bacchi
Jonathan C. Aminoff
Deputy Federal Public Defenders
321 E. Second Street
Los Angeles, CA 90012
(213) 894-2854

*Counsel for Plaintiff Julius O. Robinson*

Gerald W. King, Jr. Ga. Bar No. 140981
Jeffrey Lyn Ertel Ga. Bar No. 249966
FEDERAL DEFENDER PROGRAM, INC.
101 Marietta Street, Suite 1500
Atlanta, Georgia 30303
404-688-7530
(fax) 404-688-0768
Gerald_King@fd.org
Jeff_Ertel@fd.org

Stephen Northup
VSB #16547
Troutman Sanders LLP
P.O. Box 1122
Richmond, Virginia 23218-1122
(804) 697-1240
(fax) (804) 698-5120
steve.northup@troutmansanders.com

Frederick R. Gerson VSB #39968
Bank Of America Center
1111 East Main Street, 16th Floor Richmond,
Virginia 23219
(804) 482-1121
fgerson@dagglaw.com

*Counsel for Richard Tipton, III.*

Evan Miller (DC Bar # 219310)
Vinson & Elkins LLP
2200 Pennsylvania Avenue, NW
Suite 500 West
Washington, D.C. 20037
(202) 639-6605
(202) 478-1815 (fax)
emiller@velaw.com

*Counsel for Bruce Webster*

                    */s/ Bradley P. Humphreys*
                    Attorney for Defendants

# EXHIBIT A

```
                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA


  IN THE MATTER OF THE        .  MC No. 19-0145 (TSC)
  FEDERAL BUREAU OF PRISONS'  .  Washington, D.C.
  EXECUTION PROTOCOL CASES.   .  Thursday, August 15, 2019
  . . . . . . . . . . . . . . .  10:45 a.m.


                    TRANSCRIPT OF STATUS HEARING
               BEFORE THE HONORABLE TANYA S. CHUTKAN
                   UNITED STATES DISTRICT JUDGE


  APPEARANCES:

  For Plaintiffs            PAUL F. ENZINNA, ESQ.
  Case 05-CV-2337:          Ellerman Enzinna PLLC
                            1050 30th Street NW
                            Washington, DC 20007


  For Plaintiffs            JONATHAN C. AMINOFF, ESQ.
  Case 07-CV-2145:          Federal Public Defender
  (Via Telephone)           Central District of California
                            321 East Second Street
                            Los Angeles, CA 90012


  For Plaintiffs            ALEXANDER L. KURSMAN, ESQ.
  Case 12-CV-0782:          Federal Community Defender
                            Eastern District of Pennsylvania
                            601 Walnut Street
                            Suite 545 West
                            Philadelphia, PA 19106


  For Plaintiffs            JOSEPH W. LUBY, ESQ.
  Case 13-0938:             Federal Community Defender
                            Eastern District of Pennsylvania
                            601 Walnut Street
                            Suite 545 West
                            Philadelphia, PA 19106


  For Defendants:           DENISE M. CLARK, AUSA
                            U.S. Attorney's Office
                            555 Fourth Street NW
                            Washington, DC 20530


  Court Reporter:           BRYAN A. WAYNE, RPR, CRR
                            U.S. Courthouse, Room 4704-A
                            333 Constitution Avenue NW
                            Washington, DC 20001
```

1          P R O C E E D I N G S

2          THE DEPUTY CLERK:  Your Honor, we have civil action

3   05-2337, James Roane, Jr., et al., versus Karen Tandy, et al.;

4   civil action 07-2145, Julius Robinson versus Michael Mukasey,

5   et al.; we have civil action 12-782, Alfred Bourgeois versus

6   United States Department of Justice, et al.; and we have 13-938,

7   Chadrick Fulks versus United States Department of Justice, et al.

8          I would ask counsel to identify yourself and the case you

9   represent, starting with case 05-2337.  Only counsel that will

10  be speaking please identify yourself.

11         MR. ENZINNA:  Good morning, Your Honor.  Paul Enzinna,

12  and I'll be doing most of the speaking.

13         THE COURT:  Good morning.

14         THE DEPUTY CLERK:  Plaintiff in civil action 07-2145,

15  please identify yourself if you will be speaking.

16         MR. AMINOFF:  Good morning, Your Honor.

17  Jon Aminoff for Julius Robinson.

18         THE COURT:  Thank you.

19         THE DEPUTY CLERK:  Plaintiff in case 12-782, please

20  identify yourself if you're speaking.

21         MR. KURSMAN:  Good morning, Your Honor.  Alex Kursman

22  for Alfred Bourgeois, 0782.

23         THE COURT:  Thank you.

24         THE DEPUTY CLERK:  And civil action 13-938, please

25  identify yourself for the record if you're speaking today.

1      MR. LUBY:  Good morning, Your Honor.  Joseph Luby

2 speaking on behalf of the plaintiff, Chadrick Fulks, in No. 13-938.

3      THE COURT:  Thank you.

4      THE DEPUTY CLERK:  And then defense counsel for all

5 the cases.

6      MS. CLARK:  Good morning, Your Honor.  Denise Clark on

7 behalf of the defendants.

8      THE COURT:  Good morning.

9      All right.  There are four cases before the Court

10 challenging the Federal Bureau of Prisons' execution protocol.

11 And while the parties in the Roane case engaged in extensive

12 discovery before the case was stayed pending the review and

13 revisions to the lethal-injection protocol used to effectuate

14 federal death sentences, the parties in the other three cases

15 did not have the opportunity to conduct significant discovery

16 before their respective cases were stayed.

17      On July 25 of this year, in all four cases, defendants

18 filed a notice of an adoption of a revised protocol.  That's ECF

19 Nos. 385, 22, 18, and 9.

20      The notice informed the Court that the protocol provides

21 for the use of pentobarbital sodium as a lethal agent and also

22 included the revised protocol.  In addition, on that same day in

23 the Bourgeois case, defendants filed a notice of Mr. Bourgeois's

24 execution for January 13, 2020.

25      On August 1, the parties in the Roane case filed separate

1    status reports.  Those are ECF Nos. 389 and 390.  Plaintiffs

2    stated their intention to file a motion to reopen discovery in

3    accordance with the court's November 2011 order stating that any

4    motion to reopen discovery shall be filed within 30 days of the

5    notice of revised protocol.  Plaintiffs asked the court to defer

6    setting any schedule before ruling on its discovery motion.

7         Defendant's status report noted that, given the use of a

8    different lethal substance, they believed that an amended

9    complaint was required, and the defendants requested a status

10   conference to be scheduled in advance of any motions.

11        On August 5, I issued an order in all four cases scheduling

12   a status conference and directing the parties who hadn't already

13   done so to file a status report.

14        On August 12, 2019, the parties in Robinson, Bourgeois,

15   and Fulks filed identical status reports stating it has been

16   difficult to come to consensus on next steps without some

17   direction from the Court.

18        Now pending before me are two motions, an August 14, 2019,

19   consent motion in the Bourgeois case to consolidate the case

20   with the Roane case, and that's ECF No. 23, and an August 14,

21   2019 consent motion in the Fulks case to consolidate that with

22   the Roane case, and that's ECF No. 14.

23        There has not been a motion to consolidate the Robinson

24   case.  Before that case was stayed pending the BOP's issuance of

25   a revised lethal injection protocol in June of 2008, the Court

1    -- obviously, that was not me, a different judge -- asked the

2    parties for their respective positions on consolidation.

3         The parties then filed a notice, which is ECF No. 8,

4    expressing some concern regarding the scope of discovery and the

5    timing of dispositive motions given the state of the Roane

6    proceedings.

7         Now, counsel for Mr. Robinson, now that discovery will

8    need to be reopened for all cases, is your client amenable to

9    consolidation?

10        MR. AMINOFF:  Thank you, Your Honor.  Jon Aminoff for

11   Julius Robinson.  Yes.  We believe he is.  I haven't made it to

12   Terre Haute yet.  I'm going to see him tomorrow, and our

13   intention would be to file a motion to join on Monday.

14        THE COURT:  All right.  Counsel for the defendants,

15   what's your position on consolidating the Robinson case with the

16   Roane case?

17        MS. CLARK:  Your Honor, we are amenable to that.

18        THE COURT:  Okay.  All right.  Upon consideration of

19   the consent motion in the Bourgeois case and in Fulks, the Court

20   thereby grants these motions and consolidates each case pursuant

21   to Federal Rule of Civil Procedure 42(a) with Roane v. Barr,

22   which is No. 1-05-CV-2337.  And once I get the motion -- I assume

23   it will be a consent motion from counsel for Mr. Robinson -- I

24   intend to do the same.  But I'm not going to do it yet since

25   there hasn't been a formal motion.  It doesn't appear they have

1   spoken to their client yet.  But that would be my intention.

2        All right.  Regarding next steps, before hearing from the

3   parties regarding the direction it needs from the Court, I may

4   ask you, Ms. Clark, are defendants willing to stay Mr. Bourgeois's

5   execution pending the resolution of this case, or do the parties

6   anticipate needing an expedited schedule?

7        MS. CLARK:  Your Honor, we do not intend to stay

8   Mr. Bourgeois's execution date.

9        THE COURT:  So we're going to need an expedited

10  schedule.  And let me ask you also, Ms. Clark, while you're up

11  here, the joint status report stated that direction was needed

12  from the Court before proposing next steps.  What direction do

13  defendants find useful at this time?

14       MS. CLARK:  Your Honor, in speaking with counsel for

15  Robinson, Fulks, and Bourgeois, there were four issues that had

16  surfaced.  The first was the motion to consolidate.  The second

17  issue was that of administrative exhaustion.  The government let

18  plaintiffs' counsel know yesterday in those three cases that we

19  were waiving any argument with regard to administrative

20  exhaustion.  So that was not an issue in the case.

21       The third issue that surfaced --

22       THE COURT:  So you're waiving that.

23       MS. CLARK:  Yes, Your Honor.

24       THE COURT:  Okay.

25       MS. CLARK:  In those three specific cases where they

1    asked for them.

2            THE COURT:  Okay.

3            MS. CLARK:  And then the third issue was the timing of

4    the amendment of the complaints.  As the government said in the

5    status report we filed in the Roane case, we believe that is

6    absolutely necessary in all four cases, because each case makes

7    an Eighth Amendment claim of cruel and unusual punishment.

8    Under the case law that's relevant in this case, *Baze* and

9    *Glossip*, they have to identify a known and available alternative

10   method of execution that entails a lesser risk of pain in order

11   to proceed on an Eighth Amendment claim.

12       In this case the operative complaints are all focused

13   on this three-drug cocktail that is no longer operative at all.

14   And in light of that, the government's position is that if

15   the plaintiffs do not move to amend their complaints -- and,

16   obviously, we are amenable to their moving to amend their

17   complaints, but if they fail to do that, what the government

18   will have to do in this case is we'll have to move to dismiss

19   these complaints.

20           THE COURT:  Okay.  Well, it sounds like basically

21   the only issue on which guidance is necessary is, therefore, the

22   timing of amendment of the complaints.

23       Mr Enzinna, what's your position on behalf of Mr Roane?

24           MR. ENZINNA:  Well, Your Honor, our position is that

25   we are basically where we, the parties and the Court,

1   anticipated we would be back in 2011.  Someone used the phrase

2   "a wrinkle in time" this morning; it's like we just leapt

3   forward eight years.  Back then the government announced that

4   it would change its protocol, and we -- the parties and the

5   Court -- all agreed that what would happen next would be they

6   would announce the new protocol, and after that we would address

7   the question of additional discovery, which is what we propose

8   to do.

9         As far as the amended complaint, we have no objection to

10  amending the complaint, but we think it makes sense to take

11  some discovery before amending the complaint, because the

12  protocol that the government has issued is --

13              THE COURT:  And let's not call it a three-drug

14  cocktail again, please.

15              MR. ENZINNA:  The -- it's true that the facts that

16  were alleged in the original complaint and the amended complaint

17  had to do with the three-drug protocol which is now inoperative

18  and moot, but we spent six years taking discovery into that

19  protocol.  We took more than two dozen depositions.  There were

20  at least half a dozen experts.  We took all the defendants'

21  depositions.  In fact, this was in the days before the rule was

22  amended.  I think one of the depositions lasted five or six days.

23  So it's a tremendous amount of discovery that was specific to

24  the three-drug protocol.

25        Now that protocol's out the window, we have a new drug

1    protocol, and it's our position that that discovery is going

2    to have to be retaken.  What we don't know based on their new

3    protocol -- our claims are still here.  None of our claims has

4    changed.  We have an Eighth Amendment claim -- we have two

5    Eighth Amendment claims.  We have a Fifth Amendment claim:

6    Administrative Procedure Act and Controlled Substances Act.

7    Those claims all apply to the one-drug protocol as well, but

8    they apply differently because the facts are different, and we

9    need to take discovery into those facts.

10       All we've been told right now with this protocol is that

11   unless we change this -- because the protocol contains a

12   provision for ultimate discretion to make any changes they feel

13   are necessary.  Unless we change this "we plan to use this single

14   drug," the things we don't know -- we don't know where they're

15   going to get the drug.  We don't know the quality of that drug.

16       What we do know is that the manufacturers of that drug

17   won't sell it to the government for execution.  So to date, at

18   least in the states that have used this protocol, they've used

19   compounding pharmacies.  In fact, in Texas they've used a

20   compounding pharmacy that has dozens of citations for dangerous

21   activity, including falsifying quality control documents.

22       So we need to know that.  We need to where they're going

23   to get the drugs.  We need to know who the personnel are.  All

24   the protocol says are "qualified personnel."  We don't know what

25   that means.  We don't know how they're going to be trained.

1     We don't know the method they're going to use to access, to

2     obtain venous access.  All the protocol says is -- I forget the

3     exact term, appropriate access.  "Suitable venous access" is

4     what the protocol says.

5          Now, what we do know is that some of the states have used

6     phenobarbital to conduct executions.  In fact, last year Texas

7     used it I think three or four times, and if not in all of those

8     executions, the majority of those executions, the inmate being

9     executed complained of pain and of feeling burning.  So we know

10    that this drug, especially if not administered properly, can

11    cause significant pain.  And that's the Eighth Amendment claim

12    right there.

13         So like I said, there's a tremendous amount of discovery

14    that's been taken in this case that's been rendered moot by

15    the government's actions.  We need to take that additional

16    discovery.  We don't have a problem with amending the complaint,

17    but we think that some discovery is necessary before we do that.

18              THE COURT:  Well, given the government's representation

19    just now that they don't intend to stay the execution and they

20    plan to proceed with a January execution date for -- it's

21    Mr. Bourgeois, right?

22              MS. CLARK:  Yes, Your Honor.

23              THE COURT:  There's certainly a tension between how

24    much discovery you're going to get to conduct and how quickly

25    it has to take place.

1          MR. ENZINNA:  Well, Your Honor, to be perfectly

2   honest, I don't believe that the discovery that's necessary

3   can be taken and this case can be properly litigated in time

4   for the government to implement its unilateral decision to go

5   forward with this execution in January.  I think, basically, the

6   government is saying to the Court -- is trying to push the Court

7   into an early decision.  We've been sitting here for eight

8   years.  I mean, nobody's been executed --

9          THE COURT:  Well, I mean -- we have been here for

10  eight years.  In the meantime, the government has come up with

11  a new protocol, so obviously, you know, discovery does need to

12  be taken as to that protocol.

13         MR. ENZINNA:  Yes.

14         THE COURT:  But given that the government says it

15  intends to proceed, what I'm assuming is that plaintiffs will

16  be filing some kind of motion to stay the execution pending

17  resolution of this issue?

18         MR. ENZINNA:  I don't know what Mr. Bourgeois plans

19  to do.

20         THE COURT:  Maybe I should hear from counsel for

21  Mr. Bourgeois.

22         MR. AMINOFF:  That's right, Your Honor.

23         THE COURT:  All right.  And I guess -- you know, I've

24  consolidated three cases.  I have not yet consol -- let me hear

25  from each of you.

1    Mr. Kursman, you said you intend to file a motion to stay.

2  Is it your position also that additional discovery is needed?

3  Is there any plaintiffs' counsel who wants to state something

4  additional to what Mr. Enzinna has said?

5          MR. KURSMAN:  Yes.  Mr. Bourgeois is the only properly

6  filed lethal-injection plaintiff who received a notice of

7  execution.  Now, Mr. Bourgeois filed his own complaint in 2012

8  instead of filing a motion to intervene in the Roane litigation.

9  The reason he did that was, in 2009, Intervenor Paul, who's

10  part of the Roane litigation, filed a motion to intervene in

11  the district court.  The district court denied that motion to

12  intervene.

13    During the next three years, there was a litigation in

14  the district court revolving around that motion to intervene.

15  Mr. Bourgeois had to file within the six-year statute of

16  limitations.  So he filed a complaint -- a separate complaint

17  that mirrored the Roane complaint, just not as an intervenor

18  complainer.  After Mr. Paul's motion was denied, he then

19  appealed that to the circuit that reversed and remanded.

20    When Mr. Paul came back down, the government agreed that

21  not only -- that he deserved a preliminary injunction.  There

22  is no reason why Mr. Paul or any of the other Roane plaintiffs

23  deserved a preliminary injunction, but Mr. Bourgeois, who has a

24  complaint that mirrors theirs and is properly filed, doesn't.

25          THE COURT:  All right.  Mr. Aminoff?  Did you have

1   anything to add?

2          MR. AMINOFF:  No, Your Honor.  We agree entirely with

3   counsel.

4          THE COURT:  And Mr. Luby?

5          MR. LUBY:  No, Your Honor.  Nothing to add on behalf

6   of Mr. Fulks.  Thank you.

7          THE COURT:  And counsel for all four plaintiffs, have

8   you had an opportunity to confer with each other and agree on

9   what you believe the next proposed steps should be?

10          MR. ENZINNA:  Yes, Your Honor.  We have.

11          THE COURT:  Okay.  And what do you believe -- I mean,

12   obviously, you just stood up and said you believe discovery is

13   necessary, but do you have a proposed schedule that you believe

14   you --

15          MR. ENZINNA:  Well, I propose to do that in our motion

16   for more discovery, talk about what discovery needs to be taken

17   and when we can take that discovery.

18          THE COURT:  All right.

19          MR. ENZINNA:  I mean, we have experts who are going to

20   need to review the protocol and opine on the protocol and then

21   be deposed.  We have individuals who are going to have to be

22   identified and deposed.  We have eight years' worth of documents

23   that we haven't seen yet.

24          THE COURT:  All right.  Ms. Clark, you heard

25   Mr. Kursman indicate that with an execution date of January

1    2020, he proposes to move for a stay of execution given that

2    this is a new drug, it's a new protocol, and there needs to be

3    discovery taken in the same manner that discovery was taken for

4    the old protocol.  What's your response to plaintiff's position?

5            MS. CLARK:  Your Honor, as we have previously raised

6    with plaintiff's counsel for Mr. Bourgeois, they should file a

7    preliminary injunction.  That's the route that they should take,

8    and we've asked them about the timing of that as well.  So there

9    is a route that can be pursued, but it's in Mr. Bourgeois's court.

10           With respect to Mr. Enzinna's argument about there needing

11   to be discovery before they can amend the complaint, Your Honor,

12   it's the government's position that's simply not true.

13           THE COURT:  Well, if they'd filed a complaint without

14   taking discovery about the drug, you'd be moving to dismiss

15   saying they didn't have enough facts.

16           MS. CLARK:  No.  Well, Your Honor, the problem under

17   *Glossip,* it is a pleading standard.  So the point is you have

18   to plead about the alternative drug that would be less painful,

19   and they can do it simply as they did it the first time around,

20   Your Honor.

21           THE COURT:  Without knowing sufficient information

22   about this one?  In other words, how can you make an alternative

23   argument -- how can you say that another drug is better or less

24   painful if you don't know how painful this one is?

25           MS. CLARK:  Well, Your Honor, they already started

1    talking about how painful this drug is, so they have some

2    information --

3            THE COURT:  They have anecdotal evidence, or they have

4    reports from other state courts that -- in at least in Texas

5    where this drug has been used, it appears to have caused pain to

6    inmates who were executed.  But certainly you're not saying that

7    would be sufficient in this case, are you?

8            MS. CLARK:  I'm saying that they have information --

9    we're not aware of all that they know at this point, but the

10   government has no doubt that they can amend their complaints at

11   this point and set forth sufficient information for the parties

12   to go forward.  The problem with the plan as set forth by the

13   plaintiff is we don't -- we can't even imagine what the contours

14   of discovery would be given where we are right now.

15           THE COURT:  Well, you had an idea of what discovery

16   was like under the previous protocol.  Right?  I mean you have

17   some -- I mean, obviously, this is one drug, not three, not a

18   combination of three, but you do have some idea of what discovery

19   would look like based on what was sought previously, don't you?

20           MS. CLARK:  Well, Your Honor, we know what they

21   previously sought.  That's true.  But in terms of what they're

22   going to be looking for this time, there is no way we can

23   predict that.  We have to simply assume -- the pleading standard

24   isn't high.  But this is --

25           THE COURT:  I'll remember that.

1         (Laughter.)

2             MS. CLARK:  We know it's not particularly high at

3     the pleading stage, but the point is they haven't even done

4     that, Your Honor.  So we're going to basically -- you know,

5     what's the point of the amendment in the first place if we're

6     going to allow all the discovery to happen on the front end,

7     the contours of which, once again, we can't be certain of;

8     then they amend, and at that point we're basically --

9             THE COURT:  So is it your proposal that I should set

10    a schedule for amendment of the complaint and then discovery

11    should take place?

12            MS. CLARK:  Yes.

13            THE COURT:  And, Mr. Enzinna, your position is the

14    other way around.

15            MR. ENZINNA:  Yes.

16            THE COURT:  And let me ask you this:  How much time

17    are you proposing -- how much discovery and how much time do you

18    need before you think you'd be in a position to file an amended

19    complaint?

20            MR. ENZINNA:  Well, obviously, the discovery that we

21    took so far took several years to take.  I don't think that's --

22    that's not what I'm talking about before we can amend the

23    complaint, but I would expect that it will take some time to

24    do this discovery.  And, you know, one of the things I wanted

25    to point out with respect to the alternative issue, one of the

1    problems we have is we are required now to plead an alternative,

2    but it is very difficult, if not impossible, to plead an

3    alternative when we don't know anything about what --

4              THE COURT:  Right.

5              MR. ENZINNA:  -- the protocol is when it's so opaque

6    and so secretive.  So I would request -- like I said, I'm not

7    asking for six years of discovery before we can amend the

8    complaint, but I would request that we have some period of time,

9    probably at least several months, to take some preliminary

10   discovery and then amend the complaint.  I mean, if we amended

11   the complaint today -- as Your Honor said, we could amend the

12   complaint today, but we'd face the, as we now have an admission,

13   the very --

14             THE COURT:  Very low --

15             MR. ENZINNA:  Extremely low pleading standard.  And

16   that's certainly something we could do.  I don't know how we can

17   effectively plead an alternative means without knowing exactly

18   what their proposal is.

19             THE COURT:  Have you considered bifurcating discovery

20   in this case; in other words, taking sufficient discovery before

21   amending the complaint to provide you with sufficient

22   information to amend the complaint and then proceeding with

23   further, more extensive discovery?

24             MR. ENZINNA:  I think that's exactly what I'm talking

25   about, Your Honor.  In fact, it may even be, if we took some

1    30(b)(6) depositions, we might be able to do it just based on

2    those.

3              THE COURT:  Would it be an exercise in futility to

4    ask the parties to meet and confer and propose a schedule for

5    preliminary discovery and then the filing of the amended

6    complaint, or is that -- have you all attempted to do so?

7              MR. ENZINNA:  We have not.

8              MS. CLARK:  No.  We haven't done that.

9              THE COURT:  You haven't.  Okay.

10             MR. ENZINNA:  I don't think it would be futile.

11             THE COURT:  All right.  Then that's what I'm going to

12    do.  What I would like you to do is to meet and confer to try

13    and come up with a proposed preliminary discovery plan followed

14    by a deadline for amending the complaint.

15        Mr. Kursman, I don't know what your plans are with regard

16    to a motion, but you're the only counsel here with a client who

17    has a scheduled execution date.

18             MR. KURSMAN:  Your Honor, I could file a motion for

19    preliminary injunction by Monday.

20             THE COURT:  All right.

21             MR. KURSMAN:  Thanks.

22             THE COURT:  Then that's what I'm going to do.  I know

23    we're coming up on Labor Day and so on, but time is of the

24    essence here.  I'm going to ask that the parties meet and confer

25    with the goal of filing some kind of joint proposed schedule for

1    preliminary discovery, filing of the amended complaint, and then

2    we can go from there.

3         How much time do you need to get that to me?

4              MS. CLARK:  May we confer for a moment?

5              THE COURT:  Sure.  Yes.

6              MS. CLARK:  Thank you.

7         (Counsel conferring.)

8              THE COURT:  Well, Mr. Aminoff, do you want to deputize

9    Mr. Enzinna as far as -- or is -- I don't know.  Is there a way

10   he can pick up the phone?

11             MR. AMINOFF:  Sure.  We're comfortable with that, yes.

12             THE COURT:  Okay.  You have his proxy, Mr. Enzinna.

13        Do you want me to pass this for five minutes?  I can step

14   out for five minutes.  I'll do that.

15        (Recess from 11:37 a.m. to 11:58 a.m.)

16             THE COURT:  All right.  Mr. Enzinna.

17             MR. ENZINNA:  Your Honor, as predicted, it was not

18   futile.

19             THE COURT:  Great.

20             MR. ENZINNA:  We reached an agreement.  The defendants

21   will file the administrative record on the record by the 30th of

22   August, after which we will have six months, to the end of

23   February, to take 30(b)(6) depositions of each of the defendant

24   entities, DOJ, BOP, DEA, etc., and then we would have till the

25   end of March, 30 days, to file our amended complaint.

1     THE COURT:  I think that is eminently reasonable,

2  and I thank the parties for meeting and conferring and coming

3  up with a reasonable schedule.

4     MS. CLARK:  And, Your Honor, we just want to be clear,

5  it's one 30(b)(6) deposition per federal defendant.

6     THE COURT:  Okay.  One per defendant.

7     MR. ENZINNA:  And that we would take them pursuant to

8  the same rules we used in the initial discovery, which was one

9  party would do the questioning for the plaintiffs, but additional

10  parties could ask additional questions but not repeat questions.

11     THE COURT:  Follow-up.  All right.

12   Okay.  Thank you all.  I'll memorialize that in a minute

13  order.

14     MS. CLARK:  And I'm sorry.  There's one more matter in

15  Bourgeois, if I could have Bourgeois's counsel?  We just want to

16  talk about the preliminary injunction, Your Honor?

17     THE COURT:  Okay.

18     MS. CLARK:  And just put it on the record that the

19  parties will meet and confer about the timing of a briefing

20  schedule with respect to the preliminary injunction.

21     THE COURT:  Okay.  Good.

22     MR. KURSMAN:  That's correct.  But, Your Honor, we are

23  still prepared to file a motion for preliminary injunction on

24  Monday.

25     THE COURT:  All right.  But you'll confer with

1    Ms. Clark about a briefing schedule on that motion.

2              MR. KURSMAN:  I will.

3              THE COURT:  Okay.

4              MR. KURSMAN:  Thank you, Your Honor.

5              THE COURT:  Thank you all.  I do appreciate that.

6    This case has been dormant; it's been reopened.  You know,

7    there's a lot of work that went into it before; I'm sure there's

8    a lot of work that's going to go into it now.  So I do appreciate

9    the cooperative position you all are taking.  Thank you.

10             MS. CLARK:  Thank you, Your Honor.

11         (Proceedings adjourned at 12:00 p.m.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

* * * * * *

CERTIFICATE

I, BRYAN A. WAYNE, Official Court Reporter, certify
that the foregoing pages are a correct transcript from the
record of proceedings in the above-entitled matter.


_Bryan A. Wayne_
BRYAN A. WAYNE