## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

|  |  |  |  |
|---|---|---|---|
| In the Matter of the | ) | | |
| Federal Bureau of Prisons' Execution | ) | | |
| Protocol Cases, | ) | | |
| | ) | | |
| LEAD CASE: *Roane et al. v. Barr* | ) | Case No. | 1:19-mc-0145 (TSC) |
| | ) | | |
| | ) | | |
| THIS DOCUMENT RELATES TO: | ) | | |
| | ) | | |
| *LeCroy v. Barr et al.*, 1:20-cv-2481 | ) | | |

_____)

### <u>PLAINTIFF'S EMERGENCY MOTION FOR A PRELIMINARY INJUNCTION</u>

Plaintiff, William LeCroy, pursuant to Federal Rule of Civil Procedure 65 and Local Civil Rule 65.1, hereby moves the Court to issue a preliminary injunction barring Defendants from proceeding with any execution of Plaintiff unless and until certain conditions of Georgia statutory law, incorporated and required by 18 U.S.C. § 3596(a), are satisfied. Because the execution of Mr. LeCroy, scheduled for Tuesday, September 22, does not as currently planned comply with those binding requirements, this Court should resolve this motion on an emergency basis, in order to enjoin an illegal execution.

1.

Plaintiff moves the Court to issue an immediate preliminary injunction barring Defendants from proceeding with the execution of Plaintiff in any manner that fails to satisfy the binding requirements of Georgia law, as mandated by 18 U.S.C. § 3596(a) and O.C.G.A. §§ 17-10-40, 17-10-41, and Georgia Rule 480-11-.01(6). The contemplated implementation of a death sentence against Plaintiff on September 22, 2020, under current federal regulations and the federal lethal injection protocol announced in July, 2019, (hereinafter the 2019 Protocol) will violate the mandates of

federal (and incorporated Georgia law), including, *inter alia*, the following particulars:

1. The requirement that two physicians must be present at the execution to determine when death supervenes;

2. The requirement of binding procedures relating to the circumstances in which a previously-set time period for an execution passes by reason of a stay of execution, including requirements that a court set a specific seven-day period for a rescheduled execution and that notice of the new execution date be provided to counsel of record, which have not been complied with regard to federal executions to date; and

3. The requirement that the compounder obtain a prescription to make and provide any drug that will be used in lethal injection executions.

2.

Plaintiff further moves the Court to issue a preliminary injunction barring Defendants from proceeding with an execution pending the resolution of this challenge to the Defendants' use of the federal lethal injection protocol in "The 2019 Protocol" in the implementation of his death sentence, which contravenes the mandatory requirements set out under Georgia law.

3.

Plaintiff further relies in support of his Motion for a Preliminary Injunction on the attached Memorandum of Points and Authorities.

4.

As explained in more detail in the Memorandum filed herewith, Plaintiff is likely to succeed on the merits of his claims that the proposed execution violates the mandate

of 18 U.S.C. § 3596 (a) that the procedure follow binding Georgia law, O.C.G.A. §§ 17-10-40, 17-10-41, and Georgia Rule 480-11-.01(6), and that the Defendants' use of the 2019 Protocol in the implementation of his death sentence violates the Administrative Procedure Act (APA) and the Take Care Clause of the U.S. Constitution, art. II, § 3.  Moreover, Plaintiff is likely to suffer irreparable injury in the absence of an injunction, and the equities weigh in his favor.  Accordingly, Plaintiff satisfies this Court's standard for the issuance of a preliminary injunction.

5.

Plaintiff attaches a proposed Order in addition to his Memorandum of Points and Authorities, and seeks oral Argument and an expedited hearing.  Pursuant to Local Civil Rule 7 (m), the undersigned has been unable to confer with counsel for the Defendants, who were only recently served with the Complaint, in order to determine their position on the relief sought in this motion, but based on past interactions, Plaintiff is confident that Defendants oppose the relief being requested herein.

Dated:  September 8, 2020                    Respectfully submitted,

      /s/ Gregory S. Smith
Gregory S. Smith (DC Bar #472802)
Law Offices of Gregory S. Smith
913 East Capitol Street, S.E.
Washington, D.C.  20003
Telephone: (202) 460-3381
Email: gregsmithlaw@verizon.net

      /s/ John R. Martin
John R. Martin (*pro hac vice* pending)
Martin Brothers P.C.
1099 St. Louis Place
Atlanta, GA  30306
Telephone: (404) 433-7446
Email: jack@martinbroslaw.com

*Attorneys for Plaintiff William LeCroy*

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing document is being served upon all counsel of

record through this Court's Electronic Case Filing (ECF) system.

This 8th day of September 2020.

_/s/ Gregory S. Smith_____
Gregory S. Smith
gregsmithlaw@verizon.net

4

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---------------------------------------------------------

|   |   |   |   |
|---|---|---|---|
| In the Matter of the | ) | | |
| Federal Bureau of Prisons' Execution | ) | | |
| Protocol Cases, | ) | | |
| | ) | | |
| LEAD CASE: *Roane et al. v. Barr* | ) | Case No. | 1:19-mc-0145 (TSC) |
| | ) | | |
| | ) | | |
| THIS DOCUMENT RELATES TO: | ) | | |
| | ) | | |
| *LeCroy v. Barr et al.*, 1:20-cv-2481 | ) | | |

---------------------------------------------------------

## PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR A PRELIMINARY INJUNCTION

This memorandum is respectfully submitted in support of Plaintiff William LeCroy's motion pursuant to Federal Rule of Civil Procedure 65 and Local Civil Rule 65.1 for entry of a Preliminary Injunction enjoining Defendants from proceeding with his execution, currently scheduled for Tuesday, September 22, 2020, on the ground that it does not comport with federal (and incorporated Georgia statutory) law, and would thus represent an illegal execution.  Plaintiff also moves for a Preliminary Injunction pending resolution of the claims raised in his Complaint that Defendants' use of the federal lethal injection protocol announced in July 2019 (the 2019 Protocol) in the implementation of his death sentence violates Section § 3596(a) of the Federal Death Penalty Act ("FDPA"), 18 U.S.C. § 3591 *et seq.*, the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 *et seq.*, and the Take Care Clause of the U.S. Constitution. U.S. Const., art. II, § 3 ("Take Care Clause").

As explained below, Plaintiff LeCroy is likely to succeed on the merits of his claims, and he will also suffer irreparable harm should injunctive relief be denied; the balance of the equities and the public interest, moreover, weigh in his favor.

## I.      BACKGROUND

The underlying facts of the crime that brought Mr. LeCroy to death row are not in dispute.  On October 7, 2001, he broke into the home of Joann Tiesler, raped and murdered her, and fled in her car to the Canadian border where he was arrested two days later.  He was indicted on a single count of violating 18 U.S.C. § 2119(3) (carjacking), namely, taking a motor vehicle that had been transported, shipped and received in interstate commerce, with the intent to cause death and serious bodily harm, from the person and presence of Joann Tiesler by force and violence resulting in her death. *United States v. LeCroy*, 441 F.3d 914 (11th Cir. 2006).  The conviction and death sentence were affirmed on direct appeal. *Id*.

Mr. LeCroy next filed a Motion to Vacate, Set Aside or Correct Sentence, pursuant to 28 U.S.C. § 2255.  *See LeCroy*, No. 2:02-CR-00038-RWS-JCF, Doc. No. 493 (N.D. Ga. April 22, 2008). The primary focus of that motion was a claim of ineffective assistance of trial counsel for counsels' failure to present any evidence of Mr. LeCroy's mental illness and his delusional thinking that led to the commission of this offense.  *United States v. LeCroy*, Nos. 2:02-CR-00038-RWS-SSC, 2:08-CV-2277-RWS, 2012 WL 1114238 (N.D. Ga. Mar. 30, 2012).  The Eleventh Circuit affirmed the District Court's denial of relief, and the U.S. Supreme Court denied certiorari. *LeCroy v. United States*, 739 F.3d 1297 (11th Cir. 2014), *cert denied*, 575 U.S. 904 (2015).

On July 31, 2020, Mr. LeCroy received a letter from the Warden of FCI Terre Haute, informing him that his execution date had been set for September 22, 2020.

Mr. LeCroy's death sentence is to be implemented under supervision of the U.S. Marshal in the manner prescribed by the law of Georgia, the state in which  his sentence

was imposed, pursuant to 18 U.S.C. § 3596(a). Defendants, however, plan to carry out his execution using a lethal injection protocol—the 2019 Protocol—which fails to comply with binding Georgia law in significant respects.  A brief history of the application of the federal death penalty, which provides an important backdrop to and context for the grave violations of law set forth in Mr. LeCroy's Complaint, follows.

**History and Background of Implementation of the Federal Death Penalty**

Beginning in 1937, Congress required federal executions to be conducted in the manner prescribed by the state of conviction. *See* 50 Stat. 304 (formerly 18 U.S.C. § 542 (1937)),  recodified as 62 Stat. 837 (formerly 18 U.S.C. § 3566) (the "1937 Act").  The United States Marshals Service ("USMS") supervised the implementation of federal executions pursuant to the 1937 Act.

The death penalty, as practiced in the United States, was briefly held unconstitutional.  *See Furman v. Georgia*, 408 U.S.  238 (1972).  The Supreme Court's decision in *Gregg v. Georgia*, 428 U.S. 153 (1976), reaffirmed the constitutionality of the death penalty.

In 1984, Congress repealed the 1937 Act, leaving the federal government without a mechanism for carrying out executions. In 1988, Congress passed the Anti-Drug Abuse Act, which reinstated the death penalty for certain federal crimes but did not specify a procedure for implementation.

In 1992, the DOJ published a proposed rule seeking to "establish[] procedures" for carrying out federal death-penalty sentences.  *See* Implementation of Death Sentences in Federal Cases, 57 Fed. Reg. 56,536 (Nov. 30, 1992) (to be codified at 28 C.F.R. pt. 26).  The DOJ received and considered comments from (among others) medical

associations, physicians, criminal defense attorneys, and advocates for prisoners' rights.

Then, in early 1993, the DOJ issued a set of regulations, referred to as the "Final Rule,"

that purported to establish a protocol for carrying out the executions of prisoners

"sentenced to death for commission of an offense described in any federal statute." 28

C.F.R. § 26.1. The Final Rule provided that executions would take place at a federal

prison by "intravenous injection of a lethal substance." *Id.* § 26.3(a)(4). The Final Rule

provided little detail about the manner of execution and did not identify the drug or

drugs to be used in executions. In addition, the Final Rule did not provide for any role

for the USMS in connection with the implementation of death sentences.

In 1994, Congress enacted the FDPA, establishing that federal death sentences

shall be implemented as follows:

> When the [death] sentence is to be implemented, the
> Attorney General shall release the person sentenced to death
> to the custody of a United States marshal, who shall
> supervise implementation of the sentence in the manner
> prescribed by the law of the State in which the sentence is
> imposed.

18 U.S.C. § 3596(a). The FDPA superseded the Justice Department's Final Rule and once again

assigned to the USMS sole responsibility and authority to supervise the implementation of

federal death sentences – and contrary to those DOJ regulations, also explicitly returned to

the requirement that federal executions must take place in the manner prescribed by law in

the state of conviction.

The FDPA provides only one exception to this "law of the State" requirement:

"If the law of the State does not provide for implementation of a sentence of death, the

court shall designate another State, the law of which does provide for the implementation

4

of a sentence of   death, and the sentence shall be implemented in the latter State in the manner prescribed by such   law." 18 U.S.C. § 3596(a). The FDPA therefore does not provide for, contemplate or allow, the   establishment of a separate, uniform federal execution protocol or procedure.  The language of the FDPA also does not grant any authority to the BOP to create a uniform federal execution protocol, set execution dates, times, or places, or administer executions.

Following  enactment  of  the  FDPA  in  1994,  there  were  several  legislative attempts, all  supported by the DOJ and the BOP, to amend the FDPA to eliminate this requirement that death  sentences must be implemented "in the manner prescribed by the law of the State in which the sentence  is imposed," and, instead, to grant authority to the BOP to  devise  and  implement  procedures  and   protocols  for  the  executions  of  prisoners sentenced under the FDPA.  All of those efforts failed. None of the proposed amendments to  the  FDPA  were  enacted  by  Congress,  and  the  FDPA  continues to require the federal government to carry out executions in the manner prescribed by  the law of the state in which the prisoner's sentence was imposed, and continues to assign sole  authority  and responsibility to the USMS to supervise the implementation of federal death  sentences.

Despite this legislative mandate, in 2004, the DOJ, without notice or comment, adopted a new BOP Execution Protocol  for carrying out federal death penalty sentences (the "2004 Protocol"). The 2004 Protocol  included additional detail about how executions would be administered, but was silent about the   drug or drugs to be used in executions.

In December 2005, several individuals under federal death sentence initiated a lawsuit challenging the 2004  Protocol as violating the APA, the  F D P A ,  and their rights  pursuant  to  the  Fifth  and  Eighth   Amendments of the U.S. Constitution.  This

Court issued preliminary injunctions preventing the executions of those individuals during the pendency of that litigation.

While that litigation was pending, the BOP updated the 2004 Protocol by issuing addenda in 2007 and 2008 (the "2008 Addendum"). The 2008 Addendum specified that executions would be carried out using three drugs: sodium pentothal, pancuronium bromide, and potassium chloride. (The 2004 Protocol and 2008 Addendum will collectively be referred to herein as the "2008 Protocol."). However, in May 2011, the BOP announced that it did not have the drugs necessary to implement the 2008 Protocol and was considering revisions to the execution protocol. After the announcement by the BOP that it was unable to implement the 2008 Protocol, the ongoing litigations were stayed. For the next eight years, the DOJ submitted quarterly status reports indicating that protocol revisions were ongoing.

On July 25, 2019, however, the DOJ suddenly issued a press release announcing the scheduling of five executions: three within a single week in December 2019, and another two during a single week in January 2020, all to be carried out at USP Terre Haute pursuant to a unified federal procedure. On the same day, the DOJ announced that, at the direction of Attorney General Barr, the BOP had, without notice to the general public, adopted an Addendum ("the 2019 Addendum") to the existing Protocol. This 2019 Addendum replaced the previous three-drug procedure with a procedure using a five-gram dose of one drug: pentobarbital.

On November 13, 2019, the BOP publicly filed an Administrative Record, including a revised execution protocol—the 2019 Protocol—which replaced the 2008 Protocol. *See* Doc. 39-1, Administrative Record, *Roane et al. v.*

6

*Barr*, Case No. 1:19-mc-00145-TSC 0874-0875, 1016-1067 (D.D.C. Nov. 13, 2019). (The Administrative cord has been supplemented five times since then, including another amendment filed just today.) The 2019 Protocol included the 2019 Addendum and also removed key provisions that had been included in the 2008 Protocol, including a detailed plan for responding to unexpected occurrences during executions. On July 31, 2020, the same day that this Plaintiff was notified of his execution date, the 2019 Protocol was supplemented with a new provision related to notification of prisoners under death sentence of their execution dates. *See* Doc. 171, Defendants' Notice of Fourth Supplement to Administrative Record, *Roane et al. v. Barr*, Case No. 1:19-mc-00145-TSC (D.D.C. July 31, 2020).

The 2019 Protocol, including the 2019 Addendum and the July 31, 2020 supplemental revisions, constitute DOJ/BOP "statement[s] of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy or describing the organization, procedure, or practice requirements of an agency." 5 U.S.C. § 551(4). They are therefore "rule[s]," as defined by the APA. *Id.*

The 2019 Protocol was adopted by the BOP and the DOJ without any advance notice to the Plaintiff or the public. Between the BOP's May 2011 announcement that it was unable to implement the 2008 Protocol and the July 25, 2019 announcement of the 2019 Addendum and five scheduled execution dates, neither the DOJ nor the BOP provided any information to the public or to Plaintiff about the 2019 Protocol, the 2019 Addendum, or any of the other processes or details of any revisions to the execution protocol that were planned or under discussion or consideration.

### Implementation of Plaintiff's Death Sentence Under the 2019 Protocol

The FDPA expressly provides that a "United States marshal . . . shall supervise  implementation of the sentence in the manner prescribed by the law of the State in which the   sentence is imposed."  18 U.S.C. § 3596(a). The D.C. Circuit has interpreted this provision to require that the federal government must follow the "binding" law of the State in implementing death sentences, which includes state statutes. *See In re Fed. Bureau of Prisons' Execution Protocol Cases*, 955 F.3d 106, 130, 132 n.4, 135, 142 & n.14, 143 & n.15 (D.C. Cir. 2020) (Rao, J., concurring); *id.* at 124 n.10 (Katsas, J., concurring).

Defendants, in applying the 2019  Protocol in the implementation of Mr. LeCroy's death sentence, flout that Congressional directive and violate the FDPA by purporting to establish and implement for all federal executions a separate and uniform federal  execution protocol that will not follow, and is materially different  from, the manner prescribed by the law of the State of Georgia, the state in which Plaintiff's sentence was imposed.  Defendants will utilize the  procedures identified in the 2019 Protocol, instead of the procedures deemed binding under Georgia law  where Plaintiff was sentenced.  Even if the 2019 Protocol might give Defendants some discretion to change or depart from the procedures  laid out in the 2019 Protocol in order to implement executions in the manner prescribed by the  laws of the States, Defendants have failed to provide any notice of which Georgia procedures they will  follow and what changes they will make to comply with the binding Georgia law.  And more importantly, the currently-scheduled September 22, 2020 execution cannot comport with Georgia's incorporated requirements.

Binding Georgia law related to the implementation of death sentences contains mandatory statutory provisions that are not accounted for or that differ significantly from federal regulations and the 2019 Protocol in significant respects.  First, the Georgia death sentence implementation statute requires that two physicians be present at an execution:

> There shall be present at the execution of a convicted person the superintendent of the state correctional institution or a deputy superintendent thereof, at least three executioners, *two physicians to determine when death supervenes*, and other correctional officers, assistants, technicians, and witnesses as determined by the commissioner of corrections.

*See* O.C.G.A. 17-10-41 (2010) (emphasis added). Neither the federal regulations related to implementation of death sentences, 28 C.F.R. Part 26, nor the federal 2019 Protocol, provides for physician presence at the execution as Georgia statutory law requires.

Second, the Georgia statute contains binding procedures, relating to the circumstances in which a previously-set time period for an execution passes by reason of a stay of execution or otherwise can be rescheduled, the procedures of which diverge from the federal regulations and 2019 Protocol:

> (a) Where the time period for the execution of any convicted person in a capital case has passed by reason of a supersedeas incident to appellate review, a stay of execution by the State Board of Pardons and Paroles, or for any other reason, a judge of the superior court of the county where the case was tried shall have the power and authority to pass an order fixing a new time period for the execution of the original sentence without requiring the convicted person to be brought before him by a writ of habeas corpus. The order shall be recorded on the minutes of the court and a certified copy of the order shall be sent immediately to the convicted person's attorney of record, to the Attorney General, and to the superintendent of the state correctional institution at the place of execution.

> (b) The new time period for the execution shall be seven days in duration and shall commence at noon on a specified date and shall end at noon on a specified date. The new time period for the execution fixed by the judge shall commence not less than ten nor more than 20 days from the date of the order.

(c) The Department of Corrections shall set the day and time for execution within the time period designated by the judge of the superior court. If the execution is not carried out on the day and at the time originally set by the Department of Corrections, the Department of Corrections is authorized to set new dates and times for execution within the period designated by the judge of the superior court.

*See* O.C.G.A. 17-10-40 (2010). In contrast to these Georgia statutory directives, the relevant federal regulations and 2019 Protocol leave any rescheduling of the execution date to the discretion of the BOP Director: "If the date designated for execution passes by reason of a stay of execution, then a new date shall be designated promptly by the Director of the Federal Bureau of Prisons when the stay is lifted." *See* 28 C.F.R. § 26.3(a)(1); *see also* Ch. 1, Sec. II(B), BOP Execution Protocol.

The same Georgia statutory provision also carries implications regarding notice to the condemned when a previously scheduled execution date passes due to a stay or otherwise: whereas binding Georgia law requires a court to set a specific seven-day period for a rescheduled execution, the federal regulation—where a postponement of a previously scheduled execution date of fewer than 20 days occurs—provides only that "the Warden shall notify the prisoner as soon as possible." *See* 28 C.F.R. § 26.4(a); *see also* Ch. 1, Sec. II(C), BOP Execution Protocol ("notice of the new execution date will be given as soon as possible" by the Warden).  The Georgia statue further mandates notice to the attorney of record, a requirement to which the Defendants did not adhere.[1]

---

[1] As became evident during federal executions in July, the Department of Justice has interpreted its provision to require notice of the day of execution only on the day itself; with no time provided; and without necessarily providing notice to counsel.

In addition, binding Georgia law requires that a compounder of drugs must obtain a prescription to make and provide a drug.   *See* Ga. Rule 480-11-.01(6). Compounding pharmacies must obey that requirement. O.C.G.A. § 26-4-86.  The Georgia Department of Corrections and its compounders adhere to this practice and obtain a prescription for drugs to be used in lethal injection executions.  This requirement further underscores a concern with the quality of the lethal substance and the humaneness of the defendant's execution. The federal government does not adhere to any such practice in its implementation of sentences of death.

Under the APA, any agency action that is "not in accordance with [the] law," "in excess of statutory jurisdiction, authority, or limitations," "contrary to constitutional right, power,  privilege, or immunity," or taken "without observance of procedure required by law" must be set aside.  5 U.S.C. § 706(2)(A)-(D).  Defendants' intended use of the 2019 Protocol in the implementation of Plaintiff's death sentence, without accounting for or complying with binding Georgia law, plainly violates  the  FDPA and is  thus  "not  in accordance with [the] law," and under the APA must be prohibited.  *See In re FBOP,* 955 F.3d at130, 132 n.4, 135, 142 & n.14, 143 & n.15 (Rao, J., concurring); *id.* at 124 n.10 (Katsas, J., concurring) (upholding FDPA on ground that statute requires adherence to binding state law).  *See also id.* at 124 n.10 (Katsas, J., concurring) ("To be clear, I agree with Judge Rao that the FDPA's reference to 'law of the State' covers … state statutes and binding regulations….   Accordingly,  those  propositions  constitute  holdings  of  this Court.").

The Take Care Clause of the U.S. Constitution also imposes a duty on the Executive Branch to "take Care that the Laws be faithfully executed." U.S. Const., art.

II, § 3.  The Take Care Clause forbids the Executive Branch from making acts of Congress unlawful by refusing to  enforce them as written.  The Take Care Clause preserves the principles of separation of powers  inherent in the U.S. Constitution by preventing the Executive Branch from arrogating to itself  the legislative power to revoke or rewrite laws.  Here, Defendants' blatant refusal to enforce the plain and explicit mandate of the FDPA to comport with binding Georgia law in implementing Mr. LeCroy's death sentence violates the Take Care Clause, and therefore this Court must issue a Preliminary Injunction to prevent an illegal execution.

Mr. LeCroy has exhausted all available  administrative remedies by filing an Application for Administrative Remedies, or he believes exhaustion is not necessary under the Prison Litigation Reform Act, 42 U.S.C. § 1997e  (because this suit does not challenge prison conditions, and because there are no available administrative remedies that could address the challenged constitutional violations).  Mr. LeCroy sought an Administrative Remedy to the Federal Government's proposed violation of his rights on August 15, 2019 and argued that "[t]he method by which the federal government intends to execute prisoners violates the laws and Constitution of the United States."  The administrative remedies were denied.

## II.    ARGUMENT

"The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006) (quotation marks omitted). The moving party must show (1) that he is likely to succeed on the merits; (2) that he is likely to suffer irreparable harm in the absence of relief; (3) that the balance of the equities weighs in his

favor; and (4) that an injunction is in the public interest. *See, e.g., League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 6 (D.C. Cir. 2016).

That standard is met here: As the foregoing background information demonstrates, Mr. LeCroy is likely to show, on the merits, that Defendants' use of the 2019 Protocol in implementing his death sentence fails to comply with the "law of the State" under the controlling D.C. Circuit opinion, which establishes a requirement that federal executions must follow mandatory statutory provisions in the state of conviction's code (here, Georgia statutory and regulatory law). The scheduled September 22, 2020 execution of Plaintiff therefore constitutes an *ultra vires* agency action, in violation of the FDPA (18 U.S.C. § 3596(a)) and the Take Care Clause of the U.S. Constitution (U.S. Const., art. II, § 3), and represents agency action not in accordance with the law, and in violation of the APA. Moreover, Plaintiff will suffer irreparable harm in the absence of the requested relief; and both the equities and public interest particularly favor enjoining his execution. *See, e.g.*, *League of Women Voters of U.S.* at 6. Accordingly, this Court should issue a Preliminary Injunction.

### III.   PLAINTIFF LECROY IS LIKELY TO SUCCEED ON THE MERITS OF HIS CLAIMS.

Plaintiff LeCroy is likely to succeed on his claims that the federal government must follow those procedures set forth under the Georgia statute as necessary to implement a legal death sentence. The Federal Death Penalty Act (FDPA) explicitly provides that the U.S. Marshal "shall supervise implementation of the sentence [of death] in the manner prescribed by the law of the State in which the sentence is imposed." 18 U.S.C. § 3596(a). The D.C. Circuit itself has already held that this provision requires the federal government to follow any "law of the State" which carries the binding

force of law, including state statutes. *In re Fed. Bureau of Prisons' Execution Protocol Cases*, 955 F.3d 106, 129-130, 133-134 (D.C. Cir. 2020) (Rao, J., concurring); *see also id.* at 124 n.10 (Katsas, J., concurring) (joining this portion of Judge Rao's opinion to produce a majority "holding[]" on this issue). The 2019 Protocol, therefore, must yield to any state requirements that are part of the "law of the State." *See id.* at 112-113; *see also id.* at 126 n.12 (Katsas, J., concurring).

> **A.** **It is Highly Likely that Plaintiff LeCroy will Prevail in Requiring that the Federal Government Must Follow the Provisions of the Georgia Code Requiring the Presence of Two Physicians and Setting Forth Procedures for Providing Notice to Plaintiff and His Attorneys of Record of any Rescheduled Execution Date in the Manner Required by Georgia Law, as the "Law of the State" Under the FDPA.**

The Georgia provisions at issue here—namely found in O.C.G.A. 17-10-40 (2010),17-10-41 (2010), and Ga. Rule 480-11-.01(6)—plainly meet the definition of "law of the State" and thus apply to the implementation of Plaintiff's sentence, which was imposed in the Northern District of Georgia. As described in his Complaint, and as noted previously, the statutory provisions require "two physicians" to be present at the execution. *See* O.C.G.A. 17-10-41. Neither the Federal regulations related to implementation of death sentences, 28 C.F.R. Part 26, nor the Federal 2019 Protocol, provides for physician presence at the execution as Georgia statutory law requires. *See* Complaint ¶43. Therefore, it is highly likely that Mr. LeCroy will be able to show a material violation of federal law if the federal government goes forward with its plan to execute Mr. LeCroy under its own protocol rather than following Georgia's statutory mandates.

In addition, as noted previously, the Georgia Code contains binding procedures relating to circumstances in which a previously-set time period for an execution passes by reason of a stay of execution or otherwise. *See* O.C.G.A. 17-10-40. Plaintiff LeCroy is

likely to prevail in showing that the federal government will not comply with this provision of Georgia law even though the federal government must abide by the noted provisions in order to "implement" Plaintiff's death sentence under § 3596(a).  This is so because the 2019 Protocol is either silent on these issues or directly contradicts the Georgia statutory requirements. Unlike the binding law of Georgia, the relevant federal regulations and 2019 Protocol, for example, leave the rescheduling of the execution date to the discretion of the BOP Director: "If the date designated for execution passes by reason of a stay of execution, then a new date shall be designated promptly by the Director of the Federal Bureau of Prisons when the stay is lifted." *See* 28 C.F.R. § 26.3(a)(1); *see also* Ch. 1, Sec. II(B), BOP Execution Protocol.  Unlike the Georgia statutory requirement, no judge ever set an execution date for Plaintiff.  Georgia's specified statutory window (a 7-day window that may begin not less than ten nor more than 20 days from the date of a court order) was ignored by DOJ and the BOP in unilaterally establishing Plaintiff's scheduled September 22, 2020 execution date.  And, in fact, under this Georgia statutory provision, the DOJ's July 31, 2020 Notice is now *expired and thus ineffective.*

The same Georgia statutory provision also carries implications regarding notice to the condemned when a previously scheduled execution date passes due to a stay or otherwise.  First, whereas binding Georgia law requires a court to set a specific seven-day period for a rescheduled execution, the federal regulation—where a postponement of a previously scheduled execution date of fewer than 20 days occurs— provides only that "the Warden shall notify the prisoner as soon as possible." *See* 28 C.F.R. § 26.4(a); *see also* Ch. 1, Sec. II(C), BOP Execution Protocol ("notice of the new execution date will be given as soon as possible" by the Warden); Complaint ¶44.

Moreover, whereas the Georgia law requires that any such notice must be provided to the condemned prisoner's counsel of record, the federal procedures call for the Warden to provide notification to the prisoner only. *Id.*

Finally, binding Georgia law requires that a compounder of drugs must obtain a prescription to make and provide a drug. *See* Ga. Rule 480-11-.01(6). Compounding pharmacies must obey that requirement. O.C.G.A. § 26-4-86. Upon information and belief, the Georgia Department of Corrections and its compounders adhere to this practice and obtain a prescription for drugs to be used in lethal injection executions. This further underscores a concern with the quality of the lethal substance and the humaneness of the defendant's execution. The federal government does not adhere to any such practice in its implementation of sentences of death. *See* Complaint ¶45.

It is highly likely Plaintiff LeCroy will prevail on some or all of his claims that the federal Protocol and practice violate Georgia's statutory and regulatory provisions. The federal Protocol simply does not provide for the presence of two physicians. The federal Protocol and federal practice has not been to obtain a court order for an execution date or to provide the required notice to inmates (much less counsel) in a manner compliant with (or even similar to) Georgia law, or using Georgia's authorized windows of time. And the federal Protocol fails to require (or provide any reason to believe) that the anticipated compounding of its identified drug to be used in Plaintiff's execution will have been validly obtained pursuant to a prescription. And if *any one* of these three requirements is unmet, this scheduled execution will be conducted in violation of Georgia law, and thus be illegal under 18 U.S.C. § 3596(a).

**B.  It Is Highly Likely That Plaintiff LeCroy Will Prevail on his Claims Under the APA.**

The APA states that a reviewing court "shall…hold unlawful and set aside agency action, findings, and conclusions found to be" one of the following: (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (D) without observance of procedure required by law…" 5 U.S.C. § 706(2)(A)-(D). It is evident that Defendants' actions in connection with the 2019 Protocol, and their use of the 2019 Protocol in connection with the implementation of Mr. LeCroy's death sentence, violate the APA.

As set forth in the Complaint, Defendants' 2019 Protocol constitutes an *ultra vires* agency action that must be set aside.  Their actual and contemplated application and the use of the 2019 Protocol in the implementation of Plaintiff's death sentence are contrary to the FDPA and, therefore must be prohibited. *See* Complaint ¶¶49-64.

The FDPA does not authorize implementation of executions as set forth in the 2019 Protocol. Because the 2019 Protocol is directly contrary to the FDPA's mandatory language, which requires the U.S. Marshal to supervise implementation of the death sentence in the manner prescribed by the law of the State in which the sentence was imposed, *see* 18 U.S.C. § 3596(a), the 2019 Protocol violates Section 706(2)(C) of the APA, and must be set aside. *See Catholic Health Initiatives v. Sebelius*, 617 F.3d 490, 497 (D.C. Cir. 2014) (Brown, J., concurring) ("When an agency has acted beyond its delegated authority, a reviewing court will hold such action *ultra vires*…or a violation of the [APA], 5 U.S.C. § 706(2)(C)."); *see also Brown & Williamson Tobacco Corp. v. Food & Drug Admin.,* 153 F.3d 155, 176 (4th Cir. 1998), *aff'd*, 529 U.S. 120 (2000) (voiding as *ultra*

*vires* an agency rule that conflicted with governing statute because agency "exceeded the authority granted to it by Congress"); *Am. Hosp. Assn't v. Azar*, Civil Action No. 18-2841 (RMC), 2019 WL 4451984, at *8-12 (D.D.C. Sept. 17, 2019) (holding rule was *ultra vires* because it exceeded statutory authority).

The 2019 Protocol is also *ultra vires* because it violates the doctrine of separation of powers, which is reflected in the "finely wrought" bicameralism and presentment concepts in the Constitution, *Clinton v. City of N.Y.*, 524 U.S. 417, 440 (1998), and in specific constitutional provisions that command that the Executive Branch "take care that the Laws be faithfully executed." U.S. Const., art. II, § 3; *see* Complaint ¶51. An executive agency cannot override the will of Congress by devising a new regulation in derogation of a statute. Where the regulation contradicts the statute, as is the case here with the 2019 Protocol, the statute prevails. *See Clinton*, 524 U.S. at 438 ("There is no provision in the Constitution that authorizes the President…to amend…or to repeal statutes."). The 2019 Protocol, therefore, also violates 5 U.S.C. § 706(2)(B), under which a reviewing court must set aside agency action that is contrary to constitutional powers.

Moreover, Defendants, in seeking to apply the 2019 Protocol to the implementation of Plaintiff's death sentence, failed to abide by clear terms of FDPA, and therefore acted "not in accordance with law," and "in excess of statutory jurisdiction, authority or limitations," under the APA, 5 U.S.C. § 706(2)(A) & (C). *See* Complaint ¶61. Implementation of the death sentence must be in the manner prescribed by the law of the State in which the sentence was imposed. *See* 18 U.S.C. § 3596(a); *see also In re Fed. Bureau of Prisons' Execution Protocol Cases*, 955 F.3d at 129-130, 133-134 (D.C. Cir. 2020) (Rao, J., concurring); *see id.* at 124 n.10 (Katsas, J., concurring). And the

2019 Protocol must yield to state requirements that are part of the "law of the State." *See id.* at 112-113; *see also id.* at 126 n.12 (Katsas, J., concurring). Here, Defendants are bound by Georgia statutory provisions that require two physicians to be present, and that set forth certain procedures for providing notice to Plaintiff and his counsel of record in circumstances involving a stay of execution, as well as requirements that a prescription be obtained for any compounded drug utilized in the execution. The 2019 Protocol and regulations related to implementation of federal death sentences, however, fail to comply with these mandatory Georgia laws. As such Defendants should be prohibited from carrying out Plaintiff's execution under the APA.

In light of the above, Plaintiff has established that he is likely to prevail on the merits of his APA claims.

## IV.   PLAINTIFF LECROY WILL SUFFER IRREPARABLE HARM IN THE ABSENCE OF THE REQUESTED RELIEF.

To constitute irreparable harm, "the harm must be certain and great, actual and not theoretical, and so imminent that there is a clear and present need for equitable relief to prevent irreparable harm," and it "must be beyond remediation." *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 7-8 (D.C. Cir. 2016) (citing *Chaplaincy*, 454 F.3d at 297) (internal quotation marks and brackets omitted). Plaintiff LeCroy has plainly alleged a harm that, if realized, cannot be corrected: Without a Preliminary Injunction, Plaintiff will be illegally executed pursuant to unlawful protocol in a matter of days, well before he can fully litigate his APA claims.

In analogous circumstances involving APA claims, courts have held that the plaintiff established irreparable injury for purposes of the preliminary injunction standard. *See Stellar IT Solutions, Inc. v. U.S.C.I.S.*, Civ. A. No. 18-2015 (RC), 2018 WL 6047413,

at *11 (D. D.C. Nov. 19, 2018 (finding irreparable injury where plaintiff would be forced to leave the country under challenged regulations); *FBME Bank Ltd. V. Lew*, 125 F. Supp. 3d 109, 126-27 (D. D.C. 2015) (finding irreparable injury where challenged regulations would threaten company's existence); *Damus v. Nielsen*, 313 F. Supp. 3d 317, 342 (D. D.C. 2018) (irreparable injury found where plaintiffs faced detention under challenged regulations). In those cases, the courts stressed the imminence of the harm and the fact that it could not be remediated if an injunction did not issue.

Here, the threatened harm is plainly "beyond remediation" because no "adequate compensatory or other corrective relief will be available at a later date," *Chaplaincy*, 454 F.3d at 297. For Plaintiff LeCroy, there is no later date. His claim is therefore "categorically irreparable." *Nken v. Holder*, 556 U.S. 418, 435 (2009). Recognizing this basic reality, courts have, moreover, found that the "requirement—that irreparable harm will result if a stay is not granted—is necessarily present in capital cases." *Wainright v. Booker*, 473 U.S. 935, 935 n.1 (1985) (Powell, J., concurring). In similar circumstances, courts have repeatedly held that a plaintiff suffers irreparable harm if he is executed before his legal challenges to the execution methods are complete. *See, e.g., Nooner v. Norris*, No. 5:06-cv-00110-SWW, 2006 WL 8445125, at *3 (E.D. Ark. June 26, 2006) (plaintiff showed threat of irreparable harm because if he suffered pain during his execution, as alleged, the injury would never be rectified); *Cooey v. Taft*, 430 F. Supp. 2d 702, 708 (S.D. Ohio 2006) (same); *Brown v. Beck*, No. 5:06CT3018 H, 2006 WL 3914717, at *7 (E.D. N.C. Apr. 7, 2006) (same).

There is no question that Plaintiff will suffer irreparable harm absent an injunction: The Government will be allowed to execute him in a manner that violates the law. That

harm is great, imminent, and irremediable. *See, e.g., Wainright v. Booker*, 473 U.S. 935, 935 n.1 (1985) (Powell, J., concurring in decision to vacate stay of execution) ("irreparable harm…is necessarily present in capital cases."); *Evans v. Bennett*, 440 U.S. 1301, 1306 (1979) (granting stay of execution in light of the "obviously irreversible nature of the death penalty).

## V.    THE BALANCE OF EQUITIES FAVORS PLAINTIFF LECROY.

The balance of equities also strongly favors the granting of a Preliminary Injunction in this case.  Although the issues set forth in Plaintiff LeCroy's Complaint are very important and necessary to resolve, they are not complicated and their ultimate resolution should not be a particularly time-consuming process.  Therefore, it is not anticipated that any delay would be lengthy.  At the same time, the people of Georgia and the various United States with inmates on federal death row have a strong federalism interest in having their laws respected and carried out uniformly and as written.  Moreover, while Mr. LeCroy recognizes that the Government has an interest in the finality of litigation, that finality interest is best served by resolving these weighty issues that are sure to present themselves before each federal execution date is set. Finally, given that the Defendants waited 8 years before coming up with an execution protocol at all, it would be difficult for them to argue that the time it would take them to comply with Georgia – and federal – law is prejudicial. Mr. LeCroyhas a strong interest in ensuring that execution complies with the federal constitution and the federal statutes as well as the Georgia statutes to which the federal law is expressly subject and has incorporated.

As noted, the issues raised in Mr. LeCroy's Complaint are neither particularly complicated, nor do they require lengthy factual development such that any delay incurred

need be lengthy.  The Georgia statute requires the presence of two physicians: "There shall be present at the execution of a convicted person . . . two physicians to determine when death supervenes."  O.C.G.A. 17-10-41 (2010).  This requirement is straightforward and the determination of whether the federal government will comply is a simple question that should not entail lengthy delay.  The same is true of the other two issues raised by Plaintiff LeCroy, concerning notification of any change of date and the requirement that the federal government comply with Georgia law in the procurement of a prescription for compounded drugs.

At the same time, the questions to be resolved are of paramount importance.  The question of whether the Government must comply with State statutory law in implementing the federal death penalty is one that recurs with each execution.  This was recently identified specifically by Justice Sotomayor when she concurred in the denial of certiorari in a recent federal death penalty case:

> This case… does not turn on the question most in need of this Court's guidance: whether the "manner prescribed by the law of the State" includes procedures set forth in a state agency's execution protocol. But with additional federal executions scheduled in the coming months, the importance of clarifying the FDPA's meaning remains. I believe that this Court should address this issue in an appropriate case.

*Mitchell v. United States*, 591 U.S. --- (Case No. 20A32, Aug. 25, 2020) (Sotomayor, J., concurring) (attached hereto as Exhibit A).  Mr. LeCroy's case sets forth this question squarely, with simplicity and clarity.  Moreover, this is not a question that could have been raised by Mr. LeCroy until the FDPA was interpreted to require adherence to binding state law and the Government set his execution date without any plan to do so. This is an important legal issue on which a sitting Justice has expressly opined that the Supreme Court

should accept certiorari soon, and its resolution in this case will also ensure compliance with the letter and spirit of the law, here and potentially in future cases as well.

Finally, Plaintiff LeCroy has a strong interest in his execution being carried out in compliance with Federal and Georgia law. The actual execution can only be carried out once and he has a strong interest in its being carried out lawfully and in the more humane manner that the law of his state of conviction (Georgia) expressly requires in the particulars noted above.

For all of these reasons, the equities lie in favor of granting the Motion for Preliminary Injunction. Any delay is likely to be minimal, Mr. LeCroy's interests are compelling, and these issues also should be resolved for future federal executions.

## VI.    THE REQUESTED RELIEF IS IN THE PUBLIC INTEREST.

The public interest is not served by executing an individual before he has had the opportunity to avail himself of legitimate procedures to challenge the legality of his execution. More generally, "[t]he public interest is [also] served when administrative agencies comply with their obligations under the APA." *N. Mariana Islands v. United States*, 686 F. Supp. 2d 7, 21 (D. D.C. 2009). By contrast, "[t]here is generally no public interest in the perpetuation of unlawful agency action." *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016). And "[a]pplying the law in a way that violates the Constitution is *never* in the public's interest." *Minney v. U.S. Office of Pers. Mgmt.*, 130 F. Supp. 3d 225, 236 (D. D.C. 2015). Courts have further recognized the "important public interest in the humane and constitutional application of [a] lethal injection statute." *Nooner*, 2006 WL 8445125m at *4; *Cooey*, 430 F. Supp. 2d at 708. When the government

decides to take a life, the public interest demands that it do so in a considered and deliberate manner, and in accordance with all of society's expected legal requirements.

While Defendants may cite the public interest in "finality" of death sentences, as it has done previously, *see, e.g.,* Br. For Appellants at 49, *In re Federal Bureau of Prisons Protocol Cases*, No. 19-5322 (D.C. Cir. filed Dec. 23, 2019), that interest in the conclusion of litigation cannot eclipse Plaintiff's rights by allowing Defendants to permanently extinguish potentially meritorious claims.  In fact, "finality" will be served even if Plaintiff does not ultimately succeed on the merits of his claims, as his death sentence would still be undisturbed by this Court's preliminary injunction. Defendants spent eight years revising their lethal injection protocol, including six years engaged in the "final phases of finalizing the protocol." *Roane v. Gonzalez*, No. 1:05-cv-02337-TSC (D.D.C. filed July 13, 2013), Dkt. # 323. Defendants cannot now credibly allege that their interest in finality or in expeditious executions would be seriously hampered by allowing Plaintiff's claims to be fully and fairly litigated—nor can Defendants blame the lapse between the imposition of Plaintiff's sentence and the setting of his execution date on any litigation strategy employed by Plaintiff.  Mr. LeCroy's conviction and death sentence have been final since March of 2015, yet the Government insists on pressing forward with its intent to carry out his execution within a comparably short and rushed time frame, having given  him less than two months' notice of his execution date.  "[T]he fact that the government has not— until now—sought to" schedule Plaintiff's execution "undermines any urgency surrounding" its need to do so. *Osorio-Martinez v. Att'y Gen. U.S. of Am.*, 893 F.3d 153, 179 (3d Cir. 2018).  A preliminary injunction will therefore "not substantially injury other interested parties," the public, or the government. *Chaplaincy,* 454 F.3d at 297.

**CONCLUSION**

For the forgoing reasons, Plaintiff William LeCroy respectfully requests that the Court preliminarily enjoin Defendants from proceeding with his scheduled execution on September 22, 2020, and set an expedited hearing date for oral argument on this motion.

Dated:  September 8, 2020          Respectfully submitted,


_____/s/ Gregory S. Smith_____
Gregory S. Smith (DC Bar #472802)
Law Offices of Gregory S. Smith
913 East Capitol Street, S.E.
Washington, D.C.  20003
Telephone: (202) 460-3381
Email: gregsmithlaw@verizon.net


_____/s/ John R. Martin_____
John R. Martin (*pro hac vice* pending)
Martin Brothers P.C.
1099 St. Louis Place
Atlanta, GA  30306
Telephone: (404) 433-7446
Email: jack@martinbroslaw.com


*Attorneys for Plaintiff William LeCroy*



<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing document is being served upon all counsel of record through this Court's Electronic Case Filing (ECF) system.

This 8th day of September 2020.


_/s/ Gregory S. Smith_____
Gregory S. Smith
gregsmithlaw@verizon.net

# SUPREME COURT OF THE UNITED STATES

————————

No. 20A32

————————

## LEZMOND C. MITCHELL *v.* UNITED STATES

ON APPLICATION FOR STAY

[August 25, 2020]

The application for stay of execution of sentence of death presented to JUSTICE KAGAN and by her referred to the Court is denied.

Statement of JUSTICE SOTOMAYOR respecting the denial of the application for stay.

The Federal Death Penalty Act of 1994 (FDPA) requires that the Federal Government implement death sentences "in the manner prescribed by the law of the State in which the sentence is imposed." 18 U. S. C. §3596(a). Considerable uncertainty exists about the scope of this provision. In the most detailed analysis provided by a lower court to date, three judges offered three different views on how to define the "manner" of implementing a death sentence and where to locate the relevant "law of the State." See *In re Federal Bureau of Prisons' Execution Protocol Cases*, 955 F. 3d 106, 108 (CADC 2020) (*per curiam*) ("Each member of the panel takes a different view of what the FDPA requires"). Thus far, this Court has declined to provide definitive guidance on these important questions. See *Barr* v. *Roane*, 589 U. S. ___ (2019) (application for stay or vacatur denied); *Bourgeois* v. *Barr*, *ante*, p. ___ (cert. denied).

Because these questions are not adequately presented for our review in the pending case, I agree with this Court's decision to deny a stay. Here, the Ninth Circuit did not need to resolve the key issue on which the D. C. Circuit panel split because it assumed an answer favorable to

2                 MITCHELL *v.* UNITED STATES

Statement of Sotomayor, J.

Mitchell and still denied relief.  See *United States* v. *Mitchell*, ___ F. 3d ___, ___–___ (CA9 2020) (*per curiam*).  This case, therefore, does not turn on the question most in need of this Court's guidance: whether the "manner prescribed by the law of the State" includes procedures set forth in a state agency's execution protocol.  But with additional federal executions scheduled in the coming months, the importance of clarifying the FDPA's meaning remains.  I believe that this Court should address this issue in an appropriate case.