**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| _____ )<br>In the Matter of the )<br>Federal Bureau of Prisons' )<br>Execution Protocol Cases )<br> )<br>LEAD CASE: *Roane et al. v.* )<br>*Barr* )<br> )<br> )<br>THIS DOCUMENT )<br>RELATES TO: )<br> )<br>ALL CASES | Case No. 19-mc-0145 (TSC) |

**PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND
PERMANENT INJUNCTION ON APA CLAIM CONCERNING
DEFENDANTS' VIOLATIONS OF THE FOOD, DRUG AND COSMETIC ACT**

## **TABLE OF CONTENTS**

Introduction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Procedural background. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Standards governing summary judgment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

I.      Plaintiffs are entitled to summary judgment on Claim XI. . . . . . . . . . . . . . . . . . . . . . . 4

      A.      The FDCA applies to lethal injection drugs.. . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

      B.      Defendants are violating the FDCA's prescription requirement. . . . . . . . . . . . . . 6

      C.      Defendants' compounded pentobarbital is "essentially a copy" of
          the FDA-approved version of the drug. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

      D.      Defendants' bulk-compounding of pentobarbital violates the
          FDCA because the FDA has not identified a "clinical need"
          for the compounded drug or a shortage of the FDA-approved
          version of the drug. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

      E.      Defendants' FDCA violations are actionable under the APA. . . . . . . . . . . . . . . . 9

      F.      The Supreme Court's vacatur of the Court's earlier preliminary
          injunction does not bear on the appropriateness of summary
          judgment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

II.     The court should permanently enjoin Defendants from executing
      Plaintiffs in a manner that violates the FDCA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

      A.      Plaintiffs demonstrate a certainty of success on the merits. . . . . . . . . . . . . . . . 10

      B.      Plaintiffs show irreparable harm that is attributable to Defendants'
          violations of the FDCA. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

      C.      The balance of equities additionally justifies a permanent injunction. . . . . . . . . 14

      D.      A permanent injunction would serve the public interest. . . . . . . . . . . . . . . . . . . 14

Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

**TABLE OF AUTHORITIES**

<u>Cases</u>

*12 Percent Logistics, Inc. v. Unified Carrier Registration Plan Board*,
  No. 17-cv-02000, 2019 WL 450676 (D.D.C. Feb. 4, 2019). . . . . . . . . . . . . . . . . . . . . . . 11

*Al-Joudi v. Bush*, 406 F. Supp. 2d 13 (D.D.C. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 11

*American Rivers v. U.S. Army Corps of Engineers*, 271 F. Supp. 2d 230 (D.D.C. 2003). . . . 11, 12

*Athenex Inc. v. Azar*, 397 F. Supp. 3d 56 (D.D.C. 2019). . . . . . . . . . . . . . . . . . . . . . . . 7, 8, 13, 14

*Banks v. Booth*, No. 20-CV-849(CKK), 2020 WL 1914896 (D.D.C. Apr. 19, 2020). . . . . . . . . . 11

*Barr v. Lee*, No. 20A8, 2020 WL 3964985 (U.S. July 14, 2020). . . . . . . . . . . . . . . . . . . . . . . . . 3

*Barr v. Purkey*, No. 20A10, 2020 WL 4006821 (U.S. July 16, 2020). . . . . . . . . . . . . . . . . . . . 3, 9

*Beaty v. FDA*, 853 F. Supp. 2d 30 (D.D.C. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Bell Helicopter Textron Inc. v. Airbus Helicopters*, 78 F. Supp. 3d 253 (D.D.C. 2015). . . . . . . . 11

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Chrysler Corp. v. Brown*, 441 U.S. 281 (1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Cobell v. Norton*, 391 F.3d 251 (D.C. Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Cook v. FDA*, 733 F.3d 1 (D.C. Cir. 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 6

*Crocker v. Piedmont Aviation, Inc.*, 49 F.3d 735 (D.C. Cir. 1995). . . . . . . . . . . . . . . . . . . . . 10, 11

*Doe v. Mattis*, 928 F.3d 1 (D.C. Cir. 2019). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Edmo v. Corizon, Inc.*, 935 F.3d 757 (9th Cir. 2019). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*FDA v. Brown & Williamson Tobacco Co.*, 529 U.S. 120 (2000). . . . . . . . . . . . . . . . . . . . . . . . . 5

*Heckler v. Chaney*, 470 U.S. 821 (1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*In re Kemmler*, 136 U.S. 436 (1890). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*League of Women Voters of United States v. Newby*, 838 F.3d 1 (D.C. Cir. 2016).. . . . . . . . 14, 15

*N. Mariana Islands v. United States*, 686 F. Supp. 2d 7 (D.D.C. 2009). . . . . . . . . . . . . . . . . . . 14

*Ringo v. Lombardi*, 706 F. Supp. 2d 952 (W.D. Mo. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*United States v. Nazir*, 211 F. Supp. 2d 1372 (S.D. Fla. 2002). . . . . . . . . . . . . . . . . . . . . . . . 7, 12

*United States v. Philip Morris U.S., Inc.*, 327 F. Supp. 2d 13 (D.D.C. 2004). . . . . . . . . . . . . . . 4

*United States v. Smith*, 573 F.3d 639 (8th Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*University of Texas v. Camenisch,* 451 U.S. 390 (1981). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

*Wisconsin Gas Co. v. F.E.R.C.*, 758 F.2d 669 (D.C. Cir. 1985). . . . . . . . . . . . . . . . . . . . . . . . 3, 11

*Waterhouse v. Dist. of Columbia*, 298 F.3d 989 (D.C. Cir. 2002).. . . . . . . . . . . . . . . . . . . . . . . 4

**Statutes and Rules**

5 U.S.C. § 706(2)(A). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 4, 5

5 U.S.C. § 706(2)(C). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

21 U.S.C. § 301. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

21 U.S.C. § 331(d). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

21 U.S.C. § 337(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

21 U.S.C. § 352(f)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

21 U.S.C. § 353(b)(1)(B). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 6

21 U.S.C. § 353b. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

21 U.S.C. § 353b(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

21 U.S.C. § 353b(a)(2)(A). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 8, 13, 14

21 U.S.C. § 353b(a)(5).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 7

iii

21 U.S.C. § 353b(d)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

21 U.S.C. § 353b(d)(2)(A). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

21 U.S.C. § 353b(d)(2)(B). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

21 U.S.C. § 355. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

21 U.S.C. § 360eee-1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Fed. R. Civ. P. 56(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

## INTRODUCTION

As this Court recognized when granting summary judgment to Plaintiff Keith Nelson, the lethal injection protocol announced by Defendants on July 25, 2019 ("the 2019 Protocol") violates the Food, Drug, and Cosmetic Act, as made cognizable by the Administrative Procedure Act. *See* ECF No. 213. Although the rush of warrant litigation prevented Nelson from showing that Defendants' statutory violations subjected him to irreparable harm as would support an injunction, *see* ECF No. 226, Plaintiffs make that showing here, and they move for a permanent injunction that would require Defendants to comply with the FDCA before conducting any additional executions.[1]

Irreparable harm stems from circumstances that are already known to the Court. First, Defendants have the avowed intent to carry out additional executions through the illegal 2019 Protocol. *See* ECF No. 172 (notice of execution date). Second, the 2019 Protocol involves medical hazards that Plaintiffs, their experts, and the Court have identified and credited, including the "virtual medical certainty" that each Plaintiff will suffer an excruciating death from acute pulmonary edema while still conscious. *See* ECF No. 135 at 9-10. Third, the Government's non-compliance with the FDCA enables Defendants to avoid the medical consultation and clinical judgment that a prescription would provide – including prescriptive guidance that Defendants, whose stated goal is to limit the risk of pain, should not administer pentobarbital without first administering a pain-preventing opioid or similar drug, as Plaintiffs and the Court have previously recommended. *See id.* at 13-15 (endorsing Plaintiffs' proposed alternative, for purposes of Eighth Amendment claim). Courts generally find irreparable harm "where the movant's health is in imminent danger." *Al-Joudi v. Bush*, 406 F. Supp. 2d 13, 20 (D.D.C. 2005). That principle applies

---

[1] Newly-consolidated plaintiff William LeCroy plans to amend his complaint to add the relevant claim. *See* ECF No. 232 (consolidating cases).

here and justifies a permanent injunction under the circumstances.

## PROCEDURAL BACKGROUND

1.      Following the passage of eight years' time without an execution protocol, Defendants announced their current protocol in July 2019, simultaneously scheduling execution dates against five prisoners.

2.      Pursuant to a briefing schedule agreed to by the parties, Plaintiffs filed an Amended Complaint for injunctive and declaratory relief challenging the legality and constitutionality of Defendants' lethal injection protocol on June 1, 2020. ECF No. 92. As relevant here, Count XI of Plaintiffs' Amended Complaint asserts a claim under the Administrative Procedure Act that the 2019 Protocol is "not in accordance with [the] law," or is "in excess of statutory jurisdiction, authority, or limitations," 5 U.S.C. § 706(2)(A) and (C), because the Protocol violates the FDCA, 21 U.S.C. § 301 *et seq. See* ECF No. 92 at 46-47.

3.      On July 15, 2020, the Court preliminarily enjoined the scheduled executions of Wesley Purkey, Dustin Honken, and Keith Nelson on account of the FDCA claim. ECF No. 145.

4.      The Court of Appeals denied the Government's motion to stay or vacate the injunction. *In re Fed. Bureau of Prisons' Execution Protocol Cases*, No. 20-5206, Doc. No. 1851933 (D.C. Cir. July 15, 2020). Agreeing that the prisoners were likely to succeed on their claim, the D.C. Circuit adhered to its precedent that the FDCA applies to lethal injection drugs. *Id.* at 3 (citing *Cook v. FDA*, 733 F.3d 1 (D.C. Cir. 2013)). The court also rejected the Government's argument that the prisoners' claims are precluded by the Government's exclusive authority to bring enforcement suits under the FDCA. *Id.* ("[T]he government contends that plaintiffs cannot argue that the Protocol is unlawful because only the FDA may enforce the FDCA. But plaintiffs do not seek [a] preliminary injunction on an enforcement claim, they claim that the Protocol is contrary to law under the APA.").

5.      On July 16, 2020, the Supreme Court summarily vacated the Court's injunction but did not address the merits of the FDCA claims. *Barr v. Purkey*, No. 20A10, 2020 WL 4006821 (U.S. July 16, 2020).

6.      On August 4, 2020. Plaintiff Nelson separately moved for summary judgment on the FDCA-violation claim. ECF No. 180. On August 27, 2020, this Court granted Nelson's motion, entering final judgment in favor of Nelson and enjoining Defendants from executing Nelson "until they have met the requirements of the FDCA." ECF No. 213 at 13.

7.      The Court of Appeals vacated the Court's injunction, stating that "there are insufficient findings and conclusions that irreparable injury will result from the statutory violation found by the district court." *In re Fed. Bureau of Prisons' Execution Protocol Cases*, No. 20-5260, Doc. No. 1858770 (D.C. Cir. Aug. 27, 2020).

8.      The next morning, on the scheduled day of his execution, Nelson asked the Court to clarify or amend its order by specifying a finding of irreparable harm. ECF No. 222. The Court promptly held a teleconference, after which it denied Nelson's motion. ECF No. 226. The Court concluded that Nelson had not adequately shown irreparable harm:

> In light of yesterday's D.C. Circuit's decision, this morning's briefings, oral argument, and upon reconsideration of the issues and the record herein, the court does not find Nelson entitled to the relief he seeks. Nelson's notice and request for amended judgment fails to supply a sufficient basis for finding that he will be irreparably harmed by the government's violation of the FDCA. Nelson's alleged irreparable injury is that he will be executed with a drug that has not be[en] prescribed by a physician and has not been subject to the labeling, approval, and manufacturing quality requirements that apply to approved drugs under the FDCA. (*See* Nelson Notice at 3.) In his notice and during this morning's hearing, Nelson pointed to the lack of potency testing in the record to demonstrate irreparable harm. (*See id.* at 2–3.) But Nelson did not raise these arguments in his summary judgment briefing, as Nelson's counsel conceded at today's telephone hearing. And the interpretation and significance of this record evidence is disputed by the government. In light of this dispute, a showing of irreparable harm is far from "certain." *Wisconsin Gas Co. [v. F.E.R.C.]*, 758 F.2d [669], 674 [(D.C. Cir. 1985)]. Thus, Nelson is unable to make the requisite showing "required to justify last-minute intervention by a Federal Court." *Barr v. Lee*, No. 20A8, 2020 WL 3964985, at *2 (July 14, 2020).

*Id.* at 2-3.

9.      Plaintiff Nelson was executed on August 28, 2020. Plaintiffs now seek summary judgment as was granted to Nelson, as well as a permanent injunction based upon the showing of irreparable harm that Nelson was unable to make during the rushed events preceding his execution.

10.     Undersigned counsel has conferred with opposing counsel, who confirms that Defendants oppose a permanent injunction.

<u>**STANDARDS GOVERNING SUMMARY JUDGMENT**</u>

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Waterhouse v. Dist. of Columbia*, 298 F.3d 989, 991 (D.C. Cir. 2002). A court may enter summary judgment on a "claim or defense . . . or [a] part of each claim or defense." Fed. R. Civ. P. 56(a). Pursuant to the APA, the Court must set aside any agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). The FDCA claim involves solely legal disputes rather than any factual ones, as the parties and the Court agreed with respect to Nelson's motion for summary judgment. *See* ECF No. 213 at 5. Summary judgment, then, is "appropriate for purely legal questions." *United States v. Philip Morris U.S.A., Inc.*, 327 F. Supp. 2d 13, 17 (D.D.C. 2004).

## I.      PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT ON CLAIM XI

As this Court has already recognized, the FDCA applies to lethal injection drugs. The 2019 Protocol violates the FDCA in three separate ways: first, Defendants dispense pentobarbital without a valid prescription reflecting a medical judgment that the drug is best suited to prevent the risk of suffering for a particular patient (*see* 21 U.S.C. § 353(b)(1)(B)); second, Defendants' bulk-produced compounded pentobarbital is "essentially a copy" of the FDA-approved version of the drug, so that its manufacture by an outsourcing facility makes it an unapproved "new drug"

under the FDCA (*see* 21 U.S.C. § 353b(a)(5)); and third, Defendants use a bulk-compounded drug for which the FDA has not certified a shortage of the FDA-approved drug or a "clinical need" for the drug, with the same result that the outsourcing facility's product is an unapproved "new drug" (*see* 21 U.S.C. § 353b(a)(2)(A)). These violations entitle Plaintiffs to judgment under the APA, which requires the Court to "hold unlawful" and "set aside" agency action that is "not in accordance with law." 5 U.S.C. § 706(2)(A).

### A.      The FDCA applies to lethal injection drugs

The "core" legislative purpose of the FDCA is to ensure that a "drug" is "safe and effective for its intended use." *FDA v. Brown & Williamson Tobacco Co.*, 529 U.S. 120, 133 (2000). Defendants claim to have chosen pentobarbital as a lethal drug in order to ensure that the resulting execution is "humane." AR 1, 3, 525-526, 858, 871-872, 929, 931. The Bureau of Prisons' Rule 30(b)(6) witness explained that, in seeking a "humane" death, the objective is one "which causes the least amount of discomfort as possible." Nov. 15, 2019 Deposition of Rick M. Winter at 281:19-21 (ECF No. 45 Ex 1). Recognizing that Defendants had chosen to use pentobarbital because they sought a drug to produce a "humane" and minimally painful death, the Court has concluded that the purpose of the FDCA applies to lethal injections. Violations of the FDCA carry "the risk that the drug[s] will not function as intended," the Court explained. ECF No. 213 at 7 (quoting *Beaty v. FDA*, 853 F. Supp. 2d 30, 37 (D.D.C. 2012)). A lethal injection drug that does not function as intended "may 'result in conscious suffocation, pain, and cardiac arrest.'" *Id.* (quoting *Beaty*, 853 F. Supp. 2d at 37).

The statute's core purpose carries even greater weight in light of Defendants' attempt to justify the 2019 Protocol "on the grounds that pentobarbital will render inmates insensate during the execution process." *Id.* at 8. "Where the government argues that a lethal injection drug is legally and constitutionally permissible because it will ensure a 'humane' death," the Court has observed,

"it cannot then disclaim a responsibility to comply with federal statutes enacted to ensure that the drugs operate humanely." *Id.* The FDCA's prescription requirement "provides safeguards against improper use of lethal-injection chemicals by assuring that medical practitioners are adequately involved in the use of those chemicals." *Ringo v. Lombardi*, 706 F. Supp. 2d 952, 958 (W.D. Mo. 2010). "[I]gnoring those safeguards, as Plaintiffs allege Defendants intend to do, places Plaintiffs at risk." *Id.*

Policy concerns aside, the D.C. Circuit has definitively held that the FDCA applies to lethal injection drugs. *See Cook v. FDA*, 733 F.3d 1, 10–11 (D.C. Cir. 2013) (finding that "the FDA's policy of admitting foreign manufactured thiopental designed for state correctional facilities, as well as the several individual admissions of such shipments … violate[d] substantive prohibitions of the FDCA"). The D.C. Circuit abided by that precedent when it declined to stay or vacate the Court's preliminary injunction order of July 15. *See Execution Protocol Cases*, No. 20-5206, Doc. No. 1851933 at 3 (explaining that the government's argument that drugs used for lethal injunctions are not subject to the FDCA "conflicts with the necessary premise of a published precedential decision of our court").

### B.     Defendants are violating the FDCA's prescription requirement

One way the FDCA ensures that a drug is safe and effective for its intended use is to expressly condition the dispensing of controlled substances, including pentobarbital, upon either (i) "a written prescription of a practitioner licensed by law to administer such drug," or (ii) "an oral prescription of such practitioner which is reduced promptly to writing and filed by the pharmacist." 21 U.S.C. § 353(b)(1)(B). Here, Defendants have confirmed that they have not obtained, and do not intend to obtain, a prescription for the pentobarbital they intend to use to execute Plaintiffs. *See* Nov. 2019 Winter Dep. (ECF No. 102-2) at 315:4-6; Miller Dep. (ECF No. 102-5) at 29:18-21. Under the circumstances, the 2019 Protocol indisputably violates the FDCA

because it requires the dispensing and administration of pentobarbital without a valid medical prescription, which is a "bona fide" order directing "the preparation and administration of a medicine, remedy, or drug for a real patient who actually needs it after some sort of examination or consultation by a licensed doctor." *United States v. Nazir*, 211 F. Supp. 2d 1372, 1375 (S.D. Fla. 2002). Even the labels on Defendants' pentobarbital state that the drug is to be used by "Rx only," i.e., only upon a valid medical prescription. *See* ECF No. 190-1 (pentobarbital for Honken execution); ECF No. 190-2 (pentobarbital for Purkey execution).

**C.      Defendants' compounded pentobarbital is "essentially a copy" of the FDA-approved version of the drug**

Defendants procured the pentobarbital from an "outsourcing facility," AR 1084, but their non-compliance with important limitations on outsourcing facilities independently violates the FDCA. The statute provides a number of rules that such outsourcing facilities must follow when compounding drugs in order to be exempt from the premarketing and labeling requirements found elsewhere in the FDCA, as well as from the "new drug" approval process through which the manufacturer demonstrates a drug's safety and efficacy. *See Athenex Inc. v. Azar*, 397 F. Supp. 3d 56, 59-60 (D.D.C. 2019); 21 U.S.C. § 353b. An outsourcing facility is ineligible for those exemptions if it produces a drug that is "essentially a copy of one or more approved drugs." 21 U.S.C. § 353b(a)(5). "[E]ssentially a copy" means a drug that is "identical or nearly identical to an approved drug" (unless it appears on the FDA's list of drug shortages), or contains a "bulk drug substance that is a component of an approved drug" (unless the drug has been changed in order to make a "clinical difference" for an individual patient). 21 U.S.C. § 353b(d)(2)(A)-(B).

Here, laboratory tests obtained by Defendants show that their objective is to use an outsourcing facility to produce a compounded product that is essentially a copy of FDA-approved pentobarbital. *See* AR 4-5, 932-33, 970-1015. Because Defendants are violating the FDCA's restrictions on outsourcing facilities, the resulting compounded pentobarbital falls outside of the

FDCA's safe harbor for production of compounded drugs. *See Athenex*, 397 F. Supp. 3d at 66. Accordingly, the compounded pentobarbital Defendants intend to use to execute Plaintiffs must comply with the FDCA's premarketing, labeling, and prescription requirements. 21 U.S.C. § 353b. It is undisputed that Defendants have not complied with those requirements, which makes the resulting pentobarbital an unapproved "new drug." *See* 21 U.S.C. § 353b(a) (exempting compounded drugs from 21 U.S.C. §§ 352(f)(1), 355, and 360eee-1); *Athenex*, 397 F. Supp. 3d at 66 (describing "bulk compounding" as "an exception within an exception"). The introduction of that drug into interstate commerce is a federal crime. See 21 U.S.C. § 331(d).

**D.    Defendants' bulk-compounding of pentobarbital violates the FDCA because the FDA has not identified a "clinical need" for the compounded drug or a shortage of the FDA-approved version of the drug**

Any active pharmaceutical ingredient [API] that an outsourcing facility uses to make compounded drugs must appear either (1) on the FDA's "503B Bulks list" based on the agency's determination of "clinical need," or (2) on the FDA's list of drug shortages – two designations that would justify the use of a comparatively risky compounded drug rather than the more thoroughly regulated FDA-approved version. *See* 21 U.S.C. § 353b(a)(2)(A). Here, however, the FDA has not placed pentobarbital API on the "503B Bulks list," and it has not identified pentobarbital on its list of drug shortages. Moreover, there is no "clinical need" for a particular API when an "FDA-approved drug that could be used to meet the very [same] patient needs" is "already available on the market," *Athenex*, 397 F. Supp. 3d at 58, as pentobarbital is, AR 4-5, 932-33, 970-1015. As with Defendants' use of "essentially a copy" of the FDA-approved drug, their use of a bulk-compounded drug – in the absence of a public need for that drug as identified by the FDA – makes the Government's pentobarbital an unapproved "new drug." *See* 21 U.S.C. § 353b(a); *Athenex*, 397 F. Supp. 3d at 66.

### E.      Defendants' FDCA violations are actionable under the APA

Defendants have elsewhere argued that the FDCA limits enforcement actions to those brought by the federal government. ECF No. 169 at 42-43 (citing 21 U.S.C. § 337(a)). But the Court has recognized that the APA provides a private right of action to redress the federal government's violations of the FDCA. *See* ECF No. 145 at 10; ECF No. 213 at 5; *accord Chrysler Corp. v. Brown*, 441 U.S. 281, 316–18 (1979) (finding government violations of Trade Secrets Act reviewable even where Act contained no private right of action). The D.C. Circuit ruled similarly when it declined to stay or vacate the Court's July 15 preliminary injunction. *See Execution Protocol Cases*, No. 20-5206, Doc. No. 1851933, at 3 (D.C. Cir. July 15, 2020) ("[T]he government contends that plaintiffs cannot argue that the Protocol is unlawful because only the FDA may enforce the FDCA. But plaintiffs do not seek [a] preliminary injunction on an enforcement claim, they claim that the Protocol is contrary to law under the APA.").

### F.      The Supreme Court's vacatur of the Court's earlier preliminary injunction does not bear on the appropriateness of summary judgment

Defendants resisted Nelson's motion for summary judgment by invoking the Supreme Court's ruling in *Barr v. Purkey*, No. 20A10, 2020 WL 4006821 (U.S. July 16, 2020). ECF No. 187 at 1-2. But this Court has already explained why the ruling in *Purkey* does not warrant judgment for the Government:

> The court does not read the Supreme Court's vacatur of this court's July 15 injunction to mean that Nelson's FDCA claim fails as a matter of law. (*See* Defs. Opp'n to Nelson Cross-Mot. at 1–2.) The Supreme Court did not opine on the merits of the FDCA claims. And contrary to the government's position, it would be improper for the court to interpret the Supreme Court's vacatur as an indication of how this court should resolve the dispute on the merits. Doing so would "improperly equate[] 'likelihood of success' with 'success,' . . . [and] ignores the significant procedural differences between preliminary and permanent injunctions." *University of Texas v. Camenisch*, 451 U.S. 390, 394 (1981) (noting also that "it is generally inappropriate for a federal court at the preliminary-injunction stage to give a final judgment on the merits"). This court must read the Supreme Court's vacatur in light of the "limited purpose" of the injunctive relief Nelson sought at the time. *Id.* at 395 (explaining that preliminary injunctions

"merely [] preserve the relative positions of the parties until a trial on the merits can be held"); see also *Cobell v. Norton*, 391 F.3d 251, 261 (D.C. Cir. 2004) ("Summary judgment substitutes for trial . . . [whereas a] preliminary injunction is just that— preliminary. It does not substitute for a trial, and its usual office is to hold the parties in place until a trial can take place.").

Furthermore, the Supreme Court has expressly declined to consider the "thorny" jurisdictional issue of whether of the FDCA applies to drugs used for executions. *See Heckler v. Chaney*, 470 U.S. 821, 828 (1985); *In re Federal Bureau of Prisons' Execution Protocol Cases*, No. 20-5206, slip op. at 3 (D.C. Cir. July 15, 2020).

ECF No. 213 at 8-9.

The Court's reasoning is correct. If the Supreme Court had intended to abrogate the D.C.

Circuit's precedent in *Cook*, it would have said so.

## II. THE COURT SHOULD PERMANENTLY ENJOIN DEFENDANTS FROM EXECUTING PLAINTIFFS IN A MANNER THAT VIOLATES THE FDCA

A permanent injunction depends on four factors: (i) the movant's "actual success" on the merits, (ii) whether the party is likely to suffer irreparable harm without an injunction, (iii) the balance of equities, and (iv) whether an injunction would serve the public interest. *Doe v. Mattis*, 928 F.3d 1, 7 (D.C. Cir. 2019). All four factors weigh in Plaintiffs' favor.

### A. Plaintiffs demonstrate a certainty of success on the merits

Plaintiffs succeed on the merits of their FDCA claim. The Court granted summary judgment on the identical claim in favor of Nelson, and it entered final judgment. ECF Nos. 213, 214. No intervening legal or factual circumstances have undermined the Court's final judgment. Nothing in the D.C. Circuit's vacatur order addressed the merits of the claim, even though the Government argued the merits at length. *See Execution Protocol Cases*, No. 20-5260, Doc. No. 1858770 ("[T]here are insufficient findings and conclusions that irreparable injury will result from the statutory violation found by the district court."). That Defendants violate the FDCA through the 2019 Protocol is the law of the case as reflected in a final judgment. *See Crocker v. Piedmont Aviation*, 49 F.3d 735, 739 (D.C. Cir. 1995) ("'Law-of-the-case doctrine' refers to a family of rules

embodying the general concept that a court involved in later phases of a lawsuit should not re-open questions decided … by that court or a higher one in earlier phases.").

### B.    Plaintiffs show irreparable harm that is attributable to Defendants' violations of the FDCA

There is no dispute that Defendants will continue to carry out executions under the 2019 Protocol if not enjoined from doing so. Although an irreparable injury must be "both certain and great" – ECF No. 226 at 2 (quoting *Wisconsin Gas Co. v. F.E.R.C.*, 758 F.2d 669, 674 (D.C. Cir. 1985)) – prospective health risks are routinely held to satisfy the irreparable harm requirement. "Facing requests for preliminary injunctive relief, courts often find a showing of irreparable harm where the movant's health is in imminent danger." *Al-Joudi*, 406 F. Supp. 2d at 20; *see also Doe*, 928 F.3d at 7 (same requirement of irreparable harm applies to preliminary and permanent injunctions).

In *Banks v. Booth*, No. 20-CV-849(CKK), 2020 WL 1914896 (D.D.C. Apr. 19, 2020), for example, the Court observed that an inmate's "risk of contracting COVID-19 and the resulting complications, including the possibility of death, is the prototypical irreparable harm." *Id.* at *11; *accord Edmo v. Corizon, Inc*., 935 F.3d 757, 797-98 (9th Cir. 2019) (irreparable harm shown by transgender prisoner's risk of self-castration and suicide, justifying injunction requiring gender confirmation surgery). This Court has found irreparable harm with respect to a wide variety of prospective risks, such when a patent holder shows a "meaningful risk of reputational harm" from as-yet uncommitted future infringements, when a board's plans for announcing its meetings might not adequately inform the public, or when the Army Corps of Engineers' water-flow plans might endanger fish and birds living in or along the Missouri River. *See Bell Helicopter Textron Inc. v. Airbus Helicopters*, 78 F. Supp. 3d 253, 274 (D.D.C. 2015); *12 Percent Logistics, Inc. v. Unified Carrier Registration Plan Board*, No. 17-cv-02000, 2019 WL 450676, at *12 (D.D.C. Feb. 4, 2019); *American Rivers v. U.S. Army Corps of Engineers*, 271 F. Supp. 2d 230, 258-59 (D.D.C.

2003).

The 2019 Protocol involves specific hazards that are directly traceable to Defendants'
counter-statutory conduct. The Court is already familiar with the risks of pentobarbital injections,
and in particular, the danger of acute pulmonary edema. The evidence documenting that risk
describes "a virtual medical certainty that most, if not all, prisoners will experience excruciating
suffering, including sensations of drowning and suffocation, as a result of … injection of 5 grams
of pentobarbital." Van Norman Decl. (ECF No. 24) at 7; *see also* Edgar Decl. (ECF No. 26-12) at
18 (autopsy results consistent with acute pulmonary edema). Those risks have been confirmed by
Plaintiff Purkey's autopsy. *See* ECF No. 183-1 at 1 (report noting "severe bilateral acute
pulmonary edema"); ECF No. 183-2 at 3 (Van Norman Supp. Decl.) (stating that Purkey's autopsy
results are consistent with and affirm Dr. Van Norman's finding that premortem flash pulmonary
edema is a "virtual medical certainty" under the 2019 Protocol). Moreover, the *current*
understanding in the field of anesthesiology is that barbiturates such as pentobarbital diminish only
the subjects' *responsiveness* to stimuli and not their *awareness* of such stimuli – including the
conscious experience of excruciating pain. *See* Van Norman Decl. (ECF No. 24) at 13, 22-23, 28-
29 (contrasting "traditional textbooks" with "authoritative publications").

The current medical understanding of pentobarbital implicates the FDCA's prescription
requirement. A valid medical prescription requires a physician's consideration of "the actual needs
of the patient, the quantity of the drug he prescribed, [and] the type of drugs he prescribed and for
what purpose…" *United States v. Smith*, 573 F.3d 639, 652-53 (8th Cir. 2009). A prescription
therefore reflects a practitioner's clinical judgment that a particular drug serves a particular
medical purpose for a particular patient. *See Nazir*, 211 F. Supp. 2d at 1375. A physician
prescribing pentobarbital for an execution would evaluate the prisoner's health, including any
underlying medical conditions the prisoner has and any medications the prisoner takes that might

interact with pentobarbital. For example, a prisoner might be taking medications that could slow the effects of pentobarbital or reduce its efficacy such that the prisoner experienced "a lingering death." *In re Kemmler*, 136 U.S. 436, 447 (1890); *see also* ECF No. 94-1 (Declaration of Dr. Arthur C. Grant, concerning interaction between pentobarbital and Plaintiff Holder's anti-seizure medication). Requiring a prescription would ensure that a physician would consider the individual medical needs of the prisoner before prescribing pentobarbital for the execution.

More broadly, the prescription requirement safeguards against the known danger that the prisoner will consciously suffer the experience of drowning to death during an execution. A well-informed physician would evaluate the scientific evidence and require that Defendants first inject an opioid or similar analgesic before administering pentobarbital, as suggested by Plaintiffs' proposed alternative method and described by pharmacologist Dr. Craig W. Stevens. *See* ECF No. 92 at 31-32; ECF No. 25 at 2-7. The Court has described that alternative as "a simple addition to the execution procedure that is likely to be as effective as it is easily and quickly administered." ECF No. 135 at 15. By ignoring the prescription requirement, Defendants fail to consult and involve medical practitioners in a way that would materially diminish the Plaintiffs' risk of suffering.

Defendants' compounding violations create additional risks of irreparable medical harm. The FDCA's restrictions on bulk compounding exist for a reason: they reflect Congress's awareness that compounded drugs are inherently hazardous and unreliable in comparison to their FDA-approved counterparts, and especially in light of a 2012 meningitis outbreak that killed more than 60 people as a result of contaminated compounded drugs. *See Athenex*, 397 F. Supp. 3d at 59, 72. Congress therefore limited bulk compounding to situations in which society's need for a compounded drug justifies the risks of administering it. *Id.* at 72-73. Bulk compounding is therefore forbidden unless the FDA certifies a "clinical need" for the drug or announces a shortage

of the FDA-approved version. 21 U.S.C. § 353b(a)(2)(A). Similarly, a bulk supplier cannot compound what is "essentially a copy of an approved drug" unless the drug is changed in some respect in order to make a "clinical difference" for a specific patient – such as altering a pill to a shot if the patient cannot swallow. *Athenex*, 397 F. Supp. 3d at 70; 21 U.S.C. § 353b(d)(2).

In this case, Defendants are wholly indifferent to the FDCA's restrictions and the risks that they reflect. *See* Almgren Decl. (ECF No. 26-15), at 2-4. Defendants subject Plaintiffs to the risks of compounded drugs, but without any corresponding medical benefit to justify those risks. Indeed, Defendants' *only* justification for using compounded pentobarbital is their claim that they cannot obtain the FDA-approved version from legitimate sources. *See* ECF No. 111 at 31-32.

## C.      The balance of equities additionally justifies a permanent injunction

The balance of equities also favors injunctive relief. The Court has repeatedly held that Plaintiffs' interest in avoiding illegal executions outweighs the Government's claimed interest in the "finality" of death sentences. *See* ECF No. 50 at 14; ECF No. 135 at 20-21; ECF No. 145 at 16-17. Moreover, Defendants spent eight years without an operative lethal-injection protocol, including six years engaged in the "final phases of finalizing the protocol." *Roane v. Gonzales*, No. 1:05-cv-02337-TSC (D.D.C. filed July 3, 2013), Dkt. #323. The Court has recognized the Government's "compelling" interest in the finality of criminal proceedings. ECF No. 145 at 16. Nevertheless, Defendants' years-long delay "undermines their arguments regarding the urgency and weight of that interest." *Id.*

## D.      A permanent injunction would serve the public interest

The public interest also weighs in favor of a permanent injunction. "The public interest is served when administrative agencies comply with their obligations under the APA." *N. Mariana Islands v. United State*s, 686 F. Supp. 2d 7, 21 (D.D.C. 2009). By contrast, "[t]here is generally no public interest in the perpetuation of unlawful agency action." *League of Women Voters of United*

*States v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016). The Court has recognized as much in its earlier preliminary injunctions. *See* ECF No. 50 at 14; ECF No. 135 at 21; ECF No. 145 at 17. Just as the public interest was served by an injunction allowing Plaintiffs "to determine whether administrative agencies acted within their delegated authority," ECF No. 50 at 14, it would be served all the more now that the agency's illegality has been established definitively. A permanent injunction would not forbid Defendants from carrying out executions, but would only order that Defendants first "comply with the requirements of the FDCA." ECF No. 213 at 13.

## **CONCLUSION**

For all the foregoing reasons, Plaintiffs respectfully request that the Court grant their motion for summary judgment on Claim XI and enter a permanent injunction barring Defendants from executing Plaintiffs until such time as Defendants' method of execution complies with the Food, Drug and Cosmetic Act.

Dated:   September 9, 2020                    Respectfully submitted,


                                             */s/ Shawn Nolan*
                                             Shawn Nolan, Chief, Capital Habeas Unit
                                             Federal Community Defender Office, E.D. Pa.
                                             601 Walnut Street, Suite 545 West
                                             Philadelphia, PA 19106
                                             (215) 928-0520
                                             shawn_nolan@fd.org
                                             timothy_kane@fd.org


                                             *Counsel for Plaintiff Jeffrey Paul*


Scott W. Braden
Assistant Federal Defender
Arkansas Federal Defender Office
Ark Bar Number 2007123
1401 West Capitol, Suite 490
Little Rock, Arkansas 72201
(501) 324-6114
scott_braden@fd.org

Jennifer Ying (DE #5550)
Andrew Moshos (DE #6685)
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 N. Market St.
P.O. Box 1347
Wilmington, Delaware 19801
(302) 658-9300
jying@mnat.com
amoshos@mnat.com

*Counsel for Plaintiff Norris G. Holder, Jr.*


Paul F. Enzinna
D.C. Bar No. 421819
Ellerman Enzinna PLLC
1050 30th Street, NW
Washington, DC 20007
202.753.5553

*Counsel for Plaintiff James H. Roane, Jr.*

Amy Karlin
Interim Federal Public Defender
Celeste Bacchi
Jonathan C. Aminoff
Deputy Federal Public Defenders
321 E. Second Street
Los Angeles, CA 90012
(213) 894-2854

*Counsel for Plaintiff Julius O. Robinson*


Joshua C. Toll
D.C. Bar No. 463073
King & Spalding LLP
1700 Pennsylvania Avenue, N.W.
Washington, DC 20006
(202) 737-8616
jtoll@kslaw.com

Margaret O'Donnell
P.O. Box 4815
Frankfort, KY 40604
(502) 320-1837
mod@dcr.net

*Counsel for Plaintiff Anthony Battle*


Ginger D. Anders (Bar No. 494471)
Jonathan S. Meltzer (Bar No. 888166546)
Brendan Gants (Bar No. 1031419)
MUNGER, TOLLES & OLSON LLP
1155 F Street N.W., Seventh Floor
Washington, D.C. 20004-1357
(202) 220-1100

*Counsel for Plaintiff Brandon Bernard*

Alex Kursman, Assistant Federal Defender
Shawn Nolan, Chief, Capital Habeas Unit
Federal Community Defender Office, E.D. Pa.
601 Walnut Street, Suite 545 West
Philadelphia, PA 19106
Telephone – 215-928-0520
Email – alex_kursman@fd.org

*Counsel for Plaintiff Alfred Bourgeois*


Joseph Luby, Assistant Federal Defender
Federal Community Defender Office, E.D. Pa.
601 Walnut Street, Suite 545 West
Philadelphia, PA 19106
Telephone – 215-928-0520
Email – joseph_luby@fd.org

*Counsel for Plaintiff Chadrick Fulks*


Amy Lentz (DC Bar No. 990095)
Steptoe & Johnson, LLP
1300 Connecticut Avenue NW
Washington, DC 20036
202.429.1350
Email - alentz@steptoe.com

*Counsel for Plaintiff Orlando Hall*


Michael F. Williams
Kirkland & Ellis LLP
1301 Pennsylvania Ave., NW
Washington, DC 20004
202-389-5123
Email - michael.williams@kirkland.com

Susan M. Otto
Federal Public Defender Organization
215 Dean A. McGee Avenue, Suite 109
Oklahoma City, OK 73102
405-609-5930
Email - susan_otto@fd.org

*Counsel for Plaintiff Christopher Vialva*

Donald P. Salzman (D.C. Bar No. 479775)
Charles F. Walker (D.C. Bar No. 427025)
Steven M. Albertson (D.C. Bar No. 496249)
Skadden, Arps, Slate, Meagher & Flom LLP
1440 New York Avenue, N.W.
Washington, D.C. 20005
(202) 371-7983
donald.salzman@skadden.com

*Counsel for Plaintiff Corey Johnson*


Gerald W. King, Jr.
Ga. Bar No. 140981
Jeffrey Lyn Ertel
Ga. Bar No. 249966
FEDERAL DEFENDER PROGRAM, INC.
101 Marietta Street, Suite 1500
Atlanta, Georgia 30303
404-688-7530
(fax) 404-688-0768
Gerald_King@fd.org
Jeff_Ertel@fd.org

Stephen Northup
VSB #16547
Troutman Sanders LLP
P.O. Box 1122
Richmond, Virginia 23218-1122
(804) 697-1240
(fax) (804) 698-5120
steve.northup@troutmansanders.com

Frederick R. Gerson
VSB #39968
Bank Of America Center
1111 East Main Street, 16th Floor
Richmond, Virginia 23219
(804) 482-1121
fgerson@dagglaw.com

*Counsel for Plaintiff Richard Tipton, III*

Evan Miller (DC Bar # 219310)
Vinson & Elkins LLP
2200 Pennsylvania Avenue, NW
Suite 500 West
Washington, D.C. 20037
(202) 639-6605
(202) 478-1815 (fax)
emiller@velaw.com

*Counsel for Plaintiff Bruce Webster*


Matthew Lawry, Assistant Federal Defender
Shawn Nolan, Chief, Capital Habeas Unit
Federal Community Defender Office, E.D. Pa.
601 Walnut Street, Suite 545 West
Philadelphia, PA 19106
Telephone – 215-928-0520
Email – matthew_lawry@fd.org

*Counsel for Plaintiff Dustin Higgs*



Gregory S. Smith (DC Bar #472802)
Law Offices of Gregory S. Smith
913 East Capitol Street, S.E.
Washington, D.C.  20003
Telephone: (202) 460-3381
Email: gregsmithlaw@verizon.net

John R. Martin (pro hac vice pending)
Martin Brothers P.C.
1099 St. Louis Place
Atlanta, GA  30306
Telephone: (404) 433-7446
Email: jack@martinbroslaw.com

*Counsel for Plaintiff William LeCroy*

## CERTIFICATE OF SERVICE

I hereby certify that on September 9, 2020, I caused a true and correct copy of foregoing to be served on all counsel of record via the Court's CM/ECF system. Pursuant to this Court's August 20, 2019 Order, below is a list of all counsel of record. The names marked with an asterisk (*) have no email provided on the docket and are no longer with the identified firms.

Alan Burch
U.S. Attorney's Office for the District of Columbia
(202) 252-2550
Email: alan.burch@usdoj.gov

Peter S. Smith
United States Attorney's Office
Appellate Division
(202) 252-6769
Email: peter.smith@usdoj.gov

Ethan P. Davis
Civil Division, U.S. Department of Justice
(202) 616-4171
Email: Ethan.Davis@usdoj.gov

Robert J. Erickson
US Department of Justice
(202) 514-2841
Email: Robert.erickson@usdoj.gov

Joshua Christopher Toll
KING & SPALDING LLP
(202) 737-8616
Email: jtoll@kslaw.com

Charles Anthony Zdebski
ECKERT SEAMANS CHERIN & MELLOTT, LLC
(202) 659-6605
Email: czdebski@eckertseamans.com

Gerald Wesley King, Jr.
FEDERAL DEFENDER PROGRAM, INC.
(404) 688-7530
Email: gerald_king@fd.org

Paul R. Perkins
Civil Division, Department of Justice
(202) 514-5090
Email: Paul.R.Perkins@usdoj.gov

Jonathan Kossak
Civil Division, Department of Justice
(202) 305-0612
Email: Jonathan.kossak@usdoj.gov

Denise M. Clark
U.S. Attorney's Office for the District of Columbia
(202) 252-6605
Email: Denise.Clark@usdoj.gov

Jean Lin
Civil Division, Department of Justice
(202) 514-3716
Jean.lin@usdoj.gov

Cristen Cori Handley
Civil Division, Department of Justice
(202) 305-2677
Cristen.Handley@usdoj.gov

Paul F. Enzinna
ELLERMAN ENZINNA PLLC
(202) 753-5553
Email: penzinna@ellermanenzinna.com

Brandon David Almond
TROUTMAN SANDERS LLP
(202) 274-2864
Email: brandon.almond@troutmansanders.com

Donald P. Salzman

Charles Fredrick Walker
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
(202) 371-7000
Email: Charles.Walker@skadden.com

Alexander C. Drylewski
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
(212) 735-2129
Email: Alexander.Drylewski@skadden.com
(*pro hac vice application forthcoming)

Celeste Bacchi
OFFICE OF THE PUBLIC DEFENDER
Capital Habeas Unit
(213) 894-1887
Email: celeste_bacchi@fd.org

Jonathan Charles Aminoff
FEDERAL PUBLIC DEFENDER,
CENTRAL DISTRICT OF CALIFORNIA
(213) 894-5374
Email: jonathan_aminoff@fd.org

Billy H. Nolas
FEDERAL COMMUNITY DEFENDER
OFFICE FOR THE EDPA
(215) 928-0520
Email: Billy_Nolas@fd.org

*Jeanne Vosberg Sourgens
VINSON & ELKINS LLP
(202) 639-6633

William E. Lawler, III
VINSON & ELKINS LLP
(202) 639-6676
Email: wlawler@velaw.com

Evan D. Miller
VINSON & ELKINS LLP
(202) 639-6605
Email: EMiller@velaw.com

Margaret O'Donnell
(502) 320-1837

SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
(202) 371-7983
Email: Donald.salzman@skadden.com

Steven M. Albertson
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
(202) 371-7112
Email: Steven.Albertson@skadden.com

Craig Anthony Harbaugh
FEDERAL PUBLIC DEFENDER, CENTRAL
DISTRICT OF CALIFORNIA
(213) 894-7865
Email: craig_harbaugh@fd.org

Alexander Louis Kursman
OFFICE OF THE FEDERAL COMMUNITY
DEFENDER/EDPA
(215) 928-0520
Email: Alex_Kursman@fd.org

Kathryn B. Codd
VINSON & ELKINS LLP
(202) 639-6536
Email: kcodd@velaw.com

Robert E. Waters
KING & SPALDING LLP (202) 737-0500
Email: rwaters@velaw.com

Yousri H. Omar
VINSON & ELKINS LLP
(202) 639-6500
Email: yomar@velaw.com

*William E. Hoffman, Jr.
KING & SPALDING LLP
(404) 572-3383

Mark Joseph Hulkower
STEPTOE & JOHNSON LLP
(202) 429-6221
Email: mhulkower@steptoe.com

Robert A. Ayers
STEPTOE & JOHNSON LLP

Email: mod@dcr.net

Abigail Bortnick
KING & SPALDING LLP
(202) 626-5502
Email: abortnick@kslaw.com

Matthew John Herrington
STEPTOE & JOHNSON LLP
(202) 429-8164
Email: mherrington@steptoe.com

Amy J. Lentz
STEPTOE & JOHNSON LLP
(202) 429-1320
Email: Alentz@steptoe.com

Gary E. Proctor
LAW OFFICES OF GARY E. PROCTOR,
LLC
(410) 444-1500
Email: garyeproctor@gmail.com

Scott Wilson Braden
FEDERAL PUBLIC DEFENDER,
EASTERN DISTRICT OF ARKANSAS
(501) 324-6144
Email: Scott_Braden@fd.org

Amy Gershenfeld Donnella
FEDERAL COMMUNITY DEFENDER
OFFICE FOR THE EDPA
(215) 928-0520
Email: amy_donnella@fd.org

David Victorson
(202) 637-5600
HOGAN LOVELLS US LLP
Email: David.Victorson@hoganlovells.com

John D. Beck
HOGAN LOVELLS US LLP
(212) 918-3000
Email: john.beck@hoganlovells.com

Amelia J. Schmidt
KAISER DILLON, PLLC
(202) 869-1301

(202) 429-6401
Email: rayers@steptoe.com

Robert L. McGlasson
MCGLASSON & ASSOCIATES, PC
(404) 314-7664
Email: rlmcglasson@comcast.net

Sean D. O'Brien
PUBLIC INTEREST LITIGATION CLINIC
(816) 363-2795
Email: dplc@dplclinic.com

Shawn Nolan
FEDERAL COMMUNITY DEFENDER
OFFICE, EDPA
(215) 928-0520
Email: shawn_nolan@fd.org

Joseph William Luby
FEDERAL PUBLIC DEFENDER/EDPA
(215) 928-0520
Email: joseph_luby@fd.org

Pieter Van Tol
HOGAN LOVELLS US LLP
(212) 918-3000
Email: Pieter.Vantol@hoganlovells.com

Jonathan Jeffress
KAISER DILLON, PLLC
(202) 640-4430
Email: Jjeffress@kaiserdillon.com

Andrew Moshos
MORRIS NICHOLS ARSHT & TUNNELL
LLP
(302) 351-9197
Email: Amoshos@mnat.com

Alan E. Schoenfeld
WILMER CUTLER PICKERING HALE &
DORR LLP
(212) 937-7294
Email: Alan.Schoenfeld@wilmerhale.com

Email: Aschmidt@kaiserdillon.com

Norman Anderson
KAISER DILLON PLLC
(202) 640-2850
nanderson@kaiserdillon.com

Jennifer Ying
MORRIS NICHOLS ARSHT & TUNNELL
LLP
(302) 658-9300
Email: Jying@mnat.com

Andres C. Salinas
WILMER CUTLER PICKERING HALE &
DORR LLP
(202) 663-6289
Email: Andres.Salinas@wilmerhale.com

*Ryan M. Chabot
WILMER CUTLER PICKERING HALE &
DORR LLP
(212) 295-6513

Dale Andrew Baich
OFFICE OF THE FEDERAL PUBLIC
DEFENDER
(602) 382-2816
Dale_Baich@fd.org

Kathryn Louise Clune
CROWELL & MORING LLP
(202) 624-5116
kclune@crowell.com

Jennifer M. Moreno
OFFICE OF THE PUBLIC FEDERAL
DEFENDER, DISTRICT OF ARIZONA
(602) 382-2718
Jennifer_moreno@fd.org

Ginger Dawn Anders
MUNGER, TOLLES & OLSON LLP
(202) 220-1107
Ginger.anders@mto.com

*Jonathan S. Meltzer
MUNGER, TOLLES & OLSON LLP
(202) 220-1100

*Brendan Gants
MUNGER, TOLLES & OLSON LLP
(202) 220-1100

Timothy Kane
FEDERAL COMMUNITY DEFENDER
OFFICE, EDPA
(215) 928-0520
Email: timothy_kane@fd.org

Dated:  September 9, 2020

*/s/ Shawn Nolan*
Shawn Nolan
Chief, Capital Habeas Unit
Federal Community Defender Office, E.D. Pa.
601 Walnut Street, Suite 545 West
Philadelphia, PA 19106
(215) 928-0520
shawn_nolan@fd.org

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| _____ | ) | |
| In the Matter of the | ) | |
| Federal Bureau of Prisons' | ) | |
| Execution Protocol Cases | ) | |
|  | ) | Case No. 19-mc-0145 (TSC) |
| LEAD CASE: *Roane et al. v.* | ) | |
| *Barr* | ) | |
|  | ) | |
|  | ) | |
| THIS DOCUMENT | ) | |
| RELATES TO: | ) | |
|  | ) | |
| ALL CASES | | |

## <u>Order Granting Partial Summary Judgment and a Permanent Injunction</u>

This matter comes before the Court on Plaintiffs' motion for summary judgment as to

their claim, brought pursuant to the Administrative Procedure Act, that Defendants' execution

protocol violates the Food, Drug and Cosmetic Act (FDCA), 21 U.S.C. §§ 301 *et. seq.* Plaintiffs

also seek a permanent injunction to accompany the requested grant of summary judgment.

Having carefully considered the parties' submissions, the Court GRANTS summary

judgment for the same reasons that it granted summary judgment on the same claim to Plaintiff

Nelson. *See* ECF No. 213. As explained in the Court's previous order, the FDCA applies to

lethal injection drugs, Defendants illegally administer pentobarbital without a medical

prescription, and Defendants additionally violate the FDCA's restrictions on the compounding of

drugs. Plaintiffs are entitled to final judgment on Claim XI.

The Court additionally GRANTS a permanent injunction. The appropriateness of a

permanent injunction depends on (1) plaintiff's success on the merits, (2) whether the moving

party would be irreparably harmed without an injunction, (3) the balance of equities, and (4) the

public interest. *Doe v. Mattis*, 928 F.3d 1, 7 (D.C. Cir. 2019). All four factors favor a permanent

injunction.

First, Plaintiffs' success on the merits is shown by the grant of summary judgment.

Second, Plaintiffs have demonstrated irreparable harm because Defendants' violations of

the FDCA – which Defendants intend to continue through additional executions – place

Plaintiffs at a documented medical risk as described by anesthesiologist Dr. Gail Van Norman,

who explains that the protocol creates the near medical certainty that the prisoners will

experience the excruciating sense of drowning to death while still conscious. The government

has disputed that evidence, but the dispute does not vitiate the *risk* of a substantial harm that is

weightier than other risks that the court has found sufficient for injunctive relief. *See Banks v.*

*Booth*, No. 20-CV-849(CKK), 2020 WL 1914896, at *11 (D.D.C. Apr. 19, 2020) (irreparable

harm shown by inmates' risk of contracting COVID); *Bell Helicopter Textron Inc. v. Airbus*

*Helicopter*s, 78 F. Supp. 3d 253, 274 (D.D.C. 2015) ("meaningful risk of reputational harm"

from future acts of patent infringement, even though future violations were not certain to occur);

*12 Percent Logistics, Inc. v. Unified Carrier Registration Plan Board*, No. 17-cv-02000, 2019

WL 450676, at *12 (D.D.C. Feb. 4, 2019) (risk that board's plan for announcing meetings would

not adequately inform members of the public). The medical risk is directly traceable to

Defendants' illegal conduct, which avoids a medical consultation that would significantly

diminish the harm in question, such as by requiring that Defendants administer an opioid or other

appropriate analgesic before administering pentobarbital. *See* ECF No. 135 at 13-15 (endorsing

Plaintiffs' proposed alternative under an Eighth Amendment analysis).

The third and fourth factors merge when the government is the defendant. *Nken v.*

*Holder*, 556 U.S. 418, 436 (2009). In this case, the Court again finds that the government's

claimed interest in the finality of death sentences is substantially undermined by its years-long delay in crafting the current protocol, that Plaintiffs have a substantial interest in ensuring that they are executed in accordance with the laws enacted by Congress, and that the public shares that same interest in ensuring that "administrative agencies comply with their obligations under the APA." *N. Mariana Islands v. United State*s, 686 F. Supp. 2d 7, 21 (D.D.C. 2009); *see also League of Women Voters of United States v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016) ("There is generally no public interest in the perpetuation of unlawful agency action.").

Accordingly, it is hereby ORDERED that Plaintiffs' motion for partial summary judgment is GRANTED, that Plaintiffs are hereby granted summary judgment on Claim XI in the amended complaint, and that Defendants are hereby permanently enjoined from executing Plaintiffs until such time as Defendants have complied with the Food, Drug and Cosmetic Act.

SO ORDERED,

_____          _____
TANYA S. CHUTKAN                 Date
United States District Judge