**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| | ) | |
| In the Matter of the | ) | |
| Federal Bureau of Prisons' Execution | ) | |
| Protocol Cases, | ) | |
| | ) | |
| LEAD CASE: *Roane et al. v. Barr* | ) | Case No. 1:19-mc-145 (TSC) |
| | ) | |
| | ) | |
| THIS DOCUMENT RELATES TO: | ) | |
| | ) | |
| *LeCroy v. Barr, et al.*, 1:20-cv-2481 | ) | |
| | ) | |

## <u>DEFENDANTS' NOTICE OF SUPPLEMENTAL AUTHORITY</u>

Defendants submit this notice of supplemental authority to advise the Court of the decision in *United States v. Vialva*, No. 99-cr-00070-ADA (W.D. Tex. Sept. 11, 2020) (Doc. 690), which issued shortly after Defendants filed their opposition to plaintiff LeCroy's motion for a preliminary injunction. A copy of the decision is attached as an exhibit to this notice.

In *Vialva*, an inmate scheduled to be executed on September 24, 2020—who is also a plaintiff in the protocol litigation pending before this Court—filed a motion in his court of conviction to enjoin his execution. As relevant here, Vialva argued that the Bureau of Prisons "lacks authority under federal law to execut[e] him because they have not followed" certain Texas procedures "governing the implementation of death sentences," Op. 4—in particular, state-law requirements that the court set the execution date, that the date be set at least 91 days in advance of the execution, and that the court issue an execution warrant and serve a copy on the defendant's counsel. *Id.* at 8. The court concluded that Vialva failed to establish a likelihood of succeeding on that claim. Joining all other courts to consider the issue, the court concluded "that, even under a broad reading, the FDPA [Federal Death Penalty Act] incorporates only those state procedures

1

that effectuate death, including choice of lethal substances, dosages, vein-access procedures, and medical-personnel requirements." *Id.* at 9 (brackets and quotation marks omitted). "The preexecution procedures of Texas mentioned by Vialva," the court then determined, "are not pertinent to effectuating death and therefore do not fall under the scope of the FDPA." *Id.* The court further determined that the remaining equitable factors weighed against an injunction, because Vialva failed to identify irreparable harm from his claim of non-compliance with Texas law and the balance of equities favored "carrying out an otherwise valid sentence" for the "horrendous murders" that he committed. *Id.* at 9-11.

The decision in *Vialva* supports defendants' arguments in this case that the Georgia procedures cited by LeCroy—including analogous date-setting procedures—are outside the scope of the FDPA, ECF No. 242 at 14-26, and that the remaining injunction factors likewise weigh against further delaying a lawful sentence imposed for LeCroy's heinous crime, *id.* at 27-35.

Dated:  September 11, 2020

Respectfully submitted,

BYUNG J. PAK
United States Attorney
Northern District of Georgia

BRIAN C. RABBITT
Acting Assistant Attorney General

ROBERT A. ZINK
Acting Deputy Assistant Attorney General

CAROLYN "TIPPI" CAIN BURCH
Assistant United States Attorney

*Attorneys for Defendants*

*/s/ Scott Meisler*
SCOTT MEISLER, D.C. Bar #983239
PAUL CRANE
Criminal Division, Appellate Section
U.S. Department of Justice
Washington, D.C. 20530
202-514-2550
scott.meisler@usdoj.gov
paul.crane@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on September 11, 2020, I caused a true and correct copy of foregoing to be served via the Court's CM/ECF system on counsel of record in *LeCroy v. Barr, et al.*, 1:20-cv-2481, and that I also transmitted a copy by e-mail to the following attorneys upon the request of plaintiff LeCroy's counsel:

        John R. Martin (*pro hac vice pending*)
                jack@martinbroslaw.com

        Steven Kissinger, Assistant Federal Public Defender (E.D. Tenn.)
                stephen_kissinger@fd.org

                                    */s/ Scott Meisler*
                                      Attorney for Defendants

# EXHIBIT

*United States v. Vialva*, No. 99-cr-00070
(W.D. Tex. Sept. 11, 2020) (Doc. 690)

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | CRIMINAL NO. W-99-CR-070(1)-ADA |
| v. | § | |
| | § | * CAPITAL CASE * |
| CHRISTOPHER ANDRE VIALVA | § | |

ORDER ON MOTION FOR INJUNCTIVE RELIEF

Defendant Christopher Vialva was convicted under federal law of capital murder and sentenced to death. He is scheduled to be executed on September 24, 2020, at the Federal Correctional Complex in Terre Haute, Indiana, where he currently resides. On August 14, 2020, Vialva filed a motion to enjoin the Federal Bureau of Prisons (BOP) and the United States Marshals Service (USMS) from executing him. ECF No. 675. Citing the Federal Death Penalty Act (FDPA), 18 U.S.C. § 3596, as well as the express terms of this Court's June 2000 judgment, Vialva contends that these agencies lack the legal authority to carry out his execution. The Government filed a response (ECF No. 680) disputing Vialva's assertions, to which Vialva has replied (ECF No. 683).

After carefully considering the pleadings and the governing legal authorities, the Court concludes that Vialva's motion does not meet the standards for injunctive relief. His motion (ECF No. 675) is therefore denied for the reasons discussed below.

## I. Background

In June 1999, Vialva led fellow gang members in the kidnapping, robbery, and ultimately murder of two youth ministers, Todd Bagley and his wife Stacie, on their way home from what would become their last Sunday morning worship service. The Bagleys stopped at a

convenience store when the young men chose them as the victims of their robbery scheme born the day before.  After Vialva and his accomplices tricked the couple by asking for a ride to an uncle's house, Vialva pulled out a handgun and announced "the plans have changed."  The gang stole their money, jewelry, and ATM cards, and then locked the Bagleys in the trunk of their own car while the gang drove around for hours attempting to withdraw money from the Bagleys' account and pawn Stacie's wedding ring.

Vialva insisted on killing the Bagleys and burning their car to eliminate evidence of the gang's crimes.  While they poured lighter fluid inside the car, the Bagleys sang and prayed in the trunk.  Stacie said, "Jesus loves you" and "Jesus, take care of us."  Vialva then donned a ski mask, ordered the trunk open, and shot both Todd and Stacie in the head.  Todd was instantly killed, but Stacie survived the gunshot long enough to burn alive after one accomplice, Brandon Bernard, set the car on fire.

In June 2000, Vialva and his co-defendant Brandon Bernard were jointly tried and convicted by a unanimous jury in the Western District of Texas who heard all of the evidence and decided their guilt for their part in the carjacking and murder of Todd and Stacie Bagley while on federal government property.  Both were sentenced to death.  Their convictions were affirmed on direct appeal and certiorari was denied by the United States Supreme Court.  *United States v. Bernard*, 299 F.3d 467 (5th Cir. 2002), *cert. denied*, 539 U.S. 928 (2003).  Vialva and Bernard then challenged their convictions and sentences by filing motions to vacate, set aside, or correct under 28 U.S.C. § 2255 alleging a myriad of constitutional violations.  After careful consideration, the district court—the Honorable Judge Walter S. Smith, Jr. presiding[1]—denied an evidentiary hearing, denied the § 2255 motions and the claims raised therein, and denied a

---

[1]     Judge Smith also presided over Bernard and Vialva's original trial.

certificate of appealability (COA).  ECF No. 449.  On appeal, the Fifth Circuit also denied
Vialva and Bernard a COA and their petitions for certiorari review were again denied by the
Supreme Court in early 2016.  *United States v. Bernard*, 762 F.3d 467 (5th Cir. 2014), *cert.
denied*, 136 S. Ct. 892 (2016).

Thereafter, Vialva and Bernard filed motions under Rule 60(b) of the Federal Rules of
Civil Procedure asking the district court to vacate its previous denial of their § 2255 motions.
ECF Nos. 553, 569.  In both motions, the defendants argued that Judge Smith's alleged
"unfitness" to preside over the § 2255 proceedings amounted to a defect in the integrity of the
post-conviction review process sufficient to justify reopening the proceedings.  The district
court—the Honorable Judge Lee Yeakel presiding—construed the Rule 60(b) motions as
successive petitions and dismissed them without prejudice for lack of jurisdiction.  ECF No. 570.
The Fifth Circuit denied COA on the issue and the Supreme Court denied certiorari in January
2020.  *United States v. Vialva*, 904 F.3d 356 (5th Cir. 2018), *cert. denied*, 140 S. Ct. 860 (2020).

On July 31, 2020, the BOP, upon the direction of the Attorney General, scheduled
Vialva's execution for September 24, 2020.  That same day, Vialva was informed of the setting
of his execution date, as was this Court.  ECF Nos. 675-1, 673. Two weeks later, Vialva filed the
instant motion to enjoin the BOP and USMS from carrying out his execution.  According to
Vialva, neither the June 2000 judgment (ECF No. 289), Department of Justice regulations, nor
any other federal law presently empowers the Attorney General, USMS, or BOP to unilaterally
set and carry out his execution.

Vialva provides four arguments to support this assertion: (1) this Court's June 2000
judgment stayed Vialva's execution "pending further order of this Court," and no further order
has been issued; (2) the June 2000 judgment does not authorize the Attorney General or BOP to

determine the time, place, and manner of his execution; (3) federal law requires the issuance of an execution warrant from the trial court before the USMS is authorized to supervise an execution, and no such order has been issued by this Court; and (4) the BOP lacks authority under federal law to execution him because they have not followed the procedures set forth by Texas law governing the implementation of death sentences.  Vialva asks this Court to enjoin the BOP from executing him "until it has the legal authority to do so and in a manner that comports with federal and Texas law."  ECF No. 675 at 11.

## II. <u>Analysis</u>

To obtain a preliminary injunction, Vialva must establish: "(1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest." *Jones v. Tex. Dep't of Criminal Justice*, 880 F.3d 756, 759 (5th Cir. 2018) (quoting *Byrum v. Landreth*, 566 F.3d 442, 445 (5th Cir. 2009)); *Ladd v. Livingston*, 777 F.3d 286, 288 (5th Cir. 2015) (citing *Trottie v. Livingston*, 766 F.3d 450, 451 (5th Cir. 2014)).   This standard is essentially the same as the framework for deciding whether to grant a stay of execution.  *See Adams v. Thaler*, 679 F.3d 312, 318 (5th Cir. 2012) (reiterating the four perquisites for obtaining a stay of execution as set forth in *Nken v. Holder*, 556 U.S. 418, 434 (2009)).

Notably, the party seeking injunctive relief must prove each of the four elements before a preliminary injunction can be granted.  *Mississippi Power & Light Co. v. United Gas Pipeline*, 760 F.2d 618, 621 (5th Cir. 1985).   Because a preliminary injunction is considered an "extraordinary and drastic remedy," however, it is not granted routinely, "but only when the movant, by a clear showing, carries the burden of persuasion."  *Holland Am. Ins. Co. v.*

4

*Succession of Roy*, 777 F.2d 992, 997 (5th Cir. 1985). Even when a movant establishes each of the four requirements, the decision whether to grant or deny a preliminary injunction is left to the sound discretion of the district court, and the decision to grant a preliminary injunction is treated as the exception rather than the rule. *Mississippi Power & Light*, 760 F.2d at 621.

As explained below, these factors do not support Vialva's request for an injunction. Vialva has failed to present a substantial case on the merits, and the interests of other parties, including the public, weigh in favor of denying Vialva's request to stay his execution.

## A.    <u>Vialva's Arguments Lack Merit</u>.

### 1.    <u>The Court's June 2000 Judgment</u>

Vialva first contends that the explicit terms of the Court's June 2000 judgment demonstrate that the BOP lacks the legal authority to execute him. In relevant part, the June 2000 judgment reads:

> […] As to [the capital counts], the defendant is hereby committed to the custody of the U.S. Bureau of Prisons until exhaustion of the procedures for appeal of the judgment of conviction and review of the sentences. Upon exhaustion of appeals, the sentence of DEATH will be implemented by the defendant being released from the custody of the U.S. Bureau of Prisons to the custody of the United States Marshals, who shall supervise the execution of the defendant in the manner prescribed by the laws of Texas.
>
> The time, place and manner of execution are to be determined by the Attorney General, provided the time shall not be sooner than 61 days nor later than 90 days after the date of this judgment. If an appeal is taken from this conviction and sentence, execution of the sentence shall be stayed pending further order of this Court upon receipt of the mandate of the Court of Appeals.
>
> The defendant is hereby committed to the custody of the Bureau of Prisons and shall be confined until the sentence of execution is carried out.

ECF No. 289 at 2.

Citing the second paragraph of the judgment, Vialva argues there is presently a stay of execution in place because no further order ever issued from the district court. He also asserts

that the Attorney General completely lacks the authority to set an execution date now because more than 90 days have passed since the judgment issued.  The Court does not agree with either of Vialva's arguments.  When read in context with the entire judgment, it is clear the second paragraph was intended to limit only the Attorney General's authority to set an execution date before Vialva had a chance to exhaust his appeals.  There is no indication that a stay of execution—or the limitations placed on the Attorney General's authority to set an execution date—was meant to apply after Vialva had exhausted his appeals.  This is evidenced by the first paragraph of the judgment indicating that the Government *will* implement Vialva's sentence upon the exhaustion of his appeals.

Nevertheless, the Court is aware that the June 2000 judgment may cause the discerning reader some confusion.  The remedy to this confusion, however, is not to enjoin the Government from carrying out Vialva's lawful sentence, but rather clarify what the Court believes was meant all along—that there is no longer a stay in place and the Government has the authority to set and carry out Vialva's sentence of death.  To that end, simultaneous with the filing of this Order, the Court will issue a separate Order lifting any theoretical stay and confirming the Government's authority to schedule and carry out Vialva's execution on September 24, 2020.

2.      Federal Law

Vialva next alleges that federal law requires the issuance of a warrant from this Court before the USMS has authority to carry out his execution.  Because no such warrant has been issued, Vialva argues, no one in the Executive Branch, including the Attorney General and USMS, has authority to implement his upcoming scheduled execution.  He relies, in part, on a Department of Justice (DOJ) regulation instructing government attorneys on the type of proposed judgment and order they should file after a jury returns a verdict of death.  *See* 28 C.F.R. § 26.2

6

("Whenever this part becomes applicable, the attorney for the government shall promptly file with the sentencing court a proposed Judgment and Order . . .").

There are at least two problems with Vialva's argument.  First, there is nothing in the Constitution stating that the power to *implement* a sentence—as opposed to the power to *impose* a sentence—vests solely with the courts, and Vialva identifies no statute, case law, or regulation consistent with this position.  Although Vialva refers to 28 C.F.R. § 26.2, his reliance on a regulation that governs only DOJ attorneys is misplaced.  For one, the regulation does not indicate that the issuance of a judicial warrant is a prerequisite for obtaining authorization to implement a sentence.[2]  And while incorporating the content of 28 C.F.R. § 26.2 may seem like a good idea, courts are not required to comply with the regulation in order to confer DOJ the authority to implement a lawfully imposed death sentence.

This leads to Vialva's second problem—he concedes that a district court *can* confer DOJ this authority.  The Court did just that in the June 2000 judgment when it sentenced Vialva to death.   In that judgment, the Court specifically stated that Vialva's sentence "will be implemented by the defendant being released from the custody of the U.S. Bureau of Prisons to the custody of the United States Marshals, who shall supervise the execution of the defendant in the manner prescribed by the laws of Texas."   ECF No. 289 at 2.  This is consistent with the FDPA, which directs the USMS to "supervise the implementation of the sentence in the manner prescribed by the law of the State in which the sentence is imposed."  Thus, the Court long ago gave DOJ the authority to implement Vialva's sentence.

---

[2]        The regulation states that the proposed Judgment and Order filed by the government shall state (1) the sentence shall be executed by a United States Marshal designated by the Director of the United States Marshals Service; (2) the sentence shall be executed by intravenous injection of a lethal substance or substances in a quantity sufficient to cause death;   (3) the sentence shall be executed on a date and at a place designated by the Director of the Federal Bureau of Prisons; and (4) the prisoner under sentence of death shall be committed to the custody of the Attorney General or his authorized representative for appropriate detention pending execution of the sentence.   28 C.F.R. § 26.2(a).

Regardless, assuming further judicial authorization is necessary, this Court's new Order—issued contemporaneously with this one—tracks the language of 28 C.F.R. § 26.2 and confirms DOJ's authority to implement Vialva's sentence. Injunctive relief is therefore unnecessary.

3.     <u>Texas Law</u>

Lastly, Vialva contends he is entitled to an injunction because his sentence is not being implemented "in the manner prescribed by the laws of Texas" as required by the FDPA and the June 2000 judgment. Vialva focuses on three pre-execution procedures that are required under Texas law but allegedly have not been followed in this case: (1) that a court must enter an order setting the date of an execution in order to effectuate a death sentence; (2) that the execution date must be set at least 91 days in advance; and (3) that a court issue an execution warrant directing the relevant authority to carry out the execution, a copy of which must be served on counsel. *See* Tex. Code Crim. Pro. art. 43.141(a)-(c). Because none of these requirements have occurred, Vialva argues that carrying out his execution would be "blatantly illegal." The Court disagrees.

While the specific issue raised by Vialva is admittedly novel, every court to deal with a similar issue has come to the same conclusion—that the FDPA "cannot be reasonably read to incorporate every aspect of the forum state's law regarding execution procedure." *Peterson v. Barr*, 965 F.3d 549, 554 (7th Cir. 2020) (finding state law governing execution witnesses falls outside the scope of the FDPA); *United States v. Mitchell*, No. 20-99009, 2020 WL 4815961, at *2 (9th Cir. 2020) (finding procedures that do not effectuate death fall outside the scope of the FDPA); *In re Fed. Bureau of Prisons' Execution Protocol Cases*, 955 F.3d 106, 126 (D.C. Cir. 2020) (*Protocol Cases*) (same). Rather, federal law requires the Government to follow only

those state laws, regulations, and protocols that govern the procedure for "effectuating death." *Mitchell*, 2020 WL 4815961, at *2.

This Court agrees with the above Circuits and concludes that, even under a broad reading, the FDPA incorporates only those state procedures "that effectuate [] death, including choice of lethal substances, dosages, vein-access procedures, and medical-personnel requirements." *Peterson*, 965 F.3d at 554; *Protocol Cases*, 955 F.3d at 151 (Tatel, J., dissenting). The pre-execution procedures of Texas mentioned by Vialva are not pertinent to effectuating death and therefore do not fall under the scope of the FDPA. Consequently, Vialva fails to establish the substantial likelihood of success on the merits necessary to warrant injunctive relief. *Jones*, 880 F.3d 756, 759.

## B. <u>The Remaining Factors Weigh Against an Injunction.</u>

A preliminary injunction is an extraordinary remedy never awarded as a matter of right. *Winter v. National Resource Defense Council, Inc.*, 555 U.S. 7, 24 (2008) (citing *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008)). In addition to evaluating a movant's likelihood of success on the merits, courts "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Id.* (citation omitted). Courts should also "pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Id.* In this case, Vialva fails to show that the balance of equities—*i.e.* the remaining three prerequisites for obtaining an injunction—weigh in his favor.

To start, Vialva has not identified what "irreparable injury" would occur if an injunction is not issued. The gist of Vialva's motion is that the Government set his execution date without further order from this Court and without complying with Texas law. As explained at the zoom hearing held September 3, 2020, that means Vialva was given notice of his execution date only

55 days in advance as opposed to at least 90 days that is required under Texas law, thus cutting short his time to further challenge his conviction and sentence and request clemency. But while the death penalty itself is irreversible and sometimes "weighs heavily in the movant's favor," there must come a time when the legal issues "have been sufficiently litigated and re-litigated so that the law must be allowed to run its course." *O'Bryan v. Estelle*, 691 F.2d 706, 708 (5th Cir. 1982) (per curiam).

As discussed in more detail in the Background section, Vialva has thoroughly litigated the legality of his conviction and sentence for almost two decades on direct appeal and in post-conviction proceedings before this Court, the Fifth Circuit, and the Supreme Court. It is safe to say the legal issues have been "sufficiently litigated." And while the legal issues surrounding Vialva's execution date did not become ripe until the date was set, any argument that he has been prevented from fully and fairly litigating these issues is belied by his numerous legal filings since that time and a merits decision this week on his habeas corpus petition.[3] Petitioner has also filed a clemency petition and had a hearing regarding that petition scheduled for September 10, 2020. Thus, this Court can find no cognizable harm that will result to Vialva if his request for an injunction is denied.

Furthermore, the interests of the Government—and the public—in enforcing valid criminal sentences outweigh Vialva's request for more time. "[E]quity must be sensitive to the [s]tate's strong interest in enforcing its criminal judgments without undue interference from the

---

[3]     In addition to the exemplary briefing provided in the instant case, Vialva has also requested habeas corpus relief from the Southern District of Indiana and challenged the constitutionality of the federal death penalty protocol in the D.C. district court, the D.C. Circuit Court, and the Supreme Court. *See Vialva v. Warden, et al.*, No. 20-CV-00413 (S.D. Ind.), ECF No. 1 (Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 filed Aug. 10, 2020); *Vialva v. Barr, et al.*, No. 1:20-cv-01693-TSC (D.D.C.), consolidated with *In Re Fed. Bureau of Prisons' Execution Protocol Cases*, No. 1:19-mc-00145-TSC (D.D.C.); *In re Fed. Bureau of Prisons' Execution Protocol Cases*, 955 F.3d 106 (D.C. Cir. 2020), *cert. denied sub nom. Bourgeois v. Barr*, No. 19-1348, 2020 WL 3492763 (U.S. June 29, 2020). The Southern District of Indiana has already ruled on the merits of Vialva's relief request. *See Vialva v. Warden*, No. 20-CV-00413 (S.D. Ind.), ECF No. 20 (Order Den. Petition for Writ of Habeas Corpus (Sept. 8, 2020)).

federal courts." *Crutsinger v. Davis*, 930 F.3d 705, 709 (5th Cir. 2019) (citing *Hill v. McDonough*, 547 U.S. 573, 584 (2006)). The Supreme Court has frequently explained that "both the [Government] and the victims of crime have an important interest in the timely enforcement of a [death] sentence." *Bucklew v. Precythe*, 139 S. Ct. 1112, 1133 (2019); *Hill*, 547 U.S. at 584.

Granting Vialva an injunction would clearly inhibit the Government's vested interest in carrying out an otherwise valid sentence and would impair the finality of this Court's criminal judgment. When "lengthy federal proceedings have run their course"—as they have in this case—"finality acquires an added moral dimension." *Protocol Cases*, 955 F.3d at 126 (citing *Calderon v. Thompson*, 523 U.S. 538, 556 (1998)). Vialva committed the horrendous murders of Stacie and Todd Bagley over 21 years ago and has received the full panoply of procedural protections afforded under the Constitution and the FDPA. No further delay is warranted.

In short, Vialva fails to demonstrate "that the balance of equities tips in his favor, [or] that an injunction is in the public interest." *Winter*, 555 U.S. at 20; *Jones*, 880 F.3d at 759. The relief requested in his motion to enjoin his execution will therefore be denied.

### III.  Conclusion

Vialva has failed to demonstrate a likelihood of success on the merits or that the balance of equities weighs in his favor. Accordingly, for the foregoing reasons, Vialva's Motion for Injunction, filed August 14, 2020 (ECF No. 675), is **DENIED**.

It is so **ORDERED**.

SIGNED this 11th day of September, 2020.

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE

11