# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| _____ )<br>In the Matter of the )<br>Federal Bureau of Prisons' )<br>Execution Protocol Cases )<br> )<br>LEAD CASE: *Roane et al. v.* )<br>*Barr* )<br> )<br> )<br>THIS DOCUMENT )<br>RELATES TO: )<br> )<br>ALL CASES | | Case No. 19-mc-0145 (TSC) |

**REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY
JUDGMENT AND PERMANENT INJUNCTION ON APA CLAIM CONCERNING
DEFENDANTS' VIOLATIONS OF THE FOOD, DRUG AND COSMETIC ACT**

## <u>TABLE OF CONTENTS</u>

Reply argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.   Plaintiffs are entitled to summary judgment on Claim XI. . . . . . . . . . . . . . . . . . . . . . 1

II.  The Court should permanently enjoin Defendants from executing
     Plaintiffs in a manner that violates the FDCA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

     A.   Plaintiffs need not establish an Eighth Amendment violation in order to
          show irreparable harm that justifies a permanent injunction. . . . . . . . . . . . . . . . 1

     B.   The excruciating physical harm identified by Plaintiffs relates directly to
          Defendants' unlawful conduct, which omits clinical oversight from the
          process of dispensing a prescription-only drug. . . . . . . . . . . . . . . . . . . . . . . . . . 3

     C.   Defendants' dispute of the harm is irrelevant to the appropriateness of
          an injunction.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

     D.   Defendants' laboratory results do not diminish the need for a permanent
          injunction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

     E.   The balance of equities supports a permanent injunction. . . . . . . . . . . . . . . . . . 8

Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

## **TABLE OF AUTHORITIES**

**Cases**

*Al-Joudi v. Bush*, 406 F. Supp. 2d 13 (D.D.C. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Athenex Inc. v. Azar*, 397 F. Supp. 3d 56 (D.D.C. 2019).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Banks v. Booth*, No. 20-CV-849(CKK), 2020 WL 1914896 (D.D.C. Apr. 19, 2020). . . . . . . . . . 5

*Barr v. Lee*, No. 20A8, 2020 WL 3964985 (U.S. July 14, 2020).. . . . . . . . . . . . . . . . . . . . . . . . . 1

*Bell Helicopter Textron Inc. v. Airbus Helicopters*, 78 F. Supp. 3d 253 (D.D.C. 2015). . . . . . . 2, 6

*Bucklew v. Precythe*, 139 S. Ct. 1112 (2019). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Cook v. FDA*, 733 F.3d 1 (D.C. Cir. 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Doe v. Mattis*, 928 F.3d 1 (D.C. Cir. 2019). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 6, 7

*Durr v. Strickland*, No. 10-cv-288, 2010 WL 1610592 (S.D. Ohio Apr. 15, 2010). . . . . . . . . . . 4

*Edmo v. Corizon, Inc.*, 935 F.3d 757 (9th Cir. 2019). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

*Innovation Law Lab v. Wolf*, 951 F.3d 1073 (9th Cir. 2020).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*National Ass'n of Farmworkers Orgs. v. Marshall*, 628 F.2d 604 (D.C. Cir. 1980).. . . . . . . . . . . 2

*Ringo v. Lombardi,* No. 09-cv-4095, 2009 WL 1406980 (W.D. Mo. May 19, 2009). . . . . . . . . 4, 5

*Ringo v. Lombardi*, No. 09-cv-4095, 2010 WL 4103201 (W.D. Mo. Oct. 18, 2010). . . . . . . . . . . 4

*United States v. Smith*, 573 F.3d 639 (8th Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*United Steel v. Mine Safety & Health Admin.,* 925 F.3d 1279 (D.C. Cir. 2019). . . . . . . . . . . . . . 2

**Statutes**

5 U.S.C. § 706(2)(A). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

21 U.S.C. § 353(b)(1)(B). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

21 U.S.C. § 353b(a)(2)(A)......................................................... 8

21 U.S.C. § 353b(d)(2). ........................................................... 8

## REPLY ARGUMENT

### I.    PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT ON CLAIM XI[1]

In opposing summary judgment, Defendants seek to relitigate issues they have already lost.

Defendants contend that the FDCA does not apply to execution drugs, that the Office of Legal

Counsel's memorandum to that effect somehow trumps the D.C. Circuit's precedent in *Cook v.*

*FDA*, 733 F.3d 1 (D.C. Cir. 2013), that Plaintiffs cannot privately "enforce" the FDCA even though

they seek to redress the Government's statutory violations through the APA, and that the Supreme

Court's unreasoned vacatur signals rejection of the claim. Opp. at 1, 11-19, 25. But the mere

rehashing of earlier arguments provides no reason for the Court to change its rejection of them.

*See* ECF No. 213 at 6-10; ECF No. 145 at 10, 12-13. Plaintiffs remain entitled to summary

judgment.

### II.    THE COURT SHOULD PERMANENTLY ENJOIN DEFENDANTS FROM EXECUTING PLAINTIFFS IN A MANNER THAT VIOLATES THE FDCA

Defendants misrepresent the harm stemming from their violation of the FDCA, and with

it, the considerations that govern the grant of a permanent injunction. Those considerations

continue to justify injunctive relief.

#### A.    Plaintiffs need not establish an Eighth Amendment violation in order to show irreparable harm that justifies a permanent injunction

Citing *Barr v. Lee*, No. 20A8, 2020 WL 3964985 (U.S. July 14, 2020), and *Bucklew v.*

*Precythe*, 139 S. Ct. 1112 (2019), Defendants argue that an injunction is improper because courts

have repeatedly upheld pentobarbital protocols against Eighth Amendment challenges. Opp. at 22.

But the present claim is not an Eighth Amendment claim. Relief under the APA does not require

an unconstitutional level of harm, because the APA is not concerned with constitutional injuries

---

[1] With respect to Plaintiff LeCroy, this Motion relates to Count IV of his Amended Complaint
(ECF No. 245), which mirrors Count XI of the Amended Complaint filed by the other Plaintiffs.

alone. *See*, *e.g.*, *National Ass'n of Farmworkers Orgs. v. Marshall*, 628 F.2d 604, 613-14 (D.C. Cir. 1980) (risks to children from pesticide exposure). Plaintiffs need only demonstrate a likelihood of irreparable harm, not a certainty of cruel and unusual punishment. *See Doe v. Mattis*, 928 F.3d 1, 7 (D.C. Cir. 2019); *accord*, *e.g.*, *Bell Helicopter Textron Inc. v. Airbus Helicopters*, 78 F. Supp. 3d 253, 274 (D.D.C. 2015) ("meaningful risk of reputational harm" from future patent infringements).

There is no reason to elevate the standard for an injunction in an APA case simply because an APA claim is asserted alongside an Eighth Amendment claim or is brought by a prisoner threatened with execution. To the contrary, the APA provides that a reviewing court "*shall* … hold unlawful and *set aside*" agency action found to be "not in accordance with law." 5 U.S.C. § 706(2)(A) (emphases added). The APA reflects a "presumption" that an unlawful agency action "should be set aside in its entirety." *Innovation Law Lab v. Wolf*, 951 F.3d 1073, 1094 (9th Cir. 2020); *see also United Steel v. Mine Safety & Health Admin.*, 925 F.3d 1279, 1287 (D.C. Cir. 2019) ("The ordinary practice is to vacate unlawful agency action."). Defendants seek to insulate their illegal protocol under a heightened standard of harm, even though no authority supports such a heightened standard.

Continuing their Eighth Amendment theme, Defendants argue that their pentobarbital executions have proceeded "without incident" or without outward signs of the prisoner's suffering. Opp. at 3, 22, 24-25, 30. Defendants' argument fails on its own terms. The scientific evidence of record is that pentobarbital inhibits the prisoner's *responsiveness* to pain, and not the ability to *experience* such pain while still conscious. *See* Van Norman Decl. (ECF No. 24) at 13 (noting that "authoritative publications" now describe barbiturates as producing "unresponsiveness" rather than "unconsciousness"). It is no surprise that the prisoners have been unresponsive during the execution process, because that is the effect barbiturates have. *Id.* Having suppressed the prisoners'

response to pain, Defendants cannot meritoriously cite the absence of a response to show the absence of pain.

**B.     The excruciating physical harm identified by Plaintiffs relates directly to Defendants' unlawful conduct, which omits clinical oversight from the process of dispensing a prescription-only drug**

Defendants insist that their violations of the FDCA do not actually harm Plaintiffs. They argue that pentobarbital carries the same risk of pain whether prescribed or unprescribed, and so Plaintiffs cannot show harm from the absence of a prescription, and Defendants would not diminish that harm by furnishing one. *See* Opp. at 2, 20-22, 28. Defendants misstate the harm underlying Plaintiffs' claim. The harm is not merely that the pentobarbital to be administered into a prisoner lacks a piece of paper. Rather, it is the lack of FDCA-required clinical oversight that would require pentobarbital to be administered in a manner (including in combination with other drugs) that minimizes the well-documented risk of suffering from the conscious experience of flash pulmonary edema.

When a prescription-only drug carries risks of adverse physical effects, physicians routinely address those risks by prescribing other drugs to minimize or treat them. For example, menopausal women who are prescribed estrogen replacement therapy are generally prescribed progesterone in order to reduce the risk of endometrial cancer from estrogen alone.[2] A leukemia patient might be prescribed a "red cell growth factor" to counteract the tendency of many anticancer drugs to cause anemia.[3] And a physician who treats an HIV-infected individual with antiretroviral therapy "may prescribe medicines to reduce or eliminate side effects" such as fatigue,

---

[2] *See* Mayo Clinic, *Hormone Therapy: Is It Right for You?* (June 9, 2020), available at https://www.mayoclinic.org/diseases-conditions/menopause/in-depth/hormone-therapy/art-20046372#:~:text=If%20you%20haven't%20had,the%20risk%20of%20endometrial%20cancer.

[3] *See* Leukemia & Lymphoma Society, *Understanding Side Effects of Drug Therapy* 18 (2013), available at https://www.lls.org/sites/default/files/file_assets/PS43_Understanding%20Side%20Effects%20of%20Drug%20Therapy_6_16_reprint.pdf.

dizziness, and gastrointestinal problems.[4] In each instance an otherwise dangerous drug is available by prescription only, and an informed clinician limits the danger by prescribing another drug to counteract it. Defendants' prescription-free protocol permits no such guidance, and thus puts Plaintiffs at risk for avoidable and unnecessary suffering.

Defendants nevertheless urge that pentobarbital is the *only* relevant drug, and that Plaintiffs cannot base their showing of harm on the capacity of an opiate to diminish the hazards of pentobarbital, or on a clinician's ability to require such diminishment as an informed prescriptive act. *See* Opp. at 28. This argument, too, misstates the harm involved. Defendants simply *assume* that a clinician, following "prevailing medical standards" and "generally accepted practices" – *United States v. Smith*, 573 F.3d 639, 652-53 (8th Cir. 2009) – would necessarily prescribe the Defendants' same choice of execution drugs: pentobarbital alone. The harm to Plaintiffs is not Defendants' choice of pentobarbital itself, but rather, the dubious exercise of that choice without the informed clinical oversight that limits and channels the dispensing and administration of prescription-only drugs. *See* 21 U.S.C. § 353(b)(1)(B).

Equally unhelpful is Defendants' citation of three unpublished declaratory-judgment cases, for which Defendants urge the principle that "a statutory violation, standing alone, is not *per se* irreparable harm." Opp. at 21 (citing *Ringo v. Lombardi*, No. 09-cv-4095, 2009 WL 1406980 (W.D. Mo. May 19, 2009); *Ringo v. Lombardi*, No. 09-cv-4095, 2010 WL 4103201 (W.D. Mo. Oct. 18, 2010); and *Durr v. Strickland*, No. 10-cv-288, 2010 WL 1610592 (S.D. Ohio Apr. 15, 2010)). To be clear, Plaintiffs do not seek an injunction on a statutory violation alone. Rather, they have documented a medical risk that each prisoner will suffer an excruciating death by experiencing acute pulmonary edema while still conscious, a specific medical remedy of

---

[4] *See* Minority HIV/AIDS Fund, *HIV Treatment Overview* (March 29, 2019), available at https://www.hiv.gov/hiv-basics/staying-in-hiv-care/hiv-treatment/hiv-treatment-overview.

administering an opioid or other analgesic beforehand, and Defendants' deliberate avoidance of the medical oversight required by the FDCA. No such record was developed or described in the cases Defendants cite, which is why it was "uncertain" in those cases how compliance with the FDCA would "impact the inmate's execution." Opp. at 22 (quoting *Ringo*, 2009 WL 1406980, at *3).

**C.     Defendants' dispute of the harm is irrelevant to the appropriateness of an injunction**

Defendants do not counter Plaintiffs' showing that a documented *risk* of future medical harm will support an injunction. *See* Motion (ECF No. 236) at 11, and cases cited. They nevertheless offer two additional expert declarations in order to "dispute" Plaintiffs' factual showing of harm, and they urge the Court to conduct an evidentiary hearing and resolve that evidentiary dispute before "crediting" Plaintiffs' evidence and granting an injunction. *See* Opp. at 3, 10, 23-30.

The Government's purported factual "dispute" is not a material one. The Court already understands, for example, that Dr. Antognini disagrees with Drs. Van Norman and Edgar on the issue of whether pentobarbital will render the prisoner insensate before the onset of acute pulmonary edema. *See* ECF No. 135 at 12 ("[T]he question of whether the 2019 Protocol is significantly likely to cause serious pain turns on the narrower question of whether the pentobarbital is likely to render inmates insensate or dead before they experience the symptoms of pulmonary edema."). That dispute does not prevent the Court from finding that Plaintiffs are being subjected to a meaningful *risk* of excruciating pain rather than to a certainty of it. *See Al-Joudi v. Bush*, 406 F. Supp. 2d 13, 20 (D.D.C. 2005) (irreparable harm is shown when "the movant's health is in imminent danger"); *Banks v. Booth*, ___ F. Supp. 3d ___, No. 20-CV-849(CKK), 2020 WL 1914896, at *11 (D.D.C. Apr. 19, 2020) ("risk of contracting COVID-19"); *Edmo v. Corizon, Inc.*, 935 F.3d 757, 798 (9th Cir. 2019) ("risk of further attempts at self-castration, and possibly suicide"

unless transgender prisoner is provided gender confirmation surgery).

The medical risk at issue here is that Dr. Van Norman and the authoritative "body of anesthesia literature" from the last thirty years are correct in their assessment that pentobarbital limits the subject's responsiveness rather than consciousness, and that Dr. Antognini's contrary view is wrong. *See* ECF No. 24 at 13, 22-23, 28-29 (per Dr. Van Norman); ECF No. 117-1 at 3-4, 8-9 (same); Opp. at 24 (per Dr. Antognini, the prisoner will be "profoundly unconscious" and "deeply anesthetized."). The Court has already concluded that "Plaintiffs have the better of the scientific evidence." ECF No. 135 at 12. Plaintiffs have proffered substantial evidence that is in itself sufficient for this Court to conclude that Plaintiffs remain subject to "a non-speculative risk of future [medical] harm," *Bell Helicopter*, 78 F. Supp. 3d at 274.[5]

Although Plaintiffs do not believe that an evidentiary hearing is necessary, they do not oppose a hearing if the Court believes that one is required. In that event, Plaintiffs respectfully request that the hearing take place expeditiously. Of particular importance here, Defendants have already been found to be violating the FDCA, and yet it was only yesterday that they requested a hearing and proffered new evidence in support of that request. Under the circumstances, Plaintiffs urge the Court to preliminarily enjoin Defendants from carrying out the scheduled executions of Plaintiff LeCroy (scheduled for September 22) and Plaintiff Vialva (scheduled for September 24), if the hearing that Defendants have requested cannot be completed beforehand, and from setting additional execution dates until that hearing has been completed. *See Doe*, 928 F.3d at 7 (same

---

[5] Defendants also suggest that pulmonary edema occurs post-mortem, according to Dr. Antognini. *See* Opp. at 23. This contention is not medically plausible and, in any event, the purported "dispute" does not eliminate the risk to Plaintiffs. *See* ECF No 117-1 at 10 (Dr. Van Norman noting, contrary to Defendants' latest submissions, that flash edema cannot be a post-mortem event because flash edema "requires a beating heart to produce the pressure in the capillaries, and is facilitated by spontaneous attempts to breathe against an obstructed airway, which also requires a living subject"); Edgar Decl. (ECF No. 29-3), at 20 ("The presence of foam or froth in the airways indicates the active mixing of edema fluid with air, a process that could occur while the inmate was still breathing[.]").

relevant factors govern preliminary and permanent injunctions). At the very least, the Court cannot *deny* injunctive relief to Plaintiffs without an evidentiary hearing, given the Government's late-breaking submission of new evidence.

**D.    Defendants' laboratory results do not diminish the need for a permanent injunction**

Seeking to obfuscate their disregard of the FDCA's compounding restrictions, Defendants point to the laboratory reports they recently added to the Administrative Record. *See* Opp. at 5-6, 28-29. Defendants argue that they will not administer pentobarbital unless it has passed "quality assurance testing," Opp. at 28, but these newly-disclosed testing documents do not provide the assurances Defendants claim. For example, the Certificate of Analysis for the pentobarbital stored at room temperature throughout the Government's 365-day stability study shows that the drug was sub-potent (below 92 percent) on days 92 (August 15, 2019) and 271 (February 10, 2020) of the study, but somehow increased in purity in the intervening days and again on day 369 (May 18, 2020). AR 1140. The Certificate of Analysis for the pentobarbital stored at elevated temperature documents four different points at which the drug was sub-potent (days 56, 92, 189, and 369). AR 1142.

In all, the recently-disclosed laboratory reports show that the Defendants' pentobarbital failed potency testing on six different occasions. Those results were not shared with the Court or Plaintiffs until they were added to the Administrative Record on September 7, 2020. *See* ECF No. 231. Only twelve days earlier, however, the Government assured the Court that its pentobarbital had "met all quality assurance standards," in response to Plaintiff Nelson's argument that the drug's potency was not established because "there's been no 365-day stability study." Transcript of Telephonic Status Conference (Aug. 28, 2020), at 4 (counsel for Nelson), 11 (counsel for Defendants); *see also id.* at 16 (per Government counsel, "[T]he idea about there's going to be unstable or some sort of subpotent drug we think is unwarranted based on this record."). At that

point, the Government had possession of the laboratory reports from the stability study, which had been completed three months earlier, on May 28, 2020. AR 1141-42, 1148-49; *see also* Conf. Tr. at 16 (defense counsel stating that stability testing had been completed). A timely disclosure of the laboratory results would have allowed Plaintiff Nelson to raise significant questions about the potency and extended "beyond use date" of the pentobarbital, and it would have provided the Court and Plaintiffs an opportunity to question Defendants about the sub-potency of the pentobarbital throughout the stability study.

It is of course problematic that the parties are arguing about laboratory results at all. Congress has already determined that compounded drugs are unreliable and dangerous in comparison to FDA-approved drugs, which is why the FDCA limits bulk compounding to drugs for which the FDA has certified a shortage or clinical need, or to situations in which the an FDA-approved drug has been altered for a particular patient. *See* 21 U.S.C. §§ 353b(a)(2)(A), 353b(d)(2). Those restrictions reflect Congress's intent to "strengthen federal regulatory authority over bulk compounders that produced drugs on a large scale that were not subject to the FDA's new-drug efficacy and safety standards." *Athenex, Inc. v. Azar*, 397 F. Supp. 3d 56, 73 (D.D.C. 2019). Defendants ignore those restrictions at Plaintiffs' legislatively-recognized peril.

**E.      The balance of equities supports a permanent injunction**

Once again, Defendants invoke the public's interest in prompt executions. Opp. at 31-32. This time, they argue that equity would "abhor" the idea that pentobarbital executions should be delayed "until the government could obtain a prescription." Opp. at 32. But Defendants have been on notice of the prescription violation for almost a year. *See* ECF Doc 26-1 (Honken Complaint, filed Nov. 1, 2019), at 28-31. Since that time, Defendants have made no effort whatsoever to obtain a prescription, let alone to modify their protocol so that a physician might issue one. If Defendants were sincere in their belief that delay undermines the moral force of capital punishment – and that

prescription-based delays are especially abhorrent – then Defendants would comply with the law in order to avoid such delay, or at least document their attempts at compliance. Now as before, Defendants' own conduct disserves the interest they claim to represent. *See* ECF No. 145 at 16 (Government's delay "undermines its arguments regarding the urgency and weight" of its professed interest in finality).

## <u>CONCLUSION</u>

For all the foregoing reasons, Plaintiffs respectfully request that the Court grant their motion for summary judgment on Claim XI and enter a permanent injunction barring Defendants from executing Plaintiffs until such time as Defendants' method of execution complies with the Food, Drug and Cosmetic Act.

Dated:    September 15, 2020                    Respectfully submitted,


                                                */s/ Shawn Nolan*
                                                Shawn Nolan, Chief, Capital Habeas Unit
                                                Federal Community Defender Office, E.D. Pa.
                                                601 Walnut Street, Suite 545 West
                                                Philadelphia, PA 19106
                                                (215) 928-0520
                                                shawn_nolan@fd.org


                                                *Counsel for Plaintiff Jeffrey Paul*


Scott W. Braden
Assistant Federal Defender
Arkansas Federal Defender Office
Ark Bar Number 2007123
1401 West Capitol, Suite 490
Little Rock, Arkansas 72201
(501) 324-6114
scott_braden@fd.org

Jennifer Ying (DE #5550)
Andrew Moshos (DE #6685)
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 N. Market St.
P.O. Box 1347
Wilmington, Delaware 19801
(302) 658-9300
jying@mnat.com
amoshos@mnat.com

*Counsel for Plaintiff Norris G. Holder, Jr.*


Paul F. Enzinna
D.C. Bar No. 421819
Ellerman Enzinna PLLC
1050 30th Street, NW
Washington, DC 20007
202.753.5553

*Counsel for Plaintiff James H. Roane, Jr.*

Amy Karlin
Interim Federal Public Defender
Celeste Bacchi
Jonathan C. Aminoff
Deputy Federal Public Defenders
321 E. Second Street
Los Angeles, CA 90012
(213) 894-2854

*Counsel for Plaintiff Julius O. Robinson*


Joshua C. Toll
D.C. Bar No. 463073
King & Spalding LLP
1700 Pennsylvania Avenue, N.W.
Washington, DC 20006
(202) 737-8616
jtoll@kslaw.com

Margaret O'Donnell
P.O. Box 4815
Frankfort, KY 40604
(502) 320-1837
mod@dcr.net

*Counsel for Plaintiff Anthony Battle*


Ginger D. Anders (Bar No. 494471)
Jonathan S. Meltzer (Bar No. 888166546)
Brendan Gants (Bar No. 1031419)
MUNGER, TOLLES & OLSON LLP
1155 F Street N.W., Seventh Floor
Washington, D.C. 20004-1357
(202) 220-1100

*Counsel for Plaintiff Brandon Bernard*

Alex Kursman, Assistant Federal Defender
Shawn Nolan, Chief, Capital Habeas Unit
Federal Community Defender Office, E.D. Pa.
601 Walnut Street, Suite 545 West
Philadelphia, PA 19106
Telephone – 215-928-0520
Email – alex_kursman@fd.org

*Counsel for Plaintiff Alfred Bourgeois*


Joseph Luby, Assistant Federal Defender
Federal Community Defender Office, E.D. Pa.
601 Walnut Street, Suite 545 West
Philadelphia, PA 19106
Telephone – 215-928-0520
Email – joseph_luby@fd.org

*Counsel for Plaintiff Chadrick Fulks*


Amy Lentz (DC Bar No. 990095)
Steptoe & Johnson, LLP
1300 Connecticut Avenue NW
Washington, DC 20036
202.429.1350
Email - alentz@steptoe.com

*Counsel for Plaintiff Orlando Hall*


Michael F. Williams
Kirkland & Ellis LLP
1301 Pennsylvania Ave., NW
Washington, DC 20004
202-389-5123
Email -  michael.williams@kirkland.com

Susan M. Otto
Federal Public Defender Organization
215 Dean A. McGee Avenue, Suite 109
Oklahoma City, OK 73102
405-609-5930
Email -  susan_otto@fd.org

*Counsel for Plaintiff Christopher Vialva*

Donald P. Salzman (D.C. Bar No. 479775)
Charles F. Walker (D.C. Bar No. 427025)
Steven M. Albertson (D.C. Bar No. 496249)
Skadden, Arps, Slate, Meagher & Flom LLP
1440 New York Avenue, N.W.
Washington, D.C. 20005
(202) 371-7983
donald.salzman@skadden.com

*Counsel for Plaintiff Corey Johnson*


Gerald W. King, Jr.
Ga. Bar No. 140981
Jeffrey Lyn Ertel
Ga. Bar No. 249966
FEDERAL DEFENDER PROGRAM, INC.
101 Marietta Street, Suite 1500
Atlanta, Georgia 30303
404-688-7530
(fax) 404-688-0768
Gerald_King@fd.org
Jeff_Ertel@fd.org

Stephen Northup
VSB #16547
Troutman Sanders LLP
P.O. Box 1122
Richmond, Virginia 23218-1122
(804) 697-1240
(fax) (804) 698-5120
steve.northup@troutmansanders.com

Frederick R. Gerson
VSB #39968
Bank Of America Center
1111 East Main Street, 16th Floor
Richmond, Virginia 23219
(804) 482-1121
fgerson@dagglaw.com

*Counsel for Plaintiff Richard Tipton, III*

Evan Miller (DC Bar # 219310)
Vinson & Elkins LLP
2200 Pennsylvania Avenue, NW
Suite 500 West
Washington, D.C. 20037
(202) 639-6605
(202) 478-1815 (fax)
emiller@velaw.com

*Counsel for Plaintiff Bruce Webster*

Matthew Lawry, Assistant Federal Defender
Shawn Nolan, Chief, Capital Habeas Unit
Federal Community Defender Office, E.D. Pa.
601 Walnut Street, Suite 545 West
Philadelphia, PA 19106
Telephone – 215-928-0520
Email – matthew_lawry@fd.org

*Counsel for Plaintiff Dustin Higgs*

Gregory S. Smith (DC Bar #472802)
Law Offices of Gregory S. Smith
913 East Capitol Street, S.E.
Washington, D.C.  20003
Telephone: (202) 460-3381
Email: gregsmithlaw@verizon.net

John R. Martin (pro hac vice pending)
Martin Brothers P.C.
1099 St. Louis Place
Atlanta, GA  30306
Telephone: (404) 433-7446
Email: jack@martinbroslaw.com

*Counsel for Plaintiff William LeCroy*

## CERTIFICATE OF SERVICE

I hereby certify that on September 15, 2020, I caused a true and correct copy of foregoing to be served on all counsel of record via the Court's CM/ECF system. Pursuant to this Court's August 20, 2019 Order, below is a list of all counsel of record. The names marked with an asterisk (*) have no email provided on the docket and are no longer with the identified firms.

Alan Burch
U.S. Attorney's Office for the District of Columbia
(202) 252-2550
Email: alan.burch@usdoj.gov

Peter S. Smith
United States Attorney's Office
Appellate Division
(202) 252-6769
Email: peter.smith@usdoj.gov

Ethan P. Davis
Civil Division, U.S. Department of Justice
(202) 616-4171
Email: Ethan.Davis@usdoj.gov

Robert J. Erickson
US Department of Justice
(202) 514-2841
Email: Robert.erickson@usdoj.gov

Joshua Christopher Toll
KING & SPALDING LLP
(202) 737-8616
Email: jtoll@kslaw.com

Charles Anthony Zdebski
ECKERT SEAMANS CHERIN & MELLOTT, LLC
(202) 659-6605
Email: czdebski@eckertseamans.com

Gerald Wesley King, Jr.
FEDERAL DEFENDER PROGRAM, INC.
(404) 688-7530
Email: gerald_king@fd.org

Paul R. Perkins
Civil Division, Department of Justice
(202) 514-5090
Email: Paul.R.Perkins@usdoj.gov

Jonathan Kossak
Civil Division, Department of Justice
(202) 305-0612
Email: Jonathan.kossak@usdoj.gov

Denise M. Clark
U.S. Attorney's Office for the District of Columbia
(202) 252-6605
Email: Denise.Clark@usdoj.gov

Jean Lin
Civil Division, Department of Justice
(202) 514-3716
Jean.lin@usdoj.gov

Cristen Cori Handley
Civil Division, Department of Justice
(202) 305-2677
Cristen.Handley@usdoj.gov

Paul F. Enzinna
ELLERMAN ENZINNA PLLC
(202) 753-5553
Email: penzinna@ellermanenzinna.com

Brandon David Almond
TROUTMAN SANDERS LLP
(202) 274-2864
Email: brandon.almond@troutmansanders.com

Donald P. Salzman

Charles Fredrick Walker
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
(202) 371-7000
Email: Charles.Walker@skadden.com

Alexander C. Drylewski
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
(212) 735-2129
Email: Alexander.Drylewski@skadden.com
(*pro hac vice application forthcoming)

Celeste Bacchi
OFFICE OF THE PUBLIC DEFENDER
Capital Habeas Unit
(213) 894-1887
Email: celeste_bacchi@fd.org

Jonathan Charles Aminoff
FEDERAL PUBLIC DEFENDER,
CENTRAL DISTRICT OF CALIFORNIA
(213) 894-5374
Email: jonathan_aminoff@fd.org

Billy H. Nolas
FEDERAL COMMUNITY DEFENDER
OFFICE FOR THE EDPA
(215) 928-0520
Email: Billy_Nolas@fd.org

*Jeanne Vosberg Sourgens
VINSON & ELKINS LLP
(202) 639-6633

William E. Lawler, III
VINSON & ELKINS LLP
(202) 639-6676
Email: wlawler@velaw.com

Evan D. Miller
VINSON & ELKINS LLP
(202) 639-6605
Email: EMiller@velaw.com

Margaret O'Donnell
(502) 320-1837

SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
(202) 371-7983
Email: Donald.salzman@skadden.com

Steven M. Albertson
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
(202) 371-7112
Email: Steven.Albertson@skadden.com

Craig Anthony Harbaugh
FEDERAL PUBLIC DEFENDER, CENTRAL
DISTRICT OF CALIFORNIA
(213) 894-7865
Email: craig_harbaugh@fd.org

Alexander Louis Kursman
OFFICE OF THE FEDERAL COMMUNITY
DEFENDER/EDPA
(215) 928-0520
Email: Alex_Kursman@fd.org

Kathryn B. Codd
VINSON & ELKINS LLP
(202) 639-6536
Email: kcodd@velaw.com

Robert E. Waters
KING & SPALDING LLP (202) 737-0500
Email: rwaters@velaw.com

Yousri H. Omar
VINSON & ELKINS LLP
(202) 639-6500
Email: yomar@velaw.com

*William E. Hoffman, Jr.
KING & SPALDING LLP
(404) 572-3383

Mark Joseph Hulkower
STEPTOE & JOHNSON LLP
(202) 429-6221
Email: mhulkower@steptoe.com

Robert A. Ayers
STEPTOE & JOHNSON LLP

Email: mod@dcr.net

Abigail Bortnick
KING & SPALDING LLP
(202) 626-5502
Email: abortnick@kslaw.com

Matthew John Herrington
STEPTOE & JOHNSON LLP
(202) 429-8164
Email: mherrington@steptoe.com

Amy J. Lentz
STEPTOE & JOHNSON LLP
(202) 429-1320
Email: Alentz@steptoe.com

Gary E. Proctor
LAW OFFICES OF GARY E. PROCTOR,
LLC
(410) 444-1500
Email: garyeproctor@gmail.com

Scott Wilson Braden
FEDERAL PUBLIC DEFENDER,
EASTERN DISTRICT OF ARKANSAS
(501) 324-6144
Email: Scott_Braden@fd.org

Amy Gershenfeld Donnella
FEDERAL COMMUNITY DEFENDER
OFFICE FOR THE EDPA
(215) 928-0520
Email: amy_donnella@fd.org

David Victorson
(202) 637-5600
HOGAN LOVELLS US LLP
Email: David.Victorson@hoganlovells.com

John D. Beck
HOGAN LOVELLS US LLP
(212) 918-3000
Email: john.beck@hoganlovells.com

Amelia J. Schmidt
KAISER DILLON, PLLC
(202) 869-1301

(202) 429-6401
Email: rayers@steptoe.com

Robert L. McGlasson
MCGLASSON & ASSOCIATES, PC
(404) 314-7664
Email: rlmcglasson@comcast.net

Sean D. O'Brien
PUBLIC INTEREST LITIGATION CLINIC
(816) 363-2795
Email: dplc@dplclinic.com

Shawn Nolan
FEDERAL COMMUNITY DEFENDER
OFFICE, EDPA
(215) 928-0520
Email: shawn_nolan@fd.org

Joseph William Luby
FEDERAL PUBLIC DEFENDER/EDPA
(215) 928-0520
Email: joseph_luby@fd.org

Pieter Van Tol
HOGAN LOVELLS US LLP
(212) 918-3000
Email: Pieter.Vantol@hoganlovells.com

Jonathan Jeffress
KAISER DILLON, PLLC
(202) 640-4430
Email: Jjeffress@kaiserdillon.com

Andrew Moshos
MORRIS NICHOLS ARSHT & TUNNELL
LLP
(302) 351-9197
Email: Amoshos@mnat.com

Alan E. Schoenfeld
WILMER CUTLER PICKERING HALE &
DORR LLP
(212) 937-7294
Email: Alan.Schoenfeld@wilmerhale.com

Email: Aschmidt@kaiserdillon.com

Norman Anderson
KAISER DILLON PLLC
(202) 640-2850
nanderson@kaiserdillon.com

Jennifer Ying
MORRIS NICHOLS ARSHT & TUNNELL
LLP
(302) 658-9300
Email: Jying@mnat.com

Andres C. Salinas
WILMER CUTLER PICKERING HALE &
DORR LLP
(202) 663-6289
Email: Andres.Salinas@wilmerhale.com

*Ryan M. Chabot
WILMER CUTLER PICKERING HALE &
DORR LLP
(212) 295-6513

Dale Andrew Baich
OFFICE OF THE FEDERAL PUBLIC
DEFENDER
(602) 382-2816
Dale_Baich@fd.org

Kathryn Louise Clune
CROWELL & MORING LLP
(202) 624-5116
kclune@crowell.com

Jennifer M. Moreno
OFFICE OF THE PUBLIC FEDERAL
DEFENDER, DISTRICT OF ARIZONA
(602) 382-2718
Jennifer_moreno@fd.org

Ginger Dawn Anders
MUNGER, TOLLES & OLSON LLP
(202) 220-1107
Ginger.anders@mto.com

*Jonathan S. Meltzer
MUNGER, TOLLES & OLSON LLP
(202) 220-1100

*Brendan Gants
MUNGER, TOLLES & OLSON LLP
(202) 220-1100

Timothy Kane
FEDERAL COMMUNITY DEFENDER
OFFICE, EDPA
(215) 928-0520
Email: timothy_kane@fd.org

Dated:  September 15, 2020

*/s/ Shawn Nolan*
Shawn Nolan
Chief, Capital Habeas Unit
Federal Community Defender Office, E.D. Pa.
601 Walnut Street, Suite 545 West
Philadelphia, PA 19106
(215) 928-0520
shawn_nolan@fd.org