UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In the Matter of the<br>Federal Bureau of Prisons' Execution<br>Protocol Cases,<br><br>LEAD CASE: *Roane, et al. v. Barr*<br><br>THIS DOCUMENT RELATES TO:<br><br>*LeCroy v. Barr*, 20-cv-2481 | Case No. 19-mc-145 (TSC) |

## MEMORANDUM OPINION

Plaintiff William Emmett LeCroy filed a complaint in this court on September 4, 2020 challenging the legality of the 2019 Bureau of Prisons' Execution Protocol (2019 Protocol or the Protocol). (*See generally* Compl., *LeCroy v. Barr*, No. 20-cv-2481 (D.D.C. Sept. 4, 2020), ECF No. 1.) His arguments are virtually identical to the remaining claims pressed by the other Plaintiffs in this consolidated matter, namely that the Protocol violates the Administrative Procedure Act (APA) because it runs afoul of the Federal Death Penalty Act (FDPA).[1] LeCroy also alleges a violation of the Take Care Clause of the U.S. Constitution. LeCroy's execution is scheduled for September 22, 2020. Four days after filing his complaint, LeCroy filed an emergency motion for a preliminary injunction (ECF No. 233, LeCroy Mot. for Prelim. Inj.) and an emergency motion for an expedited hearing, (*see* ECF No. 234.) For the reasons set forth below, LeCroy's motions will be DENIED.

---

[1] The facts and procedural history of this case have been detailed in prior opinions and will not be reiterated here.

1

A preliminary injunction is an "extraordinary remedy" requiring courts to assess four factors: (1) the likelihood of the plaintiff's success on the merits, (2) the threat of irreparable harm to the plaintiff absent an injunction, (3) the balance of equities, and (4) the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20, 24 (2008) (citations omitted); *John Doe Co. v. Consumer Fin. Prot. Bureau,* 849 F.3d 1129, 1131 (D.C. Cir. 2017).  The D.C. Circuit has traditionally evaluated claims for injunctive relief on a sliding scale, such that "a strong showing on one factor could make up for a weaker showing on another." *Sherley v. Sebelius,* 644 F.3d 388, 392 (D.C. Cir. 2011).  It has been suggested, however, that a movant's showing regarding success on the merits "is an independent, free-standing requirement for a preliminary injunction." *Id.* at 393 (quoting *Davis v. Pension Benefit Guar. Corp.*, 571 F.3d 1288, 1296 (D.C. Cir. 2009) (Kavanaugh, J., concurring)).

Defendants argue that LeCroy's delay in filing his case is sufficient grounds to deny his motion for injunctive relief.  This argument is not without merit.  LeCroy has provided no legitimate reason why he did not seek to consolidate his case with the other Plaintiffs' at any point since the government announced its 2019 Protocol in July 2019.  The court is mindful of the Supreme Court's admonishment that last minute injunctions—of this very sort—"should be the exception, not the norm." *Barr v. Lee*, No. 20A8, 2020 WL 3964985, at *3 (U.S. July 14, 2020).  The court has spent considerable time and effort responding to a motion for preliminary injunction that could have been consolidated with any of the numerous motions for injunctions filed in this case.  Nevertheless, the court was unwilling to reject LeCroy's motion given that it had not yet ruled on Defendants' motion to dismiss and for summary judgment. (*See* ECF Nos. 169, 170.)

LeCroy contends that the 2019 Protocol: (1) is contrary to law under the APA because it violates § 3596(a) of the FDPA, and (2) violates the Take Care Clause of the U.S. Constitution. (ECF No. 233-1, LeCroy Mem. at 1.) These claims are unavailing.

The court has already set forth its analysis of FDPA § 3596(a) in its September 20, 2020 Memorandum Opinion. (*See generally* ECF No. 261, Sept. 20 Mem. Op.) That provision requires that in carrying out an execution, "the Attorney General shall release the person sentenced to death to the custody of a United States marshal, who shall supervise implementation of the sentence in the manner prescribed by the law of the State in which the sentence is imposed." 18 U.S.C. § 3596(a).

The D.C. Circuit held that the FDPA requires the government to carry out executions consistent with the level of detail provided by state laws and regulations. *See In re Fed. Bureau of Execution Protocol Cases*, 955 F.3d 106, 133 (D.C. Cir. 2020) (Rao, J., concurring). LeCroy identifies several Georgia statutes that he claims mandate different procedures than those set forth in the 2019 Protocol, but the court finds no such discrepancy.

LeCroy points out that while Georgia law requires the presence of two physicians during the execution "to determine when death supervenes," the 2019 Protocol has no such requirement. (LeCroy Mem. at 9 (citing Ga. Code Ann. § 17-10-41).) While it is true that the 2019 Protocol does not require two physicians to be present during an execution, Defendants stated in a filing that they have arranged for two physicians to attend LeCroy's execution to comply with Georgia's statutory requirements. (*See* ECF No. 242-1, Winter Decl. ¶ 7). LeCroy argues that Defendants' representations ring hollow because they have not guaranteed the doctors' attendance and therefore fail to account for the possibility that one of the doctors "gets sick, changes his mind, or fails to show up for any reason." (ECF No. 244, LeCroy Reply at 9.) But

3

speculation that the government may not comply with a statute is not an adequate ground for injunctive relief. Indeed, a key factor in arguing injunctive relief is a showing of irreparable harm, which requires a movant to demonstrate that harm is "certain and great, actual and not theoretical, and so imminent that there is a clear and present need for equitable relief to prevent irreparable harm," and "beyond remediation." *League of Women Voters of U.S. v. Newby,* 838 F.3d 1, 7–8 (D.C. Cir. 2016) (citing *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006)) (internal quotation marks and brackets omitted). The speculative injury LeCroy identifies here falls short of this standard. The court has no basis on which to believe that Defendants will not comply with Georgia's two-physician requirement.

LeCroy also argues that the 2019 Protocol conflicts with § 17-10-40 of the Georgia code, which gives "a judge of the superior court of the county where the case was tried" the power to "pass an order designating a new time period for the execution of the original sentence "[w]here the time period for the execution of any convicted person in a capital case has passed by reason of a supersedeas incident to appellate review, a stay of execution by the State Board of Pardons and Paroles, or for any other reason." Ga. Code Ann. § 17-10-40(a). That provision also requires that "[t]he new time period for the execution shall be seven days in duration . . . [and] shall commence not less than ten nor more than 20 days from the date of the order." Ga. Code Ann. § 17-10-40(b).

Georgia Code § 17-10-40 sets forth the power afforded to Georgia superior court judges in capital cases carried out by the state of Georgia, not the federal government. LeCroy's sentence was entered by a judge of the United States District Court, not a Georgia superior court judge. LeCroy has supplied no authority—and the court has found none—in which a federal court applied § 17-10-40 to a federal death-row inmate sentenced in Georgia. Moreover, it is not

clear how a violation of this statute constitutes irreparable harm, since LeCroy has known his execution date since July 31. Furthermore, as LeCroy himself notes, a violation of "§ 17-10-40 in no way bars the Government from setting a new execution date." (LeCroy Reply at 15.) Thus, he has failed to demonstrate irreparable harm.

LeCroy also contends that the 2019 Protocol does not meet the requirements of Georgia Rule 480-11-.01(6) and § 26-4-86 of the Georgia code, which require that a compounder of drugs obtain a prescription to make and provide a drug. (LeCroy Mem. at 11.) Again, LeCroy has failed to demonstrate a likelihood of success on the merits. Georgia Code § 17-10-38(a) provides that all persons who have "imposed upon them a sentence of death shall suffer such punishment by lethal injection," defined as "the continuous intravenous injection of a substance or substances sufficient to cause death into the body of the person sentenced to death until such person is dead." That provision also states that "[n]otwithstanding any other provision of law, prescription, preparation, compounding, dispensing, or administration of a lethal injection authorized by a sentence of death by a court of competent jurisdiction shall not constitute the practice of medicine . . . which is subject by law to regulation, licensure, or certification." Ga. Code Ann. § 17-10-38(c). Thus, the rules LeCroy cites, which address compounding requirements for "medical treatments," are inapplicable. *See* Ga. Comp. R. & Regs. 480-11-.01(26) (defining a "practitioner" as someone "licensed under the laws of this state to use, mix, prepare, dispense, prescribe, and administer drugs in connection with medical treatment to the extent provided by the laws of this state"); *id.* at 480-11-.01 (defining "compounding" as "the preparation, mixing, assembling, packaging, or labeling of a drug or device as the result of a *practitioner*'s prescription drug order or initiative" (emphasis supplied)).

5

LeCroy posits that § 17-10-38(c) was intended "to prevent lawsuits against the medical professionals." (LeCroy Reply at 16.) He further asserts that "[t]he statute does not say that the prescription requirement is not applicable in this context." (*Id.* at 17.) This argument is unpersuasive. LeCroy faults Defendants for failing to point to any on-point legal authority, yet he fails to do the same. The only case he cites in support of his position is one in which the state agreed to provide information that an execution drug was manufactured by a compounding pharmacy. (*Id.* at 16 (citing *Owens v. Hill*, 295 Ga. 302, 310 (2014).) Incidentally, that case did not opine on whether the state was required to do so.

And for the reasons set forth in the court's September 20, 2020 Memorandum Opinion, even assuming Defendants are required to comply with Georgia's prescription requirement, LeCroy has not shown that he is sure to face "certain" and "imminent" harm from Defendants' use of a compounded drug for which they have not secured a prescription

Finally, LeCroy's Take Care Clause claim, (LeCroy Mem. at 11–12), fails for the same reasons as the other Plaintiffs' Take Care Clause claims, (s*ee* Sept. 20 Mem. Op. at 21 n.9). Indeed, LeCroy seems to have abandoned it because he does not discuss it in his reply. (*See generally* LeCroy Reply.)

The court finds that the balance of the equities here tilts in favor of Defendants. LeCroy has failed to demonstrate success on any of his claims and thus it would be inequitable to prevent Defendants from carrying out LeCroy's lawful sentence when he does not have a likelihood of securing the relief sought in this suit. The same can said for the public's "powerful and legitimate interest in punishing the guilty." *Calderon v. Thompson*, 523 U.S. 538, 556 (1998).

LeCroy has failed to show that he is entitled to the extraordinary remedy he seeks. Thus, his motion for a preliminary injunction, and the accompanying motion for a hearing, must be denied.

Date:  September 20, 2020

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge