UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| IN THE MATTER OF THE FEDERAL BUREAU OF PRISONS' EXECUTION PROTOCOL CASES<br><br>LEAD CASE: *Roane et al. v. Barr*<br><br>THIS DOCUMENT RELATES TO:<br><br>ALL CASES | No. 1:19-mc-00145(TSC) |

## DECLARATION OF ERIC WILLIAMS

I, Eric Williams, do hereby declare and state as follows:

1. I am currently employed by the Bureau of Prisons (BOP) as Warden at the Federal Correctional institution at Greenville, Illinois (FCI Greenville). I am also involved in functions related to the BOP's role in effectuating executions.

2. The statements I make hereinafter are made on the basis of my review of the official files and records of the BOP, my own personal knowledge, or on the basis of information acquired by me through the performance of my official duties.

3. I am aware that the execution of William LeCroy is at issue in the above referenced lawsuit. I witnessed the execution on September 22, 2020, from inside the execution room, several feet from Mr. LeCroy. My observations are as follows.

4. In preparation for the execution, LeCroy was brought into the execution room and placed on a bed. LeCroy remained calm and polite while the restraints were applied and during the placement of the IV lines. I never observed LeCroy to be in pain, discomfort, or distress

1

during this time, and he did not indicate to me, or anyone else in the execution room that he was experiencing any pain or distress.

5. After the successful placement of the IV lines, LeCroy's Minister of Record was escorted into the execution room and the two conversed.

6. At the appropriate time, the curtains raised and I asked LeCroy if he would like to make a statement. LeCroy responded by saying his Minister of Record would be reading his last statement. I then read LeCroy's sentencing information aloud, and asked the U.S. Marshal's representative to check whether there were any impediments to proceed with the execution. The U.S. Marshal's representative informed me there were no impediments to proceed.

7. Thereafter, the administration of the lethal injection substances began. LeCroy continued to display a calm and comfortable demeanor. He was quiet and still. Shortly after the lethal injection substances were administered, I heard LeCroy take a deep breath. Subsequently he snored loudly one time. During this time, I could see his chest and stomach rise and fall, under the sheet that was placed over him.

8. LeCroy was a large individual (who weighed 288 lbs. on January 15, 2020, according to medical records), with a pronounced abdominal area that protruded under the sheet. Therefore, the rise and fall of his abdomen was very apparent. It did not appear to me, however, that LeCroy was experiencing discomfort, or that he was struggling for air. During the entirety of the execution, LeCroy did not appear to be in any sort of distress, discomfort, or pain. He did not grimace or make any sounds or movement which would indicate to me he was experiencing distress, discomfort, or pain.

9. A short time after he took a deep breath and snored, it appeared to me that LeCroy was in a deep, comfortable sleep, with his eyes closed. LeCroy did not make any other sounds

and he did not appear to be in any distress, discomfort, or pain.

10. After several minutes, a physician entered the room and checked LeCroy's heartbeat with a stethoscope. Thereafter, time of death was pronounced at approximately 9:06 p.m. A second physician examined LeCroy and confirmed the pronouncement of death.

I declare, under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct. Executed this __6__ day of October, 2020.

_____
Eric Williams
Federal Bureau of Prisons