UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In the Matter of the Federal Bureau of Prisons' Execution Protocol Cases,<br><br>LEAD CASE: *Roane, et al. v. Barr*<br><br>THIS DOCUMENT RELATES TO:<br><br>*ALL CASES* | Case No. 19-mc-145 (TSC) |

## ORDER

Pursuant to Federal Rule of Civil Procedure 59(e), Plaintiffs have moved for alteration or amendment of: 1) the court's August 20, 2020 dismissal of Plaintiffs' Eighth Amendment claim (ECF No. 238); 2) the court's September 20, 2020 Order denying injunctive relief as to Plaintiffs' Food, Drug, and Cosmetic Act (FDCA) claims, (ECF No. 282); and 3) the court's September 20, 2020 entry of summary judgment in favor of Defendants as to Plaintiffs' Federal Death Penalty Act (FDPA) claims, (ECF No. 298). For the reasons set forth below, all three motions are DENIED.

### I.  LEGAL STANDARD

Federal Rule of Civil Procedure 59(e) permits a party to move to alter or amend a judgment "no later than 28 days after the entry of the judgment."[1] A motion under Rule 59(e) "is discretionary and need not be granted unless the district court finds that there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir.

---

[1] It is undisputed that Plaintiffs' motions are timely under Rule 59(e).

1996) (internal quotation marks omitted); *see also Leidos, Inc. v. Hellenic Republic*, 881 F.3d 213, 217 (D.C. Cir. 2018) (same). However, such a motion "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008).

## II.   EIGHTH AMENDMENT CLAIMS

On August 20, 2020, this court entered partial final judgment in favor of Defendants as to Plaintiff's Eighth Amendment claim in Count II of their Amended Complaint. Based on the Supreme Court's reasoning in *Barr v. Lee*, the court found that "[s]o long as pentobarbital is widely used . . . no amount of new evidence will suffice to prove that the pain pentobarbital causes reaches unconstitutional levels." (ECF No. 193, Aug. 15 Order at 4 (discussing *Barr v. Lee*, 140 S. Ct. 2590 (2020) (per curiam)).) This conclusion was premised, in part, on the Supreme Court's observation that Plaintiffs' Eighth Amendment claim faced "an exceedingly high bar" given that single-dose pentobarbital "has become a mainstay of state executions . . . [h]as been used to carry out over 100 executions, without incident . . . [and h]as been repeatedly invoked by prisoners as a *less* painful and risky alternative to the lethal injection protocols of other jurisdictions." *Lee*, 140 S. Ct. at 2591; *see also id.* (citing *Bucklew v. Precythe*, 139 S. Ct. 1112, 1124 (2019)) ("This Court has yet to hold that a State's method of execution qualifies as cruel and unusual."). The court further concluded that even if it "found in favor of Plaintiffs on all alleged facts," including evidence that an inmate would be virtually certain to suffer the effects of flash pulmonary edema, "there would be no Eighth Amendment violation because the evidence of pain would not satisfy *Lee*'s high bar for an objectively intolerable risk of pain." (Aug. 15 Order at 3, 5.) Indeed, the Supreme Court considered most of the evidence Plaintiffs

2

presented and found no viable Eighth Amendment challenge to the use of single-dose pentobarbital. *See Lee*, 140 S. Ct. at 2591.

Plaintiffs offer no grounds that merit an alteration of the court's prior judgment. First, they contend that the court's judgment was a clear error predicated on "an overly broad reading of the Supreme Court's per curiam order in *Barr v. Lee* as foreclosing any Eighth Amendment challenge to the use of pentobarbital in lethal injection." (ECF No. 238 at 1). Plaintiffs also present new evidence from the September 22, 2020 execution of William LeCroy. The court addresses each in turn.

## A. Clear Error

Plaintiffs seek to relitigate at least two arguments that the court has already considered and rejected, and the court finds no clear error in its previous analysis. For instance, Plaintiffs argue that "the Supreme Court raised th[e] bar substantially for the [] plaintiffs in *Lee* because they sought what it deemed '*last-minute intervention* by a Federal Court.'" (*Id.* at 8 (emphasis supplied by Plaintiffs) (noting also that *Lee* "is best understood to hold only that a plaintiff's expert declarations, when contested by the government's own experts, are insufficient to make the heightened showing to justify last-minute relief").) But after considering a similar argument presented by former Plaintiff Keith Nelson, the court determined that the timing of the injunctive relief sought in *Lee* was "neither dispositive nor weighty." (*See* Aug. 15 Order at 4.) Plaintiffs here present nothing which changes that conclusion.

Relatedly, Plaintiffs also contend that the Supreme Court considered the Eighth Amendment claim in *Lee* on a motion for a preliminary injunction, and therefore this court is not precluded from finding that Plaintiffs have nonetheless adequately stated a claim for relief. But, again, the court already considered and rejected that argument: "[i]t is true that the standards for

3

a motion to dismiss and a preliminary injunction are distinct, but that does not mean this court can ignore *Lee*'s general language regarding the Eighth Amendment standard." (*Id.* at 4–5.)

Finally, Plaintiffs argue that this court's assessment of *Lee* cannot be squared with the D.C. Circuit's August 25, 2020 denial of former Plaintiff Keith Nelson's motion for a stay pending appeal of the judgment at issue. In Plaintiffs' view, "[i]f the D.C. Circuit shared this Court's broad reading of *Lee*, it could have denied Nelson a stay with no analysis whatsoever." (ECF No. 238 at 9 (discussing *In re Bureau of Prisons' Execution Protocol Cases*, No. 20-5252, at *4 (D.C. Cir. Sept. 10, 2020)).) But, as the Circuit noted, it did not consider the merits of this court's dismissal of Count II, but rather whether Nelson would have been irreparably harmed absent a stay pending appeal. *In re Execution Protocol Cases*, No. 20-5252, at *4. Accordingly, the court finds nothing in the D.C. Circuit's decision on the Nelson appeal to cause it to reconsider its interpretation of *Lee*.

## B. New Evidence

Plaintiffs also argue that newly submitted evidence from the LeCroy execution calls into question the court's dismissal of Plaintiffs' Eighth Amendment claim. In their view, the new evidence and other intervening events "have hopelessly discredited the Government's 'competing evidence' that motivated the ruling in *Lee*." (ECF No. 293 at 2.) The court disagrees.

As an initial matter, as Plaintiffs acknowledge, the court does not weigh factual evidence on a motion to dismiss. (*Id.* at 1.) Furthermore, the court did not dismiss the Eighth Amendment claim because of "competing" evidence. In fact, it credited Plaintiffs' evidence before concluding that there was no Eighth Amendment violation. Assuming Plaintiffs are correct that LeCroy suffered from flash pulmonary edema while still conscious, that fact does not alter the

4

court's conclusion that such new evidence will not suffice to show that the pain pentobarbital causes reaches unconstitutional levels so long as pentobarbital is widely used. (*See* Aug. 15 Order at 4 (citing *Lee*, 140 S. Ct. 2590).) Evidence from the LeCroy execution simply adds another data point in support of an argument the Supreme Court has already rejected as insufficient to state a viable Eighth Amendment claim.

The court has not identified a "clear error" in its reasoning, or newly discovered evidence, which merits an alteration or amendment of the judgment dismissing Count II of the Amended Complaint.

### III.   FDCA CLAIMS

Plaintiffs next ask the court to reconsider its judgment denying injunctive relief on their FDCA claims. In its September 20 Memorandum Opinion, the court found that the government's use of pentobarbital that was not prescribed, and did not meet other FDCA requirements, constituted agency action contrary to law in violation of the Administrative Procedure Act. The court concluded, however, that Plaintiffs were not entitled to injunctive relief because they had failed to show irreparable harm arising from the statutory violation.

Plaintiffs now argue that the evidence from the LeCroy execution now clears this hurdle. But they ignore key language from the court's September 20 Opinion: "Assuming the BOP finds a doctor to write prescription, Plaintiffs will still be executed using pentobarbital. Thus, the prescription requirement does not in and of itself ensure that Plaintiffs will [] be protected from flash pulmonary edema during their executions." (ECF No. 261, Sept. 20 Mem. Op. at 36.) Plaintiffs have not presented any legal authority that undermines this conclusion.

The court also explained in its September 20 Opinion that "while [it] continues to be concerned at the possibility that inmates will suffer excruciating pain during their executions,

Plaintiffs have not established that flash pulmonary edema is 'certain' or even 'likely' to occur before an inmate is rendered insensate." (*Id.*) Plaintiffs' new evidence does not change this finding.

Plaintiffs point to three unsworn accounts of LeCroy's execution indicating that LeCroy's "torso began to jerk and contract uncontrollably," (ECF No. 282-1, Hale Account at 1); that "[h]is eyelids grew heavy while his midsection began to heave uncontrollably," (ECF No. 282-2, Tarm AP Article at 1); and that "[h]is stomach started going up and down intensely" and "[h]is mouth quivered as he was gasping for air," (ECF No. 282-3, Kudisch Local News Article at 2). Defendants present other unsworn statements contradicting these accounts. (*See* ECF No. 291-1, Trigg Local News Article at 2; ECF No. 291-2, Desk Local News Article at 1.) None of these accounts causes the court to change its ruling.[2]

Defendants also submitted a sworn declaration from Eric Williams, Warden of the Federal Correctional Institution at Greenville, Illinois, who attended LeCroy's execution. (*See* ECF No. 291-5, Williams Decl.) Williams recounts that "[s]hortly after the lethal injection substances were administered, I heard LeCroy take a deep breath. Subsequently he snored loudly one time . . . [T]he rise and fall of his abdomen was very apparent. It did not appear to me, however, that LeCroy was experiencing discomfort, or that he was struggling for air." (*Id.* ¶¶ 7–8.)

---

[2] Plaintiffs also supply supplemental declarations from Dr. Gail Van Norman and Dr. Mark Edgar, both of whom agree that the accounts presented by Plaintiffs indicate that LeCroy suffered from flash pulmonary edema while insensate. (*See* ECF No. 282-4; ECF No. 282-5.) Defendants' experts submit supplemental declarations refuting these conclusions. (*See* ECF No. 291-3; ECF No. 291-4.) The court has already considered the testimony of these experts, and, while their analysis considers the "new evidence", their conclusions remain the same.

6

Even assuming Plaintiffs' new evidence establishes that LeCroy suffered the effects of flash pulmonary edema while still conscious, such evidence only confirms that the onset of flash pulmonary edema is possible upon the administration of pentobarbital. But as the court has already explained, given Supreme Court precedent, that is not enough to warrant injunctive relief. (*See* Sept. 20 Mem. Op. at 36.) Plaintiffs would need to supply evidence that casts doubt on the more than 100 executions carried out using pentobarbital and which refutes data upon which the Supreme Court has relied in finding that pentobarbital will not cause an unconstitutional level of pain. The evidence presented here falls far short.

The Supreme Court has made its position clear. Pentobarbital "has become a mainstay of state executions," *Lee*, 140 S. Ct. at 2591; "[h]as been used to carry out over 100 executions, without incident," *id.*; does not carry the risks of "drowning, suffocating, and being burned alive from the inside out, " *Zagorski v. Parker*, 139 S. Ct. 11 (2018) (Sotomayor, J., dissenting); and "is widely conceded to be able to render a person fully insensate," *id.* at 11–12. The court is constrained by these findings and, particularly given the history of this case, finds nothing new which warrants injunctive relief.

### IV.     FDPA Claims

Finally, Plaintiffs ask the court to reconsider its conclusion that Defendants are entitled to summary judgment as to the FDPA claims in Count V of the Amended Complaint. In that count, Plaintiffs alleged that the 2019 Protocol violates § 3596(a) of the FDPA, which requires that a federal execution be carried out "in the manner prescribed by the law of the State in which the sentence is imposed," 18 U.S.C. § 3596(a). In support of their argument, Plaintiffs identified several state laws which, in their view, conflicted with the 2019 Protocol.

In its September 20 Opinion, the court found that while the Bureau of Prisons was required to adhere to execution protocols in state statutes and regulations, Defendants were entitled to summary judgment as to the alleged discrepancies between the 2019 Protocol and state laws. In particular, the court found that the 2019 Protocol did not conflict with a Georgia law requiring the presence of two physicians at an execution given Defendants' stated intention to comply with that provision. The court also found no conflict between the 2019 Protocol and a Texas law setting forth execution scheduling restrictions because the only Plaintiff to whom that provision applied had not requested that his execution be scheduled in accordance with that law.

Plaintiffs contend that the court's conclusions are premised on an "error of law." (ECF No. 298 at 1.) They argue that: 1) Defendants' stated intention to adhere to relevant state law is insufficient to warrant judgment in Defendants' favor as to Count V, and 2) the court's rationale has been undermined by the circumstances of LeCroy's execution on September 22, 2020. (*Id.*)

Even if the court agreed that Defendants had violated the FDPA, Plaintiffs have not shown how they are irreparably harmed by the alleged state law violations. The court has already noted its skepticism that the Bureau of Prisons' denial of a request to be executed after 6 p.m. in accordance with Texas law "would constitute irreparable harm." (Sept. 20 Mem. Op. at 31.)[3] Similarly, the court does not see how a plaintiff would be irreparably harmed by the presence of only one physician at the execution to certify that death has superseded, especially since that certification is made well after the inmate has been rendered insensate.

In any event, the court is not convinced that the evidence Plaintiffs proffer supports a finding that Defendants have run afoul of the FDPA. Plaintiffs point to several news articles in

---

[3] It is for this reason that the court also will deny Plaintiffs' request to "alter its judgment to clarify" that the ruling regarding the alleged violation of Article 43.14(a) of Texas's Code of Criminal Procedure applies only to Plaintiff Vialva. (*See* ECF No. 298 at 7.)

8

which eyewitnesses reported seeing only one physician during LeCroy's execution, in violation of Georgia Code § 17-10-41. But these unsworn statements are contradicted by Defendants' sworn statement from a prison official who certified that "[a] second physician examined LeCroy and confirmed the pronouncement of death." (Williams Decl. ¶ 10.) The court has no basis on which to doubt the veracity of this sworn statement.

Plaintiffs also submitted a copy of a request made by Plaintiff Orlando Hall to the Warden of Federal Correctional Complex, Terre Haute, asking to be executed after 6 p.m. in accordance with Article 43.14 of the Texas Code of Criminal Procedure. That request has been granted. (*See* ECF No. 301-1 (noting that "Mr. Hall's execution is scheduled for 6 pm Terre Haute time").) Thus, Plaintiffs have failed to identify a statutory violation.

Finally, Plaintiffs point out that once the Ninth Circuit determined the agency was not required to do so, the Bureau of Prisons did not comply with Arizona laws governing on-site accommodations for counsel at Lezmond Mitchell's execution. But the court cannot fault Defendants for acting in accordance with leave granted by the Ninth Circuit, especially since Mitchell's claim was not part of this litigation. Plaintiffs have therefore failed to show a "clear error" in the court's disposition of their FDPA claims.

Date: November 3, 2020

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge

9