UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

In the Matter of the
Federal Bureau of Prisons' Execution
Protocol Cases

LEAD CASE: *Roane, et al. v. Barr*

THIS DOCUMENT RELATES TO:

*Roane, at al. v. Barr*, No. 05-2337

Case No. 19-mc-0145 (TSC)

## MOTION TO DISMISS COUNT IV OF
## PLAINTIFF DUSTIN HIGGS'S COMPLAINT

Defendants respectfully move to dismiss Count IV of Plaintiff Dustin Higgs's complaint, which is the only one of Higgs's claims that this Court has not already decided. Higgs's Count IV is an as-applied challenge under the Eighth Amendment alleging that Higgs will suffer extreme pain if he is executed using pentobarbital due to his medical condition and the possibility that he may have contracted COVID-19 by the time of this execution.  As explained in the accompanying memorandum of points and authorities, this claim fails because it is based on speculation, does not allege a violation of the Eighth Amendment, and fails to plead a viable alternative. Higgs's as-applied claim should therefore be dismissed, thereby resolving his claims in full.

\*      \*      \*

Respectfully submitted,

JOHN V. COGHLAN*
Deputy Assistant Attorney General

JEAN LIN
Special Litigation Counsel

JONATHAN KOSSAK, D.C. Bar #991478
CRISTEN C. HANDLEY, MO Bar #69114
BRADLEY P. HUMPHREYS,
   D.C. Bar #988057
Trial Attorneys
Federal Programs Branch
Civil Division, Department of Justice
1100 L Street, N.W.
Washington, District of Columbia 20005
(202) 514-3716
jean.lin@usdoj.gov
jonathan.kossak@usdoj.gov
christen.handley@usdoj.gov
bradley.humphreys@usdoj.gov

Dated: November 3, 2020

*The Acting Assistant Attorney General for
the Civil Division is recused from this matter.

MICHAEL R. SHERWIN
Acting United States Attorney

DANIEL F. VAN HORN, D.C. Bar #924092
Chief, Civil Division

By:  /s/ Johnny Walker
JOHNNY H. WALKER, D.C. Bar #991325
Assistant United States Attorney
555 4th Street, N.W.
Washington, District of Columbia 20530
Telephone: 202 252 2575
Email: johnny.walker@usdoj.gov

*Counsel for Defendants*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

In the Matter of the
Federal Bureau of Prisons' Execution
Protocol Cases

LEAD CASE: *Roane, et al. v. Barr*

THIS DOCUMENT RELATES TO:

*Roane, at al. v. Barr*, No. 05-2337

Case No. 19-mc-0145 (TSC)

# MEMORANDUM OF POINTS AND AUTHORITIES
# IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
# COUNT IV OF PLAINTIFF DUSTIN HIGGS'S COMPLAINT

JOHN V. COGHLAN*
Deputy Assistant Attorney General

JEAN LIN
Special Litigation Counsel

JONATHAN KOSSAK
CRISTEN C. HANDLEY
BRADLEY P. HUMPHREYS
Trial Attorneys
Federal Programs Branch
Civil Division, Department of Justice
1100 L Street, N.W.
Washington, District of Columbia 20005
(202) 514-3716
jean.lin@usdoj.gov
jonathan.kossak@usdoj.gov
christen.handley@usdoj.gov
bradley.humphreys@usdoj.gov

Dated: November 3, 2020

*The Acting Assistant Attorney General for
the Civil Division is recused from this matter.

MICHAEL R. SHERWIN
Acting United States Attorney

DANIEL F. VAN HORN
Chief, Civil Division

JOHNNY H. WALKER
Assistant United States Attorney
555 4th Street, N.W.
Washington, District of Columbia 20530
Telephone: 202 252 2575
Email: johnny.walker@usdoj.gov

*Counsel for Defendants*

# CONTENTS

*Table of Authorities*.................................................................................................... ii

INTRODUCTION ..............................................................................................................1

BACKGROUND ................................................................................................................2

      A.     Higgs's Criminal Conviction and Sentence ............................................2

      B.     Relevant Procedural History ..................................................................2

STANDARDS.....................................................................................................................6

      A.     Motion to Dismiss under Rule 12(b)(6).................................................6

      B.     Eighth Amendment .................................................................................7

ARGUMENT ......................................................................................................................8

I.     Higgs does not allege a substantial risk of severe pain................................9

      A.     Higgs's allegation of harm is impermissibly based on speculation........9

      B.     The use of pentobarbital is constitutional as to Higgs ..........................11

II.    Higgs does not plead a viable alternative ....................................................15

CONCLUSION.................................................................................................................20

# AUTHORITIES

Page(s)

## Cases

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................................ 10

*Barr v. Clinton*,
  370 F.3d 1196 (D.C. Cir. 2004) ............................................................................. 10

*Barr v. Lee*,
  140 S. Ct. 2590 (2020) ............................................................... 8, 9, 15, 16, 17, 18

*Baze v. Rees*,
  553 U.S. 35 (2008) .......................................................... 11, 12, 13, 14, 15, 18, 22, 23

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................................ 10

*Boyd v. Warden, Holman Corr. Facility*,
  856 F.3d 853 (11th Cir. 2017) ............................................................................... 23

*Brewer v. Landrigan*,
  562 U.S. 996 (2010) ................................................................................................ 14

*Bucklew v. Precythe*,
  139 S. Ct. 1112 (2019) .................................... 8, 9, 11, 12, 14, 16, 17, 18, 19, 21, 22

*Busby v. Capital One, N.A.*,
  932 F. Supp. 2d 114 (D.D.C. 2013) ...................................................................... 11

*Covad Commc'ns Co. v. Bell Atl. Corp.*,
  407 F.3d 1220 (D.C. Cir. 2005) ............................................................................. 11

*Creech v. Reinke*,
  No. 12-0173, 2012 WL 1995085 (D. Idaho June 4, 2012) ................................... 15

*Farmer v. Brennan*,
  511 U.S. 825 (1994) ........................................................................................... 13, 14

*Gissendaner v. Comm'r, Ga. Dep't of Corr.*,
  779 F.3d 1275 (11th Cir. 2015) ............................................................................. 15

*Glossip v. Cross*,
  576 U.S. 863 (2015) ........................................................... 11, 15, 19, 21, 23

*Gray v. McAuliffe,*
    No. 16-0982, 2017 WL 102970 (E.D. Va. Jan. 10, 2017) ................................................ 21, 22

*Grayson v. Warden, Comm'r , Ala. Dep't of Corr.,*
    869 F.3d 1204 (11th Cir. 2017) ................................................................................. 15

*In re Mo. Dep't of Corr.,*
    839 F.3d 732 (8th Cir. 2016) ..................................................................................... 16

*In re Ohio Execution Protocol Litig.,*
    860 F.3d 881 (6th Cir. 2017) ..................................................................................... 16

*In re Ohio Execution Protocol Litig.,*
    946 F.3d 287 (6th Cir. 2019) ..................................................................................... 18

*Jordan v. Comm'r, Miss. Dep't of Corr.,*
    908 F.3d 1259 (11th Cir. 2018) ................................................................................. 15

*Judicial Watch, Inc. v. FBI,*
    No. 18-2316, 2019 WL 4194501 (D.D.C. Sept. 4, 2019) ........................................... 10

*Matter of Fed. Bureau of Prisons' Execution Protocol Cases,*
    No. 19--mc-0145, 2020 WL 3960928 (D.D.C. July 13, 2020) ..................................... 7, 20, 22

*Matter of Fed. Bureau of Prisons' Execution Protocol Cases,*
    No. 19-mc-0145, 2020 WL 4004474 (D.D.C. July 15, 2020) ..................................... 19

*Matter of Fed. Bureau of Prisons' Execution Protocol Cases,*
    No. 19-mc-0145, 2020 WL 4915563 (D.D.C. Aug. 15, 2020) ................................. 9, 16, 17, 18

*McGehee v. Hutchinson,*
    854 F.3d 488 (8th Cir. 2017) ................................................................................. 16, 22

*Towery v. Brewer,*
    672 F.3d 650 (9th Cir. 2012) ..................................................................................... 15

*United States v. Higgs,*
    193 F. Supp. 3d 495 (D. Md. 2016) ........................................................................... 6

*United States v. Higgs,*
    353 F.3d 281 (4th Cir. 2003) ..................................................................................... 6

*United States v. Higgs,*
    663 F.3d 726 (4th Cir. 2011) ..................................................................................... 6

*Whitaker v. Collier,*
    862 F.3d 490 (5th Cir. 2017) ..................................................................................... 15

*Wilkerson v. Utah,*
  99 U.S. 130 (1878) ........................................................................................ 23

*Wood v. Ryan,*
  759 F.3d 1076 (9th Cir. 2014) ...................................................................... 22

*Zagorski v. Parker,*
  139 S. Ct. 11 (2018) ........................................................................................ 8

*Zink v. Lombardi,*
  783 F.3d 1089 (8th Cir. 2015) ............................................................... 13, 15

**Statutes**

18 U.S.C. § 924(c) .............................................................................................. 6

18 U.S.C. § 1111(a) ............................................................................................ 6

18 U.S.C. § 1201(a) ............................................................................................ 6

28 U.S.C. § 2255 ................................................................................................ 6

Miss. Code. Ann. § 99-19-51 ........................................................................... 23

Utah Code Ann. § 77-18-5.5(3) (2015) ........................................................... 23

## INTRODUCTION

The parties agree that Plaintiff Dustin Higgs has only one remaining claim in this case: an as-applied challenge that the Federal Bureau of Prisons' ("BOP") single-drug execution protocol using pentobarbital ("2019 Protocol") would violate the Eighth Amendment when used on Higgs because he may have unknowingly contracted COVID-19 (or may contract it in the future), which, when coupled with his asthma, may cause him to experience "augmented" sensations of drowning and suffocation from pulmonary edema. Higgs's as-applied claim fails at the pleading stage for a number of reasons. First, it is impermissibly premised on speculation. Higgs does not allege that he has or has had COVID-19; nor does he allege that he has experienced any symptoms of COVID-19. Thus, the very assertion that Higgs has a medical condition—asthma—that if coupled with COVID-19 may increase the risk of lung damage, which in turn would expose him to an alleged risk of enhanced pulmonary edema, is hypothetical.

Second, Higgs's as-applied Eighth Amendment claim is not materially distinguishable from the facial Eighth Amendment claim that this Court has already dismissed for failure to state a claim. Higgs challenges the same method of execution—lethal injection of pentobarbital—and alleges essentially the same kind of suffering—sensations of drowning and suffocating (albeit "augment[ed]") purportedly caused by pulmonary edema. The single-drug pentobarbital protocol, however, is widely used and has been repeatedly upheld by appellate courts, including by the Supreme Court in this case, as constitutional—and the Supreme Court has done so even when faced with a claim that a prisoner's unique medical condition would cause enhanced suffering. Moreover, this Court has already concluded that any alleged sensation of drowning or suffocating from pulmonary edema—assuming it occurs (which Defendants do not concede)—is insufficient to state an Eighth Amendment claim.

Finally, Higgs's as-applied claim fails for the independent reason that he does not meet the requirement that he proffer a feasible and readily implemented alternate method of execution that in fact significantly reduces a substantial risk of severe pain and that BOP lacks a legitimate penological reason to refuse to adopt it.

## BACKGROUND

### A.     Higgs's Criminal Conviction and Sentence

In the early morning of January 27, 1996, Dustin Higgs and Willie Haynes drove three young women out to the Patuxent National Wildlife Refuge in Prince George's County, Maryland and executed them. *See United States v. Higgs*, 353 F.3d 281, 289–91 (4th Cir. 2003). For each of the victims, a jury convicted Higgs of first-degree premeditated murder, 18 U.S.C. § 1111(a), first-degree murder committed in the perpetration or attempted perpetration of a kidnapping, *id,* kidnapping resulting in death, 18 U.S.C. § 1201(a), and using a firearm in the commission of a crime of violence, 18 U.S.C. § 924(c). *See Higgs*, 353 F.3d at 294. The jury also returned sentences of death on each count (nine total). *Id.* Higgs's conviction and sentence were affirmed on appeal, *id.*, *cert. denied*, 435 U.S. 999 (2004), and his motion under 28 U.S.C. § 2255 to vacate his sentence was denied, *United States v. Higgs*, 663 F.3d 726, 730 (4th Cir. 2011), *cert. denied*, 568 U.S. 1069 (2012). In 2016, Higgs moved to revisit the denial of his motion to vacate pursuant to Federal Rule of Civil Procedure 60(d), claiming fraud on the court; that motion was also denied. *United States v. Higgs*, 193 F. Supp. 3d 495, 496 (D. Md. 2016).

### B.     Relevant Procedural History

On September 1, 2020, Higgs filed an unopposed motion to intervene in this case, which had been brought fifteen years earlier by Plaintiff James Roane. ECF No. 229. The Court granted that motion three days later. Min. Order (Sept. 4, 2020). Higgs's claims are mostly identical to

those asserted by the other Plaintiffs—including claims under the Federal Death Penalty Act; the Federal Food, Drug, and Cosmetic Act; and the Eighth Amendment—but with one deviation: Higgs also brings an as-applied challenge under the Eighth Amendment, alleging that he faces a unique and individualized risk of serious harm if he is executed using pentobarbital. Higgs Compl. ¶¶ 166–72. Specifically, Higgs claims that he suffers from asthma, which would make him more susceptible than others to complications from COVID-19 in the event that he contracts the virus prior to his execution.[1] *Id.* ¶¶ 99–100; Zivot Decl. ¶ 17. Relying on the opinion of Dr. Gail Van Norman that BOP's pentobarbital protocol causes inmates to experience pulmonary edema during execution and an associated sensation of drowning prior to the loss of consciousness, Higgs Compl. ¶ 101, Higgs alleges that his "likely" exposure to COVID-19 (based entirely on the fact that he resides in a BOP facility) coupled with his asthma "increase[ ] the risk" that he will have lung damage at the time of his execution, which, coupled with his asthma, would "augment[]" any sensation of drowning associated with pulmonary edema. *Id.* ¶ 102; Zivot Decl. ¶ 19 ("Injecting Mr. Higgs—a person with a serious underlying respiratory condition who has likely been exposed to COVID-19 in BOP custody—with pentobarbital is virtually certain to cause extreme pain and suffering.").

The parties have already litigated to judgment Plaintiffs' (including Higgs's) general Eighth Amendment claim. On July 13, 2020, before Higgs sought to intervene, the Court enjoined the executions of Daniel Lewis Lee, Dustin Lee Honken, and Wesley Purkey on the ground that they were likely to succeed on the merits of their Eighth Amendment claim. *Matter of Fed. Bureau of Prisons' Execution Protocol Cases*, — F. Supp. 3d —, No. 19-2559, 2020 WL 3960928 (D.D.C.

---

[1] Higgs does not allege that he has actually contracted COVID-19 or that he has experienced any symptoms of COVID-19 since the onset of the pandemic.

July 13, 2020). The Court determined that those Plaintiffs had shown that they were substantially likely to suffer pulmonary edema while conscious if executed using a pentobarbital injection, *id.* at *4–6, and that they had provided feasible and readily implemented alternative methods of execution: i.e., a pre-dose of an opioid pain reliever prior to the pentobarbital injunction or a firing squad. *id.* at *6–10. The Court acknowledged that the Supreme Court had upheld the use of a single-drug pentobarbital execution protocol in *Bucklew v. Precythe,* 139 S. Ct. 1112 (2019), but distinguished that case on the ground that it involved "a challenge . . . unique to that plaintiff's medical condition." *Id.* at *5.

The Supreme Court vacated this Court's injunction the next day. The Supreme Court noted that the Bureau of Prisons "plan[ned] to use a single drug—pentobarbital sodium—that 'is widely conceded to be able to render a person fully insensate' and 'does not carry the risks' of pain that some have associated with other lethal injection protocols." *Barr v. Lee*, 140 S. Ct. 2590, 2591 (2020) (quoting *Zagorski v. Parker*, 139 S. Ct. 11, 11 (2018) (Sotomayor, J., dissenting from denial of application for stay and denial of certiorari)). The Court noted that it had recently upheld the protocol the federal government intended to use "as applied to a prisoner with a unique medical condition that could only have increased any baseline risk of pain associated with pentobarbital as a general matter." *Id.* (citing *Bucklew*, 139 S. Ct. 1112). The Supreme Court further observed that pentobarbital (1) has been adopted by five states that implement the death penalty, (2) has been used to carry out over 100 executions without incident, (3) is repeatedly invoked by prisoners as a less painful alternative to other lethal-injection protocols, (4) has been upheld by numerous courts of appeals. *Id.* The Court noted the Plaintiffs presented "new expert declarations" that pentobarbital causes pulmonary edema, but also noted that the government itself had produced "competing expert testimony of its own, indicating that any pulmonary edema occurs only *after*

4

the prisoner has died or been rendered fully insensate." *Id.* (emphasis in original). The Court therefore concluded that the Plaintiffs had failed to make the required showing and vacated the injunction "so that the plaintiffs' execution may proceed as planned." *Id.* at 2592. Lee was executed on July 14, 2020, and Honken and Purkey were executed later that week.

On July 31, 2020, Defendants filed a motion to dismiss and for summary judgment seeking in part to dismiss Plaintiff's Eighth Amendment claim as inadequately pleaded. ECF No. 169. The Court granted and dismissed the Eighth Amendment claim, noting that the Supreme Court's order in *Barr v. Lee* "altered this court's understanding of the scope of the Eighth Amendment protection." *Matter of Fed. Bureau of Prisons' Execution Protocol Cases*, No. 19-mc-0145, 2020 WL 4915563, at *2 (D.D.C. Aug. 15, 2020). In particular, the Court concluded that (1) a likelihood that a prisoner will experience pulmonary edema is not enough to establish an Eighth Amendment violation, (2) that the *Bucklew* decision upholding pentobarbital "extends to general pentobarbital challenges, such as this one, not just to the unique medical condition of the inmate in that case," and (3) the wide use of pentobarbital indicated an absence of an Eighth Amendment violation. *Id.* The Court therefore concluded that "it would thus seem contrary to *Lee* for this court to enter judgment on these facts and find an Eighth Amendment violation." *Id.* The Court also rejected the argument that the result in *Lee* was driven by the last-minute nature of the injunction rather than with the substance of the claim, noting that the Supreme Court had also vacated the injunction with respect to inmates who did not have imminent execution dates. *Id.* At the request of Plaintiff Keith Nelson, and with the consent of the other Plaintiffs, the Court entered partial final judgment on the Eighth Amendment claim. ECF No. 205. Thereafter, on the Court denied Plaintiffs' motion under Federal Rule of Civil Procedure 59(e) for the Court to alter or amend its judgment as to the Eighth Amendment claim.  ECF No. 305.

After dismissing the Eighth Amendment claim, this Court mostly granted Defendants' motion to dismiss or for summary judgment on the remaining claim asserted by all Plaintiffs, except Plaintiffs' claim under the Federal Food, Drug, and Cosmetic Act ("FDCA"). ECF No. 262. For that claim, the Court granted summary judgment to Plaintiffs but declined to award any injunctive relief. *Id.*[2] Thus, all that remains of Higgs's claims is his as-applied Eighth Amendment claim. *See* Jt. Status Rep. ¶ 3 ("The only claim by Mr. Higgs that has not yet been ruled on by the Court in the context of the other plaintiffs is Mr. Higgs's as-applied Eighth Amendment claim."), ECF No. 280-1. Defendants now move to dismiss that claim as inadequately pleaded.

## STANDARDS

### A.    Motion to Dismiss under Rule 12(b)(6)

Defendants move to dismiss Higgs's as-applied Eighth Amendment claim for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  Although a complaint need not contain "detailed factual allegations," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007), it must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Dismissal under Rule 12(b)(6) is appropriate "if the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Barr v. Clinton*, 370 F.3d 1196, 1202 (D.C. Cir. 2004) (citation omitted). "The court ruling on a Rule 12(b)(6) motion to dismiss 'may consider the facts alleged in the complaint, documents . . . incorporated by reference in the complaint, or documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by the parties.'  The court may also take 'judicial notice of facts on the public record.'" *Judicial Watch,*

---

[2] Plaintiffs have filed a motion to alter or amend the Court's decision on the FDCA claim, ECF No. 282, and some Plaintiffs have also moved to alter or amend the Court's judgment on their claim under the Federal Death Penalty Act, ECF No. 298.

*Inc. v. FBI*, No. 18-2316, 2019 WL 4194501 at *5 (D.D.C. Sept. 4, 2019) (quoting *Busby v. Capital One, N.A.*, 932 F. Supp. 2d 114, 133–34 (D.D.C. 2013) and *Covad Commc'ns Co. v. Bell Atl. Corp.*, 407 F.3d 1220, 1222 (D.C. Cir. 2005)).

**B.     Eighth Amendment**

The Eighth Amendment forbids "long disused (unusual) forms of punishment that intensif[y] the sentence of death with a (cruel) 'superadd[ition]' of 'terror, pain, or disgrace,'" *Bucklew*, 139 S. Ct. at 1124 (quoting *Baze v. Rees*, 553 U.S. 35, 48 (2008)), but "[it] 'does not demand the avoidance of all risk of pain in carrying out executions,'" *id.* at 1125 (quoting *Baze*, 553 U.S. at 47). Thus, the Supreme Court requires inmates challenging a method of execution to establish initially that the method "is 'sure or very likely to cause serious illness and needless suffering,' and give[s] rise to 'sufficiently imminent dangers.'" *Glossip v. Cross*, 576 U.S. 863, 877 (2015) (quoting *Baze*, 553 U.S. at 50). "[T]here must be 'a substantial risk of serious harm,' an 'objectively intolerable risk of harm' that prevents prison officials from pleading that they were 'subjectively blameless for purposes of the Eighth Amendment.'" *Id.* (quoting *Baze*, 553 U.S. at 50). The fact that "an execution method may result in pain, either by accident or as an inescapable consequence of death," is insufficient to state an Eighth Amendment claim. *Baze*, 553 U.S. at 50.

Even if an inmate does show a substantial risk of severe harm, the Eighth Amendment analysis is "a necessarily comparative exercise," *Bucklew*, 139 S. Ct. at 1126, so an inmate must also "plead and prove a known and available alternative," *Glossip*, 576 U.S. at 880, that is "'feasible, readily implemented, and in fact significantly reduce[s] a substantial risk of severe pain,'" *id.* at 877 (quoting Baze, 553 U.S. at 52). Merely "'showing a slightly or marginally safer alternative,'" *id.* (quoting *Baze*, 553 U.S. at 51), or "[a] minor reduction in risk is insufficient"; rather, "the difference must be clear and considerable," *Bucklew*, 139 S. Ct. at 1130. Otherwise,

courts would become "boards of inquiry charged with determining 'best practices' for executions, with each ruling supplanted by another round of litigation touting a new and improved methodology." *Baze*, 553 U.S. at 51; *accord Bucklew*, 139 S. Ct. at 1125.

Finally, the inmate must demonstrate that the government has refused to adopt the inmate's proposed alternative "without a legitimate penological reason." *Bucklew*, 139 S. Ct. at 1125. As the Supreme Court recognized, there are "many legitimate reasons why [the government] might choose, consistent with the Eighth Amendment, not to adopt a prisoner's preferred method of execution." *Id.* And "the Constitution affords a measure of deference to [the government's] choice of execution procedures." *Id.* (citation omitted).

## ARGUMENT

Following the Supreme Court's order in *Barr v. Lee*, this Court held that it is generally not a violation of the Eighth Amendment for the BOP to execute federal condemned inmates using a single-drug pentobarbital lethal injection protocol. Higgs alleges that it would nevertheless be unconstitutional for the BOP to execute *him* using pentobarbital because he may at some point contract COVID-19 (or have contracted it in the past without knowing it), which he asserts would probably cause lasting damage to his lungs. He contends that such lung damage, if it occurs, coupled with his asthma, would cause him to suffer pulmonary edema in some "augmented" way. Higgs's claim fails because the factual lynchpin of his theory—that he at some point will be (or at some point unknowingly has been) infected COVID-19—is pure speculation. It is also purely speculative that he necessarily would suffer lung damage even if he were to contract COVID-19. Given this Court's prior ruling—and the ruling of the Supreme Court in *Lee*—this is not enough to allege a violation of the Eighth Amendment. Finally, Higgs fails to plead adequate alternative methods of execution, as it is his burden to do.

## I.     Higgs does not allege a substantial risk of severe pain.

Higgs fails to plead a risk of severe pain that can sustain his Eighth Amendment challenge for two reasons. First, his allegations hinge on speculation that he has had or will contract COVID-19. Second, even accepting Higgs's speculation as fact, he has not articulated a harm that could give rise to an Eighth Amendment claim.

### A.     Higgs's allegation of harm is impermissibly based on speculation.

A fundamental flaw in Higgs's as-applied Eighth Amendment claim is that it hinges on hypothetical speculation that Higgs will get (or perhaps has already had) COVID-19 and that if he contracts COVID-19, he will suffer lasting lung damage. But to "successfully plead[] facts to demonstrate a substantial risk of severe pain requires the prisoners to plead more than just a hypothetical possibility that an execution could go wrong." *Zink v. Lombardi*, 783 F.3d 1089, 1098–99 (8th Cir. 2015) (*en banc*). A plaintiff must show that the alleged risk is "*sure or very likely* to cause serious illness and needless suffering, and give rise to sufficiently *imminent* dangers." *Baze*, 553 U.S. at 50 (internal quotation marks omitted) (emphasis in original). The risk must be so "substantial" and so "objectively intolerable" that it "prevents prison officials from pleading that they were 'subjectively blameless for purposes of the Eighth Amendment.'" *Baze*, 553 U.S. at 50 (quoting *Farmer v. Brennan*, 511 U.S. 825, 846 n.9 (1994)). "[W]hat [the Eighth] Amendment prohibits is *wanton exposure* to objectively intolerable risk . . . not simply the possibility of pain." *Id.* at 61–62 (citation omitted) (emphasis added).

Higgs's as-applied claim cannot surmount this standard because it rests on hypotheticals. Notably, given the Supreme Court's order in *Barr v. Lee* and this Court's decision dismissing the facial Eighth Amendment claim, Higgs cannot claim that the BOP's execution method is unconstitutional as generally applied. Higgs's Eighth Amendment claim therefore rests solely on

his allegation that he may contract COVID-19 (or that he has possibly unknowingly contracted it at some point in the past) and that this will damage (or has damaged) his lungs in such a way that, when paired with his asthma, he will suffer "augmented" sensations of drowning associated with pulmonary edema. Higgs Compl. ¶ 101–02. These allegations, however, rest impermissibly on speculation. Higgs does not allege that he has exhibited symptoms of COVID-19, or that COVID-19 has in fact caused lasting damage to his lungs. He simply speculates that the fact that he is housed in a federal prison increases the probability that he has been or will become infected.[3] Moreover, even if Higgs has unknowingly already contracted COVID-19, Higgs' own expert merely opines that "COVID-19 can cause lasting lung damage," *see* Compl. ¶ 102 (quoting Zivot Decl. at 5), not that Higgs's lungs have in fact suffered lasting damage. Indeed, neither Higgs nor his expert explain how Higgs might have already suffered lung damage from COVID-19 and, despite his alleged severe asthma, remain totally unaware of it.

Higgs's "speculation cannot substitute for evidence that the use of the drug is '*sure or very likely* to cause serious illness and needless suffering.'" *Brewer v. Landrigan*, 562 U.S. 996 (2010) (quoting *Baze*, 553 U.S. at 50); *see also* Bucklew, 139 S. Ct. at 1130 ("The problem with all of these contentions is that they rest on speculation. . . ."). Because Higgs's claim of augmented harm

---

[3] Higgs's allegations regarding the prevalence of COVID-19 at USP Terre Haute, where he resides, are dated. At the time of his pleading, Higgs alleged that there were 57 inmates who had tested positive for the virus. At present, however, there are only three active cases of COVID-19 among inmates at USP Terre Haute, out of an inmate population of 1,241—i.e., about 0.3% of the population. *See* https://www.bop.gov/coronavirus/ (for the number of active COVID-19 cases) (last visited Nov. 3, 2020); https://www.bop.gov/about/statistics/population_statistics.jsp (for the population of USP Terre Haute) (last visited Oct. 30, 2020). To prevent the further introduction and spread of COVID-19 within its facilities, the BOP has suspended social visitation and conducts a symptom screen, temperature check, and COVID-19 test for all inmates at intake. *See* https://www.bop.gov/coronavirus/covid19_status.jsp (last visited Oct. 31, 2020). Even asymptomatic inmates who test negative at intake are quarantined for 14 days and then re-tested for COVID-19 prior to being introduced into the inmate population. *Id.*

rests on his speculation that he will have contracted COVID-19 and that it will have damaged his lungs, he has failed to plead a risk that is "sure or very likely to cause serious illness and needless suffering, and give rise to sufficiently imminent dangers." *Baze*, 553 U.S. at 50. His as-applied Eighth Amendment claim should therefore be dismissed.

> **B.      The use of pentobarbital is constitutional as to Higgs.**

Even accepting Higgs's speculation that he will contract or has previously unknowingly contracted COVID-19, he nevertheless fails to state a claim that he faces a "substantial risk of severe pain" or an "objectively intolerable risk of harm" that runs afoul of the Constitution. *Glossip*, 576 U.S. at 77. This is true for a number of reasons. First, *Baze* recognizes that "it is difficult to regard a practice as 'objectively intolerable' when it is in fact widely tolerated." 553 U.S. at 53 (plurality op.). That is certainly the case with pentobarbital, which, as the Supreme Court noted, "has become the mainstay of state executions." *Lee*, 140 S. Ct. at 2591. Just last year, the Supreme Court upheld Missouri's single-drug pentobarbital protocol in *Bucklew*, and "courts across the country have held that the use of pentobarbital in executions does not violate the Eighth Amendment," *Glossip*, 576 U.S. at 871. More than one hundred executions using a single-drug pentobarbital protocol have been carried out by five States, *Lee*, 140 S. Ct. at 2591, and each of those states' protocols have been upheld, *see Whitaker v. Collier*, 862 F.3d 490, 498–99 (5th Cir. 2017) (Tex.), *cert. denied*, 138 S. Ct. 1172 (2018); *Zink*, 783 F.3d at 1106–07 (Mo.); *Towery v. Brewer*, 672 F.3d 650, 658–59 (9th Cir. 2012) (Ariz.); *Gissendaner v. Comm'r, Ga. Dep't of Corr.*, 779 F.3d 1275, 1280–83 (11th Cir. 2015) (Ga.); *Creech v. Reinke*, No. 12-0173, 2012 WL 1995085, at *14–22 (D. Idaho June 4, 2012) (Idaho). Moreover, inmates challenging different execution protocols often proffer pentobarbital as a superior alternative as compared to other lethal agents. *See, e.g., Glossip*, 576 U.S. at 878; *Jordan v. Comm'r, Miss. Dep't of Corr.*, 908 F.3d 1259, 1262

(11th Cir. 2018); *Grayson v. Warden, Comm'r , Ala. Dep't of Corr.*, 869 F.3d 1204, 1212 (11th Cir. 2017); *McGehee v. Hutchinson*, 854 F.3d 488, 493 (8th Cir. 2017); *In re Mo. Dep't of Corr.*, 839 F.3d 732 (8th Cir. 2016); *In re Ohio Execution Protocol Litig.*, 860 F.3d 881, 890–91 (6th Cir. 2017). The Supreme Court cited each of the above points when vacating the July 13 injunction issued by this Court. *Lee*, 140 S. Ct. at 2591. And in later dismissing the facial Eighth Amendment claim, this Court noted that the widespread use of pentobarbital weighs heavily against finding that it gives rise to a violation of the Eighth Amendment. *Matter of Fed. Bureau of Prisons' Execution Protocol Cases*, 2020 WL 4915563, at *2.

Further, any conclusion that the use of pentobarbital violates the Eighth Amendment as-applied to Higgs would contradict the Supreme Court's decision in *Bucklew*. The plaintiff in *Bucklew*, like Higgs, alleged that, whether or not pentobarbital would cause unconstitutional pain for all prisoners, it would cause him severe pain due to his unique medical condition. *Bucklew*, 139 S. Ct. at 1120. Specifically, Bucklew claimed that (1) he suffered from a disease called cavernous hemangioma, which caused vascular tumors that would prevent pentobarbital from circulating properly in his body; (2) the dye use to flush the intravenous lines would cause his tumors to rupture; and (3) the pentobarbital would react adversely with his other medications. *Id.* The Supreme Court nevertheless upheld the use of pentobarbital in these circumstances, crediting Dr. Antognini's testimony that the inmate would not be capable of experiencing pain for significantly more than 20 to 30 seconds after being injected with pentobarbital. *Id.* at 1132. In this case, the Supreme Court identified the result in *Bucklew* as contradicting this Court's preliminary injunction on the facial Eighth Amendment claim in this case. *Lee*, 140 S. Ct. at 2591.

*Bucklew* forecloses Higgs's as-applied Eighth Amendment claim. Higgs does not allege that he will suffer harm that is significantly different from that alleged by the other Plaintiffs. Like

those other Plaintiffs, Higgs claims—relying on the same expert testimony—that he will suffer pulmonary edema and associated sensations of drowning and suffocating during his execution. Higgs Compl. ¶ 101. He adds only that, because of a combination of asthma and possible exposure to COVID-19, he will experience these same sensations "more quickly and acutely" and that they will be "augment[ed]" in some unspecified way. *Id.* ¶ 102. But these vague allegations do not sufficiently set Higgs apart from the other Plaintiffs such that he alone may avoid the effects of *Bucklew*. *Bucklew* upheld the use of pentobarbital despite testimony by the inmate's medical expert, Dr. Joel Zivot, that "Bucklew will likely experience hemorrhaging . . . [that] will further impede Mr. Bucklew's airway by filling his mouth and airway with blood, causing him to choke and cough on his own blood."[4] *Bucklew*, 139 S. Ct. at 1138 (Breyer, J., dissenting) (citations omitted). The Supreme Court noted in vacating this Court's preliminary injunction on the Eighth Amendment claim that pentobarbital "[w]as upheld by this Court last year, as applied to a prisoner with a unique medical condition that could only have increased any baseline risk of pain associated with pentobarbital as a general matter." *Lee*, 140 S. Ct. at 2591. This Court, reacting to the Supreme Court's decision, concluded that the Supreme Court's acceptance of pentobarbital under *Bucklew* and in vacating this Court's preliminary injunction rendered meritless Plaintiffs' facial Eighth Amendment claim that pentobarbital will cause them to suffer feelings of drowning and suffocation associated with pulmonary edema. *Matter of Fed. Bureau of Prisons' Execution*

---

[4] Notably, Dr. Zivot is the same medical expert who has provided a declaration in support of Higgs's complaint. Perhaps even more notably, the Supreme Court in *Bucklew* acknowledged Dr. Zivot's opinion that "Bucklew would be unable to prevent his tumors from obstructing his breathing, which would make him feel like he was suffocating," *id*. at 1122, but also noted that Dr. Zivot "declined to say how long" Bucklew would be in what Dr. Zivot called a "semiconscious 'twilight stage'" prior to death. *Id*. The Court found Dr. Zivot to be "evasive" on this point and instead credited the government's expert, Dr. Antognini, in concluding that "there's nothing in the record to suggest that Mr. Bucklew will be capable of experiencing pain for significantly more than 20 to 30 seconds after being injected with pentobarbital." *Id*. at 1132.

*Protocol Cases*, 2020 WL 4915563, at *2-3. Higgs's vague allegations that his own experience of these same sensations will somehow be more acute or augmented from the other Plaintiffs does not render *Bucklew* any less controlling. Higgs does not claim, nor is it plausible to believe, that his unique medical condition will give rise to an alleged harm that is more severe than Bucklew's. Accordingly, there is no reason that *Bucklew* should not dictate the result of Higgs's as-applied claim to the same extent that it did Plaintiffs' facial claim.

Moreover, even crediting Higgs's allegations that he will experience pulmonary edema and that it will be "augmented" in some unspecified way by a combination of his asthma and possible past or future exposure to COVID-19, those allegations do not adequately allege an Eighth Amendment violation. "Simply because an execution method may result in pain, either by accident or as an inescapable consequence of death, does not establish the sort of 'objectively intolerable risk of harm' that qualifies as cruel and unusual." *Baze*, 553 U.S. at 50 (plurality opinion); *see also Bucklew*, 139 S. Ct. at 1131 (upholding pentobarbital protocol and acknowledging the possibility that inmate could experience feelings of "suffocation and excruciating pain" for as long as 20 to 30 seconds); *In re Ohio Execution Protocol Litigation*, 946 F.3d 287, 290 (6th Cir. 2019) (opining that pulmonary edema does not result in punishment violating the Eighth Amendment because it "pales in comparison to the pain associated with hanging," which has long "been considered constitutional"). Indeed, in dismissing the facial Eighth Amendment claim in this case, this Court concluded that even accepting the Plaintiffs' allegations that they will suffer pulmonary edema, there would be no Eighth Amendment violation "because the evidence of pain would not satisfy *Lee*'s high bar for an objectively intolerable risk of pain." *Matter of Fed. Bureau of Prisons' Execution Protocol Cases*, 2020 WL 4915563, at *3 (citing *Barr v. Lee*, 140 S. Ct. 2590). Higgs's as-applied allegations do no better at clearing that bar, and certainly allege no more than in

14

*Bucklew*. The injury he alleges is essentially the same as all the other Plaintiffs: a sensation of drowning caused by pulmonary edema. Higgs's Compl. ¶ 101. Higgs merely claims that this same sensation will be "augment[ed]" for him in some undescribed way as a result of his asthma and possible exposure to COVID-19. *Id.* ¶ 102. Because this Court has already held that the alleged sensations of drowning and suffocation caused by pulmonary edema is not sufficient to establish an Eighth Amendment violation, Higgs's bare allegation of an "augmented" experience of that same sensation, without any further elaboration, is insufficient to state a claim.

## II.    Higgs does not plead a viable alternative.

Higgs's as-applied Eighth Amendment claim should be dismissed for the independent reason that he fails to "plead and prove a known and available alternative," *Glossip*, 576 U.S. at 880, that is "feasible, readily implemented, and in fact significantly reduce[s] a substantial risk of severe pain," *id.* at 877 (citation omitted), and that the government "has refused to adopt without legitimate penological reasons." *Bucklew*, 139 S. Ct. at 1125. This showing is required for as-applied challenges to the same extent as for facial challenges. *Id.* at 1126–29.

Higgs offers two proposed alternatives, neither of which meet the requirements of *Glossip*. First, Higgs suggest that BOP use a single dose of FDA-approved pentobarbital or "add[ ] a pre-dose of a pain-relieving, anesthetic drug," such as fentanyl, "in a sufficiently large clinical dose." Higgs Compl. ¶¶ 144a, 144b. The suggestion to use FDA-approved pentobarbital is a nonstarter given BOP's inability to purchase commercially available pentobarbital. *See Matter of Fed. Bureau of Prisons' Execution Protocol Cases*, No. 19-2559, 2020 WL 4004474, at *5 (D.D.C. July 15, 2020) ("[T]he Supreme Court has approved the use of a compounded form of pentobarbital where domestic supplies were unavailable, and Defendants' decision to do so was not arbitrary or capricious."). It is therefore not a feasible, readily implemented alternative. *See Glossip*, 576 U.S.

at 877. As for adding another drug, BOP concluded that a one-drug protocol would avoid the "complications inherent in obtaining multiple drugs," and "simplify[] the procedure and therefore reduce[] the risk of administrative mishaps." AR 871.[5] These are legitimate reasons for not expanding the number of drugs being administered.

Nevertheless, Higgs alleges that fentanyl can be added to the Protocol to reduce the risk of him inmate feeling pain. Higgs Compl. ¶ 144a. But he fails to allege that any State adds an opioid to a single-drug pentobarbital protocol. Although Nebraska has used fentanyl in one execution, it was used as part of a four-drug protocol that does not include pentobarbital. *See* https://deathpenaltyinfo.org/executions/lethal-injection/state-by-state-lethal-injection-protocols (noting a 2018 execution using diazepam, fentanyl citrate, cisatracurium besylate, and potassium chloride). This Court found that adding an opioid to the pentobarbital Protocol would be "simple" and "easily and quickly administered." *Matter of Fed. Bureau of Prisons Execution Protocol Cases*, 2020 WL 3960928, at *7. Yet, as BOP has already determined, an important consideration of using fentanyl is its potential side effects and the potential interactions with other drugs. AR 865.[6] Muscle rigidity is the most significant side effect that may be reduced by premedication with benzodiazepines; indeed this may be why Nebraska's four-drug protocol begins with diazepam (valium), a benzodiazepine. *Id.* Importantly, the Supreme Court has made clear that the government is not required to adopt an approach—here, adding an opioid to a pentobarbital protocol—that "ha[s] 'never been used to carry out an execution' and ha[s] 'no track record of

---

[5] This BOP memorandum was cited in Higgs's complaint. *See* Higgs Compl. ¶ 104 (citing AR 872). Thus, this Court may consider it in deciding this motion to dismiss.
[6] Higgs has cited BOP's memorandum (AR 862–65) discussing the potential use of fentanyl in executions. *See* Higgs Compl. ¶ 144a (citing AR 862–63). Thus, this Court may also consider the fentanyl memorandum in deciding this motion to dismiss.

successful use.'" *Bucklew*, 139 S. Ct. at 1130. Put differently, "choosing not to be the first [State] to experiment with a new method of execution is a legitimate reason to reject it." *Id.*

BOP has articulated yet another legitimate reason for not adding another drug—its concern that drug manufacturers have "threatened to refuse to provide medications used for clinical treatments of inmates should they find out their drugs are being used for executions." AR at 864; *see also id.* (noting that drug manufacturers have sent correspondence to BOP seeking assurance their drugs are not being used for executions; noting further that fentanyl products are made by manufacturers "who would most likely take action against the Bureau of Prisons if they discovered the drugs were used for the purpose of execution, regardless of how [BOP] obtained them"). This Court found BOP's concern unjustified, as Defendants had not made any efforts to obtain fentanyl. ECF No. 135, Mem. Op. at 15. But this Court has no basis to question the legitimacy of BOP's concerns, especially given the undisputed history of lethal agents becoming scarce due to efforts of anti-death-penalty activists. *See* AR 870; *Glossip*, 576 U.S. at 869-70 (discussing sodium thiopental and pentobarbital becoming unavailable due to anti-death-penalty advocates' lobbying efforts); *Gray v. McAuliffe*, No. 16-0982, 2017 WL 102970, at *7 (E.D. Va. Jan. 10, 2017) ("[D]eath penalty opponents have made it difficult to obtain FDA-approved drugs customarily used in executions"). Nor is BOP required to "put the clinical treatment of inmates under [its] care at risk," AR 864, which would likely happen if drug manufacturers of the desired opioid learned of BOP's intent to use it in executions. This is all the more so when there is no scientific consensus that adding an opioid or a pain-relieving medication to the Protocol would in fact *significantly* reduce the risk of severe pain, as pentobarbital will quickly render an inmate unconscious.

Second, Higgs proposes a firing squad as a constitutionally superior method of execution. Higgs Compl. ¶ 144c. This Court previously found this proposal likely to satisfy the second prong

of the method-of-execution standard, *Matter of Fed. Bureau of Prisons' Execution Protocol Cases*, 2020 WL 3960928, at \*8–9, but every court to have considered the issue has found otherwise because of the possibility of human error and potential for severe suffering. As the Eighth Circuit recently explained, "[t]he firing squad has been used by only one State since the 1920s," and there is no "significant possibility that use of a firing squad is readily implemented and would significantly reduce a substantial risk of severe pain." *McGehee*, 854 F.3d at 494; *see also Gray*, 2017 WL 102970, at \*19 (citing experts' agreement that "if the bullet missed the target, the individual 'could suffer' and would experience an 'agonizing death'"). Moreover, the only source cited by Higgs's complaint merely shows that there were fewer supposed "botched" executions by firing squad than lethal execution, when the sample sizes were not comparable (a total of only 34 executions by firing squad between 1900 to 2010, as compared to 1,054 executions by lethal injection in that same period). *See* Higgs Compl. ¶ 145.

To be sure, as this Court observed, some Supreme Court justices have expressed the view that a firing squad may be a sufficiently painless method of execution. *Matter of Fed. Bureau of Prisons' Execution Protocol Cases*, 2020 WL 3960928, at \*8. But again, the existence of a viable option does not end the inquiry. As the Supreme Court said in *Bucklew*, "a prisoner may point to a well-established protocol in another State as a potentially viable option," but the "court would have to inquire into the possibility that one State possessed a legitimate reason for declining to adopt the protocol of another." 139 S. Ct. at 1128.

Higgs cannot do so here because the federal government has a legitimate interest in using a method it regards as "preserving the dignity of the procedure," *Baze*, 553 U.S. at 57 (plurality opinion), which includes declining as a policy matter to opt for "the splatter from an execution carried out by firing squad," *Wood v. Ryan*, 759 F.3d 1076, 1103 (9th Cir. 2014) (Kozinski, J.,

dissenting from the denial of rehearing en banc).  While the Supreme Court has long upheld the use of firing squad, *see, e.g., Wilkerson v. Utah*, 99 U.S. 130, 131–32 (1878), it has also noted that the firing squad is a "more primitive" method of execution, *Glossip*, 576 U.S. at 881. The Constitution does not mandate the federal government to use an execution method that has "given way to more humane methods, culminating in today's consensus on lethal injection." *Baze*, 553 U.S. at 62 (plurality opinion). Given the "consensus" among the States that lethal injection is more dignified and humane than the firing squad, BOP was entitled to reach the same conclusion. *Id.*; *Boyd v. Warden, Holman Corr. Facility*, 856 F.3d 853, 870–71 (11th Cir. 2017) (state not constitutionally required to "make this type of regressive change" by using firing squad).

Indeed, even Utah, the only state that has actually used the firing squad in the last 100 years, authorizes the method only as a last resort. Utah abandoned the method in 2004 because it was "too much of a spectacle, detracting attention from the victim and the crime and allowing prisoners 'one last magnificent manipulation of the system to bring attention to themselves.'"[7] And Utah has only reinstated the method as a failsafe due to the lack of lethal injection drugs. *See* Utah Code Ann. § 77-18-5.5(3) (2015). The same is true for the only other two States that authorize firing squad, Oklahoma and Mississippi, both allowing it only if lethal injection, nitrogen hypoxia, and electrocution are all declared unconstitutional. *See* Okla. Stat. tit. 22, § 1014; Miss. Code. Ann. § 99-19-51.

---

[7] The Marshall Project, *After Lethal Injection* (June 1, 2015), https://www.themarshallproject.org/ 2015/06/01/after-lethal-injection (quoting representative Sheryl Allen); *see id.* (noting foreign media's report of Utah's last execution in 2010 where the inmate had "his heart ripped to pieces by bullets blasted from the rifles of five expert marksmen hidden behind a brick wall").

## CONCLUSION

For the foregoing reasons, Higgs's as-applied Eighth Amendment claim—the only claim

of his that has not already been decided—should be dismissed with prejudice.

Respectfully submitted,

JOHN V. COGHLAN*                                 MICHAEL R. SHERWIN
Deputy Assistant Attorney General          Acting United States Attorney

JEAN LIN                                                    DANIEL F. VAN HORN, D.C. Bar #924092
Special Litigation Counsel                       Chief, Civil Division

JONATHAN KOSSAK, D.C. Bar #991478     By:   /s/ Johnny Walker
CRISTEN C. HANDLEY, MO Bar #69114      JOHNNY H. WALKER, D.C. Bar #991325
BRADLEY P. HUMPHREYS,                        Assistant United States Attorney
   D.C. Bar #988057                                  555 4th Street, N.W.
Trial Attorneys                                         Washington, District of Columbia 20530
Federal Programs Branch                         Telephone: 202 252 2575
Civil Division, Department of Justice        Email: johnny.walker@usdoj.gov
1100 L Street, N.W.
Washington, District of Columbia 20005   *Counsel for Defendants*
(202) 514-3716
jean.lin@usdoj.gov
jonathan.kossak@usdoj.gov
christen.handley@usdoj.gov
bradley.humphreys@usdoj.gov

Dated: November 3, 2020

*The Acting Assistant Attorney General for
the Civil Division is recused from this matter.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

In the Matter of the
Federal Bureau of Prisons' Execution
Protocol Cases

LEAD CASE: *Roane, et al. v. Barr*

THIS DOCUMENT RELATES TO:

*Roane, at al. v. Barr*, No. 05-2337

Case No. 19-mc-0145 (TSC)

## **PROPOSED ORDER**

Upon consideration of Defendants' motion to dismiss Count IV of Plaintiff Dustin

Higgs's complaint, it is hereby **ORDERED** that the motion is GRANTED.

It is further **ORDERED** that Count IV of Plaintiff Dustin Higgs's complaint is

hereby DISMISSED.

It is so **ORDERED**.

Dated: _____          _____
                                 TANYA S. CHUTKAN
                                 United States District Judge

## CERTIFICATE OF SERVICE

I hereby certify that on November 3, 2020, I caused a true and correct copy of foregoing to be served on all following counsel of record via the Court's CM/ECF system.

Joshua C. Toll
King & Spalding LLP
(202) 737-8616
jtoll@kslaw.com

Margaret O'Donnell
(502) 320-1837
mod@dcr.net

*Counsel for Plaintiff Anthony Battle*

Alex Kursman
Shawn Nolan
Federal Community Defender Office,
E.D. Pa.
(215) 928-0520
alex_kursman@fd.org
shawn_nolan@fd.org

*Counsel for Plaintiff Alfred Bourgeois*

Joseph Luby
Federal Community Defender Office,
E.D. Pa.
(215) 928-0520
joseph_luby@fd.org

*Counsel for Plaintiff Chadrick Fulks*

Ginger D. Anders
Jonathan S. Meltzer
Brendan Gants
Munger, Tolles & Olson LLP
(202) 220-1100
ginger.anders@mto.com

*Counsel for Plaintiff Brandon Bernard*

Scott W. Braden
Arkansas Federal Defender Office
(501) 324-6114
Scott_Braden@fd.org

Jennifer Ying
Andrew Moshos
Morris, Nichols, Arsht & Tunnell LLP
(302) 658-9300
jying@mnat.com
amoshos@mnat.com

*Counsel for Plaintiff Norris G. Holder, Jr.*

Amy Lentz
Steptoe & Johnson, LLP
(202) 429.1320
alentz@stepoe.com

*Counsel for Plaintiff Orlando Hall*

Shawn Nolan
Federal Community Defender Office,
E.D. Pa.
(215) 928-0520
shawn_nolan@fd.org

*Counsel for Plaintiff Dustin Higgs*

Gregory S. Smith
(202) 460-3381
gregsmithlaw@verizon.net

*Counsel for Plaintiff William LeCroy*

Jon Jeffress
KaiserDillon PLLC
(202) 640-2850
jjeffress@kaiserdillon.com

Timothy Kane
Shawn Nolan
Federal Community Defender Office,
E.D. Pa.
(215) 928-0520
timothy_kane@fd.org
shawn_nolan@fd.org

*Counsel for Plaintiff Dustin Lee Honken*

Donald P. Salzman
Charles F. Walker
Steven M. Albertson
Skadden, Arps, Slate, Meagher & Flom
LLP
(202) 371-7983
donald.salzman@skadden.com

*Counsel for Plaintiff Corey Johnson*

David S. Victorson
Hogan Lovells US LLP
(202) 637-5600
david.victorson@hoganlovells.com

Pieter Van Tol
Hogan Lovells US LLP
(212) 918-3000
pieter.vantol@hoganlovells.com

*Counsel for Plaintiff Daniel Lewis Lee*

Shawn Nolan
Federal Community Defender Office,
E.D. Pa.
(215) 928-0528
shawn_nolan@fd.org

Gary E. Proctor
Law Offices of Gary E. Proctor, LLC
(410) 444-1500
garyeproctor@gmail.com

*Counsel for Plaintiff Jeffrey Paul*

Gerald W. King, Jr.
Jeffrey Lyn Ertel
Federal Defender Program, Inc.
(404) 688-7530
Gerald_King@fd.org
Jeff_Ertel@fd.org

Brandon D. Almond
Troutman Sanders LLP
Washington, D.C. 20004
(202) 274-2864
brandon.almond@troutmansanders.com

*Counsel for Richard Tipton, III*

Alan E. Schoenfeld
Ryan M. Chabot
Wilmer Cutler Pickering Hale and Dorr LLP
(212) 230-8880
Alan.Schoenfeld@WilmerHale.com
Ryan.Chabot@WilmerHale.com

Andres C. Salinas
Wilmer Cutler Pickering Hale and Dorr LLP
 (202) 663-6289
Andres.Salinas@WilmerHale.com

*Counsel for Wesley I. Purkey*

Dale A. Baich
Jennifer M. Moreno
Federal Public Defender
District of Arizona
(602) 382-2816
dale_baich@fd.org
jennifer_moreno@fd.org

*Counsel for Plaintiff Keith Nelson*

Amy Karlin
Interim Federal Public Defender
Celeste Bacchi
Jonathan C. Aminoff
Deputy Federal Public Defenders
(213) 894-2854
celeste_bacchi@fd.org

*Counsel for Plaintiff Julius O. Robinson*

Paul F. Enzinna
Ellerman Enzinna PLLC
(202)753-5553
penzinna@ellermanenzinna.com

*Counsel for Plaintiff James H. Roane, Jr.*

Evan Miller
Vinson & Elkins LLP
(202) 639-6605
emiller@velaw.com

*Counsel for Bruce Webster*

 */s/Johnny Walker*
Assistant United States Attorney

*Counsel for Defendants*