**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| _____ )<br>In the Matter of the )<br>Federal Bureau of Prisons' )<br>Execution Protocol Cases )<br> )<br>LEAD CASE: _Roane et al. v._ )<br>_Barr_ )<br> )<br> )<br>THIS DOCUMENT )<br>RELATES TO: )<br> )<br>Roane, et al. v. Barr, 05-2337; )<br>Robinson v. Bar, 07-2145; )<br>Bourgeois v. Barr, 12-0782; )<br>Bernard v. Barr, 20-474 ) | Case No. 19-mc-0145 (TSC) |

**MOTION OF PLAINTIFFS BERNARD AND**
**HALL FOR LEAVE TO FILE MOTION FOR STAY OF EXECUTION PENDING**
**APPEAL**

In compliance with the Court's Minute Order of September 14, 2020, Plaintiffs Bernard

and Hall respectfully move for leave to file the accompanying motion to stay their executions

pending appeal.  Plaintiffs intend to appeal the Court's Orders disposing of Plaintiffs' Eighth

Amendment, FDCA, and FDPA claims (including the Orders of this Court entered on November

3, 2020 (ECF No. 305), September 20, 2020 (ECF No. 261), August 15, 2020 (ECF No. 193),

and August 20, 2020 (ECF No. 205)).  As Plaintiffs Bernard and Hall explain in the attached

motion, the Court's rulings were based on errors of law, including that the Court applied the

wrong legal standard in concluding that Plaintiffs had not adequately pleaded their Eighth

Amendment claim; applied the wrong legal standard in holding that Plaintiffs had not

demonstrated irreparable harm arising from the Defendants' violation of the FDCA; and erred in concluding that a voluntary statement from the Defendants was sufficient to comply with the FDPA.  Because the execution of Plaintiff Hall has been scheduled for November 19, 2020, and the execution of Plaintiff Bernard has been scheduled for December 10, 2020, Plaintiffs Hall and Bernard seek stays of execution to permit them to appeal this Court's rulings.  Absent stays, Plaintiffs will suffer irreparable harm because they may be executed in an excruciatingly painful manner before the appeal is adjudicated.

Counsel for Plaintiffs has consulted counsel for Defendants, who advises that the Defendants take no position on the motion for leave to file a motion for stay of execution. Counsel for the Defendants further advised that Defendants will oppose the stay motion itself.

WHEREFORE, Plaintiffs respectfully request that the Court grant them leave to file the accompanying motion for stays of execution.


Dated: November 5, 2020                          Respectfully Submitted,


                                                 */s/ Amy Lentz*
                                                 Amy Lentz (DC Bar No. 990095)
                                                 Steptoe & Johnson, LLP
                                                 1300 Connecticut Avenue NW
                                                 Washington, DC 20036
                                                 202.429.1350
                                                 Email: alentz@steptoe.com

                                                 *Counsel for Plaintiff Orlando Hall*

                                                 Ginger D. Anders (Bar No. 494471)
                                                 Jonathan S. Meltzer (Bar No. 888166546)
                                                 Brendan Gants (Bar No. 1031419)
                                                 MUNGER, TOLLES & OLSON LLP
                                                 1155 F Street N.W., Seventh Floor
                                                 Washington, D.C. 20004-1357

Ginger.anders@mto.com
Jonathan.meltzer_mto.com
Brendan.Gants@mto.com
(202) 220-1100

*Counsel for Plaintiff Brandon Bernard*

## CERTIFICATE OF SERVICE

I hereby certify that on November 5, 2020, I caused a true and correct copy of foregoing

to be served on all following counsel via the Court's CM/ECF system.

Joshua Christopher Toll
KING & SPALDING LLP
(202) 737-8616
Email: jtoll@kslaw.com

Margaret O'Donnell
(502) 320-1837
Email: mod@dcr.net

Gerald Wesley King, Jr.
FEDERAL DEFENDER PROGRAM, INC.
(404) 688-7530
Email: gerald_king@fd.org

Charles Fredrick Walker
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
(202) 371-7000
Email: Charles.Walker@skadden.com

Alexander C. Drylewski
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
(212) 735-2129
Email: Alexander.Drylewski@skadden.com
(*pro hac vice application forthcoming)

Celeste Bacchi
OFFICE OF THE PUBLIC DEFENDER
Capital Habeas Unit
(213) 894-1887
Email: celeste_bacchi@fd.org

Jonathan Charles Aminoff
FEDERAL PUBLIC DEFENDER,
CENTRAL DISTRICT OF CALIFORNIA
(213) 894-5374
Email: jonathan_aminoff@fd.org
Gary E. Proctor

Jonathan Kossak
Civil Division, Department of Justice
(202) 305-0612
Email: Jonathan.kossak@usdoj.gov

Jean Lin
Civil Division, Department of Justice
(202) 514-3716
Email: Jean.lin@usdoj.gov

Cristen Cori Handley
Civil Division, Department of Justice
(202) 305-2677
Email: Cristen.Handley@usdoj.gov

Paul F. Enzinna
ELLERMAN ENZINNA PLLC
(202) 753-5553
Email: penzinna@ellermanenzinna.com

Brandon David Almond
TROUTMAN SANDERS LLP
(202) 274-2864
Email: brandon.almond@troutmansanders.com

Donald P. Salzman
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
(202) 371-7983
Email: Donald.salzman@skadden.com

Steven M. Albertson
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
(202) 371-7112
Email: Steven.Albertson@skadden.com

LAW OFFICES OF GARY E. PROCTOR,
LLC
(410) 444-1500
Email: garyeproctor@gmail.com

Scott Wilson Braden
FEDERAL PUBLIC DEFENDER,
EASTERN DISTRICT OF ARKANSAS
(501) 324-6144
Email: Scott_Braden@fd.org

David Victorson
(202) 637-5600
HOGAN LOVELLS US LLP
Email: David.Victorson@hoganlovells.com

Jennifer Ying
MORRIS NICHOLS ARSHT & TUNNELL
LLP
(302) 658-9300
Email: Jying@mnat.com

Andres C. Salinas
WILMER CUTLER PICKERING HALE &
DORR LLP
(202) 663-6289
Email: Andres.Salinas@wilmerhale.com

Ryan M. Chabot
WILMER CUTLER PICKERING HALE &
DORR LLP
(212) 295-6513
Ryan.Chabot@WilmerHale.com

Dale Andrew Baich
OFFICE OF THE FEDERAL PUBLIC
DEFENDER
(602) 382-2816
Dale_Baich@fd.org

Johnny Walker
Assistant United States Attorney at United
States Attorney's Office
johnny.walker@usdoj.gov

Alexander Louis Kursman
OFFICE OF THE FEDERAL COMMUNITY
DEFENDER/EDPA
(215) 928-0520
Email: Alex_Kursman@fd.org

Robert A. Ayers
STEPTOE & JOHNSON LLP
(202) 429-6401
Email: rayers@steptoe.com

Shawn Nolan
FEDERAL COMMUNITY DEFENDER
OFFICE, EDPA
(215) 928-0520
Email: shawn_nolan@fd.org

Joseph William Luby
FEDERAL PUBLIC DEFENDER/EDPA
(215) 928-0520
Email: joseph_luby@fd.org

Pieter Van Tol
HOGAN LOVELLS US LLP
(212) 918-3000
Email: Pieter.Vantol@hoganlovells.com

Jonathan Jeffress
KAISER DILLON, PLLC
(202) 640-4430
Email: Jjeffress@kaiserdillon.com

Andrew Moshos
MORRIS NICHOLS ARSHT & TUNNELL
LLP
(302) 351-9197
Email: Amoshos@mnat.com

Alan E. Schoenfeld
WILMER CUTLER PICKERING HALE &
DORR LLP
(212) 937-7294
Email: Alan.Schoenfeld@wilmerhale.com

Bradley Humphreys
Civil Division, Department of Justice
bradley.humphreys@usdoj.gov

Scott Meisler
Criminal Division, Department of Justice
scott.meisler@usdoj.gov

Timothy Kane
FEDERAL COMMUNITY DEFENDER
OFFICE, EDPA
(215) 928-0520
Email: timothy_kane@fd.org

Dated:  November 5, 2020

Respectfully Submitted,

/s/ Amy Lentz
Amy Lentz (DC Bar No. 990095)
Steptoe & Johnson, LLP
1300 Connecticut Avenue NW
Washington, DC 20036
202.429.1350
Email - alentz@steptoe.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| In the Matter of the Federal Bureau of Prisons' Execution Protocol Cases,<br><br>LEAD CASE: *Roane et al. v. Barr*<br><br>THIS DOCUMENT RELATES TO:<br><br>*Roane, et al. v. Barr*, 05-2337<br><br>*Bernard v. Barr et al.*, 20-474 | Case No. 19-mc-0145 (TSC) |

## <u>PLAINTIFFS ORLANDO HALL AND BRANDON BERNARD'S MOTION FOR STAY OF EXECUTION PENDING APPEAL</u>

Plaintiffs Orlando Hall and Brandon Bernard are scheduled for execution on November 19, 2020 and December 10, 2020, respectively.  Pursuant to Fed. R. Civ. P. 62(d), Fed. R. App. P. 8(a)(1), and 28 U.S.C. § 1651, Mr. Hall and Mr. Bernard respectfully move the Court to stay their executions pending their appeal of the Court's orders dismissing their Eighth Amendment claim and denying injunctive relief on their Food, Drug, and Cosmetic Act ("FDCA") and  Federal Death Penalty Act ("FDPA") claims.  *See* Dkt. #193, 261.  Mr. Hall and Mr. Bernard intend to appeal, on an expedited schedule if possible, the Court's ruling that the Supreme Court's decision in *Barr v. Lee*, 140 S. Ct. 2590 (2020), required the Court to deny their Eighth Amendment claim, *see* Dkt. #193 at 3-5, and the Court's conclusion that they failed to establish that Defendants' violations of the FDCA and FDPA will cause them irreparable harm, *see* Dkt. #261 at 31, 35-41.  They therefore seek a stay of execution to preserve the status quo, which will ensure that their appeal may be fully and fairly litigated and will not be mooted by their executions.  *See Hawaii Hous. Auth. v. Midkiff*, 463 U.S. 1323, 1324 (1983).

1

**Background**

This case concerns whether Defendants' planned use of pentobarbital sodium ("pentobarbital") to execute Plaintiffs Hall and Bernard violates Plaintiffs Hall and Bernard's constitutional and statutory rights, thereby entitling them to injunctive relief.  Because the Court is familiar with recent proceedings in this matter, counsel recounts only the factual background relevant to the current motion.

On July 13, 2020, the Court preliminarily enjoined the scheduled executions of four Plaintiffs in this consolidated case, finding that Plaintiffs had demonstrated a likelihood of success on the merits of their Eighth Amendment claim challenging Defendants' 2019 execution protocol ("2019 Protocol").  *See* Dkt. #135 at 18.  Specifically, the Court found that using pentobarbital "poses a substantial risk of serious pain," *id.* at 13, and credited Plaintiffs' experts' conclusion that "there is a 'virtual medical certainty' that the 2019 Protocol will result in 'excruciating suffering'" by causing inmates to experience "sensations of drowning and suffocation" before they die.  *Id.* at 10-11.  "The D.C. Circuit declined to stay or vacate the court's injunction, but the Supreme Court vacated the injunction early in the morning of July 14, 2020."  Dkt. #261 at 6 (internal citation omitted).  In a short per curiam opinion, the Supreme Court concluded that Plaintiffs' evidence did not satisfy "the showing required to justify last-minute intervention by a Federal Court."  *Lee*, 140 S. Ct. at 2591.  Defendants executed one of the four Plaintiffs shortly thereafter.

On July 15, 2020, the Court preliminarily enjoined the executions of the three remaining Plaintiffs who had received execution dates, concluding that they were likely to succeed on the merits of their claim that the 2019 Protocol violates the FDCA.  *See* Dkt. #261 at 6.  As with the prior preliminary injunction, although the D.C. Circuit declined to stay or vacate the injunction, the Supreme Court vacated the injunction.  *See Barr v. Purkey*, No. 20A10, 2020 WL 4006821

(U.S. July 16, 2020) (per curiam).  The Supreme Court did not address the merits of Plaintiffs'

FDCA claim.  *Id.*  Defendants executed two of the three Plaintiffs later that week.

On August 15, 2020, the Court granted Defendants' motion to dismiss the Eighth

Amendment claim in the consolidated action brought by all Plaintiffs, including Hall and

Bernard.  The Court reasoned that under the Supreme Court's decision in *Lee*, "no amount of

new evidence will suffice to prove that the pain pentobarbital causes reaches unconstitutional

levels" *as a matter of law*.  Dkt. #193, at 4.  On August 27, 2020, the Court entered a permanent

injunction barring Defendants from executing Plaintiff Keith Nelson, finding that the

Defendants' use of pentobarbital for lethal injection without first satisfying the FDCA's

premarketing, labeling, and prescription requirements was unlawful.  Dkt. #261 at 7.  The D.C.

Circuit vacated the injunction and remanded for the Court to consider irreparable harm.  *Id.* at 7-

8.  On remand, the Court denied Mr. Nelson's request for a permanent injunction on his FDCA

claim, finding that he had failed to demonstrate irreparable harm.  *Id.* at 7.  Defendants executed

Mr. Nelson a few hours later.

On September 20, 2020, the Court granted summary judgment in favor of Plaintiffs'

FDCA claim.  The Court concluded that that "the pentobarbital the government intends to use in

executions is subject to the FDCA and fails to meet the premarketing, labeling, and prescription

requirements therein," and that because "the government's use, under the 2019 Protocol, of

pentobarbital . . . has not been prescribed and does not meet other statutory requirements of the

FDCA," the intended executions "constitute[] agency action that is contrary to law in violation of

the APA [Administrative Procedure Act]."  Dkt. #261 at 33; *see generally* Dkt. #213.

The Court, however, denied Plaintiffs' request for injunctive relief, finding that although

there was a "possibility that inmates will suffer excruciating pain during their executions,

Plaintiffs have not established that flash pulmonary edema is 'certain' or even 'likely' to occur

before an inmate is rendered insensate." *Id.* at 36.  The Court found that Plaintiffs did not

"completely discredit Dr. Antognini's testimony" and did not "completely undermine"

Dr. Crowns' conclusions that symptoms of distress during an execution can reflect agonal

breathing occurring "right before death but after the inmate is rendered unconscious." *Id.* at 38-

39.  Although the Court expressed skepticism about the conclusions voiced by Defendants'

experts, it also stated that it could not "weigh the evidence before it in a vacuum" and that the

Supreme Court in *Lee* had already addressed "most of the evidence Plaintiffs have presented in

this case and found that it was not enough to warrant injunctive relief." *Id.* at 39-40.  The Court

also granted Defendants' motion for summary judgment on Plaintiffs' FDPA claim because

Defendants had "proffer[ed]" that the Federal Bureau of Prisons "will consider, and *may* choose

to accommodate, the request of any Plaintiff sentenced by a federal court in Texas who wishes to

have an execution scheduled for after 6p.m" and there was no evidence that a failure to do so

would cause Plaintiffs irreparable harm.  *Id.* at 30-31 (emphasis added).

Plaintiffs, including Hall and Bernard, filed three Fed. R. Civ. P. 59(e) motions to alter or

amend the Court's judgments regarding their Eighth Amendment claim, *see* Dkt. #238, their

FDCA claim, *see* Dkt. #282, and their FDPA claim, *see* Dkt. #298.  Plaintiffs' motions included

new evidence that William LeCroy, whom Defendants executed on September 22, 2020, was

observed "heav[ing] uncontrollably" *almost immediately* after pentobarbital was administered

into his veins.  Dkt. #282-2; *see* Dkt. #282-1.  They also submitted a supplemental expert

declaration from Dr. Gail A. Van Norman, whose statements and credibility Defendants did not

challenge at the evidentiary hearing.

Dr. Van Norman stated in her declaration that "the respiratory efforts reported by

eyewitnesses during the execution of Mr. LeCroy *were not agonal respirations*" but instead "a

classic description of attempts to breathe against an obstructed airway," because "[t]here is no

heaving motion of the chest, alone or together with the abdomen" with agonal respiration.  Dkt. #282-4 at 8.  As Dr. Van Norman explained, the fact that "Mr. LeCroy's eyes were open while he was fighting for breath and closed only later" indicates that he was aware and experiencing flash pulmonary edema in the minutes before his death.  *Id.* at 10.  Furthermore, "[f]lash pulmonary edema is accompanied by excruciating symptoms of drowning: shortness of breath, anxiety, terror, and panic."  *Id.* at 2.  In short, Mr. LeCroy likely experienced extraordinary pain and suffering before dying.  The Court denied all three motions on November 3.  *See* Dkt. #305.

Defendants plan to execute Plaintiff Hall on November 19, and Plaintiff Bernard on December 10.  As with Mr. LeCroy and previous Plaintiffs, and in accordance with the 2019 Protocol, Defendants intend to execute both men using pentobarbital, administered without any opiate or other narcotic.  For the reasons set forth below, the Court should issue a stay of execution so Plaintiffs Hall and Bernard may pursue their meritorious arguments on appeal without threat of having the litigation mooted by their deaths.

## <u>Argument</u>

"[A] stay of execution is an equitable remedy."  *Hill v. McDonough*, 547 U.S. 575, 584 (2006).  "Thus, like other stay applicants, inmates seeking time to challenge the manner in which the State plans to execute them must satisfy all of the requirements for a stay, including a showing of a significant possibility of success on the merits."  *Id.*  As part of this inquiry, the Court must also assess "whether the applicant will be irreparably injured absent a stay," "whether issuance of the stay will substantially injure the other parties interested in the proceeding," and "where the public interest lies."  *Nken v. Holder*, 556 U.S. 418, 426 (2009).  The first two factors of this standard, likelihood of success on the merits and irreparable harm,

are the most critical.  *Id.* at 434.  Where, as here, the Government is the opposing party, the third

and fourth factors merge.  *Id.*

Plaintiffs Hall and Bernard have made the requisite showing on all four factors and are

entitled to a stay as a result.  *First*, they are likely to succeed on the merits of their claim that

Defendants' violation of the FDCA will cause them irreparable harm.  In addition, Plaintiffs Hall

and Bernard are likely to prevail on the merits of their claim that the Defendants' use of

pentobarbital to execute them will violate their Eighth Amendment rights, and that the Supreme

Court's decision in *Lee* did not create a categorical bar on all pentobarbital-related Eighth

Amendment challenges.  Plaintiffs Hall and Bernard are also likely to succeed on the merits of

their FDPA claim and corresponding request for injunctive relief.  *Second*, for the same reasons

Plaintiffs Hall and Bernard are likely to prevail on their appeal of the Court's decision to deny

them injunctive relief on their FDCA claim and dismiss their Eighth Amendment claim, they will

suffer irreparable harm absent a stay.  *Third*, the public has an important interest "in the humane

and constitutional application of [a] lethal injection statute."  *Nooner v. Norris*, 2006 WL

8445125, at *4 (E.D. Ark. June 26, 2006).  That interest is not outweighed by Defendants'

general interest in ensuring the finality of capital proceedings.  This is especially true where, as

here, there is substantial evidence that Defendants' chosen method of execution will cause

Plaintiffs Hall and Bernard to experience extraordinary pain and suffering in their final moments,

and the denial of a stay threatens to permanently extinguish Plaintiffs' meritorious claims.

Moreover, "the fact that the government has not—until now—sought to" schedule Plaintiffs'

executions "undermines any urgency surrounding" its need to do so.  *Oscorio-Martinez v. Att'y*

*Gen. U.S. of Am.*, 893 F.3d 153, 179 (3d Cir. 2018).

For seventeen years, Defendants did not execute or seek to execute any death-sentenced

prisoners, including Plaintiffs Hall and Bernard.  Under these circumstances especially, a stay of

a few weeks or months to fully and fairly litigate the merits of Plaintiffs Hall and Bernard's appeal will not substantially injure either the public or the Government.

## I.      Plaintiffs are Likely to Succeed on the Merits of Their Claims

### A.      Defendants' Violation of the FDCA Will Cause Plaintiffs Hall and Bernard Irreparable Harm

When the Court denied Plaintiffs' request for a permanent injunction on their FDCA claim, it focused on three points, in particular: (1) Plaintiffs' evidence did not establish that "flash pulmonary edema is 'certain' or even 'likely' to occur before an inmate is rendered insensate"; (2) despite identifying multiple gaps in Defendants' experts' testimony, Plaintiffs were unable to "completely undermine" the testimony of either Dr. Kendell Von Crowns or Dr. Joseph F. Antongnini, particularly in light of the Supreme Court's decision in *Lee*; and (3) it was not apparent to the Court how securing a prescription, as the FDCA requires, "would eliminate th[e] alleged harm" from being executed with pentobarbital.  Plaintiffs are likely to succeed on their claim on appeal that these conclusions are erroneous, and that, as a result, they are entitled to a permanent injunction on their FDCA claim.

### 1.      The Court erred by applying a heightened standard of irreparable harm to Plaintiffs' request for permanent injunctive relief

Although the Court credited Plaintiffs' evidence and was "concerned at the possibility that inmates will suffer excruciating pain during their executions," Dkt. #261 at 36, it ultimately denied Plaintiffs' request for injunctive relief because it found the evidence was insufficient to show that the harm of flash pulmonary edema is "likely, let alone 'certain' or 'imminent,'" *id.* at 40 (alteration in original) (citing *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985)). This was error.

The test for irreparable harm does not demand absolute certainty that the threatened harm will occur.  As *Wisconsin Gas* makes clear, the irreparable harm test requires two separate but related showings: first, "the injury must be both certain and great; it must be actual and not

7

theoretical"; and second, the injury must be "likely" to occur.  *Wis. Gas Co.*, 758 F.2d at 674.

By requiring Plaintiffs to prove that pulmonary edema is *certain* to *occur* before an inmate is

rendered insensate, the Court erroneously conflated the *type* of injury required for injunctive

relief (a concrete one) with the *quantum of proof* required (merely "likely," not "certain"), and

imposed an unduly heightened burden on Plaintiffs.

Properly applied, it is apparent that Plaintiffs' evidence amply satisfies both components

of the *Wisconsin Gas* test for irreparable harm.  There can be no doubt that flash pulmonary

edema is a concrete harm; both Drs. Van Norman and Von Crowns agree that flash pulmonary

edema is an acute and painful medical condition that can cause shortness of breath, wheezing,

gasping, and coughing.  *See* Dkt. #246-1 at 4-5 (Declaration of Dr. Von Crowns); Dkt. #249-1 at

5 (Additional Supplemental Report of Dr. Van Norman).  The only disagreement is whether

Plaintiffs are *likely* to experience flash pulmonary edema while sensate.  But here, again,

*Wisconsin Gas* is instructive: as long as a movant has "provide[d] proof that the harm has

occurred in the past and is likely to occur again," he or she has satisfied their burden of proving

irreparable harm.  758 F.2d at 674.

In this case, Plaintiffs Hall and Bernard presented clear evidence from Dr. Van Norman

that *all* prisoners who have been executed by legal injection with pentobarbital and who have

had their lungs properly examined and documented after an autopsy showed signs of flash

pulmonary edema.  *See* Dkt. #249-1 at 4.  They also presented evidence that flash pulmonary

edema "occurs virtually immediately during and after high-dose barbiturate injection" and that it

is "extremely likely" all of the aforementioned prisoners "were aware and experienced sensations

of drowning and suffocation as they died."  Dkt. #24 at 36.  More recently, Plaintiffs introduced

evidence that when Mr. LeCroy was executed with pentobarbital, his eyes remained open even as

his torso "began to jerk and contract uncontrollably" and he "grasp[ed] for air"—"classic

motion[s] of chest-abdomen paradox" associated with flash pulmonary edema.  Dkt. #282-1, 282-2, 282-4 at 10.  Against this evidence, the Court found only that Defendants' expert Dr. Crowns was not "completely undermined" and that Defendants' expert Dr. Antognini was not "unqualified," though "his reports and testimony did not carry much weight."  Dkt. #261 at 38-39.  Applying the proper standard from *Wisconsin Gas*, the Court's acceptance of Plaintiffs' experts' testimony and the lack of credit it gave to Defendants' experts together show that irreparable harm to Hall and Bernard is "likely."

> **2.      The Court erred by partially abdicating its factfinding responsibilities and requiring Plaintiffs to completely undermine Defendants' evidence**

In addition to applying the wrong standard for irreparable harm, the Court erred twice during the factfinding process.  First, the Court misread the Supreme Court's decisions in *Bucklew v. Precythe*, 139 S. Ct. 1112 (2019) and *Lee* to foreclose the possibility that Plaintiffs' evidence was sufficient to show irreparable harm.  Second, the Court improperly required Plaintiffs to "completely undermine" Dr. Crowns' conclusions to demonstrate irreparable harm.

"The importance of thorough and accurate fact-finding at the trial court level of the judicial process cannot be overstated."  *Johnson v. Greater Se. Cmty Hosp. Corp.*, 1996 WL 377147, at *3 (D.D.C. June 24, 1996).  "The trial judge is the most important agency of the judicial branch of the government precisely because on it rests the responsibility of ascertaining the facts. . . . For that very reason every effort should be made to render it as adequate as it humanly can be."  *Id.* (quoting *United States v. Forness*, 125 F.2d 928, 943 (2d Cir. 1942)).  Thus, a district court is generally not free to delegate its factfinding responsibilities by substituting another court or party's factual findings for its own in the first instance.  *See* Fed. R. Civ. P. 52(a)(1) ("In an action tried on the facts without a jury or with an advisory jury, the court *must* find the facts specially." (emphasis added)).

9

Here, however, the Court appears to have partially abdicated its factfinding responsibilities out of a mistaken belief that the Supreme Court's decisions in *Bucklew* and *Lee* dictated certain factual and credibility findings.  Thus, despite the Court's concern that Dr. Antognini's research was "rather old" and dealt primarily with animals as opposed to humans, the Court gave his reports and testimony some weight simply because the Supreme Court had relied on Dr. Antognini's testimony on the effects of pentobarbital in *Bucklew*.  Dkt. #261 at 39.  But *Bucklew* was a different case involving a different set of facts and expert evidence.  Indeed, the Supreme Court stressed in its discussion of the pentobarbital evidence in *Bucklew* that the plaintiff's expert, in contrast to Dr. Antognini, "was evasive" and "crossed up the numbers" in his testimony.  139 S. Ct. at 1132.  No such issues have arisen in this case with respect to Dr. Van Norman's many declarations, and Defendants did not even question Dr. Van Norman.

The Court also erred when it denied Plaintiffs' claims in reliance on the fact that "[t]he Supreme Court . . . already addressed most of the evidence Plaintiffs have presented in this case and found that it was not enough to warrant injunctive relief."  Dkt. #261 at 39-40 (citing *Lee*, 140 S. Ct. at 2592).  In doing so, the Court misread the Supreme Court's decision in *Lee*, which was limited to the particular procedural posture of the case, *see infra* Part I.B., and emphasized that the "competing expert testimony" was insufficient to "justify *last-minute* intervention by a Federal Court."  *Lee*, 140 S. Ct. at 2591 (emphasis added).  Here, by contrast, Plaintiffs, including Hall and Bernard, filed their motions for partial summary judgment and permanent injunctive relief *months* before Hall and Bernard's scheduled execution dates.  *See* Dkt. #236 (filed Sept. 9, 2020).  Furthermore, the evidence before the Supreme Court in *Lee* was substantially different.  In July, the Supreme Court did not have the benefit of Plaintiffs' cross-examinations of Drs. Crowns and Antognini.  *See* Dkt. #261 at 38.  Nor did it have evidence pertaining to Mr. LeCroy's execution.  By giving the Supreme Court's decisions in *Bucklew* and

*Lee* controlling weight on the question of irreparable harm, the Court failed to conduct an independent analysis of the facts and evidence before it as required by Federal Rule of Civil Procedure 52(a).

In any event, to the extent the Court independently assessed the credibility of Drs. Crowns and Van Norman, it erred by requiring Plaintiffs to "*completely* undermine" Dr. Crowns' testimony to prevail on their request for injunctive relief.  Dkt. #261 at 38 (emphasis added).  As the Court acknowledged in its opinion, Plaintiffs identified a serious flaw in Dr. Crowns' testimony, namely that "he was unaware of more recent news reports from the executions of Lee, Honken, Purkey, and Mitchell describing the inmates as showing labored breathing, gasping for breath, or heaving," which contradicted the news reports on which Dr. Crowns relied to conclude that executed inmates were insensate when they experienced pulmonary edema.  Dkt. #261 at 38.  Notwithstanding this serious problem with Dr. Crowns' testimony, and other evidence Plaintiffs introduced showing flaws in his conclusions, the Court appeared to have considered Dr. Crowns' testimony to be *as* credible as Dr. Van Norman's simply because Plaintiffs did not "completely undermine" Dr. Crowns' conclusions.  *Id.*

This was error.  Plaintiffs were not required to completely undermine Defendants' evidence to prevail on their request for injunctive relief.  As discussed earlier, *see* Part I.A.1, a plaintiff need only show that he or she is *likely* to suffer irreparable harm.  *See Wis. Gas Co.*, 758 F.2d at 674.  Plaintiffs were therefore entitled to injunctive relief as long as they could show that Dr. Van Norman's conclusions regarding flash pulmonary edema were *generally* more credible than those of Dr. Crowns' regarding agonal breathing.  That is precisely what Plaintiffs did.  Plaintiffs introduced evidence that Dr. Crowns was a pathologist and therefore not qualified to testify about the effects of pentobarbital on the brain.  *See* Dkt. #282-4 at 10-11; Dkt. #282-5 at 3.  Plaintiffs also introduced evidence that many of the inmates who were executed exhibited

physical responses prior to dying that were in no way consistent with the "slow, periodic, deep agonal respiration of cardiac arrest," Dkt. #282-4 at 10—evidence Dr. Crowns admitted he did not consider when advancing his hypothesis of agonal breathing, *see* Dkt. #261 at 38.  Plaintiffs thus met their burden of showing that injecting them with pentobarbital will cause them to suffer irreparable harm in the form of excruciating pain.

### 3. The Court failed to appreciate that requiring Defendants to comply with the FDCA would decrease the likelihood that Plaintiffs will suffer flash pulmonary edema before dying

As part of its rationale for denying Plaintiffs' request for injunctive relief, the Court stated that it was "not apparent how securing a prescription [in conformance with the FDCA] would eliminate this alleged harm [of flash pulmonary edema]."  Dkt. #261 at 36.  Because "the prescription requirement does not in and of itself ensure that Plaintiffs will . . . be protected from flash pulmonary edema during their executions," the Court did not consider injunctive relief appropriate.  *Id.*  This, too, was error.

The question is not whether unprescribed pentobarbital is more likely than prescribed pentobarbital to induce flash pulmonary edema.  Instead, the question is whether the need for a prescription from a licensed doctor will require Defendants to include a pain-relieving drug along with pentobarbital as Plaintiffs and their experts have recommended.  *See* Dkt. #236 at 13; Dkt. #248 at 3-4.  As matters currently stand, Defendants can bypass consulting medical professionals altogether when executing death-sentenced individuals such as Plaintiffs Hall and Bernard, which this Court has found to violate the FDCA.  Should this Court require compliance with the law, however, Defendants will be required to consult first with a licensed doctor, who will assess how best to mitigate the risk that executed persons will experience sensations of suffocation and drowning prior to death and may well prescribe opioids or a similar analgesic as a condition of prescribing pentobarbital for use in an execution.  *See* Dkt. #92 at 31-32; Dkt. #25 at 2-7.

Plaintiffs are therefore likely to succeed on their claims on appeal that the Court erred in denying them injunctive relief on their FDCA claim.

**B.      The Supreme Court's Decision in *Lee* Did Not Create a Categorical Bar to Plaintiffs' Eighth Amendment Claim as a Matter of Law**

Plaintiffs are also likely to succeed on the merits of their claim on appeal that the Court erred when it dismissed Plaintiffs Hall and Bernard's Eighth Amendment claim as a matter of law.  The Court concluded that the Supreme Court's decision in *Lee required* it to dismiss Plaintiffs' Eighth Amendment claim because under *Lee*, "the use of pentobarbital will withstand Eighth Amendment scrutiny, *no matter the evidence of excruciating pain*."  Dkt. #193 at 5 (emphasis added).  Thus, even if the Court had "found in favor of Plaintiffs on all alleged facts, there would be no Eighth Amendment violation" because, as the Court understood *Lee*, the use of pentobarbital in executions is constitutional *as a matter of law.  Id.*

 This sweeping reading of *Lee*, a summary per curiam opinion issued without full briefing or argument, finds no basis in the Supreme Court's opinion.  In fact, *Lee acknowledged* that Plaintiffs had introduced new evidence "suggesting that pentobarbital causes prisoners to experience 'flash pulmonary edema,' a form of respiratory distress that temporarily produces the sensation of drowning or asphyxiation," but held only that the evidence before the Court at that time was insufficient to "justify *last-minute intervention* by a Federal Court."  140 S. Ct. at 2591 (emphasis added).  As the Supreme Court made clear, its decision to vacate the Court's preliminary injunction was the product of its view that "'last-minute stays . . . should be the extreme exception, not the norm."  *Id.*  The decision was not a blanket ruling on the constitutionality of pentobarbital itself, and nowhere claimed to be.  *Id.*  Indeed, the Supreme Court expressly characterized its recitation of the history of pentobarbital in executions as mere "backdrop."  *Id.*  The Supreme Court's legal holding in *Lee* was in fact much more limited than the Court believed: *Lee* held only that competing evidence of flash pulmonary edema is

insufficient to support a *last-minute stay* of execution.  *Id.*  If the Supreme Court had intended to conclude that pentobarbital is always constitutional as a matter of law, it would have said so. Instead, it chose to narrowly focus on the fact that the Court issued preliminary injunctive relief "[h]ours before the first execution was set to take place."  *Id.* at 2591.

What is more, the Supreme Court's focus in *Lee* on Defendants' "competing expert testimony . . . indicating that any pulmonary edema occurs only *after* the prisoner has died or been rendered fully insensate," *id.*, suggests that if pulmonary edema occurs *before* death or unconsciousness, the pain and suffering it causes *could* support an Eighth Amendment claim. That is precisely what Plaintiffs have pleaded in their amended complaint, *see* Am. Compl. ¶¶ 72-86, and it was more than sufficient to survive Defendants' motion to dismiss. *See  R.S. v. District of Columbia*, 292 F. Supp. 2d 23, 28 (D.D.C. 2003) ("[T]he threshold to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is relatively low."); *see also Odom v. Dist. of Columbia*, 248 F. Supp. 3d 260, 264 (D.D.C. 2017) (citation omitted) ("[A] court must construe the complaint in the light most favorable to the plaintiffs and 'must assume the truth of all well-pleaded allegations.'").

Plaintiffs Hall and Bernard are therefore likely to succeed on the merits of their appeal that the Court erred in granting Defendants' motion to dismiss Plaintiffs' Eighth Amendment claim.

**C.     The FDPA Requires Defendants to Comply with Applicable State Law in Texas and Their Failure to Do So Will Cause Plaintiffs Hall and Bernard Irreparable Harm**

The Court correctly determined that the FDPA, which requires United States marshals to "supervise implementation of the [capital] sentence in the manner prescribed by the law of the State in which the sentence is imposed," 18 U.S.C. § 3596(a), requires Defendants to comply with all relevant provisions of Texas law governing executions.  *See* Dkt. #261 at 30-31.  As relevant here, Texas Code of Criminal Procedure Article 43.14(a) provides that executions may

14

only take place "at any time after the hour of 6 p.m. on the day set for the execution." Thus, Defendants cannot, consistent with the FDPA, execute Plaintiffs Hall and Bernard before 6 p.m. or after midnight on November 19 and December 10, respectively. Notwithstanding the FDPA's clear command, however, the Court accepted Defendants' promise that they would "consider" and choose whether to accommodate a request by Plaintiffs to be executed after 6 p.m. as a matter of "administrative grace," and granted them summary judgment on the basis that the issue did not pose "a controversy." Dkt. #261 at 30. The Court also concluded that even if Defendants violated the FDPA, it was unlikely that the violation would cause Plaintiffs irreparable harm. *Id.* In so concluding, the Court committed two distinct errors.

First, Defendants *did not commit* to complying with the FDPA and Article 43.14(a). Defendants' very reluctance to adhere to these statutory requirements creates a controversy between Plaintiffs—who seek assurance that Defendants will not execute them in the early morning hours if litigation prevents their execution from occurring before midnight on their scheduled execution dates[1]—and Defendants, who have twice flouted the FDPA by ignoring comparable requirements from other jurisdictions and withheld any assurance that they will comply here. *See* Dkt. #287 at 5-6.

Second, any violation by Defendants of the FDPA under these circumstances will cause Plaintiffs Hall and Bernard irreparable harm. As events currently stand, Plaintiffs intend to pursue an appeal before the D.C. Circuit—and, if necessary, the Supreme Court of the United States. It is thus likely that they will be litigating up to the date of their scheduled executions, and experience indicates that such litigation may continue into the early morning hours of

---

[1] Plaintiff Hall has requested that he be executed after 6 p.m., and Plaintiff Bernard will do so. Pursuant to Texas law, if Defendants do not execute Plaintiffs on the scheduled dates of their executions, new execution dates would need to be set, and those dates must be ninety-one days in the future. Act of May 29, 2015, 84th Leg., R.S., ch. 951, 2015 Tex. Sess. Law Serv. 951." (West).

November 20 and December 11.  In the event Defendants execute either Plaintiff during these early morning hours, they will have mooted any meritorious claim for relief Plaintiffs have—a quintessential example of irreparable harm.  *See C.G.B. v. Wolf*, No. 20-CV-1072 (CRC), 2020 WL 2935111, at *27 (D.D.C. June 2, 2020) ("As many courts have recognized . . . the possibility of death, is the prototypical irreparable harm.").  Plaintiffs Hall and Bernard are thus likely to succeed on the merits of their appeal that the Court erred in granting summary judgment to Defendants on Plaintiffs' FDPA claim.

## II.    Absent a Stay, Plaintiffs will Suffer Irreparable Harm

The Supreme Court recognized in *Nken* that "a stay pending appeal certainly has some functional overlap with an injunction."  556 U.S. at 428.  Both, for instance, require the moving party to prove the existence of irreparable harm absent equitable relief.  *See id.* at 435; *eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).  Thus, for many of the reasons Plaintiffs are likely to succeed on the merits of their appeal, *see* Part I, *supra*, they have also shown a likelihood of irreparable harm absent a stay.

Courts across the country have repeatedly held that a plaintiff suffers irreparable harm if he will be executed before his meritorious challenges to the method of execution can be fully and fairly litigated.  *See, e.g.*, *Nooner v. Norris*, No. 5:06cv00110 SWW, 2006 WL 8445125, at *3 (E.D. Ark. June 26, 2006) (plaintiff showed threat of irreparable harm because if he suffered pain during his execution, as alleged, the injury would never be rectified); *Cooey v. Taft*, 430 F. Supp. 2d 702, 708 (S.D. Ohio 2006) (same); *Brown v. Beck*, No. 5:06CT3018 H, 2006 WL 3914717, at *7 (E.D.N.C. Apr. 7, 2006) (same).  The evidence in this case shows that the risk of irreparable harm is just as great, if not greater, than the aforementioned list of cases.

As explained above, Plaintiffs introduced evidence from Dr. Van Norman, a cardiovascular and perioperative expert whose credibility Defendants did not challenge, who

explained that there is a "virtual medical certainty that most, if not all prisoners"—including Plaintiffs Hall and Bernard—"will experience excruciating suffering, including sensations of drowning and suffocation," upon being injected with 5 grams of pentobarbital. *See* Dkt. #24 at 7, 31-34, 36. Dr. Van Norman drew upon her wealth of clinical knowledge as well as studies of patients undergoing anesthesia to opine that "a single dose of barbiturate is insufficient to ablate awareness, including the sensations of pain and the extreme suffering of suffocation and asphyxiation that will occur" during the injection. *Id.* at 31.

Most recently, Plaintiffs introduced evidence from Mr. LeCroy's execution tending to show that he was sensate and responsive when his airway was obstructed and his lungs filled with fluid. *See* Dkt. #282-4 at 10-11. This evidence—which included first-hand accounts from Mr. LeCroy's execution that he heaved for breath and gasped for air almost immediately upon being injected—was wholly consistent with Dr. Van Norman's explanation that flash pulmonary edema tends to occur when the injected individual is *still aware and capable of processing pain*. *Id.* at 9-11. Indeed, even Dr. Crowns admitted that if inmates "were reacting to the effects of pulmonary edema, they would be observed to have shortness of breath (dyspnea), increased respiration (tachypnea), wheezing, gasping, coughing, noisy labored breathing." Dkt. #246-1 at 4. But as Dr. Van Norman made clear, outward signs of distress are not required to confirm suffering from flash pulmonary edema while conscious. Dkt. #24 at 24. Past autopsies of executed inmates consistently show the presence of pulmonary congestion and pulmonary edema. *Id.* at 35-36. Critically, "[e]xperience in humans and animal models indicate that flash pulmonary edema occurs virtually immediately during and after high-dose barbiturate injection, and well within a time frame *before* peak drug effects on the brain have occurred"—i.e., before an individual is rendered insensate. *Id.* at 36.

To constitute irreparable harm, "the harm must be 'certain and great', 'actual and not theoretical', and so 'imminen[t] that there is a clear and present need for equitable relief to prevent irreparable harm.'"  *League of Women Voters of U.S. v. Newby¸* 838 F.3d 1, 7-8 (D.C. Cir. 2016) (quoting *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. 2016)).  Plaintiffs' evidence, which has only grown in strength with each additional execution, more than meets the criteria for irreparable harm.  Absent the Court's intervention, Plaintiffs Hall and Bernard will be executed by a method that is likely to cause them to endure "one of the most powerful, excruciating feelings known to man"—prolonged suffocation.  Dkt. #24 at 34.  And there is no way to undo that harm once inflicted.  This is the very definition of irreparable harm. *See, e.g.*, *Banks v. Booth*, 459 F. Supp. 3d 143, 159 (D.D.C. 2020) ("The Court concludes that Plaintiffs' risk of contracting COVID-19 and the resulting complications, including the possibility of death, is the prototypical irreparable harm."); *Dean v. Coughlin*, 623 F. Supp. 392, 405 (S.D.N.Y. 1985) (describing pain as a "form[] of irreparable harm").

## III.    The Balance of the Equities and Public Interest Favor a Stay

Under the circumstances presented here, the balance of equities and public interest likewise favor a stay.  "Applying the law in a way that violates the Constitution is *never* in the public's interest."  *Minney v. U.S. Office of Pers. Mgmt.*, 130 F. Supp. 3d 225, 236 (D.D.C. 2015).  In addition, there is an "important public interest in the humane and constitutional application of [a] lethal injection statute."  *Nooner*, 2006 WL 8445125, at *4; *Cooey*, 430 F. Supp. 2d at 708.  This is especially true where, as here, there is powerful evidence that Defendants' chosen method of execution will cause Plaintiffs Hall and Bernard to endure extraordinary pain and suffering in their final moments, and the denial of a stay threatens to permanently extinguish Plaintiffs' meritorious claims.

That interest is not outweighed by Defendants' general interest in ensuring the finality of capital proceedings.  For seventeen years, Defendants did not execute or seek to execute any death-sentenced prisoners, including Plaintiffs Hall and Bernard.  Once Defendants announced their intent to do so, Plaintiffs swiftly moved for injunctive relief.[2]  A stay of a few weeks or months to fully and fairly litigate the merits of Plaintiff Hall and Bernard's appeal will not substantially injure either the public or the Government where, as here, the Government's newfound urgency emerged only after nearly two decades of inaction.  *See Oscorio-Martinez*, 893 F.3d at 179 ("[T]he fact that the Government has not—until now—sought to remove SIJ applicants, much less designees, undermines any urgency surrounding Petitioners' removal.").

## Conclusion

For the foregoing reasons, Plaintiffs Hall and Bernard respectfully move the Court to stay their scheduled executions pending their appeal of the Court's orders of August 15, 2020 and September 20, 2020.

Dated: November 5, 2020                     Respectfully Submitted,

/s/ Amy Lentz
Amy Lentz (DC Bar No. 990095)
Steptoe & Johnson, LLP
1300 Connecticut Avenue NW
Washington, DC 20036
202.429.1350
Email: alentz@steptoe.com

*Counsel for Plaintiff Orlando Hall*

Ginger D. Anders (Bar No. 494471)
Jonathan S. Meltzer (Bar No. 888166546)
Brendan Gants (Bar No. 1031419)

---

[2] Because Defendants consented to an injunction in 2007 as to Mr. Hall, he requested that the Court leave that injunction in place.

MUNGER, TOLLES & OLSON LLP
1155 F Street N.W., Seventh Floor
Washington, D.C. 20004-1357
Ginger.anders@mto.com
Jonathan.meltzer_mto.com
Brendan.Gants@mto.com
(202) 220-1100

*Counsel for Plaintiff Brandon Bernard*

## CERTIFICATE OF SERVICE

I hereby certify that on November 5, 2020, I caused a true and correct copy of foregoing

to be served on all following counsel via the Court's CM/ECF system.

Joshua Christopher Toll
KING & SPALDING LLP
(202) 737-8616
Email: jtoll@kslaw.com

Margaret O'Donnell
(502) 320-1837
Email: mod@dcr.net

Gerald Wesley King, Jr.
FEDERAL DEFENDER PROGRAM, INC.
(404) 688-7530
Email: gerald_king@fd.org

Charles Fredrick Walker
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
(202) 371-7000
Email: Charles.Walker@skadden.com

Alexander C. Drylewski
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
(212) 735-2129
Email: Alexander.Drylewski@skadden.com
(*pro hac vice application forthcoming)

Celeste Bacchi
OFFICE OF THE PUBLIC DEFENDER
Capital Habeas Unit
(213) 894-1887
Email: celeste_bacchi@fd.org

Jonathan Charles Aminoff
FEDERAL PUBLIC DEFENDER,
CENTRAL DISTRICT OF CALIFORNIA
(213) 894-5374
Email: jonathan_aminoff@fd.org
Gary E. Proctor
LAW OFFICES OF GARY E. PROCTOR,
LLC
(410) 444-1500
Email: garyeproctor@gmail.com

Scott Wilson Braden
FEDERAL PUBLIC DEFENDER,

Jonathan Kossak
Civil Division, Department of Justice
(202) 305-0612
Email: Jonathan.kossak@usdoj.gov

Jean Lin
Civil Division, Department of Justice
(202) 514-3716
Email: Jean.lin@usdoj.gov

Cristen Cori Handley
Civil Division, Department of Justice
(202) 305-2677
Email: Cristen.Handley@usdoj.gov

Paul F. Enzinna
ELLERMAN ENZINNA PLLC
(202) 753-5553
Email: penzinna@ellermanenzinna.com

Brandon David Almond
TROUTMAN SANDERS LLP
(202) 274-2864
Email: brandon.almond@troutmansanders.com

Donald P. Salzman
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
(202) 371-7983
Email: Donald.salzman@skadden.com

Steven M. Albertson
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
(202) 371-7112
Email: Steven.Albertson@skadden.com

Alexander Louis Kursman
OFFICE OF THE FEDERAL COMMUNITY
DEFENDER/EDPA
(215) 928-0520
Email: Alex_Kursman@fd.org

Robert A. Ayers
STEPTOE & JOHNSON LLP

EASTERN DISTRICT OF ARKANSAS
(501) 324-6144
Email: Scott_Braden@fd.org

David Victorson
(202) 637-5600
HOGAN LOVELLS US LLP
Email: David.Victorson@hoganlovells.com

Jennifer Ying
MORRIS NICHOLS ARSHT & TUNNELL
LLP
(302) 658-9300
Email: Jying@mnat.com

Andres C. Salinas
WILMER CUTLER PICKERING HALE &
DORR LLP
(202) 663-6289
Email: Andres.Salinas@wilmerhale.com

Ryan M. Chabot
WILMER CUTLER PICKERING HALE &
DORR LLP
(212) 295-6513
Ryan.Chabot@WilmerHale.com

Dale Andrew Baich
OFFICE OF THE FEDERAL PUBLIC
DEFENDER
(602) 382-2816
Dale_Baich@fd.org

Johnny Walker
Assistant United States Attorney at United
States Attorney's Office
johnny.walker@usdoj.gov

Bradley Humphreys
Civil Division, Department of Justice
bradley.humphreys@usdoj.gov

Scott Meisler
Criminal Division, Department of Justice
scott.meisler@usdoj.gov

(202) 429-6401
Email: rayers@steptoe.com

Shawn Nolan
FEDERAL COMMUNITY DEFENDER
OFFICE, EDPA
(215) 928-0520
Email: shawn_nolan@fd.org

Joseph William Luby
FEDERAL PUBLIC DEFENDER/EDPA
(215) 928-0520
Email: joseph_luby@fd.org

Pieter Van Tol
HOGAN LOVELLS US LLP
(212) 918-3000
Email: Pieter.Vantol@hoganlovells.com

Jonathan Jeffress
KAISER DILLON, PLLC
(202) 640-4430
Email: Jjeffress@kaiserdillon.com

Andrew Moshos
MORRIS NICHOLS ARSHT & TUNNELL
LLP
(302) 351-9197
Email: Amoshos@mnat.com

Alan E. Schoenfeld
WILMER CUTLER PICKERING HALE &
DORR LLP
(212) 937-7294
Email: Alan.Schoenfeld@wilmerhale.com

Timothy Kane
FEDERAL COMMUNITY DEFENDER
OFFICE, EDPA
(215) 928-0520
Email: timothy_kane@fd.org

Dated: November 5, 2020                    Respectfully Submitted,


                                           /s/ Amy Lentz
                                           Amy Lentz (DC Bar No. 990095)

22

Steptoe & Johnson, LLP
1300 Connecticut Avenue NW
Washington, DC 20036
202.429.1350
Email - alentz@steptoe.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| In the Matter of the Federal Bureau of Prisons' Execution Protocol Cases, | Case No. 19-mc-0145 (TSC) |
| LEAD CASE: *Roane et al. v. Barr* | |
| THIS DOCUMENT RELATES TO: | |
| *Roane, et al. v. Barr*, 05-2337 | |
| *Bernard v. Barr et al.*, 20-474 | |

**[PROPOSED] ORDER GRANTING STAY OF EXECUTION PENDING APPEAL**

Upon consideration of Plaintiffs Hall and Bernard's Motion for Stay of Execution

Pending Appeal, and for good cause shown, it is hereby **ORDERED** that Plaintiffs Hall and

Bernard's executions shall be stayed until such time as their appeal from this Court's orders on

August 15, 2020 and September 20, 2020, is resolved, or until further order of this Court.

**SO ORDERED** this ___ day of November, 2020.

_____
TANYA S. CHUTKAN
United States District Judge