IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In the Matter of the Federal Bureau of Prisons' Execution Protocol Cases,<br><br>LEAD CASE: *Roane et al. v. Barr*<br><br>THIS DOCUMENT RELATES TO:<br><br>*Roane, et al. v. Barr*, 05-2337<br><br>*Bernard v. Barr et al.*, 20-474 | Case No. 19-mc-0145 (TSC) |

## REPLY OF PLAINTIFFS ORLANDO HALL AND BRANDON BERNARD IN SUPPORT OF MOTION FOR STAY OF EXECUTION PENDING APPEAL

Plaintiffs Orlando Hall and Brandon Bernard sought injunctive relief promptly after Defendants revealed the new federal execution protocol in 2019 and have diligently sought to litigate their claims expeditiously on the merits, including by requesting an expedited briefing schedule for their appeal. Defendants have made clear, however, that absent a stay—or perhaps an extraordinarily fast decision on the merits appeal in Plaintiffs' favor, if it comes with an injunction[1]—Defendants will proceed to execute Plaintiffs Hall and Bernard under a protocol that violates the FDCA and exposes them to the risk of "suffer[ing] excruciating pain during their executions." ECF No. 305 at 5.

The Court should issue a stay to preserve the status quo so that Plaintiffs' appeal may be fully and fairly litigated on the merits, rather than mooted by their executions. Plaintiffs

---

[1] Remarkably, Defendants indicated to the D.C. Circuit earlier today that even an order to vacate the execution protocol as contrary to law pursuant to the Administrative Procedure Act, 5 U.S.C. § 706(2)(A), would not stop them from carrying out Plaintiffs' executions—presumably using the procedures contained in the vacated protocol—unless they are specifically enjoined from doing so. *See* Opposition to Emergency Motion for a Stay of Execution Pending Appeal at 16, *In re Federal Bureau of Prisons' Execution Protocol Cases*, D.C. Cir. No. 20-5329 (filed Nov. 13, 2020).

respectfully submit that they are likely to succeed on the merits of their claims on appeal—moreover, under these circumstances the balance of the equities and the public interest weigh heavily in favor of granting a stay.

## Argument

I. **Plaintiffs are Likely to Succeed on the Merits of Their Claims**

   A. **Defendants' Violation of the FDCA Will Cause Plaintiffs Hall and Bernard Irreparable Harm**

Plaintiffs respectfully submit that they are likely to succeed on the merits of their claims because the Court held them to an unduly heightened standard for showing irreparable harm, partially abdicated its factfinding responsibilities, and failed to appreciate how an injunction would protect them from irreparable harm. ECF No. 310 at 7-16. Defendants offer several responses, but all are unavailing.

   1. **The Court erred by applying a heightened standard of irreparable harm to Plaintiffs' request for permanent injunctive relief**

Defendants first assert that the Court correctly applied the standard for injunctive relief by requiring proof that Movants would *certainly*—not just likely—experience flash pulmonary edema while sensate. ECF No. 311 at 4. In support of their argument, however, they point to language in *Wisconsin Gas Co. v. FERC*, 758 F.2d 669 (D.C. Cir. 1985) describing "the 'requirement that the movant substantiate the claim that irreparable injury is "*likely*" to occur.'" ECF No. 311 at 4 (emphasis added) (quoting *Wis. Gas*, 758 F.2d at 674). It should go without saying that proof of absolute certainty of harm is not the same as proof of likelihood of harm. *See Michigan v. U.S. Army Corps or Eng'rs*, 667 F.3d 765, 788 (7th Cir. 2011) ("[T]here must be more than a mere possibility that the harm will come to pass . . . but the alleged harm need not be . . . certain to occur before a court may grant relief.").

2

Moreover, even under Defendants' view of the law, a plaintiff can make the requisite showing of irreparable harm in one of two ways: either by providing proof that the harm is certain to occur in the future *or* by providing proof that the harm "*has occurred* in the past . . . and is *likely* to occur again." ECF No. 311 at 4 (quoting *Wis. Gas*, 758 F.2d at 674); *see also 12 Percent Logistics v. Unified Carrier Registration Plan Bd.*, 280 F.Supp.3d 118, 122 (D.D.C. 2017) ("[A] party cannot rely on bare allegations of harm, but instead must come forward with proof that the harm has occurred in the past and is likely to occur again, or proof indicating that the harm is certain to occur in the near future." (internal quotation marks omitted)). That is precisely what Plaintiffs did.

Plaintiffs introduced compelling evidence that *all* prisoners who were examined after being executed by lethal injection with pentobarbital showed signs of flash pulmonary edema. *See* ECF No. 249-1 at 2. They also introduced evidence from studies tending to show that "a single dose of barbiturate is insufficient to ablate awareness, including the sensations of pain and the extreme suffering of suffocation and asphyxiation that will occur" during the execution, ECF No. 24 at 31, and that Plaintiff LeCroy visibly gasped for air almost *immediately* upon being injected, *see* ECF No. 282-4 at 9-11. In short, Plaintiffs produced evidence showing that prior death-sentenced inmates *did* experience flash pulmonary edema while sensate and that inmates with future execution dates were *likely* to experience the same. What is more, the Court *credited* that evidence and continued to express concern "at the possibility that inmates will suffer excruciating pain during their executions." ECF No. 261 at 36.

Plaintiffs produced all that *Wisconsin Gas* requires. The Court's conclusion to the contrary was reversible error.

> **2. The Court erred by partially abdicating its factfinding responsibilities and requiring Plaintiffs to completely undermine Defendants' evidence**

Defendants next assert that even if the Court erred by applying an unduly heightened standard to the irreparable harm inquiry, the error was harmless because "the Court concluded [Plaintiffs] did not establish even a likelihood of the asserted harm." ECF No. 311 at 5. Not so.

Even assuming the Court applied the proper standard, the Court erred by partially abdicating its factfinding responsibilities. Contrary to Defendants' assertions, *id.* at 6, the Court's opinion reveals that it *did* credit Dr. Antognini's testimony solely on account of the Supreme Court's decision in *Bucklew*. After and despite summarizing the myriad flaws with Dr. Antognini's testimony and reports, the Court "note[d] that the Supreme Court has relied on Dr. Antognini's testimony on the effects of pentobarbital" in *Bucklew v. Precythe*, 139 S. Ct. 1112 (2019), and concluded it could not "completely discredit" his testimony as a result. ECF No. 261 at 39. This was improper under Federal Rules of Civil Procedure 52(a)(1), which requires district courts to make their own findings of fact.

The Court likewise erred when it gave the Supreme Court's decision in *Barr v. Lee*, 140 S. Ct. 2590 (2020), controlling weight on a question of *fact*—whether Plaintiffs had successfully shown that they were more likely than not to experience flash pulmonary edema while sensate. ECF No. 261 at 39. As discussed in Part I.B., *infra*, the Supreme Court's opinion in *Lee* was limited to the unique circumstances before it and did not mandate particular findings of fact here.

Defendants do not deny that after the Court issued its opinion in *Lee*, Plaintiffs were able to cross-examine Defendants' experts and introduce new evidence concerning Mr. LeCroy's execution. *See* ECF No. 311 at 7. Instead, they assert that because "Plaintiffs [did] not identify anything that came out of their cross-examinations . . . that would have materially altered the Supreme Court's analysis," the Court was entitled to give *Lee* controlling weight on the

4

questions of fact before it. *Id.* This misses the point. Under Rule 52(a)(1), the Court was required to independently evaluate all of the evidence before it, *including* Plaintiffs' new evidence. This, the Court did not do.

In any event, the Court did not find "most of Plaintiffs' cross-examination to be ineffective," ECF No. 311 at 7, as Defendants assert. To the contrary, the Court expressed concern about *both* of Defendants' experts, observing that Dr. Antognini's research primarily involved animals and that Dr. Crowns was ignorant of more recent news reports tending to contradict his conclusions. ECF No. 261 at 38-39. The Court's error was in setting aside its valid concerns—which were the product of cross-examinations that took place after the Supreme Court issued its decision in *Lee*—based on a mistaken belief that the Supreme Court's decisions in *Bucklew* and *Lee* required it to give Defendants' experts' testimony *as much weight* as Dr. Van Norman's reports.

### 3. The Court failed to appreciate that requiring Defendants to comply with the FDCA would in fact decrease the likelihood that Plaintiffs will suffer flash pulmonary edema before dying

Finally, Defendants characterize as "speculat[ive]" and "untethered" from the FDCA the proposition that, if they were required to comply with the law and consult a licensed doctor, they would likely have to administer an opioid or similar analgesic along with pentobarbital to reduce the risk that Plaintiffs will suffer before their deaths. ECF No. 311 at 8. But Plaintiffs established that well-known and widely available analgesics were both needed and appropriate for that purpose. ECF No. 92 at 31-32; ECF No. 25 at 2-7. And Defendants have never suggested, nor could they, that there would be any reason for a clinician *not* to prescribe an opioid or analgesic. Given the significant possibility of excruciating suffering and the absence of any evident downside, there is every reason to believe that a reputable clinician would prescribe an opioid or analgesic. Moreover, the very purpose of the FDCA's prescription requirement is to

5

condition the dispensing of regulated drugs upon the sound exercise of clinical judgment by a medical doctor. *See United States v. Smith*, 573 F.3d 639, 652-53 (8th Cir. 2009); *United States v. Nazir*, 211 F.Supp.2d 1372, 1375 (S.D. Fla. 2002). Given that purpose, and especially in light of Plaintiffs' evidentiary showing, there is a clear causal connection between Defendants' unexplained refusal to ensure the appropriate medical oversight required by the FDCA and the increased risks of excruciating suffering that Plaintiffs face in their executions. *See Beaty v. FDA*, 853 F.Supp.2d 30, 37 (D.D.C. 2012), *aff'd in relevant part sub nom. Cook v. FDA*, 733 F.3d 1 (D.C. Cir. 2013).

**B.     The Supreme Court's Decision in *Lee* Did Not Create a Categorical Bar to Plaintiffs' Eighth Amendment Claim as a Matter of Law**

Plaintiffs have not only pled, but also made a compelling evidentiary showing, that Defendants' execution protocol "creates a demonstrated risk of severe pain and that the risk is substantial when compared to the known and available alternative[]" of including an analgesic drug. *Glossip v. Gross*, 576 U.S. 863, 878 (2015). They are likely to succeed on the merits of their Eighth Amendment claim. The Court dismissed that claim based on its erroneous understanding that the use of pentobarbital in executions is constitutional *as a matter of law* under the Supreme Court's decision in *Lee*.

Defendants contend that *Lee*—a summary per curiam opinion issued without full briefing or argument—effectively altered or overturned the *Glossip* test as applied to pentobarbital, placing that specific substance beyond all Eighth Amendment scrutiny. According to Defendants, the Supreme Court's "focus" in *Lee* was not on the holding that "[t]he plaintiffs in *this case* have not made the showing required to justify *last-minute* intervention," but rather the Court's recitation of historical facts regarding the use of pentobarbital in executions. *Lee*, 140 S. Ct. at 2591 (emphases added).

6

This reading of *Lee* is untenable. The discussion Defendants insist was the "focus" of *Lee* was, by the Supreme Court's own account, mere "backdrop." *Id.* Nothing in the Supreme Court's summary disposition in *Lee* suggests a substance-specific revisiting of Eighth Amendment case law or announces a sweeping new rule regarding the constitutionality of using pentobarbital. The Court's recitation of background facts regarding the use of pentobarbital in executions was necessarily backward-looking and contingent—for example, in light of the evidence Plaintiffs have submitted in this case regarding recent executions carried out under Defendants' execution protocol, it can no longer be said that pentobarbital has been used in executions "without incident." *Id.* If the Supreme Court had intended to announce a new rule of constitutional law based on broad historical findings regarding pentobarbital, it would have done so expressly, without calling that discussion "backdrop," and without then proceeding to an evaluation of the particular evidence at issue in *Lee* and whether it justified the requested relief.

In this case, Plaintiffs have not only sufficiently alleged their Eighth Amendment claim, they have also made a far stronger evidentiary showing than in *Lee* that they will suffer flash pulmonary edema while sensate. They are therefore likely to succeed on the merits of their Eighth Amendment claim. Moreover, Plaintiffs have not sought "last-minute" relief "[h]ours before the first execution was set to take place." *Id.* The Court's holding, effectively immunizing pentobarbital from all Eighth Amendment scrutiny, was in error.

    **C.    The FDPA Requires Defendants to Comply with Applicable State Law in Texas and Their Failure to Do So Will Cause Plaintiffs Hall and Bernard Irreparable Harm**

Defendants argue that no controversy exists regarding their FDPA-required compliance with applicable Texas state law because they "will consider . . . and may grant" requests so to comply on an individual basis. ECF No. 311 at 12. But Plaintiffs Hall and Bernard are entitled to have Defendants comply with legally required execution procedures, not merely to have them

consider whether to do so—and at present, absent an order from the Court, there is nothing to stop Defendants from deviating from their scheduled time for any execution.[2]  Defendants' unwillingness to confirm unequivocally that they will comply with the relevant provisions of Texas law is conspicuous and troubling.  Moreover, it is hardly speculative or hypothetical that rescheduling will be at issue—of the six plaintiffs in this case that Defendants have executed this year, two were executed in the early morning hours the day after their scheduled execution dates.[3]

## II.     The Balance of the Equities and Public Interest Favor a Stay

Defendants, who did not execute or seek to execute any death-sentenced prisoners for seventeen years, now insist that their interest in "the timely enforcement of a death sentence," ECF No. 311 at 13, is so weighty that the equities favor permitting them to moot Plaintiffs' claims by executing them in a manner that this Court has determined violates the FDCA, and that exposes Plaintiffs Hall and Bernard to the risk of excruciating pain and suffering.  Not so.  As Plaintiffs Hall and Bernard have argued, that general interest is far outweighed in this case by their interest and the public's interest in the humane and constitutional application of the law.  The other reasons Defendants advance for denying a stay based on equity fare no better.  Defendants' complaint regarding "last-minute stays" rings hollow, given that Plaintiffs are seeking stays only because Defendants have forced them to do so.  Plaintiffs have been diligently and expeditiously prosecuting this action for months, and are seeking emergency relief from this

---

[2] Hall has requested that his execution take place after 6 p.m., and Bernard—whose execution date is several weeks away—intends to do so.

[3] Plaintiffs, in arguing that Defendants must comply with Texas Code of Criminal Procedure Article 43.14(a) regarding the scheduling of executions, did not "forfeit" the argument that Defendants must also comply with Article 43.141(c), a related provision regarding rescheduling. Plaintiffs' argument has been that the FDPA requires Defendants to comply with *all* Texas execution procedures, not only those they might pick and choose.

Court only because the government has targeted them for execution so as to cut off their full and fair opportunity to litigate their claims. This Court should not permit the government to cut off the orderly adjudication of this suit while simultaneously blaming the Plaintiffs for attempting to protect their ability to pursue the appeal to which they are entitled.

Moreover, the government argues simultaneously that the Court should *wait* for the D.C. Circuit to decide the stay issue next week—or perhaps to decide the merits, though Defendants have suggested they may not abide by a merits decision to set aside the challenged protocol unless compelled to do so by an injunction, *see* Opposition to Emergency Motion for a Stay of Execution Pending Appeal at 16, *In re Federal Bureau of Prisons' Execution Protocol Cases*, D.C. Cir. No. 20-5329 (filed Nov. 13, 2020). But if this Court grants a stay, the D.C. Circuit will not need to do so.

Finally, this Court should reject Defendants' startling assertion that the fact that Defendants have executed other individuals during the pendency of this case somehow requires that the Court permit them to execute yet more plaintiffs without first addressing Plaintiffs-Appellants' claims on the merits. Implementing a sentence of death is the gravest and most final act that a government can perform. Principles of equity and fundamental due process require that before the government is permitted to execute an individual, the courts be satisfied that the equities of the particular case permit that result. Here, each additional execution has only provided more evidence to support Plaintiffs Hall and Bernard's claims. A stay of a few weeks or months to allow the parties to fully and fairly litigate the merits of those claims is more than warranted.

**Conclusion**

For the foregoing reasons, Plaintiffs Hall and Bernard respectfully move the Court to stay their scheduled executions pending their appeal of the Court's orders of August 15, 2020 and September 20, 2020.

Dated:  November 13, 2020			Respectfully submitted,

						*/s/ Amy Lentz*
						Amy Lentz (D.C. Bar No. 990095)
						Steptoe & Johnson LLP
						1300 Connecticut Avenue NW
						Washington, D.C. 20036
						(202) 429-1350
						alentz@steptoe.com

						*Counsel for Plaintiff Orlando Hall*

						Ginger D. Anders (Bar No. 494471)
						Jonathan S. Meltzer (Bar No. 888166546)
						Brendan Gants (Bar No. 1031419)
						MUNGER, TOLLES & OLSON LLP
						601 Massachusetts Ave. NW, Suite 500E
						Washington, D.C. 20001-5369
						MUNGER, TOLLES & OLSON LLP
						(202) 220-1100
						Ginger.Anders@mto.com

						*Counsel for Plaintiff Brandon Bernard*

# CERTIFICATE OF SERVICE

I hereby certify that on November 13, 2020, I caused a true and correct copy of foregoing to be served on all following counsel via the Court's CM/ECF system.

Joshua Christopher Toll
KING & SPALDING LLP
(202) 737-8616
Email: jtoll@kslaw.com

Margaret O'Donnell
(502) 320-1837
Email: mod@dcr.net

Gerald Wesley King, Jr.
FEDERAL DEFENDER PROGRAM, INC.
(404) 688-7530
Email: gerald_king@fd.org

Charles Fredrick Walker
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
(202) 371-7000
Email: Charles.Walker@skadden.com

Alexander C. Drylewski
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
(212) 735-2129
Email: Alexander.Drylewski@skadden.com
(*pro hac vice application forthcoming)

Celeste Bacchi
OFFICE OF THE PUBLIC DEFENDER
Capital Habeas Unit
(213) 894-1887
Email: celeste_bacchi@fd.org

Jonathan Charles Aminoff
FEDERAL PUBLIC DEFENDER,
CENTRAL DISTRICT OF CALIFORNIA
(213) 894-5374
Email: jonathan_aminoff@fd.org

Gary E. Proctor
LAW OFFICES OF GARY E. PROCTOR, LLC
(410) 444-1500
Email: garyeproctor@gmail.com

Jonathan Kossak
Civil Division, Department of Justice
(202) 305-0612
Email: Jonathan.kossak@usdoj.gov

Jean Lin
Civil Division, Department of Justice
(202) 514-3716
Email: Jean.lin@usdoj.gov

Cristen Cori Handley
Civil Division, Department of Justice
(202) 305-2677
Email: Cristen.Handley@usdoj.gov

Paul F. Enzinna
ELLERMAN ENZINNA PLLC
(202) 753-5553
Email: penzinna@ellermanenzinna.com

Brandon David Almond
TROUTMAN SANDERS LLP
(202) 274-2864
Email: brandon.almond@troutmansanders.com

Donald P. Salzman
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
(202) 371-7983
Email: Donald.salzman@skadden.com

Steven M. Albertson
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
(202) 371-7112
Email: Steven.Albertson@skadden.com

Alexander Louis Kursman
OFFICE OF THE FEDERAL COMMUNITY DEFENDER/EDPA
(215) 928-0520
Email: Alex_Kursman@fd.org

Robert A. Ayers
STEPTOE & JOHNSON LLP
(202) 429-6401
Email: rayers@steptoe.com

11

Scott Wilson Braden
FEDERAL PUBLIC DEFENDER,
EASTERN DISTRICT OF ARKANSAS
(501) 324-6144
Email: Scott_Braden@fd.org

David Victorson
(202) 637-5600
HOGAN LOVELLS US LLP
Email: David.Victorson@hoganlovells.com

Jennifer Ying
MORRIS NICHOLS ARSHT & TUNNELL LLP
(302) 658-9300
Email: Jying@mnat.com

Andres C. Salinas
WILMER CUTLER PICKERING HALE & DORR LLP
(202) 663-6289
Email: Andres.Salinas@wilmerhale.com

Ryan M. Chabot
WILMER CUTLER PICKERING HALE & DORR LLP
(212) 295-6513
Ryan.Chabot@WilmerHale.com

Dale Andrew Baich
OFFICE OF THE FEDERAL PUBLIC DEFENDER
(602) 382-2816
Dale_Baich@fd.org

Johnny Walker
Assistant United States Attorney at United States Attorney's Office
johnny.walker@usdoj.gov

Bradley Humphreys
Civil Division, Department of Justice
bradley.humphreys@usdoj.gov

Scott Meisler
Criminal Division, Department of Justice
scott.meisler@usdoj.gov

Shawn Nolan
FEDERAL COMMUNITY DEFENDER OFFICE, EDPA
(215) 928-0520
Email: shawn_nolan@fd.org

Joseph William Luby
FEDERAL PUBLIC DEFENDER/EDPA
(215) 928-0520
Email: joseph_luby@fd.org

Pieter Van Tol
HOGAN LOVELLS US LLP
(212) 918-3000
Email: Pieter.Vantol@hoganlovells.com

Jonathan Jeffress
KAISER DILLON, PLLC
(202) 640-4430
Email: Jjeffress@kaiserdillon.com

Andrew Moshos
MORRIS NICHOLS ARSHT & TUNNELL LLP
(302) 351-9197
Email: Amoshos@mnat.com

Alan E. Schoenfeld
WILMER CUTLER PICKERING HALE & DORR LLP
(212) 937-7294
Email: Alan.Schoenfeld@wilmerhale.com

Timothy Kane
FEDERAL COMMUNITY DEFENDER OFFICE, EDPA
(215) 928-0520
Email: timothy_kane@fd.org

Dated: November 13, 2020                    Respectfully Submitted,

*/s/ Amy Lentz*
Amy Lentz (DC Bar No. 990095)
Steptoe & Johnson, LLP
1300 Connecticut Avenue NW
Washington, DC 20036
202.429.1350
Email - alentz@steptoe.com