## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In the Matter of the Federal Bureau of Prisons' Execution Protocol Cases,<br><br>LEAD CASE: *Roane et al. v. Barr*<br><br>THIS DOCUMENT RELATES TO:<br><br>*Roane, et al. v. Barr*, 05-2337 | Case No. 19-mc-0145 (TSC) |

### PLAINTIFF ORLANDO HALL'S MOTION FOR AN ORDER SETTING ASIDE THE FEDERAL LETHAL INJECTION PROTOCOL AND FOR A STAY OF EXECUTION

Plaintiff Orlando Hall is scheduled for execution tomorrow, November 19.  Defendants intend to execute Mr. Hall with pentobarbital even though they have not obtained a prescription for its use, which this Court and the D.C. Circuit properly found violated the Federal Food Drug and Cosmetic Act ("FDCA").  Mr. Hall comes now requesting that this Court issue an order setting aside the Federal Lethal Injection Protocol of 2019 ("2019 Protocol") and declaring it unlawful for Defendants to carry out further executions without a prescription.  Mr. Hall further moves the Court to issue a stay of execution to allow the Court to reconsider its finding that Plaintiffs failed to make the necessary "irreparable harm" showing to warrant enjoining their executions, despite Defendants' violation of the FDCA.  The Court reached this conclusion believing that it was "constrained by the[] findings" as to pentobarbital in the Supreme Court's opinion in *Barr v. Lee*, 140 S. Ct. 2590 (2020).  The D.C. Circuit's opinion this morning makes clear that the Court misread the Supreme Court's opinion in *Lee*, and Mr. Hall requests that the Court stay his execution to reconsider its "irreparable harm" findings in that light.

1

**Background**

The Court is familiar with proceedings in this matter, and so counsel recounts only the factual background relevant to the current motion.

On July 13, 2020, the Court preliminarily enjoined the scheduled executions of four Plaintiffs in this consolidated case, finding that Plaintiffs had demonstrated a likelihood of success on the merits of their Eighth Amendment claim challenging Defendants' 2019 execution protocol ("2019 Protocol"). *See* Dkt. #135 at 18.  Specifically, the Court found that using pentobarbital "poses a substantial risk of serious pain," *id.* at 13, and credited Plaintiffs' experts' conclusion that "there is a 'virtual medical certainty' that the 2019 Protocol will result in 'excruciating suffering'" by causing inmates to experience "sensations of drowning and suffocation" before they die. *Id.* at 10-11.  "The D.C. Circuit declined to stay or vacate the court's injunction, but the Supreme Court vacated the injunction early in the morning of July 14, 2020." Dkt. #261 at 6 (internal citation omitted).  In a short per curiam opinion, the Supreme Court concluded that Plaintiffs' evidence did not satisfy "the showing required to justify last-minute intervention by a Federal Court." *Lee*, 140 S. Ct. at 2591.  Defendants executed one of the four Plaintiffs shortly thereafter.

On July 15, 2020, the Court preliminarily enjoined the executions of the three remaining Plaintiffs who had received execution dates, concluding that they were likely to succeed on the merits of their claim that the 2019 Protocol violates the FDCA.  *See* Dkt. #261 at 6.  As with the prior preliminary injunction, although the D.C. Circuit declined to stay or vacate the injunction, the Supreme Court vacated the injunction.  *See Barr v. Purkey*, No. 20A10, 2020 WL 4006821 (U.S. July 16, 2020) (per curiam).  The Supreme Court did not address the merits of Plaintiffs' FDCA claim.  *Id.*  Defendants executed two of the three Plaintiffs later that week.

On August 15, 2020, the Court granted Defendants' motion to dismiss the Eighth Amendment claim in the consolidated action brought by all Plaintiffs.  The Court reasoned that under the Supreme Court's decision in *Lee*, "no amount of new evidence will suffice to prove that the pain pentobarbital causes reaches unconstitutional levels" as a matter of law.  Dkt. #193, at 4.  On August 27, 2020, the Court entered a permanent injunction barring Defendants from executing Plaintiff Keith Nelson, finding that the Defendants' use of pentobarbital for lethal injection without first satisfying the FDCA's premarketing, labeling, and prescription requirements was unlawful.  Dkt. #261 at 7.  The D.C. Circuit vacated the injunction and remanded for the Court to consider irreparable harm.  *Id.* at 7-8.  On remand, the Court denied Mr. Nelson's request for a permanent injunction on his FDCA claim, finding that he had failed to demonstrate irreparable harm.  *Id.* at 7.  Defendants executed Mr. Nelson a few hours later.

On September 20, 2020, the Court granted summary judgment in favor of Plaintiffs' FDCA claim.  The Court concluded that that "the pentobarbital the government intends to use in executions is subject to the FDCA and fails to meet the premarketing, labeling, and prescription requirements therein," and that because "the government's use, under the 2019 Protocol, of pentobarbital . . . has not been prescribed and does not meet other statutory requirements of the FDCA," the intended executions "constitute[] agency action that is contrary to law in violation of the APA [Administrative Procedure Act]."  Dkt. #261 at 33; *see generally* Dkt. #213.

The Court, however, denied Plaintiffs' request for injunctive relief, finding that although there was a "possibility that inmates will suffer excruciating pain during their executions, Plaintiffs have not established that flash pulmonary edema is 'certain' or even 'likely' to occur before an inmate is rendered insensate."  *Id.* at 36.  The Court found that Plaintiffs did not "completely discredit Dr. Antognini's testimony" and did not "completely undermine" Dr. Crowns' conclusions that symptoms of distress during an execution can reflect agonal

breathing occurring "right before death but after the inmate is rendered unconscious." *Id.* at 38-39.  Although the Court expressed skepticism about the conclusions voiced by Defendants' experts, it also stated that it could not "weigh the evidence before it in a vacuum" and that the Supreme Court in *Lee* had already addressed "most of the evidence Plaintiffs have presented in this case and found that it was not enough to warrant injunctive relief." *Id.* at 39-40.

Plaintiffs filed three Fed. R. Civ. P. 59(e) motions to alter or amend the Court's judgments regarding their Eighth Amendment claim, *see* Dkt. #238, their FDCA claim, *see* Dkt. #282, and their FDPA claim, *see* Dkt. #298.  Plaintiffs' motions included new evidence that William LeCroy, whom Defendants executed on September 22, 2020, was observed "heav[ing] uncontrollably" *almost immediately* after pentobarbital was administered into his veins.  Dkt. #282-2; *see* Dkt. #282-1.  They also submitted a supplemental expert declaration from Dr. Gail A. Van Norman, whose statements and credibility Defendants did not challenge at the evidentiary hearing.

Dr. Van Norman stated in her declaration that "the respiratory efforts reported by eyewitnesses during the execution of Mr. LeCroy *were not agonal respirations*" but instead "a classic description of attempts to breathe against an obstructed airway," because "[t]here is no heaving motion of the chest, alone or together with the abdomen" with agonal respiration.  Dkt. #282-4 at 8.  As Dr. Van Norman explained, the fact that "Mr. LeCroy's eyes were open while he was fighting for breath and closed only later" indicates that he was aware and experiencing flash pulmonary edema in the minutes before his death.  *Id.* at 10.  Furthermore, "[f]lash pulmonary edema is accompanied by excruciating symptoms of drowning: shortness of breath, anxiety, terror, and panic."  *Id.* at 2.  In short, Mr. LeCroy likely experienced extraordinary pain and suffering before dying.

The Court denied all three motions on November 3.  *See* Dkt. #305.   The Court explained that it understood the Supreme Court's decision in *Lee* to raise the "likelihood" threshold for demonstrating irreparable harm such that even if Plaintiffs had established that flash pulmonary edema while sensate is "possible," "Plaintiffs would need to supply evidence that casts doubt on the more than 100 executions carried out using pentobarbital."  *See* Dkt. #305 at 7.

On November 4, Plaintiffs filed a notice of appeal and motion to expedite.  The D.C. Circuit set an expedited briefing schedule.  On November 5, Plaintiffs Hall and Bernard filed a motion for leave to file a stay of execution in this Court, and after receiving leave, filed their motion for a stay of execution the next day.  After the Court set a schedule that would not permit it to rule on the stays until November 13, Plaintiffs Hall and Bernard on November 10 filed a motion for a stay of execution in the Court of Appeals.

The D.C. Circuit held oral argument on November 16 and decided the appeal and the stay motion on November 18.

In its decision, the D.C. Circuit reversed this Court's dismissal of Plaintiffs' Eighth Amendment claim, and remanded for further proceedings.  The D.C. Circuit held that Plaintiffs had properly and plausibly pled "that the federal government's execution protocol involves a 'virtual medical certainty' of severe and torturous pain that is unnecessary to the death process and could readily be avoided by administering a widely available analgesic first."  (Op. at 17).  The D.C. Circuit held that the Court's dismissal of Plaintiffs' Eighth Amendment claim rested on "critical legal errors" based on misreading the Supreme Court's precedents.  (Op. at 17-21.)  In particular, the D.C. Circuit found that "*Lee* did not hold that the Eighth Amendment turns its back on needless and extreme suffering as long as it is caused by flash pulmonary edema."  (Op. at 18).

The D.C. Circuit affirmed the Court's holding that the 2019 Protocol violates the FDCA to the extent that it permits the dispensing and administration of pentobarbital without a prescription.  (Op. at 24.)  The D.C. Circuit explained that, under the APA, "the execution protocol as administered by the Federal Bureau of Prisons is 'not in accordance with law'" to the extent that it does so, "and must be 'set aside' in that respect" under the APA.  (*Id.* (quoting 5 U.S.C. § 706(2)).

The D.C. Circuit nevertheless affirmed this Court's denial of a permanent injunction on Plaintiffs' FDCA claim.   The D.C. Circuit explained that "[t]he district court specifically found . . . that "the evidence in the record does not support Plaintiffs' contention that they are likely to suffer flash pulmonary edema while still conscious." (Op. at 24-25.)  The court of appeals did not address Plaintiffs' contention that the Court's finding that flash pulmonary edema while sensate was not "likely" reflected the Court's misunderstanding of *Lee* as elevating the likelihood standard to a virtual certainty.

The import of the court of appeals' decision is that the 2019 Protocol must be set aside as contrary to law to the extent that it permits Defendants to execute Plaintiffs using pentobarbital for which it has obtained no prescription.  Nevertheless, the government has asserted that even if the 2019 Protocol were set aside, in the absence of a traditional injunction, it would continue to violate the law and use the protocol to execute Plaintiffs, without obtaining a prescription.  Gov't C.A. Br. 41.

Defendants plan to execute Plaintiff Hall tomorrow, November 19.  Defendants presumably intend to follow the 2019 Protocol, despite the fact that it has been held unlawful to the extent that it does not require a prescription, and to execute Mr. Hall using pentobarbital, administered without any opiate or other narcotic, and without obtaining a prescription.

For the reasons set forth below, Mr. Hall requests that the Court enter an order setting aside the 2019 Protocol and declaring it unlawful for Defendants to carry out further executions without a prescription.  Mr. Hall further requests that the Court stay his execution so that it can reconsider its irreparable harm findings in light of the fact that the Court's finding that flash pulmonary edema while sensate was not "likely" reflected the Court's misreading of the Supreme Court's opinion in *Lee*.

<u>**Argument**</u>

**I.      The Court Should Enter an Order Setting Aside the 2019 Protocol**

The D.C. Circuit affirmed this Court's holding that the 2019 Protocol violates the FDCA to the extent that it permits the dispensing and administration of pentobarbital without a prescription.  (Op. at 24.)  The D.C. Circuit explained that, under the APA, "the execution protocol as administered by the Federal Bureau of Prisons is 'not in accordance with law'" to the extent that it does so, "and must be 'set aside' in that respect" under the APA.  (*Id.* (quoting 5 U.S.C. § 706(2)).  Accordingly, Mr. Hall requests that the Court immediately enter an order setting aside the 2019 Protocol and declaring it unlawful for Defendants to carry out further executions without a prescription.

**II.     The Court Should Grant a Stay of Execution for Mr. Hall in Order to Reconsider Its Irreparable Harm Findings**

"[A] stay of execution is an equitable remedy."  *Hill v. McDonough*, 547 U.S. 575, 584 (2006).  "Thus, like other stay applicants, inmates seeking time to challenge the manner in which the State plans to execute them must satisfy all of the requirements for a stay, including a showing of a significant possibility of success on the merits."  *Id.*  As part of this inquiry, the Court must also assess "whether the applicant will be irreparably injured absent a stay," "whether issuance of the stay will substantially injure the other parties interested in the proceeding," and "where the public interest lies."  *Nken v. Holder*, 556 U.S. 418, 426 (2009).

The first two factors of this standard, likelihood of success on the merits and irreparable harm, are the most critical. *Id.* at 434. Where, as here, the Government is the opposing party, the third and fourth factors merge. *Id.*

Mr. Hall has made the requisite showing on all four factors and is entitled to a stay as a result.[1] *First*, Mr. Hall is likely to succeed on the merits of his claim that, when the Court is no longer "constrained" by *Lee*, the Court will conclude that Plaintiffs have made the necessary showing for "irreparable harm" in relation to Defendants' violation of the FDCA. *Second*, for largely the same reasons, Mr. Hall will suffer irreparable harm absent a stay. *Third*, the public has an important interest "in the humane and constitutional application of [a] lethal injection statute." *Nooner v. Norris*, 2006 WL 8445125, at *4 (E.D. Ark. June 26, 2006). That interest is not outweighed by Defendants' general interest in ensuring the finality of capital proceedings. This is especially true where, as here, there is substantial evidence that Defendants' chosen method of execution will cause Plaintiff Hall to experience extraordinary pain and suffering in his final moments, and the denial of a stay threatens to permanently extinguish Mr. Hall's

---

[1] To the extent that the Court believes this is more properly a motion for a preliminary injunction, Plaintiff Hall submits that the analysis is the same. In the Court of Appeals, the Government contended that Plaintiffs "in substance seek an injunction" and therefore must provide a "significantly higher justification"—a clear and indisputable right to relief—than the typical standard for a stay. Ct. App. Op. to Stay, at 8 n. 3 (quoting *Respect Maine PAC v. McKee*, 562 U.S. 996, 996 (2010)). But the case the government cited relied on the fact that granting the requested relief would be a "judicial alteration of the status quo." *Respect Maine PAC*, 562 U.S. at 996. Plaintiff Hall is asking for the opposite here: avoiding unalterably changing the status quo by executing him while his claims for relief are pending. Furthermore, the Supreme Court has never required such an elevated showing of a clear and indisputable right to relief in the context of a stay of execution pending a challenge to a lethal injection protocol. In the Supreme Court's recent protocol cases, the Court granted stays pending its decisions on the merits, see *Bucklew v. Precythe*, 139 S. Ct. 1112 (2019); *Glossip v. Gross*, 576 U.S. 863 (2015); *Baze v. Rees*, 553 U.S. 35 (2008), and the petitioners ultimately did not prevail in each. The granting of the stays in those cases, in which petitioners did not prevail, is inconsistent with the application of the Government's suggested "significantly higher justification."

meritorious claims.  For seventeen years, Defendants did not execute or seek to execute any death-sentenced prisoners, including Mr. Hall.  Under these circumstances, a brief stay to allow the Court to reconsider its irreparable harm findings will not substantially injure either the public or the Government.

### A.    Mr. Hall Is Likely to Succeed on the Merits of His Claim

The Court denied Plaintiffs' request for a permanent injunction on their FDCA claim despite the fact that it had credited Plaintiffs' evidence and was "concerned at the possibility that inmates will suffer excruciating pain during their executions," Dkt. #261 at 36.  The Court nonetheless denied Plaintiffs' request for injunctive relief because it found the evidence was insufficient to show that the harm of flash pulmonary edema is "likely, let alone 'certain' or 'imminent,'" *id.* at 40 (alteration in original) (citing *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985)).

When the Court reached this conclusion, it relied on the fact that "[t]he Supreme Court . . . already addressed most of the evidence Plaintiffs have presented in this case and found that it was not enough to warrant injunctive relief."  Dkt. #261 at 39-40 (citing *Lee*, 140 S. Ct. at 2592). Explaining that it was "constrained" by *Lee*, the Court found that in order to make the necessary showing of irreparable harm, Plaintiffs would need to "completely undermine" Defendants' expert evidence and to "supply evidence that casts doubt on the more than 100 executions carried out using pentobarbital."  Dkt 305.

In doing so, the Court misread the Supreme Court's decision in *Lee*, which, as the D.C. Circuit explained, was limited to the particular procedural posture of the case.  (Op. at 17-21). Contrary to this Court's understanding, "*Lee* did not hold that the Eighth Amendment turns its back on needless and extreme suffering as long as it is caused by flash pulmonary edema."  (Op.

at 18). The Court's erroneous view that it was "constrained" by *Lee* is evident from the shift in this Court's opinions before and after *Lee*, as recounted by Judge Pillard:

> Before the Supreme Court's July decision in *Barr v. Lee*, 140 S. Ct. 2590 (2020), the district court found that Plaintiffs' evidence on the complaint alone "overwhelmingly indicate[d] that the 2019 Protocol is very likely to cause Plaintiffs extreme pain and needless suffering during their executions." Memorandum Opinion at 9-10, *In re FBOP*, 19-mc-145 (D.D.C. July 13, 2020), ECF No. 135. The court cited Plaintiffs' experts' declarations demonstrating "that the majority of inmates executed via pentobarbital injection suffered flash pulmonary edema during the procedure." Memorandum Opinion at 9-10, *In re FBOP*, 19-mc-145 (D.D.C. July 13, 2020), ECF No. 135. Recognizing the key issue as timing—whether the inmates could feel the effects of flash pulmonary edema, as Plaintiffs alleged, or whether they were insensate when it occurred, as the government argued—the district court concluded the Plaintiffs had the better of the evidence. *Id.* at 12. Only after the Supreme Court vacated a preliminary injunction on Plaintiffs' Eighth Amendment claim did the district court find that Plaintiffs had failed to show irreparable harm. (Op. at 28, Pillard, J., concurring in part and dissenting in part).

Plaintiffs were not required to completely undermine Defendants' evidence to prevail on their request for injunctive relief. Rather, a plaintiff need only show that he or she is *likely* to suffer irreparable harm. *See Wis. Gas Co.*, 758 F.2d at 674. Absent the Court's misreading of *Lee*, it is evident that Plaintiffs more than met their burden. It is therefore likely that, when the Court is no longer improperly "constrained" by *Lee*, the Court will conclude that Defendants' violation of the FDCA will cause irreparable harm.

### B.     Absent a Stay, Mr. Hall Will Suffer Irreparable Harm

Courts across the country have repeatedly held that a plaintiff suffers irreparable harm if he will be executed before his meritorious challenges to the method of execution can be fully and fairly litigated. *See, e.g.*, *Nooner v. Norris*, No. 5:06cv00110 SWW, 2006 WL 8445125, at *3 (E.D. Ark. June 26, 2006) (plaintiff showed threat of irreparable harm because if he suffered pain during his execution, as alleged, the injury would never be rectified); *Cooey v. Taft*, 430 F. Supp. 2d 702, 708 (S.D. Ohio 2006) (same); *Brown v. Beck*, No. 5:06CT3018 H, 2006 WL 3914717, at *7 (E.D.N.C. Apr. 7, 2006) (same). The evidence in this case shows that the risk of irreparable harm is just as great, if not greater, than the aforementioned list of cases.

As explained above, Plaintiffs introduced evidence from Dr. Van Norman, a cardiovascular and perioperative expert whose credibility Defendants did not challenge, who explained that there is a "virtual medical certainty that most, if not all prisoners"—including Plaintiff Hall—"will experience excruciating suffering, including sensations of drowning and suffocation," upon being injected with 5 grams of pentobarbital. *See* Dkt. #24 at 7, 31-34, 36. Dr. Van Norman drew upon her wealth of clinical knowledge as well as studies of patients undergoing anesthesia to opine that "a single dose of barbiturate is insufficient to ablate awareness, including the sensations of pain and the extreme suffering of suffocation and asphyxiation that will occur" during the injection. *Id.* at 31.

Most recently, Plaintiffs introduced evidence from Mr. LeCroy's execution tending to show that he was sensate and responsive when his airway was obstructed and his lungs filled with fluid. *See* Dkt. #282-4 at 10-11. This evidence—which included first-hand accounts from Mr. LeCroy's execution that he heaved for breath and gasped for air almost immediately upon being injected—was wholly consistent with Dr. Van Norman's explanation that flash pulmonary edema tends to occur when the injected individual is *still aware and capable of processing pain*. *Id.* at 9-11. Indeed, even Dr. Crowns admitted that if inmates "were reacting to the effects of pulmonary edema, they would be observed to have shortness of breath (dyspnea), increased respiration (tachypnea), wheezing, gasping, coughing, noisy labored breathing." Dkt. #246-1 at 4. But as Dr. Van Norman made clear, outward signs of distress are not required to confirm suffering from flash pulmonary edema while conscious. Dkt. #24 at 24. Past autopsies of executed inmates consistently show the presence of pulmonary congestion and pulmonary edema. *Id.* at 35-36. Critically, "[e]xperience in humans and animal models indicate that flash pulmonary edema occurs virtually immediately during and after high-dose barbiturate injection,

and well within a time frame *before* peak drug effects on the brain have occurred"—i.e., before

an individual is rendered insensate. *Id.* at 36.

To constitute irreparable harm, "the harm must be 'certain and great', 'actual and not

theoretical', and so 'imminen[t] that there is a clear and present need for equitable relief to

prevent irreparable harm.'" *League of Women Voters of U.S. v. Newby*¸ 838 F.3d 1, 7-8 (D.C.

Cir. 2016) (quoting *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C.

2016)).  Plaintiffs' evidence, which has only grown in strength with each additional execution,

more than meets the criteria for irreparable harm.  Absent the Court's intervention, Plaintiff Hall

will be executed by a method that is likely to cause him to endure "one of the most powerful,

excruciating feelings known to man"—prolonged suffocation.  Dkt. #24 at 34.  And there is no

way to undo that harm once inflicted.  This is the very definition of irreparable harm.  *See, e.g.*,

*Banks v. Booth*, 459 F. Supp. 3d 143, 159 (D.D.C. 2020) ("The Court concludes that Plaintiffs'

risk of contracting COVID-19 and the resulting complications, including the possibility of death,

is the prototypical irreparable harm."); *Dean v. Coughlin*, 623 F. Supp. 392, 405 (S.D.N.Y. 1985)

(describing pain as a "form[] of irreparable harm").

### C.      The Balance of the Equities and Public Interest Favor a Stay

Under the circumstances presented here, the balance of equities and public interest

likewise favor a stay.  "Applying the law in a way that violates the Constitution is *never* in the

public's interest." *Minney v. U.S. Office of Pers. Mgmt.*, 130 F. Supp. 3d 225, 236 (D.D.C.

2015).  In addition, there is an "important public interest in the humane and constitutional

application of [a] lethal injection statute." *Nooner*, 2006 WL 8445125, at \*4; *Cooey*, 430 F.

Supp. 2d at 708.  This is especially true where, as here, there is powerful evidence that

Defendants' chosen method of execution will cause Mr. Hall to endure extraordinary pain and

suffering in his final moments, and the denial of a stay threatens to permanently extinguish Mr. Hall's meritorious claims.

That interest is not outweighed by Defendants' general interest in ensuring the finality of capital proceedings.  For seventeen years, Defendants did not execute or seek to execute any death-sentenced prisoners, including Plaintiff Hall.  Once Defendants announced their intent to do so, Plaintiffs swiftly moved for injunctive relief.[2]  A stay of a few weeks or months to fully and fairly litigate the merits of Plaintiff Hall's appeal will not substantially injure either the public or the Government where, as here, the Government's newfound urgency emerged only after nearly two decades of inaction.  *See Oscorio-Martinez*, 893 F.3d at 179 ("[T]he fact that the Government has not—until now—sought to remove SIJ applicants, much less designees, undermines any urgency surrounding Petitioners' removal.").

### Conclusion

For the foregoing reasons, Plaintiff Hall respectfully moves this Court to issue an order setting aside the Federal Lethal Injection Protocol of 2019 ("2019 Protocol") and declaring it unlawful for Defendants to carry out further executions without a prescription.  Mr. Hall further moves the Court to issue a stay of execution to allow this Court to reconsider its finding that Plaintiffs failed to make the necessary "irreparable harm" showing to warrant enjoining their executions, despite Defendants' violation of the FDCA.

Dated: November 18, 2020                    Respectfully Submitted,

                                            */s/ Amy Lentz*
                                            Amy Lentz (DC Bar No. 990095)
                                            Steptoe & Johnson, LLP
                                            1300 Connecticut Avenue NW
                                            Washington, DC 20036

---

[2] Because Defendants consented to an injunction in 2007 as to Mr. Hall, he requested that the Court leave that injunction in place.

202.429.1350
Email: alentz@steptoe.com

*Counsel for Plaintiff Orlando Hall*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 18, 2020, I caused a true and correct copy of foregoing

to be served on all following counsel via the Court's CM/ECF system.

Joshua Christopher Toll
KING & SPALDING LLP
(202) 737-8616
Email: jtoll@kslaw.com

Margaret O'Donnell
(502) 320-1837
Email: mod@dcr.net

Gerald Wesley King, Jr.
FEDERAL DEFENDER PROGRAM, INC.
(404) 688-7530
Email: gerald_king@fd.org

Charles Fredrick Walker
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
(202) 371-7000
Email: Charles.Walker@skadden.com

Alexander C. Drylewski
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
(212) 735-2129
Email: Alexander.Drylewski@skadden.com
(*pro hac vice application forthcoming)

Celeste Bacchi
OFFICE OF THE PUBLIC DEFENDER
Capital Habeas Unit
(213) 894-1887
Email: celeste_bacchi@fd.org

Jonathan Charles Aminoff
FEDERAL PUBLIC DEFENDER,
CENTRAL DISTRICT OF CALIFORNIA
(213) 894-5374
Email: jonathan_aminoff@fd.org
Gary E. Proctor
LAW OFFICES OF GARY E. PROCTOR,
LLC
(410) 444-1500
Email: garyeproctor@gmail.com

Scott Wilson Braden
FEDERAL PUBLIC DEFENDER,
EASTERN DISTRICT OF ARKANSAS
(501) 324-6144
Email: Scott_Braden@fd.org

Jonathan Kossak
Civil Division, Department of Justice
(202) 305-0612
Email: Jonathan.kossak@usdoj.gov

Jean Lin
Civil Division, Department of Justice
(202) 514-3716
Email: Jean.lin@usdoj.gov

Cristen Cori Handley
Civil Division, Department of Justice
(202) 305-2677
Email: Cristen.Handley@usdoj.gov

Paul F. Enzinna
ELLERMAN ENZINNA PLLC
(202) 753-5553
Email: penzinna@ellermanenzinna.com

Brandon David Almond
TROUTMAN SANDERS LLP
(202) 274-2864
Email: brandon.almond@troutmansanders.com

Donald P. Salzman
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
(202) 371-7983
Email: Donald.salzman@skadden.com

Steven M. Albertson
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
(202) 371-7112
Email: Steven.Albertson@skadden.com

Alexander Louis Kursman
OFFICE OF THE FEDERAL COMMUNITY
DEFENDER/EDPA
(215) 928-0520
Email: Alex_Kursman@fd.org

Robert A. Ayers
STEPTOE & JOHNSON LLP
(202) 429-6401
Email: rayers@steptoe.com

15

David Victorson
(202) 637-5600
HOGAN LOVELLS US LLP
Email: David.Victorson@hoganlovells.com

Jennifer Ying
MORRIS NICHOLS ARSHT & TUNNELL
LLP
(302) 658-9300
Email: Jying@mnat.com

Andres C. Salinas
WILMER CUTLER PICKERING HALE &
DORR LLP
(202) 663-6289
Email: Andres.Salinas@wilmerhale.com

Ryan M. Chabot
WILMER CUTLER PICKERING HALE &
DORR LLP
(212) 295-6513
Ryan.Chabot@WilmerHale.com

Dale Andrew Baich
OFFICE OF THE FEDERAL PUBLIC
DEFENDER
(602) 382-2816
Dale_Baich@fd.org

Johnny Walker
Assistant United States Attorney at United
States Attorney's Office
johnny.walker@usdoj.gov


Bradley Humphreys
Civil Division, Department of Justice
bradley.humphreys@usdoj.gov

Scott Meisler
Criminal Division, Department of Justice
scott.meisler@usdoj.gov

Shawn Nolan
FEDERAL COMMUNITY DEFENDER
OFFICE, EDPA
(215) 928-0520
Email: shawn_nolan@fd.org

Joseph William Luby
FEDERAL PUBLIC DEFENDER/EDPA
(215) 928-0520
Email: joseph_luby@fd.org

Pieter Van Tol
HOGAN LOVELLS US LLP
(212) 918-3000
Email: Pieter.Vantol@hoganlovells.com

Jonathan Jeffress
KAISER DILLON, PLLC
(202) 640-4430
Email: Jjeffress@kaiserdillon.com

Andrew Moshos
MORRIS NICHOLS ARSHT & TUNNELL
LLP
(302) 351-9197
Email: Amoshos@mnat.com

Alan E. Schoenfeld
WILMER CUTLER PICKERING HALE &
DORR LLP
(212) 937-7294
Email: Alan.Schoenfeld@wilmerhale.com

Ginger D. Anders (Bar No. 494471)
Jonathan S. Meltzer (Bar No. 888166546)
Brendan Gants (Bar No. 1031419)
MUNGER, TOLLES & OLSON LLP
1155 F Street N.W., Seventh Floor
Washington, D.C. 20004-1357
Ginger.anders@mto.com
Jonathan.meltzer_mto.com
Brendan.Gants@mto.com
(202) 220-1100

*Counsel for Plaintiff Brandon Bernard*


Timothy Kane
FEDERAL COMMUNITY DEFENDER
OFFICE, EDPA
(215) 928-0520
Email: timothy_kane@fd.org

Dated: November 18, 2020               Respectfully Submitted,

                                     */s/ Amy Lentz*
                                       Amy Lentz (DC Bar No. 990095)
                                       Steptoe & Johnson, LLP
                                       1300 Connecticut Avenue NW
                                       Washington, DC 20036
                                       202.429.1350
                                       Email - alentz@steptoe.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In the Matter of the Federal Bureau of Prisons' Execution Protocol Cases,<br><br>LEAD CASE: *Roane et al. v. Barr*<br><br>THIS DOCUMENT RELATES TO:<br><br>*Roane, et al. v. Barr*, 05-2337 | Case No. 19-mc-0145 (TSC) |

## [PROPOSED] ORDER SETTING ASIDE THE FEDERAL LETHAL INJECTION PROTOCOL AND GRANTING STAY OF EXECUTION

Upon consideration of Plaintiff Hall's Motion for an Order Setting Aside the Federal Lethal Injection Protocol and for a Stay of Execution Pending Appeal, and for good cause shown, it is hereby **ORDERED** that the Federal Lethal Injection Protocol of 2019 ("2019 Protocol") be set aside and that it is unlawful for Defendants to carry out further executions without a prescription.  It is further **ORDERED** that Plaintiff Hall's execution shall be stayed pending further order of this Court.

**SO ORDERED** this ___ day of November, 2020.


_____
TANYA S. CHUTKAN
United States District Judge