**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

IN THE MATTER OF THE FEDERAL )
BUREAU OF PRISONS' EXECUTION )
PROTOCOL CASES, )
　 )
Lead case:　　*Roane et al. v. Barr et al.* )
　 )
　 )　　Case No. 19-mc-00145-TSC
　 )
THIS DOCUMENT RELATES TO: )
　 )
*Roane, et al. v. Barr, et al.,* No. 05-2337 )

**MEMORANDUM OF POINTS AND AUTHORITIES**
**IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**
**COUNT IV OF PLAINTIFF DUSTIN HIGGS'S COMPLAINT**

Shawn Nolan, Chief, Capital Habeas Unit
Matthew Lawry, Assistant Federal Defender
Federal Community Defender Office for
 the Eastern District of Pennsylvania
601 Walnut Street, Suite 545 West
Philadelphia, PA 19106
Telephone - 215-928-0520
Email – matthew_lawry@fd.org
Email – shawn_nolan@fd.org

*Counsel for Plaintiff-Intervenor Dustin Higgs*

Dated:  November 20, 2020

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. iii

INTRODUCTION ............................................................................................................... 1

STANDARD OF REVIEW .................................................................................................. 2

ARGUMENT ..................................................................................................................... 3

I.      MR. HIGGS HAS ADEQUATELY ALLEGED THAT THE 2019 PROTOCOL
SUBJECTS HIM TO A DEMONSTRATED RISK OF SEVERE PAIN. ......................... 3

      A.    Mr. Higgs Has Alleged that His Asthma and Likely Exposure to COVID-19
Will Subject Him to Severe Pain if he is Executed Pursuant to the 2019
Protocol. ............................................................................................................... 3

      B.    Defendants Misread *Lee* to Require Dismissal of Mr. Higgs's As-Applied
Claim. .................................................................................................................... 7

      C.    Defendants' Reliance on Cases Not Decided at the Pleading Stage is
Misplaced. ............................................................................................................. 8

II.     MR. HIGGS HAS ADEQUATELY PLED KNOWN AND AVAILABLE
ALTERNATIVES ........................................................................................................ 11

CONCLUSION .................................................................................................................. 15

# TABLE OF AUTHORITIES

**Federal Cases**

*Aref v. Holder*, 774 F. Supp. 2d 147 (D.D.C. 2011) ..................... 6

*Arizona v. California*, 460 U.S. 605 (1983) ..................... 11

*Barber v. Dist. of Columbia Gov't*, 394 F. Supp. 3d 49 (D.D.C. 2019) ..................... 10

*Barr v. Clinton*, 370 F.3d 1196 (D.C. Cir. 2004) ..................... 3

*Barr v. Lee*, 140 S. Ct. 2590 (2020) ..................... 7, 8

*Baze v. Rees*, 553 U.S. 35 (2008) ..................... 3, 9, 10

*Bucklew v. Lombardi*, 783 F.3d 1120 (8th Cir. 2015) ..................... 8, 9

*Bucklew v. Precythe*, 139 S. Ct. 1112 (2019) ..................... 8, 9, 11, 13

*Cohen v. Bd. of Trustees of the Univ. of the Dist. of Columbia*, 819 F.3d 476 (D.C. Cir. 2016) ..................... 2

*Firestone v. Firestone*, 76 F.3d 1205 (D.C. Cir. 1996) ..................... 15

*Glossip v. Gross*, 576 U.S. 863 (2015) ..................... passim

*Hettinga v. United States*, 677 F.3d 471 (D.C. Cir. 2012) ..................... 2

*In re Fed. Bureau of Prisons' Execution Protocol Cases*, No. 20-5329, 2020 WL 6750375 (D.C. Cir. Nov. 18, 2020) ..................... passim

*Kellum v. Mares*, 657 F. App'x 763 (10th Cir. 2016) ..................... 7

*Odom v. Dist. of Columbia*, 248 F. Supp. 3d 260 (D.D.C. 2017) ..................... 2, 10

*Ross v. United States Capitol Police*, 195 F. Supp. 3d 180 (D.D.C. 2016) ..................... 2, 12

*Thorson v. Epps,* No. 4:08CV129-WAP-DAS, 2009 WL 1766806 at *1 (N.D. Miss. Jun. 22, 2009) ..................... 10

*United States Currency*, 859 F.3d 1085 (D.C. Cir. 2017) ..................... 10

*United States v. Toyobo Co. Ltd.*, 811 F. Supp. 2d 37 (D.D.C. 2011) ..................... 13

*Wilson v. Dunn, No. 2:16-CV-364-WKW*, 2017 WL 5619427 at *4 (M.D. Ala. Nov. 21, 2017) ..................... 7

*Winter v. Natural Res. Def. Council*, 555 U.S. 7 (2008) ..................... 7

**State Cases**

*Evans v. Hood, No. 1:19-cv-03346* (CJN), 2020 WL 3605651 (D.D.C. July 2, 2020) ..................... 13

*United States v. Newman, No. 16-1169* (CKK), 2017 WL 3575848 at *8 (D.D.C. Aug. 17, 2017) ..................... 14

**Other**

28 C.F.R. § 26.3 ..................... 13

Fed. R. Civ. P. 12(b)(6) ..................... 2

## INTRODUCTION

Plaintiff Dustin Higgs has suffered from severe asthma for years. Several times each day, he needs to use an inhaler because he struggles to breathe. Mr. Higgs is currently incarcerated at the United States Penitentiary at Terre Haute ("USP Terre Haute"), which is experiencing an outbreak of the COVID-19 virus. COVID-19 is a highly contagious respiratory illness that causes shortness of breath and lung damage in many patients. COVID-19 often causes lung damage, even when a person has otherwise displayed no symptoms of the illness.

This week, the D.C. Circuit Court of Appeals ruled that the consolidated Plaintiffs in this matter had stated a cause of action sufficient to survive a 12(b)(6) motion on their claim challenging the 2019 Protocol as cruel and unusual punishment under the Eighth Amendment. The court noted that Plaintiffs had plausibly alleged that the "use of pentobarbital in executions causes inmates to experience 'flash pulmonary edema,' a medical condition in which fluid rapidly accumulates in the lungs, causing respiratory distress and sensations of drowning and asphyxiation, which in turn induce extreme pain, terror and panic comparable to death by drowning." *In re Fed. Bureau of Prisons' Execution Protocol Cases*, No. 20-5329, 2020 WL 6750375, at *6 (D.C. Cir. Nov. 18, 2020) (internal quotation marks and citation omitted).

Mr. Higgs's Complaint contains detailed and specific allegations that his asthma and his likely exposure to COVID-19 while incarcerated at USP Terre Haute make him uniquely susceptible to extreme pain and suffering attributable to flash pulmonary edema. In a sworn declaration, Joel A. Zivot, M.D., opined that "[b]ecause COVID-19 can cause lasting lung damage, a person injected with pentobarbital would experience the feeling of suffocating or drowning even more quickly and acutely than a person who had not been infected with COVID-19." Decl. of Joel A. Zivot, M.D., at 5-6 (Aug. 31, 2020), Exhibit C ("Zivot Decl."). With respect to Mr. Higgs specifically, "the sensation of suffocation or drowning would be further

exacerbated by his asthma, which produces shortness of breath even without the presence of respiratory illness or barbiturates." *Id.* at 6.

By seeking to dismiss this claim on the pleadings, Defendants ask this Court to take them at their word that their proffered facts are more compelling—at the motion to dismiss stage, no less—than Plaintiffs' well-pleaded allegations. That is precisely what the law precludes; this Court must accept Plaintiffs' well-pleaded allegations as true and deny Defendants' motion to dismiss.

## STANDARD OF REVIEW

Under Rule 12(b)(6), the party moving to dismiss a complaint carries the burden of establishing that the complaint is legally insufficient. *See Cohen v. Bd. of Trustees of the Univ. of the Dist. of Columbia*, 819 F.3d 476, 481 (D.C.Cir.2016) (citing 5B Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (3d ed. 2015)). When analyzing a motion to dismiss brought under Rule 12(b)(6), "a court must construe the complaint in the light most favorable to the plaintiff and 'must assume the truth of all well-pleaded allegations.'" *Odom v. Dist. of Columbia*, 248 F. Supp. 3d 260, 264 (D.D.C. 2017) (citation omitted). The plaintiff "must be granted the benefit of all inferences that can be derived from the facts alleged." *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012).

In considering a 12(b)(6) motion,  "the court must limit its analysis to the four corners of the complaint, as well as any documents attached as exhibits or incorporated by reference in the complaint, or documents upon which the plaintiff's complaint necessarily relies." *Ross v. United States Capitol Police*, 195 F. Supp. 3d 180, 192 (D.D.C. 2016) (internal quotation marks and citations omitted).

**ARGUMENT**

**I.      MR. HIGGS HAS ADEQUATELY ALLEGED THAT THE 2019 PROTOCOL SUBJECTS HIM TO A DEMONSTRATED RISK OF SEVERE PAIN.**

Defendants argue, in essence, that Mr. Higgs has failed to adduce sufficient evidence that he will suffer severe pain from the injection of a large dose of pentobarbital. Defendants, however, ground their argument in cases decided well past the pleading stage. Here, Plaintiff's Complaint includes detailed, specific allegations that the 2019 Protocol is likely to cause him severe pain and suffering due to his medical conditions. Defendants have failed to meet their burden of establishing that Mr. Higgs "can prove no set of facts in support of his claim which would entitle him to relief." Memorandum of Points and Authorities in Support of Defendants' Motion to Dismiss Count IV of Plaintiff Dustin Higgs's Complaint, ECF No. 306-1 ("Memo.") at 6 (quoting *Barr v. Clinton*, 370 F.3d 1196, 1202 (D.C. Cir. 2004) (citation omitted)).

**A.      Mr. Higgs Has Alleged that His Asthma and Likely Exposure to COVID-19 Will Subject Him to Severe Pain if he is Executed Pursuant to the 2019 Protocol.**

To state a claim for relief under the Eighth Amendment, a condemned prisoner must allege that the planned method of execution "presents a risk that is 'sure or very likely to cause serious illness and needless suffering.'" *Glossip v. Gross*, 576 U.S. 863, 877 (2015) (quoting *Baze v. Rees*, 553 U.S. 35, 50 (2008)). Specifically, a prisoner must allege either a "substantial risk of serious harm" that is "objectively intolerable," or a "demonstrated risk of severe pain." *Id.* (quoting *Baze*, 553 U.S. at 50, 61). The facts pled in Mr. Higgs's complaint—which must be taken as true at the motion to dismiss stage—readily meet this standard.

Like the other plaintiffs in this case, Mr. Higgs has alleged that the 2019 Protocol is likely to cause flash pulmonary edema resulting in severe pain. Flash pulmonary edema is a rapid accumulation of fluid in the lungs, which produces a sensation of drowning. *See* Decl. of Gail

3

Van Norman, M.D., at 33-34 (Nov. 11, 2019), Exhibit A ("Van Norman Decl."); Decl. of Mark

A. Edgar, M.D., at 19-21 (Oct. 24, 2019), Exhibit B ("Edgar Decl."); Zivot Decl. at 2-3. As Dr.

Van Norman has explained, "[n]ot being able to breathe during drowning or asphyxiation is one

of the most powerful, excruciating feelings known to man." Van Norman Decl. at 34. People

who are drowning typically "will reach such a level of agony that they will be compelled to take

a 'breath' within about 1 minute," as "[p]anic and terror, and the attempt to fight take over." *Id.*

at 34; *see* Zivot Dec. at 3 ("Severe pulmonary edema creates the sensation of drowning."); Edgar

Decl. at 3 ("[Pulmonary edema] produces sensations similar to drowning or asphyxiation as fluid

occupies a greater volume of the air spaces.").

Importantly, the Complaint alleges that the administration of pentobarbital will produce

only *unresponsiveness* rather than a lack of consciousness or awareness, such that Mr. Higgs is

very likely to experience the excruciating pain of pulmonary edema while conscious. Compl.

¶ 78. The experience of flash pulmonary edema while a person is conscious "would result in

extreme pain, terror and panic." Decl. of Mark A. Edgar, M.D., at 21 (Oct. 24, 2019), Exhibit B).

In addition to these allegations regarding the experience of flash pulmonary edema for all

prisoners executed pursuant to the 2019 Protocol, Mr. Higgs has separately alleged that his

asthma and his likely exposure to COVID-19 while housed at USP Terre Haute make it

especially likely that he will suffer from severe and immediate flash pulmonary edema. Contrary

to Defendants' assertions, the risks that Mr. Higgs faces do not "rest[] on hypotheticals." Memo.

at 9. Mr. Higgs suffers from severe asthma, a condition which primarily affects the lungs. His

asthma regularly causes him to struggle for air, and he uses an inhaler several times each day in

order to breathe. As Dr. Zivot has explained, "the sensation of suffocation or drowning" that

execution by pentobarbital is likely to produce "would be further exacerbated by his asthma,

which produces shortness of breath even without the presence of respiratory illness or barbiturates." Zivot Decl. at 5.

Moreover, Mr. Higgs's risk of exposure to COVID-19, which would further compromise his lung function, is significant. As Dr. Zivot has explained, "[b]ecause COVID-19 can cause lasting lung damage, a person injected with pentobarbital would experience the feeling of suffocating or drowning even more quickly and acutely than a person who had not been infected with COVID-19." Zivot Decl. at 5-6. Defendants note that "[a]t present . . . there are only three active cases of COVID-19 among inmates at USP Terre Haute." Memo. at 7 n.3. At the time of this filing, however, the Bureau of Prisons has reported that an additional 24 inmates at USP Terre Haute have pending COVID-19 tests, and that 84 inmates in total have tested positive for the virus to date. *See* https://www.bop.gov/coronavirus/ (last visited Nov. 20, 2020). As the parties litigate this case, and as the prevalence of COVID-19 in the United States skyrockets, the number of inmates who have been exposed to COVID-19 will only continue to rise. Mr. Higgs has plausibly alleged that the conditions and facilities at USP Terre Haute do not practically allow for social distancing or other preventive measures to protect Mr. Higgs from contracting the virus. *See* Compl. ¶ 94. These allegations, combined with Mr. Higgs's allegations regarding the highly infectious nature of the virus and the continued presence of active cases at USP Terre Haute, are sufficient at the pleading stage to establish a serious risk that Mr. Higgs has been—or will soon be—exposed to COVID-19. *See id.* at ¶¶ 92-93, 95.

Defendants also contend that "neither Higgs nor his expert explain how Higgs might have already suffered lung damage from COVID-19 and . . . remain totally unaware of it." Memo. at 10. But as the Complaint specifically alleges,

> Even those who never develop outward symptoms of COVID-19 can develop lung damage. In some cases, "[l]ung damage may be present and unnoticed by the

> infected individual." [Zivot Decl.] at 4. In fact, a recent study revealed that "over
> half of asymptomatic people infected with COVID-19 showed abnormalities on a
> CT scan of the lungs." *Id.*

Compl. at ¶ 97.

Although expert evidence is not required at the pleading stage, Mr. Higgs has supported the factual allegations outlined above with declarations from medical experts. *See, e.g.*, Compl. ¶¶ 92-97, 100-103 (citing Zivot Decl.); *id.* at ¶¶ 78, 80-85, 88, 91, 101  (citing Van Norman Decl.); *id.* at ¶¶ 79, 81, 82, 85, 87, 101 (citing Edgar Dec.); *see In re Fed. Bureau of Prisons' Execution Protocol Cases*, 2020 WL 6750375,  at *6  (noting with respect to the consolidated plaintiffs' Eighth Amendment claim in this matter that "[w]hile not necessary at the pleading stage, the Complaint plausibly substantiates its allegations with the declarations of multiple expert witnesses and eyewitness testimony from executions that employed the pentobarbital-only execution method."). With respect to Mr. Higgs's as-applied challenge, Mr. Higgs relies on the expert opinion of Dr. Joel Zivot, an experienced anesthesiologist and professor of anesthesiology who currently treats COVID-19 patients. Zivot Decl. at 1, 3-4. Dr. Zivot has opined that "[i]njecting Mr. Higgs—a person with a serious underlying respiratory condition who has likely been exposed to COVID-19 in BOP custody—with pentobarbital is virtually certain to cause extreme pain and suffering." Zivot Decl. at 6. Dr. Zivot's informed medical opinion regarding Mr. Higgs's likely experience of pulmonary edema is more than sufficient to survive a motion to dismiss.

In short, Mr. Higgs's allegations are anything but "speculation"—they are detailed and specific claims, backed by scientific evidence and sworn declarations. These allegations amply satisfy the pleading standards. *See Aref v. Holder*, 774 F. Supp. 2d 147, 165 (D.D.C. 2011) (allegations about disparity in prisoners' access to phone calls were "specific and detailed"

enough to plausibly state a claim for constitutional violation); *see also Kellum v. Mares*, 657 F. App'x 763, 770 (10th Cir. 2016) (denying motion to dismiss where plaintiff "included in her complaint the specific underlying factual allegations in support of her [Eighth Amendment] claim"); *Wilson v. Dunn*, No. 2:16-CV-364-WKW, 2017 WL 5619427 at *4 (M.D. Ala. Nov. 21, 2017) (inmate is "not required to try his claim [challenging Alabama's execution protocol] in the pleadings").

**B.**     **Defendants Misread *Lee* to Require Dismissal of Mr. Higgs's As-Applied Claim.**

Defendants also misconstrue the scope of the Supreme Court's recent decision in *Barr v. Lee*, 140 S. Ct. 2590 (2020). As the D.C. Circuit recently ruled:

> *Lee* did not hold that the Eighth Amendment turns its back on needless and extreme suffering as long as it is caused by flash pulmonary edema. For starters, *Lee* involved an entirely different legal question. The Supreme Court's decision there arose not out of a motion to dismiss, but Lee's motion for a preliminary injunction, which is "an extraordinary remedy that may only be awarded upon a clear showing that plaintiffs are entitled to such relief." *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 22 (2008).

*In re Fed. Bureau of Prisons' Execution Protocol Cases*, 2020 WL 6750375, at *7. As that court noted, "[t]hat is a decidedly far more searching inquiry than the question of whether a complaint properly alleges a claim for relief." *Id.* Relatedly, *Lee* did not

> forevermore categorically exempt[] the federal government's execution protocol from Eighth Amendment scrutiny . . . .
>
> Rather, all that the Supreme Court said in *Lee* was that, under the demanding preliminary-injunction standard and before any conclusive factual findings could be made in the case, "competing expert testimony" over whether pulmonary edema occurs before or after the inmate is rendered insensate would not by itself support a "last-minute" stay of execution. *Lee*, 140 S. Ct. at 2591. Nothing in that ruling addressed the ability of a well-pleaded complaint to go forward for discovery and fact finding in the normal course, and it certainly did not *sua sponte* enter final judgment in the case.

*Id.* at *8. Contrary to Defendants' assertion, Mr. Higgs's allegation that he will experience severe pain resulting from flash pulmonary edema is sufficient to state an Eighth Amendment claim at the pleading stage—and even more so in light of his particularized risk that he substantiates with expert evidence.

Defendants' assertion that the widespread use of pentobarbital in state executions compels dismissal of Mr. Higgs's as-applied challenge is similarly unpersuasive. *See* Memo. at 11 (citing *Lee*, 140 S. Ct. at 2591). The fact that other protocols use pentobarbital does not support dismissal of Plaintiffs' well-pleaded and scientifically-supported allegations that the 2019 Protocol "is virtually certain to cause extreme pain and suffering" to Mr. Higgs, "a person with a serious underlying respiratory condition who has likely been exposed to COVID-19 in BOP custody." Zivot Decl. at 6. Moreover, the allegedly "wide" toleration of pentobarbital reflects the outdated understanding that a prisoner's unresponsiveness to the barbiturate demonstrates his unconsciousness—according to Plaintiffs' well-pleaded allegations that the Court must accept as true. Compl. ¶ 78.

**C.    Defendants' Reliance on Cases Not Decided at the Pleading Stage is Misplaced.**

In arguing that Mr. Higgs has failed to state a claim for relief, Defendants repeatedly invoke cases that were decided at the *evidentiary* stage rather than the *pleading* stage. For example, Defendants rely heavily on *Bucklew v. Precythe*, 139 S. Ct. 1112 (2019) (Memo. at 4-5, 7-8, 10-15, 17-18), which was decided at the summary judgment stage only after the parties had engaged in "extensive discovery." *Bucklew*, 139 S. Ct. at 1121. Notably, at an earlier stage of the litigation, the Eighth Circuit in *Bucklew* reversed the district court's dismissal of the plaintiff's Eighth Amendment claim after "conclud[ing] that the expert affidavits Bucklew submitted . . . d[id] not contain the specificity necessary to prevail . . . ." *Bucklew v. Lombardi*, 783 F.3d 1120,

8

1123 (8th Cir. 2015). The Eighth Circuit held that such a conclusion "was a merits analysis appropriate in ruling on a motion for summary judgment, not an analysis of whether the complaint plausibly pleaded an Eighth Amendment claim." *Id.*

Moreover, as the D.C. Circuit has recognized, "[a]llegations regarding flash pulmonary edema were not . . . before the Supreme Court in *Bucklew*." *In re Fed. Bureau of Prisons' Execution Protocol Cases*, 2020 WL 6750375, at \*5. Indeed, the plaintiff in Bucklew *conceded* "that the State's lethal injection protocol [was] constitutional in most applications." *Bucklew*, 139 S. Ct. at 1116. The Court in *Bucklew* was considering a particular type of harm alleged by a prisoner with a specific circulatory condition that Mr. Higgs does not have. Importantly, Mr. Higgs alleges different medical circumstances that put him at particular risk—namely, his poor lung function and difficulty breathing due to severe asthma, and his increased risk of additional lung damage because he is housed in a facility experiencing current spread of COVID-19. Defendants' contention that *Bucklew*—a case considering an entirely different set of medical circumstances, which did not raise the possibility of flash pulmonary edema—"forecloses Higgs's as-applied Eighth Amendment claim" is entirely without merit. *See* Memo. at 12.

Defendants also rely heavily on *Glossip*. Memo. at 7, 11-12, 15-19. But *Glossip* was an appeal of the denial of a motion for preliminary injunction in which the plaintiffs were required to establish "a likelihood of success on the merits of their claim," and which was decided only after "a 3-day evidentiary hearing." *Glossip*, 576 U.S. at 874-75. Perhaps most egregiously, Defendants rely upon *Baze*, (Mot. at 11-15, 17, 20), which was decided "[a]fter a 7-day bench trial during which the trial court received the testimony of approximately 20 witnesses, including numerous experts." *Baze*, 553 U.S. at 46.

These cases lend no support to Defendants' argument that Mr. Higgs's as-applied Eighth

Amendment claim should be dismissed outright at the pleading stage. *See Barber v. Dist. of*

*Columbia Gov't*, 394 F. Supp. 3d 49, 58 (D.D.C. 2019) (defendants' attempt to "dispute . . . the

alleged facts . . . improperly ignores the Court's duty to accept the allegations of the complaint as

true and to construe the complaint liberally at the motion-to-dismiss stage"); *see also Thorson v.*

*Epps*, No. 4:08CV129-WAP-DAS, 2009 WL 1766806 at *1 (N.D. Miss. Jun. 22, 2009) (denying

motion to dismiss Eighth Amendment challenge to Mississippi's execution protocol and

emphasizing that *Baze* was decided "only after the factual record had been completely

developed").

Finally, Defendants' arguments regarding the relative credibility of Drs. Zivot and

Antognini are inapposite. *See* Memo. at 12-13, 13 n.4. Defendants' speculation about the relative

credibility of the two experts, once they opine on Mr. Higgs's medical condition and are tested

through cross-examination, are wholly irrelevant to this court's analysis of whether Mr. Higgs's

complaint alleges facts sufficient to state a claim for relief. It is black letter law that a court

considering a 12(b)(6) motion "must construe the complaint in the light most favorable to the

plaintiff and 'must assume the truth of all well-pleaded allegations.'" *Odom*, 248 F. Supp. 3d at

264 (citation omitted). Indeed, even if the parties had already engaged in discovery and

Defendants moved for summary judgment on Mr. Higgs's as-applied claim—which has certainly

not yet happened in this case—evaluation of the experts' relative credibility would be entirely

inappropriate. *See United States v. Seventeen Thousand Nine Hundred Dollars ($17,900.00) in*

*United States Currency*, 859 F.3d 1085, 1091 (D.C. Cir. 2017) (in ruling on a motion for

summary judgment, "the court may not make credibility determinations or otherwise weigh the

evidence.") (internal quotation marks and citation omitted). Here, Mr. Higgs has plausibly

alleged that, in light of his medical conditions, he faces a substantial risk of severe pain from execution with pentobarbital. He has supported these allegations with a sworn declaration from a medical expert with appropriate training, experience, and credentials. Mr. Higgs's allegations are more than sufficient at the pleading stage, and Mr. Higgs is entitled to discovery in order to further develop the evidence.

## II.    MR. HIGGS HAS ADEQUATELY PLED KNOWN AND AVAILABLE ALTERNATIVES.

Mr. Higgs has also adequately alleged a feasible alternative method of execution. "[T]o establish an Eighth Amendment violation, 'a prisoner must show a feasible and readily implemented alternative method of execution that would significantly reduce a substantial risk of severe pain.'" Compl. ¶ 143 (quoting *Bucklew*, 139 S. Ct. at 1125). Plaintiff has specifically alleged three such alternatives relevant to his as-applied challenge: (i) "FDA-approved pentobarbital" accompanied by "a pre-dose of a pain-relieving, anesthetic drug in a sufficiently large clinical dose"; (ii) "compounded pentobarbital that complies with all state and federal compounding requirements, and has been tested for purity and potency" also accompanied by "a pre-dose of a pain-relieving anesthetic drug"; and (iii) the firing squad. *Id.* ¶ 144.

As the D.C. Circuit recently held, these allegations sufficiently plead an alternative method of execution that would significantly reduce the risk of severe pain resulting from flash pulmonary edema. *See In re Fed. Bureau of Prisons' Execution Protocol Cases*, 2020 WL 6750375, at *6-*7. The D.C. Circuit's ruling is law of the case and binding on this court. *See Arizona v. California*, 460 U.S. 605, 618-19 (1983) ("As most commonly defined, the doctrine [of law of the case] posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.").

Moreover, Defendants' arguments that they could not feasibly implement Mr. Higgs's proffered alternatives are unavailing. First, Defendants' unsupported allegation that they would be unable to procure FDA-approved pentobarbital, Memo. at 15, falls squarely outside the pleadings. As such, it cannot constitute proper grounds for dismissal. *See Ross*, 195 F. Supp. 3d at 192 (D.D.C. 2016). Even if Defendants' unsworn and untested allegations could be considered by the Court, they are contradicted by the apparent fact that the State of Missouri—whose execution method the Defendants claim to be imitating—uses FDA-approved pentobarbital in its executions. *See* AR70-71; McDaniel, *Missouri Execution Drug Purchases Revealed*, BuzzFeed News (Jan. 8, 2017), *available at* https://www.buzzfeednews.com/article/chrismcdaniel/missouri-execution-drugpurchases-revealed. And even if Defendants were wholly unable to obtain FDA-approved pentobarbital, they fail to explain why it would not be feasible to procure "compounded pentobarbital that complies with all state and federal compounding requirements, and has been tested for purity and potency." Compl. ¶ 144. Indeed, Defendants have contracted with multiple facilities to test their compounded pentobarbital and to conduct a long-term stability study in an attempt to extend the beyond-use date for the drug. *See* AR 970-1015, 1075-1083, 1140-49.

Defendants further contend that adding an opioid to the Protocol is not feasible. In making this argument, Defendants rely on a fear of backlash from drug manufacturers; the allegedly "untested" nature of Mr. Higgs's proposal; speculation about drug interactions between an opioid and pentobarbital; and the alleged difficulty of using a two-drug protocol. Memo. at 15-17. With respect to Defendants' "concern that drug manufacturers have threatened to refuse to provide medications used for clinical treatments," *id.* at 17 (internal quotation marks omitted), this averment stands in stark contrast to the allegations in the Complaint that the BOP "has

confirmed that it has located a lawfully licensed compounding pharmacy in the United States that is able and willing to 'lawfully provide [BOP] with commercially manufactured medications as they are available,' and to compound fentanyl as needed." Compl. ¶ 144a. Such an allegation raises a plausible inference, based on the BOP's own statements, that it can obtain fentanyl. At best, then, Defendants' arguments merely raise issues of fact that are not properly decided on a motion to dismiss. *See United States v. Toyobo Co. Ltd.*, 811 F. Supp. 2d 37, 50 (D.D.C. 2011) (question of degradation of body armor was "a question of fact inappropriate for resolution at the pre-discovery motion to dismiss stage"); *Evans v. Hood*, No. 1:19-cv-03346 (CJN), 2020 WL 3605651, at *4 (D.D.C. July 2, 2020) (timing of individual's licensing was "a question of fact not suitable for resolution on a Motion to Dismiss").

Defendants' allegations that a pre-dose of an opioid is "untested" and that a two-drug protocol is not feasible are similarly unavailing. As the D.C. Circuit has held in this case,

> the complaint does not invoke a novel or "untried and untested" mode of execution. *Bucklew*, 139 S. Ct. at 1130 (internal citations omitted). The combination of drugs as part of lethal injection protocols has been used by both states and the federal government, and is still used in a number of jurisdictions. The two-drug protocol also fits squarely within the plain text of the federal execution protocol, which provides that the method of execution is the "intravenous injection of a lethal substance or substances[.]" 28 C.F.R. § 26.3(a)(4). To be sure, Plaintiffs propose using two drugs rather than the three drugs used in many capital-punishment jurisdictions. But that change *eases* the logistics of known protocols, and does so by adding a commonly used and available pain reliever.

*In re Fed. Bureau of Prisons' Execution Protocol Cases*, 2020 WL 6750375, at *7 (citations omitted). And Defendants' speculation about possible interactions between an opioid and pentobarbital, *see* Memo. at 16, are simply that: unsupported speculation. In contrast, Mr. Higgs has proffered an expert report from a pharmacologist indicating that "use of morphine or fentanyl as a premedication or the first drug in the lethal injection protocol would provide analgesia to

prevent the pain and suffering from the lethal dose of pentobarbital." Decl. of Craig W. Stevens, Ph.D., at 7 (Nov. 1, 2019), Exhibit E.

Finally, Defendants' arguments regarding the firing squad misconstrue *Glossip*. *See* Memo. at 19 ("[T]he Supreme Court . . . has also noted that firing squad is a 'more primitive' method of execution."). In reality, the "more primitive" description was taken from *Glossip*'s "principal dissent" and was not the plurality's holding. *Glossip*, 576 U.S. at 881 (citing the dissent at 977). To the contrary, *Glossip* reaffirmed the constitutionality of the firing squad. *See id.* Defendants nevertheless attempt to introduce facts outside of the pleadings by arguing about the specifics of the firing squad as authorized by Utah, Oklahoma, and Mississippi. Memo. at 19. As with Defendants' previous attempts on this score, the Court should reject this improper argument on a motion to dismiss. *See United States v. Newman*, No. 16-1169 (CKK), 2017 WL 3575848 at *8 (D.D.C. Aug. 17, 2017) ("The Court will not dismiss this case at the outset merely because the allegations in the complaint are rebutted by assertions . . . in [defendant's] briefing").

14

## CONCLUSION

For the foregoing reasons, this Court should deny Defendants' Motion to Dismiss Count IV of Plaintiff Dustin Higgs's Complaint. To the extent that the Court finds that Plaintiff's allegations are insufficient to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), Plaintiff respectfully requests that he be given the opportunity to amend his pleading in order to cure any defects. *See Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996) (dismissal with prejudice is appropriate only when the court "determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency").

Dated:  November 20, 2020                                    Respectfully submitted,

                                                             /s/ Shawn Nolan
                                                             Shawn Nolan, Chief, Capital Habeas Unit
                                                             Matthew Lawry, Assistant Federal Defender
                                                             Federal Community Defender Office, E.D. Pa.
                                                             601 Walnut Street, Suite 545 West
                                                             Philadelphia, PA 19106
                                                             Telephone - 215-928-0520
                                                             Email – matthew_lawry@fd.org
                                                             Email – shawn_nolan@fd.org

*Counsel for Plaintiff-Intervenor Dustin Higgs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 20, 2020, I caused a true and correct copy of

foregoing to be served on all counsel of record via the Court's CM/ECF system.  Pursuant to this

Court's August 20, 2019 Order, below is a list of all counsel of record.  The names marked with

an asterisk (*) have no email provided on the docket and are no longer with the identified firms.

Alan Burch
U.S. Attorney's Office for the District of
Columbia
(202) 252-2550
Email: alan.burch@usdoj.gov

Peter S. Smith
United States Attorney's Office
Appellate Division
(202) 252-6769
Email: peter.smith@usdoj.gov

Ethan P. Davis
Civil Division, U.S. Department of Justice
(202) 616-4171
Email: Ethan.Davis@usdoj.gov

Robert J. Erickson
US Department of Justice
(202) 514-2841
Email: Robert.erickson@usdoj.gov

Joshua Christopher Toll
KING & SPALDING LLP
(202) 737-8616
Email: jtoll@kslaw.com

Charles Anthony Zdebski
ECKERT SEAMANS CHERIN &
MELLOTT, LLC
(202) 659-6605
Email: czdebski@eckertseamans.com

Gerald Wesley King, Jr.
FEDERAL DEFENDER PROGRAM, INC.
(404) 688-7530

Paul R. Perkins
Civil Division, Department of Justice
(202) 514-5090
Email: Paul.R.Perkins@usdoj.gov

Jonathan Kossak
Civil Division, Department of Justice
(202) 305-0612
Email: Jonathan.kossak@usdoj.gov

Denise M. Clark
U.S. Attorney's Office for the District of
Columbia
(202) 252-6605
Email: Denise.Clark@usdoj.gov

Jean Lin
Civil Division, Department of Justice
(202) 514-3716
Jean.lin@usdoj.gov

Cristen Cori Handley
Civil Division, Department of Justice
(202) 305-2677
Cristen.Handley@usdoj.gov

Paul F. Enzinna
ELLERMAN ENZINNA PLLC
(202) 753-5553
Email: penzinna@ellermanenzinna.com

Brandon David Almond
TROUTMAN SANDERS LLP
(202) 274-2864
Email: brandon.almond@troutmansanders.com

1

Email: gerald_king@fd.org

Charles Fredrick Walker
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
(202) 371-7000
Email: Charles.Walker@skadden.com

Alexander C. Drylewski
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
(212) 735-2129
Email: Alexander.Drylewski@skadden.com
(*pro hac vice application forthcoming)

Celeste Bacchi
OFFICE OF THE PUBLIC DEFENDER
Capital Habeas Unit
(213) 894-1887
Email: celeste_bacchi@fd.org

Jonathan Charles Aminoff
FEDERAL PUBLIC DEFENDER,
CENTRAL DISTRICT OF CALIFORNIA
(213) 894-5374
Email: jonathan_aminoff@fd.org

Billy H. Nolas
FEDERAL COMMUNITY DEFENDER
OFFICE FOR THE EDPA
(215) 928-0520
Email: Billy_Nolas@fd.org

*Jeanne Vosberg Sourgens
VINSON & ELKINS LLP
(202) 639-6633

William E. Lawler, III
VINSON & ELKINS LLP
(202) 639-6676
Email: wlawler@velaw.com

Evan D. Miller
VINSON & ELKINS LLP
(202) 639-6605
Email: EMiller@velaw.com

Donald P. Salzman
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
(202) 371-7983
Email: Donald.salzman@skadden.com

Steven M. Albertson
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
(202) 371-7112
Email: Steven.Albertson@skadden.com

Craig Anthony Harbaugh
FEDERAL PUBLIC DEFENDER, CENTRAL
DISTRICT OF CALIFORNIA
(213) 894-7865
Email: craig_harbaugh@fd.org

Alexander Louis Kursman
OFFICE OF THE FEDERAL COMMUNITY
DEFENDER/EDPA
(215) 928-0520
Email: Alex_Kursman@fd.org

Kathryn B. Codd
VINSON & ELKINS LLP
(202) 639-6536
Email: kcodd@velaw.com

Robert E. Waters
KING & SPALDING LLP (202) 737-0500
Email: rwaters@velaw.com

Yousri H. Omar
VINSON & ELKINS LLP
(202) 639-6500
Email: yomar@velaw.com

*William E. Hoffman, Jr.
KING & SPALDING LLP
(404) 572-3383

Mark Joseph Hulkower
STEPTOE & JOHNSON LLP
(202) 429-6221
Email: mhulkower@steptoe.com

Margaret O'Donnell
(502) 320-1837
Email: mod@dcr.net

Abigail Bortnick
KING & SPALDING LLP
(202) 626-5502
Email: abortnick@kslaw.com

Matthew John Herrington
STEPTOE & JOHNSON LLP
(202) 429-8164
Email: mherrington@steptoe.com

Amy J. Lentz
STEPTOE & JOHNSON LLP
(202) 429-1320
Email: Alentz@steptoe.com

Gary E. Proctor
LAW OFFICES OF GARY E. PROCTOR,
LLC
(410) 444-1500
Email: garyeproctor@gmail.com

Scott Wilson Braden
FEDERAL PUBLIC DEFENDER,
EASTERN DISTRICT OF ARKANSAS
(501) 324-6144
Email: Scott_Braden@fd.org

Amy Gershenfeld Donnella
FEDERAL COMMUNITY DEFENDER
OFFICE FOR THE EDPA
(215) 928-0520
Email: amy_donnella@fd.org

David Victorson
(202) 637-5600
HOGAN LOVELLS US LLP
Email: David.Victorson@hoganlovells.com

John D. Beck
HOGAN LOVELLS US LLP
(212) 918-3000

Robert A. Ayers
STEPTOE & JOHNSON LLP
(202) 429-6401
Email: rayers@steptoe.com

Robert L. McGlasson
MCGLASSON & ASSOCIATES, PC
(404) 314-7664
Email: rlmcglasson@comcast.net

Sean D. O'Brien
PUBLIC INTEREST LITIGATION CLINIC
(816) 363-2795
Email: dplc@dplclinic.com

Shawn Nolan
FEDERAL COMMUNITY DEFENDER
OFFICE, EDPA
(215) 928-0520
Email: shawn_nolan@fd.org

Joseph William Luby
FEDERAL PUBLIC DEFENDER/EDPA
(215) 928-0520
Email: joseph_luby@fd.org

Pieter Van Tol
HOGAN LOVELLS US LLP
(212) 918-3000
Email: Pieter.Vantol@hoganlovells.com

Jonathan Jeffress
KAISER DILLON, PLLC
(202) 640-4430
Email: Jjeffress@kaiserdillon.com

Andrew Moshos
MORRIS NICHOLS ARSHT & TUNNELL
LLP
(302) 351-9197
Email: Amoshos@mnat.com

3

Email: john.beck@hoganlovells.com

Amelia J. Schmidt
KAISER DILLON, PLLC
(202) 869-1301
Email: Aschmidt@kaiserdillon.com

Norman Anderson
KAISER DILLON PLLC
(202) 640-2850
nanderson@kaiserdillon.com

Jennifer Ying
MORRIS NICHOLS ARSHT & TUNNELL
LLP
(302) 658-9300
Email: Jying@mnat.com

Andres C. Salinas
WILMER CUTLER PICKERING HALE &
DORR LLP
(202) 663-6289
Email: Andres.Salinas@wilmerhale.com

*Ryan M. Chabot
WILMER CUTLER PICKERING HALE &
DORR LLP
(212) 295-6513

Dale Andrew Baich
OFFICE OF THE FEDERAL PUBLIC
DEFENDER
(602) 382-2816
Dale_Baich@fd.org

Alan E. Schoenfeld
WILMER CUTLER PICKERING HALE &
DORR LLP
(212) 937-7294
Email: Alan.Schoenfeld@wilmerhale.com

Kathryn Louise Clune
CROWELL & MORING LLP
(202) 624-5116
kclune@crowell.com

Jennifer M. Moreno
OFFICE OF THE PUBLIC FEDERAL
DEFENDER, DISTRICT OF ARIZONA
(602) 382-2718
Jennifer_moreno@fd.org

Ginger Dawn Anders
MUNGER, TOLLES & OLSON LLP
(202) 220-1107
Ginger.anders@mto.com

*Jonathan S. Meltzer
MUNGER, TOLLES & OLSON LLP
(202) 220-1100

*Brendan Gants
MUNGER, TOLLES & OLSON LLP
(202) 220-1100

Timothy Kane
FEDERAL COMMUNITY DEFENDER
OFFICE, EDPA
(215) 928-0520
Email: timothy_kane@fd.org

Dated:  November 20, 2020

Respectfully submitted,

/s/ Shawn Nolan
Shawn Nolan, Chief, Capital Habeas Unit
Federal Community Defender Office, E.D. Pa.
601 Walnut Street, Suite 545 West
Philadelphia, PA 19106
Telephone - 215-928-0520
Email – shawn_nolan@fd.org