***EXECUTIONS SCHEDULED FOR DECEMBER 10 AND 11, 2020***

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN THE MATTER OF THE FEDERAL BUREAU OF PRISONS' EXECUTION PROTOCOL CASES, <br><br> Lead case:   *Roane et al. v. Barr et al.* <br><br><br> THIS DOCUMENT RELATES TO: <br><br> ALL CASES <br><br> *Bourgeois v. United States Department of Justice, et al.*, No. 12-cv-0782-TSC | Case No. 19-mc-00145-TSC |

### STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION BARRING THE EXECUTION OF PLAINTIFFS BRANDON BERNARD AND ALFRED BOURGEOIS

In accordance with Local Rule 7(a), Plaintiffs Brandon Bernard and Alfred Bourgeois submit this statement of points and authorities in support of their motion for a preliminary injunction.

### BACKGROUND

On July 25, 2019, after considering the matter for eight years, the Bureau of Prisons (BOP) announced a new execution protocol for carrying out federal death sentences using the barbiturate pentobarbital, along with an initial notice that the Government intended to execute Mr. Bourgeois on January 13, 2020. Defendants issued an amended notice of the execution date on August 22, 2019. Shortly thereafter, Mr. Bourgeois, along with four other plaintiffs who were at that time scheduled to be executed in December 2019 and January 2020, sought a preliminary injunction barring their respective executions while the legality of the new protocol was

adjudicated. Mr. Bourgeois and his co-plaintiffs sought relief on several grounds, including in relevant part that the 2019 Protocol violates the Federal Death Penalty Act (FDPA), 18 U.S.C. § 3591 *et seq.*, which does not permit the creation of a uniform federal protocol for the implementation of death sentences without reference to state policy.

In November 2019, this Court granted a preliminary injunction, finding that Mr. Bourgeois and his co-plaintiffs were likely to succeed on the merits of their claim that the 2019 Protocol violates the FDPA, that the plaintiffs would suffer irreparable harm in the absence of relief, and that the equities tipped in the plaintiffs' favor. *See* Dkt. #50.

In February 2020, Mr. Bernard filed a complaint seeking declaratory and injunctive relief against Defendants. Mr. Bernard's action was consolidated with this master case.

On April 7, 2020, a divided panel of the D.C. Circuit vacated the preliminary injunction. *See In re Fed. Bureau of Prisons' Execution Protocol Cases*, 955 F.3d 106 (D.C. Cir. 2020) (per curiam) ("*In re FBOP*"). In a per curiam opinion joined by Judges Katsas and Rao, and over a dissent from Judge Tatel, the court held that the plaintiffs' FDPA claim failed on the merits. *See id.* at 112 (per curiam). Judges Katsas and Rao reached this conclusion for different reasons, which they each explained in separate concurrences. *See id.* at 113-121 (Katsas, J., concurring); *id.* at 129-133 (Rao, J., concurring). The D.C. Circuit denied the plaintiffs' petition for rehearing en banc on May 15, and the Supreme Court denied their petition for writ of certiorari on June 29. *See Bourgeois v. Barr*, No. 19A1050, 2020 WL 3492763 (U.S. June 29, 2020) (mem.).

On June 1, 2020, in accordance with the briefing schedule ordered by this Court, Plaintiffs to these consolidated cases filed an Amended Complaint in this Court raising numerous claims for relief under various constitutional and statutory provisions. In relevant part, Plaintiffs alleged that the 2019 Protocol violates the FDPA by failing to comply with state execution

protocols and procedures, including those codified in state law.[1] On September 20, 2020, this Court granted summary judgment to Defendants despite agreeing with the merits of Plaintiffs' FDPA claim. *See* Dkt. #261. The Court noted two important discrepancies between the government's 2019 Protocol and several of the state statutes at issue: some state statutes dictate execution methods that differ from the 2019 Protocol (such as by giving the prisoner a choice of electrocution or lethal injection), while others dictate important aspects of the execution process (such as the scheduling of the execution or a requirement that multiple physicians attend it). *See id.* at 26-28. This Court recognized that the FDPA requires the government to follow both types of statutes, but nevertheless granted summary judgment to Defendants based solely on Defendants' non-binding "notice" that they intend to comply or will consider complying with those specific requirements – and therefore, the Court concluded that the parties did not present a live controversy or actual disagreement with respect to the FDPA claim. *Id.* at 27, 30.

Plaintiffs thereafter filed a motion asking this Court to alter or amend its judgment on the FDPA claim, and appealed to the D.C. Circuit immediately following this Court's denial of that motion. In light of fast-approaching execution dates for Plaintiffs Orlando Hall (November 19) and Mr. Bernard (December 10), the D.C. Circuit expedited briefing on the appeal and heard oral argument on November 16. The D.C. Circuit issued an opinion on November 18, 2020, holding in relevant part that the district court did not err in granting summary judgment for the government on Plaintiffs' FDPA claim. This holding was limited to agreement with the district court's conclusion "that there was no conflict in this case, either because the government had

---

[1] On June 15, while Plaintiffs' claims remained pending and long before completion of the Court-ordered briefing schedule, the government set new execution dates in July and August against four of the Plaintiffs in this case. Neither Mr. Bernard nor Mr. Bourgeois received a new execution date at that time.

committed to complying with the state statutes at issue or because no Plaintiff had requested to be executed in accordance with them." *In re Fed. Bureau of Prisons' Execution Protocol Cases*, — F.3d —, No. 20-5329, 2020 WL 6750375, at *11 (D.C. Cir. Nov. 18, 2020) (citing Dkt. #261 at 30-31). The D.C. Circuit purposefully declined "to engage in a line-drawing exercise about whether a statute setting the time of execution is a procedure that implements 'the sentence in the manner prescribed by the law of the State in which the sentence is imposed.'" *Id.* (quoting 18 U.S.C. § 3596(a)).

On October 16, 2020, Defendants scheduled Mr. Bernard's execution for December 10, 2020, providing him with only 55 days' notice of his execution. On November 20, 2020, Defendants scheduled Mr. Bourgeois's execution for December 11, 2020, providing him with only 21 days' notice of his execution. Mr. Bernard and Mr. Bourgeois now move for a preliminary injunction to prevent Defendants from executing them in violation of the FDPA as made enforceable by the Administrative Procedure Act. *See* 5 U.S.C. § 706(2)(A) (requiring court to "hold unlawful" and "set aside" agency action that is "not in accordance with law").

## ARGUMENT

"The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006) (quotation marks omitted). The moving party must show (1) that he is likely to succeed on the merits; (2) that he is likely to suffer irreparable harm in the absence of relief; (3) that the balance of the equities weigh in his favor; and (4) that an injunction is in the public interest. *See, e.g.*, *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 6 (D.C. Cir. 2016). That standard is met here.

4

## I.  Plaintiffs Bernard and Bourgeois Are Likely To Succeed On The Merits Of Their FDPA Claim

In 1994, Congress enacted the FDPA, which dictates that federal executions are to be implemented "in the manner prescribed by the law of the State in which the sentence is imposed." 18 U.S.C. § 3596(a). "The FDPA and the Attorney General's regulations remain the federal law governing executions by the United States." *In re Fed. Bureau of Prisons' Execution Protocol Cases*, No. 20-5329, 2020 WL 6750375, at *1 (D.C. Cir. Nov. 18, 2020) (citing *Manner of Federal Executions*, 854 Fed. Reg. 47,324, 47,325-26 (2020)).

The sentences of Mr. Bernard and Mr. Bourgeois were imposed in the state of Texas. As relevant here, Texas law provides that "[a]n execution date may not be earlier than the 91st day after the date . . . [of] the order setting the execution date." Tex. Code Crim. Proc. art. 43.141(c). The Texas legislature adopted this requirement in the interest of promoting transparency and fair process, and further to facilitate an opportunity for the prisoner and his attorneys to file any appropriate legal challenges. *See* 2015 Texas Senate Bill No. 1071, Texas Eighty-Fourth Legislature ("Requiring sufficient notice of the scheduling of execution dates will ensure that defendants have an opportunity to fairly prepare for the impending execution."); *In re Carter*, 541 S.W.3d 743, 744–45 (Tex. Crim. App. 2017) (Newell, J., concurring) ("The Texas Legislature intended Article 43.141 to provide death-penalty defendants with a significant time period within which to prepare final pleadings in either state or federal court. It clearly intended these notice requirements to facilitate that objective."); Letter from William C. Hubbard, President of the American Bar Association, to Chairpersons of the Texas Senate Committee on Criminal Justice and House Committee on Criminal Jurisprudence (March 30, 2015) ("2015 ABA Letter") ("[T]he period of time between the setting of the date and the actual execution is

5

critical for defense counsel to raise certain significant legal issues and continue to zealously represent his or her client.").

This element of Texas law governing the implementation of a sentence of death applies to Mr. Bernard and Mr. Bourgeois by virtue of 18 U.S.C. § 3596(a). As this Court has previously recognized, "[t]he D.C. Circuit's prior decision in this litigation requires Defendants to adhere to [state] statutes [that conflict with the 2019 Protocol]":

> As Judge Rao wrote, while "formal state law often specifies little more than the method of execution, the federal government is nonetheless bound by the FDPA to follow the level of detail prescribed by state law." *Execution Protocol Cases*, 955 F.3d at 133. Judge Tatel found that the FDPA "best understood, requires federal executions to be carried out using . . . procedures set forth not just in [state] statutes and regulations, but also in protocols issued by state prison officials." *Id.* at 146.

Dkt. #261 at 28. Accordingly, this Court has understood the FDPA specifically to require compliance with state statutory requirements that (1) "two physicians . . . determine when death supervenes" (Ga. Code § 17-10-41); (2) equipment used in executions is appropriately sterilized (Ark. Code § 5-4-617(f)); (3) execution drugs are obtained from facilities meeting certain accreditation or registration requirements (Ark. Code § 5-4-617(d)); and (4) executions take place "at any time after the hour of 6 p.m. on the day set for the execution" (Tex. Code of Crim. Proc. Art. 43.14(a)). *Id.* at 27-28. In so holding, this Court has explained that these state statutes are part of the "implementation of the death sentence":

> [I]n discussing her understanding of the word "implementation," Judge Rao explained that "the ordinary meaning of 'implementation of the death sentence' includes more than 'inflicting the punishment of death' . . . [it includes] additional procedures involved in carrying out the sentence of death." *Execution Protocol Cases*, 955 F.3d at 133 ("the term 'implementation' is commonly used to refer to a range of procedures and safeguards surrounding executions"). She also explained that such **"implementation" would include details such as the time, date, place, and method of execution, all of which can fairly be read to include the state**

>**statutes Plaintiffs have identified**. *Id.* at 134 (quoting Implementation of Death Sentences in Federal Cases, 58 Fed. Reg. 4,898, 4,901–02 (Jan. 19, 1993)).

Dkt. #261 at 29 (emphasis added); *see also id.* at 29-30 ("Defendants must comply with the Texas provision because it is incorporated into the FDPA by virtue of D.C. Circuit precedent." (citing *In re FBOP*, 955 F.3d at 133 (Rao, J., concurring) ("[T]he federal government is [] bound by the FDPA to follow the level of detail prescribed by state law."")).[2] The Court granted summary judgment for Defendants on Plaintiffs' FDPA claim not because it agreed with Defendants' position that they were not bound by applicable state laws, but instead because the factual record revealed no live controversy regarding the state laws at issue. *See id.* at 30-31.

This Court has previously disagreed with Defendants' contention that they need to comply with "only those state procedures 'that effectuate death.'" *Id.* at 29 (quoting Defs. Opp'n to LeCroy Mot. at 6-7 (citing *In re FBOP*, 955 F.3d at 151 (Tatel, J., dissenting))). This Court has also explained that "[t]he court is not bound by other Circuits' interpretation of D.C. Circuit precedent and cannot square their limited reading with the language in either Judge Rao or Judge Tatel's opinions." *Id.* at 28-29 (citing *Peterson v. Barr*, 965 F.3d 549, 554 (7th Cir. 2020); *United States v. Mitchell*, No. 20-9909, 2020 WL 4815961 (9th Cir. Aug. 19, 2020)). But in any event, the requirements of Tex. Code Crim. Proc. art. 43.141(c) are "procedures that effectuate death" under any reasonable understanding. Like Tex. Code of Crim. Proc. Art. 43.14(a), which governs the time of day at which death is to be effectuated, Tex. Code Crim. Proc. art. 43.141(c)

---

[2] Indeed, as Judge Rao noted, the FDPA contains "one *exception* to the general rule that the federal government must follow state law—the federal government may choose state or federal facilities for executions." *In re FBOP*, 955 F.3d at 134-35 (emphasis added). Given that the FDPA otherwise contemplates that state laws setting the *place* of execution concern the "implementation" of death sentences, state laws setting the *time* of execution surely fall within the same category.

is intended to promote fairness, transparency, and an opportunity for the condemned inmate and his attorney to raise any appropriate legal challenges. *See id.* at 30 ("[T]he Texas statute governs when death is to be effectuated and prevents the state from rescheduling an execution . . . despite the pendency of any remaining legal challenges and without providing notice to the prisoners' attorneys . . . ."); *In re Carter*, 541 S.W.3d at 744–45. Without appropriate notice, Plaintiffs can be executed before they have the opportunity to properly develop clemency applications, or while they have potentially meritorious claims still pending in court.[3] Certain claims cannot be raised until a prisoner receives notice of his execution date, such as incompetence to be executed or claims related to the constitutionality of the lethal injection protocols to be used at that prisoner's particular execution that may deemed untimely if brought earlier in the case. Notice of an execution date is thus no less a part of the execution process than the determination following an execution that the prisoner is in fact dead. *See* Dkt. #261 at 30 ("The Georgia statute requiring two physicians to certify when death supervenes was no doubt enacted to ensure that death has been effectuated."). As the American Bar Association explained in urging the adoption of this

---

[3] At the time of this filing, Mr. Bourgeois is under a stay of execution order from the District Court for the Southern District of Indiana based on a claim of intellectual disability. *Bourgeois v. Warden*, No. 219 CIV 00392, 2020 WL 1154575 at *6 (S.D. Ind. Mar. 10, 2020) *rev'd and remanded subnom. Bourgeois v. Watson*, 977 F.3d 620 (7th Cir. 2020). A panel for the Seventh Circuit reversed and remanded the district court's stay order, 977 F.3d 620, but the mandate has not yet issued and the case remains pending for review by the en banc court.

Mr. Bernard filed yesterday a § 2241 habeas petition in the District Court for the Southern District of Indiana, along with a motion to stay his execution. *Bernard v. Warden*, No. 2:20-cv-00616 (S.D. Ind. filed Nov. 24, 2020). That petition raises a *Brady* claim based on Mr. Bernard's discovery in 2018 that the government had never disclosed the existence of a law enforcement gang expert's opinion about Brandon's extremely low status in the youth gang to which all the defendants belonged. Mr. Bernard filed his § 2241 petition after the Fifth Circuit held in September 2020 that Mr. Bernard was not entitled to file a successive § 2255 petition. *In re Bernard*, 826 F. App'x 356, 358 (5th Cir. 2020).

legislation, "[w]ith a decision as significant and irreversible as imposing the death penalty, it is critical that due process and fairness are ensured at every stage in the process, including in setting the date for execution." 2015 ABA Letter.

## II. Plaintiffs Bernard and Bourgeois Will Suffer Irreparable Harm Without An Injunction

To constitute irreparable harm, "the harm must be certain and great, actual and not theoretical, and so imminent that there is a clear and present need for equitable relief to prevent irreparable harm," and it "must be beyond remediation." *Newby*, 838 F.3d at 7-8 (citing *Chaplaincy*, 454 F.3d at 297) (internal quotation marks and brackets omitted). Mr. Bernard and Mr. Bourgeois will be irreparably harmed if they are executed on December 10, 2020 and December 11, 2020, respectively, because those executions will be contrary to law and will deprive Mr. Bernard and Mr. Bourgeois of their interests in preparing for their executions, in fully litigating their pending claims, and in their lives. The harm they will experience therefore is "categorically irreparable." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

Permitting the government to proceed with an execution after disregarding Texas's statutory procedure requiring ninety days between notice of an execution and the execution itself will irreparably harm Mr. Bernard and Mr. Bourgeois. It is "abundantly clear" that Mr. Bernard and Mr. Bourgeois have a constitutionally protected interest in their own lives. *Ohio Adult Parole Authority v. Woodard*, 523 U.S. 272, 288 (1998) ("There is . . . no room for legitimate debate about whether a living person has a constitutionally protected interest in life.") (Stevens, J., concurring in part and dissenting in part). Depriving Mr. Bernard and Mr. Bourgeois of the full amount of time to which they are entitled to live between receiving their execution warrants and being executed irreparably harms their interest in their own lives. *See id.* at 288 ("A prisoner under a death sentence remains a living person and consequently has an interest in his life.")

9

(O'Connor, J., concurring in part and concurring in the judgment); *see also, e.g.*, *Cruzan by Cruzan v. Dir., Mo. Dep't Health*, 497 U.S. 261, 291 (1990) ("It cannot be disputed that the Due Process Clause protects an interest in life"); *Britell v. United States*, 372 F.3d 1370, 1383 (Fed. Cir. 2004) (recognizing a state interest in the life of babies who were born with anencephaly, even though they were not expected to survive for long).

For Mr. Bourgeois, moreover, Defendants' failure to comply with Texas law as required by the FDPA has deprived him of the opportunity to seek clemency from the incoming President-Elect. Had Defendants complied with Texas law when, on November 20, 2020, they set Mr. Bourgeois' execution date, that date would be set for February 2021 at the earliest. Mr. Bourgeois would therefore be able to seek clemency from a President who stated during his campaign that he favors the elimination of the federal death penalty. *See* https://joebiden.com/justice/# ("Biden will work to pass legislation to eliminate the death penalty at the federal level . . . These individuals should instead serve life sentences without probation or parole.").

A second type of irreparable harm stems from Mr. Bernard's and Mr. Bourgeois's reliance interest in knowing that they cannot be executed without at least 90 days' notice, and thus, the Government's unilateral abrogation of that interest – an interest with which the Government complied during the setting of Mr. Bourgeois's earlier execution date for January 13, 2020, or 172 days from the announcement of the execution on July 25, 2019. *See* U.S. Dept. of Justice, *Federal Government to Resume Capital Punishment After Nearly Two Decade Lapse* (July 25, 2019), available at https://www.justice.gov/opa/pr/federal-government-resume-capital-punishment-after-nearly-two-decade-lapse. The current execution dates violate that same interest. "[W]hen a prisoner sentenced by a court to death is confined in the penitentiary awaiting

10

the execution of the sentence, one of the most horrible feelings to which he can be subjected during that time is the uncertainty during the whole of it … as to the precise time when his execution shall take place." *In re Medley*, 134 U.S. 160, 172 (1890). The Texas statute leaves but little uncertainty for a prisoner sentenced to death, as that prisoner can rest assured knowing he will not be executed for at least 90 days after he receives an execution warrant. This 90-day time period is designed to allow a prisoner time to prepare for his execution and for his attorneys to raise any appropriate legal challenges.

For Mr. Bourgeois, assuming that he is unsuccessful on en banc review, *see supra* note 2, that 90-day period is vital to allow him time to prepare a competent petition for writ of certiorari to the United States Supreme Court based on his claim that he is intellectually disabled and, thus, constitutionally barred from being executed.

For Mr. Bernard, the unlawfully shortened notice period already has compelled him to submit a clemency application earlier this month based largely on interviews with relevant witnesses that were conducted years ago. Mr. Bernard's representatives are actively seeking to supplement that application with more up-to-date information regarding, among other things, the positive and important role Mr. Bernard has continued to play in the lives of his friends and family members even during the intervening years of his incarceration, and his acts of kindness and generosity during that period. While Mr. Bernard's pending application makes a substantial case for mercy—as evidenced by the numerous press reports highlighting the need for it in his case,[4] and the more than 16,000 people who have sent letters to President Trump in support of clemency for Mr. Bernard—the unlawfully shortened notice period further hampers necessary

---

[4] *See, e.g.*, *The Prosecutor Who Put Brandon Bernard On Death Row Has Changed Her Mind. Is It Too Late?*, Relevant Magazine (November 24, 2020).

fact-gathering already made substantially more difficult by the ongoing pandemic. With more time, Mr. Bernard's counsel would be able to build additional public support for Mr. Bernard's clemency. In addition, Defendants' disregard of the Texas statute requires Mr. Bernard's § 2241 petition to be litigated with far less time than Mr. Bernard would otherwise have.

In sum, by disregarding the Texas statute and not allowing Mr. Bernard and Mr. Bourgeois the full 90 days to which they should be entitled to prepare for their executions, Defendants are not only interfering with their opportunity to raise legal challenges, but are also subjecting Mr. Bernard and Mr. Bourgeois to "immense mental anxiety amounting to a great increase of [their] punishment." *Medley*, 134 U.S. at 172.

### III. The Balance Of The Equities And Public Interest Weigh In Favor Of A Preliminary Injunction

The balance of equities and public interest factors "merge when the Government is the opposing party." *Nken*, 556 U.S. at 435; *see also Fla. EB5 Investments, LLC v. Wolf*, 443 F. Supp. 3d 7, 13 (D.D.C. 2020). Here, these two factors favor a preliminary injunction. This Court has already decided that the balance of the equities favors Plaintiffs under these circumstances because "the potential harm to the government caused by a delayed execution is not substantial" and "[t]he public interest is not served by executing individuals before they have had the opportunity to avail themselves of legitimate procedures to challenge the legality of their executions." Dkt. #50 at 14.

These conclusions are consistent with the principle that "[t]he public interest is . . . served when administrative agencies comply with their [legal] obligations." *N. Mariana Islands v. United States*, 686 F. Supp. 2d 7, 21 (D.D.C. 2009). By contrast, "[t]here is generally no public interest in the perpetuation of unlawful agency action." *Newby*, 838 F.3d at 12. In the capital-punishment context, "the public's interest in seeing justice done lies not only in carrying out the

sentence imposed years ago but also in the lawful process leading to possible execution." *Montgomery v. Barr*, No. 20-3261, 2020 WL 6799140, at *11 (D.D.C. Nov. 19, 2020); *see also Harris v. Johson*, 323 F. Supp. 2d 797, 810 (S.D. Tex. 2004) ("confidence in the humane application of the governing laws of the State must be in the public's interest"). Accordingly, courts have recognized an "important public interest in the humane and constitutional application of [a] lethal injection statute." *Nooner v. Norris*, No. 06-00110, 2006 WL 8445125, at *4 (E.D. Ark. June 26, 2006); *see also In re Ohio Execution Protocol Litig.*, 840 F. Supp. 2d 1044, 1059 (S.D. Ohio 2012); *Cooey v. Taft*, 430 F. Supp. 2d 702, 708 (S.D. Ohio 2006). When the government decides to take a life, the public interest demands that it do so in a considered and deliberate manner. The seriousness of a person's offenses of conviction does not alter that analysis.

The government has no legitimate interest in carrying out an execution using illegal procedures. Indeed, by doing so the government would compromise the public interest, among other things by undermining public confidence in the "lawful process leading to possible execution." *See Montgomery*, 2020 WL 6799140, at *11. Furthermore, any harm to the government can easily be eliminated, as Defendants can promptly schedule Mr. Bernard's and Mr. Bourgeois's executions for a later date as soon as they have cured the defects in their procedures. That cure would further the public interest, which is served when agencies comply with their procedural obligations under the APA. A preliminary injunction will therefore "not

substantially injure other interested parties," the public, or the government. *Chaplaincy*, 454 F.3d at 297. To the contrary, the requested injunction will advance the public interest.

## CONCLUSION

For the foregoing reasons, Plaintiffs Bernard and Bourgeois respectfully request that the Court preliminarily enjoin Defendants from proceeding with their executions on December 10 and 11, 2020.

Dated:  November 25, 2020                              Respectfully submitted,

*/s/ Alex Kursman*
Alex Kursman, Assistant Federal Defender
 Pro Bono Counsel Pursuant to Local Rule 83.2(g)
Shawn Nolan, Chief, Capital Habeas Unit
Federal Community Defender Office, E.D. Pa.
601 Walnut Street, Suite 545 West
Philadelphia, PA 19106
Telephone: 215-928-0520
Email: alex_kursman@fd.org

*/s/ Ginger D. Anders*
Ginger D. Anders (Bar No. 494471)
Jonathan S. Meltzer (Bar No. 888166546)
Brendan Gants (Bar No. 1031419)
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Ave. NW, Suite 500E
Washington, D.C. 20001-5369
MUNGER, TOLLES & OLSON LLP
(202) 220-1100
Ginger.Anders@mto.com

*Counsel for Plaintiff Brandon Bernard*

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 25, 2020, I caused a true and correct copy of foregoing to be served on all counsel of record via the Court's CM/ECF system.  Pursuant to this Court's August 20, 2019 Order, below is a list of all counsel of record.  The names marked with an asterisk (*) have no email provided on the docket and are no longer with the identified firms.

Alan Burch
U.S. Attorney's Office for the District of Columbia
(202) 252-2550
Email: alan.burch@usdoj.gov

Peter S. Smith
United States Attorney's Office
Appellate Division
(202) 252-6769
Email: peter.smith@usdoj.gov

Ethan P. Davis
Civil Division, U.S. Department of Justice
(202) 616-4171
Email: Ethan.Davis@usdoj.gov

Robert J. Erickson
US Department of Justice
(202) 514-2841
Email: Robert.erickson@usdoj.gov

Joshua Christopher Toll
KING & SPALDING LLP
(202) 737-8616
Email: jtoll@kslaw.com

Charles Anthony Zdebski
ECKERT SEAMANS CHERIN & MELLOTT, LLC
(202) 659-6605
Email: czdebski@eckertseamans.com

Gerald Wesley King, Jr.
FEDERAL DEFENDER PROGRAM, INC.
(404) 688-7530

Paul R. Perkins
Civil Division, Department of Justice
(202) 514-5090
Email: Paul.R.Perkins@usdoj.gov

Jonathan Kossak
Civil Division, Department of Justice
(202) 305-0612
Email: Jonathan.kossak@usdoj.gov

Denise M. Clark
U.S. Attorney's Office for the District of Columbia
(202) 252-6605
Email: Denise.Clark@usdoj.gov

Jean Lin
Civil Division, Department of Justice
(202) 514-3716
Jean.lin@usdoj.gov

Cristen Cori Handley
Civil Division, Department of Justice
(202) 305-2677
Cristen.Handley@usdoj.gov

Paul F. Enzinna
ELLERMAN ENZINNA PLLC
(202) 753-5553
Email: penzinna@ellermanenzinna.com

Brandon David Almond
TROUTMAN SANDERS LLP
(202) 274-2864
Email: brandon.almond@troutmansanders.com

Email: gerald_king@fd.org

Charles Fredrick Walker
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
(202) 371-7000
Email: Charles.Walker@skadden.com

Alexander C. Drylewski
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
(212) 735-2129
Email: Alexander.Drylewski@skadden.com
(*pro hac vice application forthcoming)

Celeste Bacchi
OFFICE OF THE PUBLIC DEFENDER
Capital Habeas Unit
(213) 894-1887
Email: celeste_bacchi@fd.org

Jonathan Charles Aminoff
FEDERAL PUBLIC DEFENDER,
CENTRAL DISTRICT OF CALIFORNIA
(213) 894-5374
Email: jonathan_aminoff@fd.org

Billy H. Nolas
FEDERAL COMMUNITY DEFENDER
OFFICE FOR THE EDPA
(215) 928-0520
Email: Billy_Nolas@fd.org

*Jeanne Vosberg Sourgens
VINSON & ELKINS LLP
(202) 639-6633

William E. Lawler, III
VINSON & ELKINS LLP
(202) 639-6676
Email: wlawler@velaw.com

Evan D. Miller
VINSON & ELKINS LLP
(202) 639-6605
Email: EMiller@velaw.com

Donald P. Salzman
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
(202) 371-7983
Email: Donald.salzman@skadden.com

Steven M. Albertson
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
(202) 371-7112
Email: Steven.Albertson@skadden.com

Craig Anthony Harbaugh
FEDERAL PUBLIC DEFENDER, CENTRAL
DISTRICT OF CALIFORNIA
(213) 894-7865
Email: craig_harbaugh@fd.org

Alexander Louis Kursman
OFFICE OF THE FEDERAL COMMUNITY
DEFENDER/EDPA
(215) 928-0520
Email: Alex_Kursman@fd.org

Kathryn B. Codd
VINSON & ELKINS LLP
(202) 639-6536
Email: kcodd@velaw.com

Robert E. Waters
KING & SPALDING LLP (202) 737-0500
Email: rwaters@velaw.com

Yousri H. Omar
VINSON & ELKINS LLP
(202) 639-6500
Email: yomar@velaw.com

*William E. Hoffman, Jr.
KING & SPALDING LLP
(404) 572-3383

Mark Joseph Hulkower
STEPTOE & JOHNSON LLP
(202) 429-6221
Email: mhulkower@steptoe.com

2

Margaret O'Donnell
(502) 320-1837
Email: mod@dcr.net

Abigail Bortnick
KING & SPALDING LLP
(202) 626-5502
Email: abortnick@kslaw.com

Matthew John Herrington
STEPTOE & JOHNSON LLP
(202) 429-8164
Email: mherrington@steptoe.com

Amy J. Lentz
STEPTOE & JOHNSON LLP
(202) 429-1320
Email: Alentz@steptoe.com

Gary E. Proctor
LAW OFFICES OF GARY E. PROCTOR, LLC
(410) 444-1500
Email: garyeproctor@gmail.com

Scott Wilson Braden
FEDERAL PUBLIC DEFENDER, EASTERN DISTRICT OF ARKANSAS
(501) 324-6144
Email: Scott_Braden@fd.org

Amy Gershenfeld Donnella
FEDERAL COMMUNITY DEFENDER OFFICE FOR THE EDPA
(215) 928-0520
Email: amy_donnella@fd.org

David Victorson
(202) 637-5600
HOGAN LOVELLS US LLP
Email: David.Victorson@hoganlovells.com

John D. Beck
HOGAN LOVELLS US LLP
(212) 918-3000

Robert A. Ayers
STEPTOE & JOHNSON LLP
(202) 429-6401
Email: rayers@steptoe.com

Robert L. McGlasson
MCGLASSON & ASSOCIATES, PC
(404) 314-7664
Email: rlmcglasson@comcast.net

Sean D. O'Brien
PUBLIC INTEREST LITIGATION CLINIC
(816) 363-2795
Email: dplc@dplclinic.com

Shawn Nolan
FEDERAL COMMUNITY DEFENDER OFFICE, EDPA
(215) 928-0520
Email: shawn_nolan@fd.org

Joseph William Luby
FEDERAL PUBLIC DEFENDER/EDPA
(215) 928-0520
Email: joseph_luby@fd.org

Pieter Van Tol
HOGAN LOVELLS US LLP
(212) 918-3000
Email: Pieter.Vantol@hoganlovells.com

Jonathan Jeffress
KAISER DILLON, PLLC
(202) 640-4430
Email: Jjeffress@kaiserdillon.com

Andrew Moshos
MORRIS NICHOLS ARSHT & TUNNELL LLP
(302) 351-9197
Email: Amoshos@mnat.com

Alan E. Schoenfeld
WILMER CUTLER PICKERING HALE & DORR LLP

3

Email: john.beck@hoganlovells.com

Amelia J. Schmidt
KAISER DILLON, PLLC
(202) 869-1301
Email: Aschmidt@kaiserdillon.com

Norman Anderson
KAISER DILLON PLLC
(202) 640-2850
nanderson@kaiserdillon.com

Jennifer Ying
MORRIS NICHOLS ARSHT & TUNNELL LLP
(302) 658-9300
Email: Jying@mnat.com

Andres C. Salinas
WILMER CUTLER PICKERING HALE & DORR LLP
(202) 663-6289
Email: Andres.Salinas@wilmerhale.com

*Ryan M. Chabot
WILMER CUTLER PICKERING HALE & DORR LLP
(212) 295-6513

Dale Andrew Baich
OFFICE OF THE FEDERAL PUBLIC DEFENDER
(602) 382-2816
Dale_Baich@fd.org

(212) 937-7294
Email: Alan.Schoenfeld@wilmerhale.com

Kathryn Louise Clune
CROWELL & MORING LLP
(202) 624-5116
kclune@crowell.com

Jennifer M. Moreno
OFFICE OF THE PUBLIC FEDERAL DEFENDER, DISTRICT OF ARIZONA
(602) 382-2718
Jennifer_moreno@fd.org

Ginger Dawn Anders
MUNGER, TOLLES & OLSON LLP
(202) 220-1107
Ginger.anders@mto.com

*Jonathan S. Meltzer
MUNGER, TOLLES & OLSON LLP
(202) 220-1100

*Brendan Gants
MUNGER, TOLLES & OLSON LLP
(202) 220-1100

Timothy Kane
FEDERAL COMMUNITY DEFENDER OFFICE, EDPA
(215) 928-0520
Email: timothy_kane@fd.org

Dated:  November 25, 2020

Respectfully submitted,

*/s/ Alex Kursman*
Alex Kursman, Assistant Federal Defender
 Pro Bono Counsel Pursuant to Local Rule 83.2(g)
Shawn Nolan, Chief, Capital Habeas Unit
Federal Community Defender Office, E.D. Pa.
601 Walnut Street, Suite 545 West
Philadelphia, PA 19106
Telephone: 215-928-0520
Email: alex_kursman@fd.org

*/s/ Ginger D. Anders*

Ginger D. Anders (Bar No. 494471)
Jonathan S. Meltzer (Bar No. 888166546)
Brendan Gants (Bar No. 1031419)
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Ave. NW, Suite 500E
Washington, D.C. 20001-5369
MUNGER, TOLLES & OLSON LLP
(202) 220-1100
Ginger.Anders@mto.com

*Counsel for Plaintiff Brandon Bernard*
