**\*\*\*EXECUTIONS SCHEDULED FOR DECEMBER 10 AND 11, 2020\*\*\***

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **IN THE MATTER OF THE FEDERAL BUREAU OF PRISONS' EXECUTION PROTOCOL CASES,** | ) ) ) | |
| | ) | |
| **Lead case:** *Roane et al. v. Barr et al.* | ) | |
| | ) | |
| | ) | **Case No. 19-mc-00145-TSC** |
| | ) | |
| **THIS DOCUMENT RELATES TO:** | ) | |
| | ) | |
| **ALL CASES** | ) | |
| | ) | |
| *Bourgeois v. United States Department of Justice, et al.*, No. 12-cv-0782-TSC | ) ) | |

**REPLY MEMORANDUM IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION BARRING THE EXECUTION
OF PLAINTIFFS BRANDON BERNARD AND ALFRED BOURGEOIS**

Defendants are in violation of the letter, spirit, and purpose of a Texas statute requiring that a prisoner receive at least 91 days' notice of an execution date, and this Court has already held that state statutes governing the timing of executions are binding on Defendants under the Federal Death Penalty Act. *See* 18 U.S.C. § 3596(a) (requiring implementation of a federal death sentence "in the manner prescribed by the law of the State in which the sentence is imposed"); ECF No. 261 (Memorandum Opinion of Sept. 20, 2020), at 30-31.

Defendants first assert that the Court should deny the requested preliminary injunction on a number of procedural grounds, but all lack merit. Plaintiffs have not forfeited their claim based on Tex. Code Crim. Proc. Art. 43.141(c), because they raised it as soon as they learned that Defendants would violate that requirement in setting their execution dates and that the violation would cause them irreparable harm. And in all events, any forfeiture should be excused in light

1

of the severe harm at stake: Defendants' violation of the 91-day requirement has illegally truncated Plaintiffs' opportunity to pursue their remaining claims and clemency applications. Plaintiffs' claim also is not barred by *res judicata* or law of the case doctrine; those doctrines apply only where there has been a prior judgment on the merits. There has been no such judgment here, as both this Court and the D.C. Circuit dismissed Plaintiffs' prior FDCA claims for lack of a live controversy. Finally, Rule 60(b) has no application, as Plaintiffs bring a new claim that is not encompassed by the prior judgment, which concerned distinct violations of other provisions of state law.

Defendants' remaining arguments are equally without merit. On the question of FDPA compliance, Defendants offer no reason why the Court should change its mind on the dispositive issue: that the scheduling of an execution concerns the "implementation" of a death sentence, which covers details such as the "time, date, place, and method of execution." *In re Federal Bureau of Prisons' Execution Protocol Cases*, 955 F.3d 106 (D.C. Cir. 2020) (Rao, J., concurring); ECF No. 261 at 29-30. Neither do Defendants meaningfully rebut Mr. Bernard's and Mr. Bourgeois's showing of irreparable harm from the statutory violation. The purpose of the Texas statute is to ensure that the prisoner has additional time to seek judicial relief and executive clemency. Defendants' fast-tracked execution dates impair that purpose, all the while depriving both Plaintiffs of the 91 days of additional life that state law provides them through the FDPA. Defendants are also wrong about the balance of equities. Defendants invoke the public's interest in the prompt enforcement of criminal judgments, but they do not explain their sudden rush to execute two men next week after so many years of Government-induced delay, nor why the sudden need for haste outweighs the public's interest in following the law. The Court should enjoin Plaintiffs' illegally scheduled executions.

## I.     PLAINTIFFS BERNARD AND BOURGEOIS ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR FDPA CLAIM

### A.     Plaintiffs' FDPA Claim Is Neither Forfeited Nor Barred by *Res Judicata*

1.     Defendants contend at the outset that Plaintiffs Bernard and Bourgeois have failed to show a substantial likelihood of success on the merits of their FDPA claim because they either forfeited or waived their claim to injunctive relief based on Texas' 91-day scheduling rule, Tex. Code Crim. Proc. Art. 43.141(c). Not so.

a.     Defendants cite no law for the proposition that upon remand from a court of appeals, a district court may no longer exercise its substantial discretion to accept a supplemental or amended complaint raising a *new claim*. *See* Resp. at 5-6. Nor could they. After all, it is axiomatic that "[l]eave to file a supplemental complaint is left to the Court's discretion, and should be freely granted where such supplementation will promote the economic and speedy disposition of the controversy between the parties, will not cause undue delay of trial, inconvenience and will not prejudice the rights of any other party." *Banks v. York*, 448 F. Supp. 2d 213, 214 (D.D.C. 2006); *see also Rio Grande Dam & Irrigation Co. v. United States*, 215 U.S. 266, 274-75 (1909) (concluding the district court did not abuse its discretion in permitting the United States to file a supplemental bill after remand); Fed. R. Civ. P. 15(d) (permitting the filing of a supplemental pleading so that a plaintiff may "set[] forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented.).

The course of this litigation demonstrates that Plaintiffs have not forfeited their FDPA claim based on Defendants' violation of Article 43.141(c). As Defendants point out, Plaintiffs earlier raised a claim that Defendants were required to comply with a different provision of Texas law that required executions to be set for 6 p.m. or later. *See* Resp. at 5 ("The only Texas state statutory provision that Plaintiffs alleged to be in conflict with BOP's Protocol was Tex.

Code Crim. Proc. Art. 43.14(a), the provision requiring that executions take place after 6 p.m.").
Plaintiffs raised that claim in the summer (such that it became the subject of the parties'
summary judgment briefing) because Defendants' actions with respect to executions of Plaintiffs
performed in the summer—when executions were scheduled at various times of day, and
rescheduled on mere hours' notice—gave them reason to believe that Defendants would fail to
comply with Texas's 6 p.m. rule.

By contrast, for almost a year, neither Mr. Bourgeois nor Mr. Bernard had any reason to
believe Defendants would violate Article 43.141(c)'s 91-day requirement for setting execution
dates. That is because when Defendants issued their first batch of death warrants on July 25,
2019, they expressly scheduled Mr. Bourgeois' execution for January 13, 2020—172 days after
the date of the scheduling notice. Plaintiffs thus had no reason to include an Article 43.141(c)-
based FDPA claim in their amended complaint or any time after until after Defendants
announced their intent on July 31, 2020, to execute Mr. Bernard's co-defendant, Christopher
Vialva, on September 24, 2020—a mere 55 days later—and then carried out that execution as
intended. By that point, however, the Court had *already* issued its decision granting summary
judgment to Defendants on Plaintiffs' 43.14(a)-based FDPA claim. *See* ECF No. 261 at 27-31
(September 20, 2020). What is more, the only execution date that either Mr. Bernard or Mr.
Bourgeois had received in the course of this litigation up until this point—and even after
Plaintiffs filed their Rule 59(e) motion on Count V on October 6, 2020—had come with adequate
notice under Article 43.141(c).

Moreover, mindful of this Court's explicit skepticism that Defendants' failure to comply
with statutory requirements of this nature could cause irreparable harm absent a particularized
showing of such harm to an individual plaintiff, *id*., Mr. Bernard and Mr. Bourgeois brought

their Article 43.141(c) claim as soon as (but not before) the irreparable harm arising from

Defendants' violation of Article 43.141(c) became evident. Mr. Bourgeois brought this claim as

soon as practicable after November 20, the date on which Defendants set his execution date for

December 11, a mere 21 days later—leaving insufficient time to pursue his intellectual disability

claim. And Mr. Bernard brought the claim as soon as it became clear that the 55 days' notice he

received would not allow sufficient time to effectively pursue his clemency petition, and in

particular, to fully facilitate the groundswell of public support for commuting his sentence that

has grown extraordinarily since his execution date was set. *See* p. 6, *infra*. It should go without

saying that a plaintiff cannot forfeit an unripe or premature claim.

Moreover, the traditional justifications for finding forfeiture or waiver are entirely absent

where, as here, the parties are before the *District Court* and the facts that formed the basis for

Plaintiffs' new FDPA claim did not emerge until *after* the Court had already granted summary

judgment to Defendants on Plaintiffs' original FDPA claim. Under these circumstances, applying

forfeiture or waiver to Plaintiffs' supplemental FDPA claim neither assists in the "orderly

conduct of litigation" nor advances judicial economy. *Crocker v. Piedmont Aviation, Inc.*, 49

F.3d 735, 739-40 (D.C. Cir. 1995). To the contrary, to apply forfeiture in these circumstances

would perpetuate an injustice by punishing Plaintiffs for not having foreseen Defendants'

particular intent to violate both the FDPA and Article 43.141(c).

b.      Even assuming that Plaintiffs did somehow forfeit this claim (and they did not),

there are compelling reasons to excuse such forfeiture here. *See Nat'l Parks Conservation Ass'n*

*v. Semonite*, 422 F. Supp.3d 92, 95-96 (D.D.C. 2019) ("Even if defendants had forfeited their

right to contest vacatur, this Court would still have the authority to consider the appropriateness

of vacatur if injustice might otherwise result." (internal quotation marks omitted)); *see also*

5

*Defenders of Wildlife & Ctr. for Bio. Diversity v. Jewell*, 815 F.3d 1, 11 (D.C. Cir. 2016) ("Appellants failed to raise these challenges in the district court and offer no basis to excuse their forfeiture because injustice might otherwise result." (internal quotation marks omitted)).

To begin, the unlawfully truncated period of time between the scheduling order and the date of the execution has compressed Mr. Bernard's clemency process. This, combined with critical staffing shortages in the Office of the Pardon Attorney, raise significant questions concerning the attention the Office will be able to devote to his application. *See* E. Tammy Kim, *New Yorker*, Trump's Final Cruelty: Executing Prisoners (Nov. 25, 2020), https://www. newyorker.com/news/daily-comment/trumps-final-cruelty-executing-prisoners (spokesperson for the Pardon Office conceding that COVID-19 has interfered with the Office's ability to fully evaluate applications). Worse still, because ensuring that a clemency application receives appropriate attention depends on contacts with the particular decisionmakers who will assist the President in making his determination, the clemency process cannot be started months or years before a prisoner's execution date draws near. And because public attention tends to focus on pending clemency applications *only after* an execution date has been set, adequate time between the execution notice and the actual date is critically necessary to enable the prisoner to engage in public advocacy and gather grassroots support. As illustrated by the publication of the *New Yorker* article on November 25—and a *Washington Post* editorial on November 29 arguing that Mr. Bernard should not be executed, *see* Editorial Board, *Brandon Bernard Doesn't Deserve to Die*, Wash. Post, Nov. 29, 2020—public support is gathering in support of Mr. Bernard. But applying forfeiture in this instance would deprive Mr. Bernard of *over a month's* worth of time to supplement his clemency application and petition the President for relief.

The same is true of legal remedies for Mr. Bourgeois, who as of this morning had a stay of execution based on a claim of intellectual disability. That stay was dissolved by the Seventh Circuit today. As a result of Defendants' unlawful scheduling of Mr. Bourgeois's execution only 21 days after it served him with notice of the date, Mr. Bourgeois has only ten days in which to complete briefing on a petition for writ of certiorari and an application for stay of execution in the Supreme Court – and on a claim that convinced the district court that Mr. Bourgeois is probably intellectually disabled under current legal and diagnostic standards. By unlawfully rushing the execution date, Defendants have deprived Mr. Bourgeois of the opportunity to prepare and file a professionally appropriate certiorari petition in the regular course, and to have the Justices consider, research, and debate the issues presented during a full review and without the urgency of an imminent execution date.

The same circumstances hamper Mr. Bourgeois's clemency efforts. Sentence commutations are disfavored when, as here, "other forms of judicial or administrative relief are available." 28 C.F.R. § 1.3. And the timeline impedes the factual development of clemency efforts because an expert cannot administer an up-to-date IQ test without facing the COVID-related hazards that plague USP Terre Haute. *See* ECF No. 329 (Opposition to Motion to Dismiss Higgs' As-Applied Eighth Amendment Claim), at 5.

2.      The United States is also incorrect that *res judicata* or the law of the case doctrine bars Mr. Bernard's and Mr. Bourgeois's claim that the FDPA requires that they have at least 91 days' notice of their execution dates. Even assuming for the sake of argument that Mr. Bernard's and Mr. Bourgeois's FDPA claim in their Supplemental Complaint would normally be subject to *res judicata*, the Supreme Court has held that *res judicata* applies only when there has been "a final judgment on the merits of an action." *Allen v. McCurry*, 449 U.S. 90, 94 (1980). Where,

however, there was "only a dismissal for lack of subject matter jurisdiction," and "no final judgment on the merits of the previous action," *res judicata* does not apply. *Osei v. Standard Chartered Bank*, No. CV 19-1644-RC, 2020 WL 1277511, at *2 (D.D.C. Mar. 17, 2020), *aff'd*, No. 20-7026, 2020 WL 5666696 (D.C. Cir. July 9, 2020); *see, e.g.*, *Allen v. Brown*, 320 F. Supp. 3d 16, 36 (D.D.C. 2018) ("A dismissal for lack of subject matter jurisdiction is not a judgment on the merits." (internal quotation marks omitted)); 10A C. Wright, A. Miller, & M. Kane, Federal Practice & Procedure § 2713 (4th ed.) ("If the court has no jurisdiction, it has no power to enter a judgment on the merits … .").

There has been no final judgment on the merits of Plaintiffs' FDPA claim. The Court of Appeals rejected the government's request that it rule on the merits of Plaintiffs' FDPA claim, stating that it would "decide no more than what is necessary to resolve the appeal." *In re Fed. Bureau of Prisons' Execution Protocol Cases*, No. 20-5329, 2020 WL 6750375, at *11 (D.C. Cir. Nov. 18, 2020). It instead "agree[d] with the district court that there [was] no live controversy" on Plaintiffs' FDPA claim, as there was "no concretely aggrieved plaintiff." *Id.* As a result, there is no judgment on the merits of the FPDA claim to which this Court would apply *res judicata*.[1]

For the same reason, the government's law of the case argument also fails. That doctrine, like *res judicata*, "presumes a hearing on the merits." *United States v. Hatter*, 532 U.S. 557, 566

---

[1] While this Court expressed "skepticism" in its Order denying Rule 59(e) relief as to whether Plaintiffs could show irreparable harm due to Defendants' lack of compliance with Texas's requirement that executions take place after 6 p.m., it ultimately ruled that the government's compliance with Orlando Hall's request to be executed after 6 p.m. prevented Plaintiffs from making a challenge on the merits of the FDPA. ECF No. 305, at 8, 9. In any event, even if this Court's Order was a ruling on the merits, it did not address the merits of the distinct new claim that Mr. Bernard and Mr. Bourgeois have raised here—and as discussed above, the operative D.C. Circuit decision affirmed this Court's earlier decision only on jurisdictional grounds.

(2001); *see* 18B E. Cooper, *Federal Practice & Procedure Juris.* § 4478 n. 46 (2d ed.) ("Law of the case arises only when an issue is decided expressly or by necessary implication."). Because the D.C. Circuit explicitly declined to reach the merits of Plaintiffs' claims, law of the case does not bar Mr. Bernard and Mr. Bourgeois's FDPA claim.

3. The government is likewise incorrect that Mr. Bernard and Mr. Bourgeois were required to file a Rule 60(b) motion or a Rule 59(e) motion in order to present their claim that Defendants must provide 91 days' notice of their execution dates. Mr. Bernard and Mr. Bourgeois do not seek reconsideration of the Court's judgment on Count V of their Amended Complaint, and they do not seek relief from judgment on that claim. Instead, as discussed above, *supra* pp. 3-4, they present a new claim, and this Court was correct to give them leave to file that new claim in their Supplemental Complaint.

In Count V of their Amended Complaint, Plaintiffs contended that Defendants' Protocol violated the APA because "Defendants have failed to provide notice of which States' procedures they will follow and what changes they will make to comply with the binding law of those States." ECF No. 92 at ¶ 146. As the course of litigation has made clear, each instance of the Defendants' noncompliance with various States' laws has presented a separate claim for relief for violation of the FDPA that each affected plaintiff has had to assert separately, after it arises, and that the Court has resolved separately with respect to each claim. *Cf.* ECF No. 81 (recognizing that "circumstances" could "warrant . . . a separate filing" "with regard to the issues that are particular to" each plaintiff). For the reasons stated above, *supra* pp. 3-4, Mr. Bernard and Mr. Bourgeois raised an FDPA claim based on the Texas 6 p.m. requirement, but did not contend prior to receiving their execution dates and discerning their irreparable harm that the

United States was not following Article 43.141(c)'s 91-day notice requirement.[2] At most, therefore, this Court's judgment on Count V addressed the FDPA violations then in dispute — that is, Plaintiffs' claim based on the 6 p.m. requirement. The Court declined to find a live controversy *on that claim*.

Given the narrow reach of that judgment — it addressed only the specific 6 p.m. claim, and in any event declined to definitively resolve the parties' respective rights concerning that claim — Plaintiffs do not need any relief from that judgment in order to bring a distinct claim based on the 91-day requirement in Article 43.141(c). That is a new claim; that is why Mr. Bernard and Mr. Bourgeois then filed their Supplemental Complaint, raising in response to the government's newly-announced FDPA violation their new claim that Defendants' actions were unlawful under the APA because they "violated Mr. Bourgeois's and Mr. Bernard's rights under the FDPA because those actions violate the Texas statutory requirement that an execution date may not be scheduled earlier than the 91st day after the date of the notice setting the execution date." ECF No. 334, at ¶¶ 16-17. The Court properly granted Mr. Bernard's and Mr. Bourgeois's motion to file the supplemental complaint, and the government has provided the Court no reason to reverse course.

Put another way, a ruling for Plaintiffs on their Article 43.141(c) claim would be entirely consistent with the earlier judgment on Count V. Thus, if the earlier judgment presents any sort

---

[2] As Defendants appear to acknowledge (Resp. at 14), Plaintiffs' reference to the 91-day notice requirement in their reply in support of their Rule 59(e) motion was in the context of resetting an execution date after midnight of the day an execution was supposed to take place. *See* ECF No. 298 at 8 n.3. The Court did not separately address that argument as framed in Plaintiffs' reply — and in finding that no live controversy existed, the Court certainly did not implicitly rule on a separate, unasserted claim that Defendants' failure to comply with the 91-day notice rule in the first instance caused irreparable harm.

of hurdle to Plaintiffs' assertion of this new claim, it would arise from the preclusion or forfeiture principles that govern when a plaintiff has not brought a claim that it could have, not from Rule 60(b)—but those principles do not preclude this claim for the reasons stated above.

In the alternative, Plaintiffs have met the standard for relief under Rule 60(b)(6). Rule 60(b)(6) allows courts to grant "relief from a final order when the equities so compel," *Malta Irr. Dist. v. FERC*, 955 F.2d 59, 65 (D.C. Cir. 1992) (Ginsburg, J.), that is, when "such action is appropriate to accomplish justice." *Klapprott v. United States*, 335 U.S. 601, 615 (1949). The D.C. Circuit has interpreted Rule 60(b)(6) to require "extraordinary circumstances," *PETA v. United States Dep't of Health & Human Servs.*, 901 F.3d 343, 355 (D.C. Cir. 2018), and this case so qualifies. As noted above, Mr. Bernard's and Mr. Bourgeois's execution dates were set after they filed their Rule 59 Motions and they had no reason to believe that the United States would not comply with Texas law. And as discussed further below, *see infra* pp. 16-19, Mr. Bernard and Mr. Bourgeois face the irreparable harm of being unable to fully litigate their claims and pursue clemency, the precise harm that Article 43.141(c) was meant to avoid. *See* ECF No. 336 at 8-9. It would "accomplish justice" to evaluate Mr. Bernard's and Mr. Bourgeois's claim on the merits in these extraordinary circumstances.

**B.     Mr. Bernard's and Bourgeois's Recently-Set Execution Dates Violate a Texas Statute that Binds Defendants Through the FDPA**

Plaintiffs are likely to succeed on the merits of their claim that Defendants are bound by the FDPA to follow Article 43.141(c), which governs the scheduling and implementation of a death sentence. *See* ECF No. 261 (Memorandum Opinion) at 29 (holding that the FDPA requires the government to follow state statutes that govern "the time, date, place, and method of execution[.]"). Defendants offer several responses, all of which are meritless.

Defendants first contend that this Court has previously ruled that the FDPA does not apply to "statutes governing state courts' scheduling powers[.]" Resp. at 15-16. Defendants misapprehend the Court's rulings, which hold that although the FDPA does not apply to statutes that govern *which officials* set an execution date (i.e., Georgia state judges as opposed to the federal government), ECF No. 263 at 4-5,[3] it does apply to statutes that govern *when* an execution is permitted to be scheduled under state law. *See* ECF No. 261 at 30. Specifically, this Court held that Texas's statutory requirement that a prisoner's attorney be notified of an execution warrant "governs when death is to be effectuated" and therefore Defendants are bound under the FDPA "from rescheduling an execution after normal court hours . . . without providing notice to the prisoners' attorneys[.]" *Id.*[4] This Court also held that Defendants must comply with Tex. Code Crim. Proc. Art. 43.14(a)'s provision mandating that executions take place after 6 p.m. because that statute governs when an execution is permitted to be scheduled. *Id.* at 30-31.[5] Nor is it, as the Defendants argue, Resp. at 16, "implausible" that state law governs when an execution may take place but not which officials may so order. By its nature, all state-law rules governing implementation of state death sentences are directed to the *state* officials who will

---

[3] The statute at issue in ECF No. 263, Georgia Code Ann § 17-10-40, also governs the timing for the execution date from the date of the execution order. Georgia Code Ann § 17-10-40(a). This Court did not rule on the merits of that provision, and instead denied the claim based on the absence of irreparable harm. *See* ECF No. 263 at 4-5.

[4] Although the Court did not expressly cite to Tex. Code Crim. Proc. Art. 43.141, the statutory notification provision which this Court held binding on Defendants is found at Tex. Code Crim. Proc. Art. 43.141(b-1)(1).

[5] Lest there be any confusion on the point, Plaintiffs Bernard and Bourgeois hereby reiterate their insistence and request that Defendants schedule their executions for 6 p.m. or later in accordance with Tex. Code Crim. Proc. Art. 43.14(a), as made binding on Defendants by the FDPA.

carry them out, yet the FDPA requires that *federal* officials must abide by the substance of those state rules.

Defendants next argue that Article 43.141(c) does not implicate the FDPA because it does not relate to the time or date of an execution and does not involve procedures that effectuate death. Resp. at 16-17. This Court has already held, however, that under the FDPA the government is bound to follow a Texas statute that governs the timing for *resetting* an execution date because it "governs when death is to be effectuated[.]" ECF No. 261 at 30. Certainly, then, the Texas statute that governs the timing for setting an initial execution date governs when death is to be effectuated.

Defendants' attempts to distinguish Article 43.141(c) from Article 43.14(a) are also unavailing. Both statutes fall within the FDPA's ambit because they both relate to the time or date of an execution. Article 43.141 is titled "Scheduling of execution date[.]" Consistent with this Court's previous holding that Defendants must comply with Article 43.14(a) "because it is incorporated into the FDPA by virtue of D.C. Circuit precedent[,]" ECF No. 261 at 30-31, so too is Article 43.141.

Defendants cite to four cases to support their position, *see* Resp. at 17, but those cases were all decided before this Court issued its Memorandum Opinion on September 20, 2020, *see* ECF No. 261, and were either directly or indirectly rejected by this Court. *See* ECF No. 261 at 28-29 ("The court is not bound by other Circuits' interpretation of D.C. Circuit precedent and cannot square their limited reading with the language in either Judge Rao or Judge Tatel's opinions."). This Court explicitly rejected the holdings of *Peterson v. Barr*, 965 F.3d 549 (7th Cir. 2020) and *United States v. Mitchell*, 971 F.3d 993 (9th Cir. 2020) that the FDPA was limited to state laws governing the mechanical procedures for effectuating death. ECF No. 261 at 28-29.

The other two cases cited by Defendants, *LeCroy v. United States*, 975 F.3d 1192 (11th Cir. 2020) and *United States v. Vialva*, 976 F.3d 458 (5th Cir. 2020), followed the reasoning in *Peterson* and *Mitchell*. Aside from *Vialva*, each of these cases was decided in relation to markedly different state statutory provisions. *See Peterson*, 965 F.3d at 554 (FDPA does not apply to "details such as witnesses"); *LeCroy*, 975 F.3d at 1198 (same); *Mitchell*, 971 F.3d at 998-99 (Petitioner must show more than a "'mere possibility' that the Bureau of Prisons might use protocols inconsistent with [state] procedures."). This Court was correct when it reasoned, based on Judge Rao's controlling opinion, that the FDPA applies to "details such as time, date, place, and method of execution[.]"[6] ECF 261 at 28-29.

Finally, Defendants argue that if this Court rules that Defendants are bound by the FDPA to follow Article 43.141's timing requirements, it will lead to a parade of horribles, thereby "making it impossible to carry out executions[.]" Resp. at 17-18. The statutes cited by Defendants to support this contention, however, do not effectuate death, nor do they relate to the time, date, place, or method of execution. Thus, those statutes fall outside the scope of the FDPA and are irrelevant to the pending motion for injunctive relief. Meanwhile, Defendants have provided no reason that complying with Article 43.141's timing requirements would make carrying out executions "impossible," and there is none.

---

[6] The Fifth Circuit's decision in *Vialva* evidently overlooked Judge Rao's statement in her controlling opinion that "implementation" would include details such as the "time, date, place, and method of execution," *Execution Protocol Cases*, 955 F.3d at 134, as the *Vialva* court incorrectly stated that the D.C. Circuit judges agreed that the FDPA would not require compliance with procedures governing the timing of executions. *Vialva*, 976 F.3d at 462.

## II.   PLAINTIFFS BERNARD AND BOURGEOIS WILL SUFFER IRREPARABLE HARM ABSENT INJUNCTIVE RELIEF

Defendants urge the Court to dismiss Plaintiffs' interest in living out additional months of their lives, arguing that "[t]his is not a case … like the hypothetical in *Ohio Adult Parole Auth. v. Woodard*, 523 U.S. 272, 281 (1998) (plurality), where capital defendants retain a residual life interest in not being summarily executed." Resp. at 19. Defendants fail to recognize that in deciding *Woodard*, five justices held that the Due Process Clause protects the "life" interest at issue in capital cases. As Justice O'Connor explained, "[w]hen a person has been fairly convicted and sentenced, his liberty interest, in being free from such confinement, has been extinguished. But it is incorrect … to say that a prisoner has been deprived of all interest in his life before his execution." *Woodard*, 523 U.S. at 289 (O'Connor, J., concurring). Justice Stevens, in express agreement with Justice O'Connor on this point, further explained why it is "obvious" that even a death-sentenced prisoner retains an interest in his own life for its own sake:

> Thus, we may conclude, for example, that a prisoner has no "liberty interest" in the place where he is confined, *Meachum v. Fano*, 427 U.S. 215, 96 S. Ct. 2532, 49 L.Ed.2d 451 (1976), or that an at-will employee has no "property interest" in his job, *Bishop v. Wood*, 426 U.S. 341, 96 S. Ct. 2074, 48 L.Ed.2d 684 (1976). **There is, however, no room for legitimate debate about whether a living person has a constitutionally protected interest in life. He obviously does.**
>
> … In [*Connecticut Bd. of Pardons v. Dumschat*, 452 U.S. 458 (1981)], the Court held that a refusal to commute a prison inmate's life sentence was not a deprivation of his liberty because the liberty interest at stake had already been extinguished. *Id.*, at 461, 464, 101 S. Ct. at 2462, 2464. The holding was supported by the "crucial distinction between being deprived of a liberty one has, as in parole, and being denied a conditional liberty that one desires." *Greenholtz v. Inmates of Neb. Penal and Correctional Complex*, 442 U.S. 1, 9, 99 S. Ct. 2100, 2105, 60 L.Ed.2d 668 (1979). That "crucial distinction" points in the opposite direction in this case because **respondent is contesting the State's decision to deprive him of life that he still has, rather than any conditional liberty that he desires. Thus, it is abundantly clear that respondent possesses a life interest protected by the Due Process Clause**.

*Id.* at 291–92 (Stevens, J., concurring in part and dissenting in part) (emphases added).

Thus, regardless of whether Article 43.141(c) "provides a right to 90 final days of life for its own sake," Resp. at 19, Plaintiffs plainly do have an interest in life for its own sake under the Due Process Clause. *See Woodard*, 523 U.S. at 288 ("A prisoner under a death sentence remains a living person and consequently has an interest in his life."). Defendants' act of scheduling Plaintiffs' executions in violation of the FDPA impairs Plaintiffs' constitutionally protected interest in additional days of life and thus constitutes "categorically irreparable" harm. *Nken v. Holder*, 556 U.S. 418, 435 (2009). The Court should reject Defendants' chilling argument (Resp. at 19) that ending an individual's life prematurely does not inflict any irreparable harm because 90 days of "life for its own sake" is not worth anything in that equitable analysis.

Defendants fare no better arguing about the intent of the Texas statute. Defendants do not dispute that the statute exists in order to allow the prisoner greater, rather than less, opportunity to raise legal challenges and to seek executive clemency. *See* Statement of Points & Authorities (ECF No. 336), at 7-8; Resp. at 19-22. The "underlying substantive policy" of the statute is to provide death-sentenced prisoners "a significant time period within which to prepare final pleadings in either state or federal court." *In re Carter*, 541 S.W.3d 743, 744–45 (Tex. Crim. App. 2017) (Newell, J., concurring); *see also* 2015 Texas Senate Bill No. 1071, Texas Eighty-Fourth Legislature ("Requiring sufficient notice of the scheduling of execution dates will ensure that defendants have an opportunity to fairly prepare for the impending execution.").

Defendants seem to suggest that Mr. Bernard and Mr. Bourgeois do not suffer any harm under the statute unless the harm rises to the level of a winning constitutional claim, such as a due process attack against the Government's temporally-restricted clemency procedures. Resp. at 19-21. But Defendants offer no authority for their unstated premise, and there is none. It suffices for Plaintiffs to demonstrate a "nexus" or causal connection between the harm they face and the

statute being violated, Resp. at 22, which they have done by showing that their clemency and judicial remedies are made more difficult by the wrongful denial of the "significant time period" that Texas law protectively allows them. *See* ECF No. 336 at 8-10 & n.3.

For purposes of the present FDPA claim, it is irrelevant whether the prisoners are likely to succeed on the merits of *other* claims that they are litigating elsewhere. *See* Resp. at 19 (citing *Dunn v. McNabb*, 138 S. Ct. 369, 369 (2017)). Plaintiffs already show a likelihood that Defendants are violating the FDPA by disregarding the Texas 91-day statute, with the result that the prisoners' other claims are tangibly impaired. Mr. Bourgeois, for example, is litigating a claim that he is intellectually disabled and that the Government is forbidden from executing him under 18 U.S.C. § 3596(c) ("A sentence of death shall not be carried out upon a person who is mentally retarded."). A district court stayed Mr. Bourgeois's execution in March. *See Bourgeois v. Warden*, No. 219 CIV 00392, 2020 WL 1154575 at *6 (S.D. Ind. Mar. 10, 2020). That stay was vacated only this morning, when the Seventh Circuit denied rehearing and issued its mandate following an adverse panel opinion, and over the dissent of two judges. *See Bourgeois v. Watson*, 977 F.3d 620 (7th Cir. 2020) (vacating stay of execution and ordering dismissal of habeas corpus petition under 28 U.S.C. § 2241); *Bourgeois v. Watson*, No. 20-1891 (7th Cir. Dec. 1, 2020) (per curiam order). By disregarding the 91-day requirement and scheduling an execution for December 11, Defendants have forced Mr. Bourgeois to bring an *extremely* expedited petition for certiorari. Once that happens, Defendants will argue that the very urgency they have unilaterally created justifies the denial of injunctive relief. *See Barr v. Lee*, 140 S. Ct. 2590, 2591 (2020) ("Last minute stays . . . should be the extreme exception, not the norm.") (quoting *Bucklew v. Precythe*, 139 S. Ct. 1112, 1134 (2019)).

17

Mr. Bernard continues to litigate his § 2241 habeas petition in the District Court for the

Southern District of Indiana, along with a motion to stay his execution, raising his *Brady* claim

based on his discovery of the government's withholding of critical exculpatory evidence.

*Bernard v. Warden*, No. 2:20-cv-00616 (S.D. Ind. filed Nov. 24, 2020). Mr. Bernard also

continues to pursue executive clemency, and his substantial case for mercy grows stronger by the

day. Indeed, already in the few days over a holiday weekend since the present motion was filed,

public pressure to commute his sentence has continued to build. *See, e.g.*, Editorial Board,

*Brandon Bernard Doesn't Deserve to Die*, Wash. Post, Nov. 29, 2020. Although Mr. Bernard did

file a clemency application years ago (contrary to Defendants' erroneous suggestion otherwise),

as well as an updated application last month, the unlawfully shortened notice period has

prevented him from properly supplementing the years-old information in that application, and

has also cut short the time for prevailing on relevant decisionmakers to grant the application, *see*

*supra* p. 6.[7]

---

[7] The Court also should reject Defendants' strained argument that Mr. Bernard somehow had earlier notice of his execution because Mr. Vialva, who was his co-defendant at trial more than two decades ago, received notice of his execution in July 2020. The government does not argue, nor could it, that the notice provision of Texas law (or any jurisdiction's law) can be so satisfied. Moreover, the mere fact that Mr. Bernard and Mr. Vialva were once co-defendants does not make them interchangeable human beings for purposes of any relevant legal or clemency proceedings. Indeed, as detailed in Mr. Bernard's clemency application and in court records, Mr. Bernard had a far lesser role than Mr. Vialva in the relevant crimes, as well as in the gang to which they belonged (evidence the government unlawfully withheld), and has expressed profound remorse in the two decades since—which is why a majority of surviving jurors at his trial, as well as a prosecutor who defended his sentence on appeal, have spoken out against his execution. Mr. Bernard would have had no reason to believe that the government's setting of an execution date for Mr. Vialva in July 2020 necessarily portended any setting of an execution date for him, especially given the dramatic differences in relative culpability and demonstrated remorse between those two men.

Defendants also argue that Mr. Bernard and Mr. Bourgeois cannot be irreparably harmed by denial of the 91-day notice period, because both prisoners continue to challenge their death sentences, both may apply for executive clemency, and neither prisoner has been wholly denied the right seek such relief or has a separately cognizable claim to redress such a denial. Resp. at 19-22. But a showing of irreparable harm does not require the *complete* loss of whatever interest a statute serves to protect. Defendants' own authority illustrates the point. *See Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, 886 F.3d 803 (9th Cir. 2018). Upholding an injunction under the Endangered Species Act, the Ninth Circuit reasoned that a showing of irreparable harm does not require an "extinction-level threat" – even though the statute's purpose is to prevent extinction. *Id.* at 818.

And so it is here: Mr. Bernard and Mr. Bourgeois need not show a complete inability to bring legal claims or to seek executive clemency; it suffices that the loss of 91 days diminishes those efforts as both Plaintiffs have explained. Even now it is unclear that a clemency petition from either prisoner will be considered, on account of the press of time. The Department of Justice's regulations provide that a petition to commute a sentence should not be filed "if other forms of judicial or administrative relief are available," 28 C.F.R. § 1.3, and both men have such legal remedies pending – including a claim that Mr. Bourgeois is intellectually disabled and that Mr. Bernard was sentenced to death because the prosecution withheld exculpatory evidence. *See* ECF No. 336 at 8-10 & n.3.

## III.    THE BALANCE OF EQUITIES FAVORS INJUNCTIVE RELIEF

Having mischaracterized Mr. Bernard's and Mr. Bourgeois's interest in continuing to live for the additional 91 days that Texas law affords them through the FDPA, Defendants advance a comparatively diminished interest in executing the two prisoners next week. Resp. at 22. In doing so, the Government ignores its own delays over a period of several years. Notwithstanding

the public's interest in the prompt enforcement of criminal judgments, Defendants admit that Mr. Bernard and Mr. Bourgeois were sentenced to death years ago and completed their initial post-conviction proceedings in 2014. It is unclear why an FDPA-required postponement of three months would injure the public beyond the many years of delay that Defendants have already created. Indeed, the Bureau of Prisons went without an established execution method from 2011 until 2019 – the last six of years of which the Bureau spent engaged in the "final phases of finalizing the protocol." *See* Defendants' Status Report of July 3, 2013, *Roane v. Gonzalez*, Case No. 1:05-cv-02337-TSC (D.D.C.), ECF No. 323 at 1. Defendants' claimed urgency rings hollow under the circumstances. *See Osorio-Martinez v. Attorney Gen. of the U.S.*, 893 F.3d 153, 179 (3d Cir. 2018) ("[T]he fact that the Government has not – until now – sought to remove SIJ [Special Immigration Juvenile] applicants, much less designees, undermines any urgency surrounding Petitioners' removal.").

## CONCLUSION

For the foregoing reasons, Plaintiffs Bernard and Bourgeois respectfully request that the

Court preliminarily enjoin Defendants from proceeding with their scheduled executions.

Dated:  December 1, 2020                              Respectfully submitted,

                                                     */s/ Alex Kursman*
                                                     Alex Kursman, Assistant Federal Defender
                                                       Pro Bono Counsel Pursuant to Local Rule 83.2(g)
                                                     Shawn Nolan, Chief, Capital Habeas Unit
                                                     Federal Community Defender Office, E.D. Pa.
                                                     601 Walnut Street, Suite 545 West
                                                     Philadelphia, PA 19106
                                                     Telephone: 215-928-0520
                                                     Email: alex_kursman@fd.org

                                                     */s/ Ginger D. Anders*
                                                     Ginger D. Anders (Bar No. 494471)
                                                     Jonathan S. Meltzer (Bar No. 888166546)
                                                     Brendan Gants (Bar No. 1031419)
                                                     MUNGER, TOLLES & OLSON LLP
                                                     601 Massachusetts Ave. NW, Suite 500E
                                                     Washington, D.C. 20001-5369
                                                     MUNGER, TOLLES & OLSON LLP
                                                     (202) 220-1100
                                                     Ginger.Anders@mto.com

                                                     *Counsel for Plaintiff Brandon Bernard*

## CERTIFICATE OF SERVICE

I hereby certify that on December 1, 2020, I caused a true and correct copy of foregoing to be served on all counsel of record via the Court's CM/ECF system. Pursuant to this Court's August 20, 2019 Order, below is a list of all counsel of record. The names marked with an asterisk (*) have no email provided on the docket and are no longer with the identified firms.

Alan Burch
U.S. Attorney's Office for the District of Columbia
(202) 252-2550
Email: alan.burch@usdoj.gov

Peter S. Smith
United States Attorney's Office
Appellate Division
(202) 252-6769
Email: peter.smith@usdoj.gov

Ethan P. Davis
Civil Division, U.S. Department of Justice
(202) 616-4171
Email: Ethan.Davis@usdoj.gov

Robert J. Erickson
US Department of Justice
(202) 514-2841
Email: Robert.erickson@usdoj.gov

Joshua Christopher Toll
KING & SPALDING LLP
(202) 737-8616
Email: jtoll@kslaw.com

Charles Anthony Zdebski
ECKERT SEAMANS CHERIN & MELLOTT, LLC
(202) 659-6605
Email: czdebski@eckertseamans.com

Gerald Wesley King, Jr.
FEDERAL DEFENDER PROGRAM, INC.
(404) 688-7530

Paul R. Perkins
Civil Division, Department of Justice
(202) 514-5090
Email: Paul.R.Perkins@usdoj.gov

Jonathan Kossak
Civil Division, Department of Justice
(202) 305-0612
Email: Jonathan.kossak@usdoj.gov

Denise M. Clark
U.S. Attorney's Office for the District of Columbia
(202) 252-6605
Email: Denise.Clark@usdoj.gov

Jean Lin
Civil Division, Department of Justice
(202) 514-3716
Jean.lin@usdoj.gov

Cristen Cori Handley
Civil Division, Department of Justice
(202) 305-2677
Cristen.Handley@usdoj.gov

Paul F. Enzinna
ELLERMAN ENZINNA PLLC
(202) 753-5553
Email: penzinna@ellermanenzinna.com

Brandon David Almond
TROUTMAN SANDERS LLP
(202) 274-2864
Email: brandon.almond@troutmansanders.com

Email: gerald_king@fd.org

Charles Fredrick Walker
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
(202) 371-7000
Email: Charles.Walker@skadden.com

Alexander C. Drylewski
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
(212) 735-2129
Email: Alexander.Drylewski@skadden.com
(*pro hac vice application forthcoming)

Celeste Bacchi
OFFICE OF THE PUBLIC DEFENDER
Capital Habeas Unit
(213) 894-1887
Email: celeste_bacchi@fd.org

Jonathan Charles Aminoff
FEDERAL PUBLIC DEFENDER,
CENTRAL DISTRICT OF CALIFORNIA
(213) 894-5374
Email: jonathan_aminoff@fd.org

Billy H. Nolas
FEDERAL COMMUNITY DEFENDER
OFFICE FOR THE EDPA
(215) 928-0520
Email: Billy_Nolas@fd.org

*Jeanne Vosberg Sourgens
VINSON & ELKINS LLP
(202) 639-6633

William E. Lawler, III
VINSON & ELKINS LLP
(202) 639-6676
Email: wlawler@velaw.com

Evan D. Miller
VINSON & ELKINS LLP
(202) 639-6605
Email: EMiller@velaw.com

Donald P. Salzman
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
(202) 371-7983
Email: Donald.salzman@skadden.com

Steven M. Albertson
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
(202) 371-7112
Email: Steven.Albertson@skadden.com

Craig Anthony Harbaugh
FEDERAL PUBLIC DEFENDER, CENTRAL
DISTRICT OF CALIFORNIA
(213) 894-7865
Email: craig_harbaugh@fd.org

Alexander Louis Kursman
OFFICE OF THE FEDERAL COMMUNITY
DEFENDER/EDPA
(215) 928-0520
Email: Alex_Kursman@fd.org

Kathryn B. Codd
VINSON & ELKINS LLP
(202) 639-6536
Email: kcodd@velaw.com

Robert E. Waters
KING & SPALDING LLP (202) 737-0500
Email: rwaters@velaw.com

Yousri H. Omar
VINSON & ELKINS LLP
(202) 639-6500
Email: yomar@velaw.com

*William E. Hoffman, Jr.
KING & SPALDING LLP
(404) 572-3383

Mark Joseph Hulkower
STEPTOE & JOHNSON LLP
(202) 429-6221
Email: mhulkower@steptoe.com

2

Margaret O'Donnell
(502) 320-1837
Email: mod@dcr.net

Abigail Bortnick
KING & SPALDING LLP
(202) 626-5502
Email: abortnick@kslaw.com

Matthew John Herrington
STEPTOE & JOHNSON LLP
(202) 429-8164
Email: mherrington@steptoe.com

Amy J. Lentz
STEPTOE & JOHNSON LLP
(202) 429-1320
Email: Alentz@steptoe.com

Gary E. Proctor
LAW OFFICES OF GARY E. PROCTOR,
LLC
(410) 444-1500
Email: garyeproctor@gmail.com

Scott Wilson Braden
FEDERAL PUBLIC DEFENDER,
EASTERN DISTRICT OF ARKANSAS
(501) 324-6144
Email: Scott_Braden@fd.org

Amy Gershenfeld Donnella
FEDERAL COMMUNITY DEFENDER
OFFICE FOR THE EDPA
(215) 928-0520
Email: amy_donnella@fd.org

David Victorson
(202) 637-5600
HOGAN LOVELLS US LLP
Email: David.Victorson@hoganlovells.com

John D. Beck
HOGAN LOVELLS US LLP
(212) 918-3000

Robert A. Ayers
STEPTOE & JOHNSON LLP
(202) 429-6401
Email: rayers@steptoe.com

Robert L. McGlasson
MCGLASSON & ASSOCIATES, PC
(404) 314-7664
Email: rlmcglasson@comcast.net

Sean D. O'Brien
PUBLIC INTEREST LITIGATION CLINIC
(816) 363-2795
Email: dplc@dplclinic.com

Shawn Nolan
FEDERAL COMMUNITY DEFENDER
OFFICE, EDPA
(215) 928-0520
Email: shawn_nolan@fd.org

Joseph William Luby
FEDERAL PUBLIC DEFENDER/EDPA
(215) 928-0520
Email: joseph_luby@fd.org

Pieter Van Tol
HOGAN LOVELLS US LLP
(212) 918-3000
Email: Pieter.Vantol@hoganlovells.com

Jonathan Jeffress
KAISER DILLON, PLLC
(202) 640-4430
Email: Jjeffress@kaiserdillon.com

Andrew Moshos
MORRIS NICHOLS ARSHT & TUNNELL
LLP
(302) 351-9197
Email: Amoshos@mnat.com

Alan E. Schoenfeld
WILMER CUTLER PICKERING HALE &
DORR LLP

3

Email: john.beck@hoganlovells.com

Amelia J. Schmidt
KAISER DILLON, PLLC
(202) 869-1301
Email: Aschmidt@kaiserdillon.com

Norman Anderson
KAISER DILLON PLLC
(202) 640-2850
nanderson@kaiserdillon.com

Jennifer Ying
MORRIS NICHOLS ARSHT & TUNNELL
LLP
(302) 658-9300
Email: Jying@mnat.com

Andres C. Salinas
WILMER CUTLER PICKERING HALE &
DORR LLP
(202) 663-6289
Email: Andres.Salinas@wilmerhale.com

*Ryan M. Chabot
WILMER CUTLER PICKERING HALE &
DORR LLP
(212) 295-6513

Dale Andrew Baich
OFFICE OF THE FEDERAL PUBLIC
DEFENDER
(602) 382-2816
Dale_Baich@fd.org

(212) 937-7294
Email: Alan.Schoenfeld@wilmerhale.com

Kathryn Louise Clune
CROWELL & MORING LLP
(202) 624-5116
kclune@crowell.com

Jennifer M. Moreno
OFFICE OF THE PUBLIC FEDERAL
DEFENDER, DISTRICT OF ARIZONA
(602) 382-2718
Jennifer_moreno@fd.org

Ginger Dawn Anders
MUNGER, TOLLES & OLSON LLP
(202) 220-1107
Ginger.anders@mto.com

*Jonathan S. Meltzer
MUNGER, TOLLES & OLSON LLP
(202) 220-1100

*Brendan Gants
MUNGER, TOLLES & OLSON LLP
(202) 220-1100

Timothy Kane
FEDERAL COMMUNITY DEFENDER
OFFICE, EDPA
(215) 928-0520
Email: timothy_kane@fd.org

Dated:  December 1, 2020

Respectfully submitted,

*/s/ Alex Kursman*
Alex Kursman, Assistant Federal Defender
 Pro Bono Counsel Pursuant to Local Rule 83.2(g)
Shawn Nolan, Chief, Capital Habeas Unit
Federal Community Defender Office, E.D. Pa.
601 Walnut Street, Suite 545 West
Philadelphia, PA 19106
Telephone: 215-928-0520
Email: alex_kursman@fd.org

4

*/s/ Ginger D. Anders*

Ginger D. Anders (Bar No. 494471)
Jonathan S. Meltzer (Bar No. 888166546)
Brendan Gants (Bar No. 1031419)
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Ave. NW, Suite 500E
Washington, D.C. 20001-5369
MUNGER, TOLLES & OLSON LLP
(202) 220-1100
Ginger.Anders@mto.com

*Counsel for Plaintiff Brandon Bernard*

5