**\*\*\*\* EXECUTION SCHEDULED FOR JANUARY 15, 2021\*\*\*\***

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **IN THE MATTER OF THE FEDERAL BUREAU OF PRISONS' EXECUTION PROTOCOL CASES,** | ) ) ) | |
| | ) | |
| **Lead case:** *Roane et al. v. Barr et al.* | ) | |
| | ) | |
| | ) | **Case No. 19-mc-00145-TSC** |
| | ) | |
| **THIS DOCUMENT RELATES TO:** | ) | |
| | ) | |
| **ALL CASES** | ) | |
| | ) | |
| ***Roane, et al. v. Barr, et al.*, No. 05-2337** | ) | |

## MOTION FOR LEAVE OF COURT FOR DUSTIN HIGGS
## TO FILE AN AMENDED AND SUPPLEMENTAL COMPLAINT

Plaintiff Dustin Higgs respectfully requests leave of Court to file an amended and supplemental complaint pursuant to Fed. R. Civ. P. 15(a) and (d), in order to assert two newly arising claims that (1) the Government's planned use of pentobarbital to effectuate his recently announced execution would be an unconstitutional *ex post facto* punishment; and (2) the Government has arbitrarily selected Mr. Higgs for execution, in violation of the Fifth and Eighth Amendments to the United States Constitution and the Administrative Procedure Act (APA).

1.      Mr. Higgs is scheduled for execution on January 15, 2021, five days before President-Elect Joseph R. Biden, Jr., will formally assume the office on January 20, 2021. The Government announced Mr. Higgs's execution date on November 20, 2020. *See* ECF No. 330.

2.      As explained in the accompanying amended and supplemental complaint, when Mr. Higgs was sentenced to death, the FDPA required (and continues to require) that capital sentences be implemented "in the manner prescribed by the law of the State which the sentence

is imposed." 18 § U.S.C. 3596(a). Mr. Higgs was sentenced to death in the United States District Court for the District of Maryland on January 3, 2001, for killings that occurred on January 27, 1996. At the time of Mr. Higgs's crimes and sentence, Maryland law required that "[t]he manner of inflicting the punishment of death shall be the continuous intravenous administration of a lethal quantity of an *ultrashort acting barbiturate* or other similar drug in combination with a chemical paralytic agent[.]" MD Code Ann., Corr.' Servs. § 3-905(a) (repealed by Acts 2013) (emphasis added).

3.      Defendants intend to execute Mr. Higgs with pentobarbital, which is a *short*-acting barbiturate, not an *ultra*short-acting barbiturate. Declaration of Craig W. Stevens, Ph.D, at ⁋ 8 (Dec. 2, 2020), Exhibit A. Short-acting barbiturates like pentobarbital have a slower onset of action, and their effects take significantly longer to begin. *Id.* at ⁋⁋ 8-9. The longer it takes for the anesthetic properties of the barbiturate administered to take effect, the more pain Mr. Higgs will experience prior to the onset of anesthesia or death, including pain from flash pulmonary edema while sensate. Defendants' use of pentobarbital, instead of an ultrashort-acting barbiturate as required by the relevant Maryland statutes, therefore increases Mr. Higgs's punishment and is unconstitutional as an *ex post facto* law when applied to Mr. Higgs. *See Weaver v. Graham*, 450 U.S. 24, 28 (1981); U.S. Const. Art. I § 9 cl. 3.

4.      Additionally, Defendants have arbitrarily selected Mr. Higgs for execution in violation of the Fifth and Eighth Amendments to the U.S. Constitution and the APA. *See* 5 U.S.C. § 706(2). As explained in the amended and supplemental complaint, the federal government had not carried out a death sentence for more than 17 years when it began executing prisoners in July 2020 during a global pandemic. Defendants have not codified, memorialized, or otherwise disclosed any set of standards or criteria by which the government has selected

prisoners for execution, including those with scheduled execution dates in December 2020 and January 2021. Of the 54 prisoners on federal death row, eight were sentenced to death earlier than Mr. Higgs and have not received execution dates. The absence of discernible criteria for deciding which prisoners will be scheduled for execution, as well as the Attorney General's exercise of unilateral discretion in selecting those prisoners and scheduling their deaths, have created a completely arbitrary process for determining who lives and who dies. The Government has compounded the arbitrariness of selecting Mr. Higgs for execution by scheduling and intending to carry out his execution during a lame-duck presidency, and only a mere five days before a new president takes office. The last time the United States government carried out an execution between a presidential election and the inauguration of the new president was nearly 132 years ago, on January 25, 1889.

5.      Under Rule 15(a)(2), a "court should freely give leave [to amend a pleading] when justice so requires." Fed. R. Civ. P. 15(a)(2); *see also Belizan v. Hershon*, 434 F.3d 579, 582 (D.C. Cir. 2006) (explaining that Rule 15 "is to be construed liberally"). In the absence of "undue delay, bad faith or dilatory motive . . . , repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . , [or] futility," "the leave sought should, as the rules require, be 'freely given.'" *Foman v. Davis*, 371 U.S. 178, 182 (1962) (quoting Fed. R. Civ. P. 15(a)); *see also Turan Petroleum, Inc. v. Ministry of Oil and Gas of Kazakhstan*, 406 F. Supp. 3d 1, 8 (D.D.C. 2019) (same). In this Circuit, "it is an abuse of discretion to deny leave to amend unless there is sufficient reason." *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996). Under Rule 15, "the non-movant generally carries the burden in persuading the court to deny leave to amend." *Bryant v. United Sates*, 2020 WL 5969241, at *2 (D.D.C. Oct. 8, 2020) (quoting *Nwachukwu v. Karl*, 222 F.R.D. 208, 211 (D.D.C. 2004)).

3

6.      Mr. Higgs's proposed amendment alleging that the use of pentobarbital to carry out his recently scheduled execution is unconstitutional as an *ex post facto* law when applied to him "do[es] not radically alter the scope and nature of the action" and thus should be "especially favored." *United States ex rel. Westrick v. Second Chance Body Armor, Inc.*, 301 F.R.D. 5, 8 (D.D.C. 2013) (quoting *Estate of Gaither ex rel. Gaither v. District of Columbia*, 272 F.R.D. 248, 252 (D.D.C. 2011)). Moreover, as the Supreme Court instructed in *Foman* when explaining Rule 15(a)'s "mandate," a plaintiff "ought to be afforded an opportunity to test his claim on the merits" "[i]f the underlying facts or circumstances . . . may be a proper subject of relief." 371 U.S. at 182. This is especially true in a capital case, where Mr. Higgs's life is at stake. Mr. Higgs seeks in good faith to amend his complaint only a month after Defendants filed their responsive pleading to his original complaint, and even as the Government has not yet definitively specified a place or method for his execution. *See* ECF No. 306; *cf.*, *Ray v. CLH New York Ave, LLC*, 2020 WL 5594064, at *3-4 (D.D.C. Sept. 18, 2020) (allowing both parties to amend pleadings "less than one month before the close of discovery" upon finding that allowing the amendment "would not be unjust").

7.      With respect to Mr. Higgs's arbitrary selection claim, Rule 15(d) provides for a supplemental pleading "setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." In this instance, Mr. Higgs filed an unopposed motion to intervene and complaint on September 1, 2020. ECF Nos. 229, 229-1. The Government announced Mr. Higgs's January 15, 2021 execution date on November 20, 2020, without having provided a basis for this decision and without a designated state for the location and manner of Mr. Higgs's execution. *See* ECF No. 330. This motion follows within two weeks of the execution being scheduled.

8.      Leave to supplement a complaint is "liberally granted," especially when, as here, the supplemental claim is factually and legally related to matters in the earlier complaint. *Chadler v. James*, 783 F. Supp. 2d 33, 39 (D.D.C. 2011); *see also Banks v. York*, 448 F. Supp. 2d 213, 214 (D.D.C. 2006) (leave should be "freely granted ... where such supplementation will promote the economic and speedy disposition of the controversy between the parties, will not cause undue delay of trial, inconvenience and will not prejudice the rights of any other party"); *Costa v. Bazron*, 2020 WL 1935524, at *1, 2 (D.D.C. April 22, 2020) (granting plaintiffs' motion to supplement six months after original complaint was filed where new allegations arose out of defendants' response to the COVID-19 pandemic but were related to original claims and "time [was] of the essence").

9.      Although a supplemental complaint generally supersedes an earlier complaint, the Court in this case has directed the parties to file Plaintiff-specific claims in a separate filing. *See* ECF No. 81. Therefore, Mr. Higgs does not intend for his amended and supplemental complaint to supplant or otherwise waive any claims from his original complaint, including the claims that the Government's 2019 Protocol violates the Eighth Amendment (facially and as applied to Mr. Higgs) and the Food, Drug and Cosmetic Act.

10.     Undersigned counsel have consulted with opposing counsel, who states that the Government opposes the motion for leave to file an amended and supplemental complaint.

WHEREFORE, Plaintiff Dustin Higgs respectfully requests that the Court grant him leave to file the accompanying amended and supplemental complaint.

Dated:   December 4, 2020                    Respectfully submitted,

                                             /s/ Shawn Nolan
                                             Shawn Nolan, Chief, Capital Habeas Unit
                                             Matthew Lawry, Assistant Federal Defender
                                             Federal Community Defender Office, E.D. Pa.
                                             601 Walnut Street, Suite 545 West
                                             Philadelphia, PA 19106
                                             Telephone: 215-928-0520
                                             Email: shawn_nolan@fd.org
                                             Email: matthew_lawry@fd.org

                                             *Counsel for Plaintiff Dustin Higgs*

## CERTIFICATE OF SERVICE

I hereby certify that on December 4, 2020, I caused a true and correct a copy of the foregoing motion to be served on all counsel of record via the Court's CM/ECF system. Pursuant to this Court's August 20, 2019 Order, below is a list of all counsel of record. The names marked with an asterisk (*) have no email provided on the docket and are no longer with the identified firms.

Alan Burch
U.S. Attorney's Office for the District of Columbia
(202) 252-2550
Email: alan.burch@usdoj.gov

Peter S. Smith
United States Attorney's Office
Appellate Division
(202) 252-6769
Email: peter.smith@usdoj.gov

Ethan P. Davis
Civil Division, U.S. Department of Justice
(202) 616-4171
Email: Ethan.Davis@usdoj.gov

Robert J. Erickson
US Department of Justice
(202) 514-2841
Email: Robert.erickson@usdoj.gov

Joshua Christopher Toll
KING & SPALDING LLP
(202) 737-8616
Email: jtoll@kslaw.com

Charles Anthony Zdebski
ECKERT SEAMANS CHERIN & MELLOTT, LLC
(202) 659-6605
Email: czdebski@eckertseamans.com

Gerald Wesley King, Jr.
FEDERAL DEFENDER PROGRAM, INC.
(404) 688-7530
Email: gerald_king@fd.org

Paul R. Perkins
Civil Division, Department of Justice
(202) 514-5090
Email: Paul.R.Perkins@usdoj.gov

Jonathan Kossak
Civil Division, Department of Justice
(202) 305-0612
Email: Jonathan.kossak@usdoj.gov

Denise M. Clark
U.S. Attorney's Office for the District of Columbia
(202) 252-6605
Email: Denise.Clark@usdoj.gov

Jean Lin
Civil Division, Department of Justice
(202) 514-3716
Jean.lin@usdoj.gov

Cristen Cori Handley
Civil Division, Department of Justice
(202) 305-2677
Cristen.Handley@usdoj.gov

Paul F. Enzinna
ELLERMAN ENZINNA PLLC
(202) 753-5553
Email: penzinna@ellermanenzinna.com

Brandon David Almond
TROUTMAN SANDERS LLP
(202) 274-2864
Email: brandon.almond@troutmansanders.com

Donald P. Salzman
SKADDEN, ARPS, SLATE, MEAGHER &

Charles Fredrick Walker
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
(202) 371-7000
Email: Charles.Walker@skadden.com

Alexander C. Drylewski
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
(212) 735-2129
Email: Alexander.Drylewski@skadden.com
(*pro hac vice application forthcoming)

Celeste Bacchi
OFFICE OF THE PUBLIC DEFENDER
Capital Habeas Unit
(213) 894-1887
Email: celeste_bacchi@fd.org

Jonathan Charles Aminoff
FEDERAL PUBLIC DEFENDER,
CENTRAL DISTRICT OF CALIFORNIA
(213) 894-5374
Email: jonathan_aminoff@fd.org

Billy H. Nolas
FEDERAL COMMUNITY DEFENDER
OFFICE FOR THE EDPA
(215) 928-0520
Email: Billy_Nolas@fd.org

*Jeanne Vosberg Sourgens
VINSON & ELKINS LLP
(202) 639-6633

William E. Lawler, III
VINSON & ELKINS LLP
(202) 639-6676
Email: wlawler@velaw.com

Evan D. Miller
VINSON & ELKINS LLP
(202) 639-6605
Email: EMiller@velaw.com

Margaret O'Donnell

FLOM LLP
(202) 371-7983
Email: Donald.salzman@skadden.com

Steven M. Albertson
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
(202) 371-7112
Email: Steven.Albertson@skadden.com

Craig Anthony Harbaugh
FEDERAL PUBLIC DEFENDER, CENTRAL
DISTRICT OF CALIFORNIA
(213) 894-7865
Email: craig_harbaugh@fd.org

Alexander Louis Kursman
OFFICE OF THE FEDERAL COMMUNITY
DEFENDER/EDPA
(215) 928-0520
Email: Alex_Kursman@fd.org

Kathryn B. Codd
VINSON & ELKINS LLP
(202) 639-6536
Email: kcodd@velaw.com

Robert E. Waters
KING & SPALDING LLP (202) 737-0500
Email: rwaters@velaw.com

Yousri H. Omar
VINSON & ELKINS LLP
(202) 639-6500
Email: yomar@velaw.com

*William E. Hoffman, Jr.
KING & SPALDING LLP
(404) 572-3383

Mark Joseph Hulkower
STEPTOE & JOHNSON LLP
(202) 429-6221
Email: mhulkower@steptoe.com

Robert A. Ayers

2

(502) 320-1837
Email: mod@dcr.net

Abigail Bortnick
KING & SPALDING LLP
(202) 626-5502
Email: abortnick@kslaw.com

Matthew John Herrington
STEPTOE & JOHNSON LLP
(202) 429-8164
Email: mherrington@steptoe.com

Amy J. Lentz
STEPTOE & JOHNSON LLP
(202) 429-1320
Email: Alentz@steptoe.com

Gary E. Proctor
LAW OFFICES OF GARY E. PROCTOR,
LLC
(410) 444-1500
Email: garyeproctor@gmail.com

Scott Wilson Braden
FEDERAL PUBLIC DEFENDER,
EASTERN DISTRICT OF ARKANSAS
(501) 324-6144
Email: Scott_Braden@fd.org

Amy Gershenfeld Donnella
FEDERAL COMMUNITY DEFENDER
OFFICE FOR THE EDPA
(215) 928-0520
Email: amy_donnella@fd.org

David Victorson
(202) 637-5600
HOGAN LOVELLS US LLP
Email: David.Victorson@hoganlovells.com

John D. Beck
HOGAN LOVELLS US LLP
(212) 918-3000
Email: john.beck@hoganlovells.com

STEPTOE & JOHNSON LLP
(202) 429-6401
Email: rayers@steptoe.com

Robert L. McGlasson
MCGLASSON & ASSOCIATES, PC
(404) 314-7664
Email: rlmcglasson@comcast.net

Sean D. O'Brien
PUBLIC INTEREST LITIGATION CLINIC
(816) 363-2795
Email: dplc@dplclinic.com

Shawn Nolan
FEDERAL COMMUNITY DEFENDER
OFFICE, EDPA
(215) 928-0520
Email: shawn_nolan@fd.org

Joseph William Luby
FEDERAL PUBLIC DEFENDER/EDPA
(215) 928-0520
Email: joseph_luby@fd.org

Pieter Van Tol
HOGAN LOVELLS US LLP
(212) 918-3000
Email: Pieter.Vantol@hoganlovells.com

Jonathan Jeffress
KAISER DILLON, PLLC
(202) 640-4430
Email: Jjeffress@kaiserdillon.com

Andrew Moshos
MORRIS NICHOLS ARSHT & TUNNELL
LLP
(302) 351-9197
Email: Amoshos@mnat.com

Alan E. Schoenfeld
WILMER CUTLER PICKERING HALE &
DORR LLP
(212) 937-7294
Email: Alan.Schoenfeld@wilmerhale.com

Amelia J. Schmidt
KAISER DILLON, PLLC
(202) 869-1301
Email: Aschmidt@kaiserdillon.com

Norman Anderson
KAISER DILLON PLLC
(202) 640-2850
nanderson@kaiserdillon.com

Jennifer Ying
MORRIS NICHOLS ARSHT & TUNNELL
LLP
(302) 658-9300
Email: Jying@mnat.com

Andres C. Salinas
WILMER CUTLER PICKERING HALE &
DORR LLP
(202) 663-6289
Email: Andres.Salinas@wilmerhale.com

*Ryan M. Chabot
WILMER CUTLER PICKERING HALE &
DORR LLP
(212) 295-6513

Dale Andrew Baich
OFFICE OF THE FEDERAL PUBLIC
DEFENDER
(602) 382-2816
Dale_Baich@fd.org

Kathryn Louise Clune
CROWELL & MORING LLP
(202) 624-5116
kclune@crowell.com

Jennifer M. Moreno
OFFICE OF THE PUBLIC FEDERAL
DEFENDER, DISTRICT OF ARIZONA
(602) 382-2718
Jennifer_moreno@fd.org

Ginger Dawn Anders
MUNGER, TOLLES & OLSON LLP
(202) 220-1107
Ginger.anders@mto.com

*Jonathan S. Meltzer
MUNGER, TOLLES & OLSON LLP
(202) 220-1100

*Brendan Gants
MUNGER, TOLLES & OLSON LLP
(202) 220-1100

Timothy Kane
FEDERAL COMMUNITY DEFENDER
OFFICE, EDPA
(215) 928-0520
Email: timothy_kane@fd.org

/s/ Shawn Nolan
Shawn Nolan, Chief, Capital Habeas Unit
Matthew Lawry, Assistant Federal Defender
Federal Community Defender Office, E.D. Pa.
601 Walnut Street, Suite 545 West
Philadelphia, PA 19106
Telephone: 215-928-0520
Email: shawn_nolan@fd.org
Email: matthew_lawry@fd.org

*Counsel for Plaintiff Dustin Higgs*

****EXECUTION SCHEDULED FOR JANUARY 15, 2021****

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| IN THE MATTER OF THE FEDERAL BUREAU OF PRISONS' EXECUTION PROTOCOL CASES, | ) ) ) | |
| | ) | |
| Lead case:    *Roane et al. v. Barr et al.* | ) | |
| | ) | |
| | ) | **Case No. 19-mc-00145-TSC** |
| | ) | |
| THIS DOCUMENT RELATES TO: | ) | |
| | ) | |
| *Roane et al. v. Barr* **et al, No. 05-2337** | ) | |

## AMENDED AND SUPPLEMENTAL COMPLAINT OF PLAINTIFF DUSTIN HIGGS FOR INDIVIDUALIZED INJUNCTIVE AND DECLARATORY RELIEF

### I.
### Nature of Action and Background

1.      Pursuant to the Court's Order of February 19, 2020 (ECF No. 81) and Fed. R. Civ. P. 15 (a) and (d), and in addition to his previous Complaint (ECF No. 229-1), Mr. Higgs brings this Amended and Supplemental Complaint seeking injunctive and declaratory relief for violations of his rights under the Fifth and Eighth Amendments, the *Ex Post Facto* Clause of Article I, Section 9 of the Constitution, and the Administrative Procedure Act, 5 U.S.C. §§ 500 *et seq.* and 701 *et seq.*

2.      On November 20, 2020, Defendants set an execution date of January 15, 2021, against Mr. Higgs. *See* ECF No. 330.

3.      Pursuant to the Court's February 19, 2020 Order (ECF No. 81), the circumstances described herein "warrant . . . a separate filing" concerning "issues that are particular to" Mr. Higgs. ECF No. 81. Accordingly, Mr. Higgs brings this Amended and Supplemental Complaint

based on Defendants' violations of his rights as listed above. Because the Court has allowed individual plaintiffs to bring claims such as these in a "separate filing," Mr. Higgs does not intend for this Supplemental Complaint to supersede his earlier Complaint, including his claims under the Eighth Amendment and the Food, Drug and Cosmetic Act as made cognizable by the APA.

4.      Mr. Higgs realleges and incorporates herein by reference, as if set forth in full below, the paragraphs of his Complaint that relate to his amended and supplemental claims (Counts I, II, III, IV, VI, IX & XII). *See* ECF No. 229-1; *In re Federal Bureau of Prisons Execution Protocol Cases*, — F.3d —, No. 20-5340, 2020 WL 6750375 (D.C. Cir., Nov. 19, 2020) (reinstating consolidated Plaintiffs' Eighth Amendment claim).

## II.
## Amended and Supplemental Count I: Defendants' Planned Execution Using Pentobarbital is Unconstitutional as an *Ex Post Facto* Law When Applied to Mr. Higgs

5.      Mr. Higgs realleges and incorporates herein by reference all of the preceding paragraphs of this Amended and Supplemental Complaint as if set forth in full below.

6.      Defendants' lethal injection protocol and planned execution of Mr. Higgs using pentobarbital is unconstitutional as an *ex post facto* law when applied to Mr. Higgs.

7.      The federal government is prohibited from enacting an *ex post facto* law. *Weaver v. Graham*, 450 U.S. 24, 28 (1981); U.S. Const. Art. I § 9 cl. 3. One function of the *Ex Post Facto* Clause is to bar enactments which, by retroactive operation, create "a significant risk" of increased punishment for a crime after its commission. *Garner v. Jones*, 529 U.S. 244, 256 (2000); *see also In re Medley*, 134 U.S. 160, 172 (1890) (execution statute increased the prisoner's punishment by keeping the date and time of the prisoner's execution a secret from him, which would cause mental anxiety, and therefore was an *ex post facto* law). The limitations

2

of the *Ex Post Facto* Clause are also "inherent in the notion of due process." *Rogers v. Tennessee*, 532 U.S. 451, 456 (2001). *Ex post facto* protections operate in this case even though the 2019 Protocol is not a statute or regulation, and even though Defendants have discretionary authority to design an execution method as well as to modify it. *See Garner*, 529 U.S. at 253. The controlling question is whether the use of the protocol, even if discretionary, has the "practical effect" of increasing the prisoner's punishment. *Fletcher v. District of Columbia*, 391 F.3d 250, 251 (D.C. Cir. 2004).

8.      When Mr. Higgs's crimes were committed, and when he was sentenced to death, the federal death penalty statute required, and continues to require, that capital sentences be implemented "in the manner prescribed by the law of the State in which the sentence is imposed." 18 U.S.C. § 3596(a). Section 3596 further requires that if the State does not provide for the implementation of a death sentence, the court shall designate another state, and the sentence shall be implemented in the latter state in the manner prescribed by that state's law. *Id*.

9.      On January 3, 2001, Mr. Higgs was sentenced to death by the United States District Court for the District of Maryland for the January 27, 1996 killings of Tanji Jackson, Tamika Black, and Mishann Chinn.

10.      At the time of Mr. Higgs's crimes and sentencing, Maryland provided for the implementation of the death penalty. MD Code, Art 27 § 71 (West) (repealed by Acts 1999); MD Code Ann., Corr.' Servs. § 3-905 (West) (repealed by Acts 2013). Consistent with Section 3596(a), the District Court's Judgment and Order imposed the death sentence to be implemented in the manner prescribed by Maryland. *United States of America v. Dustin Higgs*, 8:98-cr-00520

(ECF No. 640-1 at 2 (Jan. 3, 2001) (Messitte, J.) (ordering sentence "pursuant to Title 18 United States Code, Section 3591 through 3597, including particularly Sections 3594 and 3596.").[1]

11.     The Maryland statutes in effect at the time of Mr. Higgs's crimes and sentencing required that "[t]he manner of inflicting the punishment of death shall be the continuous intravenous administration of a lethal quantity of an *ultrashort acting barbiturate* or other similar drug in combination with a chemical paralytic agent[.]" § 3-905(a) (emphasis added); *see also Evans .v State*, 914 A.2d 25, 76-77 (Md. 2006) (describing the 1994 lethal injection legislation). In 2013, Maryland abolished the death penalty. S.B. 276, 2013 Leg. 433rd Sess. (Md. 2013).

12.     The 2019 Addendum to the BOP Execution Protocol replaced a three-drug procedure that mandated an ultrashort-acting barbiturate as the first drug, with instructions that all federal executions be conducted via a uniform procedure using intravenous injection of five grams of pentobarbital. There are two drugs classified as ultrashort-acting barbiturates: sodium thiopental and methohexital. Pentobarbital is not an ultrashort-acting barbiturate. *See* Declaration of Craig W. Stevens, Ph.D, at ¶ 8 (Dec. 2, 2020) Exhibit A. Pentobarbital is instead classified as a short-acting barbiturate. *Id.*

13.     As described in Claims II and IV of Mr. Higgs's Complaint (ECF No. 229-1), the use of pentobarbital as the first drug in the Government's lethal injection protocol creates a significant risk of severe pain – namely, the experience of flash pulmonary edema while sensate.

---

[1] Currently pending before the District Court for the District of Maryland is a Motion, filed by the Government, to Amend Judgment and Order to designate the State of Indiana as the state to implement Mr. Higgs's death sentence. *United States of America v. Dustin Higgs*, No. 8:98-cr-00520, ECF No. 640 (Aug. 4, 2020).

14. The use of pentobarbital, as compared to the use of an ultrashort-acting barbiturate, increases the risk that Mr. Higgs will experience flash pulmonary edema while sensate.

15. Defendants do not contest that their lethal injection protocol using the intravenous injection of five grams of pentobarbital will cause pulmonary edema. Instead, they argue that when the pulmonary edema occurs, the inmates will no longer be sensate. Based on the parties' competing evidence, this Court explained that it "continues to be concerned at the possibility that inmates will suffer excruciating pain during their executions[.]" ECF No. 261 (Sept. 20 Mem. Op.) at 36.

16. The possibility that prisoners will suffer excruciating pain during their executions is minimized by the use of an ultrashort-acting barbiturate instead of pentobarbital. As its name suggests, an ultrashort-acting barbiturate has a quicker onset of action when compared to pentobarbital, and therefore will cause surgical anesthesia or death more rapidly than pentobarbital. When a person is injected with an ultrashort-acting barbiturate, anesthesia occurs within ten to thirty seconds. Stevens Decl. at ¶ 9. A short-acting barbiturate typically takes 30 seconds to one minute for its intended onset of action. *Id.* at ¶ 8. "Its effects take significantly longer to begin than thiopental or methohexital." *Id.*

17. The difference in the onset of action is crucial. The longer it takes for the anesthetic properties of the barbiturate administered to take effect, the more pain Mr. Higgs will experience prior to the onset of anesthesia or death, including pain from flash pulmonary edema while sensate.

18. The substitution of pentobarbital for an ultrashort-acting barbiturate thus increases Mr. Higgs's punishment. That showing suffices for an *ex post facto* claim, regardless of whether

5

the Government's execution method independently violates the Eighth Amendment. *See, e.g.*, *Williams v. Hobbs*, 658 F.3d 842, 848 (8th Cir. 2011) (requiring prisoners to show "more than a 'speculative and attenuated risk of increasing the measure of punishment attached to the covered crimes'") (quoting *Cal. Dept. of Corr. v. Morales*, 514 U.S. 499, 514 (1995)).

19.    Because administering the current lethal injection protocol against Mr. Higgs increases his punishment when compared to the punishment in effect at the time of his crimes and sentencing, it is unconstitutional as an *ex post facto* law when applied to Mr. Higgs.

20.    Because executing Mr. Higgs with pentobarbital under the 2019 Protocol would violate the *Ex Post Facto* Clause as well as due process, Defendants' planned execution is "not in accordance with law" and is "contrary to constitutional right" under the Administrative Procedure Act, 5 U.S.C. § 706(2).

## III.
## Amended and Supplemental Count II: Defendants' Arbitrary Selection of Mr. Higgs for Execution Violates the Fifth and Eighth Amendments and Is Arbitrary and Capricious Under the APA

21.    Mr. Higgs realleges and incorporates herein by reference all of the preceding paragraphs of this Amended and Supplemental Complaint as if set forth in full below.

22.    The Due Process Clause in the Fifth Amendment requires notice and the opportunity to be heard before the deprivation of life, liberty, or property.

23.    The Eighth Amendment forbids the arbitrary imposition and implementation of capital punishment. "[I]f a State wishes to authorize capital punishment it has a constitutional responsibility to tailor and apply its law in a manner that avoids the arbitrary and capricious infliction of the death penalty." *Godfrey v. Georgia*, 446 U.S. 420, 428 (1980).

24.    The Eighth Amendment's proscription against arbitrariness applies to the selection of prisoners for execution. "The Eighth Amendment simply cannot be read to proscribe

a state from randomly selecting which few members of its criminal population it will sentence to death, but to allow that same state to randomly select which trivial few of those condemned it will actually execute." *Jones v. Chappell*, 31 F. Supp. 3d 1050, 1063 (C.D. Cal. 2014), *rev'd on other grounds sub nom. Jones v. Davis*, 806 F.3d 538 (9th Cir. 2015).

25. Under the APA, a reviewing court must set aside any agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

26. Agency action that is not the product of reasoned decision-making is arbitrary and capricious. *Motor Vehicle Mfrs. Ass'n of United States, Inc. v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43 (1983). To satisfy the requirement of reasoned decision-making, an agency must "cogently explain why it has exercised its discretion in a given manner." *Id.* at 48.

27. For more than 17 years, no federal death sentence was carried out. Then, in July 2020, Defendants restarted federal executions. In less than three months, the federal government executed seven people—more than the total number executed over the previous six decades.

28. According to data from the Espy file—a compilation of executions in the colonies and United States since 1602—if all five currently scheduled executions go forward, the thirteen total federal civilian executions will be the most in a single year since 1896, when the Grover Cleveland administration carried out 16 executions during his second presidency. *See* << https://deathpenaltyinfo.org/executions/executions-overview/executions-in-the-u-s-1608-2002-the-espy-file>>. The soaring number of federal executions comes at the same time that states are on track to perform the fewest executions in 37 years. *Id.*

29.     Defendants, including the Attorney General, have not codified, memorialized, or otherwise disclosed any set of standards or criteria by which the government chooses which prisoners it will schedule for execution.

30.     On November 7, 2020, Joseph R. Biden, Jr., and Kamala Harris were named President-Elect and Vice President-Elect of the United States, respectively. They will formally assume their new offices on January 20, 2021. President-Elect Biden supports ceasing federal executions, and Democratic members of Congress have now called for the suspension of federal executions during the lame-duck period. *See* https://joebiden.com/justice/# ("Biden will work to pass legislation to eliminate the death penalty at the federal level . . . These individuals should instead serve life sentences without probation or parole."); Scott Shackford, "Dems Ask Trump Administration to Stop Executing Inmates Ahead of Biden Transition," (Nov. 17, 2020), available at <<https://reason.com/2020/11/17/dems-ask-trump-administration-to-stop-executing-inmates-ahead-of-biden-transition/>>.

31.     The Death Penalty Information Center currently lists 54 prisoners as federally death-sentenced. *See* <<https://deathpenaltyinfo.org/state-and-federal-info/federal-death-penalty/list-of-federal-death-row-prisoners>>. From among those 54 prisoners, the Attorney General chose five to execute in December 2020 and January 2021. Plaintiff Higgs is the last of those five; his execution is scheduled for January 15, 2021. Defendants have provided no basis whatsoever to justify this decision.

32.     Defendants have previously invoked the interest of crime victims in "timely" enforcement of a death sentence. *See, e.g.*, ECF No. 16 (Defendants' Opposition to Plaintiff Daniel Lewis Lee's Motion for a Preliminary Injunction), at 45. Nevertheless, Defendants have not followed a practice of scheduling executions according to the length of time that has passed

since a sentence was imposed, the length of time since a crime was committed, or even the length of time since the prisoner finished an initial round of post-conviction remedies. Of the 54 prisoners currently on death row, eight were sentenced to death earlier than Mr. Higgs.

33.     The absence of discernible criteria creates a legal vacuum for deciding which prisoners will suffer the ultimate punishment, leading to arbitrary decision-making on the weightiest question a government can address. The mere fact that a prisoner has been convicted and sentenced to death, and that the sentence has survived appellate and post-conviction review, does not cure the arbitrariness with which the sentence is carried out. "Arbitrariness in execution is still arbitrary, regardless of when in the process the arbitrariness arises." *Jones*, 31 F. Supp. 3d at 1063.

34.     In addition to lacking standards, the Attorney General's exercise of discretion is unilateral and lacks any judicial or executive oversight. At no point does a warrant issue from a federal court or the President, and at no point does the prisoner have the opportunity to argue against the issuance of a warrant in light of current legal proceedings, prospective litigation, or other circumstances that militate against scheduling an execution.

35.     Defendants claim to have modeled their execution method after those in Georgia, Missouri, and Texas. *See Roane v. Gonzales*, No. 1:05-cv-02337-TSC, ECF No. 389-1, at 1 (press release dated July 25, 2019). Nevertheless, all of those states provide for an execution warrant to be issued by a court, and even then, only on a showing by the prosecutor or attorney general that a death warrant is justified. *See* Mo. Sup. Ct. R. 30.30(d); Tex. Code Crim. Proc. Art. 43.141; Ga. St. § 17-10-40(a).

36.     Other than the federal government, there is not a single death penalty jurisdiction within the United States that gives law enforcement the unilateral discretion to select prisoners

for execution and to schedule their deaths. Even federal military executions must be approved by the President. *See* Department of the Army, Army Reg. 190-55 (§ 1-4(a)(3)).

37.     Granting the Attorney General unfettered discretion has, in practice, led to a completely arbitrary process for determining who lives and who dies. There are no limits to cabin executive discretion, there are no guidelines for the selection process, and the entire process is cloaked in secrecy. *Cf. Furman v. Georgia*, 408 U.S. 238, 309-10 (1972) (Stewart, J., concurring) ("These death sentences are cruel and unusual in the same way that being struck by lightning is cruel and unusual. For, of all the people convicted of rapes and murders . . . many just as reprehensible as these, the petitioners are among a capriciously selected random handful upon whom the sentence of death has in fact been imposed.").

38.     The lame-duck period enhances the arbitrariness of Mr. Higgs's selection for an execution on January 15, 2021. Prior to the current administration, the last time the United States government carried out an execution between a presidential election and the inauguration of the new president was nearly 132 years ago, on January 25, 1889. At no point has the federal government ever conducted such an execution knowing that the new administration would not proceed with the execution.

39.     President-Elect Biden's objectives for criminal justice reform include the elimination of the federal death penalty. Vice President-Elect Kamala Harris is an original cosponsor of legislation introduced in the U.S. Senate to eliminate the federal death penalty. *See* Tal Axelrod, "Booker, Durbin and Leahy Introduce Bill to Ban Death Penalty," Apr. 13, 2019, available at <<https://thehill.com/homenews/senate/455597-senate-dems-introduce-bill-to-ban-death-penalty>>. Executing Plaintiff will arbitrarily deprive him of life five days before President-Elect Biden and Vice President-Elect Harris are formally sworn into office and are

able to put a stop to this unprecedented rush of federal executions—a deprivation stemming from the happenstance that the current Attorney General selected Mr. Higgs for execution instead of any of the scores of federally death-sentenced prisoners.

40.     The foregoing is a violation of the Due Process Clause, the Eighth Amendment, and the APA's prohibition against agency actions that are "arbitrary and capricious," "not in accordance with law," or "contrary to constitutional right."

## **Prayer for Relief**

WHEREFORE, in order to prevent the above-alleged violations of Mr. Higgs's rights under the Fifth Amendment, the Eighth Amendment, the *Ex Post Facto* Clause of Article I, Section 9 of the Constitution, and the APA, Plaintiff respectfully requests that this Court enter a judgment:

a.     declaring that Defendants' planned use of pentobarbital pursuant the 2019 lethal injection to execute Plaintiff, as well as Defendants' selection of Plaintiff for execution on January 15, 2021, violate the Constitution and are arbitrary and capricious and "not in accordance with law" under the APA;

b.     enjoining Defendants from executing Mr. Higgs as scheduled on January 15, 2021, or on any other date until such time as Defendants' method of administering death sentences complies with the statutory and Constitutional provisions described herein; and

c.     granting such further relief as the Court deems just and proper.

Dated:   December 4, 2020                     Respectfully submitted,


                                              /s/ Shawn Nolan
                                              Shawn Nolan, Chief, Capital Habeas Unit
                                              Matthew Lawry, Assistant Federal Defender
                                              Federal Community Defender Office, E.D. Pa.
                                              601 Walnut Street, Suite 545 West
                                              Philadelphia, PA 19106
                                              Telephone: 215-928-0520
                                              Email: shawn_nolan@fd.org

                                              *Counsel for Plaintiff Dustin Higgs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 4, 2020, I caused a true and correct a copy of the foregoing amended and supplemental complaint and the exhibits thereto to be served on all counsel of record via the Court's CM/ECF system. Pursuant to this Court's August 20, 2019 Order, below is a list of all counsel of record. The names marked with an asterisk (*) have no email provided on the docket and are no longer with the identified firms.

Alan Burch
U.S. Attorney's Office for the District of Columbia
(202) 252-2550
Email: alan.burch@usdoj.gov

Peter S. Smith
United States Attorney's Office
Appellate Division
(202) 252-6769
Email: peter.smith@usdoj.gov

Ethan P. Davis
Civil Division, U.S. Department of Justice
(202) 616-4171
Email: Ethan.Davis@usdoj.gov

Robert J. Erickson
US Department of Justice
(202) 514-2841
Email: Robert.erickson@usdoj.gov

Joshua Christopher Toll
KING & SPALDING LLP
(202) 737-8616
Email: jtoll@kslaw.com

Charles Anthony Zdebski
ECKERT SEAMANS CHERIN & MELLOTT, LLC
(202) 659-6605
Email: czdebski@eckertseamans.com

Gerald Wesley King, Jr.
FEDERAL DEFENDER PROGRAM, INC.
(404) 688-7530
Email: gerald_king@fd.org

Paul R. Perkins
Civil Division, Department of Justice
(202) 514-5090
Email: Paul.R.Perkins@usdoj.gov

Jonathan Kossak
Civil Division, Department of Justice
(202) 305-0612
Email: Jonathan.kossak@usdoj.gov

Denise M. Clark
U.S. Attorney's Office for the District of Columbia
(202) 252-6605
Email: Denise.Clark@usdoj.gov

Jean Lin
Civil Division, Department of Justice
(202) 514-3716
Jean.lin@usdoj.gov

Cristen Cori Handley
Civil Division, Department of Justice
(202) 305-2677
Cristen.Handley@usdoj.gov

Paul F. Enzinna
ELLERMAN ENZINNA PLLC
(202) 753-5553
Email: penzinna@ellermanenzinna.com

Brandon David Almond
TROUTMAN SANDERS LLP
(202) 274-2864
Email: brandon.almond@troutmansanders.com

Donald P. Salzman
SKADDEN, ARPS, SLATE, MEAGHER &

Charles Fredrick Walker
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
(202) 371-7000
Email: Charles.Walker@skadden.com

Alexander C. Drylewski
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
(212) 735-2129
Email: Alexander.Drylewski@skadden.com
(*pro hac vice application forthcoming)

Celeste Bacchi
OFFICE OF THE PUBLIC DEFENDER
Capital Habeas Unit
(213) 894-1887
Email: celeste_bacchi@fd.org

Jonathan Charles Aminoff
FEDERAL PUBLIC DEFENDER,
CENTRAL DISTRICT OF CALIFORNIA
(213) 894-5374
Email: jonathan_aminoff@fd.org

Billy H. Nolas
FEDERAL COMMUNITY DEFENDER
OFFICE FOR THE EDPA
(215) 928-0520
Email: Billy_Nolas@fd.org

*Jeanne Vosberg Sourgens
VINSON & ELKINS LLP
(202) 639-6633

William E. Lawler, III
VINSON & ELKINS LLP
(202) 639-6676
Email: wlawler@velaw.com

Evan D. Miller
VINSON & ELKINS LLP
(202) 639-6605
Email: EMiller@velaw.com

Margaret O'Donnell

FLOM LLP
(202) 371-7983
Email: Donald.salzman@skadden.com

Steven M. Albertson
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
(202) 371-7112
Email: Steven.Albertson@skadden.com

Craig Anthony Harbaugh
FEDERAL PUBLIC DEFENDER, CENTRAL
DISTRICT OF CALIFORNIA
(213) 894-7865
Email: craig_harbaugh@fd.org

Alexander Louis Kursman
OFFICE OF THE FEDERAL COMMUNITY
DEFENDER/EDPA
(215) 928-0520
Email: Alex_Kursman@fd.org

Kathryn B. Codd
VINSON & ELKINS LLP
(202) 639-6536
Email: kcodd@velaw.com

Robert E. Waters
KING & SPALDING LLP (202) 737-0500
Email: rwaters@velaw.com

Yousri H. Omar
VINSON & ELKINS LLP
(202) 639-6500
Email: yomar@velaw.com

*William E. Hoffman, Jr.
KING & SPALDING LLP
(404) 572-3383

Mark Joseph Hulkower
STEPTOE & JOHNSON LLP
(202) 429-6221
Email: mhulkower@steptoe.com

Robert A. Ayers

(502) 320-1837
Email: mod@dcr.net

Abigail Bortnick
KING & SPALDING LLP
(202) 626-5502
Email: abortnick@kslaw.com

Matthew John Herrington
STEPTOE & JOHNSON LLP
(202) 429-8164
Email: mherrington@steptoe.com

Amy J. Lentz
STEPTOE & JOHNSON LLP
(202) 429-1320
Email: Alentz@steptoe.com

Gary E. Proctor
LAW OFFICES OF GARY E. PROCTOR,
LLC
(410) 444-1500
Email: garyeproctor@gmail.com

Scott Wilson Braden
FEDERAL PUBLIC DEFENDER,
EASTERN DISTRICT OF ARKANSAS
(501) 324-6144
Email: Scott_Braden@fd.org

Amy Gershenfeld Donnella
FEDERAL COMMUNITY DEFENDER
OFFICE FOR THE EDPA
(215) 928-0520
Email: amy_donnella@fd.org

David Victorson
(202) 637-5600
HOGAN LOVELLS US LLP
Email: David.Victorson@hoganlovells.com

John D. Beck
HOGAN LOVELLS US LLP
(212) 918-3000
Email: john.beck@hoganlovells.com

STEPTOE & JOHNSON LLP
(202) 429-6401
Email: rayers@steptoe.com

Robert L. McGlasson
MCGLASSON & ASSOCIATES, PC
(404) 314-7664
Email: rlmcglasson@comcast.net

Sean D. O'Brien
PUBLIC INTEREST LITIGATION CLINIC
(816) 363-2795
Email: dplc@dplclinic.com

Shawn Nolan
FEDERAL COMMUNITY DEFENDER
OFFICE, EDPA
(215) 928-0520
Email: shawn_nolan@fd.org

Joseph William Luby
FEDERAL PUBLIC DEFENDER/EDPA
(215) 928-0520
Email: joseph_luby@fd.org

Pieter Van Tol
HOGAN LOVELLS US LLP
(212) 918-3000
Email: Pieter.Vantol@hoganlovells.com

Jonathan Jeffress
KAISER DILLON, PLLC
(202) 640-4430
Email: Jjeffress@kaiserdillon.com

Andrew Moshos
MORRIS NICHOLS ARSHT & TUNNELL
LLP
(302) 351-9197
Email: Amoshos@mnat.com

Alan E. Schoenfeld
WILMER CUTLER PICKERING HALE &
DORR LLP
(212) 937-7294
Email: Alan.Schoenfeld@wilmerhale.com

Amelia J. Schmidt
KAISER DILLON, PLLC
(202) 869-1301
Email: Aschmidt@kaiserdillon.com

Norman Anderson
KAISER DILLON PLLC
(202) 640-2850
nanderson@kaiserdillon.com

Jennifer Ying
MORRIS NICHOLS ARSHT & TUNNELL
LLP
(302) 658-9300
Email: Jying@mnat.com

Andres C. Salinas
WILMER CUTLER PICKERING HALE &
DORR LLP
(202) 663-6289
Email: Andres.Salinas@wilmerhale.com

*Ryan M. Chabot
WILMER CUTLER PICKERING HALE &
DORR LLP
(212) 295-6513

Dale Andrew Baich
OFFICE OF THE FEDERAL PUBLIC
DEFENDER
(602) 382-2816
Dale_Baich@fd.org

Kathryn Louise Clune
CROWELL & MORING LLP
(202) 624-5116
kclune@crowell.com

Jennifer M. Moreno
OFFICE OF THE PUBLIC FEDERAL
DEFENDER, DISTRICT OF ARIZONA
(602) 382-2718
Jennifer_moreno@fd.org

Ginger Dawn Anders
MUNGER, TOLLES & OLSON LLP
(202) 220-1107
Ginger.anders@mto.com

*Jonathan S. Meltzer
MUNGER, TOLLES & OLSON LLP
(202) 220-1100

*Brendan Gants
MUNGER, TOLLES & OLSON LLP
(202) 220-1100

Timothy Kane
FEDERAL COMMUNITY DEFENDER
OFFICE, EDPA
(215) 928-0520
Email: timothy_kane@fd.org

/s/ Shawn Nolan
Shawn Nolan, Chief, Capital Habeas Unit
Matthew Lawry, Assistant Federal Defender
Federal Community Defender Office, E.D. Pa.
601 Walnut Street, Suite 545 West
Philadelphia, PA 19106
Telephone: 215-928-0520
Email: shawn_nolan@fd.org

*Counsel for Plaintiff Dustin Higgs*

# EXHIBIT A

**DECLARATION OF CRAIG W. STEVENS, Ph.D.**

I, Craig W. Stevens, Ph.D., do hereby affirm and attest under penalty of perjury:

1.      I am a full-time faculty member in the department of Pharmacology and Physiology at the College of Osteopathic Medicine, a unit of Oklahoma State University, Center for Health Sciences campus in Tulsa, Oklahoma.  After receiving my Ph.D. in Pharmacology from the Mayo Clinic, in Rochester, Minnesota, I completed a 2-year postdoctoral fellowship at the University of Minnesota Medical School in Minneapolis, Minnesota, and secured a position as an Assistant Professor of Pharmacology with my present employer in 1990.  I advanced through the academic ranks to Associate Professor of Pharmacology in 1993, and Professor of Pharmacology in 2000.

2.      Besides my regular duties of teaching medical students, pursuing research and scholarly activities, and serving on college committees, I work part-time as a litigation consultant/expert witness on cases involving pharmacological issues.  I have consulted in both civil and criminal cases, working with both the prosecution or plaintiff and the defendant.  With regard to the pharmacological issues of lethal injection, I have worked as a consultant with the state as well as with attorneys representing condemned inmates.

3.      I have been retained by counsel for Dustin Higgs.  Counsel have asked me to provide the Court with information regarding the classification and function of lethal injection drugs.

4.      I have reviewed the following case materials in preparing this Affidavit: the Maryland statute §3-905 "Method of Execution"; Federal Bureau of Prisons "BOP Execution Protocol" 2019 (redacted); "ADDENDUM TO BOP EXECUTION PROTOCOL FEDERAL DEATH SENTENCE IMPLEMENTATION PROCEDURES," effective JULY 25, 2019; the Declaration of Joseph F. Antognini, M.D., M.B.A, and his Supplemental Report; the Expert Declaration of Gail A. Van Norman, M.D. and her Supplemental Report, and Expert Declaration of Mark A. Edgar, M.D.

5.      Barbiturates are a drug group that derive from barbituric acid.  Barbiturates depress the central nervous system and have been used as sedatives and hypnotic drugs for over a century.

6.      Barbiturates are divided into the following classes: ultra-short-acting, short-acting, intermediate-acting, and long-acting.  The classifications refer to the time of onset and duration of the drug effects.  These classifications are widely accepted in the field of pharmacology.

7.      I am aware of two ultra-short-acting barbiturates: sodium thiopental and methohexital. Short-acting barbiturates include pentobarbital and secobarbital.   Intermediate-acting barbiturates include amobarbital and butabarbital.   Long-acting barbiturates include phenobarbital and mephobarbital.

8.      As indicated above, pentobarbital is not an ultra-short-acting barbiturate and has never been classified as such.  Pentobarbital has an onset of action time of 30 seconds to 1 minute. Its effects take significant longer to begin than thiopental or methohexital.

9.      Thiopental, the most frequently used ultra-short-acting barbiturate, was used for surgery of short duration.  The onset of anesthesia is within 10 to 30 seconds, because thiopental is so lipid soluble that it rapidly enters the brain.

10.     The ultra-short-acting barbiturate, thiopental, is no longer commercially available.

11.     The ultra-short-acting barbiturate, methohexital, is commercially available.

12.     In pharmacology, chemical paralytic agents are synonymous with neuromuscular blockers.   Paralytics by themselves do not lessen a patient's awareness of pain.  Rather, they inhibit muscle action and thus prevent movement.  They are typically used during surgical procedures in combination with analgesics and general anesthetics.  Common chemical paralytic agents include pancuronium, vecuronium, and rocuronium.

13.     Pentobarbital is not a chemical paralytic and has never been classified as such.

14.     Attached hereto is my curriculum vitae.

I hereby certify that the facts set forth above are true and correct to the best of my personal knowledge, information, and belief, subject to the penalty of perjury.

_____          _____
Craig W. Stevens, Ph.D.                                    December 2, 2020
                                                                          Date