**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| In the Matter of the )<br>Federal Bureau of Prisons' Execution )<br>Protocol Cases, )<br> )<br>LEAD CASE: *Roane, et al. v. Barr* )<br> )<br>THIS DOCUMENT RELATES TO: )<br> )<br>*Bernard v. Barr*, 20-cv-0474 )<br> )<br>*Bourgeois v. U.S. Dep't of Just.*, 12-cv-782 )<br> ) | Case No. 19-mc-145 (TSC) |

**MEMORANDUM OPINION**

Plaintiffs Brandon Bernard and Alfred Bourgeois are scheduled to be executed on December 10th and 11th respectively. Both Plaintiffs, who were sentenced to death in Texas federal district court, have moved for a preliminary injunction barring their executions from proceeding as scheduled. Plaintiffs argue that in failing to provide them with a ninety-one day notice of their executions pursuant to Article 43.141(c) of the Texas Code of Criminal Procedure, Defendants violated § 3596(a) of the Federal Death Penalty Act (FDPA), which requires federal executions to be carried out "in the manner prescribed by the law of the State in which the sentence was imposed." Bernard received fifty-five days' notice, and Bourgeois received twenty-one days' notice.

For the reasons set forth below, the court finds that Defendants violated § 3596(a) of the FDPA, but that Plaintiffs have failed to demonstrate irreparable harm arising out of that statutory violation. Thus, Plaintiffs' motion for preliminary injunction will be DENIED.

1

## BACKGROUND

This court and the U.S. Court of Appeals for the District of Columbia Circuit have set forth the facts of this case in prior opinions, and the court will therefore confine the facts here to those relevant to Plaintiffs' motion.

### I.    Procedural History

On July 25, 2019, after considering the matter for eight years, the Bureau of Prisons (BOP) announced a new execution protocol (the 2019 Protocol) using the barbiturate pentobarbital for carrying out federal death sentences, along with a notice that the Government intended to execute Bourgeois on January 13, 2020. *See* Press Release, Dep't of Justice, Federal Government to Resume Capital Punishment After Nearly Two Decade Lapse (July 25, 2019), https://www.justice.gov/opa/pr/federal-government-resume-capital-punishment-after-nearly-two-decade-lapse. Shortly thereafter, Bourgeois, along with four other plaintiffs who were at that time scheduled to be executed in December 2019 and January 2020, sought a preliminary injunction barring their respective executions until their challenges to the 2019 Protocol had been fully litigated.

The court granted a preliminary injunction, finding that Bourgeois and the other plaintiffs were likely to succeed on the merits of their claim that the 2019 Protocol violates the FDPA, that they would suffer irreparable harm in the absence of relief, and that the equities tipped in the Plaintiffs' favor. (ECF No. 50.)  In February 2020, Bernard filed a complaint seeking declaratory and injunctive relief, which was consolidated with the master case.

On April 7, 2020, a divided panel of the D.C. Circuit vacated the preliminary injunction. *See In re Fed. Bureau of Prisons' Execution Protocol Cases*, 955 F.3d 106 (D.C. Cir. 2020).  In a per curiam opinion joined by Judges Katsas and Rao, with Judge Tatel dissenting, the Court

held that the plaintiffs' FDPA claim failed on the merits. *See id.* at 112 (per curiam).  Judges Katsas and Rao reached this conclusion for different reasons, explained in separate concurrences. *See id.* at 113–21 (Katsas, J., concurring); *id.* at 129–33 (Rao, J., concurring).

In light of the D.C. Circuit's decision, Plaintiffs in the consolidated action filed an Amended Complaint on June 1, 2020, alleging in part, that the 2019 Protocol violates the FDPA by failing to comply with state execution protocols and procedures, including those codified in state law.  (ECF. No. 92, ¶¶ 143–49.)

On September 20, 2020, the court granted summary judgment in favor of Defendants as to Plaintiffs' FDPA claims.  (*See* ECF No. 261.)  In accordance with the D.C. Circuit's April 7 Opinion, the court found that while the FDPA required Defendants to adhere to the level of detail prescribed in state laws and regulations governing executions, Plaintiffs had failed to identify a live controversy or actual disagreement with respect to their FDPA claim.  (*Id.* at 27, 30.)  Rather than promptly appealing the court's decision to the D.C. Circuit, Plaintiffs moved to alter or amend the judgment on the FDPA claim, (ECF No. 298), which the court denied, (ECF No. 305).

On October 16, 2020, Defendants scheduled Bernard's execution for December 10, 2020, providing him fifty-five days' notice.  (ECF No. 296.)

Given Bernard and plaintiff Orlando Hall's impending executions, the D.C. Circuit set an expedited briefing schedule and heard oral argument on November 16, 2020.  To avoid any jurisdictional concerns during the pendency of the appeal, Plaintiffs moved for the entry of final judgment in this court, which was entered on November 16, 2020.  (ECF Nos. 313, 315.)

The Court of Appeals issued a decision two days later, holding in relevant part that this court did not err in granting summary judgment for Defendants on Plaintiffs' FDPA claim, agreeing with this court's conclusion that "there was no conflict in this case, either because the

government had committed to complying with the state statutes at issue or because no Plaintiff had requested to be executed in accordance with them." *In re Fed. Bureau of Prisons' Execution Protocol Cases*, No. 20-5329, 2020 WL 6750375, at *11 (D.C. Cir. Nov. 18, 2020) (citing ECF No. 261 at 27–28). The D.C. Circuit declined "to engage in a line-drawing exercise about whether a statute setting the time of execution is a procedure that implements 'the sentence in the manner prescribed by the law of the State in which the sentence is imposed.'" *Id.* (quoting 18 U.S.C. § 3596(a)). But because the Court found that this court erred in dismissing Plaintiffs' Eighth Amendment claims, it remanded the case.

Hall was executed on November 19, 2020. On November 20, 2020, Defendants scheduled Bourgeois' execution for December 11, 2020, providing him twenty-one days' notice. (ECF No. 330.)

## II.    Plaintiffs' Supplemental Complaint and Motion for Preliminary Injunction

Bernard and Bourgeois notified the court in the parties' November 24, 2020 joint status report that they planned to move for a preliminary injunction and sought leave to file a supplemental complaint on the grounds that "the setting of their execution dates conflicts with Texas death penalty procedures that the Government is required to follow under the [FDPA]." (ECF No. 332.) Over Defendants' opposition, the court granted Plaintiffs leave to file a supplemental complaint addressing only the legality of their scheduled execution dates and issued an expedited briefing schedule on their motion for preliminary injunction so as "to provide the court sufficient time to rule on the pending motions, to hold any hearings that may be required, and to allow adequate time for appeal." (ECF No. 333.)

On November 25, 2020, Bernard and Bourgeois filed their Supplemental Complaint and motion for preliminary injunction, alleging a single-count violation of the FDPA. (ECF

No. 334.)  Plaintiffs seek to "prevent Defendants from executing them in violation of the FDPA," (ECF No. 336, Pl. Mem. at 4), arguing that Defendants violated their rights under the FDPA by failing to provide ninety-one days' notice of their executions in accordance with Article 43.141(c) of the Texas Code of Criminal Procedure.  (*Id.* ¶ 16.)  They argue that without injunctive relief, they will be deprived "of their interests in preparing for their executions, in fully litigating their pending claims, and in their lives."  (*Id.* at 9.)

## DISCUSSION

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20, 24 (2008) (citations omitted); *John Doe Co. v. Consumer Fin. Prot. Bureau,* 849 F.3d 1129, 1131 (D.C. Cir. 2017).  The D.C. Circuit has traditionally evaluated claims for injunctive relief on a sliding scale, such that "a strong showing on one factor could make up for a weaker showing on another."  *Sherley v. Sebelius,* 644 F.3d 388, 392 (D.C. Cir. 2011).

## I.     Likelihood of Success on the Merits

Plaintiffs contend that in failing to provide them ninety-one days' notice of their executions, Defendants have violated Article 43.141(c) of the Texas Code of Criminal Procedure and, by extension, the FDPA's requirement that the "implementation of [a death] sentence" be "in the manner prescribed by the law of the State in which the sentence is imposed."  18 U.S.C. § 3596(a).  The court finds that the Plaintiffs have demonstrated a likelihood of success on the merits of this claim.

A. **Forfeiture and Res Judicata**

As a threshold matter, Defendants argue that Plaintiffs are unlikely to succeed on their Article 43.141(c) claim because it is barred by res judicata or has otherwise been waived or forfeited.  In their view, Plaintiffs could have presented an Article 43.141(c) claim before this court entered summary judgment on September 20, 2020 or final judgment on November 16, 2020.

These procedural arguments are unpersuasive.  The court found Plaintiffs' prior FDPA claims presented no live controversy either because the government had committed to complying with the state statutes at issue or because no plaintiff had requested to be executed in accordance with them—a view shared by the D.C. Circuit.  *See Execution Protocol Cases*, 2020 WL 6750375, at *11 ("As we agree with the district court that there is no live controversy, we find it unnecessary here to engage in a line-drawing exercise about whether a statute setting the time of execution is a procedure that implements 'the sentence in the manner prescribed by the law of the State in which the sentence is imposed'" (quoting 18 U.S.C. § 3596(a)).  And like Plaintiffs' other FDPA claims, a claim premised on Article 43.141(c) would not have presented a live controversy at the time the court issued its summary judgment ruling because Plaintiffs had not yet received notice of their executions.  Neither the Plaintiffs nor the court had any reason to anticipate that Defendants would not have conformed to the state law execution requirement, particularly after the court stated that Defendants were required to adhere to such laws.  (*See* ECF No. 261 at 30–31 ("Putting aside the question of whether agreeing to execute an inmate after 6 p.m. can be characterized as an act of "grace," Defendants must comply with the Texas provision because it is incorporated into the FDPA by virtue of D.C. Circuit precedent.").); *see*

6

*also Execution Protocol Cases*, 955 F.3d at 133 (Rao, J., concurring) ("[T]he federal government is [] bound by the FDPA to follow the level of detail prescribed by state law.").

Thus, res judicata does not apply because Plaintiffs' Article 43.141(c) claim could not have been raised earlier.  *See Drake v. FAA*, 291 F.3d 59, 66 (D.C. Cir. 2002) ("Res judicata does not preclude claims based on facts not yet in existence at the time of the original action."). Indeed, it is questionable whether there has been a final judgment on the *merits* of Plaintiffs' state-law FDPA claims as those claims were dismissed for failure to present a live controversy. *See Capitol Hill Grp. v. Pillsbury, Winthrop, Show, Pittman, LLC*, 569 F.3d 485, 490 (D.C. Cir. 2009) (explaining that a claim is only barred by res judicata if, inter alia, "there has been a final, valid judgment on the merits"); *see also Jackson v. City of Cleveland*, 925 F.3d 793, 807 (6th Cir. 2019) ("Generally, a claim may not be adjudicated on its merits unless it is ripe."); *Crown Point I, LLC v. Intermountain Rural Elec. Ass'n*, 319 F.3d 1211, 1215 n.3 (10th Cir. 2003) ("A finding [that a] claim is unripe does not constitute an adjudication on the merits for purposes of claim preclusion."); 13A C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure: Jurisdiction 2d* § 3532.1 (1984) ("[I]t should be clear that dismissal for lack of ripeness is not a decision on the merits for purposes of preclusion by judgment.").

Furthermore, Defendants provide no authority for the proposition that a plaintiff has forfeited, or is otherwise barred from asserting, an unripe or premature claim when that claim eventually presents a live controversy.

The court is also not convinced that Plaintiffs have waived their Article 43.141(c) claim. Bernard raised the Article 43.141(c) claim on appeal to the D.C. Circuit, but that claim was never addressed, likely due to the truncated time frame and limited scope of the appeal.  *See Execution Protocol Cases*, 2020 WL 6750375, at *11 ("In this expedited process, we are particularly

mindful to decide no more than what is necessary to resolve the appeal.").  Therefore, the court does not see how the Article 43.141(c) claim could fairly be viewed as waived.  *Accord Eli Lilly & Co. v. Home Ins. Co.*, 794 F.2d 710, 717 (D.C. Cir. 1986) ("The rule in this circuit is that litigants must raise their claims on their initial appeal and not in subsequent hearings following a remand.").

Even assuming Plaintiffs' current FDPA claim could be precluded on the basis of the law-of-the-case or waiver doctrines, the court is not willing to do so given the stakes involved, the pace at which the government is moving to carry out these executions, the interest in promptly adjudicating claims on the merits, and the limited prejudice to Defendants.  *See Crocker v. Piedmont Aviation, Inc.*, 49 F.3d 735, 739–40 (D.C. Cir. 1995) ("Law of the case is a prudential rule rather than a jurisdictional one . . . [which] 'merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit to their power'" (quoting *Messenger v. Anderson*, 225 U.S. 436, 444 (1912)); *id.* at 740 ("For both core law-of-the-case preclusion and its diluted waiver variant, the bases for exceptions are broader than for conventional issue or claim preclusion.").

Defendants also contend that the court erred in granting Plaintiffs leave to file a supplemental complaint.  The crux of Defendants' argument appears to be that Plaintiffs cannot supplement their complaint after the entry of final judgment without seeking relief from that judgment—thus, in their view, "the proper course for Bernard and Bourgeois to seek to reinsert Tex. Code Crim. Proc. Art. 43.141(c) into this litigation would have been to file a Rule 60(b) motion for relief from judgment or, at a minimum, to file another Rule 59(e) motion to alter or amend the Court's final judgment on the FDPA claim."  (ECF No. 337, Def. Opp'n at 13.)

Fed. R. Civ. P 15(d) "permit[s] a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." The rule "is intended to give the court broad discretion in allowing a supplemental pleading." Fed. R. Civ. P. 15(d) advisory committee's note to 1963 amendment. Plaintiffs' Article 43.141(c) claim involves conduct that occurred after they filed their Amended Complaint on June 1, 2020 and that is clearly relevant to the ongoing federal execution protocol litigation. Because the court retains jurisdiction over the consolidated action on remand from the D.C. Circuit, the court determined that granting leave to file a supplemental complaint was appropriate, particularly given the tight deadline for ruling on the requested injunctive relief. Furthermore, it is not unprecedented for a court to allow the filing of a supplemental complaint after the entry of judgment or on remand after an appeal. *See, e.g.*, *Griffin v. Cnty. Sch. Bd. of Prince Edward Cnty.*, 377 U.S. 218, 226–27 (1964) (holding that plaintiffs could file a supplemental complaint challenging conduct occurring after original injunction granted); 6A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1509 (3d ed. 1998) ("A motion to file a supplemental pleading also may be made on remand after an appeal.")

Permitting Plaintiffs to supplement their complaint does not substantially prejudice Defendants, particularly since the court ultimately denies the injunctive relief sought therein. *See Banks v. York*, 448 F. Supp. 2d 213, 214 (D.D.C. 2006) ("Leave to file a supplemental complaint is left to the Court's discretion, and should be freely granted where such supplementation will promote the economic and speedy disposition of the controversy between the parties, will not cause undue delay of trial, inconvenience and will not prejudice the rights of any other party." (internal quotation marks omitted)). It is in the interest of all parties to this

9

litigation—and the public—to have the issues resolved promptly on the merits before an execution.  Thus, the court exercised its "broad discretion" accordingly.

## B.  Article 43.141(c)

The court finds that Plaintiffs are likely to succeed on the merits of their claim.  In failing to provide Plaintiffs ninety-one days' notice of their executions, Defendants have violated Texas Code of Criminal Procedure Article 43.141(c) and, by extension, § 3596(a) of the FDPA.

The court has already set forth its analysis of FDPA § 3596(a) in its September 20, 2020 Memorandum Opinion.  (*See generally* ECF No. 261 at 26–31.)  That provision requires that in carrying out an execution, "the Attorney General shall release the person sentenced to death to the custody of a United States marshal, who shall supervise implementation of the sentence in the manner prescribed by the law of the State in which the sentence is imposed."  18 U.S.C. § 3596(a).  The controlling D.C. Circuit opinion (written by Judge Rao) holds that the FDPA requires the government to carry out executions consistent with the level of detail provided by state laws and regulations.  *See Execution Protocol Cases*, 955 F.3d at 133 (Rao, J., concurring); *see also id.* at 146 (Tatel, J., dissenting) (explaining that the FDPA, "best understood, requires federal executions to be carried out using . . . procedures set forth not just in [state] statutes and regulations, but also in protocols issued by state prison officials").  This includes details such as the time, date, place, and method of execution, which is precisely the type of state statute at issue here.  *Id.* at 134 (quoting Implementation of Death Sentences in Federal Cases, 58 Fed. Reg. 4,898, 4,901–02 (Jan. 19, 1993)).

Article 43.141 of the Texas Code of Criminal Procedure provides that an order must be entered setting the execution date of a "condemned person," that such an order must be sent to "the attorney who represented the condemned person" not later than the second business day

after the order is entered, and that "[a]n execution date may not be earlier that the 91st day after"

the order is entered.  Tex. Code Crim. Proc., Art. 43.141(b)–(c).  The Texas Court of Criminal

Appeals has unambiguously held that "notice of an execution date must be given to capital

defendants" and "all executions must be set at least ninety-one days in advance."  *Battaglia v.*

*State*, 537 S.W.3d 57, 67 n.53 (Tex. Crim. App. 2017) (citations omitted) (emphasis added);

*accord Murphy v. Collier*, 139 S. Ct. 1475, 1479–80 (2019) (citing Tex. Code Crim. Proc.,

Art. 43.141(c) (Alito, J., dissenting from grant of application for stay on other grounds) ("Under

Texas law, a new death warrant may be issued, but such a warrant may not set a date less than 90

days in the future.").

      Plaintiffs were sentenced to death in Texas federal district court.  Thus, it is undisputed

that Texas law applies.  And since Defendants have only provided Bernard a fifty-day-notice and

Bourgeois a twenty-one-day notice of execution, Defendants have violated the FDPA.

      Defendants argue that the court's interpretation is inconsistent with that of several

Circuits, which have interpreted the D.C. Circuit's April 2020 Opinion to govern only the

procedures that "implement death."  *See, e.g.*, *United States v. Vialva*, 976 F.3d 458, 462 (5th

Cir. 2020) (finding that Article 43.141(c)'s ninety-one day notice requirement is not incorporated

by the FDPA); *LeCroy v. United States*, 975 F.3d 1192, 1198 (11th Cir. 2020) (finding that

§ 3596(a) "does not extend to ensuring a lawyer's presence at execution"); *United States v.*

*Mitchell*, 971 F.3d 993, 995–97 (9th Cir. 2020) ("[W]e hold that procedures that do not

effectuate death fall outside the scope of 18 U.S.C. § 3596(a)."); *Peterson v. Barr*, 965 F.3d 549,

554 (7th Cir. 2020) (concluding that § 3596(a) "cannot be reasonably read to incorporate every

aspect of the forum state's law regarding execution procedure" and finding that state law

governing execution witnesses falls outside the scope of the FDPA).  The court is not bound by

other Circuits' interpretation of D.C. Circuit precedent and cannot square those Circuits' reading

with the language in either Judge Rao or Judge Tatel's opinions.

Judge Rao explained that "the ordinary meaning of 'implementation of the death

sentence' includes more than 'inflicting the punishment of death' . . . [it includes] additional

procedures involved in carrying out the sentence of death." *Execution Protocol Cases*, 955 F.3d

at 133 ("the term 'implementation' is commonly used to refer to a range of procedures and

safeguards surrounding executions"). She also explained that "implementation" would include

details such as the time, date, place, and method of execution, all of which can fairly be read to

include the state statutes Plaintiffs have identified. *Id.* at 134 (quoting Implementation of Death

Sentences in Federal Cases, 58 Fed. Reg. 4,898, 4,901–02 (Jan. 19, 1993)).

Judge Tatel's dissent appears to acknowledge that the federal government need not

follow every execution procedure in state protocols. *Id.* at 141. But he did not address whether a

de minimis exception applied to procedures in the state statutes and regulations. *See id.*

The D.C. Circuit was presented with this court's reading of the April 2020 Opinion and

declined to correct or revise it.[1] The court is bound by the Circuit's ruling and the controlling

precedent at issue was clear: the FDPA requires the BOP to adhere to state laws and regulations

governing executions which "include details such as the time, date, place and method of

execution." *See id.* at 134 (Rao, J., concurring) (quoting Implementation of Death Sentences in

---

[1] Judges Tatel, Katsas, and Rao have all served on panels addressing this court's interpretation of their prior Execution Protocol opinions, but none have taken issue with this court's reading of those opinions. *See* Order, *In Re Fed. Bureau of Prisons' Execution Protocol Cases*, No. 20-5285 (D.C. Cir. Sept. 21, 2020) (Henderson, Tatel, Katsas, JJ.); *id.*, 2020 WL 6750375 (Millett, Pillard, Rao, JJ.).

Federal Cases, 58 Fed. Reg. 4,898, 4,901–02 (Jan. 19, 1993)).  Since Defendants did not adhere to Texas law governing the time and date of an execution, they have violated the FDPA.

Defendants also argue that Article 43.141(c) applies only to state law officials, not to federal officials implementing a death sentence imposed by a federal court.  The court reached a similar conclusion regarding a Georgia law providing "a judge of the superior court of the county where the case was tried" the power to reschedule an execution if certain conditions are met. (*See* ECF No. 263 (citing Ga. Code Ann. § 17-10-40(a).)  But whereas the Georgia statute clearly outlined the powers of a particular state official, Article 43.141(c) is more ambiguous; it states that "[a]n execution date may not be earlier than the 91st day after the date the convicting court enters the order setting the execution date."  While Defendants are correct that in the federal system, the convicting court does not set the execution date, this provision can be read in harmony with the FDPA to require ninety-one-days' notice.[2]

## II.    Irreparable Harm

"A finding of a statutory violation does not automatically require the court to issue an injunction."  *Mylan Pharm., Inc. v. Shalala*, 81 F. Supp. 2d 30, (D.D.C. 2000) (citing *Weinberger v. Romero–Barcelo*, 456 U.S. 305, 313 (1982) ("The grant of jurisdiction to ensure compliance with a statute hardly suggests an absolute duty to [enjoin the conduct] under any and all circumstances, and a federal judge sitting as chancellor is not mechanically obligated to grant an injunction for every violation of law.")).  Plaintiffs must also demonstrate irreparable harm

---

[2] In any event, this is a distinction without a difference—the court has found that Plaintiffs have failed to demonstrate irreparable harm.  The court reached the same conclusion regarding Georgia Code § 17-10-40(a) (which, if applicable, would have entitled plaintiff to a rescheduled execution date): "It is not clear how a violation of this statute constitutes irreparable harm . . . [since] a violation of § 17-10-40 in no way bars the Government from setting a new execution date."  (ECF No. 263 at 4–5 (internal quotation marks and citations omitted).)

that is "certain and great, actual and not theoretical, and so imminent that there is a clear and present need for equitable relief to prevent irreparable harm," and it "must be beyond remediation." *League of Women Voters of U.S. v. Newby,* 838 F.3d 1, 7–8 (D.C. Cir. 2016) (citing *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006)) (internal quotation marks and brackets omitted).

Given the Supreme Court's repeated vacatur of this court's prior injunctions and the D.C. Circuit's finding that Plaintiffs were not entitled to injunctive relief despite Defendants' violation of the Food, Drug, and Cosmetic Act, *see* 2020 WL 6750375, at *10, the court cannot find that Plaintiffs have demonstrated irreparable harm to warrant injunctive relief.  The Supreme Court has made clear that the prospect of an inmate being executed prior to their claims being fully litigated will not serve as a basis for injunctive relief.  (*See* Pl. Mem. at 9); *see also Barr v. Lee*, 140 S. Ct. 2590 (2020) (vacating this court's preliminary injunction and permitting executions to proceed notwithstanding pending claims); *Barr v. Purkey*, No. 20A10, 2020 WL 4006821 (U.S. July 16, 2020) (same); *Barr v. Hall*, No. 20A99, 2020 WL 6798770 (U.S. Nov. 19, 2020) (same).

And while "[a] prisoner under a death sentence remains a living person and consequently has an interest in his life" pending his execution, *See Ohio Adult Parole Auth. v. Woodard*, 532 U.S. 272, 288 (1998) (O'Connor, J. concurring in part and concurring in the judgment), providing fewer days' notice than Plaintiffs may be entitled does not rise to the level of irreparable harm when Plaintiffs have been under a death sentence for well over a decade, have received the minimum twenty-day notice required by federal law, 28 C.F.R. § 26.4(a), and have

14

been given the fifty-day notice set forth in the 2019 Execution Protocol, (*see* ECF No. 171, Admin. R. at 1093).[3]

Plaintiffs also have not been deprived of the opportunity to seek clemency. (*See* Pl. Mem. at 8).  Both have already submitted clemency petitions, and the decision whether to grant those petitions now rests with the President.  And while the court is certainly sympathetic to the argument that such petitions would likely receive more favorable treatment from the incoming administration, Plaintiffs have not provided authority suggesting that an injunction may be issued on this basis.

Having found that Plaintiffs have failed to establish the requisite irreparable harm, the court need not address the remaining factors for injunctive relief.  *See Wis. Gas Co. v. F.E.R.C.*, 758 F.2d 669, 674 (D.C. Cir. 1985) (quoting *Sampson v. Murray*, 415 U.S. 61, 88 (1974) ("The basis for injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies.").

---

[3]  Bourgeois was initially notified in July 2019 of a January 2020 execution date and therefore has been on notice of the government's intent to execute him for sixteen months.  This is consistent with the 2019 Execution Protocol which states that "[i]f the date designated [for an execution] passes by reason of a stay of execution, then a new date will be promptly designated by the Director of the BOP when the stay is lifted."  (Admin. R. at 1093 (internal citations omitted)).

**CONCLUSION**

Though Plaintiffs are likely to succeed on the merits of their claim, they are unable to demonstrate that they have been irreparably harmed by Defendants' failure to adhere to Article 43.141(c) of the Texas Code of Criminal Procedure and, by extension, the FDPA. Accordingly, Plaintiffs' motion for a preliminary injunction will be DENIED.  The court will issue an order accordingly.

Date:  December 6, 2020

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge