UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In the Matter of the Federal Bureau of Prisons' Execution Protocol Cases,<br><br>LEAD CASE: *Roane, et al. v. Barr*<br><br>THIS DOCUMENT RELATES TO:<br><br>*Roane v. Barr*, 05-cv-2337 | Case No. 19-mc-145 (TSC) |

## ORDER

The court has received the attached motion from Plaintiff Dustin Higgs, dated November 30, 2020, requesting that the court enter a preliminary injunction staying his execution. However, the record in this case indicates that Mr. Higgs is currently represented by counsel. (See ECF No. 229.) Moreover, Plaintiff's counsel filed a motion seeking to preliminarily enjoin Mr. Higgs' execution. (See ECF No. 344.)

Plaintiff is reminded that all communications with the court and all motions shall be made through counsel. Accordingly, leave to file the motion is hereby DENIED.

Date: December 10, 2020

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Dustin J. Higgs,
   Plaintiff,

-v-

President Donald Trump,
Attorney General William Barr,
Reginal Director of the Federal Prisons,
Warden T.J. Watson of U.S.P. Terre Haute,
and "JOHN DOE(S)" involved with carrying
out the lethal injection protocol and/or process,
   Defendants.

"CAPITAL CASE"

"EXECUTION DATE SET FOR JAN. 15, 2020"

---

## MOTION TO SEEK LEAVE TO PROCEED IN FORMA PAUPERIS

---

 I, Plaintiff Dustin J. Higgs, pro se, seek leave to proceed in forma pauperis to file the attached motion/law suit, any motions hereafter, petitions, and/or any other filings needed to further the proceedings, without payment of costs because of my poverty, and in the interest of justice.

 I submit that since my arrest, throughout trial, and through my continous appeals, I have and still continue to be granted leave to proceed in forma pauperis, pursuant to 18 U.S.C. 3006A(a)(2)(B), and/or 18 U.S.C. 3599(a)(2), because of my poverty.

 I declare under the penalty of perjury that the foregoing is true and correct.

Executed on _November 30_, 2020.

_Dustin J. Higgs_ (signature)
Dustin J. Higgs

P.O. BOX 33
Terre Haute, IN. 47808

Authorized by the Act
July 7, 1955 to Administer
Oaths (18 U.S.C. 4004)

_(signature)_ 11/30/2020
Case Manager

Witness/date

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Dustin J. Higgs,
        Plaintiff,

-v-

President Donald Trump,
Attorney General William Barr,
Regional Director of the Federal Prisons,
Warden T.J. Watson of U.S.P. Terre Haute,
and "JOHN DOE(S)" involved with carrying
out the lethal injection protocol and/or process,
        Defendants.

"CAPITAL CASE"

"EXECUTION DATE SET FOR JAN.15, 2020"

## MOTION FOR LEAVE TO FILE A MOTION FOR A STAY OF EXECUTION AND/OR AN INJUNCTION

    Plaintiff Dustin J. Higgs (Higgs), "pro se"[1], has been given an execution date set for January 15th, 2020, at the request of Defendant's Donald Trump, William Barr, and the Justice Department. Where the task is deemed to be carried out by the defendants's T.J. Watson, and "John Doe(s)" at Terre Haute's Federal Prison in Terre Haute, Indiana.

    For the following reasons set forth in this motion, and do to William Barr and the Justice Department's pressuring court's to "expedite" the appeals on any and all litigation of anyone whom the Justice Department and Willaim Barr has set an execution date on. Plaintiff Higgs seeks a stay of execution and/or seeks a preliminary and/or permanent injunction.

    Higgs asks for this stay and/or injunction in good faith. The stay and/or injunction is sought pursuant to the Fifth Amendment's demand upon both prosecutors and courts that "[n]o person", including Higgs, "shall be held to answer for a capital [] crime, 'unless' on a[n] indictment of a Grand Jury," (quoting U.S. Const. amend. V) (emphasis added), and the Eighth Amendment right against Higgs being subjected to "cruel and unusual punishment. Where the stay asks this Court to determine whether the Fifth and Eighth

---

[1] Higgs has been given an execution date for January 15, 2020. Due to COVID, the slow mail delivery, and the Justice Department's rush to speed up appeals for those who have been given execution dates. Thus, forcing many Court's to rush their consideration on such important issues of life and death. In the interest of justice and to ensure that his motion is docketed in a reasonable time, Higgs is presenting this motion pro se, and he asks the Court to allow counsel to file a corrected motion only in relation to the issues presented. (A copy has been sent to counsel.).

1

Amendments "prohibit" said defendants from initiating any actions in relation to the lethal injection protocol; strapping Higgs to the gurney; sticking a needle into Higgs' arm with tubing attached to it to adminisiter a lethal dose of "Pentobarbital". And whether said Defendants are "prohibited" under the Fifth and Eighth Amendment from carrying out and/or following through with the lethal injection protocol; allowing the Defendant's drug of choice "Pentobarbital" to run through the needle that will be placed in Higgs' arm and allow it to run through Higgs' body to cause what all autopsy reports have deemed to be a "homicide."

Not only are the Defendant's "prohibited" from initiating any actions in relation to the lethal injection protocol. The Defendants have made Higgs "ineligible" from being subjected to the use of "Pentobarbital" or any other means of taking Higgs' life, under the Fifth and Eighth Amendments. Because Higgs' indictment omitted the required statutory aggravating factors and capital mens rea; which are mandatory to make a non-capital case a capital one in nature and effect. See Smith v United States, 360 U.S. 1, 13 (1959) ("The grand jury should have this information 'before it returns a capital charge', otherwise, 'none should exist under the indictment.' [Because] the Court deprives the defendant of the safeguard of the proper grand jury proceedings as required by the 'Constitution' in capital cases.") (emphasis added). See also Id., at 14 ("In filing the [statutory aggravators and capital mens rea] under the [Notice Of Intent To Seek The Death Penalty and not Higgs' indictment], the Government 'forcloses itself' from seeking the death penalty. The Fifth Amendment . . . would prevent it from reneging [on what the grand jury returned the indictment on at the Government's asking.] [And] "'the only possible sentence would, therefore, be one for a [life sentence or] a term of years.") (emphasis added).

Moreover, Higgs having to endure a single thought of being executed, Higgs having to be strapped to a gurney, Higgs having a needle inserted into his flesh, and Higgs having to feel the effects of "Pentobarbital" running through his veins as it will eventually stop Higgs' heart, is a "cruel and unusual punishment", (quoting U.S. Const. amend. VIII), that is contrary to the "substantial safeguard against oppressive and arbitrary proceedings", and a clear violation of Higgs' Fifth and Eith Amendment rights under the United States Constitution. In re Grand Jury Investigation of Shipping Industry, 186 F. Supp. 298,317 (D.C. Cir. 1960).

### INTRODUCTION

Both the government and the Fourth Circuit concede that Higgs' indictment; purported facts, allegations, charges, and the possibility of punishment sought, omitted the required

statutory aggravating factors and capital mens rea that "must" accompany any indictment, including Higgs' indictment, for impositition of capital proceedings, a capital punishment, and the execution of a capital sentence of death. Without which "prohibits", and makes Higgs ineligible for the death penalty; the use of "Pentobarbetal", any other drug, or any other method to be used by the Defendants to carry out Higgs' homicide. Because "'unless' . . . on an indictment of a Grand Jury", then "[n]o person", including Higgs, "shall 'be held to answer for a capital [] crime'"; the use of "Pentobarbetal". (quoting U.S. amend. V) (alteration to original) (emphasis added).

Despite the admitted Fifth Amendment defect to Higgs' indictment and it being structurally amended as a result, both the government and the Fourth Circuit concede that the prosecutor; the indictment's draftsman, failed to charge the mandatory statutory aggravating factors and capital mens rea; as required for imposition of death penalty charges, proceedings, a capital punishment, and the option of any form of death to be used against Higgs. See United States v Higgs, 353 F. 3d 281, 301-02 (4th Cir. 2003) ("Accordingly, we hold that the 'multiple killings aggravator **cannot** act as the sole statutory aggravator which rendered these murders death eligible'"); see also Higgs, 353 F.3d at 304-05 (Court pointing out that "the indictment was defective 'because it failed to allege the requisiate statutory aggravating factor or factors.'") (emphasis added).

First, the Fifth Amendment of the Constitution itself "prohibits" the Defendants from initiating and/or carrying out any actions in realation to the lethal injection protocol, and "prohibits" the use of "Pentobarbital" to execute the punishment that the Defendants want Higgs to "be held to answer for." (quoting U.S. Const. amend. V). See Kesavan, The Three Tiers of Fedral Law, 100 N.W. U.L. Rev. 1479,1499, n. 99 (2006) ("It is unnecessary for the Constitution to specify that 'it is superior to other law because it is higher law made by We the People - and the only such law.'").

Second, neither does the Fifth Amendment, in its use of the word "unless", nor does any Supreme Court precedent case law allow room for the government nor the Fourth Circuit to speculate, infer, nor guess what the grand jury would've done, if they were asked. Because the Constitution specifically identifies the controlling authority as "a Grand Jury." It does not give any inference in the least that it gives, at any time, the government nor the Fourth Circuit the power and authority to possess the power of, and/or over the grand jury. And neither does it say that the government nor any court can bypass the grand jury in place of evidence that is introduced at trial, or a jury verdict to justify upholding such a violation. See United States v Dionisio, 410 U.S. 1,16-17 (1973) (Holding

that an indictment of a grand jury "presupposes an investigative body 'acting independently of either prosecuting attorney or judge.'") (emphasis added); see also Vasquez v Hillery, 474 U.S. 254,263 (1986) (Holding that only "[t]he grand jury [decides to] charge a greater offense or a lesser offense; numerous counts or a single count; and perhaps most significant of all, 'a capital offense or a noncapital offense -- all on the basis of the same facts.'") (emphasis added).

Third, if the prosecutor; the indictment's draftsman, wasn't satisfied with the parameters within which they confined their indictment; purported facts, allegations, changes, and possibility of punishment to, they were under no obligation to sign the return and could've simply refiled a superseding indictment. See United States v Batchelder, 442 U.S. 114,124 (1979) ("Whether to prosecute and what charge to file or bring before the grand jury are decisions that generally rest in the prosecutor's descretion.") But once the prosecutor signed Higgs' return, it is a "'settled rule in the Federal Courts that an indictment may not be amended except by **"resubmission"** to the grand jury.'" Russell v United States, 369 U.S. 749,770 (1962) (citing ex parte Bain, 121 U.S. 1 (1887)) (internal citation omitted) (emphasis added).

Fourth, both the government and the Fourth Circuit justify the admitted Fifth Amendment violation to Higgs' indictment and held it harmless by concluding that because the government provided notice in its Notice Of Intent To Seek The Death Penalty, it satisfied that Fifth Amendment's demand. Yet, Higgs would make a timely objection to this fact. See Higgs Brief for Appellant United States Court Of Appeals Record No. 01-3, pg.42 (4th Cir.) (footnote; "Higgs [objected]/ raised this issue in his pretrial motions, Dkt. no. 113 Motion to preclude the death penalty pg. 50-51). Where such logic and holding is clearly misplaced in accordance with the Constitution and Supreme Court precedent.

If this was a "State case" and the prosecutor did as they have done in Higgs' case; bypassing the grand jury and for the first time submitting the statutory aggravating factors that enhanced Higgs' case to to a capital one in the Notice Of Intent To Seek The Death Penalty, which would be the functional eqivalent of a State prosecutor only having to put forth the statutory aggravators in a "Bill of Particulars." It would have been constitutional. Because "no federal right to a grand jury exists in State prosecutions", because "it does not require 'the States' to observe the Fifth Amendment provisions for presentment or indictment by a grand jury." Alexander v Louisiana, 405 U.S. 625, 633 (1972).

Higgs's case is federal and therefore guarantees Higgs the Fifth Amendment's demand

that Higgs "shall" not "be held to answer for a capital [] crime", because the government failed in their obligation under the Constitution to submit the statutory aggravating factors to Higgs' grand jury to make Higgs' case a capital one. (quoting U.S. Const. amend. V).

Fifth, the violation is clearly structural because it "affect[ed] the framework within which [Higgs'] trial proceed[ed], rather than it being simply an error in the trial process itself." Arizona v Fulminante, 499 U.S. 279,309-10 (1991). Because Higgs' arraignment, defense counsel, defense counsel's strategy, the motions filed by counsel, the jury questionnaires, the jury members, and Higgs' trial all functioned under a capital scheme when they were only authorized by Higgs' grand jury to be non-capital in nature and effect.

Lastly, Higgs having to think about being put to death with "Pentobarbital", Higgs having to be strapped to a gurney, Higgs having a needle stuck into his flesh, and Higgs having "Pentobarbital" used as a means to take his life at the request of the Defendants, when Higgs' grand jury never gave their authorization for such a sentence to be carried out is the essence of what is considered "cruel and unusual punishment."

Pentobarbital has been adopted by the Defendants as the new drug of choice to carry out executions for all Federal Death Row prisoners. Higgs included. But "Pentobarbital, as held by the Defendants, is reserved for those who have been constitutionally "sentenced to death." Which would make the use of "Pentobarbital" or any other means to put Higgs to death prohibited, and makes the protocol challengable under the Fifth Amendment's demand that "unless on a[n] . . . indictment of a Grand Jury", then Higgs can't "be held to answer for a capital [] crime." (Quoting U.S. COnst. amend. V). Because such a sentence, which encompasses the lethal injection protocol, was never authorized by Higgs' grand jury. And because Higgs' grand jury never authorized Higgs to be eligible for a capital crime, nor such a sentence to be carried out. It would be a "cruel and unusual punishment" to allow the Defendants to move forward without this Constitutional question being answered.

A stay and/or injunction is clearly warranted where a substantial part of the events giving rise to the claims made herein was structured in Washington, DC by the Defendants and then tasked to be carried out by the other Defendants. Where Higgs can demonstrate either that he is entitled to a stay as a matter of right, Barefoot v Estelle, 463 U.S. 880,888 (!983), superseded on other grounds by 28 U.S.C. 2253(c), or that he should receive a stay as a matter of equity, Hill v McDonough, 547 U.S. 573,584 (2006). Especially when a "substantial legal issue" exists when there are "substantial grounds upon which relief 'might

5

be granted'" to Higgs. Id. at 895. And where Higgs can "ma[ke] a strong showing that he is likely to succed on the merits", that he "will be irreparably injured absent a stay", that the issuance of the stay will [not] substantially injure the other parties interested in the proceeding", and that "the public interest" favors a stay and/or injunction. Nken v Holder, 556 U.S. 418,434 (2009).

## JURISDICTION

Higgs invokes this Court's jurisdiction pursuant 28 U.S.C. 1331, in that it arises under the Constitution and laws of the United States, Bivens v Six Unknown Agents, 403 U.S. 388, 390-97 (1971), in that it seeks to secure prospective, equitable relief directly under the Constitution, specifically the Fifth and Eighth Amendments; under 28 U.S.C. 2201(a), in that one purpose of this action is to secure declaratory relief; and under 28 U.S.C. 2202, in that one purpose of this action is to secure preliminary and permanent injunctive relief. Furthermore, judicial review of the agency action at issue is authorized by the APA, 5 U.S.C. 702, 704, and 706, and this Court has venue under 28 U.S.C. 1391(b)(2).

## ARGUMENT

### HIGGS CANNOT "BE HELD TO ANSWER FOR A CAPITAL CRIME" PURSUANT THE FIFTH AMENDMENT AND TO CARRY OUT HIS EXECUTION WOULD BE A "CRUEL AND UNUSUAL PUNISHMENT" UNDER THE EIGHTH AMENDMENT

To be "sufficient", Higgs' "indictment 'must contain [] the lements of the offense charged.'" Hamling v United States, 418 U.S. 87, 117 (1974) (emphasis added). Where this is rooted in the Constitutional demand that the Framers placed upon both prosecutors and courts when it held that "[n]o person", including Higgs, "shall be held to answer for a capital [] crime, 'unless' on a[n] indictment of a Grand Jury." Where the Framers intentional use of the word "unless" in the Fifth Amendment's text warns both prosecutors and courts that "unless on a[n] . . . indictment of a Grand Jury", then "[n]o person[, including Higgs, "shall "be held to answer for a capital [] crime."

In the present case, neither the prosecutor nor the Fourth Circuit would take heed to the Fifth Amendment's warning, as both would concede that "the multiple killings aggravator cannot act as the sole statutory aggravator which rendered these murders death eligible", Higgs , 353 F.3d at 301-2, and that "the indictment was defective 'because it failed to allege the requisiate statutory aggravating factor or factors." Higgs, 353 F.3d at 304-5. Which "prohibited" Higgs' trial, conviction, and sentence of death to go outside the scope of being "non-capital in nature and effect." See Smith v United States, 360 U.S. 1, 12- 14 (1959) (Holding that "[i]n attempting to do what it believes to be a great right, the

Court in reality does a great wrong to the administration of justice. The most serious result is that the Court's procedure allows the United States Attorney to secure an indictment for a capital offense without the grand jury's knowing that he is doing so. . . Thus the grand jury is deprived of any knowledge of the element of the offense that makes it capital. . . This puts the law as to capital cases into the hands of the prosecutor, not the grand jury, where [] the Fifth Amendment [] lodged it. . . [Whereas] the grand jury should have this information before it returns a capital charge, otherwise, 'none should exist under the indictment.' By this reasoning, the Court deprives the defendant of the safeguard of proper grand jury proceedings as required by the 'Constitution' in capital cases. . . [And] [i]n filing the information under the [Notice Of Intent To Seek The Death Penalty], the Government forcloses itself from seeking the death penalty. [Where] the Fifth Amendment [] would prevent [the government] from reneging on this bargin[,] [and] [t]he 'only possible sentence would, therefore, be [a life sentence] [or] one for a term of years.") (emphasis added).

Yet, after Higgs' indictment was returned by his grand jury, and after the prosecutor signed the return; making Higgs' case a non-capital one, the prosecutor would present for the first time the omitted statutory aggravating factors and capital mens rea in the Government's Notice Of Intent To Seek The Death Penalty. Where in doing so made those statutory aggravating factors "opperate as the functional equivalent of 'an element of a greater offense'", Ring v Arizona, 536 U.S. 584, 609 (2000) (quoting Apprendi v New Jersey, 530 U.S. 466,494 (2000)), when both constructively amended Higgs' grand-jury-approved-non-capital-case to proceed to trial within the framework of one that was capital in nature and effect, and has now resulted in Higgs having to "answer for a capital [] crime", without that capital charge being in "a[n] indictment of a Grand Jury." Which the Fifth Amendment prohibits and makes Higgs "ineligible" for the death penalty. Because the statutory aggravating factors that were omitted from Higgs' indictment "must appear in the indictment". Jones v United States, 526 U.S. 227,243 n.6 (199) (emphasis added).

To justify upholding such a serious Constitutional violation that is now asking for Higgs life to be taken unjustly, the Government and the Fourth Circuit have continued to hold the violation "harmless " when it is not. Because Higgs' grand jury is a "constitutional fixture in its own right", United States v Chanen, 549 F.2d 1306, 1312 (CA9) (quoting Nixon v Sirica, 159 U.S. App. D.C. 58, 70, n.54 (1973)), "' no judge' presides to monitor its proceedings, 'it deliberates in secret', and 'may determine alone the course of its inquiry'", Calandra, 414 U.S. at 343 (emphasis added), and "[i]f it lies within the province of a court to change the charging part of an indictment 'to suit its own notions of what it ought to have been,' or 'what the grand jury would have "probably have made it" if

7

their attention has been called to suggested changes,' the great importance which common law attaches to an 'indictment by a grand jury', as a prerequisite to a prisoner's trial for a crime, and without which the Constitution says 'no person shall be held to answer,' may be frittered away until its value is almost destroyed." ex parte Bain, 121 U.S. at 10 (emphasis added). Which is why the Founders, through the Constitution, gave sole authority to enhance a non-capital case to a capital one to "a Grand Jury", (quoting U.S. Const. amend. V), and never once in its text indicates that that power, authorization, or authority can be allocated to a prosecutor nor a judge at anytime.

Again, the Constitution commands that "[n]o person", including Higgs, "shall be held to answer for a capital crime, 'unless' on a[n] . . . indictment of a Grand Jury." Nowhere does it suggest that there is room to bypass the grand jury in place of a Notice Of Intent To Seek The Death Penalty; filed by the government, approved by the government, and not by a grand jury. Thus, showing that the Constitution assured prosecutors, courts, and even defendants that its demand is superior and should be obeyed at all times. See A. Amar. America's Constitution, 5 (2005) (explaining that the Constitution "outranks other sources of law is inherent in its nature.") See also Kesavan, The Three tiers of Federal Law, 100 NW. U. L. Rev. 1479, 1499, n.99 (2006) ("It is unnessary for the Constitution to specify that it is superior to other law because it is higher law made by We the People and the only such law.") Yet, in the persent case, we are left to wonder if the Constitution is superior when it hasn't protected Higgs as it demanded.

It's clear that the Constitution itself forwarned the government that Higgs could not "be held to answer for a capital [] crime, 'unless' on a[n] . . . indictment of a Grand Jury." The only cure then was for the prosecutor; the indictment's draftsman, to go back to the grand jury in Higgs' case and seek a superseding indictment alleging the statutory aggravators and allow the grand jury to decide whether "they" wanted to change Higgs'a charges to a capital one. Especially when the government concedes that they knew that a Constitutional violation would be leading the way in Higgs proceedings. See United States v Pennington, 2003 U.S. Dist. LEXIS 24478 No. 3:01-cr-35-R, Slip op. at 3 (W.D. Ky. Feb. 21, 2003) (granting the defendant's motion to preclude imposition of the death penalty where the indictment did not allege death-qualifying statutory aggravating factors or requisite mens rea, and the government did not seek a superseding indictment prior to jeopardy attaching. Notwithstanding 'the acknowledged mandate from the Attorney General to seek a superseding indictment in all pending Federal Death Penalty cases so as to include the requisite intent and statutory aggravators.); see also United States v Regan, 221 F. Supp. 2d 672, 675 (E.D. VA. 2002) (Noting in light of Ring v Arizona, the government

8

filed a superseding indictment "re-alleging" espionage "and including the statutory aggravating factors previously set forth only in the Notice Of Intent To Seek The Death Penalty.").

The government knew, from the Constitution itself, that they were intentionally violating Higgs' Fifth Amendemnt right to have the grand jury authorize his proceedings and punishment to be capital in nature and effect. because only Higgs' grand jury has the constitutional power and constitutional authority to "charge a greater offense or a lesser offense; numerous counts or a single count; and perhaps most significant of all, 'a capital offense or a non-capital offense.'" Vasquez, 474 U.S. at 263 (emphasis added). And "a court 'cannot permit a defendant to be tried on charges that are not made in the indictment against him'", Stirone, 361 U.S. at 217. Because "after an indictment has been returned its charges [nor the possibility of sentence] may be broadened through amendment except by the grand jury itself." Id., at 215-16.

In Higgs' case, when the government intentionally and deliberately bypassed Higgs' grand jury to secure an unauthorized and unconstitutional senetnce of death, and used the government's Notice Of Intent To Seek The Death Penalty as a "Bill Of Particulars". The government, with the Fourth Circuit's support, stripped Higgs' of his Fifth Amendment rights to "an indictment of a Grand Jury", (quoting U.S. Const. amend. V), and then subjected him to now "be held to answer for a capital [] crime" under procedures and proceedings that are only prohibited to be used in the "State Courts." See Alexander, 405 U.S. at 633 (Holding that "no federal 'right to a grand jury exists in State prosecutions', **because the Constitution 'does not require the states to observe the Fifth Amendment provisions for presentment or indictment by a grand jury.'"**) (emphasis added).

So, "[i]n filing the [statutory aggravating factors and capital mens rea] under the [Notice Of Intent To Seek The Death Penalty], the Government forcloses itself from seeking the death penalty. The Fifth Amendemnt . . .would [then] prevent it from reneging [on what it only asked Higgs' grand jury to return Higgs' indictment on[. [And] 'the only possible sentence would, therefore, be one for a [life sentence or] a term of years.'"Smith, 360 U.S. at 14. Thus, under the Constitution, "prohibiting" the Defendants from initiating any actions in relation to the death penalty protocol, and "prohibiting the Defendants from using the drug "Pentobarbital" to carry out the execution that they have planned for Higgs on January 15, 2020. Because from the Constitution's demand, Higgs is ineligible to "be held to answer for a capital [] crime", (quoting U.S. Const. amend. V). Where Higgs' grand jury never authorized the Defedants to proceed forward with such an unauthorized punishment.

Higgs does not have a death sentence that could only be authorized by his grand jury. This is a fact that even the Defendant's concede to. See Higgs, 353 F.3d at 301-02, and 304-05. A stay and/or an injunction should be granted to force the Defendants to answer how can they Constitutionally proceed forward with a scheduled execution when they concede and the record shows that initiating the lethal injection protocols and using the drug "Pentobarbital" to make Higgs have to "answer for a capital [] crime" would be the truest demonstration of what "cruel and unusual punishment" is. (quoting U.S. Const. amend. VIII). Because the Defednats would be killing Higgs when no such option exists for the Defendants to Constitutionally proceed forward on.

### THE CONSTITUTION "PROHIBITS HIGGS FROM BEING 'HELD TO ANSWER FOR A CAPITAL CRIME'", AND ALLOWING THE DEFENDANTS TO INITIATE AND/OR CARRY OUT THE LETHAL INJECTION PROTOCOL AND USE THE DRUG "PENTOBARBITAL" TO KILL HIGGS WOULD BE A "CRUEL AND UNUSUAL PUNISHMENT"

Most, if not all Eighth Amendment "cruel and unusual punishment" claims rest solely on whether the drugs or method of punishment chosen to carry out an execution would cause pain, and/or that another choice of punishment should be used that would be less painful and/or humane. That is not the challenge here. Higgs' motion is specifically challenging the Defednats to prove, in light of their concession, that they aren't "prohibited" from carrying out their planned execution of Higgs when such a punishment has never been authorized by Higgs' grand jury. Smith, 360 U.S. at 13. ("In filing the [statutory aggravating factors and capital mens rea] under the [Notice Of Intent To Seek The Death Penalty], the Government forcloses itself from seeking the death penalty. The Fifth Amendment . . . would prevent it from reneging on this bargain. [And] [t]he 'only possible sentence would, therefore, be [a life sentence or] one for a term of years.") (emphasis added). see also U.S. Const. amend. V,(demanding upon both prosecutors and court that "[n]o person", including Higgs, "shall be held to answer for a capital [] crime, 'unless' on . . . an indictment of a Grand Jury.") (emphasis added).

If the Constitution is superior to any other law, and/or any prosecutor's or court's opinion of what the Constitution should be, see osborn v Bank of united States, 9 weat., 738,866 (1824) ("Judicial power is never exercised for the purpose of giving effect to the will of the judge; always for the purpose of giving effect to the will of [] law.") (Marshall, C.J.); see also A. Amar. America's Constitution, 5 (2005) (explaining that the Constitution is a constitutive document); Kesavan, The Three Tiers of Federal Law, 100NW. U. L. Rev. 1479,1499, n.99 (2006) (arguing that "[i]t is unnessary for the Constitution to specify that it is superior to other law because it is higher law made by We the People

10

and the only such law."), then the Fifth Amendment makes Higgs' ineligible from being put to death by the Defendants in this case. Thus, making the Defedant's scheduled execution date for Higgs and their intended use of "Pentobarbital" a "cruel and unusual punishment" that is unconstitutional under both the Fifth and Eighth Amendment of the United States Constitution.

A stay and/or injunction is clearly warranted in this situation. Especially when this motion and the facts therein show that there are "substantial grounds upon which relief 'might' be granted." Barefoot, 463 U.S. at 895. (emphasis added). Thus, invoking this Court's jurisdiction to make the Defedants answer to the Constitution questions presented therein.

Higgs prays that this Court will take into consideration that he has a scheduled execution date, except this motion, docket the motion, grant the stay and/or injunction, allow further briefing and/or oral arguments where a killing is being asked to be carried out when Higgs' grand jury never authorized such a punishment to be carried out.

Respectfully Submitted,

*Dustin J. Higgs*

Dustin J. Higgs
31133-037
P.O. BOX 33
Terre Haute, IN. 47808

Case 1:19-mc-00145-TSC   Document 357-1   Filed 12/10/20   Page 13 of 13

Dustin J Higgs  31133-037
Special Confinement Unit
P.O. Box 33
Terre Haute, IN 47808

INMATE IDENTIFICATION CONFIRMED





7018 3090 0002 1667 8682



UNITED STATES POSTAL SERVICE

USPS TRACKING #

9114 9022 0078 9080 3707 52

To: Clerk of Court / Honorable Tanya Chutkan  Judge
U.S. District Court of D.C.
333 Constitution Ave. N.W.
Washington, D.C. 20001



RECEIVED
Mail Room
DEC 7 2020
Angela D. Caesar, Clerk of Court
U.S. District Court, District of Columbia