**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

In the Matter of the
Federal Bureau of Prisons' Execution
Protocol Cases

LEAD CASE: *Roane, et al. v. Barr*

THIS DOCUMENT RELATES TO:

*Roane, et al. v. Barr*, No. 05-2337

Case No. 19-mc-0145 (TSC)

**DEFENDANTS' COMBINED OPPOSITION TO PLAINTIFF**
**CORY JOHNSON'S MOTIONS FOR RELIEF FROM JUDGMENT AND TO COMPEL**[1]

This Court should deny Plaintiff Cory Johnson's motions (1) for relief from the final judgment as to Count V of the Amended Complaint (*ultra vires* agency action contrary to the Federal Death Penalty Act ("FDPA")); and (2) to compel the disclosure of information relating to the implementation of Johnson's death sentence by electrocution in order to assist him in deciding whether to select electrocution as his method of execution under Virginia law.  The position in both motions that Johnson may invoke the Virginia choice-of-method statute is predicated on the faulty premise that Johnson is subject to the FDPA even though he was sentenced to death before the FDPA was enacted.  But Johnson has already litigated the issue of the applicability of the FDPA to his pre-FDPA sentence in his criminal case and did not prevail, and his sentencing court issued an order specifying lethal injection as his method of execution.  Those judgments are final and thus bind the parties here.  And even if Johnson were not collaterally estopped from relitigating the issue and even if the government could ignore the valid order of his sentencing court, the

---

[1] Although the Amended Complaint and the motion for relief from judgment spell Mr. Johnson's first name as "Corey," *see* ECF Nos. 92, 363, Defendants use the spelling that appears on the criminal docket in the U.S. District Court for the Eastern District of Virginia. *See United States v. Johnson*, No. 92-0068 (E.D. Va.).

FDPA's plain language makes it clear that it is inapplicable to persons, like Johnson, who were not sentenced pursuant to the FDPA.

Johnson was sentenced to death for committing offenses under the Anti-Drug Abuse Act ("ADAA"), 21 U.S.C. § 848(e), in the U.S. District Court for the Eastern District of Virginia in February 1993.  At the time of his sentence, no statute authorized the method of execution for § 848(e) offenses, but the Attorney General had promulgated regulations generally specifying lethal injection as the method of execution for federal death sentences, *see* 28 C.F.R. § 26.3. Johnson argued that the Attorney General's regulations were *ultra vires*, but the Fourth Circuit disagreed.  *United States v. Tipton*, 90 F.3d 861 (4th Cir. 1996), *cert. denied*, 546 U.S. 810 (1997).[2] The Fourth Circuit also held that § 3596(a) of the FDPA, which was enacted in 1994, "does not by its terms apply to death sentences imposed under § 848(e)" because it only governs the execution of persons "sentenced to death *pursuant to this chapter*," 18 U.S.C. § 3596(a) (emphasis added).  *Tipton*, 90 F.3d at 903.  On remand, the sentencing court issued an Execution Order providing that Johnson "shall be executed by intravenous injection of a lethal substance or substances in a quantity sufficient to cause death."  *United States v. Johnson*, No. 3:92-cr-68-02 (E.D. Va. No. 17, 2005), Order ¶ 2 (attached as Exhibit A).  Despite this history, Johnson now argues that he is subject to the FDPA such that he is eligible to choose between electrocution and lethal injection under Virginia law.

Johnson, however, remains bound by the Execution Order, just as the government is not free to ignore the Order.  Johnson's argument is also barred by collateral estoppel, *see Allen v. McCurry*, 449 U.S. 90, 104 (1980) (collateral estoppel applies in civil actions to bar attempts to relitigate issues previously decided in criminal proceedings), and by the FDPA's plain terms, *see Tipton*, 90 F.3d at 903.  He simply has no basis to raise a claim under the FDPA because he was sentenced pursuant to the death penalty procedures of the ADAA.  *See United States v. Barrett*, 496 F.3d 1079 (10th Cir. 2007) (defendant "lack[ed] standing to challenge the FDPA because he

---

[2]  Although the case is captioned "*Tipton*," Johnson was a defendant-appellant in *Tipton* and is bound by that judgment.  *See* 90 F.3d at 861.

was not sentenced to death under that Act"); *United States v. Stitt*, 552 F.3d 345 (4th Cir. 2008) (holding that another provision of the FDPA did not apply to a pre-1994 conviction because the FDPA provision "by its clear terms" applied only "when the initial sentence was imposed 'under this section'") (quoting 18 U.S.C. § 3593(b)(2)(D)); *United States v. Flores*, 63 F.3d 1342, 1350–51 & 1351 n.4 (5th Cir. 1995)) (holding that 18 U.S.C. § 3593(f)—a provision of the FDPA—was inapplicable to defendant because it was not in effect "at the time of [defendant's] sentencing").

Although Johnson asserts that the government should be judicially estopped from contesting the applicability of the FDPA to him, he fails to meet the exacting standard for asserting estoppel against the government. Indeed, the government has never represented that the FDPA is applicable to persons like Johnson who were not sentenced under the FDPA, and even if it had, Johnson cannot show that he has reasonably relied on that representation to change his position for the worse, let alone that the government has engaged in affirmative misconduct. Even aside from the estoppel standard, in all events, Johnson fails to meet Rule 60(b)'s stringent "extraordinary circumstances" standard for relief from a final judgment. *Tipton* was decided 24 years ago, and Johnson has been subject to the sentencing court's Execution Order since 2005. Even if he had doubts about the Order's continued binding effect, he has taken no steps to seek clarification from that court. It is simply improper for him to collaterally attack that Order in this Court now. This is particularly the case when Johnson failed to meet the Court's deadline of December 4, 2020, for him to file any motion for injunctive relief, despite having been informed on November 20, 2020, that he would be executed by lethal injection. In fact, since he first initiated this suit in 2005, he has never taken the position that he should be executed by electrocution, and does not even do so now. Accordingly, Johnson has no basis to modify this Court's final judgment on the FDPA claim.

Likewise, Johnson's discovery requests seeking information regarding electrocution are irrelevant to any claim he may still have in this litigation. Johnson has not attempted to choose electrocution as his preferred method. And even if he had, he may not use discovery as a mechanism to gather information that he desires to know before invoking an asserted statutory

right, as opposed to asserting a claim or defense in litigation.  Indeed, the FDPA does not entitle Johnson to seek information that may better inform his choice.  Nor does Johnson have any constitutional right to such information, as the Court has already held when denying Plaintiffs' Due Process Claim.  *See* ECF No. 261, Mem. Op. at 11-13.  Accordingly, court-ordered discovery is inappropriate here.

## BACKGROUND

### I.      Johnson's Criminal Case

Johnson and his co-plaintiffs in this action, Richard Tipton and James Roane, "were principal 'partners' in a substantial drug-trafficking conspiracy that lasted from 1989 through July of 1992," including a period of time in 1992 when the three "were variously implicated in the murders of ten persons within the Richmond area—all in relation to their drug-trafficking operation." *Tipton*, 90 F.3d at 868.  Johnson was charged with and convicted of seven capital murders under the ADAA, 21 U.S.C. § 848(e), among other crimes, and was sentenced to death on all of them, *Tipton*, 90 F.3d at 869–70.

At the time of Johnson's death sentences, "no federal statute provided authorization for the specific means of executing . . . [death] sentences [under § 848(e)]." *Id.* at 901–02.  A month earlier, following States' trend to use lethal injection as the most humane method of execution, the Attorney General had promulgated regulations providing for lethal injection as the method of execution for federal capital crimes, except to the extent a court ordered otherwise.  *See* 28 C.F.R. § 26.3.[3]  As the Attorney General explained when proposing the regulations, the need for procedures implementing federal death sentences had "become imperative with the growing number of cases under 21 U.S.C. 848, providing the death penalty for certain drug-related

---

[3]  Effective December 28, 2020, 28 C.F.R. § 26.3(a) will be revised to provide that "[e]xcept to the extent a court orders otherwise, a sentence of death shall be executed . . . [b]y intravenous injection of a lethal substance or substances in a quantity sufficient to cause death, such substance or substances to be determined by the Director of the Federal Bureau of Prisons, or by any other manner prescribed by the law of the State in which the sentence was imposed or which has been designated by a court in accordance with 18 U.S.C. 3596(a)."

offenses."  Proposed Rule, Implementation of Death Sentences in Federal Cases, 57 Fed. Reg. 56536-01 (Nov. 30, 1992).

Johnson opposed the application of the regulations to him, arguing that they were *ultra vires*. *Tipton*, 90 F.3d at 902.  The district court agreed, concluding that Congress had the exclusive power to prescribe the means by which federal death sentences should be implemented.  *Id.*  The district court thus stayed execution of Johnson's death sentences until such time as Congress provided specific authorization of means of implementing § 848(e) death sentences.  *Id.*

On the government's cross-appeal of the district court's order staying Johnson's execution, the Fourth Circuit reversed.  It first held that the FDPA, passed in 1994, "[did] not by its terms apply to death sentences imposed under § 848(e)" because it is applicable only to "[a] person who has been sentenced to death *pursuant to this chapter*."  *Id.* at 903 (quoting 18 U.S.C. § 3596(a) (emphasis added)).  The Fourth Circuit then held that the Attorney General had constitutional and statutory authority to provide by regulation the means for executing death sentences imposed under 21 U.S.C. § 848(e), and that Congress had not, "either expressly or by necessary implication, preempted the power of the executive branch, through the Attorney General, to authorize the means at issue," *Tipton*, 90 F.3d at 902–03.

On remand, the district court vacated its prior stay order and issued an Execution Order on November 17, 2005, providing that Johnson's sentence "shall be executed by intravenous injection of a lethal substance or substances in a quantity sufficient to cause death."  *See* Exhibit A.

## II.    Relevant Procedural History

In December 2005, one month after the entry of the Execution Order, Johnson and his co-defendants, James Roane and Richard Tipton, brought this suit to challenge the Bureau of Prison's then three-drug execution protocol.  *See Roane v. Gonzales*, No. 1:05-cv-023337-RWR (D.D.C. 2005), ECF No. 1.  In the complaint, Johnson acknowledged that he was subject to the Attorney General's regulations on the implementation of death sentences, but challenged them as *ultra vires*. *Id.* ¶ 5.  His complaint did not reference the FDPA.

5

On March 9, 2006, Congress enacted the USA Patriot Improvement and Reauthorization Act of 2005, Pub. L. No. 109-177, 120 Stat 192 2006.  The Act repealed the Title 21 death penalty procedures applicable to § 848(e) offenses, *see id.* § 221 ("Elimination of procedures applicable only to certain Controlled Substances Act cases"), rendering the death penalty procedures set forth in the FDPA, 18 U.S.C. §§ 3591–3598, applicable for all federal death-eligible offenses, including capital drug offenses.  That is, the 2006 Act "eliminate[d] duplicative death [penalty sentencing] procedures under title 21 of the United States code, and consolidate[d] procedures governing all Federal death penalty prosecutions in existing title 18 of the United States Code."  H. Rep. No. 109-333, at 102.  Despite streamlining the death penalty sentencing procedures *prospectively*, Congress did not specify in the 2006 Act or otherwise amend the FDPA to make 18 U.S.C. § 3596(a) applicable to condemned inmates *previously* sentenced pursuant to the procedures in Title 21 and subject to implementation under 28 C.F.R. § 26.3.

On July 10, 2006, four months after Congress repealed the Title 21 death penalty procedures, Johnson and his co-defendants amended their complaint in this action.  *See Roane v. Gonzales*, No. 1:05-cv-023337-RWR (D.D.C. 2005), ECF No. 8.  The amended complaint did not add any allegation regarding the FDPA or the repeal of the Title 21 death penalty procedures. Instead, it continued to allege that the Attorney General's regulations were *ultra vires*.  *Id.* ¶¶ 5, 24–32 67–72.  The amended complaint remained operative until fourteen years later on June 1, 2020, when Johnson and the other plaintiffs in this consolidated action filed their consolidated Amended Complaint.  ECF No. 92 (Redacted).  Despite acknowledging that Johnson, and several other plaintiffs, "were sentenced to death pursuant to the Anti-Drug Abuse Act of 1988 ("ADAA"), 21 U.S.C. § 848(e)," the consolidated Amended Complaint alleges that "[t]he sentences of all Plaintiffs are governed by the FDPA," notwithstanding the contrary judgment in Johnson's own criminal case, ECF No. 92, ¶ 2.

In July 2020, Defendants moved, among other things, for summary judgment on Plaintiffs' FDPA claim.  ECF No. 169.  On September 14, 2020, this Court ordered Defendants to address whether they "are prepared to deviate from the procedures of the 2019 Execution Protocol to

accommodate . . . VA Code Ann. Section 53.1-234," among other state statutes, which Plaintiffs "contended conflict with the Bureau of Prisons' 2019 Execution Protocol." Sept. 14, 2020 Minute Order.  The Virginia statute identified by the Court provides that a condemned inmate may choose between lethal injection and electrocution, provided that the inmate makes an election before a certain number of days prior to the scheduled execution.  *See* Va. Code Ann. § 53.1-234.  In response, Defendants represented that the Virginia statute is "incorporated by the FDPA" and thus, that "the government will not execute any plaintiff whose sentence was issued in federal court in Virginia . . . and *is subject to the FDPA* . . . without complying with [that] provision[]." ECF No. 247 at 5 (emphasis added); *see also id.* at 2 (stating that Defendants "intend to comply with [Va. Code Ann. § 53.1-234] for *any federal conviction in those states subject to the FDPA*") (emphasis added).

On September 20, 2020, the Court granted summary judgment to Defendants regarding Plaintiffs' FDPA claim, among other things.  *See* ECF No. 261, Mem. Op.; ECF No. 262, Order. Noting Defendants' September 14, 2020, representation, the Court found, as relevant, that "there is no live controversy as to the alleged discrepancies between the 2019 Protocol and the relevant Virginia . . . law[]." ECF No. 261 at 27.  On November 16, 2020, following several Plaintiffs' unsuccessful attempt to alter or amend the Court's FDPA ruling, this Court granted Plaintiffs' emergency motion for entry of partial final judgment under Federal Rule of Civil Procedure 54(b) as to the FDPA claim.  ECF No. 315.

On November 20, 2020, BOP notified Johnson that "pursuant to Title 28, Code of Federal Regulations, 26.3(a)(1), the Director of the Federal Bureau of Prisons has set January 14, 2021, as the date of [his] execution by lethal injection."  *See* Exhibit B (Johnson notice of execution).

On November 25, 2020, this Court ordered that Johnson file any motion for injunctive relief by no later than 5 p.m. on December 4, 2020.  ECF No. 333.  Johnson did not file any such motion by the deadline.

### III.    Johnson's Discovery Requests

On December 9, 2020, Johnson served his first set of interrogatories and requests for production of documents.  Both sets of discovery requests seek information related to the government's potential use of an electric chair for purposes of carrying out Johnson's capital sentence.  On December 11, 2020, undersigned counsel informed Johnson's counsel that because Johnson was convicted and sentenced pursuant to the ADAA and not "sentenced to death pursuant to [the FDPA]," 18 U.S.C. § 3596(a), the provision in the FDPA providing that a death sentence shall be implemented "in the manner prescribed by the law of the State in which the sentence is imposed" does not apply to him, *id.*.  On December 14, 2020, undersigned counsel further confirmed the government's position.  On December 17, 2020, pursuant to the parties' agreed upon schedule, Defendants formally lodged their objections to Johnson's discovery requests.

## <u>ARGUMENT</u>

### I.    STANDARD OF REVIEW

#### A.  Motion for Relief from Final Judgment

Federal Rule of Civil Procedure 60(b) authorizes a court to relieve a party from a final judgment for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence; (3) fraud, misrepresentation, or other misconduct by an opposing party; (4) a void judgment; (5) a satisfied, released, or discharged judgment; or (6) "any other reason justifying relief from the operation of the judgment."  The party seeking relief from judgment bears the burden of proof.  *See Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 383–84 (1992).  Indeed, the Supreme Court has long held that a motion for relief from judgment under Rule 60(b) requires the movant to show "'extraordinary circumstances' justifying the reopening of a final judgment."  *Salazar ex rel. Salazar v. D.C.*, 633 F.3d 1110, 1116 (D.C. Cir. 2011) (quoting *Ackermann v. United States*, 340 U.S. 193, 199 (1950)); *accord Kline v. Archuleta*, 309 F.R.D. 91, 92-93 (D.D.C. 2015), *aff'd sub nom.*, *Kline v. Cobert*, No. 15-5248, 2016 WL 1272945 (D.C. Cir. Feb 10, 2016).  The D.C. Circuit also "has emphasized that Rule 60(b)(6) 'should be only sparingly used' and may not 'be employed simply to rescue a litigant from strategic choices

that later turn out to be improvident.'" *Salazar*, 633 F.3d at 1120 (quoting *Kramer v. Gates*, 481 F.3d 788, 792 (D.C. Cir. 2007)).

### B.  Motion to Compel

Under Rule 26, a party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. Pro. 26(b)(1).  "A party may submit to another party interrogatories that relate to any non-privileged matter that is *relevant* to a party's claims or defenses as described under Rule 26(b) of the Federal Rules of Civil Procedure." *Danzy v. IATSE Local 22*, No. CV1702083, 2020 WL 6887651, at *3 (D.D.C. Nov. 23, 2020) (emphasis added, citing Fed. R. Civ. P. 33(a)).  "[A] party may also serve requests 'within the scope of Rule 26(b) to produce . . . any designated documents.'" *Id.* (citing Fed. R. Civ. P. 34(a)(1)).  "When a party fails to respond to a proper interrogatory or document request, 'the other party may—after first attempting to resolve the issue by conferring with the other party—file a motion to compel.'"  *Id.* (quoting *Barnes v. Dist. of Columbia*, 289 F.R.D. 1, 5 (D.D.C. 2012)).  "When evaluating a motion to compel, courts consider the parties' efforts to resolve the dispute, the relevance of the information sought, and whether the information sought is unreasonably duplicative or can be obtained from some other, more convenient source." *Ray v. CLH New York Ave, LLC*, No. 19-CV-2841-RCL, 2020 WL 5594064, at *4 (D.D.C. Sept. 18, 2020) (citing *Barnes*, 289 F.R.D. at 5–6).  "The party seeking discovery bears the burden of proving that a discovery response is inadequate." *Id.*

## II.  JOHNSON FAILS TO SHOW EXTRAORDINARY CIRCUMSTANCES JUSTIFYING RELIEF FROM FINAL JUDGMENT

Here, Johnson cannot carry his burden for either of his motions for the simple reason the FDPA is inapplicable to him and therefore it does not allow him to choose between electrocution and lethal injection under Virginia law.  Critically, Johnson makes no attempt to argue that the FDPA applies to him by its text, nor does he acknowledge or address the binding determination in *Tipton* that it does not.  He also does not acknowledge that he is subject to the sentencing court's Execution Order specifying that he shall be executed by lethal injection.  Instead, Johnson only

claims that this Court has already ruled on the issue (it has not) and that the government should be judicially estopped from arguing otherwise. These arguments are unpersuasive and do not permit Johnson to circumvent the plain text of the FDPA, the preclusive effect of *Tipton*, or the Execution Order in his criminal case.

### A. The Plain Language of the FDPA, the Doctrine of Collateral Estoppel, and the Execution Order Bar Johnson from Arguing that the FDPA Applies to Him

Johnson's argument is barred by the plain language of the FPDA. The relevant FDPA provision incorporating the state-law manner of execution applies only to those "sentenced to death pursuant to this chapter" 18 U.S.C. § 3596(a)—namely, chapter 228 of Title 18 of U.S. Code. Johnson was sentenced pursuant to the ADAA death penalty procedures under Title 21 of the U.S. Code, and thus the FDPA is inapplicable to him. *See Flores*, 63 F.3d at 1350–51 & 1351 n.4 (holding a provision of the FDPA, 18 U.S.C. § 3593(f), was inapplicable to defendant to give the jury the power to recommend either a death sentence or a life sentence without parole because "under the law in effect at the time of [defendant's] sentencing, the jury's only responsibility was to recommend for or against death"); *Barrett*, 496 F.3d at 1106 (FDPA inapplicable to pre-1994 death sentence); *Stitt*, 552 F.3d at 353 (same). The FDPA's plain language thus bars Johnson's claim, and "[i]t is well established that 'when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms,'" *Lamie v. U.S. Trustee*, 540 U.S. 526, 534 (2004) (quoting *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000)); *accord U.S. ex rel. Totten v. Bombardier Corp.*, 380 F.3d 488, 494 (D.C. Cir. 2004).

Equally important, Johnson unsuccessfully litigated this precise issue in his direct criminal appeal, and thus he cannot relitigate it in this civil action. The Fourth Circuit squarely held that the FDPA's "general implementation provision, which authorize[s] the execution of any defendant 'sentenced to death *pursuant to this chapter*,' … does not by its terms apply to death sentences imposed under §848(e)." *Tipton*, 90 F.3d at 902 (citation omitted). Instead, the Fourth Circuit held that the Attorney General's regulations in 28 C.F.R. part 26 govern Johnson's method of

execution. *Id.* at 903.  On remand, the sentencing court duly specified lethal injection as Johnson's method of execution pursuant to federal regulations. *See* Ex. A.  Under the doctrine of collateral estoppel (or issue preclusion), Johnson may not contest the Fourth Circuit decision or the sentencing court's Execution Order because the doctrine "precludes a party from relitigating an issue actually decided in a prior case and necessary to the judgment." *Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*, 140 S. Ct. 1589, 1594 (2020).

> Issue preclusion has three requirements:
>
> First, the same issue now being raised must have been contested by the parties and submitted for judicial determination in the prior case. Second, the issue must have been actually and necessarily determined by a court of competent jurisdiction in that prior case. Third, preclusion in the second case must not work a basic unfairness to the party bound by the first determination.

*Yamaha Corp. of Am. v. United States*, 961 F.2d 245, 254 (D.C. Cir. 1992) (citations and footnote omitted).

Here, Johnson already had a full and fair opportunity to—and did—litigate against the government the issue of 18 U.S.C. § 3596(a)'s applicability to him, and there was a judgment on the merits on that issue by the Fourth Circuit, as well as an Execution Order by the sentencing court confirming the same.  It makes no difference that the prior judgment was in Johnson's criminal case, *see Allen v. McCurry*, 449 U.S. 90, 104 (1980) (holding that collateral estoppel applies in civil actions to bar attempts to relitigate issues previously decided in criminal proceedings), or that it was entered by a different court in a different circuit, *Dynaquest Corp. v. U.S. Postal Service*, 242 F.3d 1070, 1075 (D.C. Cir. 2001) (courts in this circuit "ha[ve] no authority to collaterally review the decisions of a sister circuit").  Johnson may not seek to collaterally attack the Execution Order in this Court; if he considered that Order unlawful, he would have had to petition the sentencing court to modify it.

Because the FDPA by its plain terms applies only to defendants who were sentenced pursuant to the FDPA, *see* 18 U.S.C. § 3569(a), it is irrelevant that the death penalty sentencing provisions under which Johnson was sentenced were subsequently repealed in 2006; the 2006 Act

did not incorporate the FDPA for pre-FDPA, ADAA sentences, nor did Congress amend the FDPA, § 3569(a), to make it applicable to ADAA sentences that occurred before the FDPA's enactment in 1994. Every court of appeals to consider the issue has held that the FDPA does not apply to pre-1994 ADAA sentences even post-2006. *See Barrett*, 496 F.3d at 1106 (holding that even after the 2006 repeal, a defendant previously convicted and *sentenced* under the ADAA sentencing procedures still "lacks standing to challenge the FDPA because he was not sentenced to death under that Act"); *Stitt*, 552 F.3d at 353 (refusing to apply a separate provision of the FDPA in a case in which the defendants was sentenced under the ADAA, 21 U.S.C. § 848, where the relevant FDPA provision plainly provides that it only applies "when the initial sentence was imposed 'under this section'"). Johnson essentially acknowledged as much. His amended complaint filed four months after the repeal made no mention of the FDPA and continued to maintain the same allegations regarding the Attorney General's regulations as Johnson had before the repeal. *Roane*, No. 1:05-cv-023337, ECF No. 8. Although Johnson changed his position 14 years later in the consolidated Amended Complaint, *see* ECF No. 92, ¶ 2, nothing suggests that such a change was warranted.

Application of the collateral estoppel doctrine here would not be unfair to Johnson. Johnson makes no attempt to meet his "burden of establishing the absence of a full and fair opportunity to litigate the issues in the prior proceedings." *Lans v. Adduci Mastriani & Schaumberg L.L.P.*, 786 F. Supp. 2d 240, 315 (D.D.C. 2011). In the years since the sentencing court issued the Execution Order, there has been no intervening change in law or fact that is material to the issue. Moreover, Johnson has never attempted to select electrocution as his method of execution, even after BOP notified him on November 20, 2020, that he would be executed by lethal injection. He also has never alleged that electrocution is a more humane option than BOP's single-drug pentobarbital protocol, even though he has alleged other alternatives, such as the firing squad. This is not surprising because as the Supreme Court recognized in *Bucklew v. Precythe*, 139 S. Ct. 1112 (2019), as States seek more humane methods of execution, the trend has moved from hanging, to electrocution, to lethal gas, and finally to lethal injection. *Id.* at 1124–25; *id.* at

1125 ("beginning in the 1970s, the search for less painful modes of execution led many States to switch to lethal injection"); *see also Barr v. Lee*, 140 S. Ct. 2590, 2591 (2020) ("The Federal Government followed this trend by selecting a lethal injection protocol—single-dose pentobarbital—that has become a mainstay of state executions."); *Gomez v. U.S. Dist. Court for Northern Dist. of California*, 503 U.S. 653, (1992) (Stevens, J., dissenting) ("'[L]ethal injection is considered to be more humane than other methods of execution (e.g., hanging, firing squad, lethal gas, or electrocution).'").   It would be particularly inappropriate to override the important principles of finality merely to enable Johnson to request a *less* humane method of death.

### B.  Johnson's Estoppel Arguments Have No Merit

Rather than confronting the binding and preclusive effect of *Tipton*, the Execution Order, and the plain language of the FDPA, Johnson's rejoinder is that this Court has already decided the issue.  *See* ECF No. 363, Mot. to Compel at 10; ECF No. 364, Mot. for Relief at 6–7.  He points to a prior opinion of Court, wherein the Court described the legislative history of the death penalty statutes in part as follows: "when the death penalty portions of the ADAA were repealed in 2006, the FDPA was 'effectively render[ed] . . . applicable to all federal death-eligible offenses.'" ECF No. 50 at 3 (quoting *United States v. Barrett*, 496 F.3d 1079, 1106 (10th Cir. 2007)).  While that statement was correct for capital sentences imposed after the 2006 repeal, the Court did not analyze or address the narrow circumstance of capital sentences imposed under the ADAA *before* the 2006 repeal.  In fact, Congress clearly did not intend the FDPA to apply to sentences imposed pursuant to the subsequently repealed provisions of the ADAA, because it neither incorporated the FDPA for such sentences nor amended the FDPA itself; the FDA continues to say that it is applicable to only those persons "sentenced pursuant to this chapter," 18 U.S.C. § 3569(a).  Moreover, the operative language in the quoted portion of the Court's opinion is itself quoted from *Barrett*, and that court squarely held that a defendant convicted and sentenced pursuant to the ADAA "lacks standing to challenge the FDPA," even after the repeal of the ADAA death penalty procedures, "because he was not sentenced to death under [the FDPA]."  496 F.3d at 1106.

Johnson next argues that the government is judicially estopped from contesting the FDPA's applicability to him.  Mot. for Relief at 7.  As an initial matter, this Court has no authority to order the government to disobey a valid order of another federal court—here, the Execution Order issued by the sentencing court.  Nor can the government be estopped from advancing the proper interpretation of the FDPA here.  As the Supreme Court has said, "it is well settled that the Government may not be estopped on the same terms as any other litigant" because of "the interest of the citizenry as a whole in obedience to the rule of law." *Heckler v. Cmty. Health Servs. of Crawford Cty., Inc.*, 467 U.S. 51, 60 (1984)).  Thus, "[t]here is a clear presumption in this Circuit against invoking the doctrine against government actors in any but the most extreme circumstances," *Int'l Union v. Clark*, Civil Action No. 02-1484, 2006 WL 2598046, at *12 (D.D.C. Sep. 11, 2006), and the standard for applying estoppel against the government "is an exacting one," *United States v. Honeywell Int'l, Inc.*, 841 F. Supp. 2d 112, 114 (D.D.C. 2012).  A party seeking to apply equitable estoppel against the government must show that (1) "there was a 'definite' representation to the party claiming estoppel," (2) the party "relied on its adversary's conduct in such a manner as to change his position for the worse," (3) the party's "reliance was reasonable" *and* (4) the government "engaged in affirmative misconduct." *Morris Commc'ns, Inc. v. FCC*, 566 F.3d 184, 191 (D.C. Cir. 2009) (quoting *Graham v. SEC*, 222 F.3d 994, 1007 (D.C. Cir. 2000)).

Johnson cannot meet this "exacting" standard.  As to the first prong, the government has never represented that the FDPA applies to Johnson, and Johnson has not shown otherwise.  Johnson points to general statements made by the government indicating that the FDPA applies to all death-eligible offenses following the repeal of the ADAA's death penalty sentencing procedures, *see* Mot. for relief at 7; but in none of those statements did the government say— contrary to the plain language of the FDPA—that § 3596(a) of the FDPA applies to persons who were not sentenced pursuant to the FDPA.

Johnson also seeks to rely on Defendants' position with respect to former plaintiff Dustin Honken, who was executed in July 2020.  *See* Mot. to Compel at 10.  The government did not contest the applicability of the FDPA to Honken, even though he was also sentenced pursuant to

14

the ADAA.  But the government's position as to Honken is irrelevant to the estoppel analysis here because it was not a position taken as to Johnson.  Moreover, the government was bound by Honken's 2005 criminal judgment, which—in stark contrast to Johnson's Execution Order— expressly invoked the FDPA.  *See United States v. Honken*, CR01-3047-001-MWB (N.D. Iowa Oct. 11, 2005), Judgment in Criminal Case (attached as Exhibit C) at 2.  Apparently because Iowa did not authorize the death penalty, the sentencing court specified in the judgment that "[p]ursuant to 18 U.S.C. § 3596, . . . [w]hen the sentence is to be implemented," it shall be done "in the manner prescribed by the law of the State of Indiana."  *Id.*  Like 28 C.F.R. § 26.3, Indiana law similarly provides that death sentences shall be implemented by lethal injection, *see* Ind. Code § 35-38-6-1; *see also In re Federal Bureau of Prisons' Execution Protocol Cases*, 955 F.3d 106, (D.C. Cir. 2020) (Rao, J., concurring) (stating that Indiana law did not preclude the use of pentobarbital).  Accordingly, it made no difference that the sentencing court invoked the FDPA to designate Indiana law and that the government did not specifically contest the FDPA's applicability to Honken.

Johnson next cites the government's September 2020 representation to the Court that it would comply with the Virginia choice-of-method statute where applicable.  Mot. for Relief at 11; Motion to Compel at 8–9.  But the government specifically limited its representation, stating only that it "will not execute any plaintiff whose sentence was issued in federal court in Virginia . . . and *is subject to the FDPA* . . . without complying with [that] provision[]," ECF No. 247 at 5 (emphasis added); *see also id.* at 2 (stating that Defendants "intend to comply with [Va. Code Ann. § 53.1-234] for *any federal conviction in those states subject to the FDPA*") (emphasis added).  And while currently all plaintiffs in this action who were sentenced in Virginia were not sentenced pursuant to the FDPA, there are a number of federal condemned inmates who were sentenced in Virginia pursuant to the FDPA, including Carlos Caro, who has exhausted his direct appeal and post-conviction remedies and is eligible to be scheduled for execution.  *See* Judgment, *United*

*States v. Caro*, No. 06-0001, ECF No. 694 (W.D. Va. Mar. 30, 2007).[4]  Given the history of new plaintiffs joining this action either when they have exhausted post-conviction remedies or when they are scheduled for execution, Defendants' representation about its intent to comply with the Virginia provision *where applicable* was not superfluous or "completely irrelevant," as Johnson contends, Mot. for Relief at 8.  Indeed, that representation, in direct response to this Court's question, simply made clear that there would be no need for a permanent injunction arising from Plaintiffs' claimed conflict between BOP's Execution Protocol and the Virginia choice-of-method statute.  In addressing that aspect of Plaintiffs' claim (pursuant to a specific directive by the Court), Defendants were in no way conceding that other aspects of Plaintiffs' claim—namely, that the FDPA applies to Johnson—had merit.

In any event, Johnson makes no serious attempt to show that he satisfies the remaining prongs of the exacting estoppel standard.  He does not, and cannot, claim that he has relied on government conduct "in such a manner as to change his position for the worse."  *Morris Commc'ns, Inc.*, 566 F.3d at 191.  His "position" has remained the same since the Fourth Circuit decided *Tipton* more than 24 years ago and at least since his sentencing court specified on remand that he would be executed by lethal injection.  It also would not be reasonable for Johnson to believe that he was "subject to the FDPA" within the meaning of the government's representation to the Court about compliance with Virginia's choice-of-method provision.  And Johnson clearly cannot show "affirmative misconduct" on the part of the government.

---

[4] The government's September 2020 response to the Court's inquiry also indicated its intention to comply with a similar South Carolina choice-of-method statute for those federal inmates sentenced in South Carolina and subject to the FDPA.  *See* ECF No. 247 at 2, 5.  Plaintiff Chadrick Evan Fulks falls into that category, *see United States v. Fulks*, 454 F.3d 410 (4th Cir. 2006), as is his co-defendant Brandon Leon Basham, *see United States v. Basham*, 561 F.3d 302 (4th Cir. 2009).  Both of them have exhausted their direct appeals and are pursuing successive petitions under 28 U.S.C. § 2255.

**C. Johnson's Claim of Surprise Is Insufficient to Establish the Requisite Extraordinary Circumstances for Relief From Final Judgment**

In all events, Johnson fails to show "'extraordinary circumstances' justifying the reopening of a final judgment." *Salazar*, 633 F.3d at 1116.  Johnson claimed that he was surprised by the government's position that he would not be eligible to select electrocution, which he purportedly learned for the first time only when the parties were discussing his discovery requests.  Mot. for Relief at 4.  But his claim of ignorance is unjustified given his litigation in *Tipton* and the subsequent Execution Order specifying lethal injection as his method of execution.  If he thought, contrary to caselaw, that the 2006 repeal of the ADAA death penalty procedures impacted the binding effect of the Execution Order, he took no steps to clarify it.  And when Honken was executed by lethal injection in July 2020 in accordance with his criminal judgment, there was no reason for Johnson to believe that he too would not be bound by the Execution Order in his own case.  Moreover, as discussed before, the government's September 2020 representation about abiding by the Virginia choice-of method statute was limited to only those federal inmates sentenced in Virginia and "*subject to the FDPA*."  ECF No. 247 at 2, 5.  While the government believes that its representation was clear, it is at worst ambiguous or silent as to plaintiffs like Johnson with pre-FDPA sentences.  He could have raised the issue then, and no extraordinary circumstances justify his failure to do so.  At the latest, he should have raised the issue when BOP notified him in November 20, 2020 that he would be executed by lethal injection, or by December 4, 2020, the deadline imposed by this Court for Johnson to seek any injunctive relief.

Granting Johnson's motion for relief from final judgment here would make a mockery of the Rule 54(b) certification.  The D.C. Circuit "has emphasized that Rule 60(b)(6) 'should be only sparingly used' and may not 'be employed simply to rescue a litigant from strategic choices that later turn out to be improvident.'"  *Salazar*, 633 F.3d at 1120 (quoting *Kramer v. Ga*tes, 481 F.3d 788, 792 (D.C. Cir. 2007)).  Plaintiffs sought a Rule 54(b) partial final judgment so that they could appeal this Court's prior FDPA ruling.  Having made that strategic decision and then lost in the Court of Appeals, Johnson now wants to reopen the final judgment on the FDPA claim to

continuously try to relitigate it.  The strong finality interest embodied in Rule 60(b) does not permit this type of litigation tactic.  Finally, "extraordinary circumstances" are especially lacking since Johnson is not entitled to injunctive relief in any event because, as discussed above, he is trying to preserve the option to elect a less humane method of execution, and thus will not be able to show the requisite irreparable harm for injunctive relief.

In sum, there is no basis to reopen the final judgment on the FDPA claim.

## III.   JOHNSON HAS NO RIGHT TO DISCOVER ELECTROCUTION-RELATED INFORMATION

Although the plain language of the FDPA, *Tipton*'s preclusive effect, and the Execution Order are sufficient reasons to deny Johnson's motion to compel, the motion should be denied for additional reasons as well.  Even under Johnson's view of the FDPA's applicability, he has identified no statutory violation given that he has not attempted to elect electrocution.  And even were Johnson correct regarding the FDPA's applicability, Johnson may not use discovery as a mechanism to gather information that he may desire in deciding whether to invoke an asserted statutory right, as opposed to asserting a claim or defense in litigation.  Indeed, the FDPA provides Johnson with no such right to information, nor is Johnson entitled to the information under the Constitution, as the Court has already held.

### A. Johnson's Discovery Requests Are Not Ripe And in Any Event Are Irrelevant to a Claim or Defense in This Litigation

The requested information is irrelevant because Johnson has not yet attempted to choose electrocution as the method of execution.  In the absence of such a request, Johnson has not "asserted a present denial of a desired state procedure," and thus his contentions would be "insufficient to establish a statutory violation of the" FDPA, even if the FDPA applied to him.  *In re Federal Bureau of Prisons' Execution Protocol Cases*, 980 F.3d 123, 138 (D.C. Cir. 2020).  Tellingly, Johnson has never suggested that he would in fact choose electrocution even if all the information he has demanded were provided to his satisfaction.

Johnson indicates that he seeks information to help him decide whether to choose electrocution, Mot. to Compel at 7–8, but that is an improper use of discovery. As discussed above, the purpose of Rule 26(b) discovery is to obtain information "regarding any nonprivileged matter that is *relevant to any party's claim or defense*." (Emphasis added). Although relevance is liberally construed, the relevance standard is "not so liberal as to allow a party to roam in shadow zones of relevancy and to explore matter which does not presently appear germane on the theory that it might conceivably become so." *Food Lion, Inc. v. United Food and Commercial Workers International Union*, 103 F.3d 1007, 1012 (D.C. Cir. 1997) (internal quotation marks and citation omitted); *accord St. John v. Napolitano*, 274 F.R.D. 12, 15–16 (D.D.C. 2011). Johnson cites no authority, and in fact there is none, suggesting that a party may use discovery as a general mechanism for gathering information he desires in deciding whether to invoke an asserted statutory rights, as opposed to asserting a claim or defense in litigation.

Moreover, the FDPA does not itself provide a person sentenced under the FDPA with any right to information that will help him make any election to which he may be entitled under the FDPA. Nor does a condemned inmate have any constitutional right to such information. As the Court has already acknowledged in dismissing Plaintiffs' Due Process claim, "[c]ourts have routinely found no due process rights implicated when a death row inmate claims he has not received enough information about an execution protocol." ECF No. 261, Mem. Op. at 11. The numerous cases cited by this Court further reflect that no such right exists under other constitutional provisions either. *See id.*; *see, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 354 (1996) (no violation of inmate's constitutional right of access to the courts; explaining that the state need not "enable [a] prisoner to *discover* grievances, and to *litigate effectively* once in court"). Given that Johnson has no right to use discovery to help him choose between electrocution and lethal injection, he has no basis to compel the disclosure of information concerning the government's potential use of an electric chair. For that reason too, the Court should deny Johnson's motion to compel.

Johnson also contends that the requested discovery would help him meet his burden of proving a feasible alternative to the government's lethal injection protocol in support of his Eighth Amendment challenge to that protocol. Mot. to Compel at 8. But Johnson has never pleaded nor argued that electrocution is a feasible alternative to lethal injection. That is unsurprising given the above-discussed authorities recognizing that lethal injection is the more humane method of the two. Moreover, Johnson will have no occasion to present such an argument prior to his scheduled execution. This Court ordered Johnson to file any motion for injunctive relief on his Eighth Amendment claim (or any other claim) weeks ago—on or before December 4, 2020. ECF No. 333, Order at 2. Johnson did not do so, even though he was notified on November 20, 2020 that he would be executed by lethal injection. *See* Ex. B. Nor did he timely seek a modification of the Court's scheduling order, let alone attempt to show that extraordinary circumstances, as required by this Court, exist for such modification. *Id.* Johnson has therefore forfeited his option to seek relief on his Eighth Amendment claim prior to his scheduled execution. His related motion to compel should be denied on this basis as well.

### B. Johnson's Remaining Arguments Provide No Basis to Compel Discovery

Johnson also takes issue with the government's assertion of privileges and its invocation of the protective order. Mot. to Compel at 12–14. With respect to the privileges, Johnson argues that such privileges do not provide blanket protection and that the Court should "grant the motion to compel to the extent the information requested is not privileged." *Id.* at 12–13. Thus, Johnson does not appear to dispute the government's invocation of privileges nor does he seek to compel disclosure of any records subject to a claim of privilege. In the event that the Court were to overrule Defendants' relevance objection, Defendants would provide a privilege log describing the nature of any materials withheld solely on the basis of privilege. *See* Fed. R. Civ. P. 26(b)(5)(A).

As for the protective order, Johnson's motion offers assurances that he does not seek personally identifying information and would accept generic identifiers for certain persons as well

as only their credential or title. Mot. to Compel. at 13. If required to produce information that identifies persons protected by the protective order, Defendants would disclose only the information required by that protective order, which Johnson does not appear to contest. Accordingly, there seems to be no disagreement between the parties on this point.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny Johnson's motions for relief from the FDPA final judgment and to compel the disclosure of information concerning electrocution.

Dated: December 21, 2020

Respectfully submitted,

JEFFREY BOSSERT CLARK
Acting Assistant Attorney General

JEAN LIN
Special Litigation Counsel

JONATHAN KOSSAK, D.C. Bar #991478
CRISTEN C. HANDLEY, MO Bar #69114
BRADLEY P. HUMPHREYS,
   D.C. Bar #988057
Trial Attorneys
Federal Programs Branch
Civil Division, Department of Justice
1100 L Street, N.W.
Washington, District of Columbia 20005
(202) 514-3716
jean.lin@usdoj.gov
jonathan.kossak@usdoj.gov
christen.handley@usdoj.gov
bradley.humphreys@usdoj.gov

MICHAEL R. SHERWIN
Acting United States Attorney

DANIEL F. VAN HORN, D.C. Bar #924092
Chief, Civil Division

By:  /s/ Johnny Walker
JOHNNY H. WALKER, D.C. Bar #991325
Assistant United States Attorney
555 4th Street, N.W.
Washington, District of Columbia 20530
Telephone: 202 252 2575
Email: johnny.walker@usdoj.gov

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on December 21, 2020, I caused a true and correct copy of foregoing to be served on all following counsel of record via the Court's CM/ECF system.

Joshua C. Toll
King & Spalding LLP
(202) 737-8616
jtoll@kslaw.com

Margaret O'Donnell
(502) 320-1837
mod@dcr.net

*Counsel for Plaintiff Anthony Battle*

Ginger D. Anders
Jonathan S. Meltzer
Brendan Gants
Munger, Tolles & Olson LLP
(202) 220-1100
ginger.anders@mto.com

*Counsel for Plaintiff Brandon Bernard*

Alex Kursman
Shawn Nolan
Federal Community Defender Office,
E.D. Pa.
(215) 928-0520
alex_kursman@fd.org
shawn_nolan@fd.org

*Counsel for Plaintiff Alfred Bourgeois*

Scott W. Braden
Arkansas Federal Defender Office
(501) 324-6114
Scott_Braden@fd.org

Jennifer Ying
Andrew Moshos
Morris, Nichols, Arsht & Tunnell LLP
(302) 658-9300
jying@mnat.com
amoshos@mnat.com

*Counsel for Plaintiff Norris G. Holder, Jr.*

Joseph Luby
Federal Community Defender Office,
E.D. Pa.
(215) 928-0520
joseph_luby@fd.org

*Counsel for Plaintiff Chadrick Fulks*

Amy Lentz
Steptoe & Johnson, LLP
(202) 429.1320
alentz@stepoe.com

*Counsel for Plaintiff Orlando Hall*

Shawn Nolan
Federal Community Defender Office,
E.D. Pa.
(215) 928-0520
shawn_nolan@fd.org

*Counsel for Plaintiff Dustin Higgs*

Jon Jeffress
KaiserDillon PLLC
(202) 640-2850
jjeffress@kaiserdillon.com

Timothy Kane
Shawn Nolan
Federal Community Defender Office,
E.D. Pa.
(215) 928-0520
timothy_kane@fd.org
shawn_nolan@fd.org

*Counsel for Plaintiff Dustin Lee Honken*

David S. Victorson
Hogan Lovells US LLP
(202) 637-5600
david.victorson@hoganlovells.com

Pieter Van Tol
Hogan Lovells US LLP
(212) 918-3000
pieter.vantol@hoganlovells.com

*Counsel for Plaintiff Daniel Lewis Lee*

Gregory S. Smith
(202) 460-3381
gregsmithlaw@verizon.net

*Counsel for Plaintiff William LeCroy*

Donald P. Salzman
Charles F. Walker
Steven M. Albertson
Skadden, Arps, Slate, Meagher & Flom
LLP
(202) 371-7983
donald.salzman@skadden.com

*Counsel for Plaintiff Corey Johnson*

Shawn Nolan
Federal Community Defender Office,
E.D. Pa.
(215) 928-0528
shawn_nolan@fd.org

Gary E. Proctor
Law Offices of Gary E. Proctor, LLC
(410) 444-1500
garyeproctor@gmail.com

*Counsel for Plaintiff Jeffrey Paul*

Gerald W. King, Jr.
Jeffrey Lyn Ertel
Federal Defender Program, Inc.
(404) 688-7530
Gerald_King@fd.org
Jeff_Ertel@fd.org

Brandon D. Almond
Troutman Sanders LLP
Washington, D.C. 20004
(202) 274-2864
brandon.almond@troutmansanders.com

*Counsel for Richard Tipton, III*


Dale A. Baich
Jennifer M. Moreno
Federal Public Defender
District of Arizona
(602) 382-2816
dale_baich@fd.org
jennifer_moreno@fd.org

*Counsel for Plaintiff Keith Nelson*


Paul F. Enzinna
Ellerman Enzinna PLLC
(202)753-5553
penzinna@ellermanenzinna.com

*Counsel for Plaintiff James H. Roane, Jr.*


Alan E. Schoenfeld
Ryan M. Chabot
Wilmer Cutler Pickering Hale and Dorr
LLP
(212) 230-8880
Alan.Schoenfeld@WilmerHale.com
Ryan.Chabot@WilmerHale.com

Andres C. Salinas
Wilmer Cutler Pickering Hale and Dorr
LLP
 (202) 663-6289
Andres.Salinas@WilmerHale.com

*Counsel for Wesley I. Purkey*


Amy Karlin
Interim Federal Public Defender
Celeste Bacchi
Jonathan C. Aminoff
Deputy Federal Public Defenders
(213) 894-2854
celeste_bacchi@fd.org

*Counsel for Plaintiff Julius O. Robinson*


Evan Miller
Vinson & Elkins LLP
(202) 639-6605
emiller@velaw.com

*Counsel for Bruce Webster*


 */s/Johnny Walker*         
Assistant United States Attorney

*Counsel for Defendants*

# Exhibit A

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

NOV 17 2005

CLERK, U.S. DISTRICT COURT
RICHMOND, VA

UNITED STATES OF AMERICA )
)
v. ) CASE NO. 3:92CR68
)
RICHARD TIPTON )
CORY JOHNSON )
JAMES H. ROANE, JR. )

## ORDER

The matter is before the Court on the motion of the United States to vacate the stays of

execution previously entered by the Court and to vacate the Orders entered November 22, 1996

which set the time place and method of the execution of Tipton, Johnson, and Roane.   Upon

review of the parties' submissions, it is Ordered that the motion of United States is GRANTED.

The Orders entered November 22, 1996 (Docket Entries #653, 654 & 655) are VACATED.

Contemporaneous with the entry of the present Order, the Court shall issue execution orders in

accordance with the prior requests of the United States and 28 C.F.R. § 26.2.  Furthermore,

because there are no substantial grounds upon which relief could be granted, the Order entered

February 21, 1997 (Docket Entry # 657), which stayed the executions of Tipton, Johnson, and

Roane, is VACATED.

The Clerk is directed to mail a copy of this Order and the Execution Orders to counsel of

record.

It is so ORDERED.

_James R. Spencer_
United States District Judge

Richmond, Virginia

Date: _November 17, 2005_

A TRUE COPY, TESTE:
CLERK, U.S. DISTRICT COURT

BY _Kudak McDonald_
DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

```
NOV 1 7 2005
CLERK, U.S. DISTRICT COURT
RICHMOND, VA
```

UNITED STATES OF AMERICA            )
                                    )
v.                                  )            CASE NO. 3:92CR68-02
                                    )
CORY JOHNSON                        )

### ORDER

Pursuant to the imposition of the sentence of death that was handed down by the jury on

February 16, 1993, is hereby ORDERED that:

1.  The sentence of death shall be executed by a United States Marshal designated
    by the Director of the United States Marshals Service;

2.  The sentence shall be executed by intravenous injection of a lethal substance or
    substances in a quantity sufficient to cause death;

3.  The sentence shall be executed on a date and at a place designated by the Director
    of the Federal Bureau of Prisons;

4.  Cory Johnson shall be committed to the custody of the Attorney General or his
    authorized representative for appropriate detention pending execution of the
    sentence;

5.  The United States Marshal designated by the Director of the United States
    Marshal's Service to carry out the sentence of death shall promptly return to this
    Court the appended document to inform this Court that the sentence of death has
    been executed.

_____
United States District Judge

Richmond, Virginia
Date: November 17, 2005

### A TRUE COPY, TESTE:
### CLERK, U.S. DISTRICT COURT

BY _____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CASE NO. 3:92CR68-02 |
| | ) | |
| CORY JOHNSON | ) | |

**RETURN**

COMES NOW the United States Marshal's Service, by its designated representative, and

notifies this Court that on _____, prisoner Cory Johnson was executed

by lethal injection pursuant to the Court's Order which previously had been entered.


_____
United States Marshal


Date:_____

# Exhibit B



**U.S. Department of Justice**
Federal Bureau of Prisons

*Federal Correctional Complex*
*Terre Haute, Indiana*

November 20, 2020

Mr. Cory Johnson
Reg. No. 27832-054
Special Confinement Unit
United States Penitentiary
Terre Haute, Indiana 47802

Dear Mr. Johnson:

The purpose of this letter is to inform you that a date has been set for the implementation of your death sentence, pursuant to the Judgment and Order issued on June 1, 1993, by Judge James R. Spencer of the United States District Court for the Eastern District of Virginia.  This letter will serve as official notification that pursuant to Title 28, Code of Federal Regulations, Section 26.3(a)(1), the Director of the Federal Bureau of Prisons has set January 14, 2021, as the date for your execution by lethal injection.

Under Title 28, Code of Federal Regulations, Sections 1.1 and 1.10, if you wish to seek commutation of sentence or reprieve from the President, petitions may be emailed directly to the DOJ Pardon Attorney at USPARDON.Attorney@usdoj.gov.  If email is not available, petitions may be mailed to the Office of the Pardon Attorney, U.S. Department of Justice, 950 Pennsylvania Avenue, RFK Main Justice Building, Washington, D.C. 20530.  The Office of the Pardon Attorney is responsible for receiving and processing on behalf of the President all requests for clemency.  If you wish to apply for commutation of sentence your petition must be filed within 30 days of the date you receive this notice.

Soon, I will come to your housing unit to personally discuss with you many of the details surrounding the execution.  At that time, I will be available to answer any questions you may have regarding the execution process.

Sincerely,

T.J. Watson
Complex Warden

cc:   The Honorable David J. Novak, Judge, United States District Court
        (E.D. Virginia)
        Mr. Fernando Galindo, Clerk of the Court (E.D. Virginia)
        Mr. G. Zachary Terwilliger, United States Attorney (E.D. Virginia)
        Mr. Joseph Attias, Assistant United States Attorney (E.D. Virginia)
        Mr. Donald P. Salzman
        Mr. David Carney
        Mr. Josh Minkler, United States Attorney (S.D. Indiana)
        Mr. Joseph "Dan" McClain, U.S. Marshal (S.D. Indiana)

Exhibit C

AO 245B    (Rev. 12/03) Judgment in a Criminal Case
           Sheet 1

# United States District Court

## NORTHERN DISTRICT OF IOWA

| UNITED STATES OF AMERICA | JUDGMENT IN A CRIMINAL CASE |
|---|---|
| V. | |
| DUSTIN LEE HONKEN | Case Number:    CR01-3047-001-MWB |
| | USM Number:    06951-029 |

Alfredo Parrish, Leon Spies and Charles Rodgers
Defendant's Attorney

## THE DEFENDANT:

☐ pleaded guilty to count(s) _____

☐ pleaded nolo contendere to count(s) _____
  which was accepted by the court.

■ was found guilty on count(s)    **1 through 17 of the Superseding Indictment**
  after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 U.S.C. §§ 1512(a)(1)(A) & (C), 1513(a)(1)(A) & (B) & 1111 | Witness Tampering | 07/25/1993 | 1 |
| 18 U.S.C. §§ 1512(a)(1)(C), 1512(a)(2)(A) & 1111 | Witness Tampering | 07/25/1993 | 2 |
| 18 U.S.C. §§ 1512(a)(1)(C), 1512(a)(2)(A) & 1111 | Witness Tampering | 07/25/1993 | 3 |
| 18 U.S.C. §§ 1512(a)(1)(C), 1512(a)(2)(A) & 1111 | Witness Tampering | 07/25/1993 | 4 |

The defendant is sentenced as provided in pages 2 through ___6___ of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐  The defendant has been found not guilty on count(s) _____

☐  Count(s) _____ ☐ is ☐ are dismissed on the motion of the United States.

IT IS ORDERED that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material change in economic circumstances.

October 11, 2005
Date of Imposition of Judgment

_Mark W. Bennett_
Signature of Judicial Officer

**Mark W. Bennett**
**Chief U.S. District Court Judge**
Name and Title of Judicial Officer

10/11/05
Date

—

AO 245B   (Rev. 12/03) Judgment in Criminal Case
         Sheet 1(a) — Imprisonment

Judgment — Page ___1(a)___ of ___6___

**DEFENDANT:**       **DUSTIN LEE HONKEN**
**CASE NUMBER:**    **CR01-3047-001-MWB**

## ADDITIONAL COUNTS OF CONVICTION

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 U.S.C. §§ 1512(a)(1)(C), 1512(a)(2)(A) & 1111 | Witness Tampering | 11/05/1993 | 5 |
| 18 U.S.C. §§ 373(a)(1) & 2 | Soliciting the Murder of a Witness | 02/24/1998 | 6 |
| 18 U.S.C. § 371 | Conspiracy to Tamper with Witnesses and to Solicit the Murder of Witnesses | 01/01/2000 | 7 |
| 21 U.S.C. § 848(e)(1)(A), 18 U.S.C. § 2 | Conspiracy to Commit Murder While Engaging in the Manufacture and Distribution of Methamphetamine | 07/25/1993 | 8 |
| 21 U.S.C. § 848(e)(1)(A), 18 U.S.C. § 2 | Conspiracy to Commit Murder While Engaging in the Manufacture and Distribution of Methamphetamine | 07/25/1993 | 9 |
| 21 U.S.C. § 848(e)(1)(A), 18 U.S.C. § 2 | Conspiracy to Commit Murder While Engaging in the Manufacture and Distribution of Methamphetamine | 07/25/1993 | 12 |
| 21 U.S.C. § 848(e)(1)(A), 18 U.S.C. § 2 | Conspiracy to Commit Murder While Engaging in the Manufacture and Distribution of Methamphetamine | 07/25/1993 | 10 |
| 21 U.S.C. § 848(e)(1)(A), 18 U.S.C. § 2 | Conspiracy to Commit Murder While Engaging in the Manufacture and Distribution of Methamphetamine | 07/25/1993 | 11 |
| 21 U.S.C. § 848(e)(1)(A), 18 U.S.C. § 371 | Continuing Criminal Enterprise Murder | 07/25/1993 | 13 |
| 21 U.S.C. § 848(e)(1)(A), 18 U.S.C. § 371 | Continuing Criminal Enterprise Murder | 07/25/1993 | 14 |
| 21 U.S.C. § 848(e)(1)(A), 18 U.S.C. § 371 | Continuing Criminal Enterprise Murder | 11/05/1993 | 17 |
| 21 U.S.C. § 848(e)(1)(A), 18 U.S.C. § 371 | Continuing Criminal Enterprise Murder | 07/25/1993 | 15 |
| 21 U.S.C. § 848(e)(1)(A), 18 U.S.C. § 371 | Continuing Criminal Enterprise Murder | 07/25/1993 | 16 |

AO 245B    (Rev. 12/03) Judgment in Criminal Case
Sheet 2 — Imprisonment

Judgment — Page ___2___ of ___6___

DEFENDANT:    **DUSTIN LEE HONKEN**
CASE NUMBER:    **CR01-3047-001-MWB**

# IMPRISONMENT

■    The defendant is hereby sentenced to: **Death on Counts 10, 11, 15 and 16.**
**Furthermore the defendant is committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of: Life.
This is term consists of Life on Counts 1, 2, 3, 4, 5, 8, 9, 12, 13, 14 and 17; 20 years on Count 6; 5 years on Count 7, all
counts to be served concurrently.**

**Pursuant to 18 U.S.C. § 3596, you are committed to the custody of the Bureau of Prisons until exhaustion of the
procedures for appeal of the judgment of conviction and review of sentence. When the sentence is to be implemented,
the Attorney General shall release the defendant to the custody of a United States Marshal, who shall supervise
implementation of the sentence in the manner prescribed by the law of the State of Indiana.**

☐    The court makes the following recommendations to the Bureau of Prisons:

■    The defendant is remanded to the custody of the United States Marshal.

☐    The defendant shall surrender to the United States Marshal for this district:

    ☐    at _____ ☐ a.m. ☐ p.m.    on _____ .

    ☐    as notified by the United States Marshal.

☐    The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

    ☐    before 2 p.m. on _____ .

    ☐    as notified by the United States Marshal.

    ☐    as notified by the Probation or Pretrial Services Office.

# RETURN

I have executed this judgment as follows:

_____

_____

_____

Defendant delivered on _____ to _____

at _____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

AO 245B  (Rev. 12/03) Judgment in a Criminal Case
Sheet 3 — Supervised Release

Judgment—Page __3__ of __6__

DEFENDANT:       **DUSTIN LEE HONKEN**
CASE NUMBER:     **CR01-3047-001-MWB**

# SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of: **3 years on each count, to be served concurrently**.

The defendant must report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state or local crime.

The defendant shall not unlawfully possess a controlled substance. The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.

☐  The above drug testing condition is suspended, based on the court's determination that the defendant poses a low risk of future substance abuse. (Check, if applicable.)

■  The defendant shall not possess a firearm, ammunition, destructive device, or any other dangerous weapon. (Check, if applicable.)

■  The defendant shall cooperate in the collection of DNA as directed by the probation officer. (Check, if applicable.)

☐  The defendant shall register with the state sex offender registration agency in the state where the defendant resides, works, or is a student, as directed by the probation officer. (Check, if applicable.)

☐  The defendant shall participate in an approved program for domestic violence. (Check, if applicable.)

If this judgment imposes a fine or restitution, it is a condition of supervised release that the defendant pay in accordance with the Schedule of Payments sheet of this judgment.

The defendant must comply with the standard conditions that have been adopted by this court as well as with any additional conditions on the attached page.

## STANDARD CONDITIONS OF SUPERVISION

1)  the defendant shall not leave the judicial district without the permission of the court or probation officer;

2)  the defendant shall report to the probation officer and shall submit a truthful and complete written report within the first five days of each month;

3)  the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;

4)  the defendant shall support his or her dependents and meet other family responsibilities;

5)  the defendant shall work regularly at a lawful occupation, unless excused by the probation officer for schooling, training, or other acceptable reasons;

6)  the defendant shall notify the probation officer at least ten days prior to any change in residence or employment;

7)  the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician;

8)  the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;

9)  the defendant shall not associate with any persons engaged in criminal activity and shall not associate with any person convicted of a felony, unless granted permission to do so by the probation officer;

10)  the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;

11)  the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;

12)  the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court; and

13)  as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

AO 245B    (Rev. 12/03) Judgment in a Criminal Case
           Sheet 3C — Supervised Release

Judgment—Page ____4____ of ____6____

DEFENDANT:        **DUSTIN LEE HONKEN**
CASE NUMBER:      **CR01-3047-001-MWB**

## SPECIAL CONDITIONS OF SUPERVISION

Not applicable

AO 245B    (Rev. 12/03) Judgment in a Criminal Case
          Sheet 5 — Criminal Monetary Penalties

| | Judgment — Page 5 of 6 |
|---|---|

DEFENDANT:       **DUSTIN LEE HONKEN**
CASE NUMBER:     **CR01-3047-001-MWB**

## CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

|  | **Assessment** | **Fine** | **Restitution** |
|---|---|---|---|
| **TOTALS** | $ 1,700 | $ 0 | $ 75,942.67 |

☐   The determination of restitution is deferred until _____. An *Amended Judgment in a Criminal Case* (AO 245C) will be entered after such determination.

■   The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| **Name of Payee** | **Total Loss*** | **Restitution Ordered** | **Priority or Percentage** |
|---|---|---|---|
| Amber Duncan Estate | | $7,941.98 | 1 |
| Candice Duncan Estate | | $6,031.99 | 1 |
| Gregory Nicholson Estate | | $10,429.60 | 1 |
| Lori Duncan Estate | | $13,553.00 | 1 |
| Terry DeGeus Estate | | $16,869.48 | 1 |
| Brenda DeGeus | | $1,366.40 | 2 |
| Brian DeGeus | | $800.00 | 2 |
| Wendy Jensen | | $248.00 | 2 |
| Roada Francis | | $397.76 | 2 |
| Federal Crime Victim Fund | | $6,305.28 | 3 |
| Globe Life and Accident Insurance Company | | $12,000.00 | 4 |

| **TOTALS** | $ _____ | $ 75,942.67 | |

☐   Restitution amount ordered pursuant to plea agreement   $ _____

☐   The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

■   The court determined that the defendant does not have the ability to pay interest, and it is ordered that:

   ■   the interest requirement is waived for the   ☐   fine   ■   restitution.

   ☐   the interest requirement for the   ☐   fine   ☐   restitution is modified as follows:

* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18, United States Code, for offenses committed on or after September 13, 1994, but before April 23, 1996.

AO 245B    (Rev. 12/03) Judgment in a Criminal Case
Sheet 6 — Criminal Monetary Penalties

| | |
|---|---|
| DEFENDANT: | **DUSTIN LEE HONKEN** |
| CASE NUMBER: | **CR01-3047-001-MWB** |

Judgment — Page __6__ of __6__

## SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties are due as follows:

**A**    ☐    Lump sum payment of $ _____ due immediately, balance due

    ☐    not later than _____ , or
    ☐    in accordance with    ☐ C,  ☐ D,  ☐ E,  or  ☐ F below; or

**B**    ■    Payment to begin immediately (may be combined with    ☐ C,    ☐ D, or    ■ F below); or

**C**    ☐    Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after the date of this judgment; or

**D**    ☐    Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after release from imprisonment to a term of supervision; or

**E**    ☐    Payment during the term of supervised release will commence within _____ (e.g., 30 or 60 days) after release from imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

**F**    ■    Special instructions regarding the payment of criminal monetary penalties:

    **While incarcerated, you shall make monthly payments in accordance with the Bureau of Prison's Financial Responsibility Program. The amount of the monthly payments shall not exceed 50% of the funds available to you through institution or non-institution (community) resources and shall be at least $25 per quarter.**

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐    Joint and Several

    Defendant and Co-Defendant Names and Case Numbers (including defendant number), Total Amount, Joint and Several Amount, and corresponding payee, if appropriate.

☐    The defendant shall pay the cost of prosecution.

☐    The defendant shall pay the following court cost(s):

☐    The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) penalties, and (8) costs, including cost of prosecution and court costs.