## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**In the Matter of the**
**Federal Bureau of Prisons' Execution**     :
**Protocol Cases,**

                                 :

**Lead Case: *Roane et al. v. Barr***             **Case No. 19-mc-00145 (TSC)**

                                 :

**THIS DOCUMENT RELATES TO:**        :

*James H. Roane, Jr. et al. v. William Barr,*    :
**Case No. 05-2337**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### COMBINED REPLY MEMORANDUM IN SUPPORT OF PLAINTIFF COREY
### JOHNSON'S MOTIONS TO COMPEL AND FOR RELIEF FROM FINAL JUDGMENT

Plaintiff Corey Johnson's motions to compel, ECF No. 363, and for relief from final

judgment, ECF No. 364, demonstrate how Defendants led both the Court and Plaintiff to believe

that they would comply with a Virginia statute allowing prisoners to elect their method of

execution, Va. Code Ann. § 53.1-234, but have now directly changed course and taken the position

that they do not have to comply with the statute with respect to Plaintiff.  Presented with this

inexplicable contradiction, Defendants' opposition brief ("Opp.") engages in rhetorical sleight of

hand, doubling down on Defendants' prior misdirection and highlighting their sudden change of

position.

Indeed, Defendants argue that the plain language of the Federal Death Penalty Act

("FDPA"), must apply to Plaintiff's death sentence, even though his sentence was handed down

prior to its passage.  At the same time, Defendants deny the plain language of their own past

statements, in which they stated the FDPA applied to prisoners sentenced under the Anti-Drug

Abuse Act of 1986 ("ADAA"), like Plaintiff.  Defendants attempt to parse their previous

representations with a fine-toothed comb, arguing that their prior statements applied only to other Plaintiffs in this litigation or to hypothetical future intervenors.  Such evasive maneuvers should not be countenanced.

With respect to Plaintiff's motion for relief from final judgment under Rule 60(b) of the Federal Rules of Civil Procedure, Defendants apply the incorrect standard to Plaintiff's judicial estoppel arguments, erroneously claiming that they are subject to a higher standard under equitable estoppel—a different legal theory.  And in any event, while Defendants argue that Plaintiff Johnson should have sought relief sooner, this argument merely underscores the unfairness of Defendants' dramatic about-face in this matter, which has understandably surprised Plaintiff and caused him to rely on Defendants' prior position to his detriment.  With respect to Plaintiff's motion to compel, Defendants twist Plaintiff's relevance arguments, confusing the claims, and thus the rationale, behind the discovery sought.

What remains clear, though, is that this Court previously held that the FDPA applies to a plaintiff—Dustin Honken—who was sentenced under the ADAA, just like Plaintiff Johnson. The United States Court of Appeals for the D.C. Circuit previously held that the FDPA requires that Defendants, at the very least, comply with state statutes setting the top-line method of execution, like Va. Code Ann. § 53.1-234.  And this Court granted, and the D.C. Circuit affirmed, summary judgment to Defendants based in part on their representation that they would comply with the Virginia statute.  Defendants' attempt to now take the opposite position to prevent Plaintiff from seeking discovery to which he is entitled should be denied and should cause this Court to revive Plaintiff's FDPA claim.  Accordingly, Plaintiff respectfully requests that this Court grant both motions.

2

## I.       The FDPA Is Applicable to Plaintiff

As explained in Plaintiff's opening briefs, *see* ECF No. 363 at 9-11; ECF No. 364 at 6-9, this Court has stated, and Defendants have argued, that the FDPA applies "to all federal death-eligible offenses."  *See, e.g.*, ECF No. 50 at 3 (quoting *United States v. Barrett*, 496 F.3d 1079, 1106 (10th Cir. 2007)).  Indeed, Defendants' language on the subject could not have been clearer.  They were not referring to only a subset of Plaintiffs or an unspecified set of circumstances, but rather to Plaintiff's particular circumstance: a "capital sentence[] imposed under the ADAA."  *See* ECF No. 16 at 5-6 n.1 ("The FDPA initially did not govern capital sentences imposed under the ADAA, 21 U.S.C. § 848(e) (1988).  In March 2006 Congress repealed the death penalty provisions of § 848, 'effectively rendering the FDPA applicable to all federal death-eligible offenses.'" (quoting *Barrett*, 496 F.3d at 1106)); *see also* ECF No. 36 at 5 n.1 ("The FDPA did not initially govern death sentences, like Honken's, under the ADAA, 21 U.S.C. § 848(e) (1988).  In 2006, Congress repealed the capital provisions of § 848, 'effectively rendering the FDPA applicable to all federal death-eligible offenses.'" (quoting *Barrett*, 496 F.3d at 1106)); ECF No. 37 at 5 ("In 1994, Congress enacted the FDPA, . . . authorizing capital punishment for some 60 offenses (except the offense under the ADAA, which was separately governed by the ADAA until 2006) . . . .").  In spite of the clarity of these statements, Defendants argue that the plain language of the FDPA and the principles of estoppel prevent the FDPA from applying to Plaintiff, and thus overcome Plaintiff's Rule 60(b) motion and motion to compel.  Opp. at 10-16.  Both arguments miss the mark.

### A.       Defendants' Reliance on the Plain Language of the FDPA Is Misplaced

Defendants first contend that the plain language of the FDPA precludes it from applying to Plaintiff.  *See* Opp. at 10.  This argument is nonsensical, as illustrated by the

background of this case and the relevant statutes. Plaintiff was "sentenced to death in 1993 in the United States District Court for the Eastern District of Virginia" under the ADAA. *See* 05-cv-2337, ECF No. 1 ¶¶ 22, 24. In 1994, Congress passed the FDPA. *See, e.g.*, Opp. at 12 (recognizing the FDPA's enactment in 1994). In 2005, the United States Court of Appeals for the Fourth Circuit held that the ADAA, rather than the FDPA, applied to Plaintiff's sentence. *Id.* at 5 (citing *United States v. Tipton*, 90 F.3d 861, 902-03 (4th Cir. 1996)). In 2006, Congress repealed the death penalty provisions of the ADAA. *See id.* at 6.

Given this history, it is clear that Plaintiff could not have been sentenced under the FDPA, because he was sentenced prior to its existence. Nor could the FDPA's "plain language" be relevant to the analysis of whether it applied to Plaintiff's sentence in light of the repeal of the ADAA, because the FDPA was drafted over a decade before the ADAA was repealed. Plaintiff's argument that the "plain language" of the FDPA governs is clearly misguided; such a "broad[] interpretation, while not afoul of the plain language of the text, would render incoherent the overall statutory scheme." *Tunica-Biloxi Tribe of La. v. United States*, 577 F. Supp. 2d 382, 424 (D.D.C. 2008).[1]

---

[1] This position is further supported by a look at the current regulatory scheme. Assuming, *arguendo*, that the FDPA does not apply to Plaintiff, the Virginia statute would, thus, not be part of the equation. According to Defendants, Plaintiff's method of execution would then be determined by 28 C.F.R. § 26.3(a). Opp. at 2. But Defendants acknowledge that the government is adjusting that regulation to allow for Plaintiff to be executed "by any . . . manner prescribed by the law of the State in which the sentence was imposed." *See* Opp. at 4 n.3 (citing 28 C.F.R. § 26.3(a)). In other words, by Plaintiff's execution date, both the Virginia statute and the federal regulation would allow for Plaintiff to select electrocution. Interpreting the "plain language" of the FDPA to prevent Plaintiff from selecting his method of execution is clearly inconsistent with this scheme.

**B.      Defendants, Not Plaintiff, Should Be Estopped**

Given that Defendants have repeatedly taken the position that the FDPA applies to Plaintiffs in this litigation, judicial estoppel requires that they be prevented from now arguing that the FDPA does not apply to Plaintiff Johnson.  *See* ECF No. 363 at 10-11; *see also* ECF No. 264 at 7.  In their opposition brief, Defendants attempt to flip Plaintiff's argument on its head, claiming that ***Plaintiff*** is the one who somehow should be estopped, albeit collaterally.  Opp. at 10-13.  But this argument lacks merit.

1.      <u>Defendants' Collateral Estoppel Argument Is Without Merit</u>

Defendants argue that Plaintiff should be collaterally estopped from arguing that the FDPA applies to him because he supposedly "unsuccessfully litigated this precise issue in his direct criminal appeal."  Opp. at 10-11.  However, Defendants fail to meet the requirements for collateral estoppel here because Plaintiff neither actually litigated that specific issue nor had a full and fair opportunity to do so.  *See Capitol Servs. Mgmt., Inc. v. Vesta Corp.*, 933 F.3d 784, 794 (D.C. Cir. 2019) ("Specifically, collateral estoppel bars successive litigation of an issue of fact or law when '(1) the issue is actually litigated; (2) determined by a valid, final judgment on the merits; (3) after a full and fair opportunity for litigation by the parties or their privies; and (4) under circumstances where the determination was essential to the judgment, and not merely dictum.'" (quoting *Walker v. FedEx Off. & Print Servs., Inc.*, 123 A.3d 160, 164 (D.C. Cir. 2015))).

Defendants fail to establish the first element of collateral estoppel—whether the issue was actually litigated.  To satisfy the first element, Defendants must show that the same issue was raised both previously and now.  *See, e.g.*, *Friendship Edison Pub. Charter Sch. Chamberlain Campus v. Suggs*, 562 F. Supp. 2d 141, 150 (D.D.C. 2008) (rejecting collateral estoppel argument where the "real issue" was other than that identified by the litigant).  In this case, Defendants argue

that Plaintiff litigated "the issue of 18 U.S.C. § 3596(a)'s applicability to him" before the Fourth Circuit in 2005.  Opp. at 10-11 (citing *United States v. Tipton*, 90 F.3d 861, 902 (4th Cir. 1996)).  But, contrary to Defendants' assertion—and as they tacitly acknowledge—the "real issue" is the impact of the repeal of "the death penalty sentencing provisions under which Johnson was sentenced."  *See* Opp. at 11.  That repeal did not occur until ***2006***, well ***after*** Plaintiff's Fourth Circuit appeal.  By definition then, collateral estoppel cannot apply here because the "real issue" was never litigated.

Furthermore, because Defendants have failed to establish the first element, they also fail to establish the third element—a full and fair opportunity to litigate.  *See Klayman v. Barmak*, 602 F. Supp. 2d 110, 117 (D.D.C. 2009) ("Because the issues in the two cases are not identical . . . the issue in this case was not fully litigated in the prior case . . . .").  As Defendants have failed to prove two elements of collateral estoppel, "[a]n assessment of the remaining elements of issue preclusion is, therefore, not necessary."  *Lans v. Adduci Mastriani & Schaumberg L.L.P.*, 786 F. Supp. 2d 240, 312 (D.D.C. 2011).

In spite of the fact that Plaintiff did not previously litigate the impact of the repeal of the ADAA, Defendants put forth several arguments as to why Plaintiff should nonetheless be collaterally estopped from litigating it now.  Opp. at 11-12.  All of these arguments fail.  First, Defendants argue that Congress's 2006 repeal of the ADAA's provisions is "irrelevant."  *Id.* at 11.  But as the repeal occurred after the 2005 decision in *Tipton*, on which Defendants rely, it could not have been "'actually . . . determined' and may be relitigated here."  *See Yanping Chen v. FBI*, 435 F Supp. 3d 189, 195 (D.D.C. 2020) (citation omitted) (finding even where the issue was litigated, failure for it to be decided by the court did not preclude it from being litigated again).

6

Second, Defendants falsely assert that "[e]very court of appeals to consider the issue has held that the FDPA does not apply to pre-1994 ADAA sentences even post-2006." Opp. at 12 (citing *Barrett*, 496 F.3d at 1106, and *United States v. Stitt*, 552 F.3d 345, 353 (4th Cir. 2008)).[2]   Neither case that Defendants cite involved a pre-1994 ADAA sentence.   As the Tenth Circuit explained, "at the time Barrett was indicted and tried, there were two separate, though substantially similar, federal schemes in place for imposition of the death penalty." *Barrett*, 496 F.3d at 1106.   Similarly, "Stitt was initially sentenced to death in 1998," four years after the FDPA was enacted.   *See Stitt*, 552 F.3d at 352.   Moreover, finding that the FDPA does not apply to prisoners who were sentenced after its passage is a different analysis than the question posed here by a pre-FDPA sentence as those sentenced then could be sentenced under either.   By contrast, Plaintiff could have only been sentenced under the ADAA.

Third, Defendants argue that Plaintiff "acknowledged" that the FDPA could not apply to him because he did not "mention" the FDPA in his amended complaint in the prior civil litigation, which was "filed four months after the repeal."   Opp. at 12.[3]   But Plaintiff's past complaints—about previous protocols—are not at issue here.   Rather, Plaintiff's current Amended Complaint is the subject of this dispute, and the Amended Complaint alleges that the FDPA applies

---

[2] Other courts have found that the FDPA is capable of replacing repealed portions of the ADAA. *See generally United States v. Hager*, 530 F. Supp. 2d 778 (E.D. Va. 2008) (finding that Sections 3953(a), (b), (d), and (e) of the FDPA applied to defendant's sentence alongside Sections 848(e), (l), (m), (n) and (o) of the ADAA).

[3] It should be noted that Plaintiff was represented by different counsel when this complaint was filed.

to Plaintiff, including Section 53.1-234 of the Virginia Code.  *See, e.g.*, ECF No. 92 ¶ 60, Appendix A at 4-5.[4]

Fourth, Defendants put forward a series of arguments that address whether collaterally estopping Plaintiff would be "unfair to [him]."  Opp. at 12.  These arguments are entirely without merit.  For example, Defendants assert that "Johnson makes no attempt to meet his 'burden'" on the issue.  *Id.*  But Plaintiff has had no chance to meet this supposed burden because Defendants only raised it for the first time in their opposition brief.[5]  Similarly, Defendants' claim that "there has been no intervening change in law or fact that is material to the issue" is ludicrous.  *Id.*  But in 2006 Congress repealed the statute under which Plaintiff was sentenced, well after the issuance of Plaintiff's Execution Order on November 17, 2005.  Furthermore, Defendants have changed the lethal injection protocol multiple times since then.  As such, there have been both intervening changes in law and fact.  *See Bowyer v. Dist. of Columbia*, 779 F. Supp. 2d 159, 165 (D.D.C. 2011) (reinstating claims under Rule 60(b)(6) due to "intervening changes in law").  Defendants also claim that "Johnson has never attempted to select electrocution as his method of execution."  Opp. at 12.  However, as noted in Plaintiff's opening

---

[4] Defendants also assert that "Johnson changed his position 14 years later," implying that Plaintiff was delinquent in waiting that long to amend his complaint.  Opp. at 12.  But Plaintiff diligently prosecuted his case until 2011, when the government ran out of the drugs it intended to use in its previous lethal injection protocol.  *See* ECF No. 92 ¶ 52.  It was the government that took eight years to implement a new protocol.  *See, e.g.*, 05-cv-2337, ECF No. 385 (providing notice of revised protocol).  If any delay has occurred with respect to this issue, it is due to Defendants, who did not confirm until this month that they did not intend to comply with the Virginia statute—six months after the filing of the Amended Complaint and three months after Defendants stated that they would comply with the Virginia statute.

[5] As shown above, Plaintiff did not have a "full and fair opportunity to litigate the issues in the prior proceedings" as the repeal occurred after the prior proceedings.

brief, an argument which Defendants ignore here, Plaintiff is not required to make a selection until fifteen days before his scheduled execution.  *See* ECF No. 363 at 11 n.5.[6]  As such, Defendants have failed to establish any element of collateral estoppel, and their argument should be rejected.

2.   Defendants Should Be Judicially Estopped

In fact, it is Defendants who should be estopped in this case, because, as Plaintiff has shown, Defendants are the ones who have taken an inconsistent position in this case.  *See* ECF No. 363 at 10-11; ECF No. 364 at 7.  This Court has already decided the issue at hand: "Plaintiffs' cases are governed by the FDPA because when the death penalty portions of the ADAA were repealed in 2006, the FDPA was 'effectively render[ed] . . . applicable to all federal death-eligible offenses.'"  ECF No. 50 at 3.  To get around this unambiguous statement by the Court, Defendants instead attempt to misconstrue or discount it.  Opp. at 13.  But these attempts must fail.

Contrary to Defendants' assertion, the Court was not merely "describ[ing] the legislative history of the death penalty statutes," Opp. at 13, but rather stating expressly that "Plaintiffs' cases are governed by the FDPA,"  ECF No. 50 at 3.[7]  Defendants then state that "the Court did not analyze or address the narrow circumstance of capital sentences imposed under the ADAA *before* the 2006 repeal."  Opp. at 13.  That simply is not true.  Plaintiff Honken, who was sentenced under the ADAA in 2004, *see, e.g.*, ECF No. 16-1 ¶¶ 4, 27, was one of the Plaintiffs

---

[6] Defendants' argument that electrocution is a "*less* humane method of death" is of no moment. Opp. at 13.  Plaintiff has pled a viable claim that the current lethal injection protocol constitutes an Eighth Amendment violation, and Plaintiff has sought the discovery in question, in part, to potentially establish a feasible alternative that will reduce the risk of severe pain posed by the current protocol.  *See* ECF No. 363 at 8.

[7] Defendants' brief conveniently omits this language.  Opp. at 13.

9

whose preliminary injunction was before the Court at the time it stated that "Plaintiffs' cases are governed by the FDPA."  ECF No. 50 at 1-3.

Defendants also attempt to undercut this Court's opinion by stating that "the quoted portion of the Court's opinion is itself quoted from *Barrett*."  Opp. at 13.  But this ignores the fact that Defendants, while also citing *Barrett*, repeatedly stated that Congress's 2006 repeal made the FDPA applicable to "all federal death-eligible offenses."  ECF No. 16 at 5-6 n.1; ECF No. 36 at 5 n.1.

Indeed, Defendants should be judicially estopped from disputing the FDPA's applicability to Plaintiff because they have previously taken the opposite position.  ECF No. 363 at 10-11; ECF No. 364 at 7.  Defendants argue that Plaintiff has failed to meet the "'exacting' standard" required for estopping the government.  Opp. at 14.  However, all of Defendants' cited cases deal with equitable estoppel rather than judicial estoppel.  *See, e.g.*, *id.* ("A party seeking to apply equitable estoppel against the government . . .").  "'Judicial estoppel,' . . . although otherwise similar to the equitable estoppel rule against inconsistency, does not require proof of privity, reliance, or prejudice."  *Konstantinidis v. Chen*, 626 F.2d 933, 937 (D.C. Cir. 1980).  "The doctrine applies equally against the government as a litigant unless the government can show that 'estoppel would compromise a governmental interest in enforcing the law,' 'the shift in the government's position is "the result of a change in public policy,"' or 'the result of a change in facts essential to the prior judgment.'"  *Cnty. of San Miguel v. Kempthorne*, 587 F. Supp. 2d 64, 73 (D.D.C. 2008) (citations omitted).   None of these exceptions apply here, making Defendants' arguments

regarding equitable estoppel completely inapposite.[8]  As such, the Court should judicially estop Defendants from taking inconsistent positions.

## II.      The Court Should Reinstate Plaintiff's FDPA Claim

Plaintiff previously established that this Court would be justified in granting Plaintiff's Rule 60(b) motion under any of the three Rule 60 provisions argued: 60(b)(1), (3), or (6).  ECF No. 364 at 5-10.  Defendants make almost no attempt to distinguish between the three, and, at multiple points, actually conflate them.  *See* Opp. at 3 ("Rule 60(b)'s stringent 'extraordinary circumstances' standard"); *id.* at 8 ("Ruling 60(b) requires the movant to show 'extraordinary circumstances'" (quoting *Salazar ex rel. Salazar v. Dist. of Columbia*, 633 F.3d 1110, 1116 (D.C. Cir. 2011))); *id.* at 17 (citing *Salazar*, 633 F.3d at 1116).  As Defendants' own case law makes clear, though, the "extraordinary circumstances" standard applies only to Rule 60(b)(6).  *See Salazar*, 633 F.3d at 1116 ("Supreme Court cases have required a movant seeking relief ***under Rule 60(b)(6)*** to show 'extraordinary circumstances.'" (emphasis added) (citations omitted)).

As to the actual merits of the argument, the surprise under Rule 60(b)(1) could not be more straightforward here.  This Court and Defendants both stated that the FDPA applied to Plaintiff, but exactly one month prior to Plaintiff's scheduled execution date, Defendants confirmed that they were not going to comply with the Virginia statute as required by the FDPA.  *See* ECF No. 363 at 6.  Defendants point to the 2005 "litigation in *Tipton*" as reason Plaintiff's

---

[8] Even if the Court chose to apply equitable estoppel here, it would need look no further than the Defendants' brief to find that Plaintiffs' position has changed "for the worse" as a result of Defendants' representation.  Opp. at 16.  By representing that Defendants intended to comply with the Virginia statute and not confirming their position to the contrary until December 14, 2020, Defendants are now arguing that Plaintiff has "forfeited his option to seek relief on his Eighth Amendment claim prior to his scheduled execution."  Opp. at 20.

surprise is "unjustified," Opp. at 17, but the repeal came after that litigation, Opp. at 6 ("On March 9, 2006, Congress . . . repealed the Title 21 death penalty procedures applicable to § 848(e) offenses."). And rather than taking no steps to clarify the impact of the 2006 repeal, Opp. at 17, Plaintiff asserted a claim in this litigation that Defendants were violating the FDPA by failing to comply with the Virginia statute, *see* ECF No. 92, Appendix A at 4-5.[9]

With regard to Rule 60(b)(3), Defendants barely make an effort to argue that no misrepresentation was made, merely stating that they "believe[d] that [their] representation was clear" and was "at worst ambiguous or silent." Opp. at 17. However, elsewhere, Defendants argue that they have "never represented that the FDPA applies to Johnson, and Johnson has not shown otherwise." Opp. at 14. Even assuming that these arguments apply to Plaintiff's Rule 60(b)(3) motion, they underscore—rather than erode—the idea that Defendants' agreement to comply with the Virginia statute was a misrepresentation. For example, Defendants claim that they did not say "that § 3596(a) of the FDPA applies to persons who were not sentenced pursuant to the FDPA." Opp. at 14. But that is in fact what Defendants said. *See, e.g.*, ECF No. 36 at 5 n.1 ("The FDPA did not initially govern death sentences, like Honken's under the ADAA, 21 U.S.C. § 848(e) (1988). In 2006, Congress repealed the capital provisions of § 848, 'effectively rendering the FDPA applicable to all federal death-eligible offenses.'" (citation omitted)).

---

[9] Defendants mystifyingly claim that Honken's execution by lethal injection should have somehow placed Plaintiff on notice that he, too, would be bound to lethal injection. Opp. at 17. But, as Defendants previously explained, Honken was sentenced in Iowa, and the court there specified that Indiana law should apply, which provides only for lethal injection. *See* Opp. at 15. It is unclear how Plaintiff was supposed to determine that Defendants would not provide a choice between top-line methods of execution, as required by Virginia law, from Defendants' previous adherence to the lack of such choice in Indiana's statute.

Defendants attempt to ignore this obvious concession in the Honken briefing by arguing that their position with respect to Honken is "irrelevant" and "made no difference." Opp. at 15. Again, though, Defendants' own language undercuts their argument. Defendants did not limit their explanation to just Honken but expanded it to all prisoners sentenced "under the ADAA." ECF No. 36 at 5 n.1. And Defendants previously made no reference to the idea that they were bound by a court order or that the statutes at issue did not actually conflict as they do in their opposition brief. *See* Opp. at 15. Instead, in their prior briefing, Defendants merely cited *Barrett*. ECF No. 36 at 5 n.1.

Perhaps most illustrative of Defendants' misrepresentation under Rule 60(b)(3) is their assertion that their previous agreement to comply with the Virginia statute was in anticipation of other Virginia-sentenced prisoners joining the litigation. *See* Opp. at 15-16. As Plaintiff raised in his opening Rule 60(b) brief—and which Defendants failed to contest in their opposition brief— the context of Defendants' agreement to comply makes clear that it was intended to apply to Plaintiff (or at least convince the Court and Plaintiff that was the case). ECF No. 364 at 14. Defendants, in their own motion for summary judgment, argued that the 2019 Protocol allowed for deviations to comply with state statutes. ECF No. 170 at 32. The Court asked for Defendants to state their willingness to comply with the Virginia statute, among others, in response. September 14, 2020, Minute Order. Defendants' argument that their response was intended to make "clear that there would be no need for a permanent injunction" completely ignores that it was Defendants' summary judgment motion that was truly at issue. *See* Opp. at 16.

Additionally, the Court's Minute Order also gave Defendants the option to indicate if they had "not determined whether they will comply with a given statute." September 14, 2020, Minute Order. And the Minute Order was limited to the statutes Plaintiffs identified—not all

13

possible state statutes for prisoners currently on death row.  *See id.*  To now suggest that, in response, Defendants intended to signal that they were not going to comply with the Virginia statute with respect to Plaintiff but would do so with respect to previously unidentified third-party prisoners who were subject to the FDPA strains all credulity.  At the very least, such a miscommunication on an issue so "central to the litigation" amounts to "extraordinary circumstances" under Rule 60(b)(6) by being "manifestly unjust."  *See* ECF No. 364 at 15 (quoting *Comput. Pros. for Soc. Resp. v. U.S. Secret Serv.*, 72 F.3d 897, 903 (D.C. Cir. 1996)).

**III.     The Court Should Grant Plaintiff's Motion to Compel**

Plaintiff explained in his opening brief that the requested discovery was relevant to Plaintiff's FDPA claim in two ways: to determine "Defendants' preparedness to comply with Virginia's top-line method of execution," ECF No. 363 at 8, and to ascertain whether "Defendants intend to use a protocol other than Virginia's," *id.* at 9.  Plaintiff also explained two reasons why the requested information was discoverable under Plaintiff's Eighth Amendment claim: the basic notion of fairness in light of the viability of Plaintiff's claim, *id.* at 7, and to identify a feasible alternative under *Glossip*, *id.* at 8.  In arguing against the motion to compel, Defendants attempt to blur the line between the claims so as to obscure the relevance analysis and ignore the broader context of the information sought.  Opp. at 18-20.  These arguments are without merit.

**A.     Because the FDPA Applies to Plaintiff,**
**the Requested Discovery Is Clearly Relevant**

As the Court has already found that the FDPA is applicable to Plaintiff—which it should find again as discussed above—Defendants cannot argue that the requested information is irrelevant.  All three judges on the D.C. Circuit to consider the issue agreed that Defendants' failure to comply "with a state's top-line method execution . . . would violate the FDPA."  ECF No. 261 at 26.  Two of the three judges further agreed that Defendants' failure to comply "with a state

statute or regulation . . . would [also] violate the FDPA."  *Id.*  Accordingly, the discovery sought, which seeks Defendants' ability to comply with both such aspects, is relevant to Plaintiff's FDPA claim.

Defendants claim that "the FDPA does not itself provide person sentenced under the FDPA with any right to information that will help him make any election to which he may be entitled under the FDPA."  Opp. at 19.  But that is not why Plaintiff seeks the information in relation to his FDPA claim; that is why Plaintiff requested the discovery in aid of his Eighth Amendment claim.  As such, Defendants' argument is misguided.[10]

### B.      The Requested Information Is Separately Relevant to Plaintiff's Eighth Amendment Claim

With respect to Plaintiff's Eighth Amendment claim, Defendants do not argue that the discovery is irrelevant.  Opp. at 20.  Rather, Defendants state that case law suggests "that lethal injection is . . . more humane" than electrocution.  However, Plaintiff has already stated a viable claim that the 2019 Protocol's particular form of lethal injection violates the Eighth Amendment. *In re Fed. Bureau of Prisons' Execution Protocol Cases*, 980 F.3d 123, 135 (D.C. Cir. 2020). Plaintiff must now prove that a feasible alternative exists.  *Glossip v. Gross*, 576 U.S. 863, 877 (2015).  Defendants cannot resist discovery on that element of Plaintiff's claim by arguing that the other method of execution they are statutorily required to offer Plaintiff is *per se* less humane than

---

[10] Similarly misguided is Defendants' argument that Plaintiff must first select electrocution.  Opp. at 18.  As noted above, Virginia's statute does not require Plaintiff to make his selection until fifteen days prior to his execution.  Va. Code Ann. § 53.1-234.  If accepted, Defendants' argument would either allow them to contravene the statute itself, by requiring Plaintiff to make a selection well in advance of the fifteen-day window, or avoid discovery altogether, by requiring it be completed within the fifteen-day window.

the one against which Plaintiff has stated a viable claim—such a determination is for the finder of fact.

Defendants additionally argue that Plaintiff has "forfeited his option to seek relief on his Eighth Amendment claim prior to his scheduled execution." Opp. at 20. But beyond being an overly rigid reading of the procedural posture of the case, this argument ignores that other Plaintiffs in the consolidated litigation are also required to meet *Glossip*'s requirements and could thus use the discovery to prove their Eighth Amendment claims, even after Plaintiff's execution.

## C.   Defendants' Other Arguments Fail

Lastly, Defendants claim that "Johnson does not appear to dispute the government's invocation of privileges nor does he seek to compel disclosure of any records subject to a claim a privilege." Opp. at 20. But this argument reveals the problems with Defendants' invocation of privileges—Plaintiff has no way of disputing their invocation or seeking to compel disclosure of records subject to a claim of privilege, because Defendants have only provided blanket objections. Defendants have now offered to provide a privilege log, which would presumably allow Plaintiff the ability to actually challenge Defendants' privilege claim. Plaintiff reserves the right to challenge those designations and respectfully requests that the Court order Defendants produce such a privilege log along with the nonprivileged requested discovery.

With regard to personally identifying information, Defendants' appear to overread Plaintiffs' argument. Plaintiff has not asked for merely "generic identifiers for certain persons as well as *only* their credential or title." Opp. at 20-21 (emphasis added). Rather, Plaintiff requested "the titles, roles, and qualifications" of these individuals. ECF No. 363 at 13. Qualifications (such as the frequency with which these persons have trained with an electrocution apparatus) that cannot

be linked to any particular person cannot qualify as personally identifying information, and as such should be included in the requested discovery.

**IV.     Conclusion**

For the foregoing reasons, Plaintiff respectfully requests that this Court grant the motion to compel, the motion for relief from final judgment, and any such other relief that this Court deems appropriate.


Dated: December 22, 2020                              Respectfully submitted,

                               /s/ *Donald P. Salzman*
                               Donald P. Salzman
                               D.C. Bar Number #479775
                               SKADDEN, ARPS, SLATE,
                                  MEAGHER & FLOM LLP
                               1440 New York Avenue, N.W.
                               Washington, DC 20005-2111
                               (202) 371-7983

                               Alexander C. Drylewski (admitted *pro hac vice*)
                               Andrew R. Beatty (*pro hac vice* motion pending)
                               One Manhattan West
                               New York, NY 10001
                               (212) 735-3278

                               *Counsel for Plaintiff Corey Johnson*

17