****EXECUTION SCHEDULED FOR JANUARY 15, 2021****

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN THE MATTER OF THE FEDERAL BUREAU OF PRISONS' EXECUTION PROTOCOL CASES,<br><br>Lead case:   *Roane et al. v. Barr et al.*<br><br>THIS DOCUMENT RELATES TO:<br><br>*Roane et al. v. Barr* et al, No. 05-2337 | )<br>)<br>)<br>)<br>)<br>)<br>)  Case No. 19-mc-00145-TSC<br>)<br>)<br>)<br>) |

**SECOND AMENDED AND SUPPLEMENTAL COMPLAINT OF PLAINTIFF DUSTIN HIGGS FOR INDIVIDUALIZED INJUNCTIVE AND DECLARATORY RELIEF**

**I.
Nature of Action and Procedural Background**

1.      Pursuant to the Court's Order of February 19, 2020 (ECF No. 81) and Fed. R. Civ. P. 15 (a) and (d), and in addition to his previous Complaint (ECF No. 229-1) and Amended and Supplemental Complaint (ECF No. 343-1), Mr. Higgs brings this Second Amended and Supplemental Complaint seeking injunctive and declaratory relief for violations of his rights under the Eighth Amendment.

2.      On November 20, 2020, Defendants set a date of January 15, 2021, for the execution of Mr. Higgs. *See* ECF No. 330.

3.      Pursuant to the Court's February 19, 2020 Order (ECF No. 81), the circumstances described herein "warrant . . . a separate filing" concerning "issues that are particular to" Mr. Higgs. ECF No. 81. Because the Court has allowed individual plaintiffs to bring claims such as these in a "separate filing," Mr. Higgs does not intend for this Amended and Supplemental

1

Complaint to supersede his earlier claims contained in his Complaint or in his Amended and Supplemental Complaint, including his claims for relief under the Eighth Amendment, the Ex Post Facto Clause, the Administrative Procedure Act ("APA"), and the Food, Drug and Cosmetic Act as made cognizable by the APA.

4. Mr. Higgs realleges and incorporates herein by reference, as if set forth in full below, the paragraphs of his Complaint and Amended and Supplemental Complaint that relate to the present claim. *See* ECF No. 229-1; ECF No. 343-1; *In re Federal Bureau of Prisons Execution Protocol Cases*, 980 F.3d 123 (D.C. Cir. 2020) (reinstating consolidated Plaintiffs' Eighth Amendment claim).

## II.

## **Factual Background**

### *Mr. Higgs tested positive for COVID-19 on December 16, 2020*

5. Mr. Higgs developed a cough and chills on December 13, 2020. His son, Da'Quan Darby, visited Mr. Higgs on December 13 and 14, and noticed that his father was coughing on both days. His father repeatedly asked whether the visiting room was cold when Mr. Darby did not perceive it as cold, and Mr. Darby had the impression that his father had chills. Decl. of Da'Quan Darby (Dec. 20, 2020) (Exhibit 1) at 1 ("Darby Decl."). Mr. Darby perceived his father's symptoms to be worse on the second day. *Id.* Mr. Higgs told Mr. Darby that he felt like he was coming down with something, and that he had taken some cough medicine.

6. On December 17, 2020, the Bureau of Prisons ("BOP") informed counsel for Mr. Higgs that he had tested positive for COVID-19.

7. As of the date of this filing, Mr. Higgs continues to experience symptoms of COVID-19.

### *Background on the COVID-19 virus*

8. COVID-19 is "a highly contagious respiratory illness caused by a novel coronavirus (SARS-CoV-2)." Decl. of Joel A. Zivot, M.D. (Aug. 31, 2020) at 3 ("Zivot Decl."). The illness originated in China but quickly spread across the globe, and the World Health Organization declared COVID-19 a global pandemic on March 11, 2020. *See* World Health Organization, *WHO Timeline – COVID-19*, https://www.who.int/news-room/detail/27-04-2020-who-timeline---covid-19 (last visited Dec. 21, 2020).

9. COVID-19 "spreads via the respiratory route and as such, targets the lungs." Zivot Decl. at 4.

10. COVID-19 causes lung damage in a majority of patients, including those who report experiencing only mild symptoms or no symptoms at all. In fact, CT scans revealed that of the cases of COVID-19 from the Diamond Princess cruise ship, "54% of patients who experienced *asymptomatic* infections still suffered the same severe lung changes (lung opacifications) seen in many hospitalized patients." Supp. Decl. of Gail Van Norman, M.D. (Dec. 22, 2020) (Exhibit 2), at 4 ("Van Norman Suppl. Decl. (Dec. 22, 2020)") (emphasis added). For *symptomatic* patients, the percentage of patients with lung damage visible on a CT scan rose to 79%. *Id.* This finding has been corroborated by other emerging research on the effects of COVID-19 on the lungs. *See id.* In short, "[i]t is clear now that even in mild infection—i.e. infection that is either asymptomatic or symptomatic but does not require hospitalization—significant damage is occurring in the lungs . . . ." *Id.*

11. In addition to lung damage, COVID-19 often causes or exacerbates heart conditions. *See* Decl. of Michael Stephen, M.D. (Dec. 22, 2020) (Exhibit 3) at 3-4 ("Stephen Decl."). Heart problems typically persist for some period of time after a person has apparently

recovered from the virus: according to one study, 78% of patients who had recently recovered from COVID-19 had abnormal imaging as seen on a cardiac MRI. *See id.* at 3.

12. Doctors who treat COVID-19 patients routinely observe lingering effects from the virus, even after the patient has apparently recovered. Some patients present with an apparently-resolved COVID-19 infection, but "a complete workup on these patients often reveals decreased heart function, small clots in the lung that impede heart function, or pneumonia." *Id.* at 4.

13. Lingering effects from COVID-19 typically last at least two to three months after the initial development of symptoms. *See* Stephen Decl. at 6 (observing that in Dr. Stephen's experience treating COVID-19 patients, it typically takes approximately 8 weeks for patients to regain normal functioning); Van Norman Supp. Decl. (Dec. 22, 2020) at 5-6 (summarizing research indicating that COVID-19 lung damage persists for at least 90-100 days).

### *COVID-19 and execution with pentobarbital*

14. The 2019 Protocol was developed prior to the emergence of SARS-CoV-2 (the virus that causes COVID-19 illness).

15. Preexisting lung damage from COVID-19 infection is likely to put Mr. Higgs at serious risk of severe pain and suffering from the pentobarbital injection called for by the 2019 Protocol.

16. As explained in detail in Mr. Higgs's Complaint (ECF No. 229-1), injection with a large dose of pentobarbital as outlined in the 2019 Protocol causes a large and sudden influx of fluid in the lungs prior to the loss of consciousness, producing a sensation of drowning. Decl. of Gail Van Norman, M.D., at 33-34 (Nov. 11, 2019) (ECF No. 24) ("Van Norman Decl."); Decl. of Mark A. Edgar, M.D., at 19-21 (Oct. 24, 2019) (ECF. No. 303-3) ("Edgar Decl."); Zivot Decl. at 2-3. This excruciating experience is comparable to waterboarding. Van Norman Decl. at 34.

17. "Infection with the COVID-19 virus causes severe damage to many areas in the airways and the lungs, but most specifically to the alveolar-capillary membrane, which is also the site of damage of massive barbiturate overdose." Van Norman Supp. Decl. (Dec. 22, 2020) at 2.

18. Lung damage from COVID-19 thereby "sensitizes the lungs to more extensive and immediate further damage . . . , causing massive pulmonary edema at an earlier stage in the execution process before drug levels in the brain have peaked." *Id.* at 3. Execution with pentobarbital is thus "particularly likely to cause extreme suffering. Because COVID-19 can cause lasting lung damage, a person injected with pentobarbital would experience the feeling of suffocating or drowning even more quickly and acutely than a person who had not been infected with COVID-19." Zivot Decl. at 5-6; *see* Van Norman Supp. Decl. (Dec. 22, 2020) at 1 ("[T]hese prisoners will experience sensations of drowning and suffocation sooner than a person without COVID-related lung damage and, therefore, their conscious experience of the symptoms of pulmonary edema will be prolonged.").

### *Mr. Higgs's preexisting medical conditions*

19. Mr. Higgs has lifelong heart problems. Specifically, Mr. Higgs has a cardiac murmur and a condition called mitral valve regurgitation, also known as mitral valve insufficiency. *See* Stephen Decl. at 5 (noting that a recent electrocardiogram on November 12, 2020 and an ultrasound of his heart from May 26, 2020 show that Mr. Higgs has moderate mitral valve regurgitation, left atrial enlargement, and likely left ventricular hypertrophy).

20. Mitral valve regurgitation occurs when the mitral valve on the left side of the heart does not close properly, allowing blood to backflow or leak into the left atrium in the heart. Zivot Supp. Decl. at 2-3. Over time, this condition can cause a patient to develop pulmonary edema:

> When a patient has mitral regurgitation, each contraction of the heart forces some blood backwards into the left atrium and then further backwards into the lungs. . . . In the normal functioning heart, when the left ventricle contracts, the mitral valve shuts, preventing blood from regurgitating backwards. At the same time, the aortic valve opens and permits the normal flow of blood forward. The pressure in the lungs is not high enough to block backwards flow without a functioning mitral valve. A competent and non-leaking mitral valve is the normal protection for the lungs from this blood under pressure. Extra fluid in the lungs, when severe, produces significant shortness of breath and is called congestive heart failure or pulmonary edema.

*Id.* at 3.

21. Mitral valve regurgitation increases the risk of flash pulmonary edema. Dr. Kendall Von Crowns, a medical expert retained by Defendants, has acknowledged that heart conditions like Mr. Higgs's can cause flash pulmonary edema in a prisoner executed with pentobarbital:

> I know there's a case report of an individual who developed flash pulmonary edema, but he had underlying heart issues, specifically mitral valve issues, as well as other heart problems. So his heart was already compromised when the flash pulmonary edema occurred.
>
> So in his situation, his flash pulmonary edema was the result of the fact that he already had a compromised heart which then resulted in him developing edema more rapidly than normal. So you have an individual that was already kind of critical when this occurred.

Evid. Hr'g Tr. (Sept. 18, 2020) at 18; *see also* Zivot Supp. Decl. at 2-3, 5-6.

22. Mr. Higgs's COVID-19 infection exacerbates the risk created by his underlying heart condition. Specifically, this condition "puts him at higher risk of COVID-19 related heart issues" and increases his risk of COVID-related pulmonary edema. Stephen Decl. at 5. Because Mr. Higgs has an enlarged left atrium, he is particularly at risk for COVID-related heart failure, "as an enlarged left atrium ineffectively pumps blood to the left ventricle, further putting him at risk for fluid to back up into his lungs (pulmonary edema)." *Id.* at 6.

23. Mr. Higgs also suffers from lifelong asthma, which often makes it difficult for him to breathe. His asthma is serious and requires a "continuous high dose of inhaled steroids," *id.* at 5, and Mr. Higgs currently uses an inhaler about three times each day. In addition, Mr. Higgs "has had asthma exacerbations over the years, and has required the use of nebulizer treatments." *Id.* His medical records reflect that at times, Mr. Higgs experiences "wheezing, difficulty breathing, coughing, and shortness of breath" as a result of his asthma. Zivot Supp. Decl. at 2.

24. For Mr. Higgs, the experience of pulmonary edema "would cause further strain on Mr. Higgs's already-impaired breathing." Zivot Supp. Decl. at 2. Because of Mr. Higgs's asthma, he is likely to "struggle for air more quickly and painfully after the onset of pulmonary edema because his asthma inflames and constricts his airways, making it more difficult for enough oxygen to reach his lungs even under normal circumstances." *Id.*

25. In sum, the risk of painful pulmonary edema while sensate is especially acute for Mr. Higgs, who "is always at a greater risk for lung congestion than an otherwise healthy person as a consequence of mitral regurgitation and asthma." Zivot Supp. Decl. at 5.

**Supplemental Count III: Eighth Amendment Violation As Applied to Mr. Higgs**

26. Mr. Higgs realleges and incorporates herein by reference all of the preceding paragraphs of this Second Amended and Supplemental Complaint as if set forth in full below.

27. The Eighth Amendment provides prisoners with the right to be free from cruel and unusual punishments. In carrying out a sentence of death, the Government violates the Eighth Amendment if the planned manner of execution presents a "substantial risk of serious harm" to the prisoner. *Baze v. Rees*, 553 U.S. 35, 50 (2008).

28. Executing Mr. Higgs under the 2019 Protocol poses a substantial risk of serious harm to Mr. Higgs. Mr. Higgs's recent infection with COVID-19, coupled with his preexisting health problems, creates a substantial and unjustifiable risk that Mr. Higgs will endure an excruciating experience akin to drowning to death.

29. The Eighth Amendment also forbids "deliberate indifference" to "serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A prison official violates the Eighth Amendment when he or she "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

30. BOP knows of Mr. Higgs's current COVID-19 infection, underlying asthma, and mitral valve regurgitation.

31. The BOP must provide Mr. Higgs with medical care until the moment of his death.

32. Executing Mr. Higgs pursuant to the 2019 Protocol poses a substantial risk of severe pain due to his recent COVID-19 infection, his asthma, and his heart condition. Defendants are deliberately indifferent to this risk.

33. There is substantial and unjustifiable risk that the Defendants will cause serious harm to Mr. Higgs by executing him pursuant to the 2019 Protocol.

34. Mr. Higgs continues to plead the two alternative execution methods from his original complaint: a pre-execution dose of an opioid or other suitable analgesic, as well as the firing squad. *See* ECF No. 229-1 at 37-39. At a minimum, a third alternative method is to postpone Mr. Higgs's execution for a period of two to three months from the onset of his COVID-19 infection, at which time the functioning of Mr. Higgs's heart and lungs are likely to improve, so that the postponement of Mr. Higgs's execution would substantially reduce the

COVID-enhanced risk that he will experience flash pulmonary edema while sensate, as well as the duration of that experience.

## **Prayer for Relief**

WHEREFORE, in order to prevent the above-alleged violations of Mr. Higgs's rights under the Eighth Amendment, Plaintiff respectfully requests that this Court enter a judgment:

a. declaring that Defendants' planned use of pentobarbital pursuant the 2019 Protocol to execute Plaintiff violates the Constitution;

b. enjoining Defendants from executing Mr. Higgs as scheduled on January 15, 2021, or on any other date until such time as Defendants' method of administering death sentences complies with the statutory and Constitutional provisions described herein; and

c. granting such further relief as the Court deems just and proper.

Dated:   December 22, 2020              Respectfully submitted,

/s/ Alex Kursman
Alex Kursman
Devon Porter
Federal Community Defender Office, E.D. Pa.
601 Walnut Street, Suite 545 West
Philadelphia, PA 19106
Telephone: 215-928-0520
Email: alex_kursman@fd.org

*Counsel for Plaintiff Dustin Higgs*

# CERTIFICATE OF SERVICE

       I hereby certify that on December 22, 2020, I caused a true and correct a copy of the foregoing amended and supplemental complaint and the exhibits thereto to be served on all counsel of record via the Court's CM/ECF system. Pursuant to this Court's August 20, 2019 Order, below is a list of all counsel of record. The names marked with an asterisk (*) have no email provided on the docket and are no longer with the identified firms.

Alan Burch
U.S. Attorney's Office for the District of Columbia
(202) 252-2550
Email: alan.burch@usdoj.gov

Peter S. Smith
United States Attorney's Office
Appellate Division
(202) 252-6769
Email: peter.smith@usdoj.gov

Ethan P. Davis
Civil Division, U.S. Department of Justice
(202) 616-4171
Email: Ethan.Davis@usdoj.gov

Robert J. Erickson
US Department of Justice
(202) 514-2841
Email: Robert.erickson@usdoj.gov

Joshua Christopher Toll
KING & SPALDING LLP
(202) 737-8616
Email: jtoll@kslaw.com

Charles Anthony Zdebski
ECKERT SEAMANS CHERIN & MELLOTT, LLC
(202) 659-6605
Email: czdebski@eckertseamans.com

Gerald Wesley King, Jr.
FEDERAL DEFENDER PROGRAM, INC.
(404) 688-7530
Email: gerald_king@fd.org

Paul R. Perkins
Civil Division, Department of Justice
(202) 514-5090
Email: Paul.R.Perkins@usdoj.gov

Jonathan Kossak
Civil Division, Department of Justice
(202) 305-0612
Email: Jonathan.kossak@usdoj.gov

Denise M. Clark
U.S. Attorney's Office for the District of Columbia
(202) 252-6605
Email: Denise.Clark@usdoj.gov

Jean Lin
Civil Division, Department of Justice
(202) 514-3716
Jean.lin@usdoj.gov

Cristen Cori Handley
Civil Division, Department of Justice
(202) 305-2677
Cristen.Handley@usdoj.gov

Paul F. Enzinna
ELLERMAN ENZINNA PLLC
(202) 753-5553
Email: penzinna@ellermanenzinna.com

Brandon David Almond
TROUTMAN SANDERS LLP
(202) 274-2864
Email: brandon.almond@troutmansanders.com

Donald P. Salzman
SKADDEN, ARPS, SLATE, MEAGHER &

1

Charles Fredrick Walker
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
(202) 371-7000
Email: Charles.Walker@skadden.com

Alexander C. Drylewski
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
(212) 735-2129
Email: Alexander.Drylewski@skadden.com
(*pro hac vice application forthcoming)

Celeste Bacchi
OFFICE OF THE PUBLIC DEFENDER
Capital Habeas Unit
(213) 894-1887
Email: celeste_bacchi@fd.org

Jonathan Charles Aminoff
FEDERAL PUBLIC DEFENDER,
CENTRAL DISTRICT OF CALIFORNIA
(213) 894-5374
Email: jonathan_aminoff@fd.org

Billy H. Nolas
FEDERAL COMMUNITY DEFENDER
OFFICE FOR THE EDPA
(215) 928-0520
Email: Billy_Nolas@fd.org

*Jeanne Vosberg Sourgens
VINSON & ELKINS LLP
(202) 639-6633

William E. Lawler, III
VINSON & ELKINS LLP
(202) 639-6676
Email: wlawler@velaw.com

Evan D. Miller
VINSON & ELKINS LLP
(202) 639-6605
Email: EMiller@velaw.com

Margaret O'Donnell

FLOM LLP
(202) 371-7983
Email: Donald.salzman@skadden.com

Steven M. Albertson
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
(202) 371-7112
Email: Steven.Albertson@skadden.com

Craig Anthony Harbaugh
FEDERAL PUBLIC DEFENDER, CENTRAL
DISTRICT OF CALIFORNIA
(213) 894-7865
Email: craig_harbaugh@fd.org

Alexander Louis Kursman
OFFICE OF THE FEDERAL COMMUNITY
DEFENDER/EDPA
(215) 928-0520
Email: Alex_Kursman@fd.org

Kathryn B. Codd
VINSON & ELKINS LLP
(202) 639-6536
Email: kcodd@velaw.com

Robert E. Waters
KING & SPALDING LLP (202) 737-0500
Email: rwaters@velaw.com

Yousri H. Omar
VINSON & ELKINS LLP
(202) 639-6500
Email: yomar@velaw.com

*William E. Hoffman, Jr.
KING & SPALDING LLP
(404) 572-3383

Mark Joseph Hulkower
STEPTOE & JOHNSON LLP
(202) 429-6221
Email: mhulkower@steptoe.com

Robert A. Ayers

2

(502) 320-1837
Email: mod@dcr.net

Abigail Bortnick
KING & SPALDING LLP
(202) 626-5502
Email: abortnick@kslaw.com

Matthew John Herrington
STEPTOE & JOHNSON LLP
(202) 429-8164
Email: mherrington@steptoe.com

Amy J. Lentz
STEPTOE & JOHNSON LLP
(202) 429-1320
Email: Alentz@steptoe.com

Gary E. Proctor
LAW OFFICES OF GARY E. PROCTOR, LLC
(410) 444-1500
Email: garyeproctor@gmail.com

Scott Wilson Braden
FEDERAL PUBLIC DEFENDER, EASTERN DISTRICT OF ARKANSAS
(501) 324-6144
Email: Scott_Braden@fd.org

Amy Gershenfeld Donnella
FEDERAL COMMUNITY DEFENDER OFFICE FOR THE EDPA
(215) 928-0520
Email: amy_donnella@fd.org

David Victorson
(202) 637-5600
HOGAN LOVELLS US LLP
Email: David.Victorson@hoganlovells.com

John D. Beck
HOGAN LOVELLS US LLP
(212) 918-3000
Email: john.beck@hoganlovells.com

STEPTOE & JOHNSON LLP
(202) 429-6401
Email: rayers@steptoe.com

Robert L. McGlasson
MCGLASSON & ASSOCIATES, PC
(404) 314-7664
Email: rlmcglasson@comcast.net

Sean D. O'Brien
PUBLIC INTEREST LITIGATION CLINIC
(816) 363-2795
Email: dplc@dplclinic.com

Shawn Nolan
FEDERAL COMMUNITY DEFENDER OFFICE, EDPA
(215) 928-0520
Email: shawn_nolan@fd.org

Joseph William Luby
FEDERAL PUBLIC DEFENDER/EDPA
(215) 928-0520
Email: joseph_luby@fd.org

Pieter Van Tol
HOGAN LOVELLS US LLP
(212) 918-3000
Email: Pieter.Vantol@hoganlovells.com

Jonathan Jeffress
KAISER DILLON, PLLC
(202) 640-4430
Email: Jjeffress@kaiserdillon.com

Andrew Moshos
MORRIS NICHOLS ARSHT & TUNNELL LLP
(302) 351-9197
Email: Amoshos@mnat.com

Alan E. Schoenfeld
WILMER CUTLER PICKERING HALE & DORR LLP
(212) 937-7294
Email: Alan.Schoenfeld@wilmerhale.com

3

| | |
|---|---|
| Amelia J. Schmidt<br>KAISER DILLON, PLLC<br>(202) 869-1301<br>Email: Aschmidt@kaiserdillon.com | Kathryn Louise Clune<br>CROWELL & MORING LLP<br>(202) 624-5116<br>kclune@crowell.com |
| Norman Anderson<br>KAISER DILLON PLLC<br>(202) 640-2850<br>nanderson@kaiserdillon.com | Jennifer M. Moreno<br>OFFICE OF THE PUBLIC FEDERAL DEFENDER, DISTRICT OF ARIZONA<br>(602) 382-2718<br>Jennifer_moreno@fd.org |
| Jennifer Ying<br>MORRIS NICHOLS ARSHT & TUNNELL LLP<br>(302) 658-9300<br>Email: Jying@mnat.com | Ginger Dawn Anders<br>MUNGER, TOLLES & OLSON LLP<br>(202) 220-1107<br>Ginger.anders@mto.com |
| Andres C. Salinas<br>WILMER CUTLER PICKERING HALE & DORR LLP<br>(202) 663-6289<br>Email: Andres.Salinas@wilmerhale.com | *Jonathan S. Meltzer<br>MUNGER, TOLLES & OLSON LLP<br>(202) 220-1100 |
| *Ryan M. Chabot<br>WILMER CUTLER PICKERING HALE & DORR LLP<br>(212) 295-6513 | *Brendan Gants<br>MUNGER, TOLLES & OLSON LLP<br>(202) 220-1100 |
| Dale Andrew Baich<br>OFFICE OF THE FEDERAL PUBLIC DEFENDER<br>(602) 382-2816<br>Dale_Baich@fd.org | Timothy Kane<br>FEDERAL COMMUNITY DEFENDER OFFICE, EDPA<br>(215) 928-0520<br>Email: timothy_kane@fd.org |

Dated:   December 22, 2020

/s/ Alex Kursman
Alex Kursman
Devon Porter
Federal Community Defender Office, E.D. Pa.
601 Walnut Street, Suite 545 West
Philadelphia, PA 19106
Telephone: 215-928-0520
Email: alex_kursman@fd.org

*Counsel for Plaintiff Dustin Higgs*