UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In the Matter of the Federal Bureau of Prisons' Execution Protocol Cases, | )<br>)<br>)<br>) |
| LEAD CASE: *Roane, et al. v. Barr* | )   Case No. 19-mc-145 (TSC) |
| THIS DOCUMENT RELATES TO: | )<br>) |
| *Roane, et al. v. Barr*, 05-cv-2337 | )<br>)<br>) |

## MEMORANDUM OPINION

Plaintiff Dustin Higgs has moved for a preliminary injunction, asking the court to enjoin his January 15, 2021 execution on the grounds that Defendants' use of pentobarbital in his execution violates the Ex Post Facto Clause (the ex post facto claim), and that Defendants' arbitrary selection of him for execution violates the Fifth and Eighth Amendments and is arbitrary and capricious under the Administrative Procedure Act (APA) (the arbitrary selection claim).[1] (ECF No. 344, Pl. Mot.) For the reasons set forth below, the court finds that Higgs has failed to establish a likelihood of success on either claim and, therefore, his motion for a preliminary injunction will be DENIED.

### I.   BACKGROUND

Higgs was sentenced to death by the U.S. District Court for the District of Maryland in 2001. Due to the unavailability of lethal injection drugs however, the federal government

---

[1] When Higgs filed this motion on December 4, 2020, he also brought an as-applied Eighth Amendment claim included in his original Complaint. (*See* Pl. Mot. at 8–20; ECF No. 229-1, Higgs Compl.) The court dismissed that claim as speculative. (ECF No. 355.) Accordingly, this opinion addresses only the ex post facto and arbitrary selection claims.

1

delayed the imposition of his death sentence. Meanwhile, in 2013, the State of Maryland abolished the death penalty, *see* S.B. 276, 2013 Leg. 433rd Sess. (Md. 2013).

## II. DISCUSSION

In considering whether to grant the "extraordinary remedy" afforded by a preliminary injunction, courts assess four factors: (1) the likelihood of the plaintiff's success on the merits, (2) the threat of irreparable harm to the plaintiff absent an injunction, (3) the balance of equities, and (4) the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20, 24 (2008) (citations omitted); *John Doe Co. v. Consumer Fin. Prot. Bureau,* 849 F.3d 1129, 1131 (D.C. Cir. 2017). The D.C. Circuit has traditionally evaluated claims for injunctive relief on a sliding scale, such that "a strong showing on one factor could make up for a weaker showing on another." *Sherley v. Sebelius,* 644 F.3d 388, 392 (D.C. Cir. 2011). It has been suggested, however, that a movant's showing regarding success on the merits "is an independent, free-standing requirement for a preliminary injunction." *Id.* at 393 (quoting *Davis v. Pension Benefit Guar. Corp.*, 571 F.3d 1288, 1296 (D.C. Cir. 2009) (Kavanaugh, J., concurring)).

### A. Likelihood of Success on the Merits

1. Ex Post Facto Claim

Higgs argues that Defendants' planned use of pentobarbital under the 2019 Federal Execution Protocol (the 2019 Protocol) is an unconstitutional ex post facto law because it is an increased punishment compared to the punishment in effect when he was sentenced. In his view, § 3596(a) of the Federal Death Penalty Act (FDPA) "required, and continues to require, that capital sentences be implemented 'in the manner prescribed by the law of the State in which the sentence is imposed.'" (Pl. Mot. at 4 (quoting 18 U.S.C. 3596(a)).) When Higgs was sentenced, Maryland law permitted the death penalty but required that "[t]he manner of inflicting the

punishment of death shall be the continuous intravenous administration of a lethal quantity of an ultrashort acting barbiturate or other similar drug in combination with a chemical paralytic agent." MD Code Ann., Corr. Servs. § 3-905. Higgs argues that because pentobarbital is not an ultrashort acting barbiturate or similar drug, the extended onset of its effects compared to ultrashort acting barbiturates such as thiopental or methohexital impermissibly increases his punishment. (Pl. Mot. at 6.) This claim is unlikely to succeed on the merits.

Defendants argue that Higgs' ex post facto claim has been waived because he could have brought it any time after the 2019 Protocol was announced in July 2019. (ECF No. 352, Defs. Opp'n at 11 n.2.) The argument is not without merit. As the Supreme Court has made clear, particularly in the death penalty context, the "'last-minute nature of an application' that 'could have been brought' earlier . . . 'may be grounds for denial of a stay'" or other equitable relief. *Bucklew v. Precythe*, 139 S. Ct. 1112, 1134 (2019) (quoting *Hill v. McDonough*, 547 U.S. 573, 584 (2006)). Higgs has not provided a reason for not bringing his ex post facto challenge, a purely legal question, when he filed his initial Complaint on September 1, 2020, rather than waiting until after receiving his execution notice. Nevertheless, the court sees no reason to deny the claim on procedural grounds when it is in the interests of all parties—and the public—to resolve claims in death penalty cases on the merits where possible.

The Constitution's Ex Post Facto Clause prohibits the retroactive application of a "law that changes the punishment, and inflicts greater punishment, than the law annexed to the crime when committed." *Peugh v. United States*, 569 U.S. 530, 532–33 (2013) (discussing U.S. Const. art I, § 9, cl. 3). This prohibition applies with equal force to changes in legislation, regulations, and guidelines. *See Bailey v. Fulwood*, 793 F.3d 127, 134 (D.C. Cir. 2015). However, "[t]he inhibition upon the passage of ex post facto laws does not give a criminal a right to be tried, in

3

all respects, by the law in force when the crime charged was committed." *Dobbert v. Florida*, 432 U.S. 282, 293 (1977) (quoting *Gibson v. Mississippi*, 162 U.S. 565, 590 (1896)). Rather, the Ex Post Facto Clause was intended "to assure that legislative Acts give fair warning of their effect and permit individuals to rely on their meaning until explicitly changed," and to "restrain[] arbitrary and potentially vindictive legislation." *Carmell v. Texas*, 529 U.S. 513, 556 (2000) (Ginsburg, J., dissenting) (quoting *Weaver v. Graham*, 450 U.S. 24, 28–29 (1981)).

Higgs first argues that § 3596(a) of the FDPA requires the government to implement his death sentence in accordance with Maryland law in effect at the time he was sentenced. But the language of the FDPA does not support this reading. Rather than requiring that the government use execution procedures in effect at the time the sentence was imposed, § 3596 is written in the present tense: "[w]hen the sentence is to be implemented," the government shall do so "in the manner prescribed by the law of the State in which the sentence is imposed." 18 U.S.C. § 3596(a). Similarly, the second clause of § 3596(a) speaks to the current state of the law, not the state of the law at the time of sentencing: "[i]f the law of the State *does not* provide for the implementation of a sentence of death, the court shall designate another State, the law of which *does* provide for the implementation of a sentence of death." *Id.* (emphasis supplied). Furthermore, that the FDPA allows the federal government to adopt another state's execution procedures undermines Higgs' contention that procedures in effect at the time of sentencing must be used when the sentence is carried out.

Higgs does not cite a single case to support his reading of the FDPA. Indeed, throughout this litigation, both his co-Plaintiffs and Defendants have filed pleadings indicating that the FDPA requires the government to adhere to state procedures at the time of execution rather than at the time of sentencing. (*See, e.g.*, ECF No. 336 at 5 (arguing that Defendants are violating the

FDPA by failing to comply with Texas' current 91-day notice requirement, which did not exist in the same form prior to 2015).)

The court is also not convinced that the use of pentobarbital under the 2019 Protocol constitutes an increased punishment from the now-abolished Maryland lethal injection procedures. Though the D.C. Circuit has never considered the issue, multiple Circuits have found that a change in the method of execution does not increase a condemned inmate's punishment and, thus, does not implicate the Ex Post Facto Clause. *See, e.g.*, *Malloy v. South Carolina*, 237 U.S. 180, 185 (1915) (explaining that a law which changed the method of execution from hanging to electrocution "did not change the penalty-death-for murder, but only the mode of producing this" and did not otherwise increase the punishment);[2] *Zink v. Lombardi*, 783 F.3d 1089, 1107–08 (8th Cir. 2015) (quoting *In re Lombardi*, 741 F.3d 888, 8956 (8th Cir. 2014)) (explaining that the substitution of compounded pentobarbital for propofol in a state execution protocol did not give rise to an ex post facto violation because "[t]he manner of punishment for capital murder in Missouri at all relevant times . . . has been death by lethal injection or lethal gas"); *Poland v. Stewart*, 117 F.3d 1094, 1105 (9th Cir. 1997) ("a change in method does not make the sentence [of death] more burdensome and so does not violate the Ex Post Facto Clause"); *United States v. Tipton*, 90 F.3d 861, 903 (4th Cir. 1996) (finding that a

---

[2] In a footnote in *Weaver v. Graham*, the Supreme Court summarized *Malloy v. South Carolina* as holding that "a change in the method of execution was not ex post facto because evidence showed the new method to be more humane, not because the change in the execution method was not retrospective." 450 U.S. at 32 n.17 (1981). Given the language quoted above, the court does not read the footnote in *Weaver* as the definitive interpretation of the Supreme Court's decision in *Malloy*. Indeed, the decision in *Malloy* anticipated that some retrospective changes, even if detrimental to the defendant, would not implicate the Ex Post Facto Clause, a ruling the Court later clarified in *Dobbert v. Florida*. *See Dobbert*, 432 U.S. at 293 (holding that a change in the law, if merely procedural, does not violate the Ex Post Facto Clause, even if detrimental to the defendant).

regulation providing for death by lethal injection promulgated after the condemned inmate had been sentenced did not give rise to an ex post facto violation); *United States v. Chandler*, 996 F.2d 1073, 1096 (11th Cir. 1993) (reasoning that a new capital statute specifying a method of execution "would only provide for the method by which the punishment would be carried out" and thus would not alter a death sentence as to violate the Ex Post Facto Clause).[3]

The court finds no reason to depart from precedent squarely addressing the question at hand. The substitution of the drugs used in lethal injection does not alter Higgs' sentence of death—it changes only the way his sentence will be implemented.

In reaching this conclusion, the court bears in mind that the Ex Post Facto Clause exists to both provide notice and to prevent arbitrary or vindictive legislation. The substitution of the drug used to implement a death sentence violates neither of these principles. When Higgs committed his crimes, first degree murder was punishable by death by lethal injection. And while the court has questioned several aspects of the 2019 Protocol, it has found no evidence that the selection of pentobarbital was arbitrary or vindictive. Indeed, the government considered the amended protocol for eight years before deciding that pentobarbital was an appropriate substitute for drugs used in earlier executions.

Relying on expert declarations, Higgs also argues that pentobarbital is not an ultrashort acting barbiturate or similar drug and that it will cause him to suffer more than an ultrashort acting barbiturate. The court need not resolve this factual question, having found that Higgs' ex post facto claim is unlikely to succeed as a matter of law.

---

[3] Defendants contend that a change in the method of execution constitutes a procedural change and is thus precluded by the Supreme Court's ruling in *Dobbert*. The court need not determine whether the substitution of an ultrashort acting barbiturate for pentobarbital is properly classified as a procedural change under *Dobbert* to find that Higgs has failed to establish a likelihood of success on the merits.

2. <u>Arbitrary Selection Claims</u>

Higgs' arbitrary selection claims are similarly unavailing. He argues that the Attorney General has exercised unfettered discretion which has led to an arbitrary process for determining which death-row inmates will be executed. (Pl. Mot. at 23.) Higgs contends that the arbitrariness of his selection for execution is enhanced by the fact that he will be executed five days before a new administration is sworn in. (*Id.* at 24.)

While the court is dismayed by the government's "urgent" need to execute an inmate five days before a presidential inauguration, it nonetheless finds that Higgs has failed to establish a likelihood of success on the merits of his arbitrary selection claims.

The Eighth Amendment forbids the arbitrary imposition of capital punishment. *See Maynard v. Cartwright*, 486 U.S. 356, 362 (1988); *Godfrey v. Georgia*, 446 U.S. 420, 428 (1980). But Higgs does not argue that his death sentence was imposed arbitrarily—rather, that the timing of his execution is arbitrary. *See Jones v. Davis*, 806 F.3d 538, 551 (9th Cir. 2015) (noting the distinction and emphasizing that Supreme Court precedents prohibit arbitrariness of sentencing, but not alleged arbitrariness in the implementation of a lawfully and constitutionally imposed sentence). The court has not found—and Higgs has not presented—a single instance in which a condemned inmate succeeded on such an Eighth Amendment claim. In fact, Higgs has cited only one case in which a court has found that the Eighth Amendment protects against the arbitrary selection of prisoners for execution—*Jones v. Chappell*, 31 F. Supp. 3d 1050, 1063 (C.D. Cal. 2014) ("The Eighth Amendment simply cannot be read to proscribe a state from randomly selecting which few members of its criminal population it will sentence to death, but to allow that same state to randomly select which trivial few of those condemned it will actually execute."). But the Ninth Circuit reversed, stating "we know of no other case . . . that has

7

invalidated a state's post-sentencing procedures as impermissibly arbitrary under the Eighth Amendment." 806 F.3d at 551 (citing *Sawyer v. Smith*, 497 U.S. 227, 236 (1990)).

Taken to its logical conclusion, Higgs' argument would require the Attorney General to explain his decision to schedule any execution and to detail why that execution may be carried out before others. The Supreme Court has never required such an explanation, let alone found that that the failure to provide one violates the Eighth Amendment.

Higgs' Fifth Amendment claim fares no better. "The Fifth Amendment Due Process Clause protects individuals from deprivations of 'life, liberty, or property, without due process of law.'" *Atherton v. D.C. Office of Mayor*, 567 F.3d 672, 689 (D.C. Cir. 2009) (citing U.S. Const. amend. V). A procedural due process violation—the type alleged here—"occurs when an official deprives an individual of a liberty or property interest without providing appropriate procedural protections. Liberty interests arise out of the Constitution itself or 'may arise from an expectation or interest created by state laws or policies.'" *Id.* (quoting *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005)).

Higgs does not clearly explain what liberty interest has been burdened. So far as the court can tell, he argues that he is being deprived of a life interest by virtue of Defendants' arbitrarily scheduling his execution. Notwithstanding an impending execution, a death row inmate "maintains a residual life interest, e.g., in not being summarily executed by prison guards." *Ohio Adult Parole Auth. v. Woodard*, 523 U.S. 272, 281 (1998) (plurality opinion) (Rehnquist, C.J.). Indeed, "[w]hen a person has been fairly convicted and sentenced, his liberty interest, in being free from such confinement has been extinguished. But it is incorrect . . . to say that a prisoner has been deprived of all interest in his life before his execution." *Id.* at 289 (O'Connor, J., concurring in part); *see also id.* at 291 (Stevens, J., concurring in part and

8

dissenting in part) ("There is [] no room for legitimate debate about whether a living person has a constitutionally protected interest in life. He obviously does."). But Higgs has already received the notice to which he is entitled—twenty days' notice in accordance with 28 C.F.R. § 26.4(a) and sixty days between judgment and execution in accordance with 28 C.F.R. § 26.3(a)(1).

Higgs' APA claim is similarly unpersuasive. Under the APA, a reviewing court must set aside any agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). However, the APA does not permit judicial review of an action committed to agency discretion by law. *Heckler v. Chaney*, 470 U.S. 821, 829–33 (1985) (discussing 5 U.S.C. § 701(a)(2)). "The APA exception for actions committed to agency discretion by law is read 'quite narrowly, restricting it to those rare circumstances where the relevant statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion.'" *Make the Road New York v. Wolf*, 962 F.3d 612, 631 (D.C. Cir. 2020) (quoting *Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2568 (2019)).

Here, the parties dispute the level of review the court must afford to the Attorney General, or his delegates, in scheduling an execution. Higgs contends that the Attorney General or the Bureau of Prisons (BOP) were required to explain why Higgs, rather than any other condemned inmate, was scheduled for execution five days before a new administration. (Pl. Mot. at 21.) Defendants argue that the scheduling of an execution is a matter committed to the sole discretion of the Attorney General (or, by extension, the BOP), which is unreviewable under the APA.

Earlier this year, the Seventh Circuit addressed this very issue and concluded, "if the BOP observes the minimum requirements in the [relevant] regulation[s] . . . then it has the unconstrained discretion to choose a date for the execution." *Barr v. Peterson*, 965 F.3d 549 (7th

9

Cir. 2020). Like the Seventh Circuit, this court does not find the scheduling of an execution to be *wholly* unreviewable under the APA—but the Attorney General and the BOP retain substantial discretion. The FDPA prohibits the Attorney General from carrying out an execution until "exhaustion of the procedures for appeal of the judgment of conviction and for review of the sentence." 18 U.S.C. § 3596(a). And Title 28 of the Code of Federal Regulations places further restrictions on the scheduling of an execution—§ 26.3(a)(1) forbids the imposition of a death sentence less than sixty days "from the entry of the judgment of death" and § 26.4(a) requires at least a twenty-day notice before an execution.

It is undisputed that the Attorney General has complied with all three of these provisions in scheduling Higgs' execution. The court has found no other language in the FDPA or its implementing regulations that sets forth "judicially manageable standards . . . for judging how and when [the Attorney General] should exercise [his] discretion" in carrying out a lawful death sentence. *Chaney*, 470 U.S. at 830. Accordingly, Higgs is unlikely to succeed on his APA claim.

### B. Remaining Factors for Injunctive Relief

Having concluded that none of Higgs' claims are likely to succeed on the merits, the court need not balance the remaining factors. *See Greater New Orleans Fair Hous. Action Center v. U.S. Dep't of Hous. & Urban Dev.*, 639 F.3d 1078, 1083 (D.C. Cir. 2011) (noting that a substantial likelihood of success the merits is often dispositive); *Toxco Inc. v. Chu*, 724 F. Supp. 2d 16, 29 (D.C. Cir. 2010) (quoting *Am. Bankers Ass'n v. Nat'l Credit Union Admin.*, 38 F. Supp. 2d 114, 140 (D.D.C. 1999)) ("[A]bsent a 'substantial indication' of likely success on the merits, 'there would be no justification for the court's intrusion into the ordinary processes of administration and judicial review.'"). Higgs is not entitled to the injunctive relief sought.

## III. CONCLUSION

For the foregoing reasons, Higgs' motion for a preliminary injunction must be DENIED. The court will issue an accompanying order accordingly.

Date:  January 13, 2021

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge